# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole, | Case No.: 18-13027-t11 |
| Debtor. | |

## MOTION FOR AN ORDER UNDER 11 U.S.C §§ 105 AND 363 AUTHORIZING DEBTOR TO CONTINUE TO PAY PRE-PETITION WAGES, COMPENSATION AND HONOR EMPLOYEE BENEFIT PLANS AND PROGRAMS

Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession ("**ADSF**") in the above Chapter 11 reorganization case (the "**Reorganization Case**"), by and through its proposed attorneys undersigned, respectfully requests that the Court enter an Order authorizing ADSF to (1) pay all accrued, unpaid, pre-petition payroll obligations, and (2) continue post petition to pay or honor certain amounts coming due (including any accrued prepetition amounts) under ADSF's employee benefit plans and programs in effect immediately prior to filing this case (the "**Employee Wage and Benefits Motion**"), as more specifically set forth herein.

This Employee Wage and Benefits Motion presents a "core" proceeding under 28 U.S.C. § 157(b)(2) over which this Court has jurisdiction to enter a final order pursuant to 28 U.S.C. § 1334. The statutory predicate of this Motion are 11 U.S.C §§ 105(a) and 363(b).

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS -1

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 1 of 22

This Motion is supported by: (i) the following Memorandum of Points and Authorities; (ii) the "Declaration Of Tony Salgado In Support Of First Day Motions" (the "**Salgado Declaration**"); and (iii) the entire record before the Court in this Reorganization Case.

## BACKGROUND

On December 3, 2018 (the "**Petition Date**"), ADSF commenced this Reorganization Case by filing a voluntary Chapter 11 petition. ADSF has remained a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108 since the Petition Date. The Debtor in this Reorganization Case is ADSF which is a New Mexico corporation sole,[1] formed under the laws of the State of New Mexico. The Debtor conducts its business/civil affairs under the laws of New Mexico and the United States and in accordance with the Code of Canon Law ("**Canon Law**"), the ecclesiastical law of the Roman Catholic Church. ADSF acquires and holds property and conducts its civil affairs for the practice of the Roman Catholic religion in the geographic area that has been decreed as the Archdiocese of Santa Fe. The Archbishop of the Archdiocese has responsibility for the Roman Catholic faithful within the geographic territory of the Archdiocese and carries out his duties in accordance with Canon Law. The Bishop is also the sole member of the Archdiocese of Santa Fe.

According to Canon Law, an Archdiocese is a geographic territory formed to serve the Catholic faithful and through which the mission and ministry of the Roman Catholic Church in the area designated as an Archdiocese is carried out. An Archdiocese is administered by a Bishop who is appointed to serve by the Pope. However, an Archdiocese is not the only Roman Catholic ecclesiastical entity within its geographic territory. Every Archdiocese is divided into distinct parts

---

[1] New Mexico no longer has the corporation sole form of incorporation but an entity formed as a corporation sole at the time New Mexico provided for that form of incorporation was not required to re-incorporate as a non-profit corporation, but was allowed to continue its existence as a corporation sole.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -2

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 2 of 22

or parishes which are separate entities under both Canon Law and civil law. There are other Catholic entities, separate from a Archdiocese and parishes that also operate within the Archdiocese, such as foundations or schools.[2] Filed contemporaneously with this Motion is the Salgado Declaration.

## I.  EMPLOYEE PAYROLL OBLIGATIONS

Between its administrative offices at the Catholic Center, the IHM and Madona Retreat Centers, and the Archives Museum, ADSF employs approximately 84 people. *See* Salgado Declaration at ¶ 25. ADSF's payroll occurs on a biweekly basis; however, not all employees are paid at each payroll. Non-priest employees are paid during every pay period (i.e., biweekly), but clergymen, including priests and Archbishop Wester, are paid only once per month. Therefore, as of the Petition Date, ADSF has accrued payroll obligations for the period between November 24, 2018, and December 2, 2018 for non-priest employees, and for December 1 and December 2, 2018 for clergymen, including archdiocesan priests that are not assigned to any parish, seminarians, and the Archbishop. Payroll is paid in arrears. So, paychecks issued on the 30th would pay employees for wages and other compensation earned during the two-week period from November 10, 2018 to November 23, 2018, or, for clergymen, the entire month of November.

Such payroll obligations are the employees' gross hourly wages or salaries, and, for clergymen, the taxable value of the housing that ADSF provides to them. To pay its payroll obligations, the Debtor transmits all amounts owed for payroll to Debtor's payroll company, Paycor, Inc. ("**Paycor**"). Paycor takes those funds into its own accounts. Then, Paycor (i) remits appropriate amounts to various federal and state taxing agencies for federal and state taxes, Social Security, and

---

[2] Schools can also be established, owned and operated by a parish or an Archdiocese or can be a separate independent entity under Canon Law and civil law.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -3

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 3 of 22

Medicare; and (ii) issues paychecks or ACH transactions containing each employee's net payroll funds to each employee. Once the funds are transferred from ADSF to Paycor, they are no longer property of the estate. Paycor direct deposits money to ADSF's employees from Paycor's own accounts or, in limited cases, cuts paychecks; therefore, any pre-petition paychecks that have not cleared Paycor's bank as of the Petition Date should not be prohibited from clearing Paycor's accounts post-petition.

A categorized summary of the pre-petition obligations that will be paid using the gross payroll funds that are the subject of this Motion is set forth hereto as sealed Exhibit "A." Collectively, all such obligations are referred to herein as the "**Wage Obligations**." As shown on Exhibit "A," the accrued Wage Obligations to be paid to each employee does not exceed $12,850.00 as to any one employee, so each wage claim of each employee is a priority claim as set forth in 11 U.S.C. § 507(a)(4).

## II.  EMPLOYEE BENEFIT PROGRAMS

ADSF provides certain benefits to its employees. Salgado Declaration ¶ 30. ADSF intends to keep these benefits in place post-petition, in the ordinary course of ADSF's operations. *Id.* ¶ 30. Such benefits can broadly be characterized as insurance-related or retirement-related benefits that recur regularly, and employee leave-related benefits that do not recur on a predictable or regular basis. Collectively, all such benefits are referred to herein as the "**Employee Benefits**."

### A.  Regularly-Recurring Benefits

The first category of benefits recurs regularly. The cost of such benefits is divided between ADSF and its employees. On a monthly basis, ADSF pays approximately $35,000.00 in contributions to retirement plans managed by VOYA ($30,000.00), and John Hancock ($5,000.00), which amount includes the employee portion. These are on-going benefit programs that include medical insurance

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -4

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 4 of 22

with Blue Cross/Blue Shield, dental insurance with Delta Dental, term life and accidental death and dismemberment insurance, long-term disability insurance, workers' compensation insurance, and retirement plans managed by ADSF, which bills the Parishes for their portion.[3] The ADSF requests the Court allow it to honor all such benefits by authorizing it to pay the pre-petition benefit obligations relating to the two-week period between November 24, 2018, and December 7, 2018 for non-priest employees, and thereafter, and payroll obligations for the four-week period between December 1 and December 31, 2018, and thereafter, and the Petition Date for all employees. Such amounts are summarized on Exhibit "B" hereto.

To the extent benefits are fully or partially funded by the employees themselves, ADSF does not request any relief herein, but provides such information for the benefit of the Court and other parties. Similarly, to the extent the Parishes offer medical, dental, life, long-term disability, and retirement programs to their employees, such employees are included on ADSF's group policies so the Parishes and ADSF alike may obtain efficiencies of cost that arise from having larger group policy participation. ADSF pays the entire policy premiums, and the Parishes refund their respective portions to the ADSF, thus it is imperative these payments be continued without interruption. ADSF does not subsidize the cost of any Parish benefit programs. Salgado's Declaration ¶ 31.

### B. Other Benefits: Vacation Time and Personal Leave Time.

In addition to the foregoing, ADSF provides its employees with certain paid leave, a benefit that does not necessarily recur regularly for each pay period, but rather is used in the employees' discretion or necessity. The employee is able to be paid each January for unused Personal Leave on a 75% basis. Each year on January 1 an employee receives 105 hours for sick leave, bereavement,

---

[3] Some of those costs are funded by the employees, and ADSF holds such employee-funded amounts as trustee for the employees.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -5

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 5 of 22

and personal time off.  For clergymen and the other employees of ADSF's administrative offices, ADSF implements certain leave policies that are different from those applicable to employees.  *Id.* ¶ 32.

### 1. Policies Applicable to Employees of ADSF's Administrative Offices.

Administrative office benefits are divided into personal leave and vacation time.  Each year an employee receives 105 hours for sick leave, bereavement, and personal time off.  The employee is able to be paid each January for unused Personal Leave hours on a 75% basis. 25% of unused personal leave transfers to Medibank.  The Medibank program allows employees to bank or donate time for purposes of meeting a family emergency.  The accrual for Medibank is $37,472.00.  An employee who resigns or is terminated is not eligible to be paid for any unused personal leave.  As of the Petition Date, the personal leave accrued is $134,077.00.

Each employee accrues the allocation of their vacation time during the year based on years of service and using their date of hire.  Vacation cannot be used during the employee's introductory period. Depending on years of service, an employee accrues from 10 vacation days to 20 vacations days per year.  An employee cannot exceed two years of vacation accrual.  If an employee resigns or is terminated the employee is paid any accrued vacation.  Currently, the employees of ADSF have approximately $229,183.00 of accrued vacation pay, that has accrued prepetition, but would be used post petition by ADSF's employees, or paid out as a cash payment post-petition if the employees terminated employment prior to December 31, 2018.  *Id.* ¶ 35.  The accrued vacation time of each employee does not exceed two years of vacation accrual, so each claim of the employee would be a priority claim as set forth in 11 U.S.C. § 507(a)(4).


### III.  RELIEF REQUESTED

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -6

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 6 of 22

### A. Emergency Relief Requested

By this Employee Wage and Benefits Motion, pursuant to 11 U.S.C. §§ 105(a) and 363(b), and 507(a), ADSF seeks entry of an Order on an emergency basis:

    a) Authorizing, but not directing, ADSF to pay the pre-petition wage obligations set forth on sealed Exhibit "A", which includes wages, accrued personal leave, accrued vacation pay and payroll taxes in the total amount of $471,746.50, of which $420,109.23 is the priority portion;

    b) Authorizing, but not directing, ADSF to honor the pre-petition employee benefit program obligations set forth on Exhibit "B" hereto, and post-petition, and to continue to offer its pre-petition employee benefit programs post-petition;

    c) Empowering, but not directing or requiring, ADSF to effectuate the payments and other obligations set forth herein, and allowing ADSF to retain all discretion pursuant to its business judgment to make or not make such payments, and in all instances subject to the condition that funds are available to make such payments;

    d) Prohibiting financial and any other institutions involved in processing or cashing pay checks from dishonoring any paychecks that have not cleared Paycor's bank accounts as of the Petition Date solely for the reason that ADSF has filed a bankruptcy petition (because the funds in Paycor's accounts are not property of the estate and therefore the automatic stay does not apply to such funds); and

    e) Granting related relief.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -7

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 7 of 22

Such relief is sought on an emergency basis because, among other things, ADSF's employees are essential to its operations and ability to successfully reorganize. ADSF's employees are also essential to the communities in which they minister because many of them provide vital social services, teach school children whose school year would be interrupted if their teachers could not be paid or receive benefits, or act as liaisons for survivors. If ADSF fails to pay its employees for the nearly one week of pre-petition wages they have accumulated, its employees' ability to pay their day-to-day living expenses and other bills would be disrupted, and the employees may be forced to seek other employment. Therefore, ADSF requests the emergency relief herein so as not to interrupt its employees' ability to be paid the pre-petition wages and paid the post-petition benefits they have earned.

## IV.   LEGAL ARGUMENT

ADSF seeks authority to continue to provide the Employee Benefits in existence prior to the Petition Date and to pay all amounts due as such amounts come due in the ordinary course, including amounts accrued on account of prepetition employee service. The relief sought is authorized by 11 U.S.C. §§ 105(a), 363(b), and 507(a).

### A.   Continuation of the Employee Benefits is Justified to Preserve the Estate

11 U.S.C. § 363(b) provides, in relevant part: "The trustee, after notice and a hearing may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The proposed use, sale, or lease of property of the estate may be approved under 11 U.S.C. § 363(b) if it is supported by the sound business judgment of a debtor's management. *See, Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991). Although

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -8

established in the context of a proposed sale, the "business judgment" standard has been applied

in nonsale situations. *See, e.g.*, *Institutional Creditors of Cont'l Air Lines v. Cont'l Air Lines (In

re Cont'l Airlines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (applying "business judgment" standard

in context of proposed "use" of estate property); *In re Bethlehem Steel Corp.*, No. 02 Civ. 2854

(MBM), 2003 U.S. Dist. LEXIS 12909, at *37 - *44 (S.D.N.Y. July 28, 2003) (applying "business

judgment" standard in context of proposed reimbursement of employees under a collective

bargaining agreement). "The 'business judgment rule' is a presumption that in making a business

decision the directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147

B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

Decisions made by a debtor's management in the exercise of its business judgment ordinarily

should not be second guessed by a reviewing court. *See, In re Curlew Valley Assoc.*, 14 B.R. 506,

511 (Bankr. Utah 1981).

Courts have also found that a debtor may pay pre-petition obligations to employees post-

petition, and continue post-petition the employee benefits programs it had in place pre-petition,

under the doctrine of necessity. Pursuant to section 105(a) of the Bankruptcy Code, "[t]he court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a). Under the doctrine of necessity, a bankruptcy court

may exercise its equitable powers under section 105(a) to authorize a debtor to pay certain critical

prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy

Code. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (bankruptcy courts may

exercise equitable powers to authorize payment of prepetition debt where such payment is

necessary to preserve a debtor's business); *In re CoServ, L.L.C.*, 273 B.R. 487, 492 n.7 (Bankr.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -9

Case 18-13027-t11   Doc 7   Filed 12/03/18   Entered 12/03/18 16:04:18 Page 9 of 22

N.D. Tex. 2002) (necessity of payment rule "is a rule of payment not of priority" which allows "trustees to pay prepetition debts . . . in order to obtain continued supplies or services essential to the continued operation of the debtor's business"); *In re Equalnet Commc'n Corp.*, 258 B.R. 368, 370 (Bankr. S. D. Tex. 2000) (noting the importance of continuing to pay employee wages and benefits post petition in order to retain employees as a matter of "simple common sense").

To the extent there has been reluctance to rely solely on section 105(a) or the doctrine of necessity, several courts have authorized payment of critical prepetition claims, or implied that such authority would be granted, by relying on section 105(a) in conjunction with other sections of the Bankruptcy Code. *See, e.g.*, *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 19-20 (Bankr. M.D. Fla. 2005) (acknowledging that in certain circumstances section 363(b)(1) might authorize payment of prepetition claims if it was shown that such payment would "enable a successful reorganization and make even the disfavored creditors better off"); *CoServ*, 273 B.R. at 497 (noting that the preplan satisfaction of prepetition claims may be necessary to satisfy a debtor's fiduciary duties under sections 1106 and 1107 of the Bankruptcy Code.)

As a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, ADSF is a fiduciary, entitled to operate its business as a debtor in possession, with a "duty to maximize the value of the bankruptcy estate." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d. Cir. 2003). "The debtor-in-possession's fiduciary duty to maximize includes the 'duty to protect and conserve property in its possession for the benefit of creditors.'" *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (*citing In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)). Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497. In *CoServ*, the court

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -10

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 10 of 22

specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

ADSF submits that, as illustrated below, payment of its Wage Obligations and Employee Benefits, and continuance post-petition of all pre-petition Employee Benefits, is wholly warranted in this Bankruptcy Case. In fact, this Court has previously authorized payment of prepetition employee compensation and benefits under similar circumstances. *See, e.g.*, *In re Furr's Supermarket, Inc.*, Case No. 01-10779 (JSS) (Bankr. D.N.M. Feb. 9, 2001). It is true that the "business" of ADSF is not the same as a commercial enterprise. However, the same principles cited above apply to ADSF and the Reorganization Case. ADSF's ability to fairly compensate victims of abuse by clergy, to continue to work to prevent future abuse, and to continue its ministry, depends on its employees.

Accordingly, ADSF should be allowed to continue to honor the Employee Benefits. Approving the policies as set forth herein will put ADSF in a position that encourages the retention of those employees and continued provisions of valuable services, at very little cost to the estate. Accordingly, continuing to honor the Employee Benefits is in ADSF's sound business judgment, and is crucial to ADSF's reorganization, its ability to fairly compensate victims, and its ongoing programs and ministries.

**B.      Fed.R.Bankr.P. 6003 Does Not Apply**

"Except to the extent that relief is necessary to avoid immediate and irreparable harm," Fed.R.Bank.P. 6003 ordinarily precludes the Court from entering an order granting "a motion to use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before the day that is 21 days after the bankruptcy petition was filed.

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -11

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 11 of 22

Fed.R.Bnkr.P. 6003(b). The instant Motion is filed on an emergency basis because immediate relief is necessary to avoid immediate and irreparable harm. As stated above, ADSF cannot operate without its employees. Salgado Declaration ¶ 25. In the event ADSF's employees are not timely paid, they will likely seek other employment. *Id.* ¶ 27. Not least, ADSF's employees, who have living expenses to pay, would suffer immediate and irreparable harm if they are not paid. Finally, the expenses sought to be paid are priority claims (See Exhibit A). Such claims must, as a matter of law, be paid prior to general unsecured claims pursuant to 11 U.S.C. § 507. Therefore, the payment priority mandated by the Bankruptcy Code will not be upset if the Wage Obligations are paid immediately. Under such circumstances, the Court may enter immediate relief to avoid immediate and irreparable harm, without running afoul of Fed.R.Bankr.P. 6003.

## V.  **CONCLUSION**

For the reasons set forth above, ADSF respectfully asks the Court to enter an Order:

a)  Granting the Motion in its entirety;

b)  Authorizing, but not directing, ADSF to pay the pre-petition wage obligations set forth on sealed Exhibit "A";

c)  Authorizing, but not directing, ADSF to honor the pre-petition employee benefit program obligations set forth on Exhibit "B" hereto, and post-petition, and to continue to offer its pre-petition employee benefit programs post-petition;

d)  Empowering, but not directing or requiring, ADSF to effectuate the payments and other obligations set forth herein, and allowing ADSF to retain all discretion pursuant to its business judgment to make or not make such payments, and in all instances subject to the condition that funds are available to make such payments;

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -12

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 12 of 22

e) Prohibiting any financial or other institution that processes or cashes paychecks from using ADSF's bankruptcy petition as cause to dishonor any pre-petition paychecks that have not cleared Paycor's accounts as of the Petition Date;

f) Preventing any person from having personal liability or becoming personally liable for any amounts authorized for payment herein;

g) Preserving ADSF's right to dispute the validity of any claim against ADSF, and preventing any approval or assumption of any agreement or contract under Section 365 of the Bankruptcy Code as a result of the entry of such Order;

h) Retaining jurisdiction with respect to all matters arising from or related to the implementation and interpretation of such Order;

i) If this Motion is granted, excluding these employees from receiving future notices and pleadings filed in this case unless they request to be noticed; and

j) Granting such other and further relief as the Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 3rd day of December, 2018.

/s/ Bruce A. Anderson
Ford Elsaesser
Bruce A. Anderson
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

-and-

/s/ Stephanie L. Schaeffer

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -13

Thomas D. Walker
Stephanie L. Schaeffer
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax:  (505) 722-9287
twalker@walkerlawpc.com
sschaeffer@walkerlawpc.com
*Proposed Counsel for Debtor*

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -14

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 14 of 22

**EXHIBIT "A"**
**EMPLOYEE BENEFITS SCHEDULE**

**(TO BE FILED UNDER SEAL)**

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS -15

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 15 of 22

**EXHIBIT "B"**
**EMPLOYEE BENEFITS**

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS  -16

Case 18-13027-t11    Doc 7    Filed 12/03/18    Entered 12/03/18 16:04:18 Page 16 of 22

Exhibit B

| Vendor | Total Monthly Cost | ASF Employee Portion | Purpose |
|---|---|---|---|
| *Blue Cross Blue Shield of New Mexico | $ 268,065.36 | $ 55,542.29 | Employee Health Insurance |
| *Delta Dental | $ 23,495.51 | $ 4,486.25 | Employee Dental Insurance |
| *UNUM Life Insurance | $ 3,431.48 | $ 482.62 | Employee Life Insurance |
| *Mutual of Ohaha Companies | $ 157.00 | $ 35.79 | Employee Accidental Death and Dismemberment |
| *Vision Service Plan | $ 3,986.60 | $ 708.01 | Employee Vision Insurance |
| *American Family Life Assurance Co of Columbus | $ 2,696.14 | $ 691.53 | Employee Accident Insurance |
| Voya Financial | $ 30,000.00 | $ 30,000.00 | Employee 403(b) Retirement Plan |
| John Hancock Retirement Plan Services | $ 5,000.00 | $ 5,000.00 | Employee 403(b) Retirement Plan |

*Note - all of the above plans, with the exception of the retirement services, cover employees in the Catholic Center, parishes and schools (Shared Insurance Program)
Premiums not related to the Catholic Center are billed back to the parishes/schools for reimbursement of the total invoiced amount paid by ASF

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole, | Case No.: 18-13027-t11 |
| Debtor. | |

### [PROPOSED] ORDER GRANTING MOTION FOR AN ORDER UNDER 11 U.S.C §§ 105 AND 363 AUTHORIZING DEBTOR TO CONTINUE TO PAY PRE-PETITION WAGES, COMPENSATION AND HONOR EMPLOYEE BENEFIT PLANS AND PROGRAMS

This matter came before the Court on the "Motion for an Order Under 11 U.S.C. §§ 105 and 363 Authorizing Debtor to Continue to Pay Pre-Petition Wages, Compensation and Honor Employee Benefit Plans and Programs" [Dkt. No. ___] (the "**Wage Motion**") filed by the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession ("**ADSF**") in the above Chapter 11 reorganization case (the "**Reorganization Case**"). Upon consideration of the Wage Motion and the "Declaration of Tony Salgado In Support Of Chapter 11 Petition And First Day Motions"; and it appearing that the C

ourt has jurisdiction over this matter; and it appearing that due notice of the Wage Motion as set forth in the "Certificate of Service" attached thereto is sufficient under the circumstances, and that no other or further notice need be provided; the relief therein requested being in the best interest of the estate; and based upon the entire record in these Reorganization Cases and good cause appearing,

IT IS HEREBY ORDERED ADJUDGED AND DECREED as follows:

A. The Motion is granted as set forth in this Order in its entirety.

B. ADSF is authorized, but not directed, to pay the pre-petition wage obligations set forth on sealed Exhibit "A" to the Motion.

C. ADSF is authorized, but not directed, to honor the pre-petition employee benefit program obligations set forth on Exhibit "B" to the Motion, and post-petition, and to continue to offer its pre-petition employee benefit programs post-petition;

D. The authorizations set forth in this Order empower ADSF, but do not direct or require ADSF, to effectuate the payments and other obligations set forth herein, and ADSF retains all discretion pursuant to its business judgment to make or not make such payments, and in all instances subject to the condition that funds are available to make such payments;

E. In no event shall the ADSF bankruptcy petition constitute cause for any financial or other institution that processes or cashes paychecks to dishonor any pre-petition paychecks that have not cleared Paycor's accounts as of the Petition Date;

F. In no event is any person, nor shall any person become, personally liable for any amounts authorized for payment herein;

G.  Employees are excluded from receiving future notices and pleadings filed in this case unless they request to be noticed;

H.  No provision contained herein is intended to or should be construed as an admission as to the validity of any claim against ADSF, a waiver of ADSF's rights to dispute any claim, or an approval or assumption of any agreement or contract under Section 365 of the Bankruptcy Code; and

I.  This Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

XXX END OF ORDER XXX

Submitted by:

*/s/ Thomas D. Walker*
Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272

-and-

*/s/ Bruce A. Anderson*
Bruce A. Anderson
Ford Elsaesser
ELSAESSER ANDERSON CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID  83815
(208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

*Proposed Counsel for Debtor*

Copy to:
U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103

ustpregion20.aq.ecf@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to F.R.C.P. 5(b)(3), F.R.B.P. 9036 and NM LBR 9036-1(b), I hereby certify that service of the foregoing document was made on December 3rd, 2018 via e-mail and the notice transmission facilities of the Bankruptcy Court's case management and electronic filing system on the following parties:

U.S. Trustee
P.O. Box 608
Albuquerque, NM 87103
ustpregion20.aq.ecf@usdoj.gov
Alice.N.Page@usdoj.gov
Charles.Glidewell@usdoj.gov

Brad D. Hall
Levi Monagle
Law Offices of Brad D. Hall
320 Gold Aveneu, SW
Suite 1218
Albuquerque, NM 87102
brad@bhallfirm.com

Jim Stang
PACHULSKI STANG ZIEHL &
JONES LLP
10100 Santa Monica Blvd. #1300
Los Angeles, CA 90067-4114
jstang@pszjlaw.com

Jeffrey E. Jones
Law Office of Jeffrey E. Jones
P.O. Box 24350
Santa Fe, NM 87504-1986
eljefelaw@msn.com

Paul R. Harris
Ulmer & Berne LLP
1660 West 2nd Street Ste 1100
Cleveland, OH 44113-1448
pharris@ulmer.com

Stephen E. Tinkler
TINKLER LAW FIRM
309 Johnson St.
Santa Fe, NM 87501
set@tinklernm.com

Merit Bennett
The Bennett Law Group, LLC
460 St. Michael's Drive, Suite 703
Santa Fe, NM 87105
mb@thebennettlawgroup.com

Martha G. Brown
Dominic A. Martinez
Modrall Sperling
500 4th Street NW, Suite 1000
Albuquerque, NM 87102
mgb@modrall.com
dominic.martinez@modrall.com

Carolyn M. "Cammie" Nichols
Caroline "KC" Manierre
Paul Linnenburger
Rothstein, Donatelli, LLP
500 Fourth Street NW, Suite 400
Albuquerque, NM 87102
cmnichols@rothsteinlaw.com

NM Taxation & Revenue Dept
PO Box 8575
Albuquerque, NM 87198
jjacobsen@nmag.gov

Bank of America
G. Christopher Miller
100 Federal St.
Boston, MA 02110
Mailstop MA5-100-09-12
g.christopher.miller@bankofamerica.com

Bank of America
c/o Robert J. Miller
Bryan Cave Leighton Paisner
Two North Central Ave, Suite 2100
Phoenix, AZ 85004
rjmiller@bclplaw.com
khaled.tarazi@bclplaw.com

*Courtesy Copy to:*

Tania Maestas
Sharon Lee Pino
Office of the NM Attorney General
P.O. Box 1508
Santa Fe NM 87504-1508
tmaestas@nmag.gov
spino@nmag.gov

20 largest unsecured creditors

DATED this 3rd day of December, 2018.

*/s/Stephanie Schaeffer*
Stephanie Schaeffer

MOTION FOR ORDER AUTHORIZING TO CONTINUE
TO PAY PRE-PETITION WAGES, COMPENSATION AND
HONOR EMPLOYEE BENEFIT PLAN AND PROGRAMS -17