## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:
ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
corporation sole,
               Debtor.

CHRISTINE ROMERO,
               Plaintiff (creditor)

v.

ARCHDIOCESE OF SANTA FE,
               Defendant (Debtor)

Chapter 11

Case No. 18-13027-t11

## CREDITOR CHRISTINE ROMERO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

CREDITOR CHRISTINE ROMERO, by and through counsel, respectfully moves the

Court for an order pursuant to 11 U.S.C. § 362(d)(1) for relief from the stay imposed by

operation of law in *Romero v. Archdiocese, et al.*, Cause No. D-101-CV-2017-03131, First

Judicial District Court, State of New Mexico. Relief from the stay would allow the ongoing

litigation against Debtor Archdiocese of Santa Fe, along with claims against another

Defendant, a priest in the Archdiocese, to proceed without delay to judgment. The merits

of Ms. Romero's claims, which Ms. Romero contends are non-dischargeable under 11

U.S.C. § 523(a)(6), should be adjudicated by the state court where the case was filed and

where the issues are intertwined with claims against the other Defendant, Father Larry

Brito.

Pursuant to Local Rule 9013-1(b), the undersigned has conferred or attempted to

confer with counsel for the debtor Archdiocese of Santa Fe with respect to the relief

requested herein. This motion is opposed.

As grounds for her motion, Ms. Romero states the following:

## Background

As noted in her State Court Complaint, attached hereto as Exhibit "1," Creditor Christine Romero was a long-time employee of the Archdiocese of Santa Fe, St. Anne Parish in Santa Fe. Throughout her employment, Ms. Romero maintained an exemplary work record. *Id.* ¶ 4. When Defendant Brito assumed the helm of the parish, he began to be hostile to Ms. Romero, preferential to another employee who was her subordinate, and engaged in hostile environment sexual harassment that was both subjectively and objectively offensive. *Id.* ¶¶ 6-21. When Ms. Romero protested, Defendant Brito summarily fired her. *Id.* ¶¶ 21-23. Under controlling law, Defendant Brito's employer, Debtor Archdiocese, is strictly liable for his illegal conduct. *Id.* ¶ 24; *see also Ocana v. American Furniture Co.*, 2004-NMSC-018, 91 P.3d 58.

In addition to violating the New Mexico Human Rights Act, Debtor Archdiocese breached an implied contract of employment that existed between it and Ms. Romero. *Id.* ¶¶ 25-35; Counts IV and V.

Ms. Romero's Complaint alleges intentional, willful, and malicious conduct on the part of all Defendants, and seeks both punitive and compensatory damages. None of the claims asserts mere negligence or recklessness.

## Facts applicable to the motion

1. Ms. Romero became employed by the Archdiocese at St. Anne Parish beginning on May 3, 2004 and continuing until November 22, 2016. Complaint ¶ 1.

-2-

2.  Ms. Romero's employer was the Archdiocese of Santa Fe, with the place of employment being St. Anne Parish, Santa Fe.  Exhibit "2."

3.  The employment documents Ms. Romero was required to sign as an employee included the fraud policy of Debtor Archdiocese.  Exhibit "3."

4.  The only employment application form ever filled out by Ms. Romero was for employment with Debtor Archdiocese.  Exhibit "4."

5. Ms. Romero's employment benefits flowed through Debtor Archdiocese.  Exhibit "5."

6. Debtor Archdiocese hired Ms. Romero, in the department St. Anne's.  Exhibit "6."

7.  Ms. Romero was obligated to abide by Debtor Archdiocese's Code of Ethics which applied to all Archdiocesan personnel; there was no separate Code for St. Anne Parish.  Exhibit "7."

8.  Ms. Romero's employment status did not change when Debtor Archdiocese caused St. Anne Parish to become a separate corporation.  Affidavit of Christine Romero, Exhibit "8."

8.  Debtor Archdiocese was a "just cause" employer, meaning that it had a "for cause" termination policy, and had a progressive discipline policy requiring gradual increases in discipline in the event an employee performed unsatisfactorily.  Exhibit "9." Debtor Archdiocese, according to the terms of its handbook, could only terminate with due notice except in situation where behavior could be considered totally inappropriate.  *Id.* Further, Debtor Archdiocese had a progressive discipline policy which required warnings when job performance did not meet applicable standards.  *Id.*

9.  By letter dated November 21, 2016 and hand-delivered the next day to Ms.

-3-

Romero, Defendant Brito summarily fired her, claiming that his style of leadership was in conflict with Ms. Romero's past employment experiences. Termination letter, attached hereto as Exhibit "10."

10. It is undisputed that Defendant Brito did not fire Ms. Romero for cause. *Id.*

11. It is undisputed that Defendant Brito fired Ms. Romero abruptly, without warnings, without claiming that her employee performance was unsatisfactory, and without giving her the benefit of progressive discipline. *Id.*

## Argument

I. **This Court has discretion under 11 U.S.C. § 362(d)(1) to find cause to lift the mandatory stay, assessing the totality of the circumstances.**

While one approach when considering a motion to lift the automatic stay can be to weigh the factors listed in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), such a balancing of factors is not required. "[T]the Court need not consider the *Curtis* factors to determine whether "cause" to lift the automatic stay is proper. The Tenth Circuit has not 'set forth a precise framework or exhaustive set of factors for analyzing whether cause exists.'" *In re Kearney*, 2018 WL 4726002 *3 (Bankr. D. N.M. 2018) (citations omitted). Rather, while courts can and often look to the *Curtis* factors for guidance, "[w]hether 'cause' exists depends on the totality of the circumstances." *Id.* *4, *citing In re R.J Groover Constr. L.L.C.*, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008).

-4-

**II.     The totality of the circumstances in this case suggests that there is cause for lifting the stay, and that lifting the stay would be appropriate.**

Looking at the totality of the circumstances here, lifting the stay is an appropriate course of action. First, the claims in the state forum involve willful and malicious conduct that intended harm to Christine Romero. "The 'willful element requires both an intentional act and an intended harm.'" *In re Trujillo*, 2014 WL 3051919 *3 (Bankr. D. N.M. 2014) (Jakobvitz, J.) (citation omitted). Thus, a willful act is where the debtor desires the consequences of his actions. *Id.* Whether the debtor intended the injury to occur, and therefore acted maliciously, depends upon a subjective standard:

> The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause an injury or believed the injury was substantially certain to occur... Evidence of the debtor's state of mind may be inferred from the surrounding circumstances.

*Id.* (citations omitted).

Here, the firing was intentional, and given its career and financial implications, this Court can reasonably infer that Debtor Archdiocese believed injury was substantially likely to occur. Thus, the non-dischargeability elements of 11 U.S.C. 523(a)(6) are met.

Second, judicial economy would be better served by a completion of the litigation in the State Court forum where it started. Significant, though not complete, proceedings have already taken place. *See* Docket, Exhibit "11." The presiding State Court judge, the Honorable Raymond Ortiz, has already considered and ruled on certain elements of Ms. Romero's claim, denying a Rule 12(B)(6) motion to dismiss. Exhibit "12." In addition, lifting the stay would result in a complete resolution of all issues Ms. Romero joined in the First Judicial District Court.

-5-

Third, Ms. Romero is likely to prevail on the merits. She was an employee of Debtor Archdiocese. Although she had the protection that termination would be only for cause, and had the protection of progressive discipline policy, Debtor Archdiocese, acting through its priest Defendant Brito, fired her when no cause was present and without extending progressive discipline. Exhibit 10. Under the circumstances, Ms. Romero is likely to prevail on her employment claims.

Fourth, the State Court has the expertise to decide the issues of state law that have been joined. Indeed, Ms. Romero has not filed any federal claims, relying instead on the laws of the State of New Mexico for vindication. Where state law issues are to be decided, a state court forum is appropriate. *See, e.g., In re Unanue-Casal*, 159 B.R. 90, 96-98 (D.P.R. 1993) (judicial economy favored lifting the stay because the state court had expertise on non-bankruptcy law and was more familiar with the background of the case). Litigation in the state court will not interfere with this Court's handling of the bankruptcy. The litigation in the State Court does not involve bankruptcy law or require the expertise of a bankruptcy judge. Leaving the adjudication of the merits to the State Court will enable this Court to focus its attention and expertise on the bankruptcy proceedings. Thus, far from interfering with the bankruptcy case, allowing the State Court to adjudicate the pending litigation and establish any liability on the part of the Debtor advances the bankruptcy case. *See, e.g., Ulpiano Unanue-Casal*, 159 B.R. at 99 (allowing the non-bankruptcy court to determine the parties' liability advanced the bankruptcy case because it would resolve the creditor's claim).

**CONCLUSION**

For the reasons stated herein, Creditor Christine Romero respectfully requests that the Court grant her motion in its entirety, lift the automatic stay imposed in *Romero v. Archdiocese, et al.*, Cause No. D-101-CV-2017-03131, First Judicial District Court, State of New Mexico, and grant her any other relief that the Court deems just and proper.

Respectfully submitted,
O'FRIEL and LEVY, P.C.
Attorneys for Plaintiff/Creditor Christine Romero

By: _____
Pierre Levy, Esq.
P.O. Box 2084
Santa Fe, New Mexico 87504-2084
(505) 982-5929
pierre@ofrielandlevy.com

I hereby certify that the foregoing was served as of the date of filing to counsel of record through the Court's CM/ECF system.

_____
Pierre Levy, Esq.

-7-

2. Ms. Romero's employer was the Archdiocese of Santa Fe, with the place of employment being St. Anne Parish, Santa Fe. Exhibit "2."

3. The employment documents Ms. Romero was required to sign as an employee included the fraud policy of Debtor Archdiocese. Exhibit "3."

4. The only employment application form ever filled out by Ms. Romero was for employment with Debtor Archdiocese. Exhibit "4."

5. Ms. Romero's employment benefits flowed through Debtor Archdiocese. Exhibit "5."

6. Debtor Archdiocese hired Ms. Romero, in the department St. Anne's. Exhibit "6."

7. Ms. Romero was obligated to abide by Debtor Archdiocese's Code of Ethics which applied to all Archdiocesan personnel; there was no separate Code for St. Anne Parish. Exhibit "7."

8. Ms. Romero's employment status did not change when Debtor Archdiocese caused St. Anne Parish to become a separate corporation. Affidavit of Christine Romero, Exhibit "8."

8. Debtor Archdiocese was a "just cause" employer, meaning that it had a "for cause" termination policy, and had a progressive discipline policy requiring gradual increases in discipline in the event an employee performed unsatisfactorily. Exhibit "9." Debtor Archdiocese, according to the terms of its handbook, could only terminate with due notice except in situation where behavior could be considered totally inappropriate. *Id.* Further, Debtor Archdiocese had a progressive discipline policy which required warnings when job performance did not meet applicable standards. *Id.*

9. By letter dated November 21, 2016 and hand-delivered the next day to Ms.

-3-

Romero, Defendant Brito summarily fired her, claiming that his style of leadership was in conflict with Ms. Romero's past employment experiences. Termination letter, attached hereto as Exhibit "10."

10. It is undisputed that Defendant Brito did not fire Ms. Romero for cause. *Id.*

11. It is undisputed that Defendant Brito fired Ms. Romero abruptly, without warnings, without claiming that her employee performance was unsatisfactory, and without giving her the benefit of progressive discipline. *Id.*

## Argument

I. **This Court has discretion under 11 U.S.C. § 362(d)(1) to find cause to lift the mandatory stay, assessing the totality of the circumstances.**

While one approach when considering a motion to lift the automatic stay can be to weigh the factors listed in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), such a balancing of factors is not required. "[T]the Court need not consider the *Curtis* factors to determine whether "cause" to lift the automatic stay is proper. The Tenth Circuit has not 'set forth a precise framework or exhaustive set of factors for analyzing whether cause exists.'" *In re Kearney*, 2018 WL 4726002 *3 (Bankr. D. N.M. 2018) (citations omitted). Rather, while courts can and often look to the *Curtis* factors for guidance, "[w]hether 'cause' exists depends on the totality of the circumstances." *Id.* *4, *citing In re R.J Groover Constr. L.L.C.*, 411 B.R. 473, 477 (Bankr. S.D. Ga. 2008).

-4-

## II.    The totality of the circumstances in this case suggests that there is cause for lifting the stay, and that lifting the stay would be appropriate.

Looking at the totality of the circumstances here, lifting the stay is an appropriate course of action. First, the claims in the state forum involve willful and malicious conduct that intended harm to Christine Romero. "The 'willful element requires both an intentional act and an intended harm.'" *In re Trujillo*, 2014 WL 3051919 *3 (Bankr. D. N.M. 2014) (Jakobvitz, J.) (citation omitted). Thus, a willful act is where the debtor desires the consequences of his actions. *Id.* Whether the debtor intended the injury to occur, and therefore acted maliciously, depends upon a subjective standard:

> The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause an injury or believed the injury was substantially certain to occur... Evidence of the debtor's state of mind may be inferred from the surrounding circumstances.

*Id.* (citations omitted).

Here, the firing was intentional, and given its career and financial implications, this Court can reasonably infer that Debtor Archdiocese believed injury was substantially likely to occur. Thus, the non-dischargeability elements of 11 U.S.C. 523(a)(6) are met.

Second, judicial economy would be better served by a completion of the litigation in the State Court forum where it started. Significant, though not complete, proceedings have already taken place. *See* Docket, Exhibit "11." The presiding State Court judge, the Honorable Raymond Ortiz, has already considered and ruled on certain elements of Ms. Romero's claim, denying a Rule 12(B)(6) motion to dismiss. Exhibit "12." In addition, lifting the stay would result in a complete resolution of all issues Ms. Romero joined in the First Judicial District Court.

-5-

Third, Ms. Romero is likely to prevail on the merits. She was an employee of Debtor Archdiocese. Although she had the protection that termination would be only for cause, and had the protection of progressive discipline policy, Debtor Archdiocese, acting through its priest Defendant Brito, fired her when no cause was present and without extending progressive discipline. Exhibit 10. Under the circumstances, Ms. Romero is likely to prevail on her employment claims.

Fourth, the State Court has the expertise to decide the issues of state law that have been joined. Indeed, Ms. Romero has not filed any federal claims, relying instead on the laws of the State of New Mexico for vindication. Where state law issues are to be decided, a state court forum is appropriate. *See, e.g., In re Unanue-Casal*, 159 B.R. 90, 96-98 (D.P.R. 1993) (judicial economy favored lifting the stay because the state court had expertise on non-bankruptcy law and was more familiar with the background of the case). Litigation in the state court will not interfere with this Court's handling of the bankruptcy. The litigation in the State Court does not involve bankruptcy law or require the expertise of a bankruptcy judge. Leaving the adjudication of the merits to the State Court will enable this Court to focus its attention and expertise on the bankruptcy proceedings. Thus, far from interfering with the bankruptcy case, allowing the State Court to adjudicate the pending litigation and establish any liability on the part of the Debtor advances the bankruptcy case. *See, e.g., Ulpiano Unanue-Casal*, 159 B.R. at 99 (allowing the non-bankruptcy court to determine the parties' liability advanced the bankruptcy case because it would resolve the creditor's claim).

**CONCLUSION**

For the reasons stated herein, Creditor Christine Romero respectfully requests that the Court grant her motion in its entirety, lift the automatic stay imposed in *Romero v. Archdiocese, et al.*, Cause No. D-101-CV-2017-03131, First Judicial District Court, State of New Mexico, and grant her any other relief that the Court deems just and proper.

Respectfully submitted,
O'FRIEL and LEVY, P.C.
Attorneys for Plaintiff/Creditor Christine Romero

By: _____

Pierre Levy, Esq.
P.O. Box 2084
Santa Fe, New Mexico 87504-2084
(505) 982-5929
pierre@ofrielandlevy.com

I hereby certify that the foregoing was served as of the date of filing to counsel of record through the Court's CM/ECF system.

_____
Pierre Levy, Esq.

-7-

FIRST JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANTA FE
~~Case No. D-0101-CV-2017-_____~~

D-101-CV-2017-03131

Case assigned to Thomson, David K.

CHRISTINE B. ROMERO,

    Plaintiff,

  v.

ARCHDIOCESE OF SANTA FE
and LARRY BRITO,

    Defendants.

## NOTICE OF APPEAL FROM A DETERMINATION BY
## THE HUMAN RIGHTS BUREAU, LABOR RELATIONS DIVISION,
## DEPARTMENT OF WORKFORCE SOLUTIONS,
## AND
## COMPLAINT FOR VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT,
## BREACH OF IMPLIED EMPLOYMENT CONTRACT,
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING,
## ATTORNEY FEES,
## AND PUNITIVE DAMAGES

    PLAINTIFF, CHRISTINE B. ROMERO, through her attorneys, O'Friel and Levy,

P.C., by Pierre Levy, Esq., hereby comes forth and brings this Notice of Appeal from a

determination by the Human Rights Bureau, Labor Relations Division, Department of

Workforce Solutions, and brings her Complaint for violations of the New Mexico Human

Rights Act, N.M.S.A. 1978, § 28-1-1, breach of implied employment contract, breach of

the implied covenant of good faith and fair dealing, attorney fees, for punitive damages,

and states as follows:



EXHIBIT

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

1. Plaintiff, Christine B. Romero, at all times material to the allegations of this Complaint was and is a resident and citizen of the County of Santa Fe, State of New Mexico, and was employed by Defendant Archdiocese of Santa Fe, St. Anne Parish, beginning on May 3, 2004 and continuing until November 22, 2016.

2. Defendant, Archdiocese of Santa Fe, St. Anne Parish is a religious organization associated with and/or part of the Catholic Church. Its principal place of business is in the County of Santa Fe, State of New Mexico. Defendant Archdiocese of Santa Fe, St. Anne Parish ("Archdiocese") also does business within the County of Santa Fe. Defendant Archdiocese is and was, at all times material to the allegations of the Notice of Appeal and Complaint, the employer of Plaintiff Christine Romero and Defendant Larry Brito ("Brito").

3. Defendant Brito is, on information and belief, a resident of the County of Santa Fe, a parish priest of the Defendant Archdiocese of Santa Fe, and was at all times material to the allegations of this Complaint Plaintiff Christine Romero's supervisor.

4. From the time of her hire as an employee of Defendant Archdiocese, Plaintiff Christine Romero was the Business Manager of St. Anne Parish, Archdiocese of Santa Fe. Throughout her employment, Plaintiff Christine Romero maintained an exemplary, unblemished, and excellent work record in support of the goals and mission of St. Anne Parish and the Archdiocese. Her duties as Business Manager included supervising all office staff, including Cindy Martinez, the office manager of St. Anne Parish.

-2-

5. In June, 2016, Defendant Archdiocese assigned Defendant Brito to be the parish priest at St. Anne Parish. At all times material to the allegations of this Notice of Appeal and Complaint, from that time forward he had direct supervisory authority over Plaintiff Christine Romero.

6. From the time he started being the parish priest in June, 2016, Defendant Brito was very friendly with Cindy Martinez, and she was very friendly towards him. In addition, Defendant Brito's attitude was very cool towards Plaintiff Christine Romero.

7. Beginning in July, 2016, Defendant Brito removed Cindy Martinez from Plaintiff Christine Romero's supervision, "to take care of her," which is what he told Plaintiff Christine Romero.

8. Beginning in July, 2016, Plaintiff Christine Romero observed the following conduct, behavior, and interactions between Defendant Brito and Cindy Martinez: Defendant Brito would show favoritism toward Cindy Martinez, and excessive affection. Defendant Brito would frequently communicate with Cindy Martinez, both by voice and text, on her personal cell phone. Defendant Brito instructed Plaintiff Christine Romero that if she wanted to make an appointment with him, she had to go through Cindy Martinez. Defendant Brito would give Ms. Martinez gifts, such as a religious statue, some of his living room furniture, and fruit and vegetables from his yard and garden, making sure that Plaintiff Christine Romero knew he was giving Cindy Martinez those gifts. On at least one occasion, during the work week, Defendant Brito and Cindy Martinez had lunch together. Defendant Brito also took Cindy Martinez shopping for her office area, outside of working hours. Purchasing furniture and taking care of the building were the responsibility of Plaintiff Christine Romero as Business Manager, not

-3-

Cindy Martinez. All this behavior affected the terms and conditions of Plaintiff Christine Romero's employment.

9. During this time Defendant Brito never gave Plaintiff Christine Romero any gifts. He never went to her house. He never took her shopping. He never had lunch with her.

10. On another occasion, Defendant Brito closed the entire office so that Cindy Martinez could take off from work, when she had limited remaining leave left.

11. In addition, Defendant Brito would visit Cindy Martinez at her house frequently, and Cindy Martinez visited him in the rectory, several times, even though there was no job-related reason for her to be in the rectory.

12. Defendant Brito would hug Cindy Martinez in the work place frequently, in the presence of Plaintiff Christine Romero and others.

13. Defendant Brito shut Plaintiff Christine Romero off from office communications, communicating office information only to Cindy Martinez, which was contrary to past practices in the parish and contrary to Plaintiff Christine Romero's job responsibilities and duties as business manager. Defendant Brito thus effectively prevented Plaintiff Christine Romero from doing her job, affecting the terms and conditions of her employment.

14. In approximately late July, 2016, Plaintiff Christine Romero told Defendant Brito that Cindy Martinez was saying that she loved him and that he was the answer to her dreams. Plaintiff Christine Romero also reported to Defendant Brito that Cindy Martinez was bragging that she had a close relationship with Defendant Brito, and that

-4-

he would go to her house. Plaintiff Christine Romero protested the close relationship Defendant Brito had with Christine Romero to her direct supervisor, Defendant Brito.

15. In addition, Plaintiff Christine Romero protested this close relationship, and the inappropriate nature of the relationship and the sexual harassment to Defendant Archdiocese's Human Resources Director, on multiple occasions. Each time, Defendant Archdiocese did nothing and refused to take prompt remedial action.

16. From the time of those communications and these protests forward, Defendant Brito's attitude towards Plaintiff Christine Romero changed from being cool to being hostile. Examples of this hostility included forbidding her to attend Santo Niño finance council meetings, forbidding her to attend deanery meetings, and forbidding her to work with contractors with whom she had worked in the past. Moreover, Defendant Brito specifically instructed Plaintiff Christine Romero to hire a contractor where the nephew of Cindy Martinez worked. All these actions prevented Plaintiff Christine Romero from doing her job and affected the terms and conditions of Plaintiff Christine Romero's employment.

17. In addition, Defendant Brito forbade Plaintiff Christine Romero to open the office, even though this had been her job duty for the past 12 years, and even forbade her to turn the office lights on, stating that only Cindy Martinez could do this. These orders prevented Plaintiff Christine Romero from doing her job and affected the terms and conditions of Plaintiff Christine Romero's employment.

18. In July, 2016, Defendant Brito ordered Plaintiff Christine Romero to obtain a "Reserved" sign for Cindy Martinez to park in the parking lot. As a result and on Defendant Brito's orders, Cindy Martinez became the only person in the parish who had

-5-

a reserved parking space, for the 400 parking spaces at the parish. When Plaintiff Christine Romero complied with this order, Defendant Brito then berated Plaintiff Christine Romero for not putting Cindy Martinez's name on the sign, even though Defendant Brito had never ordered Plaintiff Christine Romero to put Cindy Martinez's name on the sign.

19. In addition to ordering Plaintiff Christine Romero to create a reserved parking space for Cindy Martinez, Defendant Brito ordered her to re-stripe the parking spaces and to relocate a handicap space so that the Cindy Martinez space would be "in the shade."

20. In September 2016, at a Pastoral Council meeting, Defendant Brito deliberately embarrassed Plaintiff Christine Romero by publicly scolding her. When Plaintiff Christine Romero protested this public scolding, Defendant Brito began to shout at her, told her he did not care, and told her to go home and tell her husband about her feelings. Plaintiff Christine Romero then protested that Defendant Brito was diminishing her job responsibilities and favoring Cindy Martinez. Defendant Brito firmly told Plaintiff Christine Romero that Cindy Martinez spoke with his authority, and yelled at Plaintiff Christine Romero that she was jealous of Cindy Martinez.

21. All of this conduct between Defendant Brito and Cindy Martinez was subjectively offensive to Plaintiff Christine Romero and was objectively offensive and inappropriate in the workplace.

22. Following Plaintiff Christine Romero's protests of the close and improper relationship between Defendant Brito and Cindy Martinez, Defendant Brito summarily fired Plaintiff Christine Romero, without cause or reason to do so, shortly before

-6-

Thanksgiving, on November 22, 2016. In his termination letter, Defendant Brito professed the pretextual reason for the firing that Plaintiff Christine Romero was in conflict with his style of leadership, when the real reason was his retaliation for her protest of hostile environment sexual harassment.

23. Defendant Brito's retaliatory firing of Plaintiff Christine Romero was a tangible employment action.

24. Employer liability is presumed where there is actionable sexual harassment and the harassing employee has supervisory authority over the victimized employee. Further, Defendants' retaliatory firing of Plaintiff Christine Romero was tangible employment action, so that strict liability attaches and no affirmative defenses are allowed. *See Ocana v. American Furniture Co.*, 2004-NMSC-018 ¶ 26.

25. Defendant Archdiocese maintains an employee handbook, called The Archdiocese Employee Handbook and Guidelines ("Guidelines"). The Guidelines apply to employees located at St. Anne Parish, such as Plaintiff Christine Romero, and are part of an implied employment contract between Defendant Archdiocese and Plaintiff Christine Romero.

26. Plaintiff Christine Romero was a "Regular Employee" as defined in the Guidelines.

27. Contrary to the Guidelines, Defendant Brito engaged in behavior designed to favor another employee at Romero's expense. Defendant Brito's behavior was geared to break the "spirit" and "empowerment" of Plaintiff Christine Romero. Defendant Brito engaged in a consistent pattern of behavior designed to force Romero out of her employ, contrary to the stated "Mission" of the Parish and the Catholic Church. When

-7-

Defendant Brito could not succeed in breaking Plaintiff Christine Romero's spirit, he summarily fired her without cause, reason, or justification to do so.

28. Disciplinary Procedures for regular employees are contained at ¶ N of the Guidelines. Such procedures include the promise to apply Progressive Discipline and promise Archdiocese employees and Plaintiff Christine Romero, in the event they are to be disciplined at work, that the following progressive discipline will be applied, in the order represented: 1. An Oral Reprimand, 2. Warning notice in writing, 3. Warning notice and suspension, and, 4. Termination.

29. The Guidelines include 27 examples of misconduct and negligence which could warrant discipline.

30. Further, the Guidelines at ¶ P, TERMINATION POLICY, provide: "The Archdiocese of Santa Fe may terminate an employee for just cause."

31. Further the Guidelines provide: "Termination occurs after all the steps of the Disciplinary Procedures (II-10 N) have been taken."

32. In addition, according to the Director of Human Resources for Defendant Archdiocese, when terminations occur, Defendant Archdiocese has to follow its policies, and Defendant Archdiocese is a just-cause employer. The Archdiocese is always concerned that terminations are only for cause and are properly documented.

33. At no time, during the 12 years of employment with Defendant Archdiocese at St. Anne's parish did Romero engage in any of the 27 examples of misconduct and negligence which could warrant discipline or termination under the Guidelines of Defendant Archdiocese.

-8-

34. Never during the 12 years of employment at St. Anne's parish did Romero receive discipline, a reprimand, or a warning about her work or attitude that would warrant discipline or termination under the Guidelines.

35. Defendants Brito and the Archdiocese wrongfully and summarily terminated Plaintiff Christine Romero from her employment without cause, warning, progressive discipline, or justification to do so, in violation of the Guidelines of Defendant Archdiocese and New Mexico law.

36. Defendants' termination of Plaintiff Christine Romero was particularly callous. Even though Defendant Brito knew as of November 21, 2016 that he would fire Plaintiff Christine Romero with the approval of Defendant Archdiocese, Defendant Brito did not tell her at the end of that day. Rather, Defendant Brito waited until the next day to fire Plaintiff Christine Romero so that the firing could be witnessed by the parish staff, including Cindy Martinez, thus making a spectacle of her firing to humiliate Plaintiff Christine Romero and make himself look important. Defendant Brito uncharitably fired Plaintiff Christine Romero right before Thanksgiving, in a punitive, retaliatory, callous, and unwarranted action.

37. Further, Defendant Brito refused to pay severance pay to Plaintiff Christine Romero, contrary to the Archdiocese Guidelines and its policies and procedures.

38. On May 5, 2017, within 300 days of Defendants' illegal conduct and adverse employment actions, Plaintiff Christine Romero timely filed a Charge of Discrimination with the State of New Mexico, Department of Workforce Solutions, Labor Relations Division, Human Rights Bureau. This Charge of Discrimination was assigned HRB Number 17-05-05-0145, was cross-filed with the United States Equal Employment

-9-

Opportunity Commission, as allowed by law, and assigned EEOC Number 38B-2017-01359.

39. On or about September 13, 2017, the State of New Mexico issued a Determination of No Probable Cause, through a letter sent Certified Mail, Return Receipt Requested. This Determination was received by Plaintiff Christine Romero on or about September 15, 2017.

40. This Court has jurisdiction of the subject matter and the parties. Venue is proper in this Court.

**COUNT I**
**APPEAL FROM A DETERMINATION BY THE**
**HUMAN RIGHTS BUREAU, LABOR RELATIONS DIVISION,**
**DEPARTMENT OF WORKFORCE SOLUTIONS**
**PURSUANT TO N.M.S.A. 1978, § 28-1-13 (2005)**

41. Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her first cause of action against Defendants, the Archdiocese and Brito, hereby timely appeals the Determination of No Probable Cause in Case Number 17-05-05-0145 , pursuant to N.M.S.A. 1978, § 28-1-13 (2005), and states as follows:

42. At times material to the allegations of this Appeal and Complaint, Defendant Brito and the Archdiocese subjected Plaintiff Christine Romero to sexual harassment, contrary to law, such harassment affecting the terms and conditions of her employment. Plaintiff Christine Romero protested this sexual harassment, thus engaging in protected activity.

-10-

43.  After Plaintiff Christine Romero engaged in protected activity as allowed by law, and because she engaged in such activity, Defendants retaliated against her by summarily firing her, such firing being an adverse employment action.

44.  On or about September 13, 2017, the Human Rights Bureau, Labor Relations Division, Department of Workforce Solutions, issued a Determination of No Probable Cause in Case No. 17-05-05-0145.  This Determination of No Probable Cause is attached hereto as Exhibit "1."

45.  Plaintiff Christine Romero, pursuant to N.M.S.A. 1978, § 28-1-13 (2005), within 90 days from such Determination timely appeals this Determination to this Court.

46.  As a direct and proximate result of the illegal actions of Defendants, Plaintiff Christine Romero has suffered damages, in an amount to be shown at trial.

**COUNT II**
**VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT**
**N.M.S.A. 1978, § 28-1-7 (2004) (sexual harassment)**

47.  Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her second cause of action against Defendants, the Archdiocese and Brito, for sexual harassment in violation of the New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-7 (2004), states as follows:

48.  At times material to the allegations of this Appeal and Complaint, Defendant Brito and the Archdiocese subjected Plaintiff Christine Romero to sexual harassment, contrary to law.  No ministerial exception applies that provides immunity for this illegal sexual harassment.

-11-

49. On or about September 13, 2017, the Human Rights Bureau, Labor Relations Division, Department of Workforce Solutions, issued a Determination of No Probable Cause in Case No. 17-05-05-0145.

50. Plaintiff Christine Romero, pursuant to N.M.S.A. 1978, § 28-1-13 (2005), has exhausted her administrative remedies with respect to her claim of sexual harassment and within 90 days from such Determination timely appealed this Determination to this Court.

51. As a direct and proximate result of the illegal actions of Defendants, Plaintiff Christine Romero has suffered damages, in an amount to be shown at trial.

## COUNT III
## VIOLATIONS OF THE NEW MEXICO HUMAN RIGHTS ACT
## N.M.S.A. 1978, § 28-1-7 (2004) (retaliation)

52. Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her third cause of action against Defendants, the Archdiocese and Brito, for retaliation in violation of the New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-7 (2004), states as follows:

53. Plaintiff Christine Romero had a good faith reasonable belief that the conduct of Defendant Brito with Cindy Martinez to which she was subjected was hostile environment sexual harassment.

54. After Plaintiff Christine Romero engaged in protected activity by protesting this sexual harassment, and as a direct result of this protest and protected activity, Defendants Brito and the Archdiocese retaliated against her by summarily firing her,

-12-

contrary to law. No ministerial exception applies that provides immunity for this illegal retaliation.

55. On or about September 13, 2017, the Human Rights Bureau, Labor Relations Division, Department of Workforce Solutions, issued a Determination of No Probable Cause in Case No. 17-05-05-0145.

56. Plaintiff Christine Romero, pursuant to N.M.S.A. 1978, § 28-1-13 (2005), has exhausted her administrative remedies with respect to the retaliation and within 90 days from such Determination timely appealed this Determination to this Court.

57. As a direct and proximate result of the illegal actions of Defendants, Plaintiff Christine Romero has suffered damages, in an amount to be shown at trial.

## COUNT IV
## BREACH OF IMPLIED CONTRACT OF EMPLOYMENT

58. Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her fourth cause of action, for breach of an implied contract of employment against Defendant, the Archdiocese, states as follows;

59. At all times material to the allegations of the Complaint, there existed an implied contract of employment between Plaintiff Christine Romero and Defendant Archdiocese, that Plaintiff Christine Romero would be free from unwanted harassment and abuse and would be treated with dignity and respect, that she could be fired only for cause, and then only after application of the appropriate progressive discipline.

-13-

60. Defendant Archdiocese, individually and acting through Defendant Brito, breached this contract.

61. As a direct and proximate result of this breach, Plaintiff Christine Romero has suffered damages, in an amount to be shown at trial.

## COUNT V
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

62. Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her fifth cause of action, for breach of the implied covenant of good faith and fair dealing against Defendant, the Archdiocese, states as follows:

63. As part of the implied contract of employment between Plaintiff Christine Romero and Defendant Archdiocese, Defendant Archdiocese had a duty of good faith and fair dealing. Every contract in New Mexico imposes a duty of good faith and fair dealing. *Bogle v. Summit Investment Co., LLC*, 2005-NMCA-024 ¶ 16, 137 N.M. 80, *citing Watson Truck & Supply Co. v. Males*, 1990-NMSC-105, 111 N.M. 57, 60; *Gilmore v. Duderstadt*, 1998–NMCA–086, ¶ 24, 125 N.M. 330. This implied covenant requires that neither party do anything that will injure the rights of the other party to receive the benefit of the agreement. *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, 117 N.M. 434.

64. Defendant Archdiocese, individually and acting through Defendant Brito, breached this duty.

-14-

65.  As a direct and proximate result of this breach, Plaintiff Christine Romero has suffered damages, in an amount to be shown at trial.

## COUNT VI
## ATTORNEY'S FEES

66.  Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her sixth cause of action, for attorney's fees, states as follows:

67.  The New Mexico Human Rights Act, N.M.S.A. 1978, § 28-1-13(D) provides that the Court may, in its discretion, award attorney fees to the prevailing party in an appeal brought under the Act.

68.  Plaintiff Christine Romero respectfully requests that the Court award her such fees as allowed by law.

## COUNT VII
## PUNITIVE DAMAGES

69.  Plaintiff Christine Romero incorporates the foregoing allegations of the Appeal and Complaint as if fully set forth below, and for her seventh cause of action, for punitive damages, states as follows:

70.  The aforesaid actions of the defendants, and each of them, were willful, wanton, reckless, malicious, oppressive, and in bad faith so as to warrant an additional award of punitive damages, as allowed by law.

-15-

WHEREFORE:

Plaintiff Christine Romero has stated her Notice of Appeal From a Determination by the Human Rights Bureau, Labor Relations Division, Department of Workforce Solutions, and Complaint for Violations of the New Mexico Human Rights Act, Breach of Implied Employment Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Attorney Fees, and Punitive Damages, and respectfully asks the Court to award compensatory damages, punitive damages, costs, pre-judgment interest, and any other relief the Court deems just and proper.

Respectfully Submitted By:

O'FRIEL and LEVY, P.C..
Attorneys for Plaintiff Christine B. Romero

By_____
 Pierre Levy, Esq.
 P.O. Box 2084
 Santa Fe, New Mexico 87504-2084
 (505) 982-5929
 pierre@ofrielandlevy.com

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to N.M.S.A. 1978, § 28-1-13(A) a true and correct copy of the foregoing was mailed, via firs class certified mail return receipt requested, to the following person(s) this 31st day of October, 2017:

> Archdiocese of Santa Fe/St. Anne Parish
> c/o Sara N. Sanchez, Esquire
> Stelzner, Winter, Warburton, Flores Sanchez & Dawes, P.A.

-16-

P.O. Box 528
Albuquerque, New Mexico 87103-0528

Larry Brito
c/o Sara N. Sanchez, Esquire
Stelzner, Winter, Warburton, Flores Sanchez & Dawes, P.A.
P.O. Box 528
Albuquerque, New Mexico 87103

Jason Dean, Division Director
State of New Mexico Department of Workforce Solutions
Labor Relations Division
Human Rights Bureau
1596 Pacheco St., Suite 103
Santa Fe, New Mexico 87505-3979

Pierre Levy

SUSANA MARTINEZ
GOVERNOR



CELINA BUSSEY
SECRETARY

JOHN SANCHEZ
LT. GOVERNOR

### STATE OF NEW MEXICO
### DEPARTMENT OF WORKFORCE SOLUTIONS

Labor Relations Division
Human Rights Bureau
1596 Pacheco St., Ste. 103
Santa Fe, NM 87505-3979
Phone: (505) 827-6838
Fax: (505) 827-6878

*DETERMINATION OF NO PROBABLE CAUSE*

September 13, 2017

CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Ms. Christine B. Romero
2189 Candelero St.
Santa Fe, NM 87505

Re: Christine B. Romero v. Archdiocese of Santa Fe/St. Anne's Parish/Fr. Larry R. Brito
HRB #17-05-05-0145
EEOC #39B-2017-01359

Dear Ms. Romero:

In accordance with Section 28-1-10(B) of the New Mexico Human Rights Act, the State of New Mexico Department of Workforce Solutions Human Rights Bureau (the "Bureau") issues this determination of no cause, based on its investigation of the above-referenced complaint.

In your May 5, 2017, charge of discrimination, you allege you were discriminated against on the bases of Sex and Retaliation in violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, both as amended.

The records and statements submitted to the Human Rights Bureau for review show:

- You state that you were employed as the business manager at St. Anne's Parish beginning May 3, 2004.
- You state that on June 11, 2016, you started reporting to Fr. Larry R. Brito, who had been assigned as parish priest. You state that from the beginning Fr. Brito's attitude toward you was cool.
- You state that Fr. Brito removed Cindy Martinez from your supervision and treated her preferentially, including giving her gifts, closing the office so she could take time off, visiting her at her home, and giving her a reserved parking space. You state that you had



EXHIBIT
1

to go through Ms. Martinez to make an appointment with Fr. Brito and that she shut you off from office communications, only communicating office business with her.

- You state that in July 2016 you discussed Ms. Martinez's inappropriate statements with Fr. Brito, and that he agreed it was inappropriate conduct and said he would talk to her. You state that after that, Fr. Brito's attitude toward you changed from cool to hostile. You state that he forbade you from attending finance council meetings and instructed you to hire a contractor where Ms. Martinez's nephew worked.

- You state that in September 2016 Fr. Brito deliberately embarrassed you by scolding you in public, and yelled at you when you discussed it with him. You state that Fr. Brito discharged you.

- Respondents state that it investigated your allegations, found them to be without merit, and asserts that your allegations would not constitute gender discrimination or retaliation even if they were true. Respondents state it is not the case that Ms. Martinez was favored, but even if she were, favoring another female would not constitute gender discrimination.

- Respondents state that Fr. Brito and other parish staff attempted to work professionally with you over the course of months, but your behavior and attitude were so disruptive, resistant and unprofessional that Fr. Brito was left with no choice but to terminate your employment.

- Respondents state your employment was terminated on November 21, 2016 for refusal to accept assignment/division of work duties/responsibilities, resistance to supervision, and creating an unhealthy work environment. Your personnel file and statements from Fr. Brito and Ms. Martinez were provided in support. Your termination letter states that your termination is based on "your resistance to change and [failure] to cooperate with [Fr. Brito's] vision of leadership."

- Respondents state that the only complaint you claim to have made to Fr. Brito concerned Ms. Martinez allegedly bragging about having a close relationship with him, which was not a complaint of discrimination and was not a protected activity.

- Respondents state that your employment was subject to the ministerial exception as you made decisions related to church governance. In your rebuttal, you disagree with the assertion that the ministerial exception applies to your employment. As it is unclear whether your employment would be subject to the ministerial exception and a response to your claims was provided, the Bureau will proceed with making a determination based on the evidence.

- In your rebuttal, you assert that Respondents' attempt to construe your claim as one of favorable treatment given to another female employee is incorrect, and you assert that what your complaint actually entails is a claim of hostile environment sexual harassment affecting the terms and conditions of your employment because Fr. Brito and Ms. Martinez "maintained an overly sexual relationship within the work environment." You claim that the "lovey-dovey relationship" between them "was both subjectively and objectively offensive." Evidence fails to support your claim that you were subjected to a sexually hostile work environment.

- You assert that you did engage in a protected activity by protesting the harassment to Fr. Brito. Evidence fails to support your claim that you complained about sexual harassment or discrimination such as would create a basis for a retaliation claim.

- You provide a letter from Fr. Leo Ortiz stating that you are a good employee. Evidence shows that Respondents do not contest that you were a good employee when Fr. Ortiz was present, but rather assert that you became difficult to work with after Fr. Brito was brought on.

After considering all the evidence submitted by the parties to the Bureau, I find the evidence insufficient to show that the Respondent unlawfully discriminated against you on the basis of Sex or Retaliation. Therefore, I have determined that NO PROBABLE CAUSE exists to believe that discrimination occurred, and I am hereby DISMISSING, with prejudice the above-referenced complaint. The Respondents will be notified by copy of this Determination.

You may obtain judicial review of this Determination of No Probable Cause by filing a notice of appeal in the form of a complaint with the District Court of the county where the alleged discriminatory practice occurred or where the Respondent does business. The Bureau should not be named as a party to the appeal, unless you have an independent and separate claim against the Bureau. The appeal to the District Court is in the nature of a lawsuit between the parties. The notice of appeal must be filed within ninety (90) days of the date of service of this Determination and in accordance with NMSA 1978, §28-1-13 of the New Mexico Human Rights Act and Rule 1-076 NMRA of the Rules of Civil Procedure for the District Courts. You must serve a copy of the notice of appeal personally or by certified mail, return receipt requested, on all parties at their last known address and on the Bureau at its office in Santa Fe.

IF YOU DO NOT FILE A NOTICE OF APPEAL WITH THE APPROPRIATE DISTRICT COURT WITHIN NINETY DAYS OF SERVICE ON YOU OF THIS DETERMINATION AND PROPERLY SERVE THE NOTICE OF APPEAL, AS REQUIRED BY § 28-1-13, YOUR NOTICE OF APPEAL MAY NOT BE CONSIDERED BY THE COURT.

Because the above-referenced complaint was concurrently filed with the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Federal Civil Rights Act of 1964 and/or the Americans with Disabilities Act, you also have the right to request that the EEOC conduct a *Substantial Weight Review* of this Determination.
If you have any questions regarding a *Substantial Weight Review*, please contact:

> *Ms. Cherrie Martin*
> *State and Local Program Manager*
> *EEOC Phoenix District Office*
> *3300 N. Central Ave., Ste. 690*
> *Phoenix, AZ 85012*
> *(602) 640-5064*
> *(602) 640-5071 Fax*

To obtain a *Substantial Weight Review*, you must send your request in writing, within 15 days of the date of your receipt of this Determination to the above address.

YOUR REQUEST FOR A SUBSTANTIAL WEIGHT REVIEW BY THE EEOC WILL NOT EXTEND THE 90-DAY PERIOD FOR APPEAL TO THE DISTRICT COURT. IF YOU INTEND TO APPEAL, YOU MUST DO SO WITHIN 90 DAYS FROM RECEIPT OF THIS DETERMINATION, EVEN IF YOU REQUEST A REVIEW BY THE EEOC.

Respectfully,

Jason Dean
Division Director

JD/jp

cc:     Pierre Levy, Attorney for Charging Party
        Sara N. Sanchez, Attorney for Respondents

# ARCHDIOCESE OF SANTA FE

UNUM Life Insurance Package Enrollment
(Life, Dependent Life, AD&D, LTD)

Name _Romero_ _Christine_ _B._
　　　Last　　　　　First　　　　　Middle Initial

Current Address _2189 Candelero St. SF NM, 87505_

Social Security Number ▮▮▮▮▮▮▮▮ Date of Birth _12/23/59_

Sex: M ___ (F) Married: (Yes) No ___ Number of Children _3_ Ages _20, 23, 24_

Occupation _Business Manager_ Annual Salary ___

Place of Employment _St. Anne - Santa Fe_ Date of Employment _5/3/04_

Beneficiary Designation: Please Print

1. _Romero_ _Gilbert_ _M._ ▮▮▮▮▮▮ _6/15/62_
　Last name　　　First　　　　M　Social Security #　DOB

Address _____ Phone #

2. _Sandoval, Kathryn_ _V._ ▮▮▮▮▮▮ _6/7/90_
　Last name　　　First　　　　M　Social Security #　DOB

Address _____ Phone #

3. _Romero, Lynda_ _R._ ▮▮▮▮▮▮ _12/17/91_
　Last name　　　First　　　　M　Social Security #　DOB

Address _____ Phone #

Unless otherwise provided herein, if two or more beneficiaries are named, the proceeds shall be paid in equal shares to the named beneficiaries surviving the member. If no beneficiary has been designated, any proceeds will be payable as provided by the group policy.

I work at least 30 hours per week and am eligible to enroll in this coverage. I hereby declare that, to the best of my knowledge and belief, the information given here is correctly recorded, complete and true.

Signature _Christine B. Romero_ Date _1/28/15_

---

### For Office Use Only

Life [ ] 　 A D & D [ ] 　 Dep Life [ ] 　 LTD [ ]

Rev. 11/14/2014


EXHIBIT
2

ASF.ROMERO.000036

## FRAUD POLICY AND FRAUD RESPONSE PLAN

### Archdiocese of Santa Fe



## OBJECTIVE

The revised code Code of Canon Law, effective November 27, 1983, addresses extensively the responsibilities of bishops and their delegates as administrators of the Church's temporal goods. Ultimately, the Archbishop has the duty to ensure that no abuses exist in the administration of Church goods within the Archdiocese. This policy is promulgated to support and assist the Archbishop in that responsibility.

The Archdiocesan Finance Council provides review, oversight and counsel to the Archbishop at the Archdiocesan level. At the local level, the parish finance council is to provide the pastor or administrator with similar advice and counsel. The Archdiocesan internal auditors also serve a vital role in the review and monitoring of various internal controls at the parish level. This document should be made available to all parish and school employees and volunteers and studied together for sound parish stewardship in this matter.

The Archdiocese of Santa Fe is committed to the highest possible standards of accountability in all its affairs. It is determined to develop a culture of the Gospel, one of honest and accountable stewardship and opposition to fraud and embezzlement. An environment which allows any embezzlement or fraud is not acceptable, and all criminal, civil and canon laws will be strictly enforced.

In line with that commitment, this document outlines the principles we are committed to in relation to reporting and managing fraud and embezzlement. The principles for preventing fraud and safeguarding assets are outlined in this manual in the Internal Control Policies and Procedures section. This document in no way supercedes those requirements, but is intended to reinforce them. It will outline the steps that are to be taken in the event of suspicion of fraud or actual fraud and communicate how it will be dealt with. These actions apply to priests, religious, lay employees, volunteers, parishioners or any person suspected of fraud or embezzlement.

The Archdiocese encourages all clergy, religious, lay leaders, employees, parishioners and volunteers to come forward and report instances of fraud and embezzlement and provides assurance against recrimination.

## COURSE OF ACTION

1. All suspected or documented fraud or embezzlement should be immediately reported to the office of the Director of Finance. An initial report of the incident must be documented in writing by the complainant and provided to the Director of Finance. All complaints and reports of suspected embezzlement will be kept

EXHIBIT

3

ASF.ROMERO.000037

confidential in order to protect both the complainant and the suspected embezzler. The complainant will be notified of the action taken by the Archdiocese within fourteen days.

2. The Director of Finance will coordinate closely with the Pastor, as necessary, during the investigative process until final resolution.

3. The suspected embezzler should not be approached or apprehended.

4. The premature approach might jeopardize the gathering of necessary evidence, result in a needless lawsuit or cause physical harm to the persons involved. The clergy, religious, lay employee or volunteer, shall not communicate with any other priest, lay person, employee, parishioner, volunteer or finance council member concerning the suspected embezzlement until he is notified by the Director of Finance. All information regarding the incident should remain confidential by the complainant.

5. Neither the pastor, associate pastor, parish finance council nor any person at the parish level has the authority to release the suspected person from liability or agree to terms of restitution. There should be no attempt to contact law enforcement agencies or a lawyer at the parish level, or to deal with the suspected embezzler at the parish level. The office of the Director of Finance will coordinate contact with appropriate law enforcement agencies on behalf of the Archdiocese.

6. The Director of Finance will consult with the proper Archdiocesan officials and consultants to discern appropriate actions to pursue in light of canonical, civil and criminal statutes, the nature of the allegation and other significant circumstances.

7. In order to protect the innocent and secure the evidence, no internal control procedures or other operating controls, or employees, should be changed until requested or instructed by the Director of Finance. In all instances the parish shall work in conjunction with the Director of Finance and the Archdiocese to resolve the fraudulent financial situations. The matter must not be handled at the parish level in any way. This could lead to erroneous information being obtained, improper allegations being leveled or the inability of the Archdiocese to properly pursue the matter in line with canon, civil and criminal law.

8. The Director of Finance will also notify the appropriate insurers.

## FRAUD RESPONSE PLAN

The Archbishop or his delegate and the Director of Finance, in consultation with the Archdiocesan Finance Council and any other consultants deemed necessary, will make the determination of how fraud and embezzlement is handled. This includes decisions regarding when criminal and civil authorities and insurers are to be notified. All civil, criminal and canon laws will be strictly adhered to.

General guidelines are as follows:

- Once sufficient facts have been uncovered to determine that a fraudulent activity has occurred, the Director of Finance or his designee shall contact appropriate law enforcement authorities and insurers to report the circumstances.

Case 18-13027-t11    Doc 79    Filed 01/22/19    Entered 01/22/19 12:30:28 Page 36 of 60
ASF-ROMERO.000038

- In all instances the offender will be removed from the situation in which the fraud occurred. Administrative leave may be invoked on a temporary basis during the investigative process.
- As a matter of justice and vigilance in preventing the creation of an environment which allows for fraud, restitution will be sought in all cases, regardless of the amount of the embezzlement.

## TYPES OF FRAUD

The following list includes fraud and embezzlement to be aware of and watch for. While several types are listed below, others may happen that are not included in the list.

### Collusion

Two or more individuals overriding the control system can collectively perpetrate and conceal actions from detection. This could include collusion between an employee and a vendor or customer, or another employee.

### Lapping

This is one of the most common types of fraud. It is the postponement of entries for the collection of receivables to conceal a cash shortage. The fraud is perpetrated by a person who records cash in the cash receipts journal and the accounts receivable journal. The employee defers the recording of the cash receipts from one source and covers the shortage with receipts from another source.

### Theft

Theft is the diversion of cash, checks or other assets before they are recorded by the accounting system of the parish or school. It can take the form of removing cash from the collections basket or mail, taking cash or goods donated to the parish or school or diverting checks to another bank account.

### Accounts Payable

An employee may create payments to false vendors or create phony addresses to which payments are sent. Invoices could also be overpaid, with the refunds pocketed by the employee.

### Payroll Ghosts

Another common form of fraud is to create false employees. Paychecks are then issued to the false employee and diverted into a bank account. Unauthorized pay charges and not recording vacations taken are other frequent forms of fraud.

Case 18-13027-t11   Doc 79   Filed 01/22/19   Entered 01/22/19 12:30:28 Page 37 of 60

ASF.ROMERO.000039

## Kickbacks

An employee may take bribes or kickbacks from suppliers or vendors. This is more difficult to document because they are usually in cash.

## Supplies or Inventory Embezzlement

An employee may purchase, with the parish or school's funds, supplies or equipment for personal use. Inventory or supplies may also be stolen from the parish or school.

## Other Types of Fraud or Embezzlement

Individuals may come up with other methods of fraud or embezzlement. These include inflating personal expense reimbursement amounts, using the parish gross receipts tax exemption for personal purchases, stealing stamps or other office supplies, falsifying time cards, misappropriating petty cash, or other theft.

Case 18-13027-t11    Doc 79    Filed 01/22/19    Entered 01/22/19 12:30:28 Page 38 of 60

ASF.ROMERO.000040

I have read the "Fraud Policy and Fraud Response Plan" and understand its purpose and content.

_Christine B. Romero_
Signature

_Business Manager_
Position

Christine B. Romero
Printed Name

3/28/06
Date

(To be placed in personnel file or volunteer's record of service file)

Case 18-13027-t11    Doc 79    Filed 01/22/19    Entered 01/22/19 12:30:28 Page 39 of 60
ASF:ROMERO.000041



Uniform Job Application Form
for
# THE ARCHDIOCESE OF SANTA FE

Archdiocesan Entity:

Address:

Telephone #:

The Archdiocese of Santa Fe is an Equal Opportunity Employer and considers all candidates for employment equally regardless of race, color, national origin, sex, age or handicap. Because of its status as a religious entity, the archdiocese may consider the candidate's religious affiliation in its employment decisions, consistent with State and Federal law.

| Date: | Name: Last  Romero | First  Christine | Middle  B. |
|---|---|---|---|

[black redaction box]

Social Security Number:     Driver's License# & State     (Area Code) Telephone No.:

7189 Candelero, ST NM 87505

| Current Address – Number & Street | City | State | Zip Code |
|---|---|---|---|

N/A

Previous Address

Business Manager                St Anne's

| Position Applied For: | Location of Position | Part-time: _____  Full-time: _____ |
|---|---|---|

5/3/04

| If hired, date available: | Minimum Salary Requirements: |
|---|---|

| U.S. Citizen:  Yes __ No ____ | If not a citizen of the U.S., have you the legal right to remain permanently in the U.S.? | Yes ____ No ____ |
|---|---|---|

Are you between the ages of 18 and 70?     Yes ____ No ____

Are you related to anyone employed by the Archdiocese?     Yes ____ No
If so, whom & what department?     Relationship:

| EDUCATION | Name used on School Records: | | | |
|---|---|---|---|---|
| Type of School | Name & Address of School | Degree | Major Subject | Minor Subject |
| High School | | | | |
| College | College of St. | BA | Business | |
| Graduate School | CHES – Masters Degree | | — | UNM |
| Tech., Business or Other | | | | |

12

**EXHIBIT 4**

**EMPLOYMENT HISTORY** (Start with your present or most recent position. Include experience in the armed forces of the U.S. Please feel free to attach additional information where appropriate, such as a resume.

| (1) | Date: | Salary: | Firm Name and Address |
|---|---|---|---|
| | Starting _____ | | State of NM - 25 yrs |
| | Ending _____ → | $17,000.00 | |

| (Area Code)/Phone Number | Type of Business: |
|---|---|

Title Division Directors     Responsibilities: Human Resources

Name/Title of Supervisor George Parascandola     Department: Dept. of Health

Reason for seeking new employment:

May we contact this employer now?  Yes_____  No_____  Name used when employed:

| (2) | Date: | Salary: | Firm Name and Address |
|---|---|---|---|
| | Starting _____ | _____ | |
| | Ending _____ | | |

| (Area Code)/Phone Number | Type of Business: |
|---|---|

Title _____     Responsibilities:

Name/Title of Supervisor:     Department:

Reason for seeking new employment:

May we contact this employer now?  Yes_____  No_____  Name used when employed:

| (3) | Date: | Salary: | Firm Name and Address |
|---|---|---|---|
| | Starting _____ | _____ | |
| | Ending _____ | | |

| (Area Code)/Phone Number | Type of Business: |
|---|---|

Title _____     Responsibilities:

Name/Title of Supervisor:     Department:

Reason for seeking new employment:

May we contact this employer now?  Yes_____  No_____  Name used when employed:

13

Case 18-13027-t11   Doc 79   Filed 01/22/19   Entered 01/22/19 12:30:28 Page 41 of 60
ASF.ROMERO.000046

What equipment relative to this position do you operate?

Languages (other than English):_____ Read_____ Speak_____ Write_____
                                _____ Read_____ Speak_____ Write_____
                                _____ Read_____ Speak_____ Write_____

Have you ever served in the U.S. Armed Forces? _____ Yes _____ No

Date entered:          Date discharged:       Branch of service:          Highest rank:

**INTEREST:** Use the space below to describe your interest in the Archdiocese of Santa Fe and the skills and aptitudes that you feel qualify you for a position at the Archdiocese of Santa Fe. (You may wish to include civic and community activities, professional societies in which you participate, special training or skills.)

_____
_____
_____
_____

Referred by (name of person, firm, agency, advertisement, etc.):_____

Are you a former employee of the Archdiocese? _____ Yes _____ No
    Last date worked _____ Job Title _____

Have you previously applied for employment with the Archdiocese? _____ Yes _____ No
If yes, when?_____ Religious affiliation, if any? _____

## SUPPLEMENTAL PERSONAL DATA

Although the following information is somewhat sensitive, we are obligated to request it in order to fulfill our responsibilities as an employer to screen candidates for employment in the Archdiocese. If you are unable to answer the following questions for any reason, our Director of Human Resources will visit with you privately to discuss them with you.

1) Have you ever been convicted of a crime with the exception of minor traffic offenses?
       _____ Yes _____ No
    If yes, please provide explanation: City_____ Date_____
    Charge_____ Disposition_____

2) Has a civil or criminal complaint ever been filed against you alleging physical abuse or sexual abuse by you? _____ Yes _____ No  If yes, give a short explanation of the complaint. (Please indicate the date, nature and place of the incident leading to the complaint, where the complaint was filed, and the disposition of the complaint.)

_____
_____
_____

14

Section XII                                                    January 2001

Case 18-13027-t11   Doc 79   Filed 01/22/19   Entered 01/22/19 12:30:28 Page 42 of 60
ASF-ROMERO.000047

3) Have you ever terminated your employment or had your employment terminated for reasons relating to allegations of physical abuse or sexual abuse by you?

_____Yes____ (No)   If yes, give a short explanation of the allegations. (Please indicate the date, nature and place of the allegations, the disposition of the allegations, and your employer at the time, including your employer's name, address, and telephone number.)

_____

_____

_____

4) Please present your personal views on physical and sexual abuse.  Please write clearly.

Wrong, Legally, Morally + Ethically

_____

5) Are you aware of any reason you cannot reasonably perform the duties outlined in the job description provided to you?  (If no job description provided, please disregard this question.)   NO

_____

_____

I certify that the statements made in this application are true and correct to the best of my knowledge and that any deliberate falsification could result in termination of my employment. Permission is hereby granted to the Archdiocese of Santa Fe to obtain verification of the statements made herein and to obtain employment references.  All reference information will be confidential and will be considered the property of the Archdiocese of Santa Fe.

_____          _____ 6/4/12 _____
Signature of Applicant                              Date

15

Case 18-13027-t11   Doc 79   Filed 01/22/19   Entered 01/22/19 12:30:28 Page 43 of 60
ASF.ROMERO.000048

## ARCHDIOCESE OF SANTA FE
## WAIVER OF BENEFIT COVERAGE

This **WAIVER** verifies that I have been informed of the benefits available through the Archdiocese of Santa Fe, and I wish to waive those benefits indicated below. I realize that in the future, I may, in consultation with the Human Resource Office of the Archdiocese, utilize these waived benefits during appropriate open enrollment periods.

**PLEASE PRINT**

Name of Employee _Christine B. Romero_

Location of Employment _Santa Fe_

Benefits paid by Employer?          Yes ✓          No ___

| Benefit | Waive (Please check) |
|---------|----------------------|
| Medical | ____ |
| Dental | ____ |
| Vision (paid by employee 100%) | ____ |
| Life, AD&D | ____ |
| Retirement (contribution by employee and parish after 90 days) | ____ |

Note: If a benefit listed above is NOT waived, it is presumed that the employee wants the benefit.

SIGNATURE _Christine B. Romero_                    DATE 9/6/06

Return this completed form to:
Walter R. Duguay or Cathy Salcido
Human Resources
4000 St. Joseph Pl., NW
Albuquerque, NM 87120



EXHIBIT
5

ASF.ROMERO.000069

**ARCHDIOCESE OF SANTA FE**
**REQUEST FOR HUMAN RESOURCE ACTION**

TO: Human Resource Office        DATE: _5_

FROM: Fr. Clarence Maes    DEPT: Pastor

NAME OF EMPLOYEE: Christine B. Romero

**TYPE OF ACTION**

| FROM | TO |
|---|---|
| Business Manager | Exempt |
| (Job Title)(Step)(Salary) | (Job Title)(Step)(Salary) |
| Business Manager | St. Anne's |
| Department | Department |
| FT - Exempt | |
| Status: Full-Time, Part-Time | Status: Full-Time, Part-Time |

EFFECTIVE DATE: May 3rd, 2004

FURTHER ACTION REQUIRED: N/A

SIGNATURES:

_____        _____
Immediate Supervisor              Date

_____        _____
Executive Director                Date

_____        _____
Chancellor/Moderator              Date

_____        _____
Human Resource Office             Date

TO PAYROLL: _____
            Date

(SFHR #3)

23

Section XII

January 2001

EXHIBIT 6

ASF-ROMERO.000074

# CODE OF ETHICS
## FOR THE PARISHES OF THE ARCHDIOCESE OF SANTA FE

The following fundamental principles from Church teachings and traditions apply to the behavior of all Archdiocesan personnel as they:

- Strive to exhibit the highest Christian ethical standards and personal integrity in their day-to-day work and personal lives, supporting the teachings, discipline and traditions of the Catholic Church.

- Strive to conduct themselves in a professional and respectful manner in both Church and work environments avoiding any flagrant or public misconduct.

- Respect the integrity of all individuals and protect the confidentiality and privacy of all information to which they have access.

- Will not take unfair advantage of a pastoral, financial, contractual, or supervisory relationship for their own benefit.

- Will not physically, sexually, emotionally, or verbally abuse anyone.

- Will not neglect a minor or vulnerable adult who is in their care.

- Will share concerns about inappropriate behavior with their supervisor or Pastor.



EXHIBIT
7

ASF.ROMERO.000084

I have read the **"Code of Ethics"** and understand its purpose and content.

_[signature]_
Signature

_[signature]_
Position

Christine B. Romero
Printed Name

9/28/04
Date

Case 18-13027-t11    Doc 79    Filed 01/22/19    Entered 01/22/19 12:30:28 Page 47 of 60

ASF.ROMERO.000085

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:
ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
corporation sole,
   Debtor.

CHRISTINE ROMERO,
   Plaintiff (creditor)

v.

ARCHDIOCESE OF SANTA FE,
   Defendant (Debtor)

Chapter 11

Case No. 18-13027-t11

## AFFIDAVIT OF CHRISTINE B. ROMERO

AFFIANT CHRISTINE B. ROMERO, hereby comes forth under oath and states the following:

1. My name is Christine B. Romero. I am over the age of 18 and competent to testify.

2. I started working for the Archdiocese of Santa Fe on May 3, 2004. I was assigned to St. Anne Parish as the Business Manager.

3. On June 4, 2012, I updated my Uniform Job Application for the Archdiocese of Santa Fe. I was never asked to, and never completed or updated, a job application for St. Anne Parish.

4. In November, 2012, the Archdiocese provided me with incorporation documents for St. Anne Parish. I was instructed to take the documents to the Secretary of State to complete the incorporation process. When I asked Tony Salgado, CPA for the Archdiocese, whether this would affect me as an Archdiocese employee, he told that the incorporation would not affect my day-to-day at all, that it was only to protect the Archdiocese from pedophile suits, and that I would still follow all Archdiocese policies and procedures for employment matters, insurance, legal and for financial audits and inspections.

5. In February 2015, I called Archdiocese attorney Juan L. Flores concerning many absences from work of an employee at St. Anne Parish whom I supervised, Cindy Martinez. He told me that the Archdiocese could not fire anyone without progressive

EXHIBIT
8

discipline or cause.

FURTHER AFFIANT SAYETH NAUGHT.

Christine B. Romero

SUBSCRIBED AND SWORN TO before me, a notary public, on this _18th_ day of January 2019, by Christine B. Romero, a person known to me.

_March 7, 2020_
My Commission Expires

Notary Public

OFFICIAL SEAL
ELIZABETH GILCHRIST
Notary Public
State of New Mexico
My Commission Expires: _03-07-20_

-2-

**ARCHDIOCESE OF SANTA FE**

**THE CATHOLIC CENTER**

**EMPLOYEE HANDBOOK**

**First Publication July 1, 1988**
**Revisions through November, 2002**

**The Catholic Center**
**Archdiocese of Santa Fe**
**4000 St. Joseph Pl., NW**
**Albuquerque, NM 87120**

**2/2004**


EXHIBIT
9

ASF.ROMERO.000097

## 200 EMPLOYMENT

### a. Equal Opportunity Employment

Because we are a non-profit religious organization, we are not legally bound by all Equal Opportunity guidelines, but it is our practice to afford equal opportunity to qualified individuals, regardless of their race, color, national origin, age, sex, disability, or Vietnam-Era veteran experience, and to conform to all applicable laws. However, due to the ministerial nature of our work, many of our employment situations carry a bona fide occupational qualification which require the hiring of Roman Catholics. The policy of nondiscrimination does and will apply equally to recruitment, selection, placement, transfers, promotions, demotions, layoffs, recalls, separations, training, benefits, rates of pay, social recreational programs and other conditions of employment.

If you have any questions regarding the Catholic Center's Equal Opportunity practice or its implementation, we encourage you to contact the Director of Human Resources.

Your employment relationship with the Catholic Center is known as "just cause" employment. This means that barring situations which may be considered as totally inappropriate behavior for a Catholic Center employee, your employment will not be terminated without due notice.

### b. Introductory (Direct/Agency Hires)

Dependent upon the needs of a department, prospective employees may be hired directly through advertising in our parishes and the local newspaper, or through the use of a professional staffing agency.

The first three (3) months of employment are considered introductory for both direct and agency employees. During this time, the direct hire accrues vacation and receives Personal Leave, but cannot use vacation or Personal Leave until after completion of the introductory period. If an introductory employee needs emergency time off, it will be granted as leave without pay (LWOP). Three (3) instances of LWOP will result in termination of employment. All introductory employees are eligible for paid holidays. Benefit coverage begins on the first day of the month following completion of thirty days of employment for direct hires, and the first day of the fourth month for agency hires if they are subsequently hired by ASF. Both direct and agency employees will be given a 90 day performance review at the completion of the introductory period. At that time the employee will either be invited to continue on staff as a "just cause" employee or will be released from employment, at the sole discretion of the Catholic Center, with or without cause.

During the introductory period the employee may not be considered for other positions unless there is a specific need for the skills possessed by the employee.

Agency employees receive benefits provided by the specific agency.

### c. Regular Employees

Regular employees are employees who have completed the introductory period and work thirty-five (35) hours per week. Regular employees are eligible to participate in paid benefit plans.

### d. Regular Part-time Employees

Regular part-time employees are employees who are regularly assigned to work less than thirty-five (35) hours per week. Part-time employees who work at least 17.5 hours per week are eligible for paid holidays, vacation and Personal Leave benefits pro-rated as follows: 17.5 to 20 hours per week - 50%; 21 to 25 hours per week - 70%; 26 to 29 - 80%; 30 to 34 hours per week - 85%.

200.1

2/2004

ASF.ROMERO.000102

**a. Performance Appraisal**

You will receive a performance appraisal after the first three (3) months of employment (ASFHR #8). Thereafter, you will receive an annual performance appraisal in November (ASFHR #8). In some cases, a formal performance appraisal may be conducted more than once a year; i.e., new employee, new position, and change in acceptable work performance. You will be given the opportunity to discuss these reviews with your supervisor, make comments, and sign them.

If at any time you fail to demonstrate adherence to Catholic Center policies and accepted teachings of the Church in any area of performance, you will be subject to disciplinary action up to and including termination (ASFHR #9). We believe this practice is necessary for the development of a favorable work environment and in fairness to you and your fellow employees.

**b. Counseling/Warning Statements**

Counseling/Warning Statements will be used (ASF HRF#9) to document position performance and will be used in preparing position performance appraisals. They will include:
- Advisory discussions necessitated by violations of Catholic Center standard practices;
- Specific discussions with your supervisor at any time on any subject;
- Safety instructions given to you by your supervisor;
- Commendations.

Depending upon the gravity, three (3) Warning Notices for any (not necessarily the same) infraction may result in termination.

**c. Sexual Abuse/Harassment**

**SEXUAL ABUSE** - It is the policy of the Archdiocese of Santa Fe, that sexual misconduct by personnel of the Archdiocese, while performing the work of the Archdiocese is contrary to Christian principles and is outside the scope of the duties and employment of all personnel of the Archdiocese. All personnel of the Archdiocese must comply with applicable New Mexico laws regarding incidents of actual or suspected sexual misconduct. All personnel of the Archdiocese includes officers, employees, lay volunteers, Archdiocesan seminarians, clerics and religious. For this reason, all personnel of the Archdiocese will attend a Sexual Abuse Workshop sponsored by the Archdiocese during the first year of their service to the Archdiocese.

**HARASSMENT** on the basis of sex is unlawful and contrary to Catholic Center practice. As with other forms of harassment, we prohibit sexual harassment by any and all employees. Such conduct may result in disciplinary action up to and including termination. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment (Quid pro quo), and/or submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; (2) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment (hostile work environment).

Any employee who believes that he or she has been the subject of sexual harassment/harassment, or who has any knowledge of that kind of behavior should report the alleged act immediately to the supervisor who will report the incident promptly to the Human Resources Director. If the harassment involves the supervisor, the employee should report the alleged act immediately to any other supervisor or department head who will report the incident promptly to the Human Resources Director. The Director of Human Resources will meet with the employee and accept a formal written complaint which is necessary for a formal investigation to be conducted. However, depending upon the circumstances, the Director of Human Resources may conduct an investigation without a formal written complaint.

The Human Resources Director will investigate the alleged harassment and do whatever is necessary to resolve the formal complaint, in accordance with 400.h.6. Actions may include any or all of the following:
a. Investigation of the complaint by interviews with parties involved.
b. Consideration will be given to suspension of the alleged perpetrator(s) during investigation.
c. If facts warrant, the perpetrator(s) will face termination from employment.
d. Investigation will be conducted and a resolution of the issue will be submitted within sixty (60) days of a formal written allegation.

**400.1**

**2/2004**

ASF.ROMERO.000112

e. All information will be held in confidence until and if a decision is made that a person will be disciplined. At that time, it may be necessary to provide information as to the alleged conduct to, but only to, those individuals who are required to know of the allegations. Any employee who is not satisfied with the resolution of the matter may resort to the policy on Complaint Procedures (400.h.6).

### d. Rules of Conduct

- You must report to work in a safe and alert physical and mental condition.
- You must report to work in sufficient time to assume the responsibilities of your position at the scheduled starting time.
- You must proceed with each job assignment promptly and in a safe and efficient manner.
- The Catholic Center's work time, tools, supplies, and equipment will be used to perform only Catholic Center work.
- Tools and equipment will always be used carefully and in a safe and efficient manner.
- You are expected to deal courteously and honestly with the public and with your fellow employees and to conduct yourself at all times in a manner which will reflect credit upon yourself, the Catholic Center, and the Archdiocese of Santa Fe.

Some examples of misconduct which will not be tolerated are set out in section 400.f.

### e. Disciplinary Procedures

As noted earlier in this handbook, the Catholic Center is a "just cause" employer. Employees may receive an employee Counseling/Warning Notice when the job performance does not meet acceptable standards. However, there may be circumstances that warrant immediate termination, i.e. gross misconduct, in which case a Counseling/Warning Notice may not be issued. All counselings and warnings will be documented with applicable signatures and submitted to Human Resources for filing. The terminated employee may utilize the Appeal Process, cf. 400.3.f.

**f. Examples of Misconduct** which would subject an employee to discipline and/or immediate termination include, but are not limited to the following:

a. Sleeping while on duty.

b. Possession or use of intoxicants, narcotics, barbiturates, mood altering substances, or any other non-prescribed controlled substance while on duty.

c. Reporting to work or being on duty and appearing to be under the influence of intoxicants, narcotics, barbiturates or any other controlled substance.

d. Failure to inform a supervisor of the taking of medication that might affect your ability to work in an alert, safe and efficient manner.

e. Possession of firearms, other weapons or explosives on the property.

f. Smoking in areas designated as "Non Smoking".

g. Unauthorized removal, theft, conversion or use of the Catholic Center's property, materials, facilities or equipment or any items of property of other employees.

h. Fighting on Catholic Center property at any time, or in any other place where you are engaged in performing your position assignment.

i. Willful or careless abuse, damage or destruction of property, materials, facilities or equipment.

j. Knowingly giving false information which could materially affect the performance of your duties, other employees, or operations, for example: falsification of time records, personnel records (including employment applications) or other Catholic Center records.

k. Falsification of information resulting in the misuse of fringe benefits including, but not limited to personal and military leave.

l. Breach of trust with respect to confidential information or other matters in connection with employment. Misuse or unauthorized use of information from Catholic Center records.

m. Refusal or willful noncompliance of an assigned duty or other instruction of your supervisor.

400.2

2/2004

ASF.ROMERO.000113

n.  Failure to observe and abide by safety rules and commonly recognized safe working practices.
o.  Immoral or disorderly conduct on the job.
p.  Leaving work assignments during working hours without proper permission.
q.  Sexual harassment.
r.  Failure to follow Catholic Center, state or federal rules and regulations.
s.  Failure to report for work as scheduled or notified, except for good and sufficient cause shown.
t.  Inattention to or neglect of duties, including unsatisfactory work performance.
u.  Failure to report promptly to your supervisor any personal injury.
v.  Use of abusive language or otherwise violating general rules of courtesy and good conduct in relation to supervisors, fellow employees, or visitors.
w.  Solicitation or distribution in violation of Catholic Center practices during work hours.
x.  Failure to conduct personal affairs so as to avoid involving or reflecting unfavorably on the Catholic Center.
y.  Gambling in any form on Catholic Center property.
z.  Failure to observe properly posted signs and to take appropriate action or precaution as indicated.
aa. Refusal to participate in Catholic Center activities designed to provide training and/or a sense of team cooperation in ministry.

## g. FRAUD POLICY AND FRAUD RESPONSE PLAN

### OBJECTIVE

The revised code Code of Canon Law, effective November 27, 1983, addresses extensively the responsibilities of bishops and their delegates as administrators of the Church's temporal goods. Ultimately, the Archbishop has the duty to ensure that no abuses exist in the administration of Church goods within the Archdiocese. This policy is promulgated to support and assist the Archbishop in that responsibility.

The Archdiocesan Finance Council provides review, oversight and counsel to the Archbishop at the Archdiocesan level. At the local level, the parish finance council is to provide the pastor or administrator with similar advice and counsel. The Archdiocesan internal auditors also serve a vital role in the review and monitoring of various internal controls at the parish level. This document should be made available to all employees and volunteers.

The Archdiocese of Santa Fe is committed to the highest possible standards of accountability in all its affairs. It is determined to develop a culture of the Gospel, one of honest and accountable stewardship and opposition to fraud and embezzlement. An environment which allows any embezzlement or fraud is not acceptable, and all criminal, civil and canon laws will be strictly enforced.

In line with that commitment, this document outlines the principles we are committed to in relation to reporting and managing fraud and embezzlement.

It will outline the steps that are to be taken in the event of suspicion of fraud or actual fraud and communicate how it will be dealt with. These actions apply to priests, religious, lay employees, volunteers, or any person suspected of fraud or embezzlement.

The Archdiocese encourages all clergy, religious, employees, and volunteers to come forward and report instances of fraud and embezzlement and provides assurance against recrimination.

### COURSE OF ACTION

1.  All suspected or documented fraud or embezzlement should be immediately reported to the office of the Director of Finance or the office of the Human Resource Director. An initial report of the incident must be documented in writing by the complainant and provided to the Director of Finance. All complaints and reports of suspected embezzlement will be kept confidential in order to protect both the complainant and the suspected embezzler. The complainant will be notified of the action taken by the Archdiocese within fourteen days.
2.  The Director of Finance will coordinate closely with the Chancellor and Human Resource Director, as necessary, during the investigative process until final resolution.
3.  The suspected embezzler should not be approached or apprehended.
4.  The premature approach might jeopardize the gathering of necessary evidence, result in a needless lawsuit or cause physical harm to the persons involved. All information regarding the incident should remain confidential by the complainant.

400.3

2/2004

ASF-DOJ-PRO.000114

## Saint Anne Parish
511 Alicia Street
Santa Fe, NM 87501

Christine Romero
Business Manager
2189 Candelero
Santa Fe, NM 87505

November 21, 2016

Dear Christine,

First off, I would like to thank you for your many years of service to St. Anne's parish. You have been dedicated and committed to doing your job as business manager.

As pastor of St. Anne's, I have decided to make a personnel change based on your resistance to change and to cooperate with my vision of leadership. When I presented to you my vision for the parish leadership with your job description and changes that I would like implemented, I experienced from you resistance to change and a feelings of resentment. I feel that you are unhappy here which has created an environment that is not healthy. Although you have worked well with the previous pastor, my style of leadership and what you were used to has come into conflict. I can't envision this conflict being resolved. Thus it is best that we move on from this arrangement and begin with a fresh start. Your employment with the parish of St. Anne, comes to an end with this letter. I ask that you leave your keys to parish with me and that you leave all passwords (including IRS log in number and State of NM Log in number and computer and parish email log in passwords). You will be given your salary for the rest of the month of November 2016 and personal leave Buyback. You can make arrangements with me to pick up your personal belongings.

Thank you again for your service. May God bless you and all your loved ones. I wish you the best in the future.

In Christ,

Rev. Larry R. Brito,
pastor

EXHIBIT
10

# Christine B Romero

v.

# Archdiocese of Santa Fe

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-101-CV-201703131 | Ortiz, Raymond Z. | 10/31/2017 | SANTA FE District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| DE | Defendant Appellee | | ARCHDIOCESE OF SANTA FE |
| | ATTORNEY: SANCHEZ SARA N | | |
| | ATTORNEY: WARBURTON ROBERT P. | | |
| | ATTORNEY: GALLEGOS REBEKAH ANNE | | |
| DE | Defendant Appellee | 2 | BRITO LARRY |
| | ATTORNEY: SANCHEZ SARA N | | |
| | ATTORNEY: WARBURTON ROBERT P. | | |
| | ATTORNEY: GALLEGOS REBEKAH ANNE | | |
| PP | Plaintiff Appellant | 1 | ROMERO CHRISTINE B |
| | ATTORNEY: LEVY PIERRE | | |
| | ATTORNEY: BEVAN AIMEE | | |
| | ATTORNEY: AUCOIN M. MICHELLE | | |

## CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 10/31/2017 | 1 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|---|---|
| 1 | Administrative Appeal with a New Trial |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|
| | | |

## HEARINGS FOR THIS CASE

| HEARING DATE | HEARING TIME | HEARING TYPE | HEARING JUDGE | COURT | COURT ROOM |
|---|---|---|---|---|---|
| 03/05/2018 | 3:00 PM | MOTION HEARING | Ortiz, Raymond Z. | SANTA FE | Santa Fe County Judicial Complex |

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 12/04/2018 | NTC: NOTICE OF BANKRUPTCY | | | | |
| | Notice of Bankruptcy - Archdiocese of Santa Fe | | | | |
| 11/30/2018 | MTN: TO COMPEL | | | | |
| | Plaintiff Christine B Romero's Motion to Compel Full and Complete Answers and Responses to Her Interrogatories Nos 2, 3, 4, 5, 6, 8, 9, 10, 11, 14, 16, 20, 22, 27, 30, 32, and Requests for Production Nos 1 Through 4, 13, 15 and 16 | | | | |
| 10/22/2018 | CERTIFICATE OF SERVICE | | | | |
| | Certificate of Service - Archdiocese of Santa Fe s Responses and Objections to Plaintiff Christine Romero s Second Set of Request for Production of Documents | | | | |
| 09/19/2018 | CERTIFICATE OF SERVICE | | | | |
| | Certificate of Service | | | | |
| 08/27/2018 | CERTIFICATE OF SERVICE | | | | |
| | Certificate of Service - Father Larry Brito s Responses and Objections to Plaintiff Christine Romero s Second Set of Requests for Production of Documents | | | | |
| 08/20/2018 | CERTIFICATE OF SERVICE | | | | |
| | Certificate of Service - Father Larry Brito s Supplemental Answer to Interrogatory No. 7 of Plaintiff Christine Romero s First Set of Interrogatories and Requests for Production of Documents | | | | |
| 08/06/2018 | CERTIFICATE OF SERVICE | | | | |
| | Certificate of Service - Archdiocese of Santa Fe s Responses and Objections to Plaintiff Christine Romero s First Set of Interrogatories and Request for Production of Documents | | | | |
| 07/26/2018 | CERTIFICATE OF SERVICE | | | | |



| | | | |
|---|---|---|---|
| | Certificate of Service | | |
| 06/26/2018 | CERTIFICATE/ PROOF OF MAILING | | |
| | Certificate of Service - Plaintiff Christine B. Romero's Responses to Defendant Archdiocese of Santa Fe's First Requests for Admission to Plaintiff Christine B. Romero | | |
| 06/26/2018 | CERTIFICATE/ PROOF OF MAILING | | |
| | Certificate of Service - Plaintiff Christine B. Romero's Answers & Responses to Defendant Archdiocese of Santa Fe's First Set of Interrogatories & Requests for Production to Plaintiff Christine B. Romero | | |
| 06/06/2018 | ORD: ORDER | | |
| | Stipulated Confidentiality And Protective Order | | |
| 05/21/2018 | CERTIFICATE OF SERVICE | | |
| | Certificate of Service - Father Larry Brito s Responses and Objections to Plaintiff Christine Romero s First Set of Interrogatories and Requests for Production of Documents | | |
| 05/11/2018 | CERTIFICATE OF SERVICE | | |
| | Certificate of Service | | |
| 03/30/2018 | ANSWER | | |
| | Defendants' Answer and Affirmative Defenses to Plaintiff's Complaint | | |
| 03/30/2018 | CERTIFICATE OF SERVICE | PP | 1 |
| | Certificate of Service - Plaintiff's First Set of Int. and Req. for Prod. of Doc. to Def. Archdiocese of SF | | |
| 03/30/2018 | CERTIFICATE OF SERVICE | | |
| | Certificate of Service - Plaintiff's First Set of Int. and Req. for Prod. of Doc. to Def. Larry Brito | | |
| 03/30/2018 | ENTRY OF APPEARANCE | PP | 1 |
| | Entry of Appearance - M. Michelle Aucoin, Esquire | | |
| 03/16/2018 | ORD: ORDER DENYING | | |
| | Order Denying Defendants' Motion to Dismiss NMHRA Claims | | |
| 02/23/2018 | NTC: HEARING | | |
| | Notice Of Hearing March 5, 2018 @3:00 pm Matter: Defendants Motion to Dismiss NMHRA Claims | | |
| 02/20/2018 | REQUEST FOR HEARING/ SETTING | | |
| | Request for Hearing - Defendants Motion to Dismiss NMHRA Claims | | |
| 02/20/2018 | NTC: COMPLETION OF BRIEFING | | |
| | Notice of Completion of Briefing on Defendants' Motion to Dismiss NMHRA Claims | | |
| 02/20/2018 | REPLY | | |
| | Defendants Reply in Support of Motion to Dismiss NMHRA Claims | | |
| 01/22/2018 | RESPONSE | | |
| | Plaintiff Christine B. Romero's Response in Opposition to Defendants' Motion to Dismiss NMHRA Claims | | |
| 12/20/2017 | MTN: TO DISMISS | | |
| | Defendants' Motion to Dismiss NMHRA Claims | | |
| 11/30/2017 | JDG: NOTICE OF JUDGE ASSIGNMENT | | |
| | Notice of Judge Assignment case has been reassigned to Judge Raymond Z. Ortiz effective November 21, 2017 due to the excusal of Judge David K. Thomson | | |
| 11/21/2017 | ACCEPTANCE OF SERVICE | | |
| | Notice of Acceptance of Service | | |
| 11/21/2017 | Jury Additional 6 / Total 12 (EF) $150 | | |
| | Defendants' Jury Demand | | |
| 11/21/2017 | ENTRY OF APPEARANCE | | |
| | Entry of Appearance | | |
| 11/21/2017 | JDG: JUDGE EXCUSAL/PEREMPTORY CHALLENGE | | |
| | Peremptory Election to Excuse Hon. David K. Thomson | | |
| 11/01/2017 | JURY DEMAND 6 PERSON | PP | 1 |
| | Demand for Jury Trial | | |
| 10/31/2017 | OPN: COMPLAINT | PP | 1 |
| | Notice of Appeal from a Determination by The Human Rights Bureau, labor Relations Division, Department of Workforce Solutions, and Complaint for Violations of the New Mexico Human Rights Act, Breach of Implied Employment Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Attorney Fees, and Punitive Damages | | |

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
|---|---|---|---|
| 10/31/2017 | Thomson, David K. | 1 | INITIAL ASSIGNMENT |

Case 18-13027-t11    Doc 79    Filed 01/22/19    Entered 01/22/19 12:30:28 Page 57 of 60

11/21/2017          Ortiz, Raymond Z.          2          Judge Peremptory Excusal

Case 18-13027-t11     Doc 79     Filed 01/22/19     Entered 01/22/19 12:30:28 Page 58 of 60

FIRST JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF SANTA FE
Case No. D-0101-CV-2017-03131

CHRISTINE B. ROMERO,

                    Plaintiff,

        v.

ARCHDIOCESE OF SANTA FE
and LARRY BRITO,

                    Defendants.

### ORDER DENYING
### DEFENDANTS' MOTION TO DISMISS NMHRA CLAIMS

THIS MATTER is before the Court on Defendants' Motion to Dismiss NMHRA

Claims, filed on December 20, 2017. The Court, having considered the pleadings, held

a hearing in this matter, and being otherwise fully informed, finds that the motion is not

well taken and should be **denied** for the reasons stated at the hearing.

THEREFORE,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss NMHRA Claims

filed on December 20, 2017 be, and hereby is, **denied.**


_____
RAYMOND Z. ORTIZ,
DISTRICT JUDGE


EXHIBIT
12

Respectfully submitted by:

O' FRIEL and LEVY, P.C.
Attorneys for Plaintiff Christine B. Romero


By:  _/s/  Pierre Levy_
       Pierre Levy, Esq.
       Aimee Bevan, Esq.
       M. Michelle Aucoin, Esq.
       P.O. Box 2084
       Santa Fe, New Mexico 87504-2084
       (505) 982-5929
       pierre@ofrielandlevy.com
       aimee@ofrielandlevy.com
       michelle@ofrielandlevy.com


Approved as to form:

STELZNER, WINTER, WARBURTON,
FLORES, SANCHEZ & DAWES, P.A.
Attorneys for Defendants

By:  _E-mail Approval, 03-06-18_
       Sara N. Sanchez, Esq.
       Robert P. Warburton, Esq.
       Rebekah A. Gallegos, Esq.
       302 Eighth Street NW, Suite 200
       P.O. Box 528
       Albuquerque, NM 87103
       (505) 938-7770
       Ssanchez@stelznerlaw.com
       rpw@stelznerlaw.com
       rgallegos@stelznerlaw.com