UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re:<br><br>ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole,<br><br>                            Debtor. | Chapter 11<br><br>Case No. 18-13027-t11 |

## FIRST INTERIM FEE APPLICATION OF STELZNER, WINTER, WARBURTON, FLORES, SANCHEZ & DAWES, P.A., ATTORNEYS FOR THE DEBTOR

Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A. (the "Stelzner Firm"), counsel for the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession (the "Debtor"), submits this first interim application for allowance and payment of compensation, pursuant to Bankruptcy Code §§ 330 and 503(b), for work performed from December 3, 2018 through September 30, 2019 (the "First Application Period"), and to authorize the Debtor to pay the unpaid balance of approved compensation. In support of this fee application the Stelzner Firm states:

    1.    <u>First Fee Application</u>. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 3, 2018 (the "Petition Date"). This is the first interim fee application filed by the Stelzner Firm in this case. The Stelzner Firm seeks allowance of compensation for the First Application Period.

    2.    <u>Amount of Fees, Costs, and Applicable Gross Receipts Tax</u>. For the First Application Period, the Stelzner Firm seeks allowance of compensation for services rendered by the Stelzner Firm as counsel to the Debtor plus costs and applicable gross receipts tax on fees and costs, in the amount of $164,913.93 consisting of $149,986.00 for professional fees, $2,888.96 for

reimbursable costs and expenses, and $12,038.97 for gross receipts tax on fees and costs. As of the date of the filing of this application, the Stelzner Firm has received $124,464.56 in payments from the Debtor for the First Application Period. Total fees, costs, and gross receipt taxes that the Stelzner Firm charged the Debtor each month during the First Application Period are summarized on <u>Exhibit A</u> hereto. The billing rates, number of hours charged for each Stelzner Firm attorneys, paralegals, and law clerks are attached hereto as <u>Exhibit B</u>. The fees the Stelzner Firm charged the Debtor during the First Application Period, summarized by project category, are summarized on <u>Exhibit C</u> hereto.

3. <u>Billing Statements; Itemization and Description of Services Rendered</u>. The monthly billing statements the Stelzner Firm submitted to the Debtor for services rendered during the First Application Period are attached hereto as <u>Exhibit D</u> (billing statements for December 2018 through March 2019) and <u>Exhibit E</u> (billing statements for April 2019 through September 2019) (together, the "Billing Statements"). The Billing Statements itemize all charges for professional services, reimbursable costs and expenses, and gross receipts tax; set forth the hourly rates for each attorney and paralegal employed by the Stelzner Firm who rendered services to the Debtor; separately describe the services rendered and hours worked by each individual each day for each item of work during the First Application Period, in one-tenth-of-an-hour increments; and, at the end of the Billing Statements, summarize the total hours and total charges per individual. For many of the months during the First Application Period, the Stelzner Firm submitted more than one invoice to the Debtor. This is because the Stelzner Firm's internal matter-management system assigned different internal matter numbers to different types work performed for the Debtor (for example, work performed in connection with responding to litigation matters and investigations outside of the bankruptcy were assigned one internal matter number, while work performed in connection

with claims administration and analysis was assigned to a different matter number).  The Stelzner Firm's billing software generates one monthly invoice for each matter number. The accounting of services, costs, and expenses set out in the Billing Statements is true and correct to the best of the Stelzner Firm's knowledge, information, and belief.

4. <u>Customary Billing Rates and Other Charges</u>.  During the First Application Period, the billing rates the Stelzner Firm charged for attorneys and paralegals were the normal and customary billing rates in effect when the Stelzner Firm commenced its representation of the Debtor.  The Stelzner Firm, in accordance with its customary billing practices, also charged for costs and expenses, including $0.25 per page for in-house photocopying, and actual out-of-pocket expenses for other expenses such as postage, long distance telephone, and overnight mail.  The Stelzner Firm did not charge for hand deliveries, secretarial overtime, or filing documents with the Clerk of the Court.

5. <u>Debtor's Employment of the Stelzner Firm</u>.  The Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on December 3, 2018.  The Debtor filed its applications to employ the Stelzner Firm as counsel on December 3, 2018 (Doc. No. 15). On April 8, 2019, the Court entered the Order Approving Employment of the Stelzner Firm, as Special Counsel for the Debtor (the "Stelzner Firm Employment Order") (Doc. No. 160), approving the Debtor's employment of the Stelzner Firm effective as of December 3, 2018.  The Debtor retained the Stelzner Firm to represent the Debtor in all matters and proceedings in which the Debtor required counsel to provide legal advice and assistance in formulating a plan of reorganization, to negotiate with other parties in the Bankruptcy Case, including the plaintiffs in the Litigation Cases, and in the event that the automatic stay is modified or lifted as to any of the Litigation Cases, to represent the Debtor in such cases, to respond to inquiries and investigations by law enforcement

agencies and to provide general corporate and employment law counsel. Stelzner will not and does not act as counsel with respect to bankruptcy matters generally. Pursuant to the Stelzner Firm Employment Order, the Debtor was authorized to pay the Stelzner Firm's billing statements, prior to the Court's determination of the allowability of the Stelzner Firm's compensation, up to and including 75% of fees, and up to and including 100% of reimbursable costs and applicable gross receipts tax, subject to ultimate approval of the paid compensation.

6. <u>Services Rendered During the First Application Period were Actual and Necessary; Fees Charged are Reasonable</u>. During the First Application Period, the Stelzner Firm provided legal services to the Debtor in connection with this case (review, evaluation and analysis of claims and related insurance coverage matters) and with other litigation matters outside of this case. The amount charged for fees is reasonable based on the nature, extent, and value of the services and the amount of time spent providing the services. The services rendered were actual and necessary.

7. <u>General Description of Services Rendered</u>. As more fully set forth in the attached Billing Statements, in general the services the Stelzner Firm rendered to the Debtor during the First Application Period have included, among other things:

    a. <u>Claims Administration & Objections</u>: The Stelzner Firm provided extensive services related to claims administration, including reviewing, summarizing, analyzing and evaluating the 386 Confidential Sexual Abuse Proofs of Claims submitted in this case and consulting with the Debtor's bankruptcy counsel about the Proofs of Claims and insurance coverage analysis for those claims. The Stelzner Firm is particularly well-situated to perform this work because of the firm's long history as defense counsel (and before that, coverage counsel) for the Debtor in connection with clergy sexual abuse claims, and the firm's familiarity with related facts and documents.

b. <u>Fee/Employment Applications</u>: The Stelzner Firm assisted in gathering information and preparing and reviewing the application and related disclosures.

c. <u>Litigation:</u> The Stelzner Firm has continued to serve as Debtor's general counsel and litigation counsel in connection with legal matters outside of this Bankruptcy. This includes providing legal advice and services to the Debtor in connection with third-party subpoenas and document requests, responding to and addressing potential and actual post-petition claims asserted or threatened against the Debtor, and related legal questions that arise in connection with the Debtor's day to day business which may impact or be impacted by threatened or actual litigation.

8. <u>Efforts to Avoid Unnecessary Duplication of Services.</u> The attorneys within the Stelzner Firm endeavored to avoid duplication of services as much as reasonably possible. Intra-office conferences were kept to a minimum. In general, one Stelzner Firm attorney took the lead and performed most of the work on each matter, unless the matter justified or necessitated more than one attorney. Many intra-firm communications and conferences were not billed to the Debtor. When possible, work was performed by a biller with a lower hourly rate (such as a paralegal rate) in order to be as economical as possible.

9. <u>Other Factors</u>. The Stelzner Firm also supports this Application with a discussion of various other factors, as follows:

a. <u>Expertise and experience in the area of evaluating clergy sexual abuse claims and related insurance coverage issues</u>. Since the early 1990's, Stelzner Firm attorneys working on this case have provided legal representation to the Debtor in connection with litigation over insurance coverage for clergy sexual abuse claims, and more recently, defense of clergy sexual abuse claims filed in state court. Stelzner Firm attorneys have also provided general counsel

services and general legal representation and advice to the Debtor in a wide variety of other legal matters for many years. During these many years of representing the Debtor, Stelzner Firm attorneys have developed extensive knowledge and expertise with regard to the history of the clergy sexual abuse crisis in New Mexico, the factual and legal issues commonly involved in clergy sexual abuse claims brought against the Debtor, and related documents, files, pleadings and testimony that have been gathered and generated over the past quarter century.

  b. <u>Method used to compute time charges</u>. Stelzner Firm attorneys billed their time in six-minute increments.

  c. <u>Relative billing rates of attorneys for in-court and out-of-court hours</u>. Stelzner Firm attorneys charged the same rates for in-court and out-of-court work.

  d. <u>Billing rates</u>. During the First Application Period, the billing rates that the Stelzner Firm charged were at the normal and customary billing rates in effect for several years prior to and at the time Stelzner Firm commenced its representation of the Debtor.

  e. <u>Method used for determining hours to be actually billed for services and for making billing adjustments</u>. Stelzner Firm attorneys kept daily time records in the ordinary course of business, from which the Stelzner Firm prepared the Billing Statements. Draft bills were adjusted downward from time to time before being rendered, based on perceived inefficiencies or for other reasons. No time was billed for preparing, reviewing or adjusting bills.

  f. <u>Results Achieved and Benefit to the Estate</u>. During the First Application Period, the Stelzner Firm completed in-depth review and analysis of 386 Confidential Sexual Abuse Proofs of Claim, including necessary review and analysis of collateral documents and files in order to evaluate those claims and identify potential factual and

-6-
Case 18-13027-t11    Doc 277    Filed 11/19/19    Entered 11/19/19 10:36:37 Page 6 of 9

legal issues. The Stelzner Firm has provided much of this analysis to counsel for the Creditors' Committee, bankruptcy counsel for the Debtor, and insurance carriers, in advance of mediation. We believe that this effort and sharing of information has benefitted not only Debtor's Estate but also the entire effort to bring the parties together to resolve this bankruptcy. Stelzner Firm attorneys have served as a resource for Debtor's bankruptcy counsel, to provide historical, factual and legal information in connection with claims that have been asserted. The Stelzner Firm has also provided legal consultation to the Debtor in connection with the Debtor's own internal processes for investigating, responding to, and acting on claims of clergy sexual abuse. This was necessary because a great many of the Confidential Sexual Abuse Proofs of Claim identified as the alleged perpetrator a clergy member who had never before been accused of sexual misconduct, and for those newly-accused individuals who are still living and in ministry, the Debtor was obligated to act in compliance with its own policies in response to these allegations. This activity also included preparing for and attending an emergency hearing before the Bankruptcy Court to ensure that the Debtor could follow its policies while complying with Court orders regarding confidentiality of claimants. The Stelzner Firm has also provided a benefit to the Debtor by providing legal advice and representation to the Debtor on a wide variety of legal issues and matters outside of the Bankruptcy case, including post-petition potential and actual claims and responding to third-party subpoenas and other requests. Because Stelzner Firm attorneys are already greatly familiar with the Debtor's day to day operations, policies and personnel, the Stelzner Firm attorneys are able to efficiently serve the Debtor's legal needs on these non-bankruptcy matters.

10. <u>Services Rendered Solely for the Debtor; No Fee Sharing Arrangement</u>. The Stelzner Firm performed all professional services for which the Stelzner Firm seeks allowance and payment of compensation for the Debtor, and not on behalf of any creditor or any committee or other person. The Stelzner Firm has not shared or agreed to share any compensation received or to be received by it for services rendered in or in connection with this case with any person except with employees of the Stelzner Firm in the ordinary course of business.

WHEREFORE, the Stelzner Firm respectfully requests that the Court:

A. Grant approval of compensation to the Stelzner Firm for the First Application Period in the total amount of $164,913.93, consisting of $149,986.00 for professional fees, $2,888.96 for reimbursable costs and expenses, and $12,038.97 for gross receipts tax on fees and costs; and the allowance of a priority, administrative expense under Bankruptcy Code §§ 503(b)(2) and 507(a)(2) for all such approved compensation.

B. Authorize payment of the unpaid balance of approved compensation.

Respectfully submitted,

STELZNER, WINTER, WARBURTON, FLORES,
   SANCHEZ & DAWES, P.A.

s/ *Sara N. Sanchez*
Robert P. Warburton
Sara N. Sanchez
P.O. Box 528
Albuquerque, N.M. 87103
(505) 938-7770
(505) 938-7781 (fax)
*Attorneys for the Debtor*

FILED BY:
WALKER & ASSOCIATES, P.C.

By: *Thomas D. Walker*
    Thomas D. Walker
    500 Marquette Ave., NW, Suite 650
    Albuquerque, NM 87102
    (505) 766-9272
    (505) 766-9287 (fax)
    twalker@walkerlawpc.com
*Counsel for Debtor in Possession*

In accordance with NM LBR 9036-1 and Fed. R. Civ. P. 5(b)(2)(E), this certifies that service of the foregoing document was made this 19th day of November 2019, via the notice transmission facilities of the case management and electronic filing system of the Bankruptcy Court, on all parties entitled to receive electronic filings.

s/ *Thomas D. Walker*
Thomas D. Walker
*Counsel for Debtor in Possession*