UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF                                      Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

      Debtor.

## OPINION

Before the Court is Debtor's motion for sanctions against Father Thomas Paickattu for violating the automatic stay. At issue is a state court lawsuit Fr. Paickattu filed post-petition against Archbishop John Wester. Debtor contends that because Debtor is a corporation sole, the automatic stay applies to Fr. Paickattu's claim against the Archbishop. Fr. Paickattu counters that the rules are the same for this debtor as every other chapter 11 corporate debtor, i.e., that the automatic stay does not extend to nondebtors. The Court concludes that the automatic stay applies to Fr. Paickattu's claims against the Archbishop, but that this area of the law is murky and uncertain, so sanctions are not appropriate.

1.    Facts.

For the limited purpose of ruling on the motion,[1] the Court finds that the following facts are not in dispute:[2]

In 1875, the Roman Catholic Church created the Archdiocese of Santa Fe. In 1951, the Archdiocese incorporated as a "corporation sole."

---

[1] The parties have asked the Court to rule on the motion without an evidentiary hearing, if possible, based on the law and the undisputed facts.

[2] The Court takes judicial notice of its docket in this case to consider the contents of the docket but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

For about 8 months in 2017, Fr. Paickattu was the parish administrator of Holy Ghost parish, one of 93 parishes in the Archdiocese. Fr. Paickattu alleges that he uncovered an embezzlement scheme during his short tenure, reported the scheme to the parish and the Archdiocese, and was fired in retaliation.

In October 2018, Fr. Piackattu filed suit in state court against the Archdiocese, Holy Ghost, and two individual defendants who worked for the parish, asserting claims for retaliatory discharge, civil racketeering, defamation, breach of contract, and prima facie tort.

The Archdiocese filed this case on December 3, 2018, staying the state court action. Fr. Paickattu did not seek relief from the automatic stay to pursue his state court action against the Archdiocese, nor did he file a proof of claim.[3] Instead, on February 26, 2019, he filed an adversary proceeding against the Archdiocese, seeking denial of the discharge based on the same facts alleged in the state court action. The Court dismissed the proceeding without prejudice, ruling that it was premature to address discharge before the Debtor filed a plan.

On January 20, 2020, Fr. Piackattu filed a new lawsuit in state court. The facts alleged in the new suit are very similar to those alleged in the first one and in the denial of discharge proceeding. The main difference is that in the first two actions the Archdiocese is a defendant, while in the third one the Archbishop is. The third suit is the subject of Debtor's motion for sanctions.

2.      Debtor is a corporation sole.

Debtor is a New Mexico "corporation sole," organized in 1951. New Mexico's current statutes do not refer to corporations sole. In 1951, however, the legislature amended a prior

---

[3] The Court set a claims bar date of June 17, 2019.

corporation statute as follows:

> Any person in whom shall be vested the legal title to the property of any church or religious society, in conformity with its constitution, canons, rites or regulations, and of any scientific research institution maintained solely for pure research and without hope of pecuniary gain or profit, may make and subscribe written articles of incorporation, and acknowledge the same, and file a duplicate of such articles for record in the office of the county clerk of each county in which any real property of such corporation is situated together with an impression of the seal which it shall adopt. Such corporation sole shall be perpetual in existence and shall vest in the successors in office to the person so complying with the provisions hereof and title to all property vested in such corporation sole hereunder shall also vest in such successors in office.

1951 N.M. Laws 334–35 (italics omitted). In 1975 the legislature passed the Non-profit Corporation Act, codified at NMSA § 53-8-1 et seq. Although the act does not mention corporations sole, the Court concludes that it left intact any corporation sole established before 1975, including Debtor.

The "corporation sole" is a product of English common law, adopted by the Crown and certain religious officials to reduce unrest caused by interregna. 1 Fletcher Cyc. Corp. § 50. The corporation sole is a vanishing breed in the United States, now used mostly by religious organizations like the Roman Catholic Church. The term "corporation" as used in common parlance today refers to what was historically known as "corporation aggregate." 1 Fletcher Cyc. Corp. § 50 ("The former division of corporations into sole and aggregate is, in this country at least, principally of historical interest, as nearly all corporations are aggregate."). The difference between the two corporate forms is that:

> "Corporations aggregate" consist of many persons united together into one society and are kept up by a perpetual succession of members, so as to continue forever. "Corporations sole" consist of one person only and the person's successors, in some particular station, who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they would not have.

18 Am. Jur. 2d Corporations § 28.[4] With a corporation sole, there is one "officeholder," who functions like the shareholder, director, and officer of the corporation. When he dies, retires, or otherwise leaves his duty station within the organization, his successor automatically becomes the replacement officeholder. Thus, "[a] corporation sole may pass from one person to the next without any interruption in its legal status." *Id.*

"[T]he corporation sole is the incorporation of the head or presiding officer of an organization[.]" 1 Fletcher Cyc. Corp. § 50. However, the assets and liabilities of the officeholder are not the assets and liabilities of the organization, and "the creditors of the corporation sole may not look to the assets of the individual holding office, nor may the creditors of the individual look to the assets held by the corporation sole." *Id.*

Archbishop Michael Sheehan was the officeholder of the Debtor until his retirement in 2015. When Archbishop Wester was installed as Archbishop Sheehan's replacement, he automatically became the officeholder of the Debtor.

3.      The Automatic Stay.

Upon the filing of a voluntary bankruptcy petition, § 362(a)[5] of the Bankruptcy Code stays, among other things:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]…
>
> any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]

---

[4] A corporation sole should not be confused with a closely held corporation, a sole proprietorship, or a limited liability company. *See* 1 Cox and Hazen, Treatise on the Law of Corporations § 1:19 (3d) ("The fact that all of the shares in a business corporation are held by a single individual does not make the corporation or the owner a corporation sole.").

[5] All statutory references are to 11 U.S.C. unless otherwise indicated.

"Any action taken in violation of the automatic stay is void." *In re Fontaine*, 603 B.R. 94, 105 (Bankr. D.N.M. 2019) (citing *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990)).

With narrow exceptions, the stay in a chapter 11 case does not apply to nondebtors. *See, e.g., Oklahoma Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994). The stay may apply to claims against a "nonbankrupt party in 'unusual situations,' as 'when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Even in such "unusual situations," however, most courts have held that the stay cannot be extended to a nondebtor without a court order. *See, e.g., Fisher Sand & Gravel Co. v. Western Sur. Co.*, 2009 WL 4099768, at *5 (D.N.M.), citing *Otoe County Nat'l Bank v. W&P Trucking, Inc.*, 754 F.2d 881, 883 (10th Cir. 1985); *C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1015 (N.D. Iowa 2001) (collecting cases). Typically, that requires filing an adversary proceeding and obtaining an injunction. *See, e.g., In re Otero Mills, Inc.*, 21 B.R. 777 (Bankr. D.N.M. 1982); *see also Patton v.* Bearden, 8 F.3d 343, 349 (6th Cir. 1993) (even when unusual circumstances exist justifying an extension of the automatic stay to non-debtor parties, a bankruptcy court must rely upon its equity jurisdiction under § 105 to issue an injunction extending the stay); In *re Aldan Indus.*, 2000 WL 357719, at *8 (Bankr. E.D. Pa.). The Court agrees that in chapter 11 cases involving corporations aggregate, the automatic stay can only apply to nondebtors by court order.

Here, Debtor is not seeking an *"Otero Mills"*-type injunction. Instead, Debtor and the Archbishop argue that the Archbishop, as the officeholder of a corporation sole (the Debtor), is

sufficiently intertwined with the Debtor for the automatic stay to apply to Fr. Paickattu's claims against him.

5.      The Corporation Sole and the Automatic Stay.

Given the unusual nature of the corporation sole and its close identity with the officeholder, does the automatic stay apply to claims asserted against the officeholder? The answer is not readily apparent. While there are occasional references in the case law to corporations sole, *see, e.g., Roman Catholic Bishop of Springfield v. City of Springfield*, 760 F. Supp. 2d 172, 177 n.1 (D. Mass. 2011), the cases rarely touch on bankruptcy law. Further, the few bankruptcy cases discussing corporations sole have focused on choice of law and property issues rather than on the breadth of the automatic stay. *See*, *e.g.*, *In re Roman Catholic Archbishop of Portland in Oregon*, 335 B.R. 842 (Bankr. D. Or. 2005); and *In re Catholic Bishop of Spokane*, 329 B.R. 304 (Bankr. E.D. Wash. 2005), rev'd in part on other grounds *Committee of Tort Litigants v. Catholic Diocese of Spokane*, 364 B.R. 81 (E.D. Wash. 2006).

It is noteworthy, however, that the cases cited above were filed by officeholders of the corporations sole rather by the corporation itself.[6] That would never happen with a "corporation aggregate"—corporate presidents do not file suits or bankruptcy cases in their own names when the real party in interest is the corporation. The choice of plaintiff/debtor was not criticized in these cases, leading the Court to conclude that, in important respects relevant to the current dispute, corporations sole are viewed differently from corporations aggregate.

Fr. Paickattu correctly cited authority in support of the general proposition that when a corporation files a chapter 11 bankruptcy case, the automatic stay does not apply to suits against

---

[6] In *Bishop of Spokane*, the debtor is described as the Bishop "aka" the Diocese. In *Archbishop of Portland*, the debtor is described as the Archbishop "dba" the Archdiocese.

corporate officers. This authority is good law for corporations aggregate. The Court concludes, however, that the corporation sole is different. Thus, without in any way ruling on the merits of Fr. Paickattu's claims against the Archbishop, the Court holds that they are subject to the automatic stay.[7]

The Court concludes that, when a corporation sole files a chapter 11 case, the automatic stay also stays claims against the officeholder that relate to his corporate duties. That is not to say that the automatic stay would apply to all potential claims against the officeholder. For example, if the officeholder took the day off to go fishing and negligently injured someone with his car while driving to a trout stream, he could be sued by the injured party without violating the automatic stay. However, when the officeholder takes action *qua* officeholder, it is difficult to separate him from the corporation. "L'état, c'est moi"[8] does not accurately describe the relationship between officeholder and corporation sole, but it gives a flavor of the difficulty distinguishing between the two.

The Court is persuaded of the reasonableness of this conclusion in part because the claims Fr. Paickattu now asserts against the Archibishop are the same ones he asserted, prepetition, against the Archdiocese. Fr. Paickattu therefore must agree that there is a substantial identity between the two.

6.      Sanctions.

Although the Court concludes that the automatic stay applies to Fr. Paickattu's claims against the Archbishop, the legal issues involved are arcane and the authority is spotty or

---

[7] Had Debtor requested an *Otero Mills* injunction, the Court likely would have granted it. The overlap between the Archbishop and Debtor, together with the similarity of Fr. Paickattu's claims against them, seem just the sort of "unusual situation" the exception discussed in *Oklahoma Federated Gold*, 24 F.3d at 141, and *A.H. Robins*, 788 F.2d at 999, would apply to.
[8] Usually attributed to Louis XIV.

nonexistent. Corporations sole are rare and getting rarer. Fr. Paickattu and his attorney should not

be sanctioned for violating the automatic stay if they promptly cease and desist.

<u>Conclusion</u>

Debtor is a corporation sole, meaning that the Archbishop is not merely Debtor's decision-

maker and agent, but in some respects essentially is the Debtor. Fr. Paickattu's claims against the

Archbishop cross the admittedly blurry line between officeholder and corporation sole, and are

stayed. Because this area of the law is so esoteric, however, sanctions are not appropriate. The

Court will enter an order consistent with this opinion.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 14, 2020

Copies to: Counsel of record