UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF                          Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

    Debtor.

# OPINION

Debtor and the parish defendants in three adversary proceedings brought by the unsecured creditors committee (UCC) have appealed the Court's order allowing the UCC to bring the proceedings on behalf of the bankruptcy estate. Before the Court is Debtor/parishes' motion for a stay pending the outcome of the appeal. The Court concludes that the motion is not well taken and should be denied.

A.    <u>Findings of Fact</u>.[1]

For the purpose of ruling on the motion, the Court finds:

On February 24, 2020, the UCC wrote a letter to the Debtor, asking that the Debtor bring certain avoidance actions or agree that the UCC could bring them on behalf of the bankruptcy estate. The gist of the proposed actions was that Debtor allegedly transferred to its 93 parishes most of Debtor's property, without consideration, and with the intent to hinder, delay, or defraud its creditors (almost entirely sex abuse claimants). The UCC also proposed to seek a determination that property Debtor still held title to, ostensibly for the benefit of the parishes, was in fact estate property.

---

[1] The Court takes judicial notice of its docket in this case to consider the contents of the docket but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020). The Court also takes judicial notice of the docket in the pending appeal.

Debtor did not believe that the proposed claims had merit. Debtor contended that it has always held (or holds, as the case may be) the subject assets in trust for the parishes. Because of that, Debtor did not view the transfers of legal title as part of its reorganization effort as fraudulent, nor did it believe that it owned more than "bare legal title" to most of the assets it still owned. Debtor declined to bring the claims and did not agree that the UCC could bring them.

If the claims have merit, they could be worth more than $150,000,000, making them by far the most valuable estate assets. If the claims lack merit, on the other hand, it would be an enormous waste of time and money to pursue them. Furthermore, given that the assets in question are mostly churches, schools, and cash raised from parishioners, seeking to recover and sell them to pay creditors raises potential religious freedom concerns. Finally, many of the assets could be available to pay creditors even if they are owned by the parishes, if the creditors have claims against the parishes.

The UCC filed a motion for authority to bring the avoidance actions on May 29, 2020. The matter was thoroughly briefed and argued. On October 9, 2020, the Court granted the motion. *See In re Roman Catholic Church of Archdiocese of Santa Fe*, 621 B.R. 502, 506 (Bankr. D.N.M. 2020) (the "Derivative Standing Order").

The Debtor and the parishes timely appealed the Derivative Standing Order to the Tenth Circuit Bankruptcy Appellate Panel (BAP). On November 20, 2020, the BAP entered an order to show cause why the appeal should not be dismissed because the Derivative Standing Order is interlocutory. That issue has now been fully briefed. On January 4, 2021, Debtor and the parishes filed with the BAP Appellants' Joint Motion for Certification of Direct Appeal to the Tenth Circuit. The parties are awaiting the BAP's decision on both the order to show cause and the joint motion.

Debtor and the parishes filed this motion for stay pending appeal on October 23, 2020. The

UCC objected timely and Debtor and the parishes have replied. The Court held a hearing on the motion on January 26, 2021. Debtor estimates that the litigation would cost the estate about $5,000,000 through all appeals. This figure includes the UCC's attorney fees, but not the attorney fees incurred by the parishes. At the hearing, the parties agreed that Debtor has the cash needed to fund the litigation.

B.  Requirements for a Stay Pending Appeal.

The trial court has discretion whether to grant a stay pending appeal. *See Nken v. Holder*, 556 U.S. 418, 427, 433 (2009) ("a stay is an intrusion into the ordinary processes of administration and judicial review . . . [and] is not a matter of right, even if irreparable injury might otherwise result . . . . It is instead an exercise of judicial discretion dependent upon the circumstances of the case"). "The movant bears a 'heavy' burden" of showing that a stay is justified. *In re Efron*, 535 B.R. 516, 518 (Bankr. D.P.R. 2014), citing *In re GMC*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009).

Courts consider the following when determining whether to grant a motion for stay pending appeal: "[1] the likelihood of success on appeal; [2] the threat of irreparable harm if the stay is not granted; [3] the absence of harm to opposing parties if the stay is granted; and [4] any risk of harm to the public interest." *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (internal quotations omitted); *Lang v. Lang (In re Lang)*, 305 B.R. 905, 911 (10th Cir. BAP 2004); *In re Sunland, Inc.*, 507 B.R. 753, 764 (Bankr. D.N.M. 2014) (citing *Nken*, 556 U.S. at 426). The first two elements are the most critical. *Nken*, 556 U.S. at 434.

The requesting party must satisfy all four elements to obtain a stay pending appeal. *Sunland, Inc.*, 507 B.R. at 765 (stay denied); *In re Deep,* 288 B.R. 27, 30 (N.D.N.Y. 2003) ("failure to satisfy one prong of the standard for granting a stay pending appeal dooms the motion") (internal quote omitted); *see also In re Holman*, 2017 WL 3025929, at *4 (Bankr. D. Kan.) (appellant did

not demonstrate a likelihood of success on appeal, which meant that the request for a stay must be denied).

C.        <u>Do the Parishes Have Standing to Appeal</u>?

As an initial matter, the UCC argues that the parishes lack standing to appeal the Derivative Standing Order. It is true that the parishes do not have independent standing because they are not "aggrieved" parties. *See, e.g., C.W. Mining Co. v. Aquila, Inc. (In re C.W. Mining Co.)*, 636 F.3d 1257, 1260 (10th Cir. 2011) ("this circuit has adopted the rule, derived from the Bankruptcy Act of 1898, that appellate review of a bankruptcy court order is limited to 'persons aggrieved' by that order."). A "person aggrieved" is one whose rights or interests are "directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." *Id.* Here, the parishes' interest in the matter is that they are being sued by the UCC. The case law is almost unanimous, however, that being a defendant does not provide standing to appeal an order authorizing the lawsuit. *See, e.g., In re El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir. 1987) (order authorizing a suit against a defendant does not give defendant standing to appeal the order); *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 743 (3d Cir. 1995) ("an order which simply allows a lawsuit to go forward does not necessarily 'aggrieve' the potential defendant for purposes of appellate standing"); *In re LTV Steel Co.*, 560 F.3d 449, 453 (6th Cir. 2009) ("[W]e are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party 'aggrieved' so as to confer standing in a bankruptcy appeal."); *Fidelity Bank, N. A. v. M.M. Group, Inc.*, 77 F.3d 880, 883 (6th Cir. 1996) (being "subject[ed] to the possibility of future litigation" by a bankruptcy court order is "insufficient to confer standing"); *Opportunity Fin. LLC v. Kelly*, 822 F.3d 451, 458 (8th Cir. 2016) ("Generally, a bankruptcy court order allowing litigation to proceed against an adversary defendant does not make that defendant

a party aggrieved"); *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1325-26 (11th Cir. 2014) ("an order subjecting a party to litigation . . . does not constitute the direct harm necessary to satisfy our person aggrieved standard.").

However, even though the parishes lack independent standing, they may nevertheless be heard in this matter by virtue of Debtor's undisputed standing to appeal. In *Southern Utah Wilderness Alliance v. BLM*, 425 F.3d 735 (10th Cir. 2005), for example, the Tenth Circuit held:

> San Juan County argues that SUWA lacks standing to challenge the Counties' purported rights of way. We need not address this issue, however, because the BLM, which does have standing, has raised the same claims and sought the same relief as SUWA, both here and before the district court. A decision on SUWA's standing, therefore, would in no way avoid resolution of the relevant issues. *See Secretary of the Interior v. California,* 464 U.S. 312, 319 n.3, 104 S. Ct. 656, 78 L. Ed. 2d 496 (1984); *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 44–45, 94 S. Ct. 1494, 39 L. Ed. 2d 812 (1974).

425 F.3d at 744. The Tenth Circuit allowed SUWA to participate in the appeal. More recently, the United States Supreme Court stated:

> The Third Circuit also determined *sua sponte* that the Little Sisters lacked appellate standing to intervene because a District Court in Colorado had permanently enjoined the contraceptive mandate as applied to plans in which the Little Sisters participate. This was error. Under our precedents, at least one party must demonstrate Article III standing for each claim for relief. An intervenor of right must independently demonstrate Article III standing if it pursues relief that is broader than or different from the party invoking a court's jurisdiction. See *Town of Chester* v. *Laroe Estates, Inc.*, 581 U. S. ——, ——, 137 S. Ct. 1645, 1651, 198 L. Ed. 2d 64 (2017). Here, the Federal Government clearly had standing to invoke the Third Circuit's appellate jurisdiction, and both the Federal Government and the Little Sisters asked the court to dissolve the injunction against the religious exemption. The Third Circuit accordingly erred by inquiring into the Little Sisters' independent Article III standing.

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). Parties who lack standing to appeal, but who wish to be heard, are treated like amici curiae: if a like-minded party with standing does appeal, then the court will hear from the party who lacks standing. *See, e.g., National Assoc. of Home Builders v. U.S. Army Corp of Engineers*, 519 F.

Supp. 2d 89 (D.D.C. 2007) (entity without independent right to intervene is a lawsuit allowed to participate as amicus curiae).

Following *Southern Utah* and *Little Sisters*, the Court will allow the parishes to "piggyback" on Debtor's standing to appeal, and will consider the parishes' argument in support of a stay.

D.  Likelihood of Success on the Merits.

A party seeking a stay pending appeal must be able to make a "strong showing that he is likely to succeed on the merits . . . . More than a mere possibility of relief is required." *Nken,* 556 U.S. at 434 (alterations and internal quotations omitted). Debtor must overcome two hurdles to make this showing: it must show that it can appeal the Derivative Standing Order, which is interlocutory, and it must show that the Derivative Standing Order is likely to be reversed on appeal.

1. May Debtor/Parishes Appeal the Derivative Standing Order Now? The BAP notified the parties on November 20, 2020, of its concern that the Court's order on appeal was interlocutory. The BAP lacks jurisdiction to hear appeals from most interlocutory orders, absent its leave. *See* 28 U.S.C. § 158(a) ("district courts shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . and (3) with leave of the court, from other interlocutory orders and decrees").[2]

> In ordinary civil litigation, a case in federal district court culminates in a "final decisio[n]," 28 U.S.C. § 1291, a ruling "by which a district court disassociates itself from a case," *Swint v. Chambers County Comm'n,* 514 U.S. 35, 42, 115 S. Ct. 1203, 131 L. Ed. 2d 60 (1995). A party can typically appeal as of right only from that final decision.

*Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1691 (2015). On the other hand,

---

[2] The "court" referred to in § 158(a)(3) is the district court or the BAP, as the case may be, not the bankruptcy court. *See* Fed. R. Bankr. Pro. 8004.

> An interlocutory order, judgment, or decree [ ] is one that does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and that requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.

1 Collier on Bankruptcy ¶ 5.08 [1][a] (16th ed. 2020).

An order granting derivative standing is interlocutory. *LTV Steel*, 560 F.3d at 451 (order granting derivative standing to committee to pursue claims against corporate officers was not a final order); *Jefferson Cty. Bd. of Cty. Commissioners v. Voinovich (In re The V Cos.)*, 292 B.R. 290, 293–94 (6th Cir. BAP 2003) (bankruptcy court order granting derivative standing to prosecute estate's avoidance actions was interlocutory); *In re Sandenhill, Inc.*, 304 B.R. 692, 693–95 (Bankr. E.D. Pa. 2004) (granting permission to appeal interlocutory order conferring derivative standing on a creditor in a chapter 7 case).

The Derivative Standing Order is not final because the parties' rights have not been fully adjudicated. *See, e.g., In re Tri-Valley Distrib.*, 533 F.3d 1209, 1214 (10th Cir. 2008) (if a BAP's order results in significant further proceedings in the bankruptcy court, the order is not final); *Telegraph Gold Corp. v. Banks (In re Cascade Energy & Metals Corp.)*, 956 F.2d 935, 938 n.2 (10th Cir. 1992) ("[T]wo general principles regarding finality [are] well-settled in this circuit, *i.e.*, (1) an order is not final unless it ends the litigation on the merits, leaving nothing for the court to do but execute the judgment, and (2) a district court order is not final if it contemplates significant

further proceedings in the bankruptcy court") (citations omitted).[3]

"The party seeking an interlocutory appeal bears the burden of demonstrating exceptional circumstances." *Am. Freight Sys., Inc. v. Transport Ins. Co. (In re Am. Freight Sys., Inc.),* 194 B.R. 659, 661-62 (D. Kan. 1996). Interlocutory appeals are "very rarely permitted." *Moran v. UCC*, 2006 WL 3253128, at *4 (N.D. Ohio), citing *In re Huff*, 1998 U.S. Dist. LEXIS 2452 at *4 (W.D. Mich.); *In re Boss Management Group, Inc.*, 2007 WL 1959172, at *4 (W.D. Va.) (same). If there are any doubts whether an interlocutory appeal should be allowed, the question is resolved in favor of finding the order non-appealable. *United States v. Stone*, 53 F.3d 141, 143–144 (6th Cir. 1995).

The Court concludes that the likelihood of the BAP allowing Debtor to pursue the appeal of the Derivative Standing Order is difficult to estimate. For the purpose of ruling to the motion, the Court will assume that the appeal will be allowed to proceed.

2. <u>Reversal of the Derivative Standing Order</u>. It does not seem likely to the Court that the Derivative Standing Order will be reversed on appeal. All circuit courts that have addressed the issue, as well as bankruptcy courts in the Tenth Circuit, have held that a bankruptcy court has authority to grant derivative standing to a committee to prosecute and settle the estate's claims where, as here, the debtor has a conflict. *See Archdiocese of Santa Fe*, 621 B.R. at 506 (collecting

---

[3] Under the "collateral order doctrine," an interlocutory order may be appealed as of right if it conclusively determines a disputed question completely separate from the merits of the action, will be effectively unreviewable on a final judgment appeal, and deals with an issue too important to be denied review. *See generally* 1 Collier on Bankruptcy ¶ 5.08[3]. The collateral order doctrine is narrow and stringently applied. *Id.* The Derivative Standing Order would be reviewable in a final judgment appeal and therefore does not come within the doctrine. *Cf. Lauro Lines s.r.l. v. Chasser* 490 U.S. 495, 499 (1989) (order is unreviewable only when an asserted right would be destroyed if not vindicated before trial).

cases).

The primary case to the contrary is *In re Fox*, 305 B.R. 912 (10th Cir. BAP 2004). Were the BAP to reach the merits of the derivative standing claim, it might feel compelled to follow *Fox*. *See, e.g., In re Vaughn*, 311 B.R. 573, 585 (10th Cir. BAP 2004) ("This panel is bound by the decisions of other BAP panels.") (citing *In re Blagg*, 223 B.R. 795, 804 (10th Cir. BAP 1998)); *In re Hatley*, 227 B.R. 757, 761 (10th Cir. BAP 1998) (same). In such an event, however, the Court believes it likely that the Tenth Circuit would side with its sister circuits, overrule *Fox*, and allow derivative standing.

In sum, the Court cannot find that the Debtor/parishes are likely to succeed on the merits of their appeal.

E.   Irreparable Harm.

Debtor and the parishes point to the expense of litigation as the irreparable harm they would suffer if the Court does not stay the litigation pending appeal. While the Court recognizes that the looming litigation expense is a real harm, the law is clear that litigation expense is not the kind of "irreparable harm" that justifies a stay pending appeal. *See, e.g., Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *Stifel, Nicolaus & Co., Inc. v. Woolsey & Co., Inc.*, 43 F.3d 1483, at *2 (10th Cir. 1994) (unpublished) (quoting *Bannercraft*); *Consumer Data Industry Assoc. v. King*, 2011 WL 13268851, at *3 (D.N.M.) (citing *Bannercraft*, the court held "[i]t is well established that the expense of defending against litigation, even expense that is 'substantial and unrecoupable,' does not constitute irreparable injury") (citation omitted). Bankruptcy courts are in agreement. *See, e.g., In re Calabria*, 407 B.R. 671, 680 (Bankr. W.D. Pa. 2009) ("[i]t has long been recognized that mere litigation expense, even if substantial and

unrecoupable, does not constitute irreparable injury"); *In re Young*, 2006 WL 3690678, at *2 (Bankr. M.D.N.C.) (same); *In re Countrywide Home Loans, Inc.*, 387 B.R. 467, 474 (Bankr. W.D. Pa. 2008) (same); *In re SportsStuff, Inc.*, 2009 WL 3526188, at *4 (Bankr. D. Neb.) (same); *In re Accurate Die Casting Co.*, 59 B.R. 853, 855 (Bankr. N.D. Ohio 1986) (same); *In re Williston Oil Corp.*, 54 B.R. 10, 12-13 (Bankr. D.N.J. 1984) (same).

Debtor cites one case in support of its position, *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991). The court in *Gercke* stated:

> Litigation expenses by themselves do not justify a stay of a proceeding. Where, however, there is a showing that the incurring of the litigation expenses threatens the assets of a bankrupt estate as opposed to merely diminishing them, the injunction may be appropriate. *NLRB v. Superior Forwarding, Inc.,* 762 F.2d 695 (8th Cir. 1985).

122 B.R. at 626. *Gercke* is distinguishable; it involved a foreign insolvency proceeding (pending in the United Kingdom) and the request to enjoin pending litigation against the debtor in connection with the United Kingdom proceeding. Thus, it was not a stay pending appeal that was at issue but something in the nature of the automatic stay. Further, in *Gercke*, the estate could not afford to fund the litigation movants sought to stay. *Id.* at 623. It was not difficult for the bankruptcy judge to decide that an injunction was appropriate to stop the "race to the courthouse" and preserve estate assets for all creditors. *Id.* at 625–27.

Here, Debtor has enough cash to litigate the UCC claims. Thus, while litigation may diminish the value of the bankruptcy estate, it does not, at this point, threaten the assets of the estate.

F.      Substantial Harm to Other Parties.

Granting a stay pending appeal likely would harm creditors by delaying resolution of this bankruptcy case. An appeal to the Tenth Circuit, which seems likely given the *Fox* decision, could take a year or two. That is a long time to put the bankruptcy case, already more than two years old,

on "hold." Of course, if the Derivative Standing Order is reversed by the Tenth Circuit, then a stay pending appeal would have benefited rather than harmed creditors. Nevertheless, given the Court's view of the likelihood of success on the merits, the Court finds that Debtor did not carry its burden on this element.

G.     Public Interest.

The Court does not believe that the public interest favors or disfavors a stay pending appeal. Had Debtor/parishes carried their burden on the other elements, the Court would not let this element stand in the way of granting a stay pending appeal.

## Conclusion

Debtor and the parishes have not carried their "heavy" burden of showing that they are entitled to a stay pending appeal, primarily on the critical "likelihood of success" and "irreparable harm" elements. The motion therefore will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: February 4, 2021
Copies to: Counsel of record