## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New
Mexico corporation sole,

Debtor.

Chapter 11

Case No. 18-13027-t11

## MOTION FOR ORDER AUTHORIZING SALE OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 363 (50 MT. CARMEL RD.) AND MOTION TO ALLOW AND AUTHORIZE DEBTOR TO PAY BROKER'S COMMISSION AND CLOSING COSTS AS ADMINISTRATIVE EXPENSES

The Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico Corporation sole, the debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 reorganization case (the "Bankruptcy Case"), by counsel, hereby moves for an order authorizing the Debtor to sell certain real property pursuant to 11 U.S.C. § 363. In support of this Motion, the Debtor states as follows:

1.      The Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(N). Venue is proper in this District, pursuant to 28 U.S.C. § 1409(a).

2.      On December 3, 2018 (the "Petition Date"), the Debtor commenced this Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      The Debtor is a debtor-in-possession and is authorized to operate its business pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      The Debtor is the owner of certain real property located at 50 Mt. Carmel Rd. Santa Fe, NM (the "Property").

5.      On July 23, 2020, the Debtor filed its First Amended Application to Employ Santa Fe Properties (Philip Gudwin and Rusty Wafer") (the "Broker") as the Debtor's real estate broker

to market the Property on behalf of the Estate (the "Employment Application") (Doc. No. 445). On July 23, 2020, Broker filed disclosures pursuant to Bankruptcy Rule 2014 (Doc. No. 444).

6.      On August 28, 2020, the Court entered an Order Approving Debtor's Application to Employ Santa Fe Properties as Real Estate Broker (Doc. No. 475) (the "Employment Order"), which approved Broker's listing agreement attached to the Employment Application (the "Listing Agreement").

7.      Pursuant to the terms of the Listing Agreement, Broker will be paid 5% of the sales price plus applicable tax. The commission due to the Broker should be paid to Broker at closing, as should all other costs of sale.  The net proceeds shall be delivered to the Debtor.

8.      Pursuant to the terms of the approved Listing Agreement, Broker implemented a marketing program targeting brokers and consumers, which included, *inter alia*:

        a.      featuring the Property on various marketing platforms including the Santa Fe Area Multiple Listing Service, Loopnet.com, and other real estate listing websites;

        b.      hiring a professional photographer to shoot photos for print and digital advertising;

        c.      handling frequent communications with other brokers; and

        d.       employing electronic messaging to targeted consumers using Broker's database of buyers.

9.      Other brokers had access to show the Property to prospective buyers.

10.     On February 26, 2021, the Debtor and Mighty Tai, LLC (the "Buyer") executed a Purchase Agreement, a copy of which is attached hereto as Exhibit A (the "Contract"). Pursuant to the terms of the Contract, which are subject to the approval of this Court, the Buyer has agreed

- 2 -

to purchase, and the Debtor has agreed to sell the Property for $6,400,000.00 (the "Purchase Price").

11.     The Debtor requests that the Court authorize the sale of the Property pursuant to 11 U.S.C. § 363(b).

12.     Section 363(b) of the Bankruptcy Code authorizes the sale of property of the estate other than in the ordinary course of business after notice and a hearing. A sale of assets outside the ordinary course of business is a matter within the Court's discretion. Courts generally permit a debtor to sell property of the estate outside the ordinary course where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is for fair and reasonable consideration and is in good faith. See *In re Premier Concrete, LLC*, 2010 WL 1780046 (Bankr.D.N.M.2010) (citing e.g. *In re General Motors Corp.,* 407 B.R. 463, 493–94 (Bankr.S.D.N.Y 2009); *In re Derivium Capital, LLC,* 380 B.R. 392, 404 (Bankr.D.S.C.2007); *In re Psychrometric Systems, Inc.,* 367 B.R. 670, 674 (Bankr.D.Colo.2007).

13.     In *Premier*, Judge Jacobvitz outlined a multi-factored test for determining whether a sale is properly proposed within the debtor's business judgment:

> Non-exclusive factors used by courts in considering whether to grant a motion to sell (as first established *In re Lionel,* 722 F.2d 1063, 1071–72 (2nd Cir.1983), which articulated the "business judgment" test) include: 1) whether there was any improper or bad motive involved; 2) whether the <u>price is fair and reasonable</u> and whether the <u>transaction occurred at an arm's length</u>; and 3) whether there were adequate sales procedures, including <u>proper exposure to the market</u> and <u>fair and reasonable notice to all parties in interest</u>. *E.g. In re Castre,* 312 B.R. 426, 428 (Bankr.D.Colo.2004); *In re Medical Software Solutions* 286 B.R. 431, 440–441 (Bankr.D.Utah 2002). *See also In re Allison,* 39 B.R. 300, 303 (Bankr.D.N.M. 1984 ("reasonable and adequate notice must be given to all interested parties," the proposed sale or lease must be "economically reasonable" and that objecting parties will not be able to defeat a plan of reorganization)).

*Premier* at *2 (emphasis supplied).

- 3 -

14. The sale contemplated by this Motion satisfies all the non-exclusive factors for determining whether to grant a motion to sell under *Premier*:

    a.    <u>There is no Bad or Improper Motive Involved.</u> The Debtor is marketing several pieces of real estate, including the Property, in an effort to fund a feasible plan of reorganization. The Buyer is not related to Debtor.

    b.    <u>Price is Fair and Reasonable.</u> The Purchase Price is well within the price range represented to the Debtor by other brokers and is the highest and best offer the Debtor has received out of numerous offers that were actively considered and negotiated over six months of exposure to the market.

    c.    <u>Transaction Occurs at Arm's Length.</u> The sale of the Property to Buyer under the Contract is the product of negotiation between the Buyer and the Debtor, neither of whom is connected to the other.

    d.    <u>Proper Exposure to the Market.</u> The Debtor, through Broker, has exposed the Property to the market in a manner intended to generate the most interest possible.

    e.    <u>Fair and Reasonable Notice to all Parties in Interest.</u> The Property was appropriately advertised. All parties in interest had an opportunity to review the Employment Application which detailed the Debtor's agreement with Broker to sell the Property.

15. Based on the foregoing, the Debtor has determined that, in its business judgment, the proposed sale of the Property to Buyer in accordance with the terms of the Contract is for fair and reasonable consideration, is in good faith, does not unfairly benefit any party in interest, will maximize the value of the Estate, and should be authorized.

- 4 -

16.     The Debtor requests that the sale of the Property be free and clear of all liens, claims, and interests with any such liens, claims, and interests to attach to the net sale proceeds with the same validity, priority, and to the extent that any such liens, claims and interests had on the Property prior to the closing of the sale pursuant to Section 363(f).

17.     Grounds exist under Section 363(f) of the Bankruptcy Code for a sale of the Property free and clear of liens, claims and interests. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if – (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

18.     Upon information and belief, there are no liens filed of record attaching to the Property.  The Debtor is not aware of any other claims or interests attaching to the Property. Therefore, the Property should be sold pursuant to the Contract free and clear of all liens, claims, and interests pursuant to Section 363(f).

19.     The Debtor requests that the Buyer be determined to be a good-faith purchaser as contemplated by Section 363(m).

20.     Pursuant to Section 363(m):

> The reversal or modification on appeal of an authorization under subsection (b)9 or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchase or leased such property in good faith …

11 U.S.C. § 363(m).

21.     The term "good faith" is not defined in the code but courts have found good-faith purchasers when they purchase out of their own personal interest, were not solicited by the debtor or his agents to purchase the property, do not seek to obtain the property by fraud, and are not acting in a manner grossly unfair to other bidders.  See *In re Indep. Gas & Oil Producers, Inc.*, 80 Fed. Appx. 95, at 99 (10th Cir. 2003).

22.     Upon information and belief, the Buyer seeks to purchase the Property out of its own interest. The Buyer was not solicited by the Debtor or its agents to purchase the Property solicited by the Debtor or its agents, other than the Broker in the ordinary course of business, does not seek to obtain the Property by fraud, and submitted its offer to purchase the Property in an amount and manner not unfair to other bidders.

23.     The Debtor requests that the Court waive the 14-day stay of an order resulting from this Motion otherwise required by Fed. R. Bankr. P. 6004(h).

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

A.     Authorizing the sale of the Property pursuant to the terms described in the Contract;

B.     Approving the Contract and authorizing the Debtor to take any and all actions necessary to close on the sale on the terms set forth in the Contract, including but not limited to the execution of a warranty deed in a form acceptable to Debtor and the Buyer;

C.     Allowing as an administrative expense of the Estate and authorizing the Debtor to pay Broker's commission and applicable tax, in full, at closing, pursuant to the terms of the Listing Agreement;

D.     Allowing as administrative expenses of the Estate and authorizing the Debtor to pay in full, at closing, all closing costs and expenses pursuant to the terms of the Contract;

- 6 -

E.      Authorizing the transfer of the Property pursuant to the Contract free and clear of: (a) all interests in the Property of any entity other than the estate pursuant to Section 363(f) including but not limited to liens, claims (as defined by Section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, and restrictions of any kind or nature whatsoever whether arising before or after the Petition Date, whether *in rem* or *in personam*, liquidated or unliquidated, contingent or non-contingent, senior or subordinate, whether at law or equity, including all claims or rights based on any theory of successor or transferee liability, all environmental claims, all changes in control provisions, (b) all rights to object or consent to the effectiveness of the transfer of the Property to the Buyer, and (c) all rights at law or equity (collectively, "Claims");

F.      Finding that all persons and entities who have asserted, could have asserted, or otherwise may in the future assert a cause of action against the Debtor or the Property relating to their Claims, be forever barred, estopped, and permanently enjoined from asserting such causes of action or Claims against the Buyer, its successors in interest, affiliates, and assignees and against the Property of whatsoever nature;

G.      Determining that the Buyer is a good faith purchaser of the Property as that term is used in Section 363(m) of the Bankruptcy Code;

H.      Retaining exclusive jurisdiction to interpret, enforce and implement the terms and provisions of the order approving the sale and the Contract;

I.      Determining that the order approving the sale is not stayed as provided by Rule 6004(h) and the Debtor and the Buyer may close on the sale as set forth in the Contract immediately; and

J.      Granting the Debtor all other just and proper relief.

Respectfully submitted by:

WALKER & ASSOCIATES, P.C.
*s/filed electronically 03/19/2021*
Thomas D. Walker
500 Marquette N.W., Suite 650
Albuquerque, N.M. 87102
(505) 766-9272
e-mail: twalker@walkerlawpc.com
*Attorneys for Debtor in Possession*

In accordance with NM LBR 9036-1 and Fed. R. Civ. P. 5(b)(3), this certifies that service of the foregoing document was made on March 19, 2021, via the notice transmission facilities of the case management and electronic filing system of the Bankruptcy Court, on all parties entitled to receive electronic filings.

*s/ filed electronically 03/19/2021*
Thomas D. Walker

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18





EXHIBIT A



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021
# PART I – BROKER DUTIES DISCLOSURE

Per New Mexico law, Brokers are required to perform a specific set of applicable Broker Duties. Prior to the time the Broker generates or presents any written documents that has the potential to become an express written agreement, he/she must disclose such duties and obtain written acknowledgement that the Broker has made such disclosures.

**SECTION A:** **All Brokers in this transaction owe the following broker duties to *ALL* buyers and sellers in this transaction, even if the broker is not representing the buyer or the seller in the transaction:**

1. Honesty and reasonable care and ethical and professional conduct;
2. Compliance with local, state, and federal fair housing and anti-discrimination laws, the New Mexico Real Estate License Law and the Real Estate Commission rules and other applicable local, state, and federal laws and regulations;
3. Performance of any and all written agreements made with the prospective buyer, seller, landlord (owner) or tenant;
4. Written disclosure of any potential conflict of interest that the broker has in the transaction, including, but not limited to:
   A. Any written brokerage relationship the Broker has with any other parties to the transaction or;
   B. Any material interest/relationship of a business, personal or family nature that the broker has in the transaction; or
   C. Any written agreement the Broker has with a Transaction Coordinator who will be providing services related to the transaction.
5. Written disclosure of any adverse material facts actually known by the broker about the property or the transaction, or about the financial ability of the parties to the transaction to complete the transaction; adverse material facts requiring disclosure do not include any information covered by federal fair housing laws or the New Mexico Human Rights Act.

**SECTION B:** **In addition to the above duties, Broker(s) owes the following Broker Duties to the buyer(s) and/or seller(s) in this transaction to whom the Broker(s) is/are directly providing real estate services, regardless of the scope and nature of those services.**

1. Unless otherwise agreed to in writing by the party, assistance to the party in completing the transaction, including:
   A. timely presentation of and response to all written offers or counteroffers; and
   B. active participation in assisting in complying with the terms and conditions of the contract and with the finalization of the transaction;
   If the broker in the transaction is not providing the service, advice or assistance described in Paragraphs 1A or 1B of this Subsection, the party must agree in writing that the broker is not expected to provide such service, advice or assistance. The broker shall disclose the existence of such agreement in writing to the other brokers involved in the transaction.
2. Acknowledgement by the broker that there may be matters related to the transaction that are outside the broker's knowledge or expertise and that the broker will suggest that the party seek expert advice on these matters;
3. Advise to consult with an attorney regarding the effectiveness, validity or consequences of any written document generated by the brokerage or presented to the party and that has the potential to become an express written agreement;
4. Prompt accounting for all money or property received by the broker;
5. Maintenance of any confidential information learned in the course of any prior agency relationship unless the disclosure is with the former principal's written consent or is required by law;
6. Written disclosure of brokerage relationship option available in New Mexico:
   A. **Exclusive agency:** an express written agreement between a person and a brokerage wherein the brokerage agrees to exclusively represent as an agent the interest of the person in real estate transaction;
   B. **Dual agency:** an express written agreement that modifies existing exclusive agency agreements to provide that the brokerage agrees to act as facilitator in real estate transaction rather than as an exclusive agent for either party;
   C. **Transaction Broker:** The non-fiduciary relationship created by law, wherein a brokerage provides real estate services without entering into an agency relationship.
7. Unless otherwise authorized in writing, a broker who is directly providing real estate services to a seller shall not disclose the following to the buyer in a transaction:
   A. that the seller has previously indicated he/she will accept a sales price less than the asking or listed price;
   B. that the seller will agree to financing terms other than those offered;
   C. the seller's motivation for selling/leasing; or
   D. any other information the seller has requested in writing remain confidential, unless disclosure is required by law;
8. Unless otherwise authorized in writing, a broker who is directly providing real estate service to a buyer shall not disclose the following to the seller in a transaction:
   A. that the buyer has previously indicated he/she will pay a price greater than the price submitted in a written offer;
   B. the buyer's motivation for buying; or
   C. any other information the buyer has requested in writing remain confidential, unless disclosure is required by law.

**BUYER(S) AND SELLER(S): PLEASE ACKNOWLEDGE RECEIPT BY INITIALING BELOW.**

Santa Fe Properties Fe corporate, 1000 S Side de Cristo, Santa Fe, NM 87505    Phone:    Fax:    J B CARMEL
Philip Gudwin

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 9 of 43

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021
### PART II – OTHER REQUIRED DISCLOSURES
*Broker shall update these and all other required disclosures as needed.*



**BUYER'S BROKER DISCLOSURES:**

1. **Brokerage Relationship.** _____PHILIP GUDWIN_____ ("Buyer's Broker") is working with the Buyer as a:
   - [X] Transaction Broker [ ] with [X] without a written Buyer Broker Agreement.
   - [ ] Agent with a written Buyer Broker Agreement with Agency Addendum.
   - [ ] Transaction Broker without a written Buyer Broker Agreement, but with a Compensation Agreement.

2. **In-House Transaction: Buyer and Seller's Consent to Dual Representation, NO Dual Agency created.**
   - [ ] Buyer's Broker is licensed under the same Qualifying Broker as Seller's Broker.
   - [X] Buyer's Broker is also Seller's Broker for the property in this Transaction. Broker has a written listing agreement with Seller as [X] Transaction Broker [ ] Agent.
   - [ ] Brokerage is representing both Buyer and Seller.

3. [ ] **Dual Agency:** Brokerage is representing both Buyer and Seller by means of written agency agreements with each of them and Designated Agency has ***not*** been chosen by the Qualifying Broker; Designated Agency is a policy that discloses to a client that the broker representing him/her as an agent is the client's only representative in the brokerage. When Designated Agency is *not* chosen, Dual Agency is created. Prior to writing or presenting this offer, Broker must obtain written consent from the parties to act as a Dual Agent (NMAR Form 1301, Agency Agreement – Dual).

4. **Additional Disclosures:** If applicable, check box below. Where noted (♦), attach NMAR Form 2100 or other disclosure.
   - [ ] Buyer's Broker has an **OWNERSHIP INTEREST IN PROPERTY**
   - [ ] Buyer's Broker has a **CONFLICT OF INTEREST** or **MATERIAL INTEREST** (business, personal or family) ♦
   - [ ] Buyer's Broker knows of **ADVERSE MATERIAL FACTS** about the Property and/or Transaction ♦
   - [ ] Buyer's Broker has engaged a **TRANSACTION COORDINATOR:** _____ .

**SELLER'S BROKER DISCLOSURES:**

1. **Brokerage Relationship.** _____PHILIP GUDWIN_____ ("Seller's Broker") is working with the Seller as a:
   - [X] Transaction Broker with a written Listing Agreement.
   - [ ] Agent with a written Listing Agreement with Agency Addendum.
   - [ ] Transaction Broker without a written Listing Agreement, but with a Compensation Agreement.

2. **Additional Disclosures:** If applicable, check box below. Where noted (♦), attach NMAR Form 2100 or other disclosure.
   - [ ] Seller's Broker has an **OWNERSHIP INTEREST IN PROPERTY**
   - [ ] Seller's Broker has a **CONFLICT OF INTEREST** or **MATERIAL INTEREST** (business, personal or family) ♦
   - [ ] Seller's Broker knows of **ADVERSE MATERIAL FACTS** about the Property and/or Transaction; ♦
   - [ ] Seller's Broker has engaged a **TRANSACTION COORDINATOR:** _____ .

---

**TRANSACTION COORDINATORS** are licensed brokers who have been engaged by the broker as indicated above to assist the broker in the processing of the transaction, which may include gathering information and paperwork, overseeing and organizing contractual deadlines, communicating and coordinating with lenders, title companies, inspectors, other brokers and the parties to the contract to facilitate the closing of the transaction, and assembling the final transaction file for closing.
**BROKER DUTIES OWED BY TRANSACTION COORDINATORS:**
- If working for the broker who hired them and having no interaction with the broker's customer or client and/or other brokers involved in the transaction: Broker Duties 1-5 in Section A on Cover Page I.
- If working directly with the broker's customer or client and/or other parties or brokers in the transaction: Broker Duties 1-5 of Section A on Cover Page I **and** Broker Duties 5, 7 and 8 of Section B on Cover Page I.

---

[ ] Buyer is a New Mexico Real Estate Broker
[ ] Buyer is a party to another Buyer-Broker Agreement

[ ] Seller is a New Mexico Real Estate Broker

| **BUYER** | **SELLER** |
|---|---|

| Buyer Signature | Date | Time | Seller Signature | Date | Time |
|---|---|---|---|---|---|
| MIGHTY TAI LLC. AND / ASSIGNS | | | ~~ARCHDIOCESE~~ OF SANTA FE A CORP | | |
| *John H. Davenport* | 2/13/2021 | | *Tom Macken* | 2/25/2021 | |
| Buyer Signature | Date | Time | Seller Signature | Date | Time |
| JOHN H. DAVENPORT | | | TOM MACKEN | | |

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



## THE FOLLOWING IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
## BROKERS ARE NOT PARTIES TO THIS PURCHASE AGREEMENT.

## BUYER'S BROKER(S)

| PHILIP GUDWIN | 07976 |
|---|---|
| Buyer's Broker Name | Buyer's Broker's NMREC License No. |
| LIZ CALE | 11728 |
| If different, Buyer's Broker's Qualifying Broker's Name | Buyer's Broker's Qualifying Broker's NMREC License No. |
| Santa Fe Properties | (505) 983-7436 |
| Buyer's Brokerage Firm | Office Phone / Fax |
| 1000 PASEO DE PERALTA | SANTA FE / NM / 87501 |
| Buyer's Brokerage Address | City / State / Zip Code |
| pgudwin@hotmail.com | Broker [X] is [ ] is not a REALTOR® |
| Email Address / Cell Number | |

| PHILIP GUDWIN | 07976 |
|---|---|
| Buyer's Broker Name | Buyer's Broker's NMREC License No. |
| LIZ CALE | 11728 |
| If different, Buyer's Broker's Qualifying Broker's Name | Buyer's Broker's Qualifying Broker's NMREC License No. |
| Santa Fe Properties | (505) 984-7343 / (505) 984-1003 |
| Buyer's Brokerage Firm | Office Phone / Fax |
| 1000 PASEO DE PERALTA | SANTA FE / NM / 87501 |
| Buyer's Brokerage Address | City / State / Zip Code |
| pgudwin@hotmail.com | Broker [X] is [ ] is not a REALTOR® |
| Email Address / Cell Number | |

## SELLER'S BROKER

| PHILIP GUDWIN | 07976 |
|---|---|
| Seller's Broker Name | Seller's Broker's NMREC License No. |
| LIZ CALE | 11728 |
| If different, Seller's Broker's Qualifying Broker's Name | Seller's Broker's Qualifying Broker's NMREC License No. |
| Santa Fe Properties | 505-984 7343 / 505-984-1003 |
| Seller's Brokerage Firm | Office Phone / Fax |
| 1000 Paseo de Peralta | Santa Fe / NM / 87501 |
| Seller's Brokerage Address | City / State / Zip Code |
| pgudwin@hotmail.com | Broker [X] is [ ] is not a REALTOR® |
| Email Address / Cell Number | |

| PHILIP GUDWIN | 07976 |
|---|---|
| Seller's Broker Name | Seller's Broker's NMREC License No. |
| | |
| If different, Seller's Broker's Qualifying Broker's Name | Seller's Broker's Qualifying Broker's NMREC License No. |
| | |
| Seller's Brokerage Firm | Office Phone / Fax |
| | |
| Seller's Brokerage Address | City / State / Zip Code |
| | Broker [X] is [ ] is not a REALTOR® |
| Email Address / Cell Number | |

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



## 1. TERMS SUMMARY.

This Agreement includes:

[X] Addendum

[ ] Financing Addendum

[ ] Exhibit A Legal Description (to be provided by title company)

[X] Other (Describe): ___**OTHER FORMS**___

Offer Date: **February 15, 2021**

Offer Expiration Date: **February 22, 2021**

Buyer: **MIGHTY TAI LLC. AND / ASSIGNS , JOHN H. DAVENPORT**

Seller: **ARCHDIOCESE OF SANTA FE A CORPORATION SOLE, TOM MACKEN**

Property Description: ___

Address: **50 MT.CARMEL RD , Santa Fe, NM 87501-2113**

Legal Description: **TO BE SUPPLIED WITH TITLE BINDER BY TITLE CO.**

Purchase Price: $ **6,400,000.00**

Earnest Money: $ **100,000.00 + 400,000.00 SEE ADDENDUM**

Inspection Period: **90 DAYS SEE ADDENDUM**

Closing Date: **30 DAYS AFTER INSPECTIONS. SEE ADDENDUM**

Conveyance Documents:

[ ] Deed [X] General Warranty Deed [ ] Special Warranty Deed [ ] Quitclaim Deed [ ] Other: ___

Check all that apply:

[X] Assignment of Leases

[ ] Other (Describe): ___

[ ] Survey Type: [ ] ALTA [X] Boundary [ ] Other (Describe): ___

[ ] Environmental Site Assessment: [X] Phase I [ ] Phase II [ ] Other (Describe): ___

## 2. TITLE COMPANY: **SANTA FE TITLE**

Title Officer Name: **STEVE RIEMANN**

Phone: **(505)819-0000**     Facsimile: ___

Email: **steve@sftitleco.com**

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR forms to non-NMAR members or unauthorized Real Estate Licenses is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regard to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership trademark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe, NM 87501                                     Phone: 505-9847343          Fax: 505-984-1003
Philip Gudwin

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 18-13027-t11 Doc 665 Filed 03/19/21 Entered 03/19/21 13:33:27 Page 12 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



**3. FINANCE CONTINGENCY**

☐ If checked, this Agreement is contingent upon Buyer obtaining financing on or before _____ and Financing Addendum (NMAR Form 3106) is attached if appropriate.

**4. PROPERTY.** Seller agrees to sell and Buyer agrees to buy the Property for the Purchase Price pursuant to the terms of this Purchase Agreement ("Agreement"). The parties agree that if the legal description of the Property in this Agreement is not accurate, this Agreement shall not be invalid and the legal description shall be revised in a manner acceptable to Buyer, Seller and Title Company. The Property includes all fixtures and permanent improvements located at the Property, including all mechanical systems, electrical systems, plumbing systems, heating, ventilating and air conditioning systems and equipment, sprinkler systems, security systems, fire detection systems, telephone distribution systems (lines, jacks and connections only), floor coverings, window coverings, elevators, signs, paving and landscaping. The Property includes all of Seller's interest in Existing Leases (as defined below), subleases, licenses, lease guaranties, easements, rights-of-way, streets, alleys, access rights, water rights, air rights, development rights, zoning rights and variances, and all other estates, rights, titles, interests, servitudes, tenements, and appurtenances of any nature whatsoever, in any way now or hereafter belonging to, relating to or pertaining to the Property. Service contracts, employment agreements, warranties and management agreements, to the extent they are assignable, will be included with the Property. THIS AGREEMENT IS NOT TO BE USED FOR TRANSACTIONS INVOLVING AN ASSIGNMENT OF A GROUND LEASE. UNLESS SPECIFICALLY PROVIDED IN AN ADDENDUM TO THIS AGREEMENT, BUYER IS NOT PURCHASING ANY PERSONAL PROPERTY OF SELLER PURSUANT TO THIS AGREEMENT. (IN THE EVENT BUYER IS PURCHASING PERSONAL PROPERTY OF SELLER IN CONJUNCTION WITH PURCHASE OF THE PROPERTY, BUYER SHOULD CONSULT AN ATTORNEY REGARDING NECESSARY ADDITIONAL DOCUMENTATION.)

**5. DEFINITIONS.** The following terms will have the following meanings:

  **A. BROKER** includes Buyer's and Seller's brokers.

  **B.** If a specific DATE is stated as a deadline in this Agreement, then that date **IS** the **FINAL** day for performance; and if that date falls on a Saturday, Sunday or a legal Holiday, the date **does not** extend to the next business day.

  **C. DATE OF ACCEPTANCE** is the date this Agreement is fully executed and delivered.

  **D. DAY(S)** will be determined on a "calendar day" basis and if the **FINAL** day for performance falls on a Saturday, Sunday or legal Holiday, the time therefore will be extended to the next business day. Legal Holidays are described as New Year's Day, Martin Luther King Jr.'s Birthday, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, and Christmas.

  **E. DELIVERED** means personally delivered or by any method where there is evidence of receipt. In the event the parties have agreed to electronic transmission of documents, a facsimile or e-mail transmission of a copy of this or any related document shall constitute delivery of that document. When an item is delivered to the real estate Broker who is working with or who represents the Buyer or Seller, it is considered delivered to the Buyer or Seller respectively, except if the same Broker works for or represents both Buyer and Seller, in which case, the item must be delivered to the Buyer or Seller, as applicable.

  **F. DEADLINES.** Any "deadline(s)" can be expressed either as a calendar date (See Paragraph 5(C)) or as a number of days (See Paragraph 5(E)).

  **G. ELECTRONIC** means relating to technology having electrical, digital, magnetic, wireless, telephonic, optical, electromagnetic or similar capabilities and includes, but is not limited to, facsimile and e-mail.

  **H. ELECTRONIC RECORD** means a record created, generated, sent, communicated, received or stored by electronic means.

  **I. ELECTRONIC SIGNATURE** means an electronic sound, symbol or symbol attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.

  **J. FIXTURE** means an <u>article</u> which was once personal property, but which has now become a part of the Property because the article has been fastened or affixed to the Property.

  **K. MASCULINE** includes the feminine.

  **L. SINGULAR** includes the plural.



DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



## NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021



6.  **EARNEST MONEY.** Within _____**3**_____ days of the Date of Acceptance, Buyer shall deliver the Earnest Money to the Title Company, to be held in escrow pursuant to the terms of this Agreement. The Earnest Money shall be held in a federally insured Trust account selected by the Title Company. Subject to the provisions of this Agreement, the Earnest Money is to be applied toward the purchase of the Property at the Closing. Upon Title Company's request, Buyer agrees to provide Title Company with its Federal Tax Identification Number. If Buyer fails to deposit the Earnest Money as required by this Agreement, this Agreement shall be automatically terminated.

7.  **DISCLOSURE AND DELIVERY OF INFORMATION.** Within _____**14**_____ days of the Date of Acceptance, Seller shall provide to Buyer true, correct and complete copies, to the extent that they are in Seller's control or possession, of the following: previously prepared environmental audits and inspections, physical inspection reports, maintenance information, warranties, service and other contracts, engineering reports, hydrology reports, drainage information, grading information, soils reports, topography information, utility reports and information, building plans and specifications, certificates of occupancy, plats, prior surveys, site plans, tax assessments and tax bills for the past two (2) years, utility bills, governmental and quasi-governmental notices, a schedule of all lawsuits (except suits initiated by Seller against tenants no longer occupying space at the Property) pending or threatened related to the Property (including a summary of relevant facts, status of the action, parties, court and attorneys involved), and such other information, notices, correspondence, agreements and other materials, if any, in Seller's possession related to the Property.

8.  **LEAD-BASED PAINT (LBP).** If any part of this Property is a RESIDENCE built before 1978, SELLER MAY NOT ACCEPT AN OFFER FROM BUYER UNTIL SPECIFIC DISCLOSURES REGARDING LBP HAVE BEEN MADE TO THE BUYER. (See LBP Disclosure – NMAR Form 5112). Additionally, both Residential AND certain commercial buildings built prior to 1978 are subject to the Lead Based Paint Renovation Repair and Painting Program (RRPP) (See LBP RRPP Information Sheet – NMAR Form 5112A).

9.  **INSPECTION PERIOD.** Seller is required to disclose to Buyer any adverse material defects known to him about the Property. However, Seller does not have an obligation to inspect the Property for the Buyer's benefit or to repair, correct or otherwise cure known defects that are disclosed to Buyer or previously unknown defects that are discovered by Buyer or Buyer's inspectors.

    Buyer shall have the period of time set forth above as the Inspection Period to review the Property. During the Inspection Period, Buyer shall review all of the information regarding the Property provided by Seller. In addition, during the Inspection Period, Buyer may perform such other inspections and review such other information as is desired by Buyer. Such inspections, unless otherwise specified in this Agreement, shall be at Buyer's expense. Such inspections and reviews may include, but are not limited to, physical inspection of the Property, environmental inspection of the Property, soil inspection, review of governmental approvals and permits related to the Property, zoning, title, survey, leases, financial information related to the Property, service agreements, management contracts, and other agreements related to the Property. Seller authorizes Buyer to request zoning and other similar certifications from applicable governmental and quasi-governmental authorities. Buyer agrees to not unreasonably disturb Seller's tenants at the Property and to conduct all inspections and tests at times mutually acceptable to Buyer and Seller. Seller releases Buyer from all claims and liabilities arising out of such requests by Buyer, including but not limited to enforcement actions triggered by such requests. During the Inspection Period, Buyer is specifically entitled to review the following:
    A.  **PHYSICAL INSPECTION.** Buyer, at Buyer's election and expense, may obtain a physical inspection, lead-based paint hazard inspection and/or lead-based paint risk assessment concerning the Property.
    B.  **TITLE.** Within _____**5**_____ days of the Date of Acceptance, Seller shall obtain a title commitment ("Title Commitment") from Title Company. Along with the Title Commitment, Title Company shall provide to Buyer copies of all documents listed as exceptions, a property tax search and copies of all plats related to the Property. Buyer shall be entitled to review title to the Property during the Inspection Period.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 14 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



C. **SURVEY.** The survey of the Property of the type specified above shall be obtained by the party designated. The survey shall be obtained as soon as practicable and, in any event, within **30** days of the Date of Acceptance. If an ALTA survey is designated, the survey shall be prepared consistent with the American Land Title Association/American College on Survey & Mapping standards for urban surveys, including the optional items on Table A as selected by the party obtaining the survey. If a boundary or other survey is to be obtained, such survey shall be prepared consistent with the Minimum Standards for Surveying in New Mexico. All surveys shall be certified to Seller, Buyer, Title Company and Buyer's Lender, if any. The "Flood Zone" status of the Property shall be reflected on the survey.

D. **LEASES.** During the Inspection Periods, Buyer may review all leases, subleases, lease guaranties, licenses, concession agreements and other rental or occupancy arrangements (collectively "Existing Leases") affecting the Property. Prior to the Closing, Seller shall obtain an estoppel certificate ("Estoppel Certificate") covering such matters and on a form mutually acceptable to Buyer and Seller from each tenant at the Property. Seller shall use its best efforts to obtain all Estoppel Certificates as soon as possible and in any event on or before the Closing Date. If any Estoppel Certificate cannot be obtained in a timely manner, Seller shall promptly give notice to Buyer of Seller's failure to obtain such Estoppel Certificate; and, in such event, Buyer, within **10** days after notice is given, may terminate this Agreement and have the Earnest Money, including accrued interest, delivered to Buyer.

E. **ENVIRONMENTAL SITE ASSESSMENT.** The Environmental Site Assessment of the Property shall be obtained by the party set forth in Paragraph 18 at such party's expense, within **45** days of the Date of Acceptance. The site assessment of the Property shall be of the type specified above and shall be performed in a manner consistent with the standards created by American Society for Testing and Materials Standards.

F. **SOIL AND DRAINAGE INSPECTION.** Buyer, at Buyer's election and expenses, may obtain soil and drainage inspections and tests concerning the Property.

10. **BUYER'S ENTRY.** Buyer shall be responsible for all costs, expenses, liabilities and damages incurred by Seller as a result of Buyer's entry onto the Property prior to the Closing. Buyer shall return the Property to the condition it was in prior to any entry, test and/or inspection by Buyer. All inspections and tests conducted by Buyer regarding the Property shall be promptly paid for by Buyer. Buyer indemnifies and agrees to defend Seller and the Property from any and all claims, liabilities, liens, losses, expenses (including reasonable attorneys' fees and costs), and/or damages arising out of or related to any such entry, inspections and/or tests by Buyer, its agents, contractors and employees, in connection with this Agreement.

11. **BUYER'S OBJECTION.** Prior to the end of the Inspection Period, Buyer may disapprove the Property and/or any item related to the Property **in writing**. In such event, Buyer, at Buyer's election, may either terminate this Agreement or give notice to Seller requesting that Seller cure the items disapproved by Buyer. Seller shall have the obligation, at Seller's expense, to satisfy and remove at or before the Closing all monetary encumbrances disapproved by Buyer. Regarding disapproval by Buyer of items other than monetary encumbrances, within **10** days of Buyer's notice requesting Seller's cure, Seller shall provide notice to Buyer of Seller's proposed cure and the time period necessary for Seller to effectuate the cure. Upon receipt of the response from Seller, Buyer shall within **5** days elect to either terminate this Agreement or accept Seller's proposed cure. If Buyer elects to terminate this Agreement, the Earnest Money, shall be delivered to Buyer. If Buyer agrees to Seller's proposed cure, the Closing Date shall be extended, if necessary, consistent with the time period specified for Seller's cure. If Buyer does not disapprove the Property in writing, Buyer shall be deemed to have approved the Property and the Earnest Money shall become non-refundable.

12. **SELLER'S REPRESENTATIONS AND WARRANTIES.** Except as is expressly disclosed by Seller in accordance with Paragraph 6, Seller makes the following representations and warranties to Buyer as of the Date of Acceptance and as of the Closing Date.

Representations and warranties made in Subparagraphs A through N are made to the best of Seller's **current and actual knowledge:**

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



A. Seller is the sole owner of the Property and has the full right, power and authority to sell the Property to Buyer as provided in this Agreement.

B. There are no adverse soil, topography, hydrology, or drainage condition at the Property.

C. There are no hazardous materials, hazardous conditions, toxic substances, asbestos, or contaminated substances, including but not limited to asbestos, lead-based paint and/or PCB transformers at the Property.

D. No governmental or quasi-governmental entity has notified Seller of any action, contemplated action or issue relating to or impacting the Property;

E. The Property has never been used as a dump, landfill or other similar use and the Property has never had an above ground or an underground storage tank located on it.

F. All information and documents provided by Seller to Buyer regarding the Property are true, correct and complete. Notwithstanding the foregoing, Seller is not providing any representation or warranty to Buyer regarding the sufficiency, accuracy, completeness, or correctness of any information or report prepared by any party other than Seller. Seller does not provide any representation or warranty to Buyer concerning the skill or competency of any third party producing any such information.

G. Seller is not aware of any unpaid liens or assessments, or items which could result in a lien, related to the Property.

H. Water service, electric service, natural gas, telephone service, and public sewer service are presently serving the Property.

I. The Property is not subject to any historical Property designation and/or development limitation.

J. Seller will not violate or modify any existing lease or Other Agreement, or create any new lease or Other Agreement affecting the Property, without Buyer's prior written approval.

K. No person other than tenant(s) pursuant to the Existing Leases shall have any right to possession of the Property.

L. No work has been performed which has not been paid for or which could give rise to any mechanic's or materialmen's lien being filed against the Property.

M. No lawsuit or other claim is pending or threatened against Seller and/or the Property.

N. No tenant or occupant of the Property is subject to any bankruptcy, receivership, probate or insolvency proceeding.

O. Seller is not subject to any bankruptcy, receivership, probate or insolvency proceeding.

P. Seller has not collected and will not collect any rent or other monies related to the Property for any period after the Closing Date.

Seller's representations and warranties shall survive the Closing.

13. **PRORATIONS, ADJUSTMENTS AND TRUST FUNDS.** At the Closing, the following shall occur:

A. **TAXES, ASSESSMENTS, UNPAID EXISTING IMPACT FEES.** Applicable real property taxes shall be prorated through the Closing Date, based upon the latest tax information available to Title Company. Seller shall pay all special assessments, standby charges, prorate charges and other similar charges and/or assessments existing as of the Closing.

B. **INSURANCE.** All insurance obtained by Seller will terminate on the Closing Date. Buyer is advised to obtain appropriate insurance related to the Property effective as of the Closing Date.

C. **RENT, SECURITY DEPOSITS, AND RELATED EXPENSES.** All rent and other similar monies, including but not limited to utilities, operating expenses and other "pass-through's", shall be prorated as of the Closing Date. The parties agree to promptly adjust between themselves outside of the escrow any rents received after the Closing Date. All security deposits pursuant to Existing Leases shall be delivered to Buyer and paid for by Buyer at the Closing.

D. **LOAN IMPOUNDS.** At the Closing, Seller shall assign to Buyer, and Buyer shall pay for all impounds or trust funds (including but not limited to insurance escrows, tax escrows, and replacement reserves), held by the lender regarding any loan being assumed by Buyer.

E. **OTHER CHARGES RELATED TO THE PROPERTY.** All other charges related to the Property, including but not limited to utility bills, service contracts, and management fees shall be paid by Seller through the Closing Date. All service contracts, management agreements and other contracts, unless specifically approved and

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021



assumed by Buyer in writing at the Closing, shall be terminated by Seller effective as of the Closing Date. Buyer shall pay for all fees incurred in conjunction with the assignment of any service contract, management agreement and/or other contract. Buyer shall be responsible for changing over to Buyer all utilities as of the Closing Date. Utility deposits, if any, shall be assigned to Buyer and be paid for by Buyer at the Closing. Title Company is hereby authorized to retain such monies out of the closing proceeds as are reasonably necessary to pay utility charges which could result in a municipal lien being filed against the Property for any period of time prior to the Closing Date.

14. **MATERIAL CHANGE.** No Material Change, as hereinafter defined, shall have occurred before the Closing with respect to the Property that has not been approved in writing by Buyer. For purposes of this Agreement, "Material Change" shall mean a change in the status of a use, occupancy, tenants, financial condition or physical condition of the Property. In the event of a Material Change, Buyer, at Buyer's election, may terminate this Agreement within _____**10**_____ **days** of receiving notice from Seller of such Material Change. If Buyer terminates this Agreement, the Earnest Money and all interest accrued thereon shall be returned to Buyer.

15. **RISK OF LOSS.** In the event of damage or destruction of all or any portion of the Property by wind, water, fire or other casualty, Seller will promptly notify Buyer of the nature and extent of such damage or destruction. In such event, Buyer, in its sole discretion, within _____**10**_____ **days** of such notice, may either terminate this Agreement, negotiate a mutually acceptable reduction in the Purchase Price, obtain an assignment of insurance proceeds from Seller or apply insurance proceeds actually received by Seller as of the Closing to the Purchase Price. Prior to the Closing, risk of loss with respect to the Property shall be on Seller. After the Closing, risk of loss with respect to the Property shall be on Buyer.

16. **CONDEMNATION.** Promptly upon obtaining knowledge of any threatened or filed condemnation proceeding against all or any portion of the Property, Buyer and Seller will notify the other party of such proceeding. In such event, Buyer, in its sole discretion, may either terminate this Agreement, negotiate a mutually acceptable reduction in the Purchase Price, obtain an assignment of condemnation proceeds from Seller or apply condemnation proceeds actually received by Seller as of the Closing to the Purchase Price.

17. **CLOSING.** The closing ("Closing") shall occur on the Closing Date. All documents shall be delivered by the respective parties to Title Company to be held in escrow pending the Closing. Each document shall be duly executed and, if the document is to be recorded, duly acknowledged for the Closing.
    A. Unless stated otherwise in this Contract, Seller shall deliver the following:
       i. The Deed, of the type specified above, subject only to the title items not objected to by Buyer during the Inspection Period.
       ii. An assignment of the Existing Leases.
       iii. An affidavit executed by Seller providing that Seller is not a "foreign person" as established by Internal Revenue Code Section 1445 or successor statutes.
       iv. Other applicable closing documents required or specified by this Agreement.
       v. Closing statement prepared by Title Company for Seller.
    B. Unless stated otherwise in this contract for the Closing Buyer shall deliver the following:
       i. The balance of the Purchase Price.
       ii. Other applicable closing documents required or specified by this Agreement.
       iii. Documents, if any, related to Buyer's financing for the Property.
       iv. Closing Statement prepared by Title Company for Buyer.

As soon after the Closing as is reasonably practicable, Title company shall issue to Buyer a standard New Mexico Owner's Title Insurance Policy, effective as of the Closing Date, in the amount of the Purchase Price, insuring title to the Property vested in Buyer, in a form consistent with the Title commitment, and subject only to exceptions not objected to by Buyer during the Inspection Period.

All documents shall be in a form mutually acceptable to Buyer and Seller. Prorations shall be handled at the Closing as set forth in this Agreement.

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 17 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



**18. COSTS TO BE PAID.** Buyer or Seller will pay the following marked items:

| TITLE COMPANY CLOSING COSTS | Buyer | Seller | Not Required |
|---|---|---|---|
| Closing Fee | 1/2 | 1/2 | |
| Pro-Rata Data Search | | | |
| Legal Document Preparation | X | X | |
| Special Assessment Search | | X | |
| Buyer Recording Fees | X | | |
| Seller Recording Fees | | X | |
| Other: | | | |
| Other: | | | |
| **POLICY PREMIUMS** | | | |
| Title Commitment | | X | |
| Standard Owner's Policy | | X | |
| Mortgagee's Policy | X | | |
| Mortgagee's Policy Endorsements | X | | |
| Other: | | | |
| Other: | | | |
| **MISCELLANEOUS** | | | |
| Survey (Paragraph 9C) | | X | |
| Septic System Inspection (NMAR Form No. 2308) | | | X |
| Well Inspection (NMAR Well Information Sheet No. 2307) | | | X |
| Impact Fees | | | X |
| Property (Condo) Owner Association Fees | | | X |
| Environmental Site Assessment (Paragraph 9E) | X | | |
| **ESCROW / COLLECTION FEES** | | | |
| Set up | | | X |
| Periodic | | | X |
| Close out | | | X |
| Other: | | | |
| Other: | | | |

**19. POSSESSION.** Possession of the Property (subject to the rights of tenants under the Existing Leases) and keys to the Property shall be delivered by Seller to Buyer at the Closing.

**20. DEFAULT AND REMEDIES.** Before exercising any remedy, the non-defaulting party shall give the defaulting party **five (5) days** written notice specifying the default, and the defaulting party shall be permitted to cure the default in such period. If a default occurs under this Agreement, then this Agreement may be terminated at the option of the non-defaulting party. If the non-defaulting party elects to treat this Agreement as terminated, the Earnest Money and all accrued interest thereon, shall be delivered to the non-defaulting party and the non-defaulting party may pursue any additional remedies available at law, in equity or otherwise. In the event, however, the

©2008 New Mexico Association of REALTORS®

Buyer _____ Seller _____ MT CARMEL



Case 18-13027-t11 Doc 665 Filed 03/19/21 Entered 03/19/21 13:33:27 Page 18 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



## NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021



non-defaulting party elects to treat this Agreement as being in full force and effect, the non-defaulting party shall have the right to specific performance. Buyer and Seller acknowledge and agree that Broker(s) will not in any circumstance be responsible for any breach by either party under this Agreement.

21. **ATTORNEY FEES AND COSTS.** Should any aspect of this Agreement result in dispute, litigation, or settlement, the prevailing party of such action including all Brokers involved in the transaction, shall be entitled to an award of reasonable attorneys' fees and court costs.

22. **DISCLAIMERS.** Buyer acknowledges that it is acquiring the Property based on Buyer's own review and inspection. Buyer is acquiring the Property "AS IS" and "WITH ALL FAULTS". Except as expressly provided in this Agreement, Seller makes no representation, warranty, inducement, promise, agreement or assurance regarding the Property, including but not limited to any warranty or representation as to condition, compliance with laws, zoning, water, soil, access size, marketability, value, future value, utilities, occupancy, or otherwise. ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF HABITABILITY, MERCHANTABILITY, AND/OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED. Buyer acknowledges that it is not relying upon any representation or warranty by any Broker.

23. **REAL ESTATE BROKERS.** The parties acknowledge that the Broker(s) are the procuring cause of this Agreement. The parties acknowledge that the specific relationship(s) of Buyer and Seller with such Broker(s) has been established pursuant to separate written agreement. This Agreement shall serve as an irrevocable instruction to Title Company to pay such real estate brokerage fee, including applicable Gross Receipts Tax thereon, to Broker(s) from the Closing. Other than Seller's obligations to the Broker(s) as set forth above, Buyer and Seller represent to each other that they have had no dealings with any other broker, or agent, and that no person or entity, other than the Broker(s) has any claim for a fee or commission in conjunction with the sale covered by this Agreement. Each party indemnifies and agrees to defend the other party from any and all costs and liabilities arising from any breach of any representation contained in this paragraph.

24. **BROKER'S COMPENSATION.**
    A. [X] Listing Broker to be paid per Listing Agreement; Buyer's Broker(s) to be paid per offer of compensation made through Multiple Listing Service.
    B. [ ] Listing Broker to be paid at closing a compensation of _____ % plus applicable New Mexico Gross Receipts Tax to be paid by _____. Buyer's Broker to be paid at closing a sales compensation of _____ % plus applicable New Mexico Gross Receipts Tax to be paid by _____. Other instructions: _____ .

25. **FURTHER ACTION.** Buyer and Seller agree to take such other and further action, and execute such additional documents, as are reasonably necessary to consummate the sale pursuant to this Agreement or which are reasonably required by the Title Company in conjunction with the Closing.

26. **BACK UP OFFERS.** Buyer agrees that until such time as Buyer has approved the condition of the Property or waived any contingency of Buyer set forth in this Agreement, Seller may solicit and/or accept back-up offers to purchase the Property.

27. **NOTICES.** Any notice required or permitted to be given under this Agreement shall be in writing and may be either personally delivered, sent by recognized overnight courier (for next day delivery) or mailed, postage prepaid, or by any method where there is evidence of receipt addressed to the parties and the Brokers at their respective addresses set forth in this Agreement. If any notice is personally delivered, it shall be deemed given upon delivery. If any notice is sent by recognized overnight courier, it shall be deemed given upon delivery by the courier. If any notice is mailed, it shall be deemed given three (3) business days after deposit in the United States mail. A party may change its address for notices by sending a notice to the other party pursuant to the terms of this Paragraph. FACSIMILE AND EMAIL COMMUNICATIONS MAY NOT BE USED FOR NOTICES PURSUANT TO THIS AGREEMENT.

Case 18-13027-t11  Doc 665  Filed 03/19/21  Entered 03/19/21 13:33:27 Page 19 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



28. **AUTHORITY.** Each party signing this Agreement represents and warrants to the other party that it has full legal power, authority and right to execute, deliver and perform the obligations under this Agreement. Each party represents and warrants to the other party that the transactions contemplated by this Agreement and each person signing this Agreement and/or any document at the Closing has been duly authorized by all requisite action and that no remaining action or third-party consent is required. If Seller is an entity, Seller represents and warrants to Buyer that it is duly formed, validly existing and in good standing under the laws of the State of its organization (as set forth in Paragraph 1) and qualified to do business in New Mexico. If Buyer is an entity, Buyer represents and warrants to Seller that it is duly formed, validly existing and in good standing under the laws of the State of its organization (as set forth in Paragraph 1) and qualified to do business in New Mexico.

29. **AMENDMENT.** This Agreement cannot be amended except as agreed to in writing by the parties.

30. **INVALIDITY.** If any provision of this Agreement is determined to be invalid, ineffective, inoperative, unenforceable, or contrary to law, all of the remaining provisions of this Agreement shall remain in full force and effect.

31. **CONFIDENTIALITY.** Buyer and Seller agree that at all times after the Date of Acceptance and prior to the Closing, unless consented to in writing by the other party or required by law, no party shall issue a press release or other public disclosure concerning the pending sale of the Property. Buyer and Seller agree to notify their employees, agents, contractors and Broker(s) involved in the sale of this confidentiality provision. No memorandum or other document referencing this Agreement shall be recorded.

32. **ATTORNEY REVIEW.** Buyer and Seller each acknowledge and agree that this Agreement is a legally binding document and that each party has had a full opportunity to have its respective attorney review, revise and negotiate this Agreement. Consequently, neither party shall be deemed to have had the responsibility of drafting this Agreement if this Agreement at any time is construed or interpreted.

33. **GOVERNING LAW AND VENUE.** This Agreement is to be construed in accordance with and governed by the internal laws of the State of New Mexico without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New Mexico to the rights and duties of the parties. Each party hereby irrevocably consents to the jurisdiction and venue of the state and federal courts located in the county in which the Property or any portion of the Property is located in connection with any claim, action, suit, or proceeding relating to this Agreement and agrees that all suits or proceedings relating to this Agreement shall be brought only in such courts.

34. **WAIVER.** No waiver or failure by any party to enforce any breach of this Agreement shall be considered to be a waiver of any subsequent breach, regardless of the time, nature or form of the subsequent breach. All waivers must be in writing to be effective.

35. **ENTIRE AGREEMENT.** This Agreement (including all exhibits and addenda) and the Property Disclosure Statement covering the Property constitute a fully integrated document and represent the entire understanding and agreement between Buyer and Seller regarding the Property. All prior discussions, events, or representations, warranties and agreements regarding the Property are hereby superseded and replaced by this Agreement. The parties to this Agreement affirm that the terms and provisions of this Agreement accurately reflect their intent. All exhibits and addenda to this Agreement are incorporated into this Agreement as operative provisions.

36. **TIME OF THE ESSENCE.** Time is of the essence under this Agreement.

37. **CAPTIONS AND DEFINED TERMS.** The headings and captions contained in this Agreement are for convenience and reference purposes only and shall not define, limit or otherwise affect the terms and conditions of this Agreement. Capitalized words shall have the definition specified in this Agreement, including the definitions set forth in the "Terms" Paragraph.



Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 20 of 43

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



38. **SEVERABILITY.** If any portion of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall remain in full force and effect.

39. **CONSENT TO THE ELECTRONIC TRANSMISSION OF DOCUMENTS AND TO THE USE OF ELECTRONIC SIGNATURES.** The parties ☒ do ☐ do not consent to conduct any business related to and/or required under this Agreement by electronic means, including, but not limited to the receipt of electronic records and the use of electronic signatures. Subject to applicable law, electronic signatures shall have the same legal validity and effect as original hand-written signatures. Nothing herein prohibits the parties from conducting business by non-electronic means. If a party has consented to receive records electronically and/or to the use of electronic signatures, that party may withdraw consent at any point in the transaction by delivering written notice to the other party.

40. **ASSIGNMENT.** Buyer ☒ may ☐ may not sell, assign or transfer the Buyer's rights or obligations under this Agreement, or any interest herein.

41. **MULTIPLE BUYERS.** Each Buyer to this Agreement is jointly and severally liable for all obligations under this Agreement. In the event any buyer should be unable to perform under this Agreement (due to death or incapacity), the remaining Buyer(s) shall continue to be obligated under this Agreement.

42. **DURATION.** If this Agreement is not fully executed by both Buyer and Seller on or before the Offer Expiration Date, the offer evidenced by this partially executed document shall be automatically withdrawn. In such event, all Earnest Money that already has been deposited with the Title Company, and all accrued interest, shall be delivered to Buyer.

43. **COUNTERPARTS.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one (1) document.

44. **FOREIGN SELLERS.** The Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) requires buyers who purchase real property from foreign sellers to withhold fifteen percent (15%) of the amount realized from the sale of the real property for remittance to the Internal Revenue Service (IRS). In the event the seller(s) is **NOT** a foreign person, FIRPTA requires the buyer to obtain proof of the seller's non-foreign status in order to avoid withholding requirements. Exceptions may apply. For more information, refer to NMAR Form 2304 – Information Sheet – FIRPTA & Taxation of Foreign Persons Receiving Rental Income from U.S. Property.

Prior to or at closing, Seller(s) shall provide to Buyer or to a Qualified Substitute (generally, the Title Company) either a Non-Foreign Seller Affidavit(s) **OR** a letter from the IRS indicating Seller(s) is exempt from withholding. In the event Seller(s) fails to do so, Buyer shall have the right to withhold fifteen percent (15%) of the amount realized from the sale of the Property for remittance to the IRS.



DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



> **WIRE FRAUD ALERT: Criminals are hacking email accounts of real estate agents, title companies, settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. The emails look legitimate, but they are not. Buyer and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Buyer and Seller should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured email or personal delivery to the intended recipient.** Buyer _____

## OFFER BY BUYER

Buyer acknowledges that Buyer has read the entire Purchase Agreement and understands the provisions thereof.

|  |  |  |
|---|---|---|
|  | 02/15/2021 |  |
| Buyer Signature | Date | Time |
| *John H. Davenport* 2/13/2021 |  |  |
| Buyer Signature | Date | Time |
| MIGHTY TAI LLC. AND / ASSIGNS |  |  |
| Buyer Name (Print) | Email Address |  |
| JOHN H. DAVENPORT | jdavenport@amscre.com |  |
| Buyer Name (Print) | Email Address |  |
| 310 Comal St Bldg A | Austin TX 78702-4597 |  |
| Buyer Address | City State Zip Code |  |
|  | (214)208-7379 |  |
| Buyer Home Phone | Buyer Cell Phone | Buyer Business Phone | Buyer Fax |

NMAR Form 3101 (2021 JAN) Page 11 of 12          ©2008 New Mexico Association of REALTORS®

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



**Seller acknowledges that Seller has read the entire Purchase Agreement and understands the provisions thereof.**
Seller *(select one)*:

---

☐ **SELLER ACCEPTS** this Offer and agrees to sell the Property for the price and on the terms and conditions specified in this Agreement.

## SELLER

| | | |
|---|---|---|
| Seller Signature | Offer Date | Time |
| Seller Signature | Offer Date | Time |

ARCHDIOCESE OF SANTA FE A CORP      tmacken@archdiosf.org
Seller Name (Print)            Email Address

TOM MACKEN                operations@cbsfa.org
Seller Name (Print)            Email Address

| 49/50 MT.CARMEL RD | Santa Fe | NM | 87501-2113 |
|---|---|---|---|
| Seller Address | City | State | Zip Code |

| | | (505)955-8875 | |
|---|---|---|---|
| Seller Home Phone | Seller Cell Phone | Seller Business Phone | Seller Fax |

---

☒ **REJECTS & SUBMITS** a Counteroffer (NMAR Form 5102).

☐ **REJECTS & SUBMITS** an Invitation to Offer (NMAR Form 5103).

**IF SELLER IS REJECTING THIS OFFER AND SUBMITTING A COUNTER OFFER, OR IS REJECTING THIS OFFER AND SUBMITTING AN INVITATION TO OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT, BUT SHOULD INITIAL ALL PAGES.**

INITIALS: SELLER ⎡ ᴰˢ TM ⎤ _____

---

☐ **REJECTS** this Offer.

**IF SELLER IS REJECTING THIS OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT AND DOES NOT NEED TO INITIAL ANY/ALL PAGES.**

INITIAL HERE: SELLER _____ _____

---

Case 18-13027-t11 Doc 665 Filed 03/19/21 Entered 03/19/21 13:33:27 Page 23 of 43    MT CARMEL

DocuSign Envelope ID: F01D37A4-A95A-4A87-8236-AFB4DF14ED34




SANTA FE
PROPERTIES



EQUAL HOUSING
OPPORTUNITY

## NEW MEXICO ASSOCIATION OF REALTORS®
## GENERAL ADDENDUM No. _____1_____ - 2020

This Addendum is part of the _____ **PURCHASE AGREEMENT** _____ Agreement (the "Agreement")
dated **February 12, 2021**, between **BUYER, AMS COMMERCIAL REAL ESTATE OR ASSIGNS**
and _____ **SELLER, ARCHDIOCESE OF SANTA FE A CORPORATION SOLE, TOM MACKEN**
relating to the following Property:

| **50 MT.CARMEL RD** | **Santa Fe** | **NM** | **87501-2113** |
| Address | City | State | Zip Code |

**TO BE SUPPLIED WITH TITLE BINDER.**
Legal Description
or see metes and bounds description attached as Exhibit _____, _____ **Santa Fe** _____ County, New Mexico.
The following is added to the Agreement:

1. ANY OFFER ACCEPTED BY THE ARCHDIOCESE SHALL BE SUBJECT TO APPROVAL BY
THE BANKRUPTCY COURT THAT THIS PROPERTY IS SUBJECT TO. SHOULD THE
BANKRUPTCY COURT NOT APPROVE OF THE TERMS AND OR CONDITIONS OF THE OFFER
THE BUYER AND SELLER WILL EITHER AGREE TO RENEGOTIATE THE OFFER OR THE
OFFER SHALL BECOME NULL AND VOID.
2. PROOF OF FUNDS. BUYER WILL PROVIDE PROOF OF FUNDS ACCEPTABLE TO SELLER
WITHIN 5 DAYS OF SIGNING THE PURCHASE AGREEMENT BY BOTH PARTIES.
3. EARNEST FUNDS. BUYER WILL DEPOSIT $100,000.00 EARNEST FUNDS WITHIN 3 DAYS
OF EXECUTION OF THE CONTRACT. BUYER WILL DEPOSIT A SECOND DEPOSIT OF AN
ADDITIONAL $400,000.00 UPON COMPLETION AND BUYER'S SATISFACTION OF THE
INSPECTION PERIOD. BOTH THE FIRST AND SECOND DEPOSIT SHALL BECOME
NON-REFUNDABLE AFTER BUYER HAS COMPLETED AND CONFIRMED IN WRITING THAT THEY
HAVE REMOVED THE INSPECTION CONTINGENCY AT THE END OF THE 90 DAY PERIOD.
4. CLOSING. BUYER WILL CLOSE ON OR BEFORE 30 DAYS AFTER THE 90 DAY
INSPECTION PERIOD HAS ENDED.
5. CLOSING EXTENSION. BUYER SHALL HAVE THE RIGHT TO EXTEND CLOSING FOR A
PERIOD OF 30 DAYS. SHOULD BUYER EXTEND SAID CLOSING FOR 30 DAYS BUYER WILL
DEPOSIT AN ADDITIONAL $100,000.00 NON-REFUNDABLE DEPOSIT.

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

Initials

NMAR Form 2300 (2020 JAN)   Page 1 of 2        ©2013 New Mexico Association of REALTORS®

MT. CARMEL

Santa Fe Properties - Corporate, 1 Paseo de Peralta Santa Fe, NM 87501              Phone: 505-9847343        Fax:505-984-1003

# NEW MEXICO ASSOCIATION OF REALTORS®
## GENERAL ADDENDUM No. _____1_____ - 2020

**THIS PAGE IS BLANK**

If there is any conflict between the provisions of the Agreement and this Addendum, the provisions of this Addendum will control. The remaining provisions of the Agreement will remain in effect.

### BUYER/TENANT/BROKER'S SIGNATURE

_Dawn H. Davenport_                                                    2/15/2021
Signature                                                                Date            Time

_____                    _____    _____
Signature                                                                Date            Time

### SELLER/LANDLORD/OWNER'S SIGNATURE

_TOM MACKEN_
Signature                                                                Date            Time

_____                    _____    _____
Signature                                                                Date            Time

NMAR Form 2300 (2020 JAN)   Page 2 of 2          ©2013 New Mexico Association of REALTORS®          Initials _____ _____ _____ _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    MT. CARMEL

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18







# NEW MEXICO ASSOCIATION OF REALTORS®
## COUNTEROFFER NO. _____1_____ - 2021

This Counteroffer is made a part of the ☐ Residential ☒ Commercial ☐ Vacant Land ☐ Farm and Ranch Purchase Agreement dated __**February 15, 2021**__ between **MIGHTY TAI LLC. AND / ASSIGNS , JOHN**

__**H. DAVENPORT**_____ ("Buyer") and **ARCHDIOCESE OF SANTA FE A CORP,**

__**TOM MACKEN**_____ ("Seller") and relating to the purchase of the following Property:

__**50 MT.CARMEL RD**_____ **Santa Fe** __**87501-2113**__
Address                                                City                    Zip Code

__**TO BE SUPPLIED WITH TITLE BINDER.**_____
Legal Description

or see metes and bounds description attached as Exhibit _____, _____**Santa Fe**_____ County, New Mexico.

the above-described Purchase Agreement is hereinafter referred to as "Purchase Agreement".

I.   **INCORPORATED COUNTEROFFERS.** Counteroffers that are NOT expressly referenced below are NOT incorporated into the Purchase Agreement. **Counteroffers** _____**NA**_____ **are incorporated by reference into the Purchase Agreement, except as expressly modified by this Counteroffer.**

II.  **CHANGES TO TERMS OF PURCHASE AGREEMENT.** The terms of the Purchase Agreement are changed as follows:

**Buyer to reduce the due diligence period to 60 days. Closing to take place 15 days after due diligence period ends.**

**Seller reserves the right to remove any fixtures religious or other wise, personal items and some of the furniture. The balance of the furniture and fixtures will be included in the sale.**

**All other terms and conditions in the above offer remain the same.**

**This counter offer extends the above offer expiration date to February 26,2021.**

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 5102 (2021 JAN) Page 1 of 2          ©2006 New Mexico Association of REALTORS®          Initials: Buyer _____ Seller _____

DocuSign Envelope ID: 1C8103BE-3125-4071-9FBA-E37BD5DACF18



# NEW MEXICO ASSOCIATION OF REALTORS®
## COUNTEROFFER NO. _____1_____ – 2021



This page left blank

**III.** **UNCHANGED TERMS REMAIN THE SAME.** All other terms and conditions of the Purchase Agreement not otherwise modified by this Counteroffer remain unchanged.

**IV.** **EXPIRATION DATE/DELIVERY.** This Counteroffer will expire unless acceptance is delivered in writing to [X] Buyer or Buyer's Broker or [ ] Seller or Seller's Broker on or before **February 26, 2021** at **12** [ ] a.m. [X] p.m. Mountain Standard Time.

**V.** **WITHDRAW.** Unless acceptance is delivered in accordance with Section IV, this Counteroffer may be withdrawn at any time prior to the Expiration Date.

---

If rejecting or making a subsequent Counteroffer, party receiving this Counteroffer SHOULD NOT sign this Counteroffer; but should initial below, which indicates this Counteroffer was seen/reviewed.

RECEIVING PARTY

[ ] **REJECTS & SUBMITS** Counteroffer _____ (NMAR Form 5102). **INITIALS:** _____

[ ] **REJECTS this Counteroffer. INITIALS:** _____

---

BUYER AND/OR SELLER'S SIGNATURE BELOW INDICATES BUYER AND/OR SELLER'S ACCEPTANCE OF THIS COUNTEROFFER.

### BUYER

| Buyer Signature MIGHTY TAI LLC. AND / ASSIGNS | | Date | Time |
|---|---|---|---|
| *Jour H. Davenport* | 2/26/2021 | | |
| Buyer Signature JOHN H. DAVENPORT | | Date | Time |

### SELLER

| Seller Signature ARCHDIOCESE OF SANTA FE A CORP | | Date | Time |
|---|---|---|---|
| *TOM MACKEN* | 2/25/2021 | | |
| Seller Signature TOM MACKEN | | Date | Time |

NMAR Form 5102 (2021 JAN) Page 2 of 2                ©2006 New Mexico Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com                MT CARMEL

DocuSign Envelope ID: D6BD8C66-0956-427D-A0F5-9AEE599A224C





SANTA FE
PROPERTIES



EQUAL HOUSING
OPPORTUNITY

## NEW MEXICO ASSOCIATION OF REALTORS®
## GENERAL AMENDMENT No. _____1_____ - 2020

This Amendment is part of the _____**PURCHASE AGREEMENT**_____ Agreement (the "Agreement")

dated **February 26, 2021** , between **MIGHTY TAI LLC. AND / ASSIGNS** , **JOHN H. DAVEN**

and _____**ARCHDIOCESE OF SANTA FE, A CORPORATION SOLE"**.

relating to the following Property: _____

**50 MT.CARMEL RD**                                **Santa Fe**           **NM**    **87501-2113**
Address                                              City              State      Zip Code

**TO BE SUPPLIED WITH TITLE BINDER.**
Legal Description

or see metes and bounds description attached as Exhibit _____ , _____**Santa Fe**_____ County, New Mexico.

The Agreement is changed as follows:


  BUYER'S DUE DILIGENCE PERIOD SHALL BE EXENDED 4 DAYS BEYOND THE 60 DAY
DEADLINE.

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 2300A (2020 JAN)   Page 1 of 2          ©2013 New Mexico Association of REALTORS®          Initials _TM_____ _DH_____

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe, NM 87501
Philip Gudwin                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          MT. CARMEL
Phone: 505-9847343                                Fax: 505-954-1003

# NEW MEXICO ASSOCIATION OF REALTORS®
## GENERAL AMENDMENT No. _____1_____ - 2020

THIS PAGE LEFT BLANK

If there is any conflict between the provisions of the Agreement and this Amendment, the provisions of this Amendment will control. The remaining provisions of the Agreement will remain in effect.

## BUYER/TENANT/BROKER'S SIGNATURE

| | | |
|---|---|---|
| *Dawn H. Davenport* | 2/26/2021 | |
| Signature  **MIGHTY TAI LLC. AND / ASSIGNS** | Date | Time |
| Signature  **PHILIP GUDWIN** | Date | Time |

## SELLER/LANDLORD/OWNER'S SIGNATURE

| | | |
|---|---|---|
| *Tom Macken* | 2/26/2021 | |
| Signature  **ARCHDIOCESE OF SANTA FE A CORPORATION SOLE".** | Date | Time |
| Signature | Date | Time |

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211





SANTA FE
PROPERTIES

REALTOR®

EQUAL HOUSING
OPPORTUNITY

## NEW MEXICO ASSOCIATION OF REALTORS®
## LEAD-BASED PAINT ADDENDUM TO PURCHASE AGREEMENT – 2019

> **Federal law requires Seller to provide to Buyer all disclosures set forth in this Addendum AND to receive acknowledgment from Buyer that Buyer has received these disclosures PRIOR TO full execution of the Purchase Agreement. Further, Buyer shall not be obligated to purchase the Property unless Buyer has been provided an opportunity to inspect the Property as set forth in this Addendum.**

This Disclosure and Acknowledgment will be attached as Addendum No. _____ to the Purchase Agreement between Buyer and Seller, dated, _____, _____
Relating to the following Property:

| 49/50 MT.CARMEL RD | Santa Fe | 87501-2113 |
|---|---|---|
| Address | City | Zip Code |

**TO BE SUPPLIED WITH TITLE BINDER.**

Legal Description

or see metes and bounds or other legal description attached as Exhibit _____, _____    Santa Fe
County, New Mexico.

### 1. LEAD WARNING STATEMENT.

Every Buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### 2. SELLER'S DISCLOSURE.

A. Presence of lead-based paint and/or lead-based paint hazards (initial (i) or (ii) below as applicable):

_____ i.) Known lead-based paint and/or lead-based paint hazards are present in the housing (explain): _____

[TM] ii.) Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

B. Records and reports available to the Seller (initial (i) or (ii) below as applicable):

_____ i.) Seller has provided Buyer with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below): _____

[TM] ii.) Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR® REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 5112 (2019 JAN) Page 1 of 3           ©2004 New Mexico Association of REALTORS®          Buyer [ ]    Seller [TM]

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe, NM 87501
Phone: 505-9847343          Fax: 505-984-1003          Philip Gudwin          MT. CARMEL

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
# LEAD-BASED PAINT ADDENDUM TO PURCHASE AGREEMENT – 2019

3. **BUYER'S ACKNOWLEDGEMENT.** (both A and B should be initialed):

 A. Buyer has received the Lead-Based Paint Warning Statement <u>set forth in Paragraph 1 above</u>, the Seller's Lead-Based Paint Disclosures referenced in Paragraph 2(A) and if applicable, the records and reports accompanying Seller's Disclosures referenced in Paragraph 2(B).

 B. Buyer has received the pamphlet "Protect Your Family From Lead in Your Home."

4. **BUYER'S RIGHTS.** (initial A or B below as applicable):

 A. Buyer has received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

_____ B. Buyer has waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

5. **BROKER'S CERTIFICATION.** (both A and B should be initialed):



*Both the Seller's Broker and the Buyer's Broker (if compensated by the Seller or Seller's Broker) are considered the "agents" under the Regulations and are required to certify as follows and sign this form, regardless of their brokerage relationships. Therefore, both the Seller and Buyer's brokers should initial below UNLESS the Buyer's Broker is being compensated entirely by the Buyer.*

 A. Agent has informed Seller of Seller's obligations under Sec. 42 U.S.C.A. 4852d to:

    1) Provide Buyer with the federally approved pamphlet, "Protect Your Family from Lead in Your Home;"
    2) Complete this Lead-based Paint Addendum before giving it to Buyer;
    3) Disclose any known lead-based paint or lead-based paint hazards in the Property;
    4) Deliver to Buyer a list of and copies of all records and reports pertaining to lead-based paint and/or lead based paint hazards in the Property;
    5) Provide Buyer with a ten-day (10) period (or other period mutually agreed in writing by Buyer and Seller) to have the Property inspected;
    6) Retain a completed copy of this Addendum for at least three (3) years following the closing of the sale.

 B. Agent is aware of Agent's duty to ensure compliance with the requirements of Sec. 42 U.S.C.A. 4852d.

## *Warning*

*Provisions of this form are required by Federal Regulations and should not be revised.*

## Certification

Each of the following parties has reviewed the information above and certifies, to the best of his or her knowledge, that the information provided by that party is true and accurate.



DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
# LEAD-BASED PAINT ADDENDUM TO PURCHASE AGREEMENT – 2019

## SELLER

*TOAL MACKEN*     7/31/2020

| | | |
|---|---|---|
| Seller Signature | Date | Time |

| | | |
|---|---|---|
| Seller Signature | Date | Time |

ARCHDIOCESE OF SANTA FE A CORP
Seller Names (Print)

| | | | |
|---|---|---|---|
| 49/50 MT.CARMEL RD | Santa Fe | NM | 87501-2113 |
| Seller Address | City | State | Zip Code |

| | | | |
|---|---|---|---|
| | (505)955-8875 | | tmacken@archdiosf.org |
| Seller Home Phone | Business Phone | Fax | Email Address |

## BUYER

*John H. Davenport*     2/13/2021

| | | |
|---|---|---|
| Buyer Signature | Date | Time |

| | | |
|---|---|---|
| Buyer Signature | Date | Time |

| | | |
|---|---|---|
| Buyer Names (Print) | | |

| | | | |
|---|---|---|---|
| Buyer Address | City | State | Zip Code |

| | | | |
|---|---|---|---|
| Buyer Home Phone | Business Phone | Fax | Email Address |

## SELLER'S BROKER

Santa Fe Properties
Listing Firm

| | |
|---|---|
| PHILIP GUDWIN   RUSTY WAFER | Broker ☒ is ☐ is not a REALTOR® |
| By (Print) | |
| *PG* | 8/1/2020 |
| By (Signature) | Date    Time |

| | | | |
|---|---|---|---|
| 1000 Paseo de Peralta | Santa Fe | NM | 87501 |
| Address | City | State | Zip Code |

| | | |
|---|---|---|
| 505-984 7343 | 505-984-1003 | Pgudwin@hotmail.com |
| Business Phone | Fax | rusty.wafer@sfprops.com |
| | | Email Address |

## BUYER'S BROKER

*Santa Fe Properties*
Selling Firm

| | |
|---|---|
| *Philip Gudwin* | Broker ☒ is ☐ is not a REALTOR® |
| By (Print) | |
| *Philip Gudwin* | 2/13/2021 |
| By (Signature) | Date    Time |

| | | | |
|---|---|---|---|
| *1000 Paseo De Peralta* | *N.M.* | | *87501* |
| Address | City | State | Zip Code |

| | | |
|---|---|---|
| *505 9847343* | | *Pgudwin@Hotmail.Com* |
| Business Phone | Fax | Email Address |

©2004 New Mexico Association of REALTORS®
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    MT.CARMEL

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211


REALTOR®


SANTA FE
PROPERTIES


EQUAL HOUSING
OPPORTUNITY

## NEW MEXICO ASSOCIATION OF REALTORS®
## FIRPTA - AFFIDAVIT -- NON-FOREIGN SELLER - 2020

**NOTICE TO SELLER: If you need any assistance to understand the Foreign Investment in Real Property Act and its application to you, please consult with your own tax advisor. Real estate Brokers are not permitted to give advice with respect to such matters.**

**Section 1445 of the Internal Revenue Code provides that a Buyer of United States real property must withhold tax if Seller is a foreign person. To inform Buyer that withholding of tax is not required upon the disposition of the Property described below, the undersigned Seller executes this Affidavit. Seller understands that this certification may be disclosed to the Internal Revenue Service by Buyer and that any false statement may be punished by fine, imprisonment or both.**

This Affidavit is executed in connection with the sale of the following Property:

| 49/50 MT.CARMEL RD | Santa Fe | 87501-2113 |
|---|---|---|
| Address | City | Zip Code |

TO BE SUPPLIED WITH TITLE BINDER.
Legal Description
or see metes and bounds description attached as Exhibit _____, _____ **Santa Fe** _____ County, New Mexico.

### INDIVIDUAL SELLER

1. I am not a Foreign Person for purposes of United States income taxation.

2. My United States taxpayer identification number (Social Security Number) is: _____

3. My home address is: _____

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief, it is true, correct, and complete.

Name of Individual Seller _____

Signature _TOM MULLEN_____ 7/31/2020

Date _____ Time _____

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 2303 (2020 JAN) Page 1 of 2         ©2005 New Mexico Association of REALTORS®

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe, NM 87501
Phone: 505-9847343        Fax: 505-984-1003        Philip Gudwin                                MT CARMEL

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
## FIRPTA - AFFIDAVIT -- NON-FOREIGN SELLER - 2020

### ENTITY SELLER

1. _____ ("Seller")
is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations).

2. Seller's United States employer identification number is _____

3. Seller's office address is _____
_____

4. If a corporation, Seller's place of incorporation is _____
Under penalties of perjury, I declare that to the best of my knowledge and belief, the statements in this Affidavit are true, correct, and complete, and that I have authority to sign this document on behalf of Seller.

Name of Entity _____

By _____

Its _____

Date _____ Time _____

Buyer or Qualified Substitute, as applicable, must retain this Affidavit and make it available to the Internal Revenue Service upon request.

**NOTICE TO SELLER OR BUYER:** An affidavit should be signed by each individual or entity seller to whom or to which it applies. Any questions relating to the legal sufficiency of this form, or to whether it applies to a particular transaction, or to the definition of any of the terms used, should be referred to a certified public accountant, attorney, or other professional tax advisor, or to the Internal Revenue Service.

Received by ☐ Buyer ☐ Qualified Substitute

_____    _____    _____
Signature                                                      Date          Time

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          MT. CARMEL

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 34 of 43

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211




SANTA FE
PROPERTIES



EQUAL HOUSING
OPPORTUNITY

## NEW MEXICO ASSOCIATION OF REALTORS®
### FIRPTA - Qualified Substitute Statement - 2020

**NOTICE TO SELLER: If you need assistance to understand the Foreign Investment in Real Property Act, Section 1445 of the Internal Revenue Code (26 USA § 1445 et.sec), (FIRPTA) and its application to you, please consult with your attorney and/or tax advisor. Real Estate Brokers are not permitted to give advice with respect to such matters.**

Section 1445 of the Internal Revenue Code provides that in transactions with foreign persons, the Buyer MUST submit the applicable amount realized from the sale of the property to the Internal Revenue Service (IRS) within 20 days of closing (See NMAR Form 2304 for applicable amount of withholding). The onus is on the Buyer to determine if the Seller is a foreign person. If the Seller is foreign, but an exemption applies, the Buyer must obtain proof of qualification to avoid IRS sanctions. If a Seller asserts that he/she is a non-foreign person, the Seller must execute an Affidavit of Non-Foreign Seller (See NMAR Form 2303) and deliver it to either the Buyer or to a Qualified Substitute. If the Seller opts to engage a Qualified Substitute, the Qualified Substitute must, upon receiving a completed Affidavit of Non-Foreign Status from the Seller, execute this Qualified Substitute Statement and deliver it to the Buyer.

The undersigned Qualified Substitute understands this certification may be disclosed to the IRS by the Buyer and that any false statement may be punishable by fine, imprisonment or both.

With respect to a disposition of a United States real property interest, the term "Qualified Substitute" is defined as the Buyer's Broker or any person (including an attorney or Title Company) responsible for closing the transaction. **The Seller's Broker does not qualify as a Qualified Substitute.**

This Affidavit is executed in connection with the sale of the following Seller and Property:

_ARCHDIOCESE OF SANTA FE A CORP_ _____ Seller(s)

_49/50 MT.CARMEL RD_ _____ Santa Fe _____ 87501-2113
Address _____ City _____ Zip Code

_TO BE SUPPLIED WITH TITLE BINDER._
Legal Description

or see metes and bounds description attached as Exhibit _____, _____ Santa Fe _____ County,
New Mexico.

### QUALIFIED SUBSTITUTE

1. Name of Qualified Substitute _____ SANTA FE TITLE. _____.
2. I qualify as a Qualified Substitute under FIRPTA to receive and hold the Affidavit of Non-Foreign Status (NMAR Form 2303) executed and delivered by the Seller/Transferor as I am (Check all that apply):

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, their Real Estate Brokers, their Agents and employees from any liability arising out of its use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

Case 18-13027-t11 Doc 665 Filed 03/19/21 Entered 03/19/21 13:33:27 Page 35 of 43

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
## FIRPTA - Qualified Substitute Statement - 2020

☐ Agent of the Title Company closing the transaction

**SANTA FE TITLE**
Name of Title Company

**515 Don Gaspar Ave, SANTA FE, NM  87501**
Address

☐ Attorney

Name of Firm/Office

Address

State of Licensure                                    Bar Number

☐ Transferee's Broker (Buyer's Broker)

Name of Firm/Office

Address

Under Penalty of Perjury, I declare that I have received an original Affidavit of Non-Foreign Seller executed and delivered by the above-named Seller, and that I have no actual knowledge, nor have I received any notice that said Affidavit is false.

Signature of Qualified Substitute **SANTA FE TITLE.**

Date                                                      Time

*Dawn H. Davenport*
Signature Received by Buyer

2/13/2021

Date                                                      Time

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com                MT. CARMEL

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211




# NEW MEXICO ASSOCIATION OF REALTORS®
## COVID-19 - BROKER / BROKERAGE HOLD HARMLESS AGREEMENT - 2020

⚠ **THIS FORM IS FOR USE BY AND PROTECTION OF BROKERS AND BROKERAGES. IT MAY BE USED FOR ANY ONE OR MORE PROPERTIES, AND THEREFORE IS NOT PROPERTY SPECIFIC. IT MAY BE SIGNED BY SELLERS, BUYERS, TENANTS, INSPECTORS AND/OR ANY PERSON(S) WHO WILL BE PRESENT UPON THE PROPERTY.**

**BACKGROUND.** On March 11, 2020, as a result of the current spread of COVID-19, New Mexico Governor Michelle Lujan Grisham, issued a Proclamation of State of Emergency. On March 23, 2020 a Public Health Order was issued, which among other things, prohibited gatherings of more than five (5) people, ordered the closings of all business not deemed to be "Essential Businesses" and advised New Mexican citizens to stay at home, unless travel was required for health, safety or welfare. Real Estate services and those services related thereto were deemed "essential" and may continue; however, the issuance of the Emergency and Order highlights the risk to individuals viewing and inspecting property and the risk to those who own and occupy property in allowing others to inspect or otherwise enter their property.

**HOLD HARMLESS.** By signature below, the undersigned hereby acknowledges the existence of the COVID-19 virus, and any applicable federal, state and/or local orders which may apply to the undersigned or property which the undersigned may own, occupy, inspect, or generally be present upon. The undersigned understands contact with others, including but not limited to, buyers, sellers, landlords, tenants, real estate brokers, vendors (who include, but are not limited to inspectors, appraisers, contractors and photographers) and others associated with the sale or purchase of property, or any locations or surfaces visited or contacted by such persons, involves a certain degree of risk which could result in illness, permanent disability, or death. The undersigned acknowledges and agrees they are responsible for staying current and in compliance with any federal, state or local directives, which may apply to them and for taking precautions to protect themselves, as set forth by the Center for Disease Control and the New Mexico Department of Health (links below).

 https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

 https://cv.nmhealth.org

After fully and carefully considering all the potential risks involved, the undersign hereby assumes the same and releases and holds-harmless _____SANTA FE PROPERTIES INC._____ ("Brokerage(s)") and their employees, officers, agents, contractors and vendors, and waives any and all claims associated with engaging in viewing or inspecting property owned by others or in allowing others to enter property which is owned or occupied by the undersigned. *Any person representing or conducting business for an entity, signs below in his/her individual and personal capacity AND in his/her capacity as a representative of the entity, even if such entity is not herein identified.*

### CAREFULLY READ THE TERMS OF THIS AGREEMENT BEFORE SIGNING.
### IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.

#### BUYER / SELLER / TENANT / VENDORS

| | | | 2/13/2021 |
|---|---|---|---|
| *John H. Davenport* | | | |
| Signature | Printed Name | Entity, if applicable | Date |
| | | | |
| Signature | Printed Name | Entity, if applicable | Date |
| | | | |
| Signature | Printed Name | Entity, if applicable | Date |
| | | | |
| Signature | Printed Name | Entity, if applicable | Date |



# NEW MEXICO ASSOCIATION OF REALTORS®
# COVID-19 - SELLER(S) AND BUYER(S) HOLD HARMLESS AGREEMENT 2020



⚠ **THIS FORM IS FOR USE BY SELLERS AND POTENTIAL OR ACTUAL BUYERS ("BUYER") WHEN BUYER WILL BE VIEWING OR INSPECTING THE PROPERTY IN-PERSON. POTENTIAL BUYERS ARE THOSE PERSONS NOT YET UNDER CONTRACT TO PURCHASE AND ACTUAL BUYERS ARE THOSE UNDER CONTRACT TO PURCHASE.**

**PROPERTY ADDRESS:** 49/50 MT CARMEL RD , Santa Fe, NM 87501-2113

**Or** TO BE SUPPLIED WITH TITLE BINDER.
Legal Description

**Or see metes and bounds description attached as Exhibit** _____ , _____ Santa Fe _____ **County, New Mexico.**

**BACKGROUND.** On March 11, 2020, as a result of the current spread of COVID-19, New Mexico Governor Michelle Lujan Grisham, issued a Proclamation of State of Emergency ("Emergency"). On March 23, 2020 a Public Health Order was issued, which among other things, prohibited gatherings of more than five (5) people, ordered the closings of all business not deemed to be "Essential Businesses" and advised New Mexican citizens to stay at home, unless travel was required for health, safety or welfare ('Order"). Real Estate services and those services related thereto were deemed "essential" and may continue; however, the issuance of the Emergency and Order highlights the risk to individuals viewing and inspecting property and the risk to those who own and occupy property in allowing others to inspect or otherwise enter their property.

**ACKNOWLEDGMENT.** By signature below, Seller(s) and Potential or Actual Buyer(s) entering the Property ("Buyer(s)") hereby acknowledge the existence of the COVID-19 virus, and any applicable federal, state and/or local orders which may apply to either party or the Property which either party may own, occupy, inspect, or generally be present upon. Seller(s) and Buyer(s) understand that contact with each other or any locations or surfaces visited or contacted by one another, involves a certain degree of risk which could result in illness, permanent disability, or death. Seller(s) and Buyer(s) acknowledge and agree they are responsible for staying current and in compliance with any federal, state or local orders, which may apply to them and for taking precautions to protect themselves, as set forth by the National Center for Disease Control and Prevention and the New Mexico Department of Health, links below.

https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

https://cv.nmhealth.org

**HOLD HARMLESS.** After fully and carefully considering all the potential risks involved, Seller(s) and Buyer(s) hereby assume the same and mutually release and hold-harmless each other and their respective successors, assigns, employees, officers and agents and waive any and all claims associated with allowing the Property to be viewed and/or inspected in-person or with viewing and/or inspecting the Property in-person, as the case may be.

**CAREFULLY READ TERMS AND IF NOT UNDERSTOOD, CONSULT AN ATTORNEY BEFORE SIGNING.**

## SELLER(S)

DocuSigned by:

*TOM MULCAHN*                7/31/2020

Signature                                              ARCHDIOCESE OF SANTA FE A CORP

_____                    Printed Name                              Date

Signature                                              Printed Name                              Date

## BUYER(S)

DocuSigned by:

*John H. Davenport*                                                                    2/13/2021

Signature                                              Printed Name                              Date

_____                    Printed Name                              Date

Signature                                              Printed Name                              Date

NMAR Form 1506 (2020 APR) Page 1 of 1          ©2020 New Mexico Association of REALTORS®

Santa Fe Properties - Compass, 1000 Paseo de Peralta Santa Fe, NM 87501          Phone: 505-9843343          Fax: 505-984-1003          MT CARMEL
Philip Gudwin          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211




SANTA FE
PROPERTIES


EQUAL HOUSING
OPPORTUNITY

# NEW MEXICO ASSOCIATION OF REALTORS®
## FLOOD INSURANCE DISCLOSURE - 2019

> **NOTE TO BROKERS:** This Disclosure is to be used when a broker has actual knowledge of the following: that the Property is located in an area where flood insurance is required or an area that has experienced flooding or is subject to flood risks that cause many or most owners in the area to purchase flood insurance; or that flood insurance has been required for the Property in the past. In circumstances where flood insurance is not required and there is no reasonable basis for the broker to believe that it may be required or prudent to have, this Disclosure does not need to be provided.

This Flood Insurance Disclosure is made in connection with the following real property:

| 50 MT.CARMEL RD | Santa Fe | NM | 87501-2113 |
|---|---|---|---|
| Address | City | State | Zip Code |

TO BE SUPPLIED WITH TITLE BINDER.

Legal Description
Or see metes & bounds description attached as Exhibit _____, _____ **Santa Fe** _____ County, New Mexico ("Property').

Your mortgage lender may require you to purchase flood insurance in connection with your purchase of the Property. The National Flood Insurance Program (NFIP) provides for the availability of flood insurance and establishes flood insurance policy premiums based on the risk of flooding in the area where properties are located. Recent changes to federal law (The Biggert-Waters Flood Insurance Reform Act of 2012 and the Homeowner Flood Insurance Affordability Act of 2014, in particular) have resulted in changes to flood insurance premiums that are likely higher, and in the future may be substantially higher, than premiums paid for flood insurance prior to or at the time of sale of the Property. As a result, you should NOT rely on the premiums paid for flood insurance on the Property previously as an indication of the premiums that will apply after completion of the purchase. In considering purchase of the Property, you are advised to consult with one or more carriers of flood insurance for a better understanding of flood insurance coverage, current and anticipated future flood insurance premiums, whether you may assume the prior owner's policy and other matters related to the purchase of flood insurance for the Property. More information about the NFIP and flood insurance coverage and rates may be found at the following websites: www.fema.gov/national-flood-insurance-program/flood-insurance-reform-act-2012; www.floodsmart.gov; www.fema.gov/national-flood-insurance-program; and www.fema.gov/floodplain-management/flood-insurance-rate-map-firm.

## BUYER'S ACKNOWLEDGMENT OF RECEIPT

MIGHTY TAI LLC. AND / ASSIGNS
_____
Buyer's Name

*Dawn H. Davenport*                      2/13/2021
_____
Buyer's Signature                          Date          Time

MIGHTY TAI LLC. AND / ASSIGNS
_____
Buyer's Name

_____
Buyer's Signature                          Date          Time

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 1175 (2019 JAN) Page 1 of 1            ©2014 New Mexico Association of REALTORS®

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27 Page 39 of 43

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211




SANTA FE
PROPERTIES



# NEW MEXICO ASSOCIATION OF REALTORS®
# INFORMATION SHEET
# LEAD-BASED PAINT (LBP) RENOVATION REPAIR AND PAINTING PROGRAM - 2019

*THE LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING PROGRAM ("PROGRAM") GOVERNS RENOVATION ACTIVITIES IN BUILDINGS "TARGETED" BY THE PROGRAM. THE PROGRAM COVERS TRAINING AND CERTIFICATION OF RENOVATORS, PRE-RENOVATION NOTIFICATION REQUIREMENTS, WORK PRACTICE REQUIREMENTS BEFORE, DURING AND AFTER RENOVATIONS, POST-RENOVATION COMPLIANCE NOTIFICATION AND RECORD KEEPING. THIS INFORMATION SHEET SUMMARIZES SOME OF THE KEY COMPONENTS OF THE PROGRAM. IT IS NOT ALL INCLUSIVE AND SHOULD NOT BE RELIED UPON WHEN CONDUCTING ACTIVITIES GOVERNED BY THE PROGRAM. REFER TO www.epa.gov/lead FOR COMPLETE INFORMATION ON THE PROGRAM AND CONSULT YOUR ATTORNEY WITH QUESTIONS AND CONCERNS.*

**PERSONS TO WHOM THE PROGRAM APPLIES:** Owners and Property Managers who *have renovations performed for compensation on properties "TARGETED" by the Program* and Contractors, such as painters, plumbers, carpenters and electricians *who perform renovations for compensation on properties "TARGETED" by the Program.*

**PROPERTIES "TARGETED" BY THE PROGRAM:** 1) Residential houses constructed prior to 1978; 2) Apartments or other multi-family housing units constructed prior to 1978; 3) Child-occupied facilities constructed prior to 1978, including schools and daycares, and, 4) Housing for the elderly and/or disabled constructed prior to 1978 *WHERE CHILDREN LESS THAN SIX (6) YEARS OF AGE RESIDE OR ARE EXPECTED TO RESIDE.*

**DEFINITIONS:** CHILD-OCCUPIED FACILITY is defined as a building or portion thereof that is visited regularly by the same child less than six (6) years of age, on at least two (2) different days per week when each day's visit lasts at least three (3) hours. Combined weekly visits must total at least six (6) hours and combined annual visits must total at least sixty (60) hours; HOUSING FOR THE ELDERLY refers to retirement communities or similar types of housing reserved for households composed of one or more persons 62 years of age or older at the time of initial occupancy; PRIOR TO 1978 means buildings for which a construction permit was obtained, or if no permit was obtained, buildings on which construction was started, before January 1, 1978; and RENOVATION is defined as any activity that disturbs painted surfaces including: most repairs (painting, plumbing and electrical work), remodeling, carpentry and maintenance activities, such as window replacement.

**COMMON AREAS AND EXTERIOR SIDES:** The Program applies to common areas and exteriors of "targeted" properties. In child-care facilities, the Program only applies to common areas routinely used by children less than six (6) years of age, such as restrooms and cafeterias and to exterior sides of the building that are immediately adjacent to the child-care facility or common areas used by children less than six (6) years of age.

**PROPERTY NOT AFFECTED:** 1) Buildings built in or after 1978 (See definition of "Prior to 1978"); 2) Housing for elderly or disabled persons built prior to 1978, *UNLESS CHILDREN UNDER SIX (6) YEARS OF AGE RESIDE OR ARE EXPECTED TO RESIDE THERE;* 3) Zero (0) Bedroom dwellings (Studio Apartments, Dormitories, Barracks, etc.); and, 4) Housing declared Lead-Free in writing by a Certified Inspector or Risk Assessor.

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR Forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity, or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe, NM 87501                                          Phone: 505-9847343                Fax: 505-984-1003          MT CARMEL
Philip Gudwin           Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27   Page 40 of 43

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
# INFORMATION SHEET
# LEAD-BASED PAINT (LBP) RENOVATION REPAIR AND PAINTING PROGRAM - 2019

**PRE-RENOVATION NOTICE REQUIREMENTS:** Firms and renovators conducting renovations governed by the Program are required to provide notice to specific individuals prior to beginning renovations. Notice shall include the nature, location, start and end dates of renovations, and a copy of the prescribed Pamphlet entitled *"RENOVATE RIGHT: IMPORTANT LEAD HAZARD INFORMATION FOR FAMILIES, CHILD-CARE PROVIDERS AND SCHOOLS"* ("Pamphlet") or information on how to obtain a copy of the Pamphlet from the firm at no charge. The specific individuals entitled to Notice, time frames for providing Notice, and additional requirements of Notice are available at www.epa.gov/lead.

**PRE- AND POST- RENOVATION REQUIREMENTS AND LEAD-SAFE WORK PRACTICES:** Firms and renovators conducting renovation activities governed by the Program must follow specific lead-safe work practices during each phase of the renovation which include the following: 1) pre-renovation activities, including, but not limited to Notice (as discussed above) and site-area containment; 2) renovation activities, which include work-area containment of dust and debris and prohibition against the use of certain techniques, such as open flame burning; 3) post-renovation clean-up which includes the use of HEPA vacuums and a "white-glove" verification procedure; and 4) post-renovation compliance notification (as discussed below). Certified renovators will have received training in all of these areas, as well as in the record keeping requirements of the Program. Complete information on the requirements in each of these areas is available at www.epa.gov/lead.

**POST-RENOVATION COMPLIANCE NOTIFICATION:** Effective July 6, 2010, renovation firms are required to provide owners and occupants of buildings being renovated with a copy of records demonstrating compliance with the Program and work practice requirements. This information must be delivered along with the final invoice for the renovation, or within 30 days of the completion of the renovation, whichever is earlier. This notification can be accomplished through the use of EPA's "Sample Renovation Recordkeeping Checklist". Firms may also develop their own forms or checklists as long as they include all of the required information. This information should be provided in a short, easily read checklist or other form. For common area renovations, the renovation firm must provide the residents "of the affected housing units" with instructions on how to review or obtain this information from the renovation firm at no charge. These instructions must also be provided to parents/guardians of children attending child-care facilities where renovations have been performed. Additional information regarding the Compliance Notification are available at www.epa.gov/lead.

**FIRM CERTIFICATION:** Firms are required to be certified, to have all employees trained in the use of lead-safe work practices, and to implement lead-safe work practices that minimize occupants' exposure to lead-hazards. Firms must submit an "APPLICATIONS FOR FIRMS" to the Environmental Protection Agency (EPA), signed by the authorized agent of the firm and pay the correct fees. Renovators of the firm must be trained, and lead-safe work practices must be followed.

**CERTIFIED FIRM RESPONSIBILITIES:** 1) to ensure that all persons who perform activities that disturb painted surfaces on behalf of the firm are either certified renovators or have been trained by a certified renovator; 2) to ensure that a certified renovator is assigned to each renovation and performs all of the certified renovator responsibilities; 3) to ensure that all renovations performed by the firm are done so in accordance with the work practice standards of the Program; 4) to ensure pre-renovation education and post-renovation compliance notification requirements of the Program are performed; and 5) to ensure that the Program's record keeping requirements are met.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    MT. CARMEL

DocuSign Envelope ID: C0074494-5A07-403D-9683-CAB87A32B211

# NEW MEXICO ASSOCIATION OF REALTORS®
# INFORMATION SHEET
# LEAD-BASED PAINT (LBP) RENOVATION REPAIR AND PAINTING PROGRAM - 2019

**RENOVATOR CERTIFICATION:** 1) Attended an eight (8) hour Renovation Training Course offered by an accredited provider, **and** 2) Received a completion certificate *OR* if the renovator had already completed a Lead Abatement Worker or Supervisor Course or a Model Renovation Training Course, attended a four (4) hour refresher course. Renovators must be re-certified every five (5) years. However, the certification of renovators who obtained their training prior to April 22, 2010 is valid until July 1, 2015.

**RESPONSIBILITIES OF CERTIFIED RENOVATORS:** 1) Must be in overall compliance with the Program requirements; 2) Must use test kits acceptable to EPA; 3) Must provide on-the-job training to workers; 4) Must be physically present at the work site when warning signs are being posted, while work-area containment is being established, and while work-area cleaning is being performed; 5) Must regularly direct work being performed by others to ensure overall compliance; 6) Must be available, either on-site or by telephone at all times renovations are being conducted; 7) Must have with them at all work sites, copies of their initial course completion certificate and their most recent refresher course completion certificate; 8) Must perform project cleaning verification; and 9) Must prepare required records.

**EXCEPTIONS TO APPLICATION OF THE PROGRAM:** 1) Owner-occupants performing renovations on their own homes; 2) Tenants performing work on their own rental units/homes *PROVIDED, HOWEVER, THE LANDLORD/OWNER DOES NOT REBATE ANY PORTION OF THE RENT OR OTHERWISE COMPENSATE THE TENANT FOR THE WORK;* 3) Abatement actions which permanently eliminate lead-based paint; 4) Emergency renovations which are defined as a sudden unexpected event that presents a safety hazard and/or risk of significant damage and include interim controls performed in response to an elevated blood lead level in a resident child. *THIS EXCEPTION DOES NOT APPLY TO CLEAN-UP OR RECORD KEEPING WHICH ARE STILL REQUIRED PER THE PROGRAM;* and 5) "Minor repairs and maintenance" which is defined as renovations affecting less than six (6) square feet inside and less than twenty (20) square feet outside. The minor repairs and maintenance exception never includes restricted work practices (e.g. open flame burning), nor does it include demolition of surface areas or window replacements unless windows and/or surfaces have been tested, and there has been a written determination from an inspector or risk assessor who used a spot test kit recognized by the EPA that components affected are lead-free. These test results must be disclosed to the owner and tenant. In determining square footage affected, individuals must add together the square footage of all work performed in a thirty (30) day period ("30-Day Rule").

**PENALTIES AND COMPLIANCE:** The penalty for violations is up to $37,500 per violation/per day. The EPA's small business compliance policy applies to businesses with 100 or fewer employees. The Policy sets forth guidelines for the EPA to apply in reducing or waiving penalties for small businesses that come forward to disclose violations before the violations are identified by the EPA and that make a good faith effort to correct those violations.

**FOR MORE INFORMATION:** Visit www.epa.gov/lead to download versions of pamphlets and the Recordkeeping Checklist and to obtain the full text of the Program, interpretive guidance and detailed information on the Program requirements and the Small Business Compliance Policy.

Case 18-13027-t11   Doc 665   Filed 03/19/21   Entered 03/19/21 13:33:27   Page 42 of 43

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   MH CARMEL





# NEW MEXICO ASSOCIATION OF REALTORS®
# COVID-19 - IN-PERSON VIEWING/INSPECTION OF PROPERTY
# INFORMATION SHEET AND ACKNOWLEDGEMENT - 2020

**BACKGROUND.**

On March 11, 2020, as a result of the current spread of COVID-19, New Mexico Governor Michelle Lujan Grisham, issued a Proclamation of State of Emergency. On March 23, 2020 a Public Health Order was issued, which among other things, prohibited gatherings of more than five (5) people, ordered the closings of all business not deemed to be "Essential Businesses" and advised New Mexican citizens to stay at home, unless travel was required for health, safety or welfare. Real Estate services and those services related thereto were deemed "essential" and may continue; however, the issuance of the Emergency and Order highlights the risk to individuals viewing and inspecting property and the risk to those who own and occupy property in allowing others to inspect or otherwise enter their property.

**RISKS ASSOCIATED WITH IN-PERSON VIEWING AND INSPECTIONS.**

The undersigned hereby acknowledges the existence of the COVID-19 virus, and any applicable federal, state and/or local orders which may apply to the undersigned or property which the undersigned may own, occupy, inspect, or generally be present upon. The undersigned understands contact with others, including but not limited to, buyers, sellers, landlords, tenants, real estate brokers, vendors (who include, but are not limited to inspectors, appraisers, contractors and photographers) and others associated with the sale or purchase of property, or any locations or surfaces visited or contacted by such persons, involves a certain degree of risk which could result in illness, permanent disability, or death. Broker and Brokerage make no guaranty or warranty that the undersigned will not be exposed to the COVID-19 virus in the process of viewing, inspecting or generally being present upon properties or in allowing others to view, inspect or otherwise be present upon their property, as the case may be. The undersigned acknowledges that they are responsible for staying current and in compliance with any federal, state or local directives, which may apply to them and for taking precautions to protect themselves, as set forth by the Center for Disease Control and the New Mexico Department of Health (links below).

    https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

    https://cv.nmhealth.org

## ACKNOWLEDGEMENT

| Doun H. Davenport | | 2/13/2021 |
|---|---|---|
| Signature | Printed Name | Date |
| Signature | Printed Name | Date |
| Signature | Printed Name | Date |
| Signature | Printed Name | Date |

NMAR Form 1507 (2020 APR) Page 1 of 1        ©2020 New Mexico Association of REALTORS®

Santa Fe Properties - Corporate, 1000 Paseo de Peralta Santa Fe NM 87501        Phone: 505-9847343        Fax  505-984-1003        MT CARMEL
Philip Gudwin        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Case 18-13027-t11  Doc 665  Filed 03/19/21  Entered 03/19/21 13:33:27  Page 43 of 43