UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF  Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

    Debtor.

# OPINION

Before the Court is creditor Rudy Blea's motion for an order or judgment from this Court removing his name from a list published by the Archdiocese of persons associated with the Archdiocese who have been credibly accused of child sexual abuse. For the reasons stated below, the Court finds that the motion is not well taken and should be denied, without prejudice, however, to Mr. Blea's right to file a motion for relief from stay to bring an adversary proceeding seeking such relief.

A.    Facts.

For the limited purpose of ruling on the motion, the Court finds:[1]

Mr. Blea's motion contains the following allegations:[2]

The Archdiocese included the name of Mr. Blea in news releases and lists of accused priests, deacons and religious,[3] initially stating that Mr. Blea was a member of the Benedictine (OSB) Order which he was not and never has been. The first of many news releases and lists was issued on or about Tuesday, September 12, 2017 and again more recently in the Santa Fe Reporter on February 6- 12, 2019. The Office of Communications/Social Media of the Archdiocese issued a news release

---

[1] The Court takes judicial notice of its docket and of the docket in the state court action involving the Archdiocese and Mr. Blea, No. D-101-CV-2018-00893. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).
[2] The allegations are edited and paraphrased for concision.
[3] Referred to herein as the "List."

labeled "IMMEDIATE RELEASE" and purporting to "Introduce List of Accused Priests, Deacons & Religious" to the world at large, in the form of a letter from its leader, Archbishop John C. Wester. Id, ¶ 3. By implication, the Archdiocese announced to the world that Mr. Blea was a Benedictine religious and/or seminarian who was a child molester. The news releases purported to "publicly acknowledge and identify those clergy and religious who have been accused of perpetrating child sexual abuse within our archdiocese."

On its list in the first news release, the Archdiocese included the name of Mr. Blea, stating that Mr. Blea was a member of the Benedictine (OSB) Order. The term "religious," as it is commonly understood and used in the Catholic Church, is for a person who is a brother or deacon or holds other office within the church hierarchy.

Mr. Blea was never ordained a brother, monk, deacon, or priest in any diocese or religious order of the Catholic Church. Mr. Blea was never a "religious" as that term is understood within the Catholic Church and was used by the Archdiocese in its news release, nor was he ever a member of the Benedictine Order, employed by them, nor did he live with them as a religious in training. Mr. Blea was never a clergy, religious or seminarian who worked within the boundaries of the Archdiocese and who was found guilty of sexually abusing a child under canon law or who worked within the boundaries of the Archdiocese and was found guilty of sexually abusing a child. Mr. Blea was never a clergy, religious or seminarian who worked within the boundaries of the Archdiocese and who either pled guilty or was convicted after a criminal trial of sexually abusing a child. Mr. Blea was never a clergy, religious or seminarian who worked within the boundaries of the Archdiocese who has been laicized after having been accused of sexually abusing a minor or publicly accused of sexually abusing a child.

The Archdiocese made vile and harmful public accusations against Mr. Blea without conducting a proper investigation and without knowing whether those accusations were correct or whether the Archdiocese should have made them in the first place.

The Archdiocese disseminated this news release broadly to public media in New Mexico, and intended that this news release be republished throughout New Mexico, the Internet, and the world by any interested news media or person or entity.

In addition to this broad public dissemination, the Archdiocese posted this news release on its web site on or about 9/12/2017 and multiple other times, in both English and Spanish, and despite the protests of Mr. Blea as to its untrue, wrongful, defamatory, and harmful nature. They have not removed Mr. Blea's name from the lists.

Upon learning of the news release and its broad dissemination in the public media, as intended by the Archdiocese, Mr. Blea was horrified. Mr. Blea contacted the

-2-
Case 18-13027-t11    Doc 696    Filed 05/13/21    Entered 05/13/21 11:21:27 Page 2 of 10

Archdiocese's Human Resources Director Ms. Annette Klimka. Klimka dismissed Mr. Blea summarily, never investigated his protests that his name wrongfully appeared in the Archdiocese's news release, summarily ordered him to cease and desist having any contact with the Cathedral of St. Francis (volunteer coordinator for wedding preparation and regular Eucharistic Minister) or the Villa Therese Catholic Clinic, (member of Board of Directors), and summarily ordered him to cease and desist any other contact with any other parish volunteer organization.

Shortly after that conversation, the Archdiocese's priest in Santa Fe, Father Adam Lee Ortega y Ortiz, apparently with the blessing of the Archbishop . . . similarly ordered Mr. Blea to cease and desist all activities at any catholic church.

After those two conversations, on November 7, 2017, Mr. Blea personally wrote to the highest official of the Archdiocese, Archbishop John C. Wester, to explain that his name had wrongfully been included on the Archdiocese's news release. Mr. Blea explained his history in great detail, and provided significant information demonstrating that the Archdiocese had made a grave mistake in including his name in its news release. Archbishop John C. Wester, took no action to correct the grave injustice the Archdiocese committed against Mr. Blea.

On March 21, 2018, Mr. Blea filed a lawsuit against the Archdiocese in New Mexico's First Judicial District Court, asserting claims for defamation, false light invasion of privacy, intentional infliction of emotional distress, and prima facie tort. Mr. Blea asked for compensatory damages, punitive damages, and "any other relief the Court deems just and proper." There is no mention of equitable or other nonmonetary relief, e.g., ordering the Archdiocese to remove Mr. Blea's name from the List.[4] The Archdiocese answered the complaint on May 18, 2018.

Discovery in the state court action was ongoing when the Archdiocese filed this chapter 11 bankruptcy case on December 3, 2018.

On May 30, 2019, Mr. Blea filed a proof of claim for $200,000. Attached to his proof of claim is a copy of the complaint he filed in the state court.

---

[4] Despite Mr. Blea's allegations that "the claims in State District Court request both equitable relief and monetary relief," equitable relief is raised for the first time in the motion.

With his motion, Mr. Blea asks that this Court order the Archdiocese to remove his name from the List. Although it is not clear, it does not appear that Mr. Blea is asking the Court to adjudicate the allowance of his proof of claim.

The motion makes a passing reference to nondischargeability, i.e., that his "equitable claim . . . is non-dischargeable under 11 U.S.C. § 523(a)(6). . . ."[5]

The motion alleges that the state court action was removed to this Court.

B.  <u>The State Court Action is Stayed</u>.

Mr. Blea acknowledges in his motion that "[t]he State District Court case is stayed . . . ." In its response to the motion, the Archdiocese agrees that "The State Court Action was stayed as of the Petition Date." The parties' assessment of this issue is accurate.

C.  <u>The State Court Action was Not Removed to this Court</u>.

Although Mr. Blea alleges that the state court action "has been removed to the Bankruptcy Court" and "is now under the jurisdiction of this Court," this is not accurate. The state court action has not been removed. When Mr. Blea filed a proof of claim he submitted the issues raised in the state court action to this Court, but that is not the same as removal.

D.  <u>Mr. Blea's Request for Equitable Relief is Not a Continuation of the State Court Action</u>.

Mr. Blea asks this Court to order the Archdiocese to remove his name from the List. He characterizes this request as one for equitable relief. As no such relief was requested in the state court action, the motion is not a continuation of the state court action. Rather, it is a new claim against the Archdiocese. Whether the relief sought is a "commencement" of a new action or a "continuation" of the state court action does not affect whether the automatic stay applies, but may affect how Mr. Blea proceeds hereafter.

---

[5] Unless otherwise noted, all statutory references are to 11 U.S.C.

E. <u>The Automatic Stay</u>.

Section 362(a)(1) "operates as a stay . . . of . . . the commencement . . . of a judicial . . . proceeding against the debtor that . . . could have been commenced before the commencement of the case . . . ."

1. <u>The motion involves a prepetition claim</u>. Mr. Blea could have brought an injunctive or declaratory action against the Archdiocese at any time after September 12, 2017, the first date the List was published. As that is more than a year prepetition, the motion asserts a prepetition claim.

2. <u>The motion violated the automatic stay</u>. There is conflicting case law on whether it violates the automatic stay for a creditor to sue the debtor in bankruptcy court on a prepetition claim. Although the language of § 362(a)(1) clearly stays the filing, the majority rule is that creditors may bring such proceedings in bankruptcy court without violating the stay. *See, e.g., In re North Coast Village, Ltd.*, 135 B.R. 641, 643 (9th Cir. BAP 1992); *In re Transcolor Corp.*, 296 B.R. 343, 358 (Bankr. D. Md. 2003); *In re Uni-Marts, LLC*, 404 B.R. 767, 783 (Bankr. D. Del. 2009); *see also In re Miller*, 397 F.3d 726, 730 (9th Cir. 2005); *In re Cashco*, 599 B.R. 138146 (Bankr. D.N.M. 2019); *In re Bird*, 229 B.R. 90, 95 (S.D.N.Y. 1999)). The majority reasons that applying § 362(a)(1)'s plain language to proceedings filed by creditors in the debtor's bankruptcy case would lead to "absurd results." In *North Coast*, for example, the Ninth Circuit BAP stated:

> It is beyond serious dispute that the application of the stay to certain proceedings in the bankruptcy court would lead to absurd results. For example, if the automatic stay were construed to apply to all proceedings in bankruptcy, a creditor would need relief from the stay to file a proof of claim or even a motion for relief from the stay. As a further example, application of the stay to bar the commencement of proceedings to determine the dischargeability of a debt in the absence of relief from the stay would be unworkable in light of the short time limits within which such proceeding must be commenced.

135 B.R. at 643. Similarly, the *Bird* court stated:

> Even where the debtor is the defendant, however, the automatic stay does not apply to actions brought in the bankruptcy court where the debtor's case is pending. . . . If this exception did not exist, courts would be left with the absurd result of having to modify the automatic stay to allow a creditor to move to lift the stay in the first place.

229 B.R. at 95 (citations omitted).

Another rationale for the majority position is that filing a lawsuit against the debtor in bankruptcy court is the equivalent of filing a proof of claim, and therefore does not violate the automatic stay. *See, e.g., Uni-Marts*, 404 B.R. at 783 ("The Court agrees with the reasoning of the majority of courts addressing the issue that the filing of an adversary proceeding against a debtor in the home bankruptcy court is equivalent to the filing of a proof of claims in the Debtor's bankruptcy case and, therefore, does not violate the automatic stay"); *Bird,* 229 B.R. at 95 ("Such suits against the debtor can be considered the functional equivalent of filing a proof of claim against the bankruptcy estate"). In *Transcolor*, the court held:

> Despite the apparent silence of the Code on this point, the majority view is that the Code implicitly permits the filing of suit in the bankruptcy court against a debtor without violating the automatic stay . . . . "Such suits are the equivalent to the filing of claims against the estate and allowable under 11 U.S.C. § 501, despite the automatic stay." [*In re J.T./ Moran Fin. Corp.*, 124 B.R. 931, 940 (S.D.N.Y. 1991].

296 B.R. at 358-59 (citations omitted).

The minority view is that the plain language of § 362(a)(1) stays the filing of a proceeding against the debtor in bankruptcy court on a prepetition claim. *See, e.g., Bridges v. ContinentalAFA Dispensing Co. (In re ContinentalAFA Dispensing Co.),* 403 B.R. 653, 659 (Bankr. E.D. Mo. 2009); *Healy/Mellon-Stuart Co. v. Coastal Group, Inc. (In re Coastal Group, Inc.)*, 100 B.R. 177, 178 (Bankr. D. Del. 1989); *In re Hodges*, 83 B.R. 25, 26 (Bankr. N.D. Cal. 1988); *In re Penney* 76 B.R. 160, 161 (Bankr. N.D. Cal. 1987) (creditor cannot initiate adversary proceeding under Fed. R. Bankr. P. 7001 without leave of court); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d

984, 993 (2d Cir. 1990) (automatic stay applies to dispute between debtor and union over a collective bargaining agreement, even if the matter is brought before the bankruptcy court). As pithily stated in *Penney*:

> This action is exactly the same action Sears would file in state court had there been no bankruptcy. For some reason, Sears believes that a debtor can still be sued on a state-law cause of action after bankruptcy so long as the suit is filed in the bankruptcy court. This is sheer nonsense.

76 B.R. at 161.

The Court agrees with the minority view, for three reasons. First, the language of § 362(a)(1) is clear; it stays the commencement of a judicial action against the debtor that could have been commenced prepetition, regardless of the forum.

Second, enforcing § 362(a)(1) as written does not lead to "absurd results." While the majority reasons that a literal application of the subsection would require stay relief before filing proofs of claim, nondischargeability actions, or stay relief motions, that is not correct—those actions arise under the Bankruptcy Code and *could not have been brought prepetition*. *See, e.g.*, *Hodges,* 83 B.R. at 26 ("[a]n action taken in the bankruptcy court can only be found to be a violation of the automatic stay when there is no basis under the Code for the action"); *In re Deerman*, 482 B.R. 344, 354 (Bankr. D.N.M. 1012) (stay does not prevent filing a proceeding seeking relief under the Bankruptcy Code). This key point apparently was overlooked by the majority. The "absurd results" feared by the majority are prevented by the language of §362(a)(1).

Third, suing the debtor in bankruptcy court is not equivalent to filing a proof of claim. Claims objections are contested matters, not adversary proceedings. In addition, the debtor has control over the claims administration process, in particular whether and when to object to claims. Claims administration is far more efficient than allowing each creditor to sue the debtor in the bankruptcy case.

-7-
Case 18-13027-t11    Doc 696    Filed 05/13/21    Entered 05/13/21 11:21:27 Page 7 of 10

3. <u>Actions that violate the stay are void</u>. Actions taken in violation of the automatic stay are void *ab initio*. *See, e.g., In re Beery*, 452 B.R. 825, 834 (Bankr. D.N.M. 2011) ("The Tenth Circuit has repeatedly ruled that actions taken in violation of the stay are void *ab initio*, not merely voidable"); *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) ("[i]t is well established that any action taken in violation of the stay is void and without effect"); *In re C.W. Min. Co.*, 477 B.R. 176, 192 (10th Cir. BAP 2012), aff'd, 749 F.3d 895 (10th Cir. 2014) ("The effect of violating the automatic stay is to void the action, whatever the context").

If Mr. Blea wishes to file a proceeding in this Court for a judgment or order removing his name from the List, he must first file a motion for relief from the automatic stay. Once properly noticed, the Court would hold a preliminary hearing on the stay relief motion, followed (usually) by a final, evidentiary hearing. The standard is "cause." *See* § 362(d).

F. <u>If Stay Relief Were Granted, Mr. Blea Would Have to File an Adversary Proceeding</u>.

Bankruptcy Rule 7001 provides in part:

> The following are adversary proceedings:
> . . .
> (7) a proceeding to obtain an injunction or other equitable relief . . . .

If the Court were to modify the automatic stay, Mr. Blea would then have to file an adversary proceeding seeking the requested equitable relief. Alternatively, Mr. Blea could remove the state court action and amend the complaint to seek equitable relief. Removal is governed by Bankruptcy Rule 9027, which states in part:

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) *30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code*, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

(Emphasis added). Because more than 90 days have passed since Debtor filed this bankruptcy case, Mr. Blea would have to file a notice of removal within 30 days after a stay relief order is entered.

G.  Any Monetary Damages Would be Determined as Part of the Claims Objection Process.

Mr. Blea's claim for money damages will be determined when the Archdiocese reaches the point in this case where claims administration is appropriate. It does not make sense to take Mr. Blea's $200,000 claim out of order. If the Court were to modify the automatic stay to allow Mr. Blea to seek equitable relief, claim allowance would not be part of it.

H.  To the Extent the Motion Raises Nondischargeability Issues, it is Too Late.

The motion alleges that the Archdiocese's obligation to Mr. Blea is nondischargeable pursuant to § 523(a)(6). The deadline to file adversary proceedings seeking a nondischargeability determination was March 11, 2019. As Mr. Blea did not file such a proceeding, any debt owed to him is dischargeable. *See* Fed. R. Bankr. P. 4007(c).

## Conclusion

For a number of reasons, the motion is not well taken. First, it was filed in violation of the automatic stay and therefore is void. Second, it seeks relief that can only be obtained by adversary proceeding. Third, the nondischargeability allegation in the motion is untimely. Fourth, the motion incorrectly alleges that Mr. Blea's state court action was removed. Finally, the motion incorrectly alleges that Mr. Blea sought equitable relief in the state court action.

If Mr. Blea wishes to file an adversary proceeding seeking an order or judgment removing his name from the List, he must first file a motion for relief from stay, as outlined above. The motion will be denied by separate order.

-9-
Case 18-13027-t11    Doc 696    Filed 05/13/21    Entered 05/13/21 11:21:27 Page 9 of 10

_____
Hon. David T. Thuma
United States bankruptcy Judge

Entered: May 13, 2021
Copies to: counsel of record