## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole, | Case No. 18-13027-t11 |
| Debtor. | |

## MOTION FOR ORDER AUTHORIZING SALE OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 363 (1804 KENTON HIGHWAY)

The Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico Corporation sole, the debtor and debtor-in-possession (the "Debtor") in the above-captioned Chapter 11 reorganization case (the "Bankruptcy Case"), by counsel, hereby moves for an order authorizing the Debtor to sell certain real property pursuant to 11 U.S.C. § 363. In support of this Motion, the Debtor states as follows:

1.      The Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(N). Venue is proper in this District, pursuant to 28 U.S.C. § 1409(a).

2.      On December 3, 2018 (the "Petition Date"), the Debtor commenced this Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3.      The Debtor is a debtor-in-possession and is authorized to operate its business pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      The Debtor is the owner of a one acre lot with a 1,600 sq. ft. rock building on it located at 1804 Kenton Highway, Seneca, NM (the "Property"). The Property does not have utilities or access.

5.      On July 14, 2021, the Debtor and Judy Steen (the "Buyer") executed a Purchase Agreement, a copy of which is attached hereto as Exhibit A (the "Contract"). Pursuant to the terms

of the Contract, which are subject to the approval of this Court, the Buyer has agreed to purchase, and the Debtor has agreed to sell the Property for $3,000.00 (the "Purchase Price").

6.      The Debtor requests that the Court authorize the sale of the Property pursuant to 11 U.S.C. § 363(b).

7.      Section 363(b) of the Bankruptcy Code authorizes the sale of property of the estate other than in the ordinary course of business after notice and a hearing. A sale of assets outside the ordinary course of business is a matter within the Court's discretion. Courts generally permit a debtor to sell property of the estate outside the ordinary course where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is for fair and reasonable consideration and is in good faith. See *In re Premier Concrete, LLC*, 2010 WL 1780046 (Bankr.D.N.M.2010) (citing e.g. *In re General Motors Corp.,* 407 B.R. 463, 493–94 (Bankr.S.D.N.Y 2009); *In re Derivium Capital, LLC,* 380 B.R. 392, 404 (Bankr.D.S.C.2007); *In re Psychrometric Systems, Inc.,* 367 B.R. 670, 674 (Bankr.D.Colo.2007).

8.      In *Premier*, Judge Jacobvitz outlined a multi-factored test for determining whether a sale is properly proposed within the debtor's business judgment:

> Non-exclusive factors used by courts in considering whether to grant a motion to sell (as first established *In re Lionel,* 722 F.2d 1063, 1071–72 (2nd Cir.1983), which articulated the "business judgment" test) include: 1) whether there was any improper or bad motive involved; 2) whether the <u>price is fair and reasonable</u> and whether the <u>transaction occurred at an arm's length</u>; and 3) whether there were adequate sales procedures, including <u>proper exposure to the market</u> and <u>fair and reasonable notice to all parties in interest</u>. *E.g. In re Castre,* 312 B.R. 426, 428 (Bankr.D.Colo.2004); *In re Medical Software Solutions* 286 B.R. 431, 440–441 (Bankr.D.Utah 2002). *See also In re Allison,* 39 B.R. 300, 303 (Bankr.D.N.M. 1984 ("reasonable and adequate notice must be given to all interested parties," the proposed sale or lease must be "economically reasonable" and that objecting parties will not be able to defeat a plan of reorganization)).

*Premier* at *2 (emphasis supplied).

- 2 -

9.     The sale contemplated by this Motion satisfies all the non-exclusive factors for determining whether to grant a motion to sell under *Premier*:

a.     <u>There is no Bad or Improper Motive Involved.</u> The Debtor is liquidating several pieces of real estate, including the Property, in an effort to fund a feasible plan of reorganization.  The Buyer is not related to Debtor.

b.     <u>Price is Fair and Reasonable</u>.  The Property is difficult to value and market because the Property is located in a very rural part of the state, and potential buyers for the Property are scarce. The Debtor has obtained a broker's opinion of value for the Property, which estimates the value of the Property to be approximately $250.00. A true and correct copy of the broker's opinion of value is attached hereto as <u>Exhibit B</u>. The Buyer has agreed to pay the Purchase Price. This consideration is fair and reasonable under the circumstances.

c.     <u>Transaction Occurs at Arm's Length</u>.  The sale of the Property to Buyer under the Contract is the product of negotiation between the Buyer and the Debtor.

d.     <u>Proper Exposure to the Market</u>.  The Property is a small parcel of land in one of the most rural areas of the state. The Debtor has not been able to find a broker to market the Property.

e.     <u>Fair and Reasonable Notice to all Parties in Interest</u>.  Notice of this Motion will be sent to all parties in interest, who will have an opportunity to review the Contract.

10.     Based on the foregoing, the Debtor has determined that, in its business judgment, the proposed sale of the Property to Buyer in accordance with the terms of the Contract is for fair and reasonable consideration, is in good faith, does not unfairly benefit any party in interest, will maximize the value of the Estate, and should be authorized.

- 3 -

11.     The Debtor requests that the sale of the Property be free and clear of all liens, claims, and interests with any such liens, claims, and interests to attach to the net sale proceeds with the same validity, priority, and to the extent that any such liens, claims and interests had on the Property prior to the closing of the sale pursuant to Section 363(f).

12.     Grounds exist under Section 363(f) of the Bankruptcy Code for a sale of the Property free and clear of liens, claims and interests. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if – (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

13.     Upon information and belief, there are no liens filed of record attaching to the Property.  The Debtor is not aware of any other claims or interests attaching to the Property. Therefore, the Property should be sold pursuant to the Contract free and clear of all liens, claims, and interests pursuant to Section 363(f).

14.     The Debtor requests that the Buyer be determined to be a good-faith purchaser as contemplated by Section 363(m).

15.     Pursuant to Section 363(m):

> The reversal or modification on appeal of an authorization under subsection (b)9 or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchase or leased such property in good faith …

11 U.S.C. § 363(m).

16. The term "good faith" is not defined in the code but courts have found good-faith purchasers when they purchase out of their own personal interest, were not solicited by the debtor or its agents to purchase the property, do not seek to obtain the property by fraud, and are not acting in a manner grossly unfair to other bidders. See *In re Indep. Gas & Oil Producers, Inc.,* 80 Fed. Appx. 95, at 99 (10th Cir. 2003).

17. Upon information and belief, the Buyer seeks to purchase the Property out of her own personal interest. The Buyer was not solicited by the Debtor or its agents to purchase the Property, does not seek to obtain the Property by fraud, and submitted her offer to purchase the Property in an amount and in a manner not unfair to other potential buyers.

18. The Debtor requests that the Court waive the 14-day stay of an order resulting from this Motion otherwise required by Fed. R. Bankr. P. 6004(h).

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

A. Authorizing the sale of the Property pursuant to the terms described in the Contract;

B. Approving the Contract and authorizing the Debtor to take any and all actions necessary to close on the sale on the terms set forth in the Contract, including but not limited to the execution of a warranty deed in a form acceptable to Debtor and the Buyer;

C. Allowing as administrative expense of the Estate and authorizing the Debtor to pay in full, at closing, all closing costs and expenses pursuant to the terms of the Contract;

D. Authorizing the transfer of the Property pursuant to the Contract free and clear of: (a) all interests in the Property of any entity other than the estate pursuant to Section 363(f) including but not limited to liens, claims (as defined by Section 101(5) of the Bankruptcy Code), liabilities, encumbrances, rights, remedies, and restrictions of any kind or nature whatsoever whether arising before or after the Petition Date, whether *in rem* or *in personam*, liquidated or

- 5 -

unliquidated, contingent or non-contingent, senior or subordinate, whether at law or equity, including all claims or rights based on any theory of successor or transferee liability, all environmental claims, all changes in control provisions, (b) all rights to object or consent to the effectiveness of the transfer of the Property to the Buyer, and (c) all rights at law or equity (collectively, "Claims");

E.     Finding that all persons and entities who have asserted, could have asserted, or otherwise may in the future assert a cause of action against the Debtor or the Property relating to their Claims, be forever barred, estopped, and permanently enjoined from asserting such causes of action or Claims against the Buyer, her successors in interest, affiliates, and assignees and against the Property of whatsoever nature;

F.     Determining that the Buyer is a good faith purchaser of the Property as that term is used in Section 363(m) of the Bankruptcy Code;

G.     Retaining exclusive jurisdiction to interpret, enforce and implement the terms and provisions of the order approving the sale and the Contract;

H.     Determining that the order approving the sale is not stayed as provided by Rule 6004(h) and the Debtor and the Buyer may close on the sale as set forth in the Contract immediately; and

I.     Granting the Debtor all other just and proper relief.

Respectfully submitted by:

WALKER & ASSOCIATES, P.C.
*s/filed electronically 08/04/2021*
Thomas D. Walker
500 Marquette N.W., Suite 650
Albuquerque, N.M. 87102
(505) 766-9272
e-mail: twalker@walkerlawpc.com
*Attorneys for Debtor in Possession*

- 6 -

In accordance with NM LBR 9036-1 and Fed. R. Civ. P. 5(b)(3), this certifies that service of the foregoing document was made on August 4, 2021, via the notice transmission facilities of the case management and electronic filing system of the Bankruptcy Court, on all parties entitled to receive electronic filings.

*s/ filed electronically 08/04/2021*
Thomas D. Walker

# EXHIBIT A

  

## NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021
## PART I – BROKER DUTIES DISCLOSURE

Per New Mexico law, Brokers are required to perform a specific set of applicable Broker Duties. Prior to the time the Broker generates or presents any written documents that has the potential to become an express written agreement, he/she must disclose such duties and obtain written acknowledgement that the Broker has made such disclosures.

| SECTION A: | All Brokers in this transaction owe the following broker duties to *ALL* buyers and sellers in this transaction, even if the broker is not representing the buyer or the seller in the transaction: |
|---|---|

1. Honesty and reasonable care and ethical and professional conduct;
2. Compliance with local, state, and federal fair housing and anti-discrimination laws, the New Mexico Real Estate License Law and the Real Estate Commission rules and other applicable local, state, and federal laws and regulations;
3. Performance of any and all written agreements made with the prospective buyer, seller, landlord (owner) or tenant;
4. Written disclosure of any potential conflict of interest that the broker has in the transaction, including, but not limited to;
   A. Any written brokerage relationship the Broker has with any other parties to the transaction or;
   B. Any material interest/relationship of a business, personal or family nature that the broker has in the transaction; or
   C. Any written agreement the Broker has with a Transaction Coordinator who will be providing services related to the transaction.
5. Written disclosure of any adverse material facts actually known by the broker about the property or the transaction, or about the financial ability of the parties to the transaction to complete the transaction; adverse material facts requiring disclosure do not include any information covered by federal fair housing laws or the New Mexico Human Rights Act.

| SECTION B: | In addition to the above duties, Broker(s) owes the following Broker Duties to the buyer(s) and/or seller(s) in this transaction to whom the Broker(s) is/are directly providing real estate services, regardless of the scope and nature of those services. |
|---|---|

1. Unless otherwise agreed to in writing by the party, assistance to the party in completing the transaction including:
   A. timely presentation of and response to all written offers or counteroffers; and
   B. active participation in assisting in complying with the terms and conditions of the contract and with the finalization of the transaction;

   If the broker in the transaction is not providing the service, advice or assistance described in Paragraphs 1A or 1B of this Subsection, the party must agree in writing that the broker is not expected to provide such service, advise or assistance. The broker shall disclose the existence of such agreement in writing to the other brokers involved in the transaction.
2. Acknowledgement by the broker that there may be matters related to the transaction that are outside the broker's knowledge or expertise and that the broker will suggest that the party seek expert advice on these matters;
3. Advise to consult with an attorney regarding the effectiveness, validity or consequences of any written document generated by the brokerage or presented to the party and that has the potential to become an express written agreement;
4. Prompt accounting for all money or property received by the broker;
5. Maintenance of any confidential information learned in the course of any prior agency relationship unless the disclosure is with the former principal's written consent or is required by law;
6. Written disclosure of brokerage relationship option available in New Mexico:
   A. **Exclusive agency:** an express written agreement between a person and a brokerage wherein the brokerage agrees to exclusively represent as an agent the interest of the person in real estate transaction;
   B. **Dual agency:** an express written agreement that modifies existing exclusive agency agreements to provide that the brokerage agrees to act as facilitator in real estate transaction rather than as an exclusive agent for either party;
   C. **Transaction Broker:** The non-fiduciary relationship created by law, wherein a brokerage provides real estate services without entering into an agency relationship.
7. Unless otherwise authorized in writing, a broker who is directly providing real estate services to a seller shall not disclose the following to the buyer in a transaction:
   A. that the seller has previously indicated he/she will accept a sales price less than the asking or listed price;
   B. that the seller will agree to financing terms other than those offered;
   C. the seller's motivation for selling/leasing; or
   D. any other information the seller has requested in writing remain confidential, unless disclosure is required by law;
8. Unless otherwise authorized in writing, a broker who is directly providing real estate service to a buyer shall not disclose the following to the seller in the transaction:
   A. that the buyer has previously indicated he/she will pay a price greater than the price submitted in a written offer;
   B. the buyer's motivation for buying; or
   C. any other information the buyer has requested in writing remain confidential, unless disclosure is required by law.

**BUYER(S) AND SELLER(S): PLEASE ACKNOWLEDGE RECEIPT BY INITIALING BELOW**




# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021
### PART II – OTHER REQUIRED DISCLOSURES

*Broker shall update these and all other required disclosures as needed.*

**BUYER'S BROKER DISCLOSURES:**

1. **Brokerage Relationship.** _____ Rosie DeHerrera _____ ("Buyer's Broker") is working with the Buyer as a:
   - ☑ Transaction Broker ☐ with ☑ without a written Buyer Broker Agreement.
   - ☐ Agent with a written Buyer Broker Agreement with Agency Addendum.
   - ☐ Transaction Broker without a written Buyer Broker Agreement, but with a Compensation Agreement.

2. **In-House Transaction: Buyer and Seller's Consent to Dual Representation, NO Dual Agency created.**
   - ☐ Buyer's Broker is licensed under the same Qualifying Broker as Seller's Broker.
   - ☐ Buyer's Broker is also Seller's Broker for the property in this Transaction. Broker has a written listing agreement with Seller as ☐ Transaction Broker ☐ Agent.
   - ☐ Brokerage is representing both Buyer and Seller.

3. ☐ **Dual Agency:** Brokerage is representing both Buyer and Seller by means of written agency agreements with each of them and Designated Agency has ***not*** been chosen by the Qualifying Broker; Designated Agency is a policy that discloses to a client that the broker representing him/her as an agent is the client's only representative in the brokerage. When Designated Agency is *not* chosen, Dual Agency is created. Prior to writing or presenting this offer, Broker must obtain written consent from the parties to act as a Dual Agent (NMAR Form 1301, Agency Agreement – Dual).

4. **Additional Disclosures:** If applicable, check box below. Where noted (♦), attach NMAR Form 2100 or other disclosure.
   - ☐ Buyer's Broker has an **OWNERSHIP INTEREST IN PROPERTY**
   - ☐ Buyer's Broker has a **CONFLICT OF INTEREST** or **MATERIAL INTEREST** (business, personal or family) ♦
   - ☐ Buyer's Broker knows of **ADVERSE MATERIAL FACTS** about the Property and/or Transaction ♦
   - ☐ Buyer's Broker has engaged a **TRANSACTION COORDINATOR:** _____.

**SELLER'S BROKER DISCLOSURES:**

1. **Brokerage Relationship.** _____ ("Seller's Broker") is working with the Seller as a:
   - ☐ Transaction Broker with a written Listing Agreement.
   - ☐ Agent with a written Listing Agreement with Agency Addendum.
   - ☐ Transaction Broker without a written Listing Agreement, but with a Compensation Agreement.

2. **Additional Disclosures:** If applicable, check box below. Where noted (♦), attach NMAR Form 2100 or other disclosure.
   - ☐ Seller's Broker has an **OWNERSHIP INTEREST IN PROPERTY**
   - ☐ Seller's Broker has a **CONFLICT OF INTEREST** or **MATERIAL INTEREST** (business, personal or family) ♦
   - ☐ Seller's Broker knows of **ADVERSE MATERIAL FACTS** about the Property and/or Transaction; ♦
   - ☐ Seller's Broker has engaged a **TRANSACTION COORDINATOR:** _____.

---

**TRANSACTION COORDINATORS** are licensed brokers who have been engaged by the broker as indicated above to assist the broker in the processing of the transaction, which may include gathering information and paperwork, overseeing and organizing contractual deadlines, communicating and coordinating with lenders, title companies, inspectors, other brokers and the parties to the contract to facilitate the closing of the transaction, and assembling the final transaction file for closing.

**BROKER DUTIES OWED BY TRANSACTION COORDINATORS:**
- If working for the broker who hired them and having no interaction with the broker's customer or client and/or other brokers involved in the transaction: Broker Duties 1-5 in Section A on Cover Page I.
- If working directly with the broker's customer or client and/or other parties or brokers in the transaction: Broker Duties 1-5 of Section A on Cover Page I **and** Broker Duties 5, 7 and 8 of Section B on Cover Page I.

---

☐ Buyer is a New Mexico Real Estate Broker
☐ Buyer is a party to another Buyer-Broker Agreement     ☐ Seller is a New Mexico Real Estate Broker

| **BUYER** | | | **SELLER** | | |
|---|---|---|---|---|---|
| *Judy Steen* | 4/8/2021 | | *[signature]* | 4/29/21 | 10 qm |
| Buyer Signature | Date | Time | Seller Signature | Date | Time |
| | | | | | |
| Buyer Signature | Date | Time | Seller Signature | Date | Time |

NMAR Form 3101 (2021 JAN) Cover Page 2 of 3     ©2008 New Mexico Association of REALTORS®

## NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021
### THE FOLLOWING IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
### BROKERS ARE NOT PARTIES TO THIS PURCHASE AGREEMENT.

### BUYER'S BROKER(S)

Rosie DeHerrera                                          15120

⟹ Buyer's Broker Name                                    Buyer's Broker's NMREC License No.

If different, Buyer's Broker's Qualifying Broker's Name   Buyer's Broker's Qualifying Broker's NMREC License No.

Big Country Realty                          575-374-2444          575-374-3299
Buyer's Brokerage Firm          Office Phone              Fax

P. O. Box 246                          Clayton                      NM        88415
Buyer's Brokerage Address       City                     State         Zip Code

bigcountryrosie@plateautel.net       575-207-7118        Broker ☑ is ☐ is not a REALTOR®
Email Address                   . Cell Number

⟹ Buyer's Broker Name                                    Buyer's Broker's NMREC License No.

If different, Buyer's Broker's Qualifying Broker's Name   Buyer's Broker's Qualifying Broker's NMREC License No.

Buyer's Brokerage Firm          Office Phone              Fax

Buyer's Brokerage Address       City                     State         Zip Code

                                                         Broker ☐ is ☐ is not a REALTOR®
Email Address                   . Cell Number

### SELLER'S BROKER

⟹ Seller's Broker Name                                   Seller's Broker's NMREC License No.

If different, Seller's Broker's Qualifying Broker's Name  Seller's Broker's Qualifying Broker's NMREC License No.

Seller's Brokerage Firm         Office Phone              Fax

Seller's Brokerage Address      City                     State         Zip Code

                                                         Broker ☐ is ☐ is not a REALTOR®
Email Address                   Cell Number

⟹ Seller's Broker Name                                   Seller's Broker's NMREC License No.

If different, Seller's Broker's Qualifying Broker's Name  Seller's Broker's Qualifying Broker's NMREC License No.

Seller's Brokerage Firm         Office Phone              Fax

Seller's Brokerage Address      City                     State         Zip Code

                                                         Broker ☐ is ☐ is not a REALTOR®
Email Address                   Cell Number

NMAR Form 3101 (2021 JAN) Cover Page 3 of 3    ©2008 New Mexico Association of REALTORS®    Buyer ⟨signature⟩    Seller ⟨signature⟩

This copy right and protected form was created using instanetForms and is licensed for use by Rosie DeHerrera.

TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION of REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



**1. TERMS SUMMARY.**

This Agreement includes:

☐ Addendum

☐ Financing Addendum

☐ Exhibit A Legal Description (to be provided by title company)

☑ Other (Describe): Recorded Deed and Hold Harmless Addendum

Offer Date: __April__ __6__ __2021__

Offer Expiration Date: __April__ __13__ __2021__

Buyer: Judy Steen                                    a single person

Seller: Roman Catholic Church of the Archdiocese of Santa Fe

Property Description: Moses Church – 1 Acre of land with a rock building

Address: 1804  Kenton Highway                          Seneca, NM 88437

Legal Description: See Attached Deed recorded on May 3, 1957 in Book 41, Page 501-502 Records

of Union County, New Mexico – One Acre Tract in the NW4NE4 of Section 10, T28N, R36E Union County

Purchase Price: $        3,000.00

Earnest Money: $        0.00

Inspection Period:        Buying "As Is, Where Is" with no seller warranty

Closing Date: __May__ __7__ __2021__

Conveyance Documents:

☑ Deed ☐ General Warranty Deed ☐ Special Warranty Deed ☐ Quitclaim Deed ☐ Other: _____

Check all that apply:

☐ Assignment of Leases

☐ Other (Describe): _____

☐ Survey Type: ☐ ALTA ☐ Boundary ☐ Other (Describe): _____

☐ Environmental Site Assessment: ☐ Phase I ☐ Phase II ☐ Other (Describe): _____

**2. TITLE COMPANY:**        Pioneer Title & Escrow Services, 146 N. 3rd St, Raton, NM

Title Officer Name:        Shelly Fanelli, Closing Agent,

Phone:        #855-746-6991        Facsimile:        888-411-0943

Email:        sfanelli@pioneertitle.net

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M. DeHerrera.

TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



**3. FINANCE CONTINGENCY**
☐ If checked, this Agreement is contingent upon Buyer obtaining financing on or before _____ **N/A**
and Financing Addendum (NMAR Form 3106) is attached if appropriate.

**4. PROPERTY.** Seller agrees to sell and Buyer agrees to buy the Property for the Purchase Price pursuant to the terms of this Purchase Agreement ("Agreement"). The parties agree that if the legal description of the Property in this Agreement is not accurate, this Agreement shall not be invalid and the legal description shall be revised in a manner acceptable to Buyer, Seller and Title Company. The Property includes all fixtures and permanent improvements located at the Property, including all mechanical systems, electrical systems, plumbing systems, heating, ventilating and air conditioning systems and equipment, sprinkler systems, security systems, fire detection systems, telephone distribution systems (lines, jacks and connections only), floor coverings, window coverings, elevators, signs, paving and landscaping. The Property includes all of Seller's interest in Existing Leases (as defined below), subleases, licenses, lease guaranties, easements, rights-of-way, streets, alleys, access rights, water rights, air rights, development rights, zoning rights and variances, and all other estates, rights, titles, interests, servitudes, tenements, and appurtenances of any nature whatsoever, in any way now or hereafter belonging to, relating to or pertaining to the Property. Service contracts, employment agreements, warranties and management agreements, to the extent they are assignable, will be included with the Property. THIS AGREEMENT IS NOT TO BE USED FOR TRANSACTIONS INVOLVING AN ASSIGNMENT OF A GROUND LEASE. UNLESS SPECIFICALLY PROVIDED IN AN ADDENDUM TO THIS AGREEMENT, BUYER IS NOT PURCHASING ANY PERSONAL PROPERTY OF SELLER PURSUANT TO THIS AGREEMENT. (IN THE EVENT BUYER IS PURCHASING PERSONAL PROPERTY OF SELLER IN CONJUNCTION WITH PURCHASE OF THE PROPERTY, BUYER SHOULD CONSULT AN ATTORNEY REGARDING NECESSARY ADDITIONAL DOCUMENTATION.)

**5. DEFINITIONS.** The following terms will have the following meanings:
  **A. BROKER** includes Buyer's and Seller's brokers.
  **B.** If a specific **DATE** is stated as a deadline in this Agreement, then that date **IS** the **FINAL** day for performance; and if that date falls on a Saturday, Sunday or a legal Holiday, the date **does not** extend to the next business day.
  **C. DATE OF ACCEPTANCE** is the date this Agreement is fully executed and delivered.
  **D. DAY(S)** will be determined on a "calendar day" basis and if the **FINAL** day for performance falls on a Saturday, Sunday or legal Holiday, the time therefore will be extended to the next business day. Legal Holidays are described as New Year's Day, Martin Luther King Jr.'s Birthday, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, and Christmas.
  **E. DELIVERED** means personally delivered or by any method where there is evidence of receipt. In the event the parties have agreed to electronic transmission of documents, a facsimile or e-mail transmission of a copy of this or any related document shall constitute delivery of that document. When an item is delivered to the real estate Broker who is working with or who represents the Buyer or Seller, it is considered delivered to the Buyer or Seller respectively, except if the same Broker works for or represents both Buyer and Seller, in which case, the item must be delivered to the Buyer or Seller, as applicable.
  **F. DEADLINES.** Any "deadline(s)" can be expressed either as a calendar date (See Paragraph 5(C)) or as a number of days (See Paragraph 5(E)).
  **G. ELECTRONIC** means relating to technology having electrical, digital, magnetic, wireless, telephonic, optical, electromagnetic or similar capabilities and includes, but is not limited to, facsimile and e-mail.
  **H. ELECTRONIC RECORD** means a record created, generated, sent, communicated, received or stored by electronic means.
  **I. ELECTRONIC SIGNATURE** means an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record.
  **J. FIXTURE** means an <u>article</u> which was once personal property, but which has now become a part of the Property because the article has been fastened or affixed to the Property.

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie G DeHerrera.





**K. MASCULINE** includes the feminine.
**L. SINGULAR** includes the plural.

**6. EARNEST MONEY.** Within __n/a__ days of the Date of Acceptance, Buyer shall deliver the Earnest Money to the Title Company, to be held in escrow pursuant to the terms of this Agreement. The Earnest Money shall be held in a federally insured Trust account selected by the Title Company. Subject to the provisions of this Agreement, the Earnest Money is to be applied toward the purchase of the Property at the Closing. Upon Title Company's request, Buyer agrees to provide Title Company with its Federal Tax Identification Number. If Buyer fails to deposit the Earnest Money as required by this Agreement, this Agreement shall be automatically terminated.

**7. DISCLOSURE AND DELIVERY OF INFORMATION.** Within __n/a__ days of the Date of Acceptance, Seller shall provide to Buyer true, correct and complete copies, to the extent that they are in Seller's control or possession, of the following: previously prepared environmental audits and inspections, physical inspection reports, maintenance information, warranties, service and other contracts, engineering reports, hydrology reports, drainage information, grading information, soils reports, topography information, utility reports and information, building plans and specifications, certificates of occupancy, plats, prior surveys, site plans, tax assessments and tax bills for the past two (2) years, utility bills, governmental and quasi-governmental notices, a schedule of all lawsuits (except suits initiated by Seller against tenants no longer occupying space at the Property) pending or threatened related to the Property (including a summary of relevant facts, status of the action, parties, court and attorneys involved), and such other information, notices, correspondence, agreements and other materials, if any, in Seller's possession related to the Property.

**8. LEAD-BASED PAINT (LBP).** If any part of this Property is a RESIDENCE built before 1978, SELLER MAY NOT ACCEPT AN OFFER FROM BUYER UNTIL SPECIFIC DISCLOSURES REGARDING LBP HAVE BEEN MADE TO THE BUYER. (See LBP Disclosure – NMAR Form 5112). Additionally, both Residential AND certain commercial buildings built prior to 1978 are subject to the Lead Based Paint Renovation Repair and Painting Program (RRPP) (See LBP RRPP Information Sheet – NMAR Form 5112A).

**9. INSPECTION PERIOD.** Seller is required to disclose to Buyer any adverse material defects known to him about the Property. However, Seller does not have an obligation to inspect the Property for the Buyer's benefit or to repair, correct or otherwise cure known defects that are disclosed to Buyer or previously unknown defects that are discovered by Buyer or Buyer's inspectors.

Buyer shall have the period of time set forth above as the Inspection Period to review the Property. During the Inspection Period, Buyer shall review all of the information regarding the Property provided by Seller. In addition, during the Inspection Period, Buyer may perform such other inspections and review such other information as is desired by Buyer. Such inspections, unless otherwise specified in this Agreement, shall be at Buyer's expense. Such inspections and reviews may include, but are not limited to, physical inspection of the Property, environmental inspection of the Property, soil inspection, review of governmental approvals and permits related to the Property, zoning, title, survey, leases, financial information related to the Property, service agreements, management contracts, and other agreements related to the Property. Seller authorizes Buyer to request zoning and other similar certifications from applicable governmental and quasi-governmental authorities. Buyer agrees to not unreasonably disturb Seller's tenants at the Property and to conduct all inspections and tests at times mutually acceptable to Buyer and Seller. Seller releases Buyer from all claims and liabilities arising out of such requests by Buyer, including but not limited to enforcement actions triggered by such requests. During the Inspection Period, Buyer is specifically entitled to review the following:

**A. PHYSICAL INSPECTION.** Buyer, at Buyer's election and expense, may obtain a physical inspection, lead- based paint hazard inspection and/or lead-based paint risk assessment concerning the Property.

**B. TITLE.** Within __15__ days of the Date of Acceptance, Seller shall obtain a title commitment ("Title Commitment") from Title Company. Along with the Title Commitment, Title Company shall provide to Buyer copies of all documents listed as exceptions, a property tax search and copies of all plats related to the Property. Buyer shall be entitled to review title to the Property during the Inspection Period.

NMAR Form 2410 (2021 JAN)    Page 12 of 24    ©New Mexico Association of REALTORS®
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M Dellorfora
TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



C. **SURVEY.** The survey of the Property of the type specified above shall be obtained by the party designated. The survey shall be obtained as soon as practicable and, in any event, within __n/a__ days of the Date of Acceptance. If an ALTA survey is designated, the survey shall be prepared consistent with the American Land Title Association/American College on Survey & Mapping standards for urban surveys, including the optional items on Table A as selected by the party obtaining the survey. If a boundary or other survey is to be obtained, such survey shall be prepared consistent with the Minimum Standards for Surveying in New Mexico. All surveys shall be certified to Seller, Buyer, Title Company and Buyer's Lender, if any. The "Flood Zone" status of the Property shall be reflected on the survey.

D. **LEASES.** During the Inspection Periods, Buyer may review all leases, subleases, lease guaranties, licenses, concession Acceptances and other rental or occupancy arrangements (collectively "Existing Leases") affecting the Property. Prior to the Closing, Seller shall obtain an estoppel certificate ("Estoppel Certificate") covering such matters and on a form mutually acceptable to Buyer and Seller from each tenant at the Property. Seller shall use its best efforts to obtain all Estoppel Certificates as soon as possible and in any event on or before the Closing Date. If any Estoppel Certificate cannot be obtained in a timely manner, Seller shall promptly give notice to Buyer of Seller's failure to obtain such Estoppel Certificate; and, in such event, Buyer, within __n/a__ days after notice is given, may terminate this Acceptance and have the Earnest Money, including accrued interest, delivered to Buyer.

E. **ENVIRONMENTAL SITE ASSESSMENT.** The Environmental Site Assessment of the Property shall be obtained by the party set forth in Paragraph 18 at such party's expense, within __n/a__ days of the Date of Acceptance. The site assessment of the Property shall be of the type specified above and shall be performed in a manner consistent with the standards created by American Society for Testing and Materials Standards.

F. **SOIL AND DRAINAGE INSPECTION.** Buyer, at Buyer's election and expenses, may obtain soil and drainage inspections and tests concerning the Property.

**10. BUYER'S ENTRY.** Buyer shall be responsible for all costs, expenses, liabilities and damages incurred by Seller as a result of Buyer's entry onto the Property prior to the Closing. Buyer shall return the Property to the condition it was in prior to any entry, test and/or inspection by Buyer. All inspections and tests conducted by Buyer regarding the Property shall be promptly paid for by Buyer. Buyer indemnifies and agrees to defend Seller and the Property from any and all claims, liabilities, liens, losses, expenses (including reasonable attorneys' fees and costs), and/or damages arising out of or related to any such entry, inspections and/or tests by Buyer, its agents, contractors and employees, in connection with this Agreement.

**11. BUYER'S OBJECTION.** Prior to the end of the Inspection Period, Buyer may disapprove the Property and/or any item related to the Property **in writing**. In such event, Buyer, at Buyer's election, may either terminate this Agreement or give notice to Seller requesting that Seller cure the items disapproved by Buyer. Seller shall have the obligation, at Seller's expense, to satisfy and remove at or before the Closing all monetary encumbrances disapproved by Buyer. Regarding disapproval by Buyer of items other than monetary encumbrances, within __n/a__ days of Buyer's notice requesting Seller's cure, Seller shall provide notice to Buyer of Seller's proposed cure and the time period necessary for Seller to effectuate the cure. Upon receipt of the response from Seller, Buyer shall within __n/a__ days elect to either terminate this Agreement or accept Seller's proposed cure. If Buyer elects to terminate this Agreement, the Earnest Money, shall be delivered to Buyer. If Buyer agrees to Seller's proposed cure, the Closing Date shall be extended, if necessary, consistent with the time period specified for Seller's cure. If Buyer does not disapprove the Property in writing, Buyer shall be deemed to have approved the Property and the Earnest Money shall become non-refundable.

**12. SELLER'S REPRESENTATIONS AND WARRANTIES.** Except as is expressly disclosed by Seller in accordance with Paragraph 6, Seller makes the following representations and warranties to Buyer as of the Date of Acceptance and as of the Closing Date.

Representations and warranties made in Subparagraphs A through N are made to the best of Seller's **current and actual knowledge:**

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeHerrera.

TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021



A. Seller is the sole owner of the Property and has the full right, power and authority to sell the Property to Buyer as provided in this Agreement.

B. There are no adverse soil, topography, hydrology, or drainage conditions at the Property.

C. There are no hazardous materials, hazardous conditions, toxic substances, asbestos, or contaminated substances, including but not limited to asbestos, lead-based paint and/or PCB transformers at the Property.

D. No governmental or quasi-governmental entity has notified Seller of any action, contemplated action or issue relating to or impacting the Property;

E. The Property has never been used as a dump, landfill or other similar use and the Property has never had an above ground or an underground storage tank located on it.

F. All information and documents provided by Seller to Buyer regarding the Property are true, correct and complete. Notwithstanding the foregoing, Seller is not providing any representation or warranty to Buyer regarding the sufficiency, accuracy, completeness, or correctness of any information or report prepared by any party other than Seller. Seller does not provide any representation or warranty to Buyer concerning the skill or competency of any third party producing any such information.

G. Seller is not aware of any unpaid liens or assessments, or items which could result in a lien, related to the Property.

H. Water service, electric service, natural gas, telephone service, and public sewer service are presently serving the Property.

I. The Property is not subject to any historical Property designation and/or development limitation.

J. Seller will not violate or modify any existing lease or Other Agreement, or create any new lease or Other Agreement affecting the Property, without Buyer's prior written approval.

K. No person other than tenant(s) pursuant to the Existing Leases shall have any right to possession of the Property.

L. No work has been performed which has not been paid for or which could give rise to any mechanic's or materialmen's lien being filed against the Property.

M. No lawsuit or other claim is pending or threatened against Seller and/or the Property.

N. No tenant or occupant of the Property is subject to any bankruptcy, receivership, probate or insolvency proceeding.

O. Seller is not subject to any bankruptcy, receivership, probate or insolvency proceeding.

P. Seller has not collected and will not collect any rent or other monies related to the Property for any period after the Closing Date.

Seller's representations and warranties shall survive the Closing.

13. **PRORATIONS, ADJUSTMENTS AND TRUST FUNDS.** At the Closing, the following shall occur:

A. **TAXES, ASSESSMENTS, UNPAID EXISTING IMPACT FEES.** Applicable real property taxes shall be prorated through the Closing Date, based upon the latest tax information available to Title Company. Seller shall pay all special assessments, standby charges, prorate charges and other similar charges and/or assessments existing as of the Closing.

B. **INSURANCE.** All insurance obtained by Seller will terminate on the Closing Date. Buyer is advised to obtain appropriate insurance related to the Property effective as of the Closing Date.

C. **RENT, SECURITY DEPOSITS, AND RELATED EXPENSES.** All rent and other similar monies, including but not limited to utilities, operating expenses and other "pass-through's", shall be prorated as of the Closing Date. The parties agree to promptly adjust between themselves outside of the escrow any rents received after the Closing Date. All security deposits pursuant to Existing Leases shall be delivered to Buyer and paid for by Buyer at the Closing.

D. **LOAN IMPOUNDS.** At the Closing, Seller shall assign to Buyer, and Buyer shall pay for all impounds or trust funds (including but not limited to insurance escrows, tax escrows, and replacement reserves), held by the lender regarding any loan being assumed by Buyer.

E. **OTHER CHARGES RELATED TO THE PROPERTY.** All other charges related to the Property, including but not limited to utility bills, service contracts, and management fees shall be paid by Seller through the Closing Date. All service contracts, management agreements and other contracts, unless specifically approved and

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie H DeHorney Jr.

TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



assumed by Buyer in writing at the Closing, shall be terminated by Seller effective as of the Closing Date. Buyer shall pay for all fees incurred in conjunction with the assignment of any service contract, management agreement and/or other contract. Buyer shall be responsible for changing over to Buyer all utilities as of the Closing Date. Utility deposits, if any, shall be assigned to Buyer and be paid for by Buyer at the Closing. Title Company is hereby authorized to retain such monies out of the closing proceeds as are reasonably necessary to pay utility charges which could result in a municipal lien being filed against the Property for any period of time prior to the Closing Date.

14. **MATERIAL CHANGE.** No Material Change, as hereinafter defined, shall have occurred before the Closing with respect to the Property that has not been approved in writing by Buyer. For purposes of this Agreement, "Material Change" shall mean a change in the status of a use, occupancy, tenants, financial condition or physical condition of the Property. In the event of a Material Change, Buyer, at Buyer's election, may terminate this Agreement within ____3____ days of receiving notice from Seller of such Material Change. If Buyer terminates this Agreement, the Earnest Money and all interest accrued thereon shall be returned to Buyer.

15. **RISK OF LOSS.** In the event of damage or destruction of all or any portion of the Property by wind, water, fire or other casualty, Seller will promptly notify Buyer of the nature and extent of such damage or destruction. In such event, Buyer, in its sole discretion, within____3____days of such notice, may either terminate this Agreement, negotiate a mutually acceptable reduction in the Purchase Price, obtain an assignment of insurance proceeds from Seller or apply insurance proceeds actually received by Seller as of the Closing to the Purchase Price. Prior to the Closing, risk of loss with respect to the Property shall be on Seller. After the Closing, risk of loss with respect to the Property shall be on Buyer.

16. **CONDEMNATION.** Promptly upon obtaining knowledge of any threatened or filed condemnation proceeding against all or any portion of the Property, Buyer and Seller will notify the other party of such proceeding. In such event, Buyer, in its sole discretion, may either terminate this Agreement, negotiate a mutually acceptable reduction in the Purchase Price, obtain an assignment of condemnation proceeds from Seller or apply condemnation proceeds actually received by Seller as of the Closing to the Purchase Price.

17. **CLOSING.** The closing ("Closing") shall occur on the Closing Date. All documents shall be delivered by the respective parties to Title Company to be held in escrow pending the Closing. Each document shall be duly executed and, if the document is to be recorded, duly acknowledged for the Closing.
A. Unless stated otherwise in this Contract, Seller shall deliver the following:
    i. The Deed, of the type specified above, subject only to the title items not objected to by Buyer during the Inspection Period.
    ii. An assignment of the Existing Leases.
    iii. An affidavit executed by Seller providing that Seller is not a "foreign person" as established by Internal Revenue Code Section 1445 or successor statutes.
    iv. Other applicable closing documents required or specified by this Agreement.
    v. Closing statement prepared by Title Company for Seller.
B. Unless stated otherwise in this contract for the Closing Buyer shall deliver the following:
    i. The balance of the Purchase Price.
    ii. Other applicable closing documents required or specified by this Agreement.
    iii. Documents, if any, related to Buyer's financing for the Property.
    iv. Closing Statement prepared by Title Company for Buyer.

As soon after the Closing as is reasonably practicable, Title company shall issue to Buyer a standard New Mexico Owner's Title Insurance Policy, effective as of the Closing Date, in the amount of the Purchase Price, insuring title to the Property vested in Buyer, in a form consistent with the Title commitment, and subject only to exceptions not objected to by Buyer during the Inspection Period.

NMAR Form 3101 2021 New Mexico Association of REALTORS®
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeHerrera.



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



All documents shall be in a form mutually acceptable to Buyer and Seller. Prorations shall be handled at the Closing as set forth in this Agreement.

**18. COSTS TO BE PAID.** Buyer or Seller will pay the following marked items:

| TITLE COMPANY CLOSING COSTS | Buyer | Seller | Not Required |
|---|---|---|---|
| Closing Fee | x | | |
| Pro-Rata Data Search | | | x |
| Legal Document Preparation | x | | |
| Special Assessment Search | | | x |
| Buyer Recording Fees | x | | |
| Seller Recording Fees | | x | |
| Other: | | | |
| Other: | | | |
| **POLICY PREMIUMS** | | | |
| Title Commitment | x | | |
| Standard Owner's Policy | x | | |
| Mortgagee's Policy | | | x |
| Mortgagee's Policy Endorsements | | | x |
| Other: | | | |
| Other: | | | |
| **MISCELLANEOUS** | | | |
| Survey (Paragraph 9C) | | | x |
| Septic System Inspection (NMAR Form No. 2308) | | | x |
| Well Inspection (NMAR Well Information Sheet No. 2307) | | | x |
| Impact Fees | | | x |
| Property (Condo) Owner Association Fees | | | x |
| Environmental Site Assessment (Paragraph 9E) | | | x |
| **ESCROW / COLLECTION FEES** | | | |
| Set up | | | x |
| Periodic | | | x |
| Close out | | | x |
| Other: | | | |
| Other: | | | |

**19. POSSESSION.** Possession of the Property (subject to the rights of tenants under the Existing Leases) and keys to the Property shall be delivered by Seller to Buyer at the Closing.

**20. DEFAULT AND REMEDIES.** Before exercising any remedy, the non-defaulting party shall give the defaulting party **five (5) days** written notice specifying the default, and the defaulting party shall be permitted to cure the default in such period. If a default occurs under this Agreement, then this Agreement may be terminated at the option of the non-defaulting party. If the non-defaulting party elects to treat this Agreement as terminated, the Earnest Money and all

NMAR Form 1201 (2021 JAN)    ©2021 New Mexico Association of REALTORS®    Buyer's Initials _____
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeBarrera.



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021



accrued interest thereon, shall be delivered to the non-defaulting party and the non-defaulting party may pursue any additional remedies available at law, in equity or otherwise. In the event, however, the non-defaulting party elects to treat this Agreement as being in full force and effect, the non-defaulting party shall have the right to specific performance. Buyer and Seller acknowledge and agree that Broker(s) will not in any circumstance be responsible for any breach by either party under this Agreement.

21. **ATTORNEY FEES AND COSTS.** Should any aspect of this Agreement result in dispute, litigation, or settlement, the prevailing party of such action including all Brokers involved in the transaction, shall be entitled to an award of reasonable attorneys' fees and court costs.

22. **DISCLAIMERS.** Buyer acknowledges that it is acquiring the Property based on Buyer's own review and inspection. Buyer is acquiring the Property "AS IS" and "WITH ALL FAULTS". Except as expressly provided in this Agreement, Seller makes no representation, warranty, inducement, promise, agreement or assurance regarding the Property, including but not limited to any warranty or representation as to condition, compliance with laws, zoning, water, soil, access size, marketability, value, future value, utilities, occupancy, or otherwise. ALL IMPLIED WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF HABITABILITY, MERCHANTABILITY, AND/OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED. Buyer acknowledges that it is not relying upon any representation or warranty by any Broker.

23. **REAL ESTATE BROKERS.** The parties acknowledge that the Broker(s) are the procuring cause of this Agreement. The parties acknowledge that the specific relationship(s) of Buyer and Seller with such Broker(s) has been established pursuant to separate written agreement. This Agreement shall serve as an irrevocable instruction to Title Company to pay such real estate brokerage fee, including applicable Gross Receipts Tax thereon, to Broker(s) from the Closing. Other than Seller's obligations to the Broker(s) as set forth above, Buyer and Seller represent to each other that they have had no dealings with any other broker, or agent, and that no person or entity, other than the Broker(s) has any claim for a fee or commission in conjunction with the sale covered by this Agreement. Each party indemnifies and agrees to defend the other party from any and all costs and liabilities arising from any breach of any representation contained in this paragraph.

24. **BROKER'S COMPENSATION.**
   A. ☐ Listing Broker to be paid per Listing Agreement; Selling Broker(s) to be paid per offer of compensation made through Multiple Listing Service.
   B. ☐ Listing Broker to be paid at closing a compensation of _____**N/A**_____% plus applicable New Mexico Gross Receipts Tax to be paid by_____**N/A**_____. Selling Broker to be paid at closing a sales compensation of ___**N/A**___% plus applicable New Mexico Gross Receipts Tax to be paid by _____. Other instructions: _____
   _____.

25. **FURTHER ACTION.** Buyer and Seller agree to take such other and further action, and execute such additional documents, as are reasonably necessary to consummate the sale pursuant to this Agreement or which are reasonably required by the Title Company in conjunction with the Closing.

26. **BACK UP OFFERS.** Buyer agrees that until such time as Buyer has approved the condition of the Property or waived any contingency of Buyer set forth in this Agreement, Seller may solicit and/or accept back-up offers to purchase the Property.

27. **NOTICES.** Any notice required or permitted to be given under this Agreement shall be in writing and may be either personally delivered, sent by recognized overnight courier (for next day delivery) or mailed, postage prepaid, or by any method where there is evidence of receipt addressed to the parties and the Brokers at their respective addresses set forth in this Agreement. If any notice is personally delivered, it shall be deemed given upon delivery. If any notice is sent by recognized overnight courier, it shall be deemed given upon delivery by the courier. If any notice is mailed, it shall be

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeHerrera.

**TRANSACTIONS**
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
# PURCHASE AGREEMENT – COMMERCIAL – 2021



deemed given three (3) business days after deposit in the United States mail. A party may change its address for notices by sending a notice to the other party pursuant to the terms of this Paragraph. FACSIMILE AND EMAIL COMMUNICATIONS MAY NOT BE USED FOR NOTICES PURSUANT TO THIS AGREEMENT.

28. **AUTHORITY.** Each party signing this Agreement represents and warrants to the other party that it has full legal power, authority and right to execute, deliver and perform the obligations under this Agreement. Each party represents and warrants to the other party that the transactions contemplated by this Agreement and each person signing this Agreement and/or any document at the Closing has been duly authorized by all requisite action and that no remaining action or third-party consent is required. If Seller is an entity, Seller represents and warrants to Buyer that it is duly formed, validly existing and in good standing under the laws of the State of its organization (as set forth in Paragraph 1) and qualified to do business in New Mexico. If Buyer is an entity, Buyer represents and warrants to Seller that it is duly formed, validly existing and in good standing under the laws of the State of its organization (as set forth in Paragraph 1) and qualified to do business in New Mexico.

29. **AMENDMENT.** This Agreement cannot be amended except as agreed to in writing by the parties.

30. **INVALIDITY.** If any provision of this Agreement is determined to be invalid, ineffective, inoperative, unenforceable, or contrary to law, all of the remaining provisions of this Agreement shall remain in full force and effect.

31. **CONFIDENTIALITY.** Buyer and Seller agree that at all times after the Date of Acceptance and prior to the Closing, unless consented to in writing by the other party or required by law, no party shall issue a press release or other public disclosure concerning the pending sale of the Property. Buyer and Seller agree to notify their employees, agents, contractors and Broker(s) involved in the sale of this confidentiality provision. No memorandum or other document referencing this Agreement shall be recorded.

32. **ATTORNEY REVIEW.** Buyer and Seller each acknowledge and agree that this Agreement is a legally binding document and that each party has had a full opportunity to have its respective attorney review, revise and negotiate this Agreement. Consequently, neither party shall be deemed to have had the responsibility of drafting this Agreement if this Agreement at any time is construed or interpreted.

33. **GOVERNING LAW AND VENUE.** This Agreement is to be construed in accordance with and governed by the internal laws of the State of New Mexico without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of New Mexico to the rights and duties of the parties. Each party hereby irrevocably consents to the jurisdiction and venue of the state and federal courts located in the county in which the Property or any portion of the Property is located in connection with any claim, action, suit, or proceeding relating to this Agreement and agrees that all suits or proceedings relating to this Agreement shall be brought only in such courts.

34. **WAIVER.** No waiver or failure by any party to enforce any breach of this Agreement shall be considered to be a waiver of any subsequent breach, regardless of the time, nature or form of the subsequent breach. All waivers must be in writing to be effective.

35. **ENTIRE AGREEMENT.** This Agreement (including all exhibits and addenda) and the Property Disclosure Statement covering the Property constitute a fully integrated document and represent the entire understanding and agreement between Buyer and Seller regarding the Property. All prior discussions, events, or representations, warranties and agreements regarding the Property are hereby superseded and replaced by this Agreement. The parties to this Agreement affirm that the terms and provisions of this Agreement accurately reflect their intent. All exhibits and addenda to this Agreement are incorporated into this Agreement as operative provisions.

NMAR Form 1301 (2021 JAN) © 2020 New Mexico Association of REALTORS® Buyer ( ) ( ) Page 19 of 39
This copyright protected form was created using Instanet Forms and is licensed for use by Rosa M DeHerrera.



**36. TIME OF THE ESSENCE.** Time is of the essence under this Agreement.

**37. CAPTIONS AND DEFINED TERMS.** The headings and captions contained in this Agreement are for convenience and reference purposes only and shall not define, limit or otherwise affect the terms and conditions of this Agreement. Capitalized words shall have the definition specified in this Agreement, including the definitions set forth in the "Terms" Paragraph.

**38. SEVERABILITY.** If any portion of this Agreement is found by any court of competent jurisdiction to be invalid or unenforceable, the remainder of this Agreement shall remain in full force and effect.

**39. CONSENT TO THE ELECTRONIC TRANSMISSION OF DOCUMENTS AND TO THE USE OF ELECTRONIC SIGNATURES.** The parties ☑ do ☐ do not consent to conduct any business related to and/or required under this Agreement by electronic means, including, but not limited to the receipt of electronic records and the use of electronic signatures. Subject to applicable law, electronic signatures shall have the same legal validity and effect as original hand-written signatures. Nothing herein prohibits the parties from conducting business by non- electronic means. If a party has consented to receive records electronically and/or to the use of electronic signatures, that party may withdraw consent at any point in the transaction by delivering written notice to the other party.

**40. ASSIGNMENT.** Buyer ☐ may ☑ may not sell, assign or transfer the Buyer's rights or obligations under this Agreement, or any interest herein.

**41. MULTIPLE BUYERS.** Each Buyer to this Agreement is jointly and severally liable for all obligations under this Agreement. In the event any buyer should be unable to perform under this Agreement (due to death or incapacity), the remaining Buyer(s) shall continue to be obligated under this Agreement.

**42. DURATION.** If this Agreement is not fully executed by both Buyer and Seller on or before the Offer Expiration Date, the offer evidenced by this partially executed document shall be automatically withdrawn. In such event, all Earnest Money that already has been deposited with the Title Company, and all accrued interest, shall be delivered to Buyer.

**43. COUNTERPARTS.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one (1) document.

**44. FOREIGN SELLERS.** The Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) requires buyers who purchase real property from foreign sellers to withhold fifteen percent (15%) of the amount realized from the sale of the real property for remittance to the Internal Revenue Service (IRS). In the event the seller(s) is **NOT** a foreign person, FIRPTA requires the buyer to obtain proof of the seller's non-foreign status in order to avoid withholding requirements. Exceptions may apply. For more information, refer to NMAR Form 2304 – Information Sheet – FIRPTA & Taxation of Foreign Persons Receiving Rental Income from U.S. Property.

Prior to or at closing, Seller(s) shall provide to Buyer or to a Qualified Substitute (generally, the Title Company) either a Non-Foreign Seller Affidavit(s) **OR** a letter from the IRS indicating Seller(s) is exempt from withholding. In the event Seller(s) fails to do so, Buyer shall have the right to withhold fifteen percent (15%) of the amount realized from the sale of the Property for remittance to the IRS.

NMAR Form 2020-t11  Page 001753  Filed 03/04/21  Buyer 20/39
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie N DeHerrera

TRANSACTIONS
TransactionDesk Edition



# NEW MEXICO ASSOCIATION OF REALTORS®
## PURCHASE AGREEMENT – COMMERCIAL – 2021


EQUAL HOUSING
OPPORTUNITY

**WIRE FRAUD ALERT: Criminals are hacking email accounts of real estate agents, title companies, settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to the account of the criminal. The emails look legitimate, but they are not. Buyer and Seller are advised not to wire any funds without personally speaking with the intended recipient of the wire to confirm the routing number and the account number. Buyer and Seller should not send personal information such as social security numbers, bank account numbers and credit card numbers except through secured email or personal delivery to the intended recipient.**

Buyer _____

## OFFER BY BUYER

Buyer acknowledges that Buyer has read the entire Purchase Agreement and understands the provisions thereof.

| | | |
|---|---|---|
| *Judy Steen* | 4/8/2021 | 3:18 |
| Buyer Signature | Date | Time |

| | | |
|---|---|---|
| | | |
| Buyer Signature | Date | Time |

| | |
|---|---|
| Judy Steen | judy_v72@yahoo.com |
| Buyer Name (Print | Email Address |

| | |
|---|---|
| a single person | |
| Buyer Name (Print | Email Address |

| | | | |
|---|---|---|---|
| 721 Miera Street | Clayton | NM | 88415 |
| Buyer Address | City | State | Zip Code |

| | | | |
|---|---|---|---|
| | 575-374-4130 | | |
| Buyer Home Phone | Buyer Cell Phone | Buyer Business Phone | Buyer Fax |

NMAR Form 3701 (2021 JAN)   Page 11 of 12   ©2008 © New Mexico Association of REALTORS®
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeHerrera.

TRANSACTIONS
TransactionDesk Edition

# REALTORS® ASSOCIATION OF NEW MEXICO
## PURCHASE AGREEMENT – COMMERCIAL – 2021

Seller acknowledges that Seller has read the entire Purchase Agreement and understands the provisions thereof. Seller *(select one):*

---

☑ **SELLER ACCEPTS** this Offer and agrees to sell the Property for the price and on the terms and conditions specified in this Agreement.

<div align="center"><strong>SELLER</strong></div>

| | | |
|---|---|---|
| _(signature)_ | 4/29/21 | 10 am |
| Seller Signature | Offer Date | Time |

| | | |
|---|---|---|
| Seller Signature | Offer Date | Time |

Roman Catholic Church of the Archdiocese of Santa Fe

| | |
|---|---|
| Seller Name (Print | Email Address |

| | |
|---|---|
| Seller Name (Print | Email Address |

| | | | |
|---|---|---|---|
| 4000 St. Joseph's Pl. NW | Albuquerque | NM | 87120 |
| Seller Address | City | State | Zip Code |

| | | | |
|---|---|---|---|
| #505-831-8100 | | | |
| Seller Home Phone | Seller Cell Phone | Seller Business Phone | Seller Fax |

---

☐ **REJECTS & SUBMITS** a Counteroffer (NMAR Form 5102).

☐ **REJECTS & SUBMITS** an Invitation to Offer (NMAR Form 5103).

**IF SELLER IS REJECTING THIS OFFER AND SUBMITTING A COUNTER OFFER, OR IS REJECTING THIS OFFER AND SUBMITTING AN INVITATION TO OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT, BUT SHOULD INITIAL ALL PAGES.**

**INITIALS: SELLER _____  _____**

---

☐ **REJECTS** this offer.

**IF SELLER IS REJECTING THIS OFFER, SELLER SHOULD NOT SIGN THIS AGREEMENT AND DOES NOT NEED TO INITIAL ANY/ALL PAGES**

**INITIALS: SELLER _____  _____**

---

act should fill in the date).

NMAR Form 3101 (2021 JAN)    Page 12 of 12    ©2008 © New Mexico Association of REALTORS®
This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M DeHerrera.

TRANSACTIONS
TransactionDesk Edition

ADDENDUM
SELLER'S DISCLOSURE AND HOLD HARMLESS

SELLER'S DISCLOSURE:

The seller of the above property is a non profit church, who acquired the property through means of a Warranty Deed which was gifted. Seller has never occupied the property, therefore, the seller will not provide a property disclosure statement on the property.

**The seller strongly recommends the buyer conduct their own due diligence on the property for their protection and to satisfy any concerns on the property.**

Purchaser is purchasing the property in its existing condition without any warranties by seller as to condition, size, location and suitability of the buyer.

By reason of the foregoing, the undersigned seller and/or purchasers do hereby agree to waive, release and forfeit any and all claims, suits, damages or other actions at law or equity for losses of any kind of nature, which may indemnify the sellers and to hold harmless from all such claims, losses, damages or suits of any kind or nature, and do further expressly release the aforementioned from any and all liability absolutely and forever.

**SELLER:**
**Roman Catholic Church of the**
**Archdiocese of Santa Fe**

*Meubh*

*Chancellon*

Date: 4/29/21

**PURCHASERS:**
*Judy Steen*

Date: 4/8/2021

the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt. Rev C. C. Schoeppner
Notary Public

(SEAL)

My commission expires Feb. 16, 1959.

- - - - - - - - - -

## WARRANTY DEED

State of New Mexico }
County of UNION }
I hereby certify that this instrument was filed for record on the
3 day of May A. D.
19 57, at 1:00 o'clock P. M.
and was duly recorded in Book
41 Page 501
Records of said County.
Witness my hand and seal of office
Alice Comes County Clerk.
Per Maxine Dotonilova Deputy

EDWIN V. BYRNE, the present Roman Catholic Archbishop of the Diocese of Santa Fe, for consideration paid, grants to the Roman Catholic Church of the Archdiocese of Santa Fe, a corporation sole, the following described real estate in Union County, New Mexico:

The Northeast Quarter of Block Twenty (20) being Lots One (1), two (2) and three (3). Size of lots fifty feet (50) by one hundred and forty (140) according to map of the original townsite in book of records in the office of Probate Clerk in Clayton, New Mexico.

The above described property is the same as was conveyed by The School Board of Precinct No. 3 Union County, New Mexico to John Baptist Pitaval, late Roman Catholic Archbishop, on December 9, 1909 by deed recorded December 11, 1909 at 9:00 A.M. in Volume G of Warranty Deeds, page 499 in the office of the Clerk of the Probate Court, Union County, New Mexico.

with warranty covenants.

WITNESS my hand and seal this 30 day of July, 1955.

Edwin V. Byrne (SEAL)
The present Roman Catholic Archbishop of the Diocese of Santa Fe

STATE OF NEW MEXICO )
                      )ss.
County of Santa Fe   )

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, the present Roman Catholic Archbishop of the Diocese of Santa Fe, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt. Rev C. C. Schoeppner
Notary Public

(SEAL)

My commission expires Feb. 16, 1959.

- - - - - - - - - -

## WARRANTY DEED

D.Book
State of New Mexico }
County of UNION }
I hereby certify that this instrument was filed for record on the
3 day of May A. D.
1957, at 1:00 o'clock P. M.
and was duly recorded in Book
41 Page 501
Records of said County.
Witness my hand and seal of office
Alice Comes County Clerk.
Per Maxine Dotonilova Deputy

EDWIN V. BYRNE, Archbishop of Santa Fe, New Mexico, for consideration paid, grants to the Roman Catholic Church of the Archdiocese of Santa Fe, a corporation sole, the following described real estate in Union County, New Mexico:

One acre in the Northwest Quarter of the Northeast Quarter of S. 10, T. 28 N., R. 36 E., N.M.P.M., and bounded and described as follows:

Beginning at a point of the Northeast Corner of S. 10, and measuring Five Hundred sixty (560) yards West to a point on the Section line; thence South Sixty-seven and one-half (67½) yards, thence West Sixty-seven and one-half (67½) yards; thence North Sixty-seven

  

ne-half (67½) yards; thence East, Sixty-seven and one-half (67½) yards, to the point of ning, containing one acre of land, according to the map or plat of said county now on file e office of the County Clerk and Ex-officio Recorder of Union County, New Mexico.

bove described property is the same as was conveyed by Delfin Espinoza and Josefa Espinoza, nd and wife, to J. B. Pitaval, late Archbishop of Santa Fe on February 6, 1915 by Warranty recorded April 14, 1916 in Vol 2, page 45 of Deeds and Conveyances, in the office of the to Clerk of Union County, N.M.

warranty covenants.

WITNESS my hand and seal this 30 day of July, 1955.

Edwin V. Byrne (SEAL)
Archbishop of Santa Fe, N.M.

CF NEW MEXICO )
) ss.
y of Santa Fe )

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, Archbishop of Fe, N.M. to me known to be the person described in and who executed the foregoing ument and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt.Rev C.O.Schoeppner
Notary Public

)

mmission expires Feb. 16, 1959.

- - - - - - - - - - - - - - - - -

of New Mexico } ss.
ty of UNION
by certify that this instru
s filed for record on the
day of May A. D.
4:00 o'clock P. M
duly recorded in Book
Page 502
f said County.
my hand and seal of office
E Combs
County Clerk
ne Doitchinoff
Deputy

WARRANTY DEED

EDWIN V. BYRNE, Archbishop of Santa Fe, N.M., for consideration paid, grants to the Roman Catholic Church of the Archdiocese of Santa Fe, a corporation sole, the following described real estate in Union County, New Mexico:

All of lot Six (6) in Block Seven Hundred Fifty-one (751) in the Town of Grenville, Union County, New Mexico, as shown by the recorded plat thereof.

warranty covenants.

WITNESS my hand and seal this 30 day of July, 1955.

Edwin V. Byrne (SEAL)
Archbishop of Santa Fe, N.M.

OF NEW MEXICO )
)SS.
y of Santa Fe )

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, Archbishop nta Fe, N.M. to me known to be the person described in and who executed the foregoing ument and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt Rev C. C. Schoeppner
Notary Public

mmission expires Feb. 16, 1959.

- - - - - - - - - - - - - - - - -

f New Mexico } ss.
y of UNION
y certify that this instru
filed for record on the
ay of May A. D.
4:00 o'clock P. M
duly recorded in Book
Page 502
said County.
y hand and seal of office
Combs
County Clerk
ne Doitchinoff Deputy

WARRANTY DEED

EDWIN V. BYRNE, the present Roman Catholic Archbishop of the Archdiocese of Santa Fe, for consideration paid, grants to the Roman Catholic Church of the Archdiocese of Santa Fe, a corporation sole, the following described real estate in Union County, New Mexico:

Lot Eight (8) in Block Seven Hundred Fifty-one (751) in the Town of Grenville, Union County, New Mexico.

arranty covenants.

# REALTORS® ASSOCIATION OF NEW MEXICO
# FIRPTA - AFFIDAVIT -- NON-FOREIGN SELLER - 2020

**NOTICE TO SELLER: If you need any assistance to understand the Foreign Investment in Real Property Act and its application to you, please consult with your own tax advisor. Real estate Brokers are not permitted to give advice with respect to such matters.**

Section 1445 of the Internal Revenue Code provides that a Buyer of United States real property must withhold tax if Seller is a foreign person. To inform Buyer that withholding of tax is not required upon the disposition of the Property described below, the undersigned Seller executes this Affidavit. Seller understands that this certification may be disclosed to the Internal Revenue Service by Buyer and that any false statement may be punished by fine, imprisonment or both.

This Affidavit is executed in connection with the sale of the following Property:

| 1804 Kenton Highway- Moses Church | Seneca, NM 88437 | |
|---|---|---|
| Address | City | Zip Code |

See Attached Deed-A 1 Acre Tract in the NW4NE4 of Section 10, T28N, R37E Union County
Legal Description

or see metes and bounds description attached as Exhibit __A__ , _____ Union _____ County, New Mexico.

## INDIVIDUAL SELLER

1. I am not a Foreign Person for purposes of United States income taxation.

2. My United States taxpayer identification number (Social Security Number) is: _____

3. My home address is: _____

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief, it is true, correct, and complete.

Name of Individual Seller _____

Signature _____

Date _____ Time _____

This form and all REALTORS® Association of New Mexico (RANM) forms are for the sole use of RANM members and those New Mexico Real Estate Licensees to whom RANM has granted prior written authorization. Distribution of RANM forms to non-RANM members or unauthorized Real Estate Licensees is strictly prohibited. RANM makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release RANM, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

This copyright protected form was created using Instanet Forms and is licensed for use by Rosie M

Case 18-13027-t11    Doc 753    Filed 08/04/21    Entered 08/04/21 10:53:58 Page 26 of 39

## REALTORS® ASSOCIATION OF NEW MEXICO
## FIRPTA - AFFIDAVIT -- NON-FOREIGN SELLER - 2020

### ENTITY SELLER

1. _____ Roman Catholic Church of the _____ Archdiocese of Santa Fe _____ ("Seller") is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations).

2. Seller's United States employer identification number is _85-600 9986_

3. Seller's office address is _____ 4000 St. Joseph's Pl. NW _____
Albuquerque, NM 87120

4. If a corporation, Seller's place of incorporation is _New Mexico_
Under penalties of perjury, I declare that to the best of my knowledge and belief, the statements in this Affidavit are true, correct, and complete, and that I have authority to sign this document on behalf of Seller.

Name of Entity _____ Roman Catholic Church of the Archdiocese of Santa Fe _____

By _____ Thomas P. Macken _____

Its _Chancellor_

Date _____ Time _____

Buyer or Qualified Substitute, as applicable, must retain this Affidavit and make it available to the Internal Revenue Service upon request.

**NOTICE TO SELLER OR BUYER:** An affidavit should be signed by each individual or entity seller to whom or to which it applies. Any questions relating to the legal sufficiency of this form, or to whether it applies to a particular transaction, or to the definition of any of the terms used, should be referred to a certified public accountant, attorney, or other professional tax advisor, or to the Internal Revenue Service.

Received by ☑ Buyer ☐ Qualified Substitute

_Judy Steen_                                        4/8/2021   3:18
Signature                                              Date        Time

  

## NEW MEXICO ASSOCIATION OF REALTORS®
## EXTENSION AGREEMENT AMENDMENT NO. _____1_____ - 2020

With respect to the Purchase Agreement: ☐ Residential ☑ Commercial ☐ Vacant Land ☐ Farm and Ranch
dated_____April_____ 6_____, 2021 between

_____Judy Steen_____ ___a single person_____ ("Buyer")

and__Roman Catholic Church of the Archdiocese of_____Santa Fe_____ ("Seller")

and relating to the purchase of the following Property:

__1804  Kenton Highway- Moses Church_____ Seneca, NM 88437_____
Address                                                      City                        Zip Code

See Attached Deed-A 1 Acre Tract in the NW4NE4 of Section 10, T28N, R37E Union County
Legal Description

or see metes and bounds description attached as Exhibit_____,_____ Union_____ County, New Mexico.

It is hereby understood and agreed that the Settlement/Signing Date shall be extended from _____May 07, 2021_____
to _____July 30, 2021_____

Other dates set forth in the Purchase Agreement will be as follows:

Funding Date _____July_____ 30_____ 2021_____

Possession Date_____July_____ 30_____ 2021____,____5:00_____ ☐ am ☑ pm

Other:
Offer expiration date is hereby extended from April 13, 2021, to May 10, 2021, to allow the
Archdiocese time to review and accept the purchase offer.

Purchase agreement is subject to review and approval of the U.S. Bankruptcy Court and buyer
understands this process may require additional time.

This form and all New Mexico Association of REALTORS® (NMAR) forms are for the sole use of NMAR members and those New Mexico Real Estate Licensees to whom NMAR has granted prior written authorization. Distribution of NMAR forms to non-NMAR members or unauthorized Real Estate Licensees is strictly prohibited. NMAR makes no warranty of the legal effectiveness or validity of this form and disclaims any liability for damages resulting from its use. By use of this form, the parties agree to the limitations set forth in this paragraph. The parties hereby release NMAR, the Real Estate Brokers, their Agents and employees from any liability arising out of the use of this form. You should consult your attorney with regards to the effectiveness, validity or consequences of any use of this form. The use of this form is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by Real Estate Licensees who are members of the National Association of REALTORS® and who subscribe to the Association's strict Code of Ethics.

NMAR Form 5104 (2020 JAN)  Page 1 of 2          ©2005 New Mexico Association of REALTORS®          Initials: Buyer_____ Seller_____

# NEW MEXICO ASSOCIATION OF REALTORS®
## EXTENSION AGREEMENT AMENDMENT NO._____ 1 _____ - 2020

Reasons for extension:
Purchaser has been advised the Archdiocese of Santa Fe is under a Chapter 11 Reorganization Bankruptcy plan and any sale by the Archdiocese properties must be approved by the Bankruptcy Court. This process may require additional time before being able to complete this purchase. By signing below, Purchaser hereby agrees to the extension of closing and required time and conditions as approved by the bankruptcy court.

All other terms and conditions of the Purchase Agreement remain the same.

| | | | |
|---|---|---|---|
| Buyer Signature | Judy Steen | 4/28/21 Date | 5:28 pm Time |
| Buyer Signature | a single person | Date | Time |
| Seller Signature | Roman Catholic Church of the Archdiocese | 4/29/21 Date | 10 aM Time |
| Seller Signature | of Santa Fe | Date | Time |

NMAR Form 5104 (2020 JAN) Page 2 of 2          ©2005 New Mexico Association of REALTORS®

This copyrighted form was created using Instanet Forms and is licensed for use by Instanet Forms

## ADDENDUM NO. 2 TO PURCHASE AGREEMENT

Addendum No. 2 to Purchase Agreement ("Purchase Agreement") between Roman Catholic Church of the Archdiocese of Santa Fe (Seller) and Judy Steen (Buyer) for the Property identified as the "Moses Church" whose address is 1804 Kenton Highway, Seneca, NM 88437, more particularly described in the Purchase Agreement.

1. The Seller is a New Mexico corporation sole and is the debtor in possession in the chapter 11 bankruptcy case no. 18-13027-t11 pending before the United States Bankruptcy Court for the District of New Mexico (the "Court").
2. The Purchase Agreement and sale of the Property is subject to approval by the Court after motion and notice and, if not approved, is null and void, with neither party having liability to the other. Court approval is a condition of Seller performance under the Purchase Agreement.
3. Purchase Agreement Paragraph 12.A. is subject to Court approval.
4. Paragraphs 12.B, C, E, H, I, K, M, N, and O are deleted in their entirety.
5. Seller has not engaged a real estate broker in this transaction and is not responsible for any brokerage commission.
6. Seller's representations and warranties in Purchase Agreement Paragraph 28 are subject to Court approval.
7. Paragraph 33 is modified to provide that the Court shall have exclusive jurisdiction over this Agreement and any disputes between the parties relating to the Agreement.
8. Notwithstanding anything to the contrary in the Purchase Agreement, the Purchase Agreement may be modified by the Court's order approving the Purchase Agreement and Sale of the Property.

Agreed:

Seller:
Roman Catholic Church of the Archdiocese of Santa Fe
A New Mexico corporation sole

By _____     6/15/21
                                      Date

Buyer:

_____     7/14/21
Judy Steen                        Date



**Big Country Realty**
P. O. Box 246
Clayton, New Mexico 88415
Tel#575-374-2444

## Subject Property:

The subject property is owned by the Roman Catholic Church of the Archdiocese of Santa Fe. The property consists of a 1 Acre(m/l) parcel. Improvements include an old Rock Building with approximately 1,664SF inside. Property is located approximately 20 miles Northeast of Clayton, NM. Physical address is 1804 Kenton Hwy, Moses Church, Seneca, NM 88437.

## Legal Description:

A One Acre (m/l) tract in the NW4SE4 of Section 10, Township 28N, Range 36E in Union County, New Mexico, as identified in Warranty Deed filed in Book 41, Page 501-502 recorded on January 1, 1957.

**Rock Building**: The building has old wood floors and stucco interior walls. It was previously used a hay barn, later converted to a mission church in the late 1950's early 1960's. As I understand, several families got together to convert the building to an old mission church. These families and their descendants have maintained the property all these years. There is a potbelly stove for the heat source and no water, gas or electricity is in the building. It is a wood frame construction with a rock exterior. No bathroom facilities in the building. Old tin roof with a church steeple that needs to be property secured. This building needs new windows and maintenance on the outside rock façade.

**Land usage**: This property could be converted back to a hay or storage barn for the land owner surrounding this area. This would be the highest and best use for the building and 1 acre. It basically could not be marketed, as it sits within the boundaries of one land owner.

## Comparable sales:

No comparable sales or listings are available for the rock building. Acreage is selling from $250 to $500, depending on the improvements on the land, such as a well. We have given this acre a value of $250, as there are no utilities available on this location at this time.

## Market Condition:

Union County is located in the Northeast corner of New Mexico and has a population of approximately 4,550. The county borders the states of Colorado, Oklahoma and Texas. Union County is a ranching community and well suited for cattle ranching and some small scale farming. Tourism and Agriculture production have been the major economic force in the county for many years. The townsite of Clayton has a population of approximately 2700, with the largest employment being a 600 bed detention facility

**Moses Mission**





**Resume:**

Rosie DeHerrera is the Broker/Owner of Big Country Realty in Clayton, New Mexico, since 2005. She has 25 Years of prior banking experience and 20 years experience in the real estate brokerage business within the State of New Mexico. Rosie has a real estate license in New Mexico and Oklahoma.



```
Owner # 0001281          Dist 1OUT   |    V A L U A T I O N    R E C A P
Non-Rend$  0                         |      0 Central        5580 Full Value
CHURCH, ROMAN CATHOLIC               |   1590 Land
                                     |   3990 Improvements    1860 Taxable Value
                                     |      0 Personal Prop   1860 Exemptions
                                     |      0 Mfg Home
SENECA             NM 88437          |      0 Livestock          0 Net Taxable
```

| Property Description | Code | Value Description | Quantity | Rate | Taxable |
|---|---|---|---|---|---|
| | 007 | OTHER EXEMPT N/R | | | 1860 |
| 2 000 001 281 001 | 104 | SUBDIVIDED LAND | | | 30 |
| BOOK C PG 291 | | | | | |
| SECTION-08  TOWNSHIP-20N  RANGE-36E | | | | | |
| A TR. OF LAND 209' X 418' | | | | | |
| UNDISCRIBED LOCATION CEMETERY | | | | | |
| | | | | | |
| 1 214 167 350 508 | 111 | RES LAND UNDER 10 | 1.00 | 500.00 | 500 |
| 1804 KENTON HWY | 230 | COMMERCIAL BUILDING | | | 1330 |
| BOOK 41 PG 501 01/01/57 | | | | | |
| SECTION 10  TOWNSHIP-28N  RANGE-36E | | | | | |
| 1 AC. IN NW4SE4, LESS .14 R/W | | | | | |
| MOSES CHURCH | | | | | |

```
                    TOTAL ACRES           1.00
                              N/R-Values Full       5580
                              N/R-Values Taxable     1860
                              N/R Values Exempt       1860
                              N/R-Values Net             0
```

# NEW MEXICO UNIFORM PROPERTY RECORD CARD
## RESIDENTIAL

San Juan Done 70cm 9665:

| Property Address: 1804 Kiveton Hwy. | | County: Union | Date No. 1-274-167-350-508 | | School Dist: 1 Oct Card No. 1 of 1 |
|---|---|---|---|---|---|

**Owner:** Roman Catholic Church
Senica, NM 88437
(Moses Church)

Bk 41 Pg. 501
1-1-57

**Address**

**Legal Description**
1 Ac Tract of Sec. 10
TWP. 28N, RGE 36 E

| New Owner | | Date | Br. | Pg. | Considerati |
|---|---|---|---|---|---|

## PROPERTY INFORMATION

| TOPO | STREET | | NOTES |
|---|---|---|---|
| Level | Asphalt | | |
| High | Concrete | | |
| Low | Semi Impro. | | |
| Rolling | Dirt | | |
| ZONING | Curb | | |
| Res. | Sidewalk | | |
| Apart. | IMPRO. | | |
| Comm. | Gas | | |
| Light Indt. | Water | | |
| | Sewer | | |
| | Elect. | | |

## LAND VALUE COMPUTATIONS AND SUMMARY

| | Classified | FRONTAGE Index | DEPTH | UNIT VAL. | COEF | UNIT VAL. |
|---|---|---|---|---|---|---|
| Name | N/R | 1.00 | | 1500 | | 1500 |
| Address | | | | | | |
| Name | | | | | | |
| Address | | | | | | |
| Name | | | | | | |
| Address | | | | | | |
| | Homesite | | | | | |
| | Tillable Land | | | | | |
| | Tillable Land | | | | | |
| | Pasture | | | | | |
| | Woodland | | | | | |
| | Waste Land | | | | | |

## APARTMENT RENT CAPITALIZATION

Gross Annual Income
Less. Oper. Exp.
Net Income
Cap. Rate
Cap. Val.

## RESIDENTIAL GROSS RENT MULTIPLIER

Sale Price ÷ Rent = GRM.
Use GRM For Area Only

| Rent | | Sale Price |
|---|---|---|
| Rent | | |
| x GRM | | |
| Value | | |
| Value=Equals | | = Ratio |
| Land | | |

## Flat Expense Items

| | |
|---|---|
| Land | |
| Vacancy | |
| Utilities | |
| Janitor | |
| Management | |
| Total Oper. Exp. | |

## ASSESSMENT SUMMARY

| | | | | | |
|---|---|---|---|---|---|
| Land Value | | | | | |
| Improvements | | | | | |
| Total | | | | | |

Case 18-13027-t11   Doc 753   Filed 08/04/21   Entered 08/04/21 10:53:58 Page 35 of 39

# BUILDING INFORMATION

| OWNER | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Story Hgt. | Yr. Built | Bed Rooms | Remodeled | Both Rooms | | | | | | |

| Total Rooms | 1 | 2 | 3 | 4 | B | 1 | 2 | 3 | 4 | 6 | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|---|---|---|---|---|

## TYPE AND USE
- 1 Family Dwelling
- 2 Family Dwelling
- Multi-Family Apts.
- Other

## 6. BUILDING:
Dishwasher ___ Disposal ___ Oven
Range ___ Dryer ___ Bookshelves
Cupboards ___ Dryer
Adequate ___ Inadequate
Closets: Adequate ___ Inadequate

**GRADE**

## 1. FOUNDATION: GRADE
- Concrete Blk. ___ Conc.
- Conc. Slab ___ Piers
- Stone ___ Brick Wall

## 7. HEATING: GRADE
- No heat or stove heat
- Hot air; pipeless
- Piped heat (Gravity)
- Forced Circulation
- Steam or Hot Water
- Radiant (Concealed)
- Electric
- Central Air Conditioned

## 2. EXT. WALLS GRADE
Frame With:
- Siding on Sheathing
- Shingle on sheathing
- Single on siding
- Conc. block, Stucco
- Brick, Solid ___ Veneer
- Face ___ Common
- Asbes. Shingled ___
- Stucco'ed ___
- Stone, Solid ___
  - On edge
- Stone, Veneer ___
- Other

## 8. PLUMBING: GRADE
- None Baths, (3) Fixtures
- No. Baths, (3) Fixtures
- No. Toilet Item., 2 Fix.
- No. Single Fixtures
- Electric ___ Hot Water
- City Water and Sewer

## 3. ROOF: GRADE
- Hip, Flat ___ Gable
- Gambrel ___ Mansard
- Roofing: Prepared Roll
- Built-up ___ Asphalt or T&G
- Wood or Comp. Shingle
- Metal ___ Slate or Tile
- Insulation

## 9. ELECTRICITY: GRADE
- Electricity: Yes ___ No
- Adequate Outlets
- Inadequate Outlets

## 4. FLOORS: GRADE
- Softwood
- Hardwood
- Concrete
- Cer. Tile ___ Terra.
- Cer. Tile Baths

## 10. DESIGN: GRADE
- Utility
- Custom Blt. ___ Speculative
- Architectural Design

## 5. INT. FINISH: GRADE
- Wallboard ___ Knotty
- Sheetrock ___ Plaster
- Unfin. ___ Other

## TOTAL ÷ 10 = Av. Grade
BASEMENT: None ___ Full
1/4 ___ 1/2 ___ Finished Rec.
Fireplace
Single Flue
Double Flue ___ Stories

## TOTAL GRADES
- Electricity: Yes ___ No
- Elect.
- Plumbing
- Fixtures ___ Utility ___ Av. ___ Exc. Qual.

NOTES

---

## GROUND PLAN SKETCH    1 SQUARE =    FEET



FRONT

---

**Observed Physical Condition, Effective**

Good ___ Normal ___ Fair ___ Poor
Age ___ Year ___

## BUILDING COMPUTATIONS
### GROUND AREA — SQUARE FEET

| | WIDTH | LENGTH | AREA |
|---|---|---|---|

| | TOTAL GROUND AREA | | |
|---|---|---|---|
| Year | 19 | 19 | 19 |
| Grade | | | |
| Rate | | | |
| Grade Diff. | | | |
| Story Diff. | | | |
| Fireplace | | | |
| Plumbing | | | |
| Heating | | | |
| Garage | | | |
| Total | | | |

| | | C D U | |
|---|---|---|---|
| Etc. | | | % |
| Total | | | |

## SUMMARY OF APPRAISED VALUES
| | | |
|---|---|---|
| Principal Bldg. Appraisal | $ | |
| Other Principal Bldg. Appraisal | $ | |
| Accessory Bldgs. Appraisal | $ | |
| Total Bldg. Appraisal | $ | |
| Total Land Appraisal | $ | |
| TOTAL VALUE | $ | |

---

## DESCRIPTION, REPLACEMENT COST AND APPRAISAL OF FARM BARNS AND ACCESSORY BUILDINGS

| Bldg. Iden. | Class No. | DIMENSIONS | | | Foun- dation | Floor | Roof | Walls | Inside Wall | Heat | Light | Plbg. | Age | Area | Unit Cost | Acde and Deduct. | Net Cond. % | Net Appraisal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Width | Depth | Height | | | | | | | | | | | | | | |

---

Measured by _____ Date _____ Classified by _____ Date _____ Extended by _____ Checked by _____ Date _____ Final Review _____ Date

the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt. Rev C. C. Schoeppner
Notary Public

(SEAL)

My commission expires Feb. 16, 1959.

- - - - - - - - - - -

State of New Mexico
County of UNION
I hereby certify that this instrument was filed for record on the
3 day of May A. D.
19 5 at 4:00 o'clock P. v.
and was duly recorded in Book
41 Page 501
Records of said County.
Witness my hand and seal of office.
Alice Loose County Clerk
Per Maxine Doten Deputy

## WARRANTY DEED

EDWIN V. BYRNE, the present Roman Catholic Archbishop of the
Diocese of Santa Fe, for consideration paid, grants to the
Roman Catholic Church of the Archdiocese of Santa Fe, a
corporation sole, the following described real estate in Union
County, New Mexico:

The Northeast Quarter of Block Twenty (20) being Lots One (1),
two (2) and three (3). Size of lots fifty feet (50) by one
hundred and forty (140) according to map of the original townsi
in book of records in the office of Probate Clerk in Clayton,
New Mexico.

The above described property is the same as was conveyed by The School Board of Precinct
No. 3 Union County, New Mexico to John Baptist Pitaval, late Roman Catholic Archbishop,
on December 9, 1909 by deed recorded December 11, 1909 at 9:00 A.M. in Volume G of
Warranty Deeds, page 499 in the office of the Clerk of the Probate Court, Union County,
New Mexico.

with warranty covenants.

WITNESS my hand and seal this 30 day of July, 1955.

Edwin V. Byrne (SEAL)
The present Roman Catholic Archbishop of the Diocese
of Santa Fe

STATE OF NEW MEXICO )
                     )ss.
County of Santa Fe   )

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, the
present Roman Catholic Archbishop of the Diocese of Santa Fe, to me known to be the person
described in and who executed the foregoing instrument and acknowledged that he executed
the same as his free act and deed.

Witness my hand and seal the day and year last above written.

Rt. Rev C. C. Schoeppner
Notary Public

(SEAL)

My commission expires Feb. 16, 1959.

- - - - - - - - - - - - -

State of New Mexico
County of UNION
I hereby certify that this instrument was filed for record on the
3 day of A. D.
19 at 4:00 o'clock M
and was duly recorded in Book
41 Page 501
Records of said County.
Witness my hand and seal of office.
Alice Loose County Clerk
Per Maxine Doten Deputy

DBook

## WARRANTY DEED

EDWIN V. BYRNE, Archbishop of Santa Fe, New Mexico, for
consideration paid, grants to the Roman Catholic Church of the
Archdiocese of Santa Fe, a corporation sole, the following
described real estate in Union County, New Mexico:

One acre in the Northwest Quarter of the Northeast Quarter of
S. 10, T. 28 N., R. 36 E., N.M.P.M., and bounded and described
as follows:

Beginning at a point of the Northeast Corner of S. 10, and measuring Five hundred sixty
(560) yards West to a point on the Section line; thence South Sixty-seven and one-half

ne-half (67½) yards; thence East, Sixty-seven and one-half (67½) yards, to the point of

ning, containing one acre of land, according to the map or plat of said county now on file

s office of the County Clerk and Ex-officio Recorder of Union County, New Mexico.

bove described property is the same as was conveyed by Delfin Espinoza and Josefa Espinoza,

nd and wife, to J. B. Pitaval, late Archbishop of Santa Fe on February 6, 1915 by Warranty

recorded April 14, 1916 in Vol 2, page 45 of Deeds and Conveyances, in the office of the

te Clerk of Union County, N.M.

warranty covenants.

WITNESS my hand and seal this 30 day of July. 1955.

<div style="text-align:right">

Edwin V. Byrne    (SEAL)

Archbishop of Santa Fe, N.M.

</div>

CF NEW MEXICO  }
            } ss.
y of Santa Fe  }

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, Archbishop of

Fe, N.M. to me known to be the person described in and who executed the foregoing

ment and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal the day and year last above written.

<div style="text-align:right">

Rt.Rev C.C.Schoeppner
Notary Public

</div>

mmission expires Feb. 16, 1959.

- - - - - - - - - - - - - - - -

## WARRANTY DEED

EDWIN V. BYRNE, Archbishop of Santa Fe, N.M., for consideration paid,

grants to the Roman Catholic Church of the Archdiocese of Santa Fe,

a corporation sole, the following described real estate in Union

County, New Mexico:

All of Lot Six (6) in Block Seven Hundred Fifty-one (751) in the

Town of Grenville, Union County, New Mexico, as shown by the

recorded plat thereof.

warranty covenants.

WITNESS my hand and seal this 30 day of July, 1955.

<div style="text-align:right">

Edwin V. Byrne   (SEAL)
Archbishop of Santa Fe, N.M.

</div>

CF NEW MEXICO  }
            }ss.
f Santa Fe  }

On this 30 day of July, 1955, before me personally appeared EDWIN V. BYRNE, Archbishop

ta Fe, N.M. to me known to be the person described in and who executed the foregoing

ment and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal the day and year last above written.

<div style="text-align:right">

Rt Rev C. C. Schoeppner
Notary Public

</div>

mmission expires Feb. 16, 1959.

- - - - - - - - - - - - - - - -

## WARRANTY DEED

EDWIN V. BYRNE, the present Roman Catholic Archbishop of the Archdiocese

of Santa Fe, for consideration paid, grants to the Roman Catholic

Church of the Archdiocese of Santa Fe, a corporation sole, the

following described real estate in Union County, New Mexico:

Lot Eight (8) in Block Seven Hundred Fifty-one (751) in the Town of

Grenville, Union County, New Mexico.

