# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF                    Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

    Debtor.

## **OPINION**

    A claimant in this bankruptcy case, whose identity is confidential, alleges that Father Patrick Hough molested him when he was a teenager. Fr. Hough vehemently denies the allegation and wants to clear his name; he cannot pursue his vocation until the allegations against him are withdrawn or proven false. To achieve the latter, Fr. Hough has moved for leave to object to Claimant's proof of claim, with the goal of disproving the allegations at a final hearing on the claim objection. Claimant and the Debtor object, arguing that Fr. Hough lacks standing to object and hat allowing him to do so is not in the best interests of the estate. The parties have asked the Court to rule without a final, evidentiary hearing. Being sufficiently advised, the Court concludes that Fr. Hough's motion is not well taken and should be denied.

A.    <u>Facts</u>.

    For the limited purpose of ruling on Fr. Hough's motion, the Court assumes that the following facts, taken from his motion or the Court's docket, are true:[1]

    Fr. Hough is a Catholic priest, ordained in 2011. Since 2002, when he became associated with the Society of Jesus religious order, he has devoted his career to teaching. Fr. Hough has dealt

---

[1] The Court takes judicial notice of its docket and of the docket in the state court action involving the Archdiocese and Blea, No. D-101-CV-2018-00893. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

with thousands of students. He has also been actively involved in Catholic high school administration. In 2018 Fr. Hough was working as a development associate for Regis High School in New York City.

On May 31, 2019, Claimant filed a proof of claim in this bankruptcy case (the "Claim"). In the Claim, Claimant asserts that he was sexually abused by Fr. Hough in 2011, when Claimant was 17 years old.

Apart from Claimant, no one has ever accused Fr. Hough of any kind of behavioral impropriety, sexual or otherwise.

On November 15, 2019, about a year after Debtor filed this case, Claimant filed suit in the Second Judicial District Court for Bernalillo County, New Mexico against U.S. Central and Southern Province, Society of Jesus ("UCS Province") and Immaculate Conception Parish, the Albuquerque, New Mexico parish where Fr. Hough served in his first assignment after his ordination. The suit is captioned *John Doe 124 v. U.S. Central and Southern Province, Society of Jesus and Immaculate Conception Albuquerque*, No. D-202-cv-201908893 (the "State Court Action"). Fr. Hough is not a defendant in the State Court Action, even though the action is based entirely on Claimant's allegations against Fr. Hough.

On December 3, 2020, the Court entered a stipulated order, submitted by Debtor's counsel and approved by Claimant's counsel, staying the State Court Action. The purpose of the stipulated order was to preserve Debtor's assets, particularly the insurance coverage provided by the Catholic Mutual Relief Society of America, which would have been depleted by the litigation costs and any adverse judgment or settlement.

On the petition date, Fr. Hough was working at Regis High School and serving as an ordained Catholic priest. When the school learned of Claimant's allegations, it first suspended Fr.

Hough and then fired him. At the same time, Fr. Hough's religious superior took away his right to function as a priest until the allegations were either withdrawn or proved false. The UCS Province then assigned Fr. Hough to internal activities where he would not teach or minister to minors.

As evidenced by Regis's firing of Fr. Hough, he is de facto precluded from working in any Catholic school as a teacher or administrator until a determination is made by a competent authority that Claimant's allegations are false. Until then, Fr. Hough will be required to disclose Claimant's allegations as part of any employment process. If the Claim is settled, Fr. Hough would have to disclose that fact. A settlement payment could make it impossible for Fr. Hough to obtain a teaching position or function as a Catholic priest.[2] Objecting to the Claim is one way Fr. Hough could attempt to clear his name of Claimant's accusations.

B.    <u>Claim Objections</u>.

Section 502(a) provides:

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless *a party in interest*, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(Italics added). Debtor has not objected to the Claim and may never do so. Fr. Hough wants to object so he can litigate the claim and, he hopes, get a ruling that he did not abuse Claimant. Claimant and Debtor oppose Fr. Hough's motion, arguing that he is not a party in interest and therefore cannot object to the Claim.

C.    <u>Standing Principles</u>.

Debtor's and Claimant's arguments is premised on § 1109(b), which provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any

---

[2] There is no allegation or evidence that Claimant's allegation caused Fr. Hough financial harm. Rather, the harm appears to be nonmonetary, i.e., the inability to pursue his priestly and pedagogical vocations.

indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

Whether someone is a "party in interest" in a chapter 11 case is a question of standing:

> Standing is composed of 'three distinct doctrines limiting which parties may can bring a claim in federal court.' 33 Charles Allen Wright, Charles H. Koch, Jr., & Richard Murphy, *Federal Practice and Procedure*, § 8332 at 87 (2018). They are constitutional standing, statutory standing, and prudential standing. Article III constitutional standing reflects the restriction of the jurisdiction of federal courts to actual cases or controversies by requiring that a plaintiff show an injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). Statutory standing refers to circumstances when the right to bring an action is conferred by statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). Prudential standing includes the "general prohibition of a litigant's raising another person's legal rights ... and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Id.* at 126, 134 S. Ct. 1377.

*In re Fencepost Prods., Inc.*, 629 B.R. 289, 296 (Bankr. D. Kan. 2021). Thus, coming within § 1109(b) is not enough to establish standing. This point was discussed in *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992):

> [S]ection [1109(b)] was [not] intended to waive other limitations on standing, such as that the claimant be within the class of intended beneficiaries of the statute that he is relying on for his claim, although a literal reading of section 1109(b) would support such an interpretation. We think all the section means is that anyone who has a legally protected interest that could be affected by a bankruptcy proceeding is entitled to assert that interest with respect to any issue to which it pertains, thus making explicit what is implicit in an *in rem* proceeding—that everyone with a claim to the *res* has a right to be heard before the *res* is disposed of since that disposition will extinguish all such claims. Cf. 5 *Collier on Bankruptcy* ¶ 1109.02, at pp. 1109–16 to 1109–32 (Lawrence P. King ed., 15th ed. 1991); *United States v. Tit's Cocktail Lounge,* 873 F.2d 141, 143 (7th Cir.1989) (per curiam).

*See also In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012) ("To have standing in bankruptcy court, Appellants must meet three requirements: (1) they must meet statutory 'party in interest' requirements under § 1109(b) of the bankruptcy code; (2) they must satisfy Article III

constitutional requirements; and (3) they must meet federal court prudential standing requirements.").

1. <u>Statutory Standing</u>. In chapter 11 bankruptcy cases, statutory standing is granted by § 1109(b). Whether a person is a "party in interest" under § 1109(b) is determined on a case by case basis. *In re Kaiser Steel Corp.*, 998 F.2d 783, 788 (10th Cir. 1993), citing *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). The term "is not confined to the list of examples provided in section 1109(b)." *Kaiser Steel*, 998 F.2d at 788. It is "broadly interpreted, but not infinitely expansive." *In re Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1989). "Its meaning in a particular case depends upon the purposes of the Code provision in question." *Martin Paint Stores*, 207 B.R. at 61, citing *Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.),* 698 F.2d 571, 573 (2d Cir. 1983).

"Although . . . § 1109(b) broadly defines a 'party in interest,' the phrase invites interpretation and 'is generally understood to include all persons whose pecuniary interests are[] directly affected by the bankruptcy proceedings.'" *In re Alpex Comput. Corp.*, 71 F.3d 353, 356 (10th Cir. 1995), quoting *Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson)*, 5 F.3d 750, 756 (4th Cir. 1993). In other words, to be a party in interest one must have a financial stake in the reorganization of the debtor. *See, e.g., In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) ("the party requesting standing must either be a creditor of the debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate"); *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011) ("parties in interest typically have a financial stake in the outcome"); *Kaiser Steel*, 998 F.2d at 788 (entities that lacked a financial stake in the outcome of an adversary proceeding were not parties in interest).

2. <u>Constitutional standing</u>. "Article III constitutional standing reflects the restriction of the jurisdiction of federal courts to actual cases or controversies by requiring that a plaintiff show an injury in fact, causation, and redressability." *Fencepost Prods.*, 629 B.R. at 296, citing *Lujan*, 504 U.S. 560-61; *see also Flast v. Cohen*, 392 U.S. 83, 101 (1968) ("the question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution"). If a party lacks Article III standing, it may not participate even if it is a "party in interest" under § 1109(b):

> if the outcome of a proceeding can have no possible impact on the stake of a party in interest in the proceeding or in the case, then that person may lack Article III standing with respect to the proceeding. Like all statutes, section 1109(b) is subject to this relevant constitutional restriction.

7 Collier on Bankruptcy ¶ 1109.04[4][a] (16th ed.). "However, the situations in which the participation of any 'party in interest' in any particular proceeding might fail to satisfy [Article III standing requirements] are relatively limited." *Id.* Indeed, some courts have gone so far as to hold that constitutional standing is co-extensive with statutory standing under § 1109(b). *See*, *e.g.*, *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011) ("Persuasive authority indicates that Article III standing and standing under the Bankruptcy Code are effectively coextensive."); *In re SRC Liquidation LLC*, 2019 WL 4386373, *3 (Bankr. D. Del.) (citing and quoting *Global Indus. Techs.*)

3. <u>Prudential Standing</u>. "Prudential standing includes the 'general prohibition of a litigant's raising another person's legal rights[.]'" *Fencepost Prods.*, 629 B.R. at 296, quoting *Lexmark*, 572 U.S. at 126. Another formulation of prudential standing is that the "party seeking to participate [must] lie within the 'zone of interests' protected by the particular statute or legal rule implicated in the given proceeding." *See In re Fin. Oversight and Mgmt. Bd. for P.R.*, 872 F.3d 57, 64, n.7 (1st Cir. 2017) (citing 7 Collier ¶ 1109.04[4]); *Fencepost Prods.*, 629 B.R. at 296; *see*

*also James Wilson*, 965 F.2d at 169 (claimant must "be within the class of intended beneficiaries of the statute he is relying on for his claim").

D.    <u>Fr. Hough Lacks Standing to Object to the Claim.</u>

Fr. Hough does not pass any of the three standing tests outlined above. He does not have statutory standing because he is not a party in interest. Fr. Hough is not a creditor, debtor, trustee, or equity interest holder. He has no financial stake whatever in Debtor's reorganization. If the Court disallowed the Claim and found that Fr. Hough did not abuse Claimant, then Fr. Hough would be an incidental, nonfinancial beneficiary of the finding. That is not enough to make Fr. Hough a party in interest in this case.

This case is similar to *In re C.P. Hall Co.*, 750 F.3d 659 (7th Cir. 2014), where an excess insurer of the debtor (Columbia) objected to a settlement reached by the debtor and one of its other insurers (Integrity). The debtor argued that Columbia lacked standing to object. Columbia responded that it had standing because the settlement affected its potential liability to Debtor under its excess policy. The Seventh Circuit sided with the debtor:

> [T]o become a party to the bankruptcy proceeding Columbia had to show not merely standing but that 'a legislatively conferred cause of action encompasses' its claim. *Lexmark Int'l, Inc. v. Static Control Components, Inc., supra,* 134 S.Ct. at 1387. Specifically, it had to show that the Bankruptcy Code conferred the right that it sought—the right to butt into a settlement negotiation between other parties. Its desire to butt in is understandable. Agreements settling lawsuits often have third-party effects. A company might pay so much in settlement of a suit that it could no longer afford to honor its contract to buy some input from a third party; the third party would be harmed. The logic of Columbia's claim to be entitled to object to Hall's settlement with Integrity is that Hall received so little in the settlement that it is bound to come after Columbia for the difference. The claim is weak. Columbia's lawyer would have to agree that by this logic an employee whom the lawyer's client had laid off because it foresaw having to make a big payout to Hall could challenge the settlement. That way madness lies—settlements made impossible by crowds of objectors.

*Id.* at 661. The court went on to say that "[a] number of decisions support our conclusion that the interest of an entity in Columbia's position is too remote to entitle the entity to intervene in a bankruptcy case," citing *Teligent*, *In re Refco, Inc.*, 505 F.3d 109, 117-19 (2d Cir. 2007), *Alpex Comput. Corp.*, 71 F.3d at 356-57, and *Kaiser Steel*. This case is easier than *C.P. Hall* because here, Fr. Haugh's interest is both remote and nonfinancial.

Similarly, Fr. Hough lacks Article III standing because the allowance or disallowance of the Claim would have no effect on him. If the claim were denied, Fr. Hough would get no benefit; if it were allowed, he would suffer no harm. He is concerned only with what facts the Court might find when considering the Claim. Such a tangential interest is not enough for Article III standing in a bankruptcy case claim objection.

Finally, Fr. Hough lacks prudential standing. He is not within the "zone of interest" or "class of intended beneficiaries" of § 502, which is intended to benefit the estate and creditors by providing a way to dispose of meritless claims. As discussed above, a successful objection to the Claim might benefit Fr. Hough incidentally, but such an incidental, nonfinancial benefit does not put Fr. Hough among the class of § 502's intended beneficiaries.[3]

E.     Permissive Intervention Under Bankruptcy Rule 2018.

Fed. R. Bankr. P. 2018(a) provides:

> In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

---

[3] Prudential standing has also been described as preventing litigants from asserting other peoples' legal rights. *Fencepost Prods.*, 629 B.R. at 296. This version of the doctrine does not apply to § 502, which expressly allows creditors to object to claims, thereby asserting the debtor's rights and defenses.

"[C]ause may be an economic or similar interest in the case or one of its aspects." 9 Collier on Bankruptcy ¶ 2018.02[4], n.21 and accompanying text (16th ed.); *In re New Era, Inc.*, 135 F.3d 1206, 1209-10 (7th Cir. 1998). "Permissive intervention is warranted if the entity demonstrates that no other entity exists to adequately protect its position and that intervention would not result in undue delay or prejudice." Collier, ¶ 2018.02[04], n.24 and accompanying text. "The court may exercise its discretion when granting permissive intervention to the moving party." *In re First Interregional Equity Corp.*, 218 B.R. 731, 736 (Bankr. D.N.J. 1997).

If Debtor objected to the Claim, the Court would seriously consider a motion to intervene, should Fr. Hough choose to file one, despite the fact that he is not a party in interest. Currently the point is moot, however, as no claim objection is pending.

F.  Apart From Lack of Standing, Fr. Hough Should Not be Permitted to Object to the Claim.

Even if Fr. Hough had standing to object to the Claim, the Court likely would stay an objection proceeding for the same reasons it stayed the State Court Action. Debtor and its creditors are trying to preserve estate assets, including insurance coverage of claims like Claimant's. It is very unlikely Debtor and Catholic Mutual would allow Fr. Hough to litigate the claim objection without their active participation. Thus, the effect of allowing an objection to proceed would be an "end run" around the stay ordered in the State Court Action. It is not in the estate's best interests to allow that, so Fr. Hough's motion should be denied for this reason as well.

G.  Preclusion Concerns.

Fr. Hough raises the spectre that he could be precluded from litigating with Claimant if the Claim is allowed. In support of this concern Fr. Hough cites *EDP Med. Comput. Sys., Inc. v. U.S.*, 480 F.3d 621, 627 (2d Cir. 2007), and *Siegel v. Fed. Home Loan Mort. Corp.*, 143 F.3d 525, 530 (9th Cir. 1998). These cases, using claim preclusion principles, held that a debtor may not take a

position against a creditor post-bankruptcy that is contrary to the creditor's allowed claim. This matter is readily distinguishable because in *EDP* and *Seigel* the precluded parties were parties in interest under § 1109(b) who could have, but elected not to, object to the creditor's claim. That fact was key to the ruling in both cases. Here, on the other hand, Fr. Hough is not a party in interest and cannot object to the Claim. His inability to do so, even after asking for permission, means that preclusive principles could not be used against him, for they apply only to parties and their privies. *See Richards v. Jefferson Cty. Ala.*, 517 U.S. 793, 797-98 (1996); and *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). Fr. Hough is neither.

H.   Alternatives to Claim Objection.

Although he is not a party in interest and permissive intervention may never be an option, Fr. Hough is not without a remedy. One option is an action against Claimant for defamation. No stay prevents Fr. Hough from filing a defamation action immediately if he wishes. Were he to prevail, Fr. Hough would certainly have cleared his name.

Fr. Hough argued at the preliminary hearing on his motion that he cannot pursue a defamation action because he does not know the Claimant's name. If true, and if Fr. Hough wants to sue Claimant for defamation, the Court would work with Claimant's and Fr. Hough's counsel to make Claimant's identity known to Fr. Hough (while remaining confidential generally). Presumably a defamation action could be filed with the name of the defendant kept confidential for as long as the state court judge deemed it advisable.

Alternatively, Claimant has stated that he intends to pursue his State Court Action once the automatic stay is lifted. In such an event, Fr. Hough could seek to intervene in that action. A motion to intervene likely would be granted.

<u>Conclusion</u>

Fr. Hough is not a party in interest in this bankruptcy and lacks standing to object to the Claim. Were Debtor to object to the Claim, the Court would consider allowing Fr. Hough to intervene in the contested matter. Failing that, Fr. Hough is free to file a defamation claim against Claimant in state court or intervene in the State Court Action once the stay has been lifted.

Fr. Hough's motion will be denied by separate order.


_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 22, 2021
Copies to: counsel of record