# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporate sole, | Case No. 18-13027-t11 |
| Debtor-in-Possession. | |

| | |
|---|---|
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporate sole, | Adversary Proceeding No.: |
| Plaintiff, | |
| v. | |
| GREAT AMERICAN INSURANCE COMPANY; ARROWOOD INDEMNITY COMPANY, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America; ST. PAUL FIRE AND MARINE INSURANCE COMPANY, as itself and as successor to or assignee of St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company; and UNITED STATES FIRE INSURANCE COMPANY, | |
| Defendants. | |

# COMPLAINT

Plaintiff and Debtor-in-Possession the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporate sole (the "Archdiocese" or "Debtor"), by and through its attorneys, Blank Rome LLP, Elsaesser Anderson, Chtd., and Walker & Associates, P.C., brings this Complaint against Great American Insurance Company ("Great American"); Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America ("Arrowood"); St. Paul Fire and Marine Insurance Company as itself and as successor to or assignee of St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company ("St. Paul"); and United States Fire Insurance Company ("U.S. Fire") ("Defendant(s)," "Defendant Insurer(s)," or "Insurer(s)) and alleges as follows:

## BACKGROUND

1. This is an action for declaratory judgment against the Insurers due to their failure to honor contractual commitments to provide liability insurance coverage to the Archdiocese for claims alleging decades-old sexual abuse. The Archdiocese seeks declaratory relief to determine the extent of its right to insurance coverage from the Insurers, and the extent to which sums owed by the Insurers may be property of the estate under 11 U.S.C. § 541.

2. Numerous claims have been asserted against the Archdiocese alleging sexual abuse that took place years and, in many instances, decades ago. The Archdiocese, which filed for Chapter 11 bankruptcy more than three years ago, seeks to resolve the sexual abuse claims with proceeds from its liability insurance.

3. In the 1990s, the Archdiocese sought coverage for sexual abuse claims from the insurers that sold (or otherwise were responsible for) liability insurance policies that the Archdiocese had purchased between February 1953 and April 1986.

4. That effort led to a series of settlement agreements between the Archdiocese and its pre-April 1986 insurers, and certain of those settlement agreements fully released certain insurers from any continuing insurance obligations.[1]

5. The settlement agreements between the Archdiocese and Defendant Insurers, however, resolved only discrete issues relating to insurance coverage for sexual abuse claims (the "Settlement Agreements"). *They did not release Defendants* from all liability pursuant to the corresponding insurance policies for which Defendants were (and remain) responsible.

6. The Settlement Agreements between the Archdiocese and Defendants and the corresponding insurance coverage remain in force to this day. Consequently, Defendants have ongoing obligations to provide insurance coverage for present and future sexual abuse claims alleged against the Archdiocese.

7. The Agreements and the insurance policies require Defendants to provide coverage for sexual abuse claims currently pending against the Archdiocese. But Defendants have not fulfilled their contractual obligations to provide insurance coverage for the sexual abuse claims, nor have they accepted or acknowledged their obligations.

**PARTIES**

8. The Archdiocese is a Roman Catholic archdiocese in New Mexico, with the episcopal see in Santa Fe and principal place of business in Albuquerque, New Mexico. The Archdiocese was elevated from a diocese to an archdiocese on February 12, 1875.

9. Upon information and belief, Great American Insurance Company is a corporation

---

[1] The settlement agreements that released insurers pertain to the periods from January 1, 1961 to November 1, 1964 and April 1, 1977 to April 1, 1986. These settlements are not at issue in this case and the released insurers are not parties to this action.

organized under the laws of Ohio, with its principal place of business located in Cincinnati, Ohio. Upon information and belief, Great American Insurance Company operates in New Mexico and sold insurance policies providing coverage to the Archdiocese for certain timeframes during which the underlying claimants allege abuse.

10. Upon information and belief, Arrowood Indemnity Company is a corporation organized under the laws of Delaware with its principal place of business in Charlotte, North Carolina. Upon information and belief, Arrowood Indemnity Company, formerly known as Royal Indemnity Company, is successor by merger to Royal Insurance Company of America, which operated in New Mexico and sold insurance policies providing coverage to the Archdiocese for certain timeframes during which the underlying claimants allege abuse.

11. Upon information and belief, St. Paul Fire and Marine Insurance Company is a corporation organized under the laws of Connecticut, with its principal place of business in Hartford, Connecticut. Upon information and belief, St. Paul Fire and Marine Insurance Company is the successor or assignee of St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company. Upon information and belief, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, and St. Paul Mercury Indemnity Company operate, or operated, in New Mexico and sold insurance policies providing coverage to the Archdiocese for certain timeframes during which the underlying claimants allege abuse.

12. Upon information and belief, United States Fire Insurance Company is a corporation organized under the laws of Delaware, with its principal place of business in Morristown, New Jersey. Upon information and belief, United States Fire Insurance Company operates in New Mexico and sold insurance policies providing coverage to the Archdiocese for

certain timeframes during which the underlying claimants allege abuse.

13. On January 24, 2022, the Archdiocese filed Debtor's Motion to File Confidential Insurance Documents under Seal (Doc. No. 924) in which it requested an Order authorizing it to file this Complaint under seal, and requiring that all subsequent documents filed in the Adversary Proceeding initiated thereby also be filed under seal. On February 18, 2022, the Court entered its Order on Motion to File Confidential Insurance Documents under Seal (Doc. No. 944) in which it denied the Motion to file under Seal and ordered that the parties may attach copies of the "St. Paul Agreement" and the "Pre-1977 Agreement" (defined below, and referred to in Doc. No. 944 as the "CIPs") without breaching the confidentiality provisions of the CIPs and ordering that all copies of the CIPs filed or otherwise disclosed or disseminated in connection this Adversary Proceeding must be redacted as shown on Exhibit A attached to Doc. No. 944.

## JURISDICTION AND VENUE

14. In or about December 3, 2018, the Archdiocese filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

15. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Archdiocese continues to operate and manage its property as a debtor-in-possession.

16. This Court has personal jurisdiction over each Defendant because each Defendant has sufficient contacts with New Mexico. Further, each Defendant otherwise availed itself of the markets of New Mexico.

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1334(b) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

18. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 insofar

as it seeks to determine the extent and nature of the interests of the bankruptcy estate in certain settlement agreements and the insurance policies, and its rights under said settlement agreements and insurance policies, under 11 U.S.C. § 541.

19. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(a) and 1391(b) because a substantial part of the events or omissions giving rise to the dispute occurred in this district.

**DEFENDANT INSURERS**

20. At various times during the period from at least February 1953 to in or about April 1977, in consideration of premiums paid by the Archdiocese, or on behalf of the Archdiocese, Defendant Insurers and/or their predecessors-in-interest sold or became responsible for primary general liability insurance policies, as well as certain umbrella and/or excess liability policies, which insure the Archdiocese (the "Insurance Policies").

21. Each of the Insurance Policies requires Defendant Insurers to pay on behalf of the Archdiocese all sums that the Archdiocese becomes legally obligated to pay as damages because of bodily injury, as long as any part of the injury is alleged to have happened during the policy period.

22. Each of the Insurance Policies also requires Defendant Insurers to pay defense costs and expenses, including attorney's fees, incurred by the Archdiocese in the investigation and defense of underlying actions and claims that are even potentially covered. This obligation applies even if the allegations against the Archdiocese are groundless, false, or fraudulent.

23. All premiums for the Insurance Policies were timely paid.

6

## SETTLEMENT AGREEMENTS

24. In June 1996, the Archdiocese entered into a settlement agreement with St. Paul to resolve then-existing coverage disputes regarding sexual abuse claims, pursuant to which, *inter alia*, St. Paul agreed to pay ninety-five percent (95%) of the sums the Archdiocese pays in connection with claims alleging abuse in whole or in part between February 11, 1953 to January 1, 1960, that are resolved after August 27, 1996, subject to the applicable policies' limits of liability (the "St. Paul Agreement"). A true and correct copy of the redacted St. Paul Agreement is attached hereto as **Exhibit 1**. Nothing in the St. Paul Agreement suggests that the funding obligation of one party is a condition precedent to the funding obligation of another

25. In fall 1996, the Archdiocese entered into a settlement agreement with Great American, St. Paul, Royal Insurance Company of America (now known as Arrowood), and U.S. Fire (the "Pre-1977 Insurers") to resolve then-existing coverage disputes regarding sexual abuse claims. The Pre-1977 Insurers agreed, *inter alia*, to pay seventy-five percent (75%) of a settlement or judgment in connection with a claim alleging sexual abuse in whole or in part between November 1, 1965 to April 1, 1977, subject to the policies' applicable limits of liability (the "Pre-1977 Agreement"). A true and correct copy of the redacted Pre-1977 Agreement is attached hereto as **Exhibit 2**.

26. The Pre-1977 Agreement confirmed that "the Archdiocese has coverage for sex abuse claims under each of the Pre-1977 Polices and that the Pre-1977 Carriers will not contest coverage . . . ." Ex. 2, § XII, C.

27. The Pre-1977 Agreement set forth the parties' agreements that (i) coverage under the Pre-1977 Policies would be triggered in each policy period in which acts of sexual abuse allegedly occurred (effectively waiving any "expected/intended" defense to coverage), and (ii) for

7

purposes of determining the number of "per occurrence" limits of liability that are available to satisfy claims arising from sexual abuse alleged to have been committed from November 1, 1965 to April 1, 1977, "there shall be one 'occurrence' per perpetrator per policy period, regardless of the number of instances of Sexual Abuse or the number of claimants who were allegedly sexually abused by the same perpetrator during the same policy period[.]" Ex. 2, §VII (emphasis removed).

28. Most importantly, the Pre-1977 Agreement also allocated in precise and *non-contingent* terms the amounts that the Archdiocese and the Pre-1977 Insurers would pay toward the settlement or final judgment of any claims governed by the agreement, whether such claim was known or unknown at the time of settlement, to wit:

> IX. <u>Payment of Settlements and Judgments.</u>
> A. The **Pre-1977 Carriers** whose policies are triggered by a claim agree to pay 75% of the settlement or final judgment amount, subject to their remaining "per person" and/or "per occurrence" limits of liability, and the provisions in this agreement concerning allocation of liability among the **Parties**. Each **Pre-1977 Carrier** is obligated to make available its full remaining limits of liability toward the settlement of each claim triggering its policies and such limits shall not be reduced in any fashion <u>other than</u> the reduction of each **Pre-1977 Carrier's** per person and/or per-occurrence limits by the payment of settlements or judgments.
> B. The **Archdiocese** agrees to pay 25% of the settlement or final judgment amount for any **Pre-1977 Claim**, subject to the provisions in this agreement concerning allocation of liability among the **Parties**. The **Pre-1977 Carriers** have the right to waive the **Archdiocese's** 25% contribution and the **Archdiocese** will agree to such waiver.

Ex. 2, § IX (emphasis in original).

29. For the avoidance of doubt, the Pre-1977 Agreement included several illustrative examples as to how different hypothetical settlements would be funded; and *none* of the examples suggest or imply (much less, explicitly state) that the Insurers' obligation to contribute their allocated share toward a settlement or judgment would be contingent upon the Archdiocese having

8

first contributed its allocated share (or vice versa). Indeed, nothing in the Pre-1977 Agreement suggests that the funding obligation of one party is a condition precedent to the funding obligation of another.

30. The Pre-1977 Agreement provides that "all Pre-1977 Carriers with triggered policies must approve the proposed terms of each settlement of underlying claims . . . ." *See* Ex. 2, § VII., A. But it also provides:

> If a claimant makes a settlement demand that the Archdiocese wants to accept, but one or more of the Pre-1977 Carriers whose policies are triggered by the claim object to the reasonableness of the settlement demand, then the carrier(s) objecting to the settlement (the "Objecting Carriers") with a defense obligation shall thereafter be solely responsible for all future costs of defending the claim.

*Id*. § VII., C.

## CURRENT INSURANCE COVERAGE DISPUTE

31. Numerous individuals have asserted claims against the Archdiocese and submitted proofs of claim in the Archdiocese's bankruptcy, alleging that the Archdiocese is liable for damages because of its purported negligence in connection with alleged sexual abuse perpetrated by certain priests and other persons under the alleged supervision or otherwise within the purview of the Archdiocese.

32. Numerous such claims allege sexual abuse that allegedly occurred in whole or in part during the policy periods for which the Insurers are responsible (the "Underlying Sexual Abuse Claims"). In addition, many Underlying Sexual Abuse Claims allege abuse that occurred over the course of multiple policy periods. As a result, an Underlying Sexual Abuse Claim may implicate more than one of the Insurance Policies and Insurers.

33. Defendant Insurers received timely notice of the Underlying Sexual Abuse Claims and at all times the Archdiocese cooperated with the Insurers' reasonable requests.

34. The Archdiocese fulfilled all its duties and conditions under each of the Insurance Policies and Settlement Agreements with respect to the Underlying Sexual Abuse Claims.

35. The Archdiocese is entitled to all benefits provided by the Insurance Policies and Settlement Agreements.

36. The Insurers, however, have failed to acknowledge their full obligations to indemnify the Archdiocese, including paying all past and future defense costs, settlements or judgments, in connection with the Underlying Sexual Abuse Claims, despite the Archdiocese's timely requests for coverage for defense costs and indemnity.

37. In failing to acknowledge their full obligations, the Insurers have, *inter alia*, improperly conditioned payment of the Underlying Sexual Abuse Claims covered by the Settlement Agreements and Insurance Policies on the Archdiocese's payment of a percentage share of the Underlying Sexual Abuse Claims.

38. Nothing in the Settlement Agreements, however, conditions the Insurers' obligations to pay their percentage shares of a claim upon the Archdiocese's payment of a percentage share of a claim. *See* discussion *supra*. There is, therefore, no basis in law or fact for the Insurers' to assert that payment by the Archdiocese of a particular amount or percentage toward settlement of the Underlying Sexual Abuse Claims is a condition precedent to the Insurers' performance of their obligations.

39. Nor do the Settlement Agreements permit the Insurers to use the Archdiocese's bankruptcy to avoid their obligations. The Pre-1977 Agreement states clearly that each Insurer "is obligated to make available its full remaining limits of liability toward the settlement of each claim triggering its policies and such limits shall not be reduced in any fashion <u>other than</u> the reduction

10

of each Pre-1977 Carrier's per person and/or per-occurrence limits by the payment of settlements or judgments." Ex. 2, § IX; *see also* Ex. 1 § IX.

40. Certain Insurance Policies state "In the event of the bankruptcy or insolvency of the Insured or any entity comprising the Insured, the Company shall not be relieved thereby of the payment of any claims because of such bankruptcy or insolvency." *See, e.g.*, St. Paul Policy No. 566XB0825 (11/2/1967-11/2/1968).

41. By failing to acknowledge their full obligations pursuant to the Insurance Policies and Settlement Agreements in connection with the Underlying Sexual Abuse Claims, the Insurers are in breach of their contractual obligations to the Archdiocese, and, consequently, they have impeded and obstructed the Archdiocese's ability to resolve the Underlying Sexual Abuse Claims, while, at the same time, ignoring provisions in the Settlement Agreements stating that "[t]he Parties agree to deal with each other in good faith in entering into and carrying out the terms of this agreement." Ex. 1, § III, Ex. 2, § III. An actual and justiciable controversy exists as to all Defendants in this action.

## COUNT I

### Declaratory Judgment Against Defendant Insurers

42. The Archdiocese repeats and realleges each and every allegation contained in paragraphs 1 through 40 above with the same force and effect as though fully set forth herein.

43. The Archdiocese seeks a judicial determination from this Court of the rights and duties of the Archdiocese and Defendant Insurers with respect to an actual controversy arising out of the Settlement Agreements and Insurance Policies.

44. Pursuant to the terms of the Settlement Agreements, each Defendant Insurer is

obligated to provide coverage for the Underlying Sexual Abuse Claims, and this obligation of Defendants exists irrespective of whether the Archdiocese pays a percentage share of the Underlying Sexual Abuse Claims.

45. Defendant Insurers have not accepted or acknowledged their legal obligations to provide coverage for the Underlying Sexual Abuse Claims.

46. Each Defendant Insurer's failure to accept or acknowledge its obligations to the Archdiocese constitutes a breach of the Settlement Agreements and the Insurance Policies for which it is responsible.

47. An actual controversy of a justiciable nature presently exists between the Archdiocese and Defendant Insurers regarding the application of the Settlement Agreements and Insurance Policies to the Underlying Sexual Abuse Claims, including whether, as a precondition to Defendant Insurers' obligations, the Archdiocese must pay a percentage share of the Underlying Sexual Abuse Claims. The controversy is of sufficient immediacy and magnitude to justify the issuance of a declaratory judgment.

48. Declaratory relief by this Court will terminate or significantly reduce the existing controversy between the parties.

## PRAYER FOR RELIEF

**WHEREFORE**, the Archdiocese prays for judgment as follows:

1. The Archdiocese requests that this Court enter a declaratory judgment in favor of the Archdiocese against Defendant Insurers, declaring that each Defendant Insurer is obligated to provide coverage for the Underlying Sexual Abuse Claims pursuant to the terms of the Insurance Policies and the Settlement Agreements, and further declaring that this obligation exists

12

irrespective of whether the Archdiocese pays or is obligated to pay any particular amount or percentage toward settlement of the same, together with attorneys' fees and costs and pre-judgment and post-judgment interest;

2. Additionally, the Archdiocese requests such other and further relief as this Court may deem just and proper.

Dated: February 22, 2022

Respectfully submitted,

By: *electronically filed 2/22/2022*
Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette, N.W., Suite 650
Albuquerque, New Mexico 87102
Tel: (505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com

Ford Elsaesser
Bruce A. Anderson
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Tel: (208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

James R. Murray
(*pro hac vice* application to be submitted)
James S. Carter
(*pro hac vice* application to be submitted)
Alan M. Freeman
(*pro hac vice* application to be submitted)
BLANK ROME LLP
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201

13

jim.murray@blankrome.com
james.carter@blankrome.com
alan.freeman@blankrome.com

Robyn L. Michaelson
(*pro hac vice* applications to be submitted)
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
Facsimile: (212) 885-5001
Robyn.michaelson@blankrome.com
*Counsel for The Archdiocese of Santa Fe*

14