## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

Roman Catholic Church of the Archdiocese
of Santa Fe, a New Mexico corporation sole,

             Debtor-in-Possession.

Chapter 11

Bankruptcy Case No. 18-13027-t11

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS FOR ORDER (I) AUTHORIZING AND APPROVING
## THE EMPLOYMENT OF WILLIAM L. BETTINELLI AS TORT CLAIMS
## REVIEWER AND (II) AUTHORIZING ACTIONS TO BE TAKEN PURSUANT
## TO TORT ALLOCATION PROTOCOL

The Official Committee of Unsecured Creditors (the "Committee") of the Roman

Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, (the

"Debtor"), the Debtor and Debtor in possession in the above-captioned case (the "Case")

under chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy

Code"), through its undersigned counsel, submits its application (the "Application") for

entry of an order (i) authorizing and approving the employment of Hon. William L.

Bettinelli (retd) as the Tort Claims Reviewer (as defined below) in connection with a plan

to be filed by the Debtor and (ii) authorizing Judge Bettinelli to issue pre-confirmation

notices to Abuse Claimants and Tort Claimants setting deadlines for submissions of

Abuse and Tort Claimants' statements to him as provided in an allocation protocol

attached hereto.  To support its Application, the Committee relies of the Declaration of

William L. Bettinelli (the "Bettinelli Declaration") attached as **Exhibit A** hereto and

respectfully states as follows:

### JURISDICTION

        1.      The Court has jurisdiction over this Application under 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2).  Venue of this proceeding and this Application is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested are sections 328, 504, 1102, and 1103 of Title 11 of the Bankruptcy Code, Rules 2014 and 2016 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), and NM LBR 2016-1.

## BACKGROUND

3.      The Debtor filed its Case on December 19, 2018.

4.      The Debtor has continued in possession of its properties and has continued to operate and manage its businesses as Debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.  The Office of the United States Trustee appointed the Committee, which consists of survivors of sexual abuse.  No trustee or examiner has been appointed in this Case.

5.      The principal purpose of this case is to address the Debtor' liabilities for sexual abuse perpetrated by priests of the Archdiocese of Santa Fe or others for whom the Debtor is responsible.

6.       On March 8, 2019, the Court entered its *Order Fixing Time for Filing Proofs of Claim, Approving Proof of Claim Forms, Providing for Confidentiality Protocols and Approving Manner and Form of Notice* (the "Bar Date Order") [Docket No. 116], which established June 17, 2019 (the "Claims Bar Date") as the date for claimants to submit Sexual Abuse proofs of claim.

7.      The Committee, the Debtor, its insurers and various parties associated with the Debtor and/or the Roman Catholic Church engaged in a mediation

process to resolve and compensate claimants who were sexually abused by priests or others for whom the Debtor were responsible. At a status conference on May 18, 2022, the Debtor announced that it had reached a settlement in principle evidenced by a memorandum of understanding dated March 30, 2022, subject to the rights of parties to review/object a disclosure statement, plan, insurance settlement agreements and other documents related to the settlement and to object/vote on a plan. The plan will address all of the Debtor's liabilities and provides for a fund of cash and property valued at $121.5 million to compensate survivors.[1]

8.      The plan will provide that survivors will receive a cash distribution from a settlement trust under the plan pursuant to an allocation protocol (as it may be amended or revised, the "Tort Allocation Protocol") attached hereto as **Exhibit B**. Exhibit B is subject to Bankruptcy Court approval which will be sought in connection with confirmation of the plan.

9.      The Tort Allocation Protocol provides a mechanism for allocating funds among survivors. The Plan provides that the evaluation of Abuse Claims/Tort Claims[2] under the Tort Allocation Protocol will be conducted by a "Tort Claims

---

[1] The $121.5 million settlement fund will not be used to pay Unknown Tort Claims and is "net, net, net" of the settlement trust's fees and expenses and the Tort Claims Reviewer's fees and expenses.

[2] The plan will define Abuse and Tort Claims as follows: "Abuse Claim" means any Claim (as defined in section 101(5) of the Bankruptcy Code) against the Archdiocese resulting or arising in whole or in part, directly or indirectly from any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Archdiocese or any other person or entity for whose acts or failures to act the Archdiocese is or was allegedly responsible.

Reviewer".  The Tort Claims Reviewer will "grade" each Sexual Abuse claim based on the criteria in the Tort Allocation Protocol.  He will make no determination regarding the terms of the plan or the funds available to collectively pay survivors.  He will be an independent evaluator who will review each claim on the facts presented as provided for in the Tort Allocation Protocol.  Such independent review is necessary and appropriate to assure that funds available to survivors are allocated fairly.  The Committee, after consulting with the Debtor, the Unknown Claims Representative and counsel to substantially all of the represented survivors, has selected Judge Bettinelli as the Tort Claims Reviewer under the terms of this Application.

          10.     Under the Tort Allocation Protocol, the Tort Claims Reviewer will review information regarding approximately 375 Sex Abuse claims.[3]  Under the Tort Allocation Protocol, the survivors are provided notice of the opportunity to supplement the Sexual Abuse proofs of claim and to submit other information that relates to the allowance of a claim, e.g. explanations regarding "excusable neglect" regarding late filed claims, application of statute of limitations and the enforceability of prepetition releases. For the allocation process and distributions contemplated by the Plan to move promptly, efficiently and successfully, the Tort Claims Reviewer should begin the evaluation process immediately rather than wait for filing the plan and disclosure statement and should be allowed to send out notices of the commencement of any notice periods regarding supplementary or other information contemplated by the Tort Allocation

---

[3] The Bar Date Order provided that an abuse claims reviewer would be a Permitted Party and would be able to review the confidential Sexual Abuse claims.

Protocol. Based on Judge Bettinelli's experience and after Committee counsel's consultation with him regarding the claims, the Committee believes that the claims review process (including requests for reconsideration) may be completed by the end of September which may allow a settlement trust to make distributions to survivors by the end of October 2022. Certain survivors have been litigating their claims for years and all have carried the burden of its abuse for decades. Counsel for the survivors have told the Committee that many survivors are ill and/or elderly. Thus, any further delay in allocation of the settlement proceeds and compensation of survivors -- and the continuing material and emotional hardship on survivors and its families -- should be avoided.

11. In light of the pressing needs of survivors and the length of time they have been waiting for resolution of this case, the Committee believes that the Tort Claims Reviewer should begin his services now. The Debtor and the Committee seek to employ Judge Bettinelli so he can begin his work and enable the settlement trust to make prompt distributions if the Plan is confirmed. Judge Bettinelli will make no final determinations of a claim until after the plan is confirmed and the Tort Allocation Protocol (as it may be amended or revised) is approved on a final basis. There is precedent from other case of religious entities to begin the claims review process before confirmation to ease the burden on abuse survivors. In the chapter 11 case of the Catholic Bishop of Northern Alaska, the Society of Jesus Oregon Province, the Diocese of Davenport (Iowa), The Catholic Diocese of Wilmington, Inc., The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc., the Roman Catholic Bishop of Helena, Montana, and the Roman Catholic Church of the Diocese of Gallup, the

bankruptcy courts authorized the employment of an abuse claims reviewer at a similar (although not identical) stage in the proceedings.

<u>**RELIEF REQUESTED AND BASIS FOR RELIEF**</u>

12.     By this Application, the Committee seeks entry of an order (i) authorizing and approving the retention of Judge Bettinelli as the Tort Claims Reviewer on the terms in this Application and at the expense of the estate, (ii) authorizing the Committee to assist Judge Bettinelli in issuing notices to survivors of the commencement of notice periods for submitting supplement or other information contemplated by the Tort Allocation Protocol and  (iii) confirming Judge Bettinelli as a Permitted Party under the Bar Date Order.

**A.**     <u>**Judge Bettinelli's Retention**</u>

**1.**     <u>**Services to be Rendered by Judge Bettinelli**</u>

13.     Judge Bettinelli's professional services will include, but shall not be limited to, reviewing and assessing Abuse/Tort Claims under the Tort Allocation Protocol.  Any information submitted by survivors to Judge Bettinelli shall be subject to a mediation privilege, and production of any information by a Tort Claimant (or a Tort Claimant's counsel) to Judge Bettinelli shall not constitute a waiver of any attorney-client privilege or attorney-work product doctrine, or any similar privilege or doctrine.

**2.**     <u>**Judge Bettinelli's Expertise**</u>

14.     The Committee and counsel to many of the survivors are familiar with Judge Bettinelli's professional standing and reputation.  Judge Bettinelli is well-qualified as a mediator, and is a highly respected lawyer, law professor, and former

California Superior Court judge. He has served as an abuse claims reviewer under the confirmed chapter 11 plans of the Catholic Bishop of Northern Alaska (where he also served as a mediator), the Society of Jesus, Oregon Province, The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc., the Roman Catholic Bishop of Helena, Montana and the Roman Catholic Church of the Diocese of Gallup. He also has served as claims reviewer in chapter 11 cases unrelated to the Catholic Church, including USA Gymnastics. As such, Judge Bettinelli is already familiar with the general issues in many of the Abuse/Tort claims and will have less of a learning curve than another claims reviewer. Attached hereto as **<u>Exhibit C</u>** is a copy of Judge Bettinelli's resume and credentials relating to review of sexual abuse claims. The Committee understands that the Debtor consent to the relief requested.

### 3. <u>Judge Bettinelli's Disinterestedness</u>

15. Insofar as the Committee has ascertained, Judge Bettinelli represents no interest adverse to the Debtor, its estate, or its creditors, in the matters upon which Judge Bettinelli is to be engaged. Judge Bettinelli is a "disinterested person," as the Committee understands this term to be defined, within the meaning of section 101(14), as modified by section 1103(b), of the Bankruptcy Code.

16. To the best of the Committee's knowledge and under the Bettinelli Declaration, Judge Bettinelli has no prior connection with the Debtor, its creditors, or any other party in interest, or its respective attorneys or accountants in the matters upon which he is to be engaged that would disqualify him from acting as the Tort Claims Reviewer in this Case. Committee counsel was also committee counsel in other chapter

11 case where Judge Bettinelli acted either as the mediator or abuse claims reviewer.

Certain counsel for survivors also represented survivors or other sex abuse survivors in

the case where Judge Bettinelli acted either as the mediator or abuse claims reviewer.

17.     Judge Bettinelli has indicated a willingness to act as the Tort

Claims Reviewer under the terms of this Application.

**4.     <u>Compensation</u>**

18.     Subject to Court approval under section 330(a) of the Bankruptcy

Code, compensation will be payable to Judge Bettinelli as follows:

    a.     Review of Abuse/Tort Claims:  $450,000; and

    b.     Review of Abuse/Tort Claims seeking reconsideration after

initial award:  $1000 per claim.  This fee will be paid by the claimant as a deduction from

the award.[4]

19.     Judge Bettinelli charges for all expenses connected with the review

of the Abuse/Tort Claims.  These expenses include conference call charges, mail and

express mail charges, special or hand delivery charges, document retrieval charges,

photocopying charges, travel expenses, expenses for working meals, computerized

research, transcription costs, and non-ordinary overhead expenses such as secretarial

overtime and other staffing overtime.  Judge Bettinelli will bill for these expenses in a

---

[4] The Committee does not anticipate that Mr. Bettinelli will review claims after a request for reconsideration prior to the passage of the voting deadline on the plan, since the preliminary awards will not be disclosed until after the voting deadline.  However, in an abundance of caution and in the interests of full disclosure of Mr. Bettinelli's proposed compensation, the Committee is disclosing the amount Mr. Bettinelli will be paid to review claims after the preliminary awards are disclosed.

manner and at rates consistent with those charged to other clients, and the rules and requirements of this Court.

20.     Judge Bettinelli's compensation will be paid by the Debtor and will not be paid from the settlement trust.

**B.     Procedures for Authorizing Review Prior to Confirmation**

21.     The Committee expects that Judge Bettinelli will begin his review prior to confirmation of the Plan.  Under prior and final orders of the Court, Judge Bettinelli would be a party entitled to review the confidential Sexual Abuse proofs of claim in accordance with the protections of the confidentiality protocols set forth in the Court's Bar Date Order.

## NOTICE

22.     Notice of this Application has been given to (i) the Debtor; (ii) the U.S. Trustee; (iii) counsel to the known survivors; (iv) Daniel White and (v) those parties requesting notice under Bankruptcy Rule 2002.  The Committee submits that, in light of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

23.     The Committee has not applied in this Court or in any other court to employ Judge Bettinelli as the Tort Claims Reviewer in this case.

WHEREFORE, the Committee requests entry of an Order substantially in the form attached hereto as **Exhibit D**, authorizing the employment and retention of Judge Bettinelli as the Tort Claims Reviewer, authorizing Judge Bettinelli to issue notices for supplementary and other information contemplated by the Tort Allocation Protocol, confirming Judge Bettinelli as a Permitted Party under the Bar Date Order and granting such other and further relief as is just and proper.

Dated:  July 11, 2022

*/s/ James I. Stang*
PACHULSKI STANG ZIEHL & JONES LLP
James I. Stang, Esq. (admitted *pro hac vice*)
Ilan D. Scharf, Esq. (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Telephone: 310/277-6910
Facsimile: 310/201-0760

*Counsel for the Official Committee of*
*Unsecured Creditors of the Roman Catholic Church*
*of the Archdiocese of Santa Fe, a New Mexico*
*corporation sole*

# EXHIBIT A

# (DECLARATION)

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| In re: | Chapter 11 |
| ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole, | Case No. 18-13027-t11 |
| Debtor. | |

**DECLARATION OF WILLIAM L. BETTINELLI IN SUPPORT OF
APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER (I) AUTHORIZING AND APPROVING
THE EMPLOYMENT OF WILLIAM L. BETTINELLI AS TORT CLAIMS
REVIEWER AND (II) AUTHORIZING ACTIONS TO BE TAKEN PURSUANT
TO TORT ALLOCATION PROTOCOL**

I, William L. Bettinelli, declare under penalty of perjury as follows:

1.      I am an attorney, duly admitted in the State of California.  I am presently a full time mediator/arbitrator.  I formerly served as a judge on the Superior Court of the State of California and as a law school professor.  I submit this declaration in support of the *Application of the Official Committee of Unsecured Creditors for an Order (I) Authorizing and Approving the Employment of William L. Bettinelli as Tort Claims Reviewer and (II) Authorizing Actions to be Taken Pursuant to Tort Allocation Protocol* (the "Application").  Capitalized terms used but not defined herein shall have the meanings and definitions ascribed to them in the Application.

2.      I have been selected by the Committee, after consultation with the Debtor, to be employed as the Tort Claims Reviewer in the above-captioned Case.

3.      I have extensive experience in conducting mediations, having conducted more than a hundred mediations during my career, in a wide variety of subject

matters, including case involving sexual abuse of minors by clergy. I served as mediator in the chapter 11 case of the Catholic Bishop of Northern Alaska. I have served as an abuse claims reviewer under the confirmed chapter 11 plans of the Catholic Bishop of Northern Alaska, the Society of Jesus, Oregon Province (for certain claims filed by the bar date and all future claims), The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc., The Roman Catholic Bishop of the Diocese of Helena, Montana and the Roman Catholic Church of the Diocese of Gallup.

4. I have made the following investigation of disinterestedness prior to submitting this Declaration: In connection with my proposed retention as Tort Claims Reviewer, I was provided a list of the Debtor' non-confidential creditors and other persons identified as parties in interest in the Debtor' Schedules of Assets and Liabilities ("Schedules"). I reviewed the Schedules and concluded that I do not have any conflicts with any of the entities listed therein.

5. To the best of my knowledge and information available, I have no connection with the Debtor or any other party in interest in this Case, other than:

    a. Certain counsel representing survivors in this case may have represented abuse claimants in the chapter 11 cases where I was retained as the abuse claims reviewer or mediator;

    b. Certain counsel representing survivors in this Case represented abuse claimants in state court actions unrelated to the case in which I served as mediator and/or claims reviewer;

c.     Committee counsel in this Case also served as creditors'

committee counsel in chapter 11 cases where I served as abuse claims reviewer and

mediator.

6.     To the best of my knowledge, I do not represent any interest

adverse to the Debtor or any party in interest in the matters upon which I am to be

engaged.

7.     I am not affiliated nor have any connection with the Office of the

United States Trustee or any of its employees.

8.     I have not received any transfer, assignment or pledge of property

of the Debtor' estates or any of the survivors as of the date of this Declaration.

9.     I have not shared or agreed to share with any other person, other

than with members of JAMS, any compensation to be paid with respect to this Case.

a.     The terms of employment agreed to with the Committee,

subject to Court approval, are as follows: Review of Abuse/Tort Claims:  $450,000 fee

for the assessment of all Abuse/Tort Claims and $1000 per clam for the review of

Abuse/Tort Claims seeking reconsideration after initial award.  This fee will be paid by

the claimant as a deduction from the award.[5]

10.     Judge Bettinelli charges for all expenses connected with the review

of the Abuse/Tort Claims.  These expenses include conference call charges, mail and

---

[5] The Committee does not anticipate that Mr. Bettinelli will review claims after a request for reconsideration prior to the passage of the voting deadline on the plan, since the preliminary awards will not be disclosed until after the voting deadline.  However, in an abundance of caution and in the interests of full disclosure of Mr. Bettinelli's proposed compensation, the Committee is disclosing the amount Mr. Bettinelli will be paid to review claims after the preliminary awards are disclosed.

express mail charges, special or hand delivery charges, document retrieval charges, photocopying charges, travel expenses, expenses for working meals, computerized research, transcription costs, and non-ordinary overhead expenses such as secretarial overtime and other staffing overtime. Judge Bettinelli will bill for these expenses in a manner and at rates consistent with those charged to other clients, and the rules and requirements of this Court.

11. Information contained in a sexual abuse claim and any other information provided to me by a sexual abuse claimant with respect to my review of his or her Abuse/Tort Claim, including but not limited to, the names and other personal identification information of survivors are confidential and I presume will be deemed confidential by orders of this Court. I will use such material solely in connection with these Case and in my capacity as the Tort Claims Reviewer. I will not disclose the confidential material to any person or entity except upon order of a court of competent jurisdiction after notice to affected parties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 11th day of July 2022.

_____
William L. Bettinelli

# EXHIBIT B
## (ALLOCATION PROTOCOL)

DOCS_LA:343794.3 05066/002

**TORT CLAIMS ALLOCATION PROTOCOL FOR TORT CLAIMS FILED IN THE
CHAPTER 11 CASE OF THE
ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE**

## 1.     PURPOSE

The purpose of the Tort Claims Allocation Protocol is to provide for the distribution of funds to Tort Claimants.  **This protocol does not apply to the distribution of funds to any other creditors, including Unknown Tort Claimants.**

## 2.     DEFINITIONS

### 2.1     Capitalized Terms.

Capitalized terms used herein shall have the meanings given them in the Plan or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated herein by reference.

"**Adult Tort Claimant**" means any Tort Claimant who was abused by a Perpetrator of the Debtor for the first time on or after the date that such Tort Claimant was eighteen (18) years of age.

"**Perpetrator of Debtor**" Means a person: (1) who was an employee or other agent of the Debtor or any other Protected Party (as defined in the Plan) at the time such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor or any other Protected Party (as defined in the Plan) was otherwise responsible.

"**Tort Claimants**" means, collectively, Holders of Class 3 Tort Claims.

## 3.     RULES OF INTERPRETATION AND GENERAL GUIDELINES

### 3.1     Sole and Exclusive Method.

The Plan and the Trust Agreement contemplate that the ASF Settlement Trust will be established for payment of Tort Claims.  The Plan and this protocol shall together be the sole and exclusive method by which a Tort Claimant (and not an Unknown may seek distribution on account of a Tort Claim against the Debtor.  The Plan and the Trust Agreement further contemplate that a separate trust will be established for payment of Unknown Tort Claims; provided that **none** of the $121.5 million paid to the ASF Settlement Trust shall be used to fund any distribution to an Unknown Tort Claimant or payment to a trust for payment of Unknown Tort Claims.

### 3.2     Conflict with Plan.

The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this allocation protocol.

DOCS_LA:344118.10

1

**3.3    Non-Compensatory Damages and Other Theories of Liability.**

In determining the distribution to any Tort Claimant, punitive damages and damages that can be classified as economic damages that do not compensate the Tort Claimant for bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. Any distribution to a Tort Claimant shall be solely on account of bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Tort Claimant.

**3.4    Withdrawal of Claims.**

A Tort Claimant can irrevocably withdraw a Tort Claim, as the case may be, at any time upon written notice to the Trustee and the Archdiocese. Once withdraw, the Tort Claim may not be reasserted against the Trust (including filing an Unknown Tort Claim by a Tort Claimant who withdrew his or her Tort Claim).

**3.5    Res Judicata Effect.**

The TCR's determination with respect to a Tort Claim shall have no preclusive, res judicata judicial estoppel or similar effect outside of this Case as to any third party. That is, the TCR's determination shall not be used against any Tort Claimant in any other matter, case or proceeding.

**3.6    Confidentiality and Privilege.**

All information that the TCR receives from any source about any Tort Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Tort Claimant (or such Claimant's counsel of record). All information that the TCR received from any Tort Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the TCR shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

**4.    ABUSE CLAIMS REVIEWER**

Hon. William Bettinelli (retd) has been appointed as the "Tort Claims Reviewer" (the "TCR") under the terms of this protocol and an order of the Bankruptcy Court. The TCR shall conduct a review of each of the Tort Claims (as and when such Claims may be filed) and, according to the guidelines set forth in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents. The TCR's review as to each Tort Claimant shall be the final review, subject only to reconsideration as set forth in section 7 below.

The Debtor shall provide electronic copies of all Sexual Abuse Proof of Claim forms (including any attachments thereto and as the same may have been amended from time to time) to the TCR.

## 5. PROCEDURE FOR ALLOCATION AMONG ALLOWED TORT CLAIMS

### 5.1 Proof of Abuse.

The TCR shall consider all of the facts and evidence presented by the Tort Claimant in the Tort Claimant's filed proof of claim. Tort Claimants may provide supplemental evidence and information to the TCR pursuant to the below procedures.

The TCR shall consider all of the facts and evidence presented by the Tort Claimant. However, it is recognized that many Abuse Claimants may not have such documents as medical or counseling records. The TCR shall not distinguish between documentary evidence and Supplemental Submission by video in terms of weight or value in making his findings. One is not necessarily more or less valuable than the other. The presence or absence of such documents shall not, alone, advantage or disadvantage the Tort Claimant if the information presented is otherwise reliable and credible.

The TCR shall be authorized to request additional information from a Tort Claimant. Failure to respond to such request shall not be construed against the Tort Claimant.

Each Tort Claimant will have the opportunity to submit a written statement (a "**Supplemental Submission**") to the TCR or his designated assistant(s), provided that, any Tort Claimant may opt out of the written statement at any time. The TCR shall establish a deadline (the "**Submission Deadline**") of no less than 30 days for Tort Claimants to submit Supplemental Statements to the TCR. Notice of the Submission Deadline (the "**Supplement Notice**") shall provide, among other things, the method for submission of Supplemental Statements. All notices by the TCR to Tort Claimants, including the Supplement Notice, shall be sent to each Tort Claimant's counsel of record via email and first class mail at the address(es) provided in the applicable Sexual Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 10 pages in length, single sided, double spaced with 12-point font; provided, however, that a Tort Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 10 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the TCR determines, in his sole discretion, there is good cause for delay. The TCR, in his sole discretion, may allow a Tort Claimant to exceed the page limit for the Supplemental Submission. Tort Claimant may submit a Supplemental Submission to the TCR, in lieu of a written statement, via video that is no more than ten minutes in length. A Tort Claimant may submit either a written or video Supplemental Submission, but not both. A video submission may only record the Tort Claimant and may not record any other person, including an agent or representative of a Tort Claimant; provided, however, a video may include a recording of the Tort Claimant's deposition, provided that such recording is not more than ten minutes in length. If a Tort Claimant declines to submit a written or video Supplemental Submission, such declination shall not be held against the Tort Claimant or be used as grounds to discount the claim. **The medium of the Supplemental**

**Submission (whether in writing or by video) shall not advantage or disadvantage a Tort Claimant.**

**5.2** **Guidelines for Allocation for Allowed Tort Claims.**

    **(a)** **Initial Evaluation.**

The TCR shall consider whether the Tort Claimant has proven by a preponderance of the evidence that the Tort was perpetrated by a Perpetrator of the Debtor. The TCR shall give notice to the Tort Claimant and the Trustee if he determines that the Tort Claimant has not met the burden of proof and will provide the Tort Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof has been met. The Debtor and any Protected Party (other than a Settling Insurer) are required to cooperate with any information or discovery request by a Tort Claimant that is related to the TCR's determination that the Tort Claimant has not met the burden of proof. On request of the Trustee, the TCR shall evaluate the Claim pursuant to Section 5.2(d) to allow the Trustee to reserve sufficient amounts to pay the Tort Claimant if the TCR subsequently determines that the Tort Claimant has met the burden of proof hereunder.

    **(b)** **Adult Tort Claims.**

Any Adult Tort Claimant must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) regarding whether such Claimant was abused within the applicable statute of limitation. If an Adult Tort Claim is based on acts that are outside of the applicable statute of limitations, then the TCR, in his sole discretion, shall reduce the points award of the claim in an amount between 20% and 80%. The TCR shall reduce the points award for any Adult Tort Claimant that fails to submit such written statement by 80%. Claimants who must submit such statement are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Adult Tort Claimant.

    **(c)** **Released Tort Claims.**

With respect to any Tort Claim that is filed by a Tort Claimant who previously released the Archdiocese from liability (a "**Releasor**"), the TCR shall assess whether such Releasor has proven by a preponderance of the evidence that:

        (a) such Releasor was not represented by counsel at the time such release was executed (the "**Release Date**"); and

        (b)   (i) any payment received by such Claimant in consideration of the release was unjust under the circumstances; or

(ii) such Releasor was incapacitated or disabled as of the Release Date; or

(iii) such Releasor was fraudulently induced to execute the release.

A Releasor must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) with respect to Tort Claim asserted after such Tort Claimant executed a release in favor of the Archdiocese. The TCR shall award zero (0) points for any applicable Releasor that fails to submit such statement. Releasors who must submit such statement are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Releasor. The Trustee shall deduct the amount received by any Releasor in exchange for the release from such Claimants award. Any Releasor that fails to provide written evidence of the amount received in exchange for executing such a release within 30 days of a written request for such information by the Trustee shall be awarded zero (0) points.

**(d)     Evaluation Factors**

Each Tort Claim will be evaluated by the TCR. Each Claim will be scored on a scale of up to 110 based on the following factors:

        **(i)     Nature of the Sexual Abuse:**

            (1)     Duration;

            (2)     Frequency/number of instances;

            (3)     Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

            (4)     Level or severity of force/violence/coercion/threats;

            (5)     Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Debtors);

            (6)     Number of Perpetrators of the Debtors that abused the Claimant;

            (7)     Physical pain suffered;

            (8)     Grooming; and/or

            (9)     Additional factors that may be provided by the Claimant.

      **(ii)**    <u>**Impact of Abuse**</u>:

      (1)    School behavior problems;

      (2)    School academic problems;

      (3)    Getting into legal trouble as a minor;

      (4)    Loss of faith;

      (5)    Damage to family relationships/ interpersonal difficulties;

      (6)    Mental health symptoms, including:

            a.    Depression;

            b.    Suicide Attempt and suicidal ideation;

            c.    Anxiety;

            d.    Substance abuse;

            e.    Sexual acting out;

            f.    Runaway;

            g.    Flashbacks; and/or

            h.    Nightmares; and/or

      (7)    Adult and current functioning:

            a.    Criminal record as an adult;

            b.    Underemployment/unemployment;

            c.    Relationship problems

            d.    Substance abuse; and/or

      (8)    The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

      (9)    Additional factors that may be provided by the Claimant.

      The TCR shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes any type of fraud or misrepresentation.

**(iii) Additional Factors:**

Tort Claimants level of participation by the Tort Claimant in public/litigation events related to the Tort Claims, including but not limited to:

    a.    leadership role in organizations dedicated to assisting sexual abuse survivors;

    b.    participation in litigation against the Archdiocese prior to the Petition Date;

    c.    participation in criminal proceedings against a Perpetrator of the Debtor; and/or

    d.    participation by the Tort Claimant personally in the Chapter 11 Case.

**5.3**     In evaluating the claims, the TCR shall disregard any considerations related to the statute of limitations with respect to sexual abuse and/or sexual assault claims other than with respect to Adult Claims pursuant to Section 5.2(b) above.

**5.4**     There will be no consideration of a Tort Claimant's claims against any other entity that may be liable for the abuse to the Tort Claimant.

## 6.    MONETARY DISTRIBUTION.

The TCR will arrive at a point total for each Tort Claimant taking into account the above factors.

The Trustee of the Trust shall calculate the value of an individual "point" after all Tort Claims have been reviewed. The point value will be determined by dividing (a) the total amount of dollars in the amount funded to the Trust for the Tort Claims by (b) the total number of points among all of the individual Tort Claims. By way of example, if there are 50 claimants awarded a total of 10,000 points within a given Claimant Pool, with a total settlement fund of $2 million, each point would be valued at $200.

## 7.    DETERMINATIONS BY THE TCR
## AND REQUESTS FOR RECONSIDERATION AND APPEAL.

The Trustee shall notify each Tort Claimant in writing of the monetary distribution with respect to the Tort Claimant's Claim, which distribution may be greater or smaller than the actual distribution to be received based on reserves established by the Trustee and the outcome of any reconsideration of claims. The Trustee shall mail this preliminary determination to the Tort Claimant to the Tort Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Tort Claimant's filed proof of claim. The TCR's determination shall be final unless the Tort Claimant makes a timely request for the point award to be reconsidered by the TCR. The Tort Claimant shall not have a right to any other appeal of the TCR's point award. The Tort Claimant

may request reconsideration of the TCR's point award by delivering a written request for reconsideration to the TCR within 10 calendar days after the date of mailing of the preliminary monetary distribution. The Tort Claimant, with the request for reconsideration, may submit additional evidence and argument in support of such request upon a showing that such additional information could not have been provided in accordance with this protocol. The TCR shall have sole discretion to determine how to respond to the request for reconsideration. The TCR's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

## 8.  ADJUSTMENTS.

The TCR shall adjust all Reviewed Claims as follows:

### a.  No Award for Non-Sexual Abuse.

The TCR shall allocate points only for Tort Claims, subject to paragraph 3.3 above. Zero (0) points shall be allocated for any Claim that is not a Tort Claim.

### b.  Late Claims.

The TCR shall assess Tort Claims filed between November 21, 2019 and March 30, 2022 (any such claim, a "**Late Claim**" and the claimant, a "**Late Claimant**"). A Late Claimant must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) with respect to any Late Claim. Late Claims are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Late Claimant. The TCR shall award zero (0) points for any Late Claimant that fails to submit such statement. A Tort Claim filed after June 17, 2019 and before November 21, 2019 is not a Late Claim and the TCR shall assess such Tort Claim as if it was filed on or before June 17, 2019. The TCR (a) shall reduce any Late Claim by 50% and (b) may, in his sole discretion based on the Late Claimant's statement, reduce the points awarded to any Late Claim by up to 80%. For example, if the TCR assesses a Late Claim at 100 points, he shall reduce the assessment to 50 points and may, in his sole discretion based on the Late Claimant's statement, further reduce the assessment but he may not assess it to less than 20 points.

# EXHIBIT C
## (RESUME)




# Hon. William L. Bettinelli (Ret.)

Referee/Special Master

**Case Manager**

Melissa Ornstil
T: 415-774-2600
F: 415-982-5287
Two Embarcadero Center, Suite 1500, San Francisco, CA 94111
melissaornstil@jamsadr.com

# Biography

**Hon. William L. Bettinelli (Ret.)** is a skilled mass tort claims adjudicator, allocator and administra
Judge Bettinelli has extensive experience in complex multi-party construction, insurance,
environmental, real estate, catastrophic personal injury, wrongful death, and employment cases.

# ADR Experience and Qualifications

- Since joining JAMS in 1991, he has served exclusively as a mediator and arbitrator
- Fourteen-year judicial career focused on civil litigation and case resolution
- Successful resolution of the following types of cases:
  - **Environmental:** Multi-party actions involving private, public entity, Super Fund clean-ups, toxic torts, underground storage tanks, land use, industrial clean-ups, and allocation issues
  - **Construction:** Matters involving all types of structures (residential, commercial, industrial, schools, and hospitals), developers, general contractors, subcontractors, design

Case 18-13027-t11    Doc 1012    Filed 07/11/22    Entered 07/11/22 16:48:04 Page 26 of 38

professionals, insurers, bonding companies, public and private owners. Issues involving defective work, design, and claims for delay damages and extras, allocation, and insurance coverage disputes

- **Insurance:** First and third party insurance coverage, reinsurance, excess, and bad faith matters
- **Torts:** Personal injury and product cases involving catastrophic injuries and wrongful death
- **Employment:** Sexual harassment, discrimination (gender, age, race), and wrongful termination
- **Business/Commercial:** Shareholder actions, partnership and other business dissolutions, and mergers and acquisition litigation
- **Class Actions:** Product defect, construction defect, and noise discharge actions
- **Clergy and University Abuse Claims:** Actions against multiple diocese, religious orders, and universities

# Representative Matters

- Construction action by school district against contractors and design professionals concerning construction and design of a school, and cross-claims for delay damages and extras
- Class action by multiple homeowners against developer, contractors, and design professionals relating to structural defects
- Environmental action by major international corporation, landowner, against an aerospace corporation, former owner, to recover past and future clean-up expenses for solvent contamination that had reached the aquifer
- Sexual harassment and gender discrimination claim by multiple female employees against a multinational corporation
- Wrongful death action against automobile manufacturer for fire caused by design defects
- Crush and amputation injury claim of industrial worker against 50-year chain of owners, manufacturers, and modifiers of the machinery
- National class action against a multi-national company relating to building product defects
- Tort Claims Adjudicator in multiple clergy abuse actions, diocese bankruptcies and university mass tort settlements
- Trial judge in notable appellate cases including: *Silberg v. Anderson*, (litigation privilege), *Gregori v. Bank of America* (lender liability), *Caplungo v. Bondi* (defined an element of negligence per se)

## Honors, Memberships, and Professional Activities

*Completed Virtual ADR training conducted by the JAMS Institute, the training arm of JAMS.*

- Recognized as a "Best Lawyer," *Best Lawyers in America*, 2022
- Recognized as San Francisco Mediation Lawyer of the Year, *Best Lawyers in America,* 2012
- Recognized as San Francisco Arbitrator of the Year, *Best Lawyers in America*, 2020
- Recognized as a Best Lawyer, Alternative Dispute Resolution Category, *Best Lawyers in America*, 2006-2020
- Co-author, *California Discovery Handbook* (West Publishing Company)
- Law Professor (Real Property), Empire College of Law
- Instructor: Civil Procedure, Discovery, Torts, Lender Liability, and ADR
- ADR Forms Committee and editorial contributor, *California Practice Guide: Alternative Dispute Resolution* (the Rutter Group)

## Background and Education

- Chairman of The Board of Directors of JAMS, 2004-2006
- Superior Court of Sonoma County, 1982-1991, Presiding Judge, 1984, Principal Civil Law and Motion Judge, supervised judicial arbitration program, 1986-1991; Presiding Judge of the Appellate Department, 1985
- Sonoma County Municipal Court, 1977-1982, Presiding Judge twice
- J.D., University of California, Berkeley School of Law (formerly Boalt Hall School of Law), 1969
- B.S., Fresno State College, 1966

# News

- August 19, 2021
  **Four JAMS Panelists Named "Lawyers of the Year" and 61 Recognized as "Best Lawyers in America" by Best Lawyers®**
  https://www.jamsadr.com//news/2021/four-jams-panelists-named-lawyers-of-the-year-and-60-recognized-as-best-lawyers-in-america-by-best-lawyers

- August 21, 2020
  **Seven JAMS Panelists Named "Lawyers of the Year" and 57 Recognized As "Best Lawyers in America" by Best Lawyers®**
  https://www.jamsadr.com//news/2020/seven-jams-panelists-named-lawyers-of-the-year-and-57-recognized-as-best-lawyers-in-america-by-best-lawyers

- August 19, 2019
  **Five JAMS Panelists Named "Lawyers of the Year" and 59 JAMS Panelists Recognized As "Best Lawyers in America" by Best Lawyers®**
  https://www.jamsadr.com//news/2019/five-jams-panelists-named-lawyers-of-the-year-and-59-jams-panelists-recognized-as-best-lawyers-in-america-by-best-lawyers

Hon. William L. Bettinelli (Ret.) | JAMS Neutral | General Biography
Two Embarcadero Center • Suite 1500 • San Francisco, CA 94111 • Tel 415-982-5267 • Fax 415-982-5287 • www.jamsadr.com

Case 18-13027-t11    Doc 1012    Filed 07/11/22    Entered 07/11/22 16:48:04 Page 28 of 38

- August 15, 2018

  **Two JAMS Panelists Named Best Lawyers' "Lawyers of the Year;" 57 JAMS Panelists Recognized as 2019 Best Lawyers in America**

  https://www.jamsadr.com//news/2018/two-jams-panelists-named-best-lawyers-lawyers-of-the-year-57-jams-panelists-recognized-as-2019-best-lawyers-in-america

- August 16, 2017

  **Eight JAMS Panelists Named Best Lawyers' "Lawyers of the Year;" 53 JAMS Panelists Recognized as 2018 Best Lawyers in America**

  https://www.jamsadr.com//news/2017/eight-jams-panelists-named-best-lawyers-lawyers-of-the-year-53-jams-panelists-recognized-as-2018-best-lawyers-in-america

- August 16, 2016

  **Five JAMS Panelists Named Best Lawyers "Lawyers of the Year;" 48 JAMS Panelists Recognized as 2017 Best Lawyers in America**

  https://www.jamsadr.com//news/2016/five-jams-panelists-named-best-lawyers-lawyers-of-the-year

- August 17, 2015

  **Four JAMS Panelists Named Best Lawyers "Lawyers of the Year;" 49 JAMS Panelists Recognized as 2016 Best Lawyers in America**

  https://www.jamsadr.com//news/2015/pstrongirvine-calif.-strongndash;-jams-the-largest-private-provider-of-mediation-and-arbitration-services-worldwide-is-prou

- September 2, 2014

  **Four JAMS Panelists Named *Best Lawyers* "Lawyers of the Year;" 42 JAMS Panelists Recognized as 2015 *Best Lawyers in America***

  https://www.jamsadr.com//news/2014/four-jams-panelists-named-best-lawyers-lawyers-of-the-year-42-jams-panelists-recognized-as-2015-best-lawyers-in-america

- August 15, 2013

  **Three JAMS Panelists Named Best Lawyers "Lawyers of the Year;" 43 JAMS Panelists Recognized as 2014 Best Lawyers in America**

  https://www.jamsadr.com//news/2013/three-jams-panelists-named-best-lawyers-lawyers-of-the-year-43-jams-panelists-recognized-as-2014-best-lawyers-in-america

- December 13, 2012

  **38 JAMS Panelists Recognized as 2013 Best Lawyers in America**

  https://www.jamsadr.com//news/2012/38-jams-panelists-recognized-as-2013-best-lawyers-in-america

# Practice Areas

Hon. William L. Bettinelli (Ret.) | JAMS Neutral | General Biography
Two Embarcadero Center • Suite 1500 • San Francisco, CA 94111 • Tel 415-982-5267 • Fax 415-982-5287 • www.jamsadr.com
Case 18-13027-t11    Doc 1012    Filed 07/11/22    Entered 07/11/22 16:48:04 Page 29 of 38
Page 11/22

- Mass Tort Adjudication, Allocation and Administration

# Locations

- San Francisco, California
- Sacramento, California
- Walnut Creek, California
- Silicon Valley, California
- Santa Rosa, California

Available nationwide ›

**Disclaimer**

This page is for general information purposes.  JAMS makes no representations or warranties regarding its accuracy or completeness.  Interested persons should conduct their own research regarding information on this website before deciding to use JAMS, including investigation and research of JAMS neutrals. See More

Hon. William L. Bettinelli (Ret.) | JAMS Neutral | General Biography
Two Embarcadero Center • Suite 1500 • San Francisco, CA 94111 • Tel 415-982-5267 • Fax 415-982-5287 • www.jamsadr.com
Page 15/22
Case 18-13027-t11    Doc 1012    Filed 07/11/22    Entered 07/11/22 16:48:04 Page 30 of 38

# EXHIBIT D
# (PROPOSED ORDER)

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW MEXICO**

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
corporation sole,

Debtor.

Chapter 11

Case No. 18-13027-t11

**ORDER APPROVING APPLICATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR ORDER (I) AUTHORIZING AND
APPROVING THE EMPLOYMENT OF WILLIAM L. BETTINELLI
AS TORT CLAIMS REVIEWER AND (II) AUTHORIZING ACTIONS TO BE
<u>TAKEN PURSUANT TO TORT ALLOCATION PROTOCOL</u>**

Upon consideration of the *Application of the Official Committee of*

*Unsecured Creditors for Order (I) Authorizing and Approving the Employment of*

DOCS_LA:343794.3 05066/002

*William L. Bettinelli as Tort Claims Reviewer and (II) Authorizing Actions to Be Taken*

*Pursuant to Tort Allocation Protocol* [Docket No. ___] (the "<u>Application</u>"),[6] filed by the

Committee in the above-captioned case, and upon the *Declaration of William L. Bettinelli*

(the "<u>Bettinelli Declaration</u>") in support of the Application; and the Court being satisfied

based on the representations made in the Application and in the Bettinelli Declaration

that William L. Bettinelli represents no interest adverse to the Debtor' estates with

respect to the matters upon which he is to be engaged, that he is a disinterested person as

that term is defined under section 101(14) of the Bankruptcy Code and that his

employment by the Committee is necessary; and the Court having jurisdiction to consider

the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue

being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing

that the relief requested in the Application is in the best interests of the Debtor, survivors

and other parties in interest; and the Committee having provided adequate and

appropriate notice of the Application under the circumstances; and after due deliberation

and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is GRANTED.

2.      In accordance with sections 328, 504, and 1103 of the Bankruptcy

Code, Bankruptcy Rules 2014 and 2016 and NM LBR 2016-1, William L. Bettinelli shall

be the Tort Claims Reviewer on the terms set forth in the Application and the Bettinelli

Declaration.

---

[6] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

2

3. Judge Bettinelli is authorized to issue notices of deadlines for the submission of supplementary and other information as contemplated by the Tort Allocation Protocol. The Tort Application Protocol is subject to Bankruptcy Court approval which will be sought in connection with confirmation of the plan.

4. Judge Bettinelli is a Permitted Party under the Court's Bar Date Order.

5. Any information submitted by holders of Abuse/Tort Claims to Judge Bettinelli shall be subject to a mediation privilege, and production of any information by a Tort Claimant (or a Sexual Abuse Claimant's counsel) to Judge Bettinelli shall not constitute a waiver of any attorney-client privilege or attorney-work product doctrine, or any similar privilege or doctrine.

6. Judge Bettinelli is authorized to render professional services as described in the Application.

7. This Order and Judge Bettinelli's review of the Sex Abuse claims prior to confirmation of the Plan is without prejudice to a survivors' right to accept or reject the Plan and to object to the Plan.

8. Judge Bettinelli's review of the Sex Abuse claims prior to confirmation of the Plan and any notice to survivors regarding such review and Tort Allocation Protocol is not a solicitation to accept or reject the Plan.

9. The Committee and Judge Bettinelli are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

10. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

3

11.     This Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation of this Order.

XXX END OF ORDER XXX

Submitted by:


*/s/ Ilan D. Scharf*
James I. Stang (admitted pro hac vice)
Ilan D. Scharf (admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Tel: 310-277-6910/Fax: 310-201-0760
jstang@pszjlaw.com
ischarf@pszjlaw.com

Counsel for the Official Committee of
Unsecured Creditors of the Roman Catholic Church
of the Archdiocese of Santa Fe, a New Mexico corporation
sole, and the Bishop of the Roman Catholic Church
of the Archdiocese of Santa Fe, an Arizona corporation sole

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b)(3), F.R.B.P. 9036 and NM LBR 9036-1(b), I hereby certify that service of the foregoing **APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER (I) AUTHORIZING AND APPROVING THE EMPLOYMENT OF WILLIAM L. BETTINELLI AS TORT CLAIMS REVIEWER AND (II) AUTHORIZING ACTIONS TO BE TAKEN PURSUANT TO TORT ALLOCATION PROTOCOL**" will be made on July 11, 2022 as follows:

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Ronald Andazola    ronald.andazola@usdoj.gov
- James A Askew    jaskew@askewmazelfirm.com, askewmazelign@gmail.com;pstice@askewmazelfirm.com;ericanunez@askewmazelfirm.com;lulivarri@askewmazelfirm.com
- Randy S. Bartell    rbartell@montand.com
- Bonnie P. Bassan    mbglaw@swcp.com, bbg11usc@swcp.com
- Susan Gayle Boswell    susan.boswell@quarles.com, kelly.webster@quarles.com;docketaz@quarles.com
- Gillian Nicole Brown    gbrown@pszjlaw.com
- Kenneth Harris Brown    kbrown@pszjlaw.com
- Robert M. Charles    RCharles@LRRLaw.com, BankruptcyNotices@LRLaw.com
- Everett J. Cygal    ecygal@schiffhardin.com
- Louis T. DeLucia    ldelucia@schiffhardin.com
- J. Daryl Dorsey    jdd@tblaw.com
- Richard T. Fass    , dkidd@perdueandkidd.com;dkurc@perdueandkidd.com
- Elizabeth Sarah Fella    elizabeth.fella@quarles.com, linda.vaubel@quarles.com;docketaz@quarles.com
- Alyson M. Fiedler    afiedler@schiffhardin.com
- Susan M. Freeman    SFreeman@LRRLaw.com, SClark@LRRLaw.com;MSchoenike@LRRLaw.com
- Justin J. Henderson    JHenderson@lrrc.com, cscruggs@lrrc.com
- Charles R. Hughson    crhughso@rodey.com, jcmedfor@rodey.com
- Steven D Jerome    sjerome@swlaw.com, mminnick@swlaw.com;docket@swlaw.com
- Dennis E Jontz    DJontz@LRRLaw.com, jhenderson@lrrlaw.com;mlucero@lrrlaw.com
- Christopher R Kaup    crk@tblaw.com, ramchugh@tblaw.com

- William R Keleher    wkeleher@srklawnm.com, dwatt@srklawnm.com
- John Christian Kelly    jkelly@cblawyers.com, ghadley@cblawyers.com
- Donald Hamilton Kidd    ,
  dkurc@perdueandkidd.com;rfass@perdueandkidd.com
- Jonathan J. Kim    jkim@pszjlaw.com
- Leonard K Martinez-Metzgar    leonard.martinez-metzgar@usdoj.gov
- Edward Alexander Mazel    edmazel@askewmazelfirm.com,
  dwhite@askewmazelfirm.com;pstice@askewmazelfirm.com;askewmazelign@gm
  ail.com;ericanunez@askewmazelfirm.com;lulivarri@askewmazelfirm.com
- George M Moore    mbglaw@swcp.com, gmm11usc@swcp.com
- Robert E Pastor    repastor@mjpattorneys.com
- Stephanie L Schaeffer    sschaeffer@walkerlawpc.com,
  keggleston@walkerlawpc.com;WalkerLawPC14@gmail.com
- Ilan D. Scharf    ischarf@pszjlaw.com
- Rodney L Schlagel    rlschlagel@btblaw.com, atsegura@btblaw.com
- Sharon T. Shaheen    sshaheen@montand.com,
  kherrmann@montand.com;cvaldez@montand.com
- David M. Spector    dspector@schiffhardin.com
- James I. Stang    jstang@pszjlaw.com
- United States Trustee    ustpregion20.aq.ecf@usdoj.gov
- Douglas R Vadnais    drv@modrall.com, doloress@modrall.com
- Thomas D Walker    twalker@walkerlawpc.com,
  mwells@walkerlawpc.com;sroybal@walkerlawpc.com;WalkerLawPC14@gmail.
  com;spatteson@walkerlawpc.com
- Daniel Andrew White    dwhite@askewmazelfirm.com,
  askewmazellawfirm@gmail.com;askewmazelign@gmail.com;pstice@askewmaze
  lfirm.com;ericanunez@askewmazelfirm.com;lulivarri@askewmazelfirm.com
- Lori Lee Winkelman    lori.winkelman@quarles.com,
  amelia.valenzuela@quarles.com;docketaz@quarles.com

2