UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New
Mexico corporation sole,

Debtor.

Chapter 11
Case No. 18-13027-t11

## CREDITOR/CLAIMANT 427'S OPPOSED MOTION TO ALLOW LATE FILED CLAIM TO BE TREATED AS TIMELY

Claimant Jane Doe ("Claimant 427"), by her undersigned counsel, files this Motion for leave to File a Late Claim, and states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), and the Court may enter a final order consistent with Article III of the U.S. Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief requested herein are Rules 3003 and 9006 of the Federal Rules of Bankruptcy Procedure.

### BACKGROUND

3. In November 2007, the Roman Catholic Church of the Archdiocese of Santa Fe ("Archdiocese") received notice of Claimant 427's claims of sexual abuse by Father Arthur

1

Perrault and Father Louis Prefontaine. (**Exhibit 1**, Redacted Archdiocese File, Bates Nos. ASF 039885-8.)

4. Shortly afterwards, the Archdiocese reported the abuse to Kari Brandenburg, the district attorney for New Mexico's Second Judicial District at the time. (Exh. 1 at ASF 039881.)

5. Additionally, December 2007 and January 2008, the Archdiocese compiled a file on Claimant 427's claim, including her school records from St. Charles Borromeo School and St. Pius X High School and minutes of her calls with the Archdiocese Victim Assistance Coordinator and the Archdiocese of Los Angeles. (Exh. 1 at ASF 039870-80, ASF 039882-4.)

6. The Archdiocese also retained counsel to represent it regarding Claimant 427's claim. (Exh. 1 at ASF 039869.)

7. The attorney Mr. Jeffrey S. Trespel of Albuquerque represented Claimant 427 in her sexual abuse claim against the Archdiocese, but he failed to secure any resolution of the claim or terminate his representation of Claimant 427. (Exh. 1 at ASF 039885-6; **Exhibit 2**, Affidavit of Claimant 427.)

8. On December 3, 2018, (the "Petition Date"), the Archdiocese filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 1101 et seq.) with the United States Bankruptcy Court District of New Mexico. (Doc. No. 1.)

9. In its opening Petition, the Archdioceses identified several creditors, including Sexual Abuse Claimants, but failed to identify Claimant 427 as a potential creditor, despite the Archdiocese having actual notice of her claims. (Doc. No. 1; Exh. 1.)

10. On January 10, 2019, the Unsecured Creditors' Committee was formed (the "Committee").

11. Claimant 427 did not receive any notice of the bankruptcy proceedings. (Exh. 2.)

12. Claimant 427 resides in California and has for most of her adult life. (Exh. 2.)

13. The Archdiocese possesses Claimant 427's full name, including her maiden name, her birthdate, and her California address as of late 2007 to early 2008. (Exh. 1.)

14. In the years between her initial claim against the Archdiocese and the Petition Date in 2018, Claimant 427 resided at the following addresses:

   a. **~January 1994 through ~May 2008:** 112078 Babbitt Ave., Granada Hills, CA 91344;

   b. **~May 2008 – ~ Spring 2009:** 10511 Lindley Ave. Apt. 244, Porter Ranch, CA 91326;

   c. **~Spring 2009 – ~ Spring 2010:** 13108 Reservoir Ave., Santa Clarita, CA (Agua Dolce, CA) 91390;

   d. **~Spring 2010 – ~Spring 2011:** Homeless staying with friends;

   e. **~Spring 2011 - ~Spring 2015**: 32905 San Ysidro Lane, Acton, CA 93510;

   f. **~2015 – Present:** PO Box 1104, Acton, CA 93510;

   g. **~Spring 2015 – January 2017:** Friendly Valley Road, Acton, CA (used PO Box for mail);

   h. **~January 2017 - ~August 2017**: 32032 Crown Valley Road, Acton CA 93510;

   i. **~August 2017 – October 2017:** 1414 Soledad Canyon Road, Acton, CA 93510;

   j. **~October 2017 through ~December 2021**: 2628 Cashmere Canyon Road, Acton, CA 93510;

   k. **~December 2021 – ~July 1, 2022:** 37882 Lopez Lane, Palmdale, CA 93552; and

3

l. **August 1, 2022 – Present:** 23306 Burbank Blvd., Woodland Hills, CA 91367. (Exh. 2.)

15. The Archdiocese also knew Claimant 427's attorney's address, as it appears in the attorney's correspondence with the Archdiocese and the Archdiocese's counsel in 2007 and 2008. (Exh. 1, at ASF 039869, ASF 039885.) This correspondence included copies sent to the Archdiocese's current liability insurers, Great American Insurance Company and St. Paul Travelers. (Exh. 1, at ASF 039869; *see* Doc. No. 946, Complaint by Archdiocese against Great American Ins. Co., et al.)

16. This information along with Claimant's address and other identifying information was sufficient to obtain a background report on Claimant 427 to locate her PO Box address that she has had since 2015. Ex. 4, Redacted Background Report.

17. On March 8, 2019, this Court issued an Order setting the Bar Date for filing claims, including Sexual Abuse Claims ("Bar Date Order"). (Doc. No. 130.) The Order required the Archdiocese to send notice by United States mail, first-class postage prepaid, to all known Sexual Abuse Claimants. (Doc. No. 130, ¶ 15.)

18. No notice of the Bar Date was delivered to Claimant 427. (Exh. 2.)

19. Claimant 427 learned of the Bar Date from an attorney sometime in December 2019 or early 2020. (Exh. 2.)

20. At the time, Claimant 427 was advised against filing a Proof of Claim in the bankruptcy proceedings, because the Bar Date had passed. (Exh. 2.)

4

21. On April 5, 2022, Claimant 427 filed her Proof of Claim through undersigned counsel and said Proof of Claim was assigned Claim No. 427. (**Exhibit 3**, Claimant 427's Proof of Claim.)

22. Claimant sought concurrence with this motion pursuant to D.N.M.LR-Civ. 7.1 ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied."). However, attorneys for the unsecured creditors' committee have yet to concur in this motion. The Debtor initially concurred with the proposed motion but did not concur with the current motion as of the filing. Accordingly, this motion is considered opposed.

23. Therefore, Claimant 427 respectfully requests that the Court allow her claim as "tardily filed" but "permitted . . . under the Federal Rules of Bankruptcy Procedure," because Claimant 427 has shown cause to extend the Bar Date. 11 U.S.C. § 502(b)(9); Fed. R. Bankr. P. 3003(c)(3), 9006(b)(1).

24. The Redacted Archdiocese File on Claimant 427 is attached as **Exhibit 1**.

25. Claimant 427's Affidavit is attached as **Exhibit 2**.

26. Claimant 427's Redacted Proof of Claim is attached as **Exhibit 3**.

27. Claimant 427's Redacted Background Check is attached as **Exhibit 4.**

28. A proposed Order granting this Motion is attached as **Exhibit 5**.

## RELIEF REQUESTED

29. Claimant 427 requests that the Court permit her claim as timely filed, because she is a known claimant who was deprived of formal notice of the bankruptcy proceedings.

5

Alternatively, Claimant 427 requests that the Court regard her claim as timely filed based on excusable neglect.

30. If the Court refuses to grant Claimant 427 permission to file her proof of claim, the refusal would result in a forfeiture, which would violate a fundamental goal of the Chapter 11 reorganization process.

31. One of the primary aims of a Chapter 11 restructuring, such as the current case, is to avoid forfeitures by creditors. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.* ("*Pioneer*"), 507 U.S. 380, 389 (1993).

32. Avoiding creditor forfeiture is one of Chapter 11's distinguishing characteristics, setting Chapter 11 apart from Chapter 7, for instance, where the aim is prompt liquidation and distribution of the debtor's estate:

> Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.

*Pioneer*, 507 U.S. at 389 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983)).

## BASIS FOR RELIEF

I. **Claimant 427 Should Be Allowed to File Her Claim Because She Did Not Receive Formal Notice of the Bar Date.**

   A. <u>The Archdiocese Failed to Comply with the Bar Date Order Requirement that It Deliver Formal Notice to Claimant 427.</u>

33. On March 8, 2019, this Court issued the Bar Date Order. (Doc. No. 130.) The Bar Date Order made it clear that known claimants such as Claimant 427 were entitled to formal notice of the Bar Date. The Order stated that:

6

> Within five (5) days of entry of this Order, the Debtor shall also serve by United States mail, first-class postage prepaid, the Sexual Abuse Claims Bar Date Notice . . . on known Sexual Abuse Claimants who:
>
> > a. filed, or threatened to file, lawsuits against the Debtor that allege they were abused;
> >
> > b. contacted the Debtor to report that they were claimants of abuse, whether or not that individual's claim was considered to be substantiated and whether or not the report was written or verbal; or
> >
> > c. are known to the Debtor to be Sexual Abuse Claimants for any other reasons whatsoever.

(Doc. No. 130, ¶ 15.)

34. Claimant 427 was clearly entitled to *actual* service of the Bar Date Notice. The Archdiocese knew very well that Claimant 427 had a sexual abuse-based claim against it. (Exh. 1.) Claimant 427 and her attorney had multiple contacts with the Archdiocese regarding Claimant 427's claim in 2007 and 2008, the Archdiocese reported the claim to the district attorney, and the Archdiocese compiled a file on the claim, including Claimant 427's school records and minutes of her calls with the Archdiocese Victim Assistance Coordinator and the Archdiocese of Los Angeles. (Exh. 1.) Yet, Claimant 427 formal notice of the Bar Date as required by the Bar Date Order. (Exh. 2.)

35. The Bar Date Order clearly requires formal notification of creditors such as Claimant 427. She meets the Order's three criteria for known Sexual Abuse Claimants, namely, those who "threatened to file . . . lawsuits against the debtor," who "contacted the Debtor to report that they were claimants of abuse," and who "are known to the Debtor to be Sexual Abuse Claimants." (Doc. No. 130, ¶ 15.)

36. Therefore, Claimant 427's claim should be accepted as timely.

B. <u>As a Known Claimant, Claimant 427 was Entitled by Law to Formal Notice of the Bar Date.</u>

37. As a matter of law, Claimant 427's claim should be treated as timely filed, because the Archdiocese failed to formally notify her of the Bar Date.

38. Fed. R. Bankr. P. 3003(c)(3) states that "[t]he court shall fix and *for cause shown* may extend the time within which proofs of claim or interest may be filed." (Emphasis added.) The term "cause" is undefined throughout the Bankruptcy Code and Rules. *See, e.g.,* 11 U.S.C. §§ 362(d)(1), 503(a), 707(a), 1112(b)(1); Fed. R. Bankr. P. 3003(c)(3), 9006(b)(1).

39. However, the Tenth Circuit Court of Appeals and the Bankruptcy Court for the District of New Mexico have held that deficient notice of the bar date may satisfy the cause requirement in Rule 3003(c)(3). *In re Herd*, 840 F.2d 757, 758 n. 2 (10th Cir. 1988); *In re Wooten*, 620 B.R. 351, 358 (Bankr. D.N.M. 2020). *See also In re First Magnus Fin. Corp.*, 415 B.R. 416, 422 (Bankr. D. Ariz. 2009) ("Insufficient notice of the bar date may be sufficient cause to extend the bar date.").

　　　1. *As a known creditor of a non-individual Chapter 11 debtor, Claimant 427 has a due process right to formal notice of the Bar Date.*

40. Due process requires that known creditors such as Claimant 427 receive actual notice of the proceedings.

41. The discharging of a creditor's claim in a Chapter 11 bankruptcy under 11 U.S.C. § 1141(d)(4) without reasonable notice and an opportunity to be heard violate the creditor's Fifth Amendment due process rights. *In re Unioil*, 948 F.2d 678, 683-84 (10th Cir. 1991).

8

42. Furthermore, in the case of a known creditor, such as Claimant 427, and a non-individual debtor, such as the Archdiocese, "reasonable notice" must take the form of "formal notice" of the proceedings. *Jaurdon v. Cricket Communications, Inc.*, 412 F.3d 1156, 1159 (10th Cir. 2005) (where the debtor responded to the court's show cause order with "adequate proof that the requisite formal notice was sent to . . . [the known creditors] in a timely manner").

43. For instance, in the Tenth Circuit case of *Reliable Electric Co. v. Olson Constr. Co.*, the claim of a known creditor who was omitted from the debtor's creditor schedule was not dischargeable under the debtor's confirmed reorganization plan, because the lack of formal notice was a denial of the creditor's right to due process. *Reliable Electric Co. v. Olson Constr. Co.*, 726 F.2d 620, 622 (10th Cir. 1984). This was true even though the creditor had "general knowledge" of the bankruptcy proceeding. *Id.*; *see also In re Las Uvas Valley Dairies*, No. 17-12356-t11, 2021 BL 376523, at *4 (Bankr. D.N.M. Oct. 1, 2021) ("A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake.") (Internal quotation marks and citations omitted)); *In re Standard Metals Corp.*, 48 B.R. 778, 786-87 (Bankr. D. Colo. 1985), aff'd on other grounds, 817 F.2d 625 (10th Cir. 1987) ("A violation of a creditor's constitutional rights would most certainly be *cause* for extension of the bar date" under Bankruptcy Rule 3003(c)(3)) (emphasis added).

44. Therefore, because the Archdiocese knew of Claimant 427's claim, she was entitled to receive formal notice of the bankruptcy proceedings. *In re Unioil*, 948 F.2d at 683.

> 2. *It was the Archdiocese's duty to provide formal notice to Claimant 427, not Claimant 427's duty to investigate the proceedings.*

45. The burden was on the Archdiocese to give formal notice of the Bar Date to Claimant 427, because she is a known claimant.

46. In a Chapter 11 bankruptcy case, the burden is on the Debtor to cause formal notice to be given to known or readily ascertainable creditors. *In re Unioil*, 948 F.2d at 683 (citing *Reliable Electric Co.*, 726 F.2d at 622). Such a creditor does not have a duty to investigate and inject herself into the proceedings even if she has actual knowledge of the proceedings. *Id.* at 684; *In re Herd*, 840 F.2d at 759.

47. It is settled law in Chapter 11 non-individual bankruptcies that even an identified or identifiable creditor who has actual knowledge of a debtor's reorganization proceeding has no duty inquire about further court action. *Reliable Electric Co.*, 726 F.2d at 622 (citing *New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297 (1953)). Thus, in *Reliable Electric Co.*, even though the creditor's attorney had actual knowledge of the reorganization proceeding, the court held that notice was inadequate and the creditor's claim was not discharged. *Id.*

48. This rule for Chapter 11 creditors contrasts sharply with the rule Chapter 7 cases, where a creditor who does not receive formal notice but who has actual knowledge of the proceedings may be bound by the bar date. *Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854, 855 (10th Cir. 1989); *see also Fogel v. Zell*, 221 F.3d 955, 963 (7th Cir. 2000).

49. Further, it is only in Chapter 11 bankruptcies, and not in proceedings under Chapter 7 or 13, that the court may extend the bar date "for cause shown." Fed. R. Bankr. P. 3003(c)(3). *See RAF Fin. Corp. v. Resurgens Communications Grp., Inc.,* No. 89-A-1878, 1990 BL 5247, at *7 (D. Colo. Sept. 27, 1990) (distinguishing between the notice requirements of Chapter 7, which

imposes a duty on the creditor to protect herself from being adversely affected by the bankruptcy proceedings, and Chapter 11, which does not impose any duty of inquiry on the known creditor).

50. Accordingly, Claimant 427 was entitled to formal notice of the bankruptcy proceedings, whether or not she had actual knowledge of them.

> 3. *Claimant 427's identity was known to the Archdiocese and her current mailing address was reasonably ascertainable.*

51. Claimant 427 was known to the Archdiocese as a creditor. Furthermore, her current address was "reasonably ascertainable." *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988).

52. Because Claimant 427 was "known to the Debtor to be [a] Sexual Abuse Claimant[]," she was entitled to receive formal notice of the Bar Date, rather than constructive notice by publication of the bankruptcy proceedings in the newspaper. (Doc. No. 130, ¶ 15.) *New York, New Haven & Hartford R.R. Co.*, 344 U.S. at 296; *Tulsa Professional Collection Serv., Inc.*, 485 U.S. at 89-90; *Herd*, 840 F.2d at 758 n. 2; *Las Uvas Valley Dairies*, 2021 BL 376523, at *4.

53. The U.S. Supreme Court has held that a claimant is "reasonably ascertainable" if she can be identified through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4 (1983). On the other hand, reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. at 317.

54. As discussed above, the Archdiocese knew of Claimant 427's claim, hired an attorney, reported the case to the district attorney, requested Claimant 427's school records and created a file on the claim, all starting in approximately November 2007. (Exh. 1.)

55. Thus, the Archdiocese knew or could have readily ascertained by a search of its own records that Claimant 427 was a Sexual Abuse Claimant and located her. *Mennonite Bd. of Missions*, 462 U.S. at 797-98, n.4; *see, e.g., In re USA Gymnastics*, 40 F.4th 775, 777–78 (7th Cir. 2022) (noting that "[i]n general, a creditor is reasonably ascertainable only if the debtor has information about the creditors claim in its possession").

56. However, there is no information to indicate that the Archdiocese employed "reasonably diligent efforts" or any efforts at all to locate Claimant 427. *Id.*; *Las Uvas Valley Dairies*, 2021 BL 376523, at *4.

57. This is a multi-million-dollar bankruptcy with the Archdiocese employing sophisticated counsel to litigate the matter. Even if Claimant 427 was no longer reachable at the same address when the Archdiocese filed its bankruptcy petition in December 2018, the Archdiocese could have located her by other means. There are various ways to locate potential creditors when the debtor has personally identifiable data such as full name, address, and date of birth. The Archdiocese possesses all of this personally identifiable data about Claimant 427. (Exh. 1.)

58. In order to locate Claimant 427, the Archdiocese could have used software such as LexisNexis or Experian to link Claimant's personally identifiable data to present day information. Both LexisNexis and Experian cover the entire United States. As mentioned above, Claimant 427 lived in California when she first lodged her claim with the Archdiocese in late 2007 and she still lives there.

59. Given the nature of this case (which involves claims by people who were sexually abused as children many years ago), it is reasonable – and should have been expected of the

Case 18-13027-t11    Doc 1065    Filed 08/31/22    Entered 08/31/22 10:03:11 Page 12 of 16

Archdiocese – to use a database that cross references past and present data on known claimants. This type of search should have been completed for every individual who satisfied any of the three criteria in the Bar Date Order, especially for those like Claimant 427 who are known to have made claims with the Archdiocese.

60. Therefore, because she is a known creditor who was deprived of formal notice of these proceedings, Claimant 427 has shown cause to allow her claim. Claimant 427 respectfully requests that the Court grant her motion "for cause shown" under Fed. R. Bankr. P. 3003(c)(3).

## II. Alternatively, Claimant 427 Should Be Allowed to File Her Claim Under the Theory of Excusable Neglect.

61. In Chapter 11 bankruptcy cases, the Court is allowed to accept late filed claims caused by "excusable neglect." Fed. R. Bankr. P. 9006(b)(1). A "neglect" as defined by the U.S. Supreme Court in *Pioneer*, "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer*, 507 U.S. at 388. To confirm whether the Court can allow the late filing, the Court should focus on whether the neglect is excusable. *Id.* at 397.

62. In *Pioneer*, the U.S. Supreme Court held that a creditor's failure to file a proof of claim by the bar date was due to excusable neglect when it considered all of the relevant circumstances, including: the danger of prejudice to the debtor; the length of the delay; the reason for the delay and whether such delay was in the control of the party filing the late claim; the possible impact of the delay on judicial proceedings; and whether the party filing the late claim acted in good faith. *Id.* at 395; *see also Wooten*, 620 B.R. 351.

63. Here in the Tenth Circuit, courts give the most weight to the third *Pioneer* factor, the reason for delay, including whether the movant was at fault in causing the delay. *U.S. v. Torres*,

13

372 F.3d 1159, 1163 (10th Cir. 2004). *See also Las Uvas Valley Dairies*, 2021 BL 376523, at *8; *In re Monge*, 2020 Bankr. LEXIS 949, at *4 (Bankr. D.N.M., Apr 2, 2020); *In re Otero County Hosp. Ass'n, Inc.*, 2013 Bankr. LEXIS 75, at *5 (Bankr. D.N.M., Jan. 4, 2013).

64. Treating Claimant 427's claim as timely will not prejudice the Archdiocese. Upon information and belief, the Tort Claims Allocation Protocol has been approved, but the Archdiocese's plan of reorganization has not yet been confirmed. (Doc. No. 1012.) Under these circumstances, Claimant 427's lateness does not prejudice the Archdiocese. *See Wooten,* 620 B.R. at 356 (allowing a late claim filed two weeks before debtors' Chapter 11 reorganization plan was confirmed and noting that "[i]f the problem with a late filed claim is the claim rather than the lateness, there is no *Pioneer* prejudice," nor is there any prejudice if the debtor accrues attorney fees fighting the late claim or if a late claim requires redistribution of money among creditors); *see also In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) (permitting late claim prior to debtor's making any distribution pursuant to its Chapter 11 liquidation plan).

65. Furthermore, as argued above, Claimant 427 is a known creditor entitled to formal notice of the Bar Date pursuant to the terms of the Bar Date Order. (Doc. 130, ¶ 15.) The Archdiocese should not be permitted to argue that it would be prejudiced if it is forced to recognize known creditors. *See Wooten*, 620 B.R. at 357 ("A significant due process concern overshadows Debtors' arguments" that a known creditor should be excluded for lateness even though the creditor never received formal notice of the Bar Date.)

66. As for the length of the delay, Claimant filed her claim within three years of the Bar Date. In at least one case, the New Mexico Bankruptcy Court for the District of New Mexico

allowed a late claim to be filed three years and three months after the bar date. *Las Uvas Valley Dairies*, 2021 BL 376523, at *7-8 (noting the "significant delay," but allowing the late claim because it was filed only three months after the court-approved settlement, a final creditor distribution had not yet occurred, and the late claimant waived rights to an earlier distribution).

67. Claimant has good cause for the delay in filing her claim. She did not receive notice of the bankruptcy, either by mail as required by the Court Order or by any other means. Therefore, Claimant 427 could not have filed her claim before the Bar Date. Further, after the Bar Date, Claimant 427 was advised by an attorney that she could not file a claim. (Exh. 2,).

68. For the same reasons that the Archdiocese is not prejudiced by the admission of Claimant 427's claim, granting this Motion will not unduly delay these bankruptcy proceedings. *See Wooten*, 620 B.R. at 357 (finding that "administration of the case was not delayed" by claim filed nearly six months late but before confirmation of debtors' reorganization plan); *see also In re Beltrami Enters., Inc.*, 178 B.R. 389, 392 (Bankr. M.D. Pa. 1994) (admitting a claim filed two years late where there was no indication that the delay negatively impacted efficient court administration); *Sacred Heart Hosp. of Norristown*, 186 B.R. at 897 (noting that the impact of a several-month claim delay upon the court proceedings was "practically nil").

69. Finally, Claimant 427 acted in good faith. Claimant 427 should not be penalized because the Archdiocese failed in its duty to serve her formal notice of the Bar Date. Nor should she be penalized because she did not receive notice of it by other means in California. The Court should find that Claimant 427 has acted in good faith, because her actions are consistent with her stated reasons for the delay in filing, namely that she only learned of the bankruptcy after the Bar

15

Date and she was informed that she could not file a claim. *See In re Infiltrator Sys., Inc.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999) (finding good faith where the "actions of [Claimant 427] are consistent with [her] explanation for not filing a proof of claim prior to the bar date").

70. Therefore, in the alternative, Claimant 427's late filing should be allowed based on excusable neglect.

## CONCLUSION

71. Accordingly, based on the foregoing, Claimant submits that cause exists for the Court to grant the relief requested herein under Fed. R. Bankr. P. 3003(c)(3) and 9006(b)(1).

72. Claimant has not previously sought the relief requested herein from this or any court.

WHEREFORE, Claimant respectfully requests that the Court treat her claim as timely filed.

Respectfully submitted,

*/s/ Ben Davis*
Davis Kelin Law Firm, LLC
127 Bryn Mawr Dr SE
Albuquerque, NM 87106
(505) 242-7200, (505) 559-4808 (Fax)
bdavis@daviskelin.com

## CERTIFICATE OF SERVICE

In accordance with NM LBR 9036-1 and Fed. R. Civ. P. 5(b)(2)(E), this certifies that ser-vice of the foregoing document was served this August 31, 2022, via the notice transmission fa-cilities of the case management and electronic filing system of the Bankruptcy Court.

*/s/ Ben Davis*
Filed electronically August 30, 2022