UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF           Case No. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,
a New Mexico corporation sole

---

**DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED
NOVEMBER 3, 2022**

---

**ELSAESSER ANDERSON, CHTD.**

**Ford Elsaesser**
**Bruce A. Anderson**
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
Email: ford@eaidaho.com
Email: brucea@eaidaho.com

-and-

**WALKER & ASSOCIATES, P.C.**

**Thomas D. Walker**
500 Marquette Ave NW, Suite 650
Albuquerque, NM 87102
(505) 766-9272
(505) 766-92878 (fax)
Email: twalker@walkerlawpc.com
*Attorneys for Debtor*

**SECTION 1: INTRODUCTION** ................................................................. 1

**SECTION 2: RULES OF INTERPRETATION** ..................................... 1

**SECTION 3: DEFINITIONS** .......................................................... 2

**SECTION 4: PLAN OBJECTIVES AND SUMMARY** ...................... 20

    **4.1   Objectives.** ........................................................................ 20

**SECTION 5: TREATMENT OF UNCLASSIFIED CLAIMS** ............. 22

    **5.1   Administrative Claims.** ................................................. 22

**5.1.1   Bar Date for Claims Arising or Occurring After Petition Date.** ....... 22

**5.1.2   Objections to Post-Petition Proofs of Claims.** ........................... 22

    **5.2   Professional Claims.** ................................................... 22

    **5.2.1  Bar Dates for Professional Claims.** ........................... 22

    **5.2.2  Objections to Professional Claims.** ............................ 23

    **5.3   U.S. Trustee Fees.** ....................................................... 23

**SECTION 6: CLASSIFICATION OF CLAIMS** ............................... 23

**SECTION 7: TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS** ............ 24

    **7.1   Class 1: Other Priority Claims** ..................................... 25

    **7.2   Class 2: General Unsecured Convenience Claims.** .......... 25

    **7.3   Class 7: Employee/Retirement Claims.** ....................... 25

**SECTION 8: TREATMENT OF IMPAIRED CLASSES OF CLAIMS** ........... 25

    **8.1   Class 3: Tort Claims (Other than Unknown Tort Claims)** ..... 25

    **8.2   Class 4: Unknown Tort Claims** ................................. 28

    **8.4   Class 6: Penalty Claims** ............................................. 31

    **8.5   Class 8: Abuse Related Contingent Claims** ................. 31

**SECTION 9: ACCEPTANCE OR REJECTION OF PLAN** ............. 31

    **9.1   Classes Entitled to Vote** ............................................. 31

    **9.2   Presumed Acceptance of this Plan** ............................. 31

    **9.3   Presumed Rejection of this Plan** ............................... 32

    **9.4   "Cram Down" Request** ............................................. 32

**SECTION 10: MEANS OF IMPLEMENTATION OF THE PLAN** ........ 32

    **10.1  Establishment of Escrow Account.** ........................... 32

    **10.2  Funding.** .................................................................. 32

    **The following will be transferred by wire transfer to the Escrow Account:** ........ 32

i.    **Debtor's Initial Contribution.** ...................................... 32

ii.   **Travelers Contribution.** ................................................ 32

i

iii.     **Arrowood Contribution.**......................................................................... 32

iv.     **U.S. Fire Contribution.**.......................................................................... 32

v.     **Great American Contribution.** ................................................................ 33

vi.     **Catholic Mutual Contribution.** .............................................................. 33

vii.     **CNA Contribution.** ................................................................................. 33

viii.     **Second Debtor Contribution.**................................................................. 33

**10.3    Payment and Treatment of Claims Other Than Tort Claims and Unknown Tort Claims.**34

**10.4    Retained Claims**.................................................................................... 34

**10.5    Approval of Financing and 363 Sales.** ................................................ 35

**10.6    Approval of Settlement Agreements.** .................................................. 35

**10.7    Indemnification of Settling Insurers**.................................................. 35

**10.8    Debtor's Waiver and Release of Claims Against ASF Participating Parties.** 36

**10.9    Dismissal of Adversary Proceedings**.................................................. 36

**10.10 Non-Monetary Commitment to Healing and Reconciliation.** ...................... 36

**10.11 Procedure for Determination of Claims Other Than Tort Claims or Unknown Tort Claims.**36

**10.13 Payments Effective Upon Tender.** ............................................................. 37

**10.14 Preservation of Debtor's Claims, Demands, and Causes of Action.** ............ 37

**10.15 Special Provisions Governing Unimpaired Claims.** ................................... 38

**10.16 Operative Documents**................................................................................. 38

**10.17 Return of Deposits.**................................................................................... 38

**10.18 Delivery of Distributions (Except to Tort Claims and Unknown Tort Claims).** 38

**10.19 Transmittal of Distributions to Tort Claimants and Unknown Tort Claimants.** 39

**10.20    Efforts Regarding Absence of Address or Returned Mail.**................................ 39

**SECTION 11: ASF SETTLEMENT TRUST** .................................................... 39

**11.1    Establishment of ASF Settlement Trust** ............................................ 39

**11.2    Funding** ................................................................................................ 39

**11.3    Reserve Accounts** ............................................................................... 40

**11.4    No Execution**....................................................................................... 40

**11.6    Special Distribution Conditions.** ........................................................ 40

**SECTION 12: UNKNOWN TORT CLAIMS TRUST**....................................... 41

ii

12.1   Establishment of Unknown Tort Claims Trust .................................................. 41

12.2   Funding ........................................................................................................... 41

12.3   Reserve Accounts ........................................................................................... 42

12.4   No Execution.................................................................................................... 42

12.6   Special Distribution Conditions. ..................................................................... 42

SECTION 13: TREATMENT OF EXECUTORY CONTRACTS .......................... 43

13.1   Assumption and Rejection of Executory Contracts. ....................................... 43

13.2   Claims Based on Rejection of Executory Contracts. ...................................... 43

13.3   Indemnification of Members, Managers, Officers, and Employees. ............. 44

SECTION 14: OTHER POST-EFFECTIVE DATE OBLIGATIONS...................... 44

14.1   Closing. ............................................................................................................ 44

14.2   Obligations of the Reorganized Debtor............................................................ 44

14.3   No Professional Fees or Expenses. .................................................................. 45

14.4   Closing of the Bankruptcy Case. ..................................................................... 45

SECTION 15: INSURANCE MATTERS................................................................. 45

SECTION 16: LITIGATION .................................................................................... 47

16.1   Preservation of Retained Claims. .................................................................... 47

SECTION 17: LIQUIDATION OF TORT CLAIMS AND UNKNOWN TORT
CLAIMS     47

17.1   Liquidation and Payment of Tort Claims. ....................................................... 47

17.2   Effect of No Award on Tort Claims ................................................................. 48

SECTION 18: CONDITIONS PRECEDENT ......................................................... 48

18.1   Conditions to Occurrence of the Effective Date. ............................................ 48

18.2   Waiver of Conditions. ...................................................................................... 49

18.3   Non-Occurrence of Effective Date. ................................................................. 49

SECTION 19: EFFECTS OF CONFIRMATION ................................................... 49

19.1   Discharge.......................................................................................................... 49

19.2   Vesting. ............................................................................................................. 50

19.3   Exculpation and Limitation of Liability............................................................ 50

19.4   Limitation of Liability........................................................................................ 50

19.5   Channeling Injunction. ..................................................................................... 50

19.6   Supplemental Injunction Preventing Prosecution of Claims Against Settling
Insurers and Insured Entities.............................................................................. 52

19.7   Term of Injunctions or Stays and Confirmation of Settlements.................... 53

19.8   Insurer Settlement Agreements Incorporated into the Confirmed Plan. .... 53

**SECTION 20: MODIFICATION OF PLAN** ............................................................. 53

20.1 **Non-Material Modification of Plan.** ................................................... 53

20.2 **Additional Documentation; Non-Material Modifications of Plan Documents.** 54

20.3 **No Re-Solicitation.** ..................................................................................... 54

**SECTION 21: RETENTION OF JURISDICTION** ................................................... 54

**SECTION 22: REORGANIZATION OF DEBTOR** ................................................... 56

22.1 **Continued Corporate Existence of the Archdiocese and Operation of the Reorganized Debtor.** ................................................................................... 56

22.2 **Management of Reorganized Debtor** ............................................................. 57

**SECTION 23: GENERAL PROVISIONS** ............................................................... 57

23.1 **Election Pursuant to § 1129(b).** ................................................................. 57

23.2 **Post-Confirmation Coverage.** ..................................................................... 57

23.3 **Extension of Payment Dates.** ..................................................................... 57

23.5 **Notices.** ......................................................................................................... 57

23.6 **Closing of the Bankruptcy Case.** ............................................................... 58

23.7 **Interest.** ......................................................................................................... 58

23.8 **Additional Assurances.** ............................................................................... 58

23.9 **Withdrawal of Plan.** ..................................................................................... 58

23.10 **Severability and Reformation.** ..................................................................... 58

23.11 **Prohibition Against Prepayment Penalties.** ............................................. 58

23.12 **Fractional Dollars.** ....................................................................................... 58

23.13 **Payment of Statutory Fees and Filing of Quarterly Reports.** .................. 59

23.14 **Reservation of Rights.** ................................................................................. 59

23.15 **No Professional Fees or Expenses.** ............................................................. 59

23.16 **Dissolution of Committee.** ........................................................................... 59

23.17 **Headings.** ....................................................................................................... 59

23.18 **Section 1146 Exemption.** ............................................................................. 59

23.19 **Successors and Assigns.** ............................................................................... 59

## SECTION 1: INTRODUCTION

**1.1**     The Roman Catholic Church of the Archdiocese of Santa Fe, New Mexico, a New Mexico corporation sole, the debtor and debtor-in-possession, in the above-captioned Chapter 11 reorganization case proposes the following Plan of Reorganization pursuant to §1121 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*[1]

**1.2**     ALL CLAIMANTS ARE STRONGLY ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER IMPORTANT INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE BANKRUPTCY CASE AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE PROJECTED POST-CONFIRMATION OPERATIONS OF THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## SECTION 2: RULES OF INTERPRETATION

**2.1**     The rules of construction in § 102 apply to this Plan to the extent consistent with any other provision in this Section. In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to," "relates to," or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

**2.2**     In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a)[2] shall apply. If any act under this Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. Enlargement of any period of time prescribed or allowed by this Plan shall be governed by the provisions of Rule 9006(b).

**2.3**     The definition of any capitalized term or provision in a Plan Document shall be incorporated by reference in this Plan unless this Plan provides a different definition for such term or provision. In the event of any conflict between a definition of a term or provision in a Plan Document and this Plan, the definition or provision in this Plan will control unless otherwise provided in this Plan or the Confirmation Order.

**2.4**     If the definition given to any term or provision in this Plan is inconsistent with the definition of such term under the Bankruptcy Code, the Disclosure Statement, the ASF Settlement

---

[1] All references to "Code Section" or "§" are to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* the Bankruptcy Code, unless otherwise indicated.

[2] All references to "Rule" are to the Bankruptcy Rules (as defined in Section 3), unless otherwise indicated.

Trust Agreement, the Unknown Tort Claims Trust Agreement, the Participating Party Agreements, or the Insurer Settlement Agreements, then the definition ascribed to such term in this Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code or such other document.

2.5    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected or upon an order of the Bankruptcy Court.

2.6    Unless otherwise specified, any reference to an existing document means the document as it has been, or may be, amended or supplemented until the date of the Confirmation Hearing.

2.7    Unless otherwise indicated, the phrase "under this Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of this Plan.

2.8    Unless otherwise specified, all references to the terms "Sections," "Paragraphs," "Clauses," or "Exhibits" are references to this Plan's Sections, Paragraphs, Clauses, or Exhibits. Such references shall be applicable regardless of whether or not such terms are capitalized.

2.9    Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

2.10    Nothing contained in this Plan constitutes an admission or denial by any Entity of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

## SECTION 3: DEFINITIONS

3.1    **Scope of Definitions.** For purposes of this Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Section 3 will have the meanings hereinafter stated. The defined terms stated in Section 3 also are substantive terms of this Plan, and Section 3 will be deemed incorporated throughout the rest of this Plan to convey the substantive provisions included in the defined terms.

3.2    **"Abuse"** means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual, psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct.

2

**3.3** **"Abuse Claim"** means any Claim (as defined in § 101(5)) against the Archdiocese resulting or arising in whole or in part, directly or indirectly from any Abuse, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Archdiocese or any other Person or Entity for whose acts or failures to act the Archdiocese is or was allegedly responsible.

**3.4** **"Abuse Documents"** are those documents described in the Abuse Documents Memorandum of Agreement**.**

**3.5** **"Abuse Documents Archive"** means a repository created, organized, maintained and administered by the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences' Center for Southwest Research and Special Collections ("CSWR") to allow public access to Abuse Documents that have been reviewed, redacted and produced to CSWR in accordance with the terms of the Abuse Documents Memorandum of Agreement.

**3.6** **"Abuse Documents Memorandum of Agreement"** means that certain "Memorandum of Agreement" between the Archdiocese, the Committee, and the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences Center for Southwest Research and Special Collections Memorandum of Agreement among the Debtor, the Committee, and the CSWR dated April 20, 2020, a copy of which is attached hereto as Exhibit A.

**3.7** **"Abuse Related Contingent Claim"** means any Entity's Claim against the Archdiocese for contribution, indemnity, or reimbursement arising as a result of such Entity's liability to pay or defend any Tort Claim.

**3.8** **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in § 503(b) and referred to in § 507(a)(2) including the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's businesses, compensation for professional services and reimbursement of expenses awarded under §§ 330(a) or 331, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28, United States Code.

**3.9** **"Adversary Proceedings"** means the following adversary proceedings pending in the Bankruptcy Court: Adv. No. 20-01058, Adv. No. 20-01059, Adv. No. 20-01061, and Adv. No. 22-01005.

**3.10** **"Affiliate"** shall have the meaning ascribed to it under 11 U.S.C. § 101(2) and shall also include an Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the other Entity. "Affiliate" includes Subsidiary and Parent. Religious Orders and the Holy See are not Affiliates of any of the Archdiocese Parties.

**3.11** **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

3

**3.12** **"Allowed Claim"** means, (i) any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Sections 5 or 10 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim tardily filed with leave of the Bankruptcy Court; or (iv) any Claim expressly allowed by a Final Order or hereunder. Tort Claims are not deemed Allowed Claims except as deemed Allowed by this Plan for voting purposes, or as may be specifically provided in the Tort Claims Allocation Protocol or Final Order.

**3.13** **"Archdiocese"** means the Roman Catholic Church of the Archdiocese of Santa Fe, New Mexico, a New Mexico corporation sole, the debtor and debtor-in-possession in the Bankruptcy Case, its Estate, its predecessors, successors, and assigns. "Archdiocese" also means "Debtor."

**3.14** **"Archdiocese Parties"** means collectively: (i) the Reorganized Debtor; (ii) the Archdiocese; (iii) the ASF Participating Parties; (iv) any and all named insureds, additional insureds, insureds, and any Person or Entity to the extent such Person or Entity is covered under the Certificates or the Insurance Policies with respect to which the Archdiocese has authority, or has been granted authority, to release the Claims released pursuant to the Insurer Settlement Agreements and this Plan; (v) any and all past and present shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, and Representatives of the Archdiocese and of the ASF Participating Parties, and (vi) each of the past, present, and future Affiliates, holding companies, merged companies, related companies, divisions, and acquired companies of the Archdiocese and ASF Participating Parties, and each of their respective past, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors, and assigns, each in their capacity as such. An Archdiocese Party does not include, (a) any Perpetrator, (b) any archdiocese or diocese other than the Archdiocese itself, (c) any Religious Order, (d) the Holy See, and (e) any Person or Entity, other than the Reorganized Debtor, the Archdiocese, and the ASF Participating Parties, that alleges to be covered under the Insurance Policies, or the Certificates to the extent such coverage allegations are finally determined to be meritless.

**3.15** **"Arrowood"** means Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America, and, solely in their capacity as such, (i) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (ii) each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting

4

on behalf of, by, through or in concert with them. For the avoidance of doubt, the inclusion of the phrase "future parents" in this definition is limited to such Entity in its capacity as a "future parent," and nothing contained herein shall limit or alter the obligations of any such Entity to the extent that such obligations exist independent of such Entity's role as a "future parent."

3.16    **"Arrowood Settlement Agreement"** means the Settlement Agreement, Release, and Policy Buyback by and between the Debtor, Arrowood, and the Archdiocese Parties dated October ___, 2022.

3.17    **"ASF Participating Parties"** means: (i) those Entities listed on <u>Exhibit B</u> to this Plan, that are providing or will provide consideration or a portion of the funding for this Plan in exchange for: (a) the release of any Claim by the Debtor against such ASF Participating Party, (b) the benefit of the Channeling Injunction, (c) Debtor's execution of the applicable Participating Party Agreement, and (d) any other benefits in favor of ASF Participating Parties under this Plan, and (ii) the Representatives of such Entities.

3.18    **"ASF Settlement Trust"** means the trust to be established pursuant to this Plan and the ASF Settlement Trust Agreement for the benefit of holders of Class 3 Tort Claims.

3.19    **"ASF Settlement Trust Agreement"** means the trust agreement attached as <u>Exhibit C</u> to this Plan.

3.20    **"ASF Settlement Trust Assets"** means all real and personal property funded to the ASF Settlement Trust.

3.21    **"ASF Settlement Trust Documents"** means the ASF Settlement Trust Agreement, Tort Claims Allocation Protocol, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of this Plan that relate to the creation, administration and funding of the ASF Settlement Trust.

3.22    **"ASF Settlement Trustee"** means Omni Management Group, LLC, or any successor duly appointed pursuant to the terms of this Plan and the ASF Settlement Trust Agreement.

3.23    **"Avoidance Rights"** means those rights that may be asserted by the Debtor, as debtor-in-possession, or the Committee on behalf of the Estate to avoid and recover transfers, liens, or obligations, described in §§ 544, 545, 546, 547, 548, 549, 550, 551, 552 and 553, and any other actions provided for under applicable law that allows a debtor-in-possession or trustee to avoid certain transfers, but excluding those rights, if any, against the ASF Participating Parties and the Settling Insurers that are compromised and released pursuant to this Plan or the Insurer Settlement Agreements.

3.24    **"Award"** means the amount payable to a Claimant as determined in accordance with the terms of the Tort Claims Allocation Protocol or the Unknown Tort Claims Allocation Protocol.

3.25    **"Ballot"** means the ballot that is used by a Claimant to accept or reject this Plan, and pursuant to which each Claimant may make certain elections regarding the treatment of such

Claimant's Claims as provided in this Plan, including releases of the Protected Parties as set forth in the Insurer Settlement Agreements and this Plan.

3.26 **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, and any amendments thereto.

3.27 **"Bankruptcy Case" or "Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, on December 3, 2018, Case No. 18-13027.

3.28 "**Bankruptcy Claims Orders**" means the *Orders on Ownership of Certain Claims*, entered in the Bankruptcy Case as Doc. Nos. 745, 768, 781, 783, and 889.

3.29 **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Mexico, or such other court having jurisdiction over this Bankruptcy Case or any proceeding within.

3.30 **"Bankruptcy Notice"** means notice given pursuant to this Plan, the Insurer Settlement Agreements, or Confirmation Order, or as required under Bankruptcy Rule 2002, 6004(a) and (c) and applicable local rules, sent to: (a) all known holders of Claims against any Archdiocese Party, including Tort Claims, and their attorneys, if any; (b) the Unknown Claims Representative; (c) counsel for the Committee; (d) counsel for the Settling Insurers; (e) the Archdiocese Parties; (f) the United States Trustee; (g) the ASF Settlement Trustee and its counsel; (h) the Unknown Tort Claims Trustee and its counsel; and (i) all other Entities as required by the Bankruptcy Code or as directed by the Court. Notice may also be given by local publication within New Mexico and the surrounding areas.

3.31 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 Cases, together with all amendments and modifications thereto.

3.32 **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

3.33 **"Canon Law"** means the Code of Canon Law of the Roman Catholic Church, codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

3.34 **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

3.35 **"Catholic Mutual"** means the Catholic Mutual Relief Society of America, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, reinsurers, retrocessionaries, and divisions; (ii) each of the foregoing Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys,

joint ventures, joint venturers, representatives, and claims handling administrators; (iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

3.36 **"Catholic Mutual Settlement Agreement"** means the settlement agreement between Catholic Mutual and the Debtor.

3.37 **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor's Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtor's Estate, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to § 362; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Rights; (6) claims for tax refunds; and (7) any other claims which may be asserted against third parties or insiders.

3.38 **"Certificates"** means contracts, binders, certificates, or policies of insurance issued or allegedly issued by Catholic Mutual to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure one or more of the Archdiocese Parties, and after the Effective Date shall mean such documents with their terms, conditions and limits as amended in accordance with the Catholic Mutual Settlement Agreement. The term "Certificates" does not include any binder or certificate that was issued to any Entity other than the Archdiocese, as the certificate holder and that also provides coverage to the Archdiocese and the Archdiocese Parties or other "Protected Persons" as defined and identified therein as covered parties.

3.39 **"Channeled Claim"** means each and every Tort Claim, including Unknown Tort Claims, and each and every present or future Claim against any of the Protected Parties, or against any Person or Entity covered by the Settling Insurers, to the extent such Claim, directly or indirectly, arises out of, relates to, or is in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim (including an Unknown Tort Claim), including each and every Tort Claim, Unknown Tort Claim, Late-Filed Tort Claim, Related Insurance Claim, Extra-Contractual Claim, Medicare Claim, Claim based on *respondeat superior* or any employment based theory, and all other Claims that relate to the Insurance Policies and Certificates. "Channeled Claim" does not include: (a) any Claim against any Perpetrator, (b) any Claim against a diocese or archdiocese other than the Archdiocese itself, (c) Claims against a Religious Order, including any liability of a Religious Order as a successor to any religious community of the Archdiocese in each case, unless it is a Participating Religious Order; (d) any Claim against the Holy See; (e) a Tort Claim that arises from, relates to, or arises in connection with Abuse the earliest incident of which occurred after the Petition Date, or (f) any Covered Non-Tort Claim.

3.40 **"Channeling Injunction"** means the injunction provided under Section 19.5 of this Plan.

**3.41** "**Chapter 7 Estates**" are those chapter 7 bankruptcy estates of Class 3 Tort Claimants who are debtors in reopened chapter 7 bankruptcy cases, pursuant to the Bankruptcy Claims Orders.

**3.42** "**Chapter 11 Professionals**" means, collectively, the Debtor's Professionals and the Committee's Professionals.

**3.43** "**Claim**" means any claim within the definition of § 101(5), including without limitation any past, present or future claim, demand, action, request, cause of action, suit, proceeding, or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person or Entity, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including but not limited to cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights causes of action or orders. "Claim" includes any claim or cause of action or damages relating to a "Wrongful Act" as defined under the Insurance Policies or Certificates, "Contribution Claim," any "Related Insurance Claim," any "Channeled Claim," any "Extra-Contractual Claim," "Interest," any "Tort Claim," "Abuse Related Contingent Claim," any "Unknown Tort Claim," "Administrative Claim," "Medicare Claim," and any "Direct Action Claim."

**3.44** "**Claimant**" means a holder or owner of a Claim.

**3.45** "**Claims Bar Date**" means June 17, 2019, which was the last date for filing Proofs of Claims against the Estate pursuant to the Bankruptcy Court's Order entered on March 19, 2019 [Docket No. 130].

**3.46** "**Claims Objection Bar Date**" means, unless extended by the Court, the first Business Day that follows the 60th day after the Effective Date, by which any objection to a Claim (excluding Tort Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

**3.47** "**Class 3 Tort Claim**" is a Tort Claim other than a Class 4 Unknown Tort Claim.

**3.48** "**Class 3 Tort Claimant**" is the holder of a Class 3 Tort Claim.

**3.49** "**Closing**" means the payments and transfers to the ASF Settlement Trust of those assets required to be paid and transferred in accordance with Section 14 of this Plan.

**3.50** "**CNA**" means the Continental Insurance Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

8

**3.51** **"CNA Settlement Agreement"** means the settlement agreement between the Debtor and CNA.

**3.52** **"Co-Defendant"** means an Entity that is named or could be named as a defendant in a lawsuit in which the Debtor is also named or could be named as a defendant and/or who is alleged to be fully, partially or jointly responsible for a Claim asserted or that could be asserted in the future against both such Entity and the Debtor, including a co-debtor as described in § 509. For purposes of this Plan, none of the Protected Parties is or shall be deemed to be a Co-Defendant.

**3.53** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case, as such committee may be reconstituted from time to time.

**3.54** **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP and all other professionals, if any, which the Committee has retained or may retain to provide professional services in accordance with § 1103(a) and as approved by the Bankruptcy Court**.**

**3.55** **"Conditional Payment"** means any payment made to a Tort Claimant or a holder of a Channeled Claim under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

**3.56** **"Confirmation Date"** means the date of the entry of the Confirmation Order.

**3.57** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of this Plan, as such may be continued from time to time.

**3.58** **"Confirmation Order"** means a Final Order confirming this Plan after a hearing upon Bankruptcy Notice. The Confirmation Order shall be acceptable in form and substance to the Debtor, the Committee, and the Settling Insurers. The Confirmation Order shall contain no provision that is contrary to or inconsistent with the Insurer Settlement Agreements.

**3.59** **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**3.60** **"Contribution Claim"** means any Claim by an Insurer against any other Insurer seeking contribution, equitable contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, rights under "other insurance" clauses, or pursuant to any other theory under law or in equity relating to the defense or payment of such paying insurer of all or any part of any Claim (a) asserted against an Archdiocese Party; (b) relating to the Insurance Policies or Certificates; or (c) channeled to or paid, in whole or in part, by the ASF Settlement Trust and/or the or the Unknown Tort Claims Trust.

**3.61** **"Contribution Date"** is the 30th day following the later of: (a) the date on which the Confirmation Order becomes a Final Order, or (b) the date on which the order approving the Insurer Settlement Agreements becomes a Final Order, whereupon all cash contributions by the Insurers are due to be contributed to the ASF Settlement Trust.

**3.62** **"Covered Non-Tort Claim"** means any Claim, other than a Tort Claim, Medicare Claim or Channeled Claim, which is covered by an Insurance Policy or Certificate issued to the Archdiocese.

**3.63** **"Debtor"** means the Archdiocese.

**3.64** **"Debtor Contribution"** means the $75,000,000 to be paid by the Debtor to the Escrow Account pursuant to this Plan, which is comprised of $69,600,000 ("Debtor's Initial Contribution") paid in immediately available funds on September 30, 2022, and $5,400,000.00 to be paid by the Debtor on or before March 31, 2023, as evidenced by the Promissory Note ("Debtor's Second Contribution").

**3.65** **"Debtor's Professionals"** means all professionals which the Debtor has retained or may retain to provide professional services in accordance with §§ 327(a) and 327(e), including but not limited to counsel, special counsel, accountants, brokers, appraisers, surveyors, and redaction specialists.

**3.66** **"Direct Action Claim"** means any Claim by any Entity against any of the Settling Insurers that is identical or similar to, arises from, relates to, or arises in connection with any Channeled Claim, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer for monetary or other relief.

**3.67** **"Disallowed Claim"** means: (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law. Disallowed Claims will not receive any payment or Distribution under this Plan.

**3.68** **"Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

**3.69** **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

**3.70** **"Disputed Claim"** means a Claim: (a) that is listed as disputed in the Debtor's Schedules filed with the Bankruptcy Court; or (b) as to which a Proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b) (1) and as to which a timely objection has been filed and not been withdrawn or resolved by consensual agreement or by a Final Order of the Bankruptcy Court.

**3.71** **"Distribution"** means any transfer of Cash or other property or instruments to a Claimant by the Reorganized Debtor, the ASF Settlement Trustee, or the Unknown Tort Claims Trustee.

**3.72** **"District Court"** means the United States District Court for the District of New Mexico.

**3.73** **"Effective Date"** is the date upon which all of the following have occurred: (i) this Plan has been confirmed by a Final Order in form and substance acceptable to all of the Parties (the "Confirmation Order"); (ii) each Insurer Settlement Agreement has been approved by a Final Order in form and substance acceptable to the parties thereto; (iii) each Participating Party Agreement has been approved by a Final Order in form and substance acceptable to the parties thereto; (iv) all contributions from the Funding Group have been received by the Escrow Agent, the ASF Settlement Trustee, or the Unknown Tort Claims Trustee; (v) the Promissory Note and the Mortgage have been executed and delivered; and (vi) all other conditions to the Effective Date established in this Plan have been satisfied or waived.

**3.74** **"Entity"** has the meaning set forth in § 101(15), and also includes an individual, any corporation, corporation sole, partnership, association, limited liability company, limited liability partnership. joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other "Person" within the definition of § 101(41), and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity, including those within the definition set forth in § 101(15).

**3.75** **"Escrow Account"** means the account held by the Escrow Agent into which the Debtor Contribution, the Insurer Contributions and the Participating Religious Orders Contributions shall be deposited.

**3.76** **"Escrow Agent"** means the Entity agreed upon by the Settling Insurers, the Archdiocese, and the Committee to hold the Debtor Contribution, the Insurer Contributions and the Participating Religious Orders Contributions in the Escrow Account pursuant to Section 10 herein.

**3.77** **"Estate"** means the bankruptcy estate of the Debtor as created under § 541.

**3.78** **"Exculpated Parties"** means the Archdiocese Parties, the Settling Insurers, the Participating Religious Orders, the Committee and its present and former members, the Chapter 11 Professionals, and all Representatives of the foregoing, acting in such capacity. "Exculpated Parties" shall not include: (a) a Perpetrator, (b) any diocese or archdiocese (other than the Archdiocese itself), (c) any Religious Order (unless it is a Participating Religious Order), or (d) the Holy See.

**3.79** "**Executory Contracts**" means those executory contracts and unexpired leases listed by the Debtor in Schedule G filed in this Bankruptcy Case.

**3.80** **"Extra-Contractual Claim"** means any Claim based in whole or in part on any allegations that that a Settling Insurer: (a) acted in bad faith or in breach of any express or implied duty, obligation, or covenant, contractual, statutory, regulatory or otherwise, including any Claim on account of alleged bad faith; (b) failed to act in good faith; (c) committed fraud,

11

misrepresentation or any other act giving rise to tort liability; (d) failed to provide insurance coverage under any Certificate or Insurance Policy; (e) failed or refused to compromise and settle any allegedly insured Claim; (f) violated or breached any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (g) violated any statute, regulation, or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, consumer protection, and/or untrue or misleading advertising, including any violation of any unfair claims practices act or similar statute, regulation, or code; (h) failed to investigate or provide a defense or an adequate defense; or (i) committed any other type of alleged misconduct or otherwise acted or failed to act in any way for which the Tort Claimant or holder of a Channeled Claim seeks relief other than coverage or benefits under a Certificate or Insurance Policy. "Extra-Contractual Claim" includes but is not limited to: (i) any Claim that relates to a Settling Insurer's handling of any Claim or any request for insurance coverage, including any request for coverage for or defense of any claim, including but not limited to any Tort Claim; (ii) any Claim that directly or indirectly relates to any of the Insurance Policies, Certificates, and any contractual duties arising therefrom, including any contractual duty to defend any Tort Claims or Claims against any of the Protected Parties (or against any Person or Entity covered by the Settling Insurers); and (iii) the conduct of the Parties with respect to the negotiation of the applicable Insurer Settlement Agreement.

3.81   **"Final Order"** means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, modified, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal, review, or petition for a writ has been taken, (i) it has been resolved without the reversal or modification of such order and no longer remains pending, or (ii) if an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing, and in their sole discretion, that the order from which such appeal or review is taken should be deemed to be a Final Order**.**

3.82   **"Funding Group"** means the Debtor, the ASF Participating Parties, and the Settling Insurers. "Funding Group" does not include the Participating Religious Orders.

3.83   **"General Release"** means that certain release of claims against the Protected Parties and others, the language of which is set forth in the Class 3 Tort Claims Ballot and is set forth on Exhibit N attached hereto.

3.84   **"General Unsecured Claim"** means any Claim against the Debtor that is not a Tort Claim, Administrative Claim, Channeled Claim, Priority Tax Claim, or a Claim that is otherwise classified under this Plan.

3.85   **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the holder of such Claim.

3.86   **"Great American"** means Great American Insurance Company, and, solely in the capacity as such: (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns,

whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.87** **"Great American Settlement Agreement"** means the settlement agreement between the Debtor and Great American.

**3.88** "**Initial Closing Period**" shall have the meaning set forth in Section 18.3 of this Plan.

**3.89** **"Insurance Policies"** means all policies issued or allegedly issued by any of the Settling Insurers insuring and issued to the Archdiocese Parties and, to the extent applicable, the Pre-Petition Insurance Settlement Agreements and, in the case of Arrowood, the Stipulations Regarding Royal Policies Issued to the Archdiocese of Santa Fe, as well as all claims pertaining to known or unknown policies allegedly issued to the Debtor. Insurance Policies does not include policies issued to Entities other than the Archdiocese Parties.

**3.90** **"Insured Claims"** means Claims that are general, unsecured, pre-petition claims classified in Class 5, that are upon Debtor's information and belief, insured under the Debtor's or Reorganized Debtor's liability insurance. Insured Claims are not Channeled Claims, Tort Claims, or Unknown Tort Claims, Administrative Claims, Abuse Related Contingent Claims, Penalty Claims, or Priority Tax Claims.

**3.91** **"Insured Entities"** means the Archdiocese Parties and any and all other Entities which are additional insureds or assert coverage or alleged coverage under any Insurance Policy or Certificate, provided "Insured Entities" shall not include any Person or Entity that alleges to be covered under any Insurance Policy or Certificate to the extent such coverage allegations are finally determined to be meritless.

**3.92** **"Insurer Contributions"** means the contributions paid by Catholic Mutual, CNA, Great American Insurance Company, Arrowood Indemnity Company, Travelers, and U.S. Fire pursuant to Section 10.2 herein.

**3.93** **"Insurer Settlement Agreements"** means the Catholic Mutual Settlement Agreement, the CNA Settlement Agreement, the Arrowood Settlement Agreement, the Great American Settlement Agreement, the Travelers Settlement Agreement, and the U.S. Fire Settlement Agreement.

**3.94** **"Interest"** means all Claims, liens, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

**3.95** "**Late-filed Claim**" means a Claim filed after the Claims Bar Date.

**3.96** "**Late-filed Tort Claim**" means a Tort Claim filed after the Claims Bar Date

**3.97** **"Medicare Claims"** means any and all Claims relating to Tort Claims or Claims against any of the Protected Parties, or against any Person or Entity covered by the Insurance Policies or Certificates, to the extent such Claims, directly or indirectly, arise out of, relate to, or

13

are in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim, including an Unknown Tort Claim, by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Claims for contribution to, or reimbursement of Conditional Payments or other payments made to Tort Claimants or holders of Channeled Claims who recover or receive any Distribution from the ASF Settlement Trust or the Unknown Tort Claims Trust and Claims relating to reporting obligations.

**3.98** **"MMSEA"** means §111 of the Medicare, Medicaid, SCHIP Extension Act of 2007 (P.L. 110-173).

**3.99** **"MSPA"** means 42 U.S.C. §1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 *et seq*.

**3.100** **"Mortgage"** means the mortgage delivered with and securing the Promissory Note encumbering assets of the Debtor and the Archdiocese of Santa Fe Real Estate Trust, reasonably sufficient to secure the Promissory Note as reasonably acceptable to the Committee.

**3.101** "Non-Monetary Covenants" are the Debtor's non-monetary commitment to healing and reconciliation as set forth in Section 10.12 and in the Stipulated Non-Monetary Covenants attached hereto as Exhibit L.

**3.102** **"Parent"** means any Entity that owns the majority of the shares, membership interests, or other equity interests in another Entity.

**3.103** **"Parishes"** means any one of the parishes, churches, and missions within the territory of the Archdiocese as set forth on Exhibit D hereto and their Representatives.

**3.104** **"Participating Party Agreements"** means those certain settlement agreements among the Debtor and the other ASF Participating Parties in the form attached hereto as Exhibit E and incorporated herein as part of this Plan. Conflicts between the Plan and the Participating Party Agreements will be controlled by the Plan.

**3.105** **"Participating Religious Orders"** means each of the Religious Orders listed on Exhibit F to this Plan, that are providing or will provide a portion of the funding for this Plan in exchange for: (a) the release of any Claim by the Debtor against such Participating Religious Order, (b) the benefit of the Channeling Injunction, (c) Debtor's execution of the applicable Participating Religious Order Agreement, and (d) any other benefits in favor of Participating Religious Orders under this Plan. Notwithstanding the foregoing, a Religious Order does not become a Participating Religious Order unless its agreed cash contributions to the ASF Settlement Trust and the Unknown Tort Claims Trust are paid to and received by the Escrow Agent or, if after the Effective Date, received by each of the ASF Settlement Trust and Unknown Tort Claims Trust, on or before the Participating Religious Orders Contribution Date.

**3.106** **"Participating Religious Orders Contributions"** means the cash contributions to be made by the Participating Religious Orders and their liability carriers pursuant to the

14

Participating Religious Order Settlement Agreements which shall be made to the Escrow Agent or to ASF Settlement Trust and the Unknown Tort Claims Trust as set forth in 10.2.

3.107 "**Participating Religious Orders Contribution Date**" is the 30th day following the later of: (a) the date on which the Confirmation Order becomes a Final Order, or (b) the date on which the order approving the respective Participating Religious Order Agreement becomes a Final Order, whereupon all cash contributions agreed to be paid by a Religious Order to the ASF Settlement Trust and the Unknown Tort Claims Trust are due and payable to the respective trusts.

3.108 "**Participating Religious Order Settlement Agreements**" means the settlement agreements among the Committee, various Tort Claimants, as identified in the several agreements, the Debtor or Reorganized Debtor, the Participating Religious Orders and the liability carriers to such Participating Religious Orders that provide for the funding of Participating Religious Orders Contributions.

3.109 "**Parties**" means the Archdiocese, the ASF Participating Parties, the Committee, and the Settling Insurers.

3.110 "**Penalty Claim**" means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

3.111 "**Perpetrator**" means any individual who committed an act of Abuse that forms the basis of a Tort Claim with respect to such Claim solely in his or her capacity as an individual abuser.

3.112 "**Petition Date**" means December 3, 2018, the date the Debtor filed its voluntary petition commencing this Bankruptcy Case.

3.113 "**Plan**" means this Debtor's Plan of Reorganization (and all exhibits annexed hereto), Plan Documents and any and all modifications and/or amendments thereto.

3.114 "**Plan Documents**" means <u>all</u> agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement this Plan, the Insurer Settlement Agreements, the ASF Settlement Trust, including the ASF Settlement Trust Documents, or the Unknown Tort Claims Trust, provided that the Committee and the Settling Insurers shall have approved each of said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

3.115 "**Post-Confirmation Notice Parties**" means the Reorganized Debtor, the ASF Settlement Trust, the Unknown Tort Claims Trust, the Office of the U.S. Trustee, and any Entity that files a request to be a Post-Confirmation Notice Party**.**

3.116 "**Post-Petition Proof of Claim**" has the meaning ascribed to it in Section 5.1.1 herein**.**

3.117 "**Post-Petition Claims Bar Date**" means the date that is 45 days after the notice of Effective Date is filed with the Bankruptcy Court.

**3.118** **"Preserved Coverage"** means all the insurance coverage of the Archdiocese and the Archdiocese Parties referred to Catholic Mutual Certificates subject to the limits, declarations, terms and conditions of Catholic Mutual Certificates, as amended in the Catholic Mutual Settlement Agreement, other than coverage for losses from Channeled Claims, which is settled, extinguished and excluded by the Catholic Mutual Settlement Agreement.

**3.119** **"Pre-Petition Insurance Settlement Agreements"** means: (a) the Settlement Agreement Effective May 29, 1996 between St. Paul Fire & Marine Insurance Company, its predecessors, successors and assigns, including St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company (now, Travelers) and the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole; and (b) the Settlement Agreement Effective May 25, 1995, between Great American Insurance Company, St. Paul Fire & Marine Insurance Company, Royal Insurance Company of America (now, Arrowood) and United States Fire Insurance Company and the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole.

**3.120** **"Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under § 507.

**3.121** **"Priority Claimant"** means the holder of a Priority Claim.

**3.122** "**Priority Tax Claim**" means a Claim or a portion of a Claim, that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**3.123** **"Professional"** means any Entity employed by the Debtor or the Committee pursuant to §§ 327 or 1103.

**3.124** **"Professional Fee Claim"** means a Claim under §§ 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of Professional prior to the Effective Date.

**3.125** **"Promissory Note"** means that promissory note from the Archdiocese to and in favor of the ASF Settlement Trust in the principal amount of $5,400,000.00 with a contract interest rate of 2.00% per annum from the Effective Date and a default interest rate of 10.00% per annum executed and delivered to the Escrow Agent on September 30, 2022, which may be prepaid in full or in part without penalty.

**3.126** **"Proof of Claim"** means a proof of claim filed in the Bankruptcy Case in the nature of proofs of claims described in the Bankruptcy Code, including §§ 501 and 502 and in the Bankruptcy Rules, including 3001 and 3002.

**3.127** **"Pro Rata"** when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a Class to the amount distributed on account of all Allowed Claims in such class.

**3.128** "**Protected Parties**" means: (a) the Settling Insurers; (b) the Participating Religious Orders and the liability carriers to such Participating Religious Orders listed on <u>Exhibit G</u> to this Plan that are providing or will provide a portion of the funding for this Plan pursuant to settlement

agreements with the Archdiocese or Reorganized Debtor, and (c) the Archdiocese Parties, but excluding, however, (i) a Perpetrator, (ii) any diocese or archdiocese (other than the Archdiocese itself), (iii) any Religious Order (other than a Participating Religious Order), or (iv) the Holy See. Notwithstanding the foregoing, a liability carrier to a Participating Religious Order in that capacity and a Participating Religious Order will not become Protected Parties unless its respective share of the Participating Religious Order Contribution is made on or before the applicable Participating Religious Orders Contribution Date.

3.129 **"Qualified Counsel"** means an attorney representing a Tort Claimant who has entered into a written retainer or fee agreement with such Tort Claimant on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant.

3.130 **"Qualified Counsel Fees"** means the total fees, plus applicable gross receipts taxes payable to Qualified Counsel by the beneficiaries of the ASF Settlement Trust based on the Distributions calculated under the Tort Claims Allocation Protocol in accordance with written retainer or fee agreements with those beneficiaries.

3.131 **"Qualified Counsel Costs"** means the amount of the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by the beneficiaries of the ASF Settlement Trust in accordance with written retainer or fee agreement with those beneficiaries.

3.132 **"Related Insurance Claim"** means any Claim against a Settling Insurer that, directly or indirectly, relates to a Tort Claim or a Claim against any of the Protected Parties, or against any other Person or Entity covered by the Insurance Policies or Certificates, to the extent such Claim, directly or indirectly, arises out of, relates to, or is in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim, including an Unknown Tort Claim, or the actual or alleged coverage thereof under the Insurance Policies or Certificates, including: (i) any Claim for defense, indemnity, reimbursement, contribution, subrogation, or similar relief; (ii) any Extra-Contractual Claim or other Claim associated with any Extra-Contractual Claim; (iii) any Direct Action Claim; (iv) any Claim for contribution toward or reimbursement of a Medicare Claim; and (v) any other derivative or indirect claim of any kind whatsoever.

3.133 **"Religious Orders"** means all Catholic religious order communities, including any religious order community that is a successor to any religious community of the Debtor, and includes but is not limited to, the Participating Religious Orders, the Servants of the Paraclete ("Servants"); Brothers of the Christian Schools, SFNO District ("Christian Brothers"); any province of the Franciscans; Sons of the Holy Family ("Sons"); Society of Jesus; Congregation of the Blessed Sacrament, Province of St. Ann ("Congregation"); and the Congregation of Saint Basil, aka the Basilian Fathers.

3.134 **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

3.135 **"Representatives"** means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of an Entity.

3.136 **"Retained Claims"** means the Debtor's Claims, including, but not limited to, all

17

Avoidance Actions, that are not otherwise settled or released pursuant to the Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, any rights or Claims of the Debtor for indemnification, contribution, or fault allocation and other Claims of the Debtor against any Entity on account of any Claims which are or may be asserted against the Debtor. The Claims Bar Date and Claims Objection Bar Date are inapplicable to the Retained Claims.

**3.137 "Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor filed pursuant to § 521, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

**3.138 "Section 363 Sale"** means a sale of property pursuant to § 363.

**3.139 "Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or the District Court, as applicable.

**3.140 "Settling Insurers"** means Arrowood, Catholic Mutual, CNA, Great American, Travelers, and U.S. Fire.

**3.141 "Subsidiary"** means, with respect to an Entity, a corporation or limited liability company as to which the Entity possesses shares of common stock, membership interests, or other equity interests and may exercise control through the voting of such stock or interests.

**3.142 "Supplemental Injunction"** means an injunction enjoining Claims or suits against the Settling Insurers on account of Channeled Claims pursuant to §§ 105(a), 363(b), (f), and (m), and 1123.

**3.143 "Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than Distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

**3.144 "Tort Claim"** is synonymous with Abuse Claim and is intended to have the same meaning set forth in Doc. No. 130 entered in the Bankruptcy Case.

**3.145 "Tort Claimant"** means the holder of a Tort Claim, the legal representative of the holder of a Tort Claim, such as a bankruptcy trustee, or the legal representative of the estate of a deceased individual who held a Tort Claim.

**3.146 "Tort Claims Allocation Protocol"** means the Tort Claims Allocation Protocol set forth as <u>Exhibit H</u>.

**3.147 "Tort Claims Reviewer"** means the Entity, including the designee of such Entity, who will assess Tort Claims pursuant to the Tort Claims Allocation Protocol. Subject to this Plan's provisions for replacement of the Tort Claims Reviewer, the Tort Claims Reviewer is the Honorable William L. Bettinelli (retired).

**3.148** "**Travelers**" means the Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, (i) each of their past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.149** "**Travelers Settlement Agreement**" means the settlement agreement between the Debtor and Travelers.

**3.150** "**U.S. District Court**" means the United States District Court for the District of New Mexico.

**3.151** "**U.S. Trustee**" means the Office of the United States Trustee for Region 20.

**3.152** "**Unclaimed Property**" means any Cash or other property which is unclaimed for 180 days after the Distribution.

**3.153** "**Unknown Claims Representative**" means the Honorable Michael R. Hogan, U.S.D.J. (retired), for which application for appointment has been made in the Bankruptcy Case as the legal representative of Entities holding Unknown Tort Claims by Order Motion on June 16, 2022 (Doc. No. 996).

**3.154** "**Unknown Tort Claim**" means a Tort Claim that arises from, relates to, or arises in connection with Abuse, the earliest incident of which occurred before the Petition Date: (i) for which no Proof of Claim is filed or deemed filed on or before the Bankruptcy Plan Effective Date or which is not otherwise allowed by the Bankruptcy Court by the Bankruptcy Plan Effective Date, and (ii) which is held by a Person who at the time of the Claims Bar Date was under a disability or other condition recognized by New Mexico law, or other applicable law, suspending the running of the statute of limitations period, that would toll the statute of limitations for such Claim.

**3.155** "**Unknown Tort Claimant**" means the holder of an Unknown Tort Claim, the legal representative of the holder of an Unknown Tort Claim, such as a bankruptcy trustee, the estate of a deceased individual who held an Unknown Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held an Unknown Tort Claim, as the case may be.

**3.156** "**Unknown Tort Claims Allocation Protocol**" means the Unknown Tort Claims Allocation Protocol set forth as <u>Exhibit I</u>.

**3.157** "**Unknown Tort Claims Fund**" means a fund in the initial amount of $ _____ to be paid to the Unknown Tort Claims Trust by the Debtor to pay allowed Unknown Tort Claims. Such fund shall be administered by the Unknown Tort Claims Trust pursuant to the terms of this Plan and the Unknown Tort Claims Trust Documents.

19

**3.158**  "**Unknown Tort Claims Trust**" means the trust to be established pursuant to this Plan and the Unknown Tort Claims Trust Documents for the benefit of holders of Class 4 Unknown Tort Claims.

**3.159**  "**Unknown Tort Claims Trust Agreement**" means the agreement attached as Exhibit J to this Plan.

**3.160**  "**Unknown Tort Claims Trust Contribution Date**" means the 30th Business Day after the Effective Date.

**3.161**  "**Unknown Tort Claims Trust Documents**" means the Unknown Tort Claims Trust Agreement, Unknown Tort Claims Allocation Protocol, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of this Plan that relate to the creation, administration and funding of the Unknown Tort Claims Trust.

**3.162**  "**Unknown Tort Claims Trustee**" means Omni Management Group, LLC, the trustee of the Unknown Tort Claims Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Unknown Tort Claims Trust Agreement.

**3.163**  "**U.S. Fire**" means United States Fire Insurance Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.164**  "**U.S. Fire Settlement Agreement**" means the settlement agreement between the Debtor and U.S. Fire.

**3.165**  "**Unsecured Claim**" means every Claim, or portion thereof, which is not secured by property of the Estate, regardless of the priority of such Claim.

**SECTION 4: PLAN OBJECTIVES AND SUMMARY**

**4.1**    **Objectives.**

The essential objective of the Plan is to settle all Abuse Claims and other Claims asserted against the Debtor. The Debtor is contributing funds and other property for distribution to Claimants and will receive a discharge and other protections. The Plan includes provisions for the financial participation of other Entities for which they will receive the benefit of the releases and injunctions described in the Plan. The accompanying Disclosure Statement, along with the Plan, describes the objectives and provisions of the Plan in detail.

**4.2**    **Summary of Treatment Under the Plan.**

20

Solely for the convenience of the reader, the following is a summary of the treatment of Claims under this Plan. This summary is not the Plan and the specific terms of this Plan control. This summary also explains the classes of claims that are impaired within the meaning of § 1124 because, among other things, impaired classes may vote.

| Class | Description | Treatment | Impaired; Voting |
|-------|-------------|-----------|------------------|
| N/A | Administrative Expenses | Paid in full | No |
| N/A | Priority expenses | Paid in full | No |
| 1 | Other Priority Claims | Paid in full | No |
| 2 | General Unsecured Convenience Claims | Paid in full | No |
| 3 | Tort Claims | Evaluated under the Tort Claims Allocation Protocol and paid by ASF Settlement Trust | Yes |
| 4 | Unknown Tort Claims | Evaluated under the Unknown Tort Claims Allocation Protocol and paid by Unknown Tort Claims Trust | Yes |
| 5 | General Unsecured Claims | May pursue insurance, if available; may receive payment of allowed claim in 10 annual payments, without interest; or certain Class 5 Claims may elect alternative $2,500.00 cash payment in full satisfaction and release of Claim. See Section 8.3.5 and Exhibit K. | Yes |
| 6 | Penalty Claims | Subordinated, no Distribution | Impaired, non-voting See Class 3 |
| 7 | Employee/Retirement Claims | Unimpaired | Deemed to Accept |
| 8 | Abuse Related Contingent Claims | Disallowed under § 502(e)(1), no Distribution | Impaired, non-voting |

21

## SECTION 5: TREATMENT OF UNCLASSIFIED CLAIMS

**5.1**     **Administrative Claims.**

Each holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the holder of an Administrative Claim.  Provided, however, that subject to Section 5.1.1 below, any Administrative Claim incurred post-petition by the Debtor in the ordinary course of its operations or arising pursuant to one or more post-petition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.

### 5.1.1 Bar Date for Claims Arising or Occurring After Petition Date.

All Claimants holding an unpaid Claim against the Archdiocese that arose or occurred after the Petition Date and on or before the Effective Date, including Administrative Claims, shall file with the Bankruptcy Court and serve on the Post-Confirmation Notice Parties proof of such post-petition Claim ("**Post-Petition Proof of Claim**") no later than 45 days after a notice of the Effective Date is filed with the Bankruptcy Court (the "**Post-Petition Claims Bar Date"). All unpaid Claims that arose or occurred after the Petition Date and on or before the Effective Date for which a Post-Petition Proof of Claim is not timely filed are hereby released, barred and discharged and holders of such Claims are enjoined from pursuing such Claims against or collecting from any Protected Party; provided that this section does not apply to Tort Claims that arose from Abuse, the first instance of which occurred on or after the Petition Date.**

### 5.1.2 Objections to Post-Petition Proofs of Claims.

Objections to Post-Petition Proofs of Claims must be filed and served on the Post-Confirmation Notice Parties and the applicable Claimant on or before: (A) 45 days after the Post-Petition Claims Bar Date or (B) such later date as: (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Claimant.

**5.2**     **Professional Claims.**

### 5.2.1 Bar Dates for Professional Claims.

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and

serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than: (A) 45 days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Entities, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period (the "**Professional Claims Bar Date**").

### 5.2.2    Objections to Professional Claims.

Objections to Professional Claims or Claims of other Entities for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Entities to whose application the objections are addressed on or before: (A) 45 days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Entity. Notwithstanding anything contained in Section 5.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any Claim that is excepted from the exculpation contained in Section 19.3.

### 5.3    U.S. Trustee Fees.

All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Bankruptcy Case is closed, and a final decree is entered. In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and Debtor's Estate. Notwithstanding anything to the contrary herein, the ASF Settlement Trust shall not be liable for payment of any U.S. Trustee fees.

### 5.4    Priority Tax Claims. With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall: (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Reorganized Debtor than the treatment set forth in clause (i) of this sentence.

## SECTION 6: CLASSIFICATION OF CLAIMS

**6.1**    All Claims except Administrative Claims and Priority Tax Claims are placed in the following classes for all purposes including voting, confirmation of this Plan and Distribution pursuant to this Plan. A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred,

23

the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim. If a Claimant has more than one Claim in the same class, such Claims will not be aggregated and treated as a single Claim. If a Claimant has Claims in different classes, such Claims will not be aggregated and each claim shall be included in the class applicable to that claim. As of the Confirmation Hearing, any Class of Claims which does not contain any Claims will be deemed deleted automatically from this Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from this Plan with respect to voting on confirmation of this Plan.

      **6.2**    **Class 1** consists of Other Priority Claims. These are Claims entitled to priority under § 507(a) (3) – (a) (7) and 507(a) (9) – (a) (10). These are Claims for unpaid wages, employee benefits plan contributions and the like.

      **6.3**    **Class 2** consists of the holders of General Unsecured Convenience Claims against the Debtor or holders of Unsecured Claims who elect to be treated as a General Unsecured Convenience Claim. These Claimants are holders of unsecured Claims of $500.00 or less or Claimants who voluntarily reduce their Unsecured Claims to $500.00.

      **6.4**    **Class 3** consists of Tort Claimants other than Class 4 Tort Claimants.

      **6.5**    **Class 4** consists of Unknown Tort Claimants.

      **6.6**    **Class 5** consists of holders of General Unsecured Claims. These are Claims not secured by any interest in the Debtor's property and consist of any Claim against the Debtor that is not a Tort Claim, Channeled Claim, Unknown Tort Claim, Administrative Claim, Abuse Related Contingent Claim, Penalty Claim, or a Priority Tax Claim. Based upon a review of the Debtor's Schedules, books, and records, as well as filed Proofs of Claims, the Debtor estimates that Class 5 Unsecured Claims total approximately $1,313,232.89. The holders of Class 5 General Unsecured Claims are listed on <u>Exhibit K</u> attached hereto. Class 5 Claims shall receive treatment as set forth in Section 8.3 below.

      **6.7**    **Class 6** consists of Claims based upon a fine, penalty, forfeiture, punitive damages, or the like, not meant to compensate the Claimant for actual pecuniary loss. The Debtor is unaware of any such Penalty Claims. Any portion of a Class 3 Tort Claim that asserts a claim that may be classified as a Class 6 Penalty Claim shall be treated as a Class 6 Penalty Claim and shall receive no Distribution under this Plan. Class 3 Tort Claims shall only receive treatment as set forth in Section 8.1 below.

      **6.8**    **Class 7** consists of holders of Employee/Retirement Claims against the Debtor.

      **6.9**    **Class 8** consists of Abuse Related Contingent Claims. These are Claims by an Entity against the Debtor for contribution, indemnity, or reimbursement arising as a result of such Entity's liability for paying or defending against any Tort Claim, including a Co-Defendant.

**SECTION 7: TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS**

### 7.1 Class 1: Other Priority Claims.

The holders of Allowed Other Priority Claims, if any are determined to exist, will receive either: (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

### 7.2 Class 2: General Unsecured Convenience Claims.

Each holder of Allowed General Unsecured Convenience Claims will receive either: (a) payment from the Reorganized Debtor of the full amount of its Allowed General Unsecured Convenience Claim in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of its Allowed General Unsecured Convenience Claim upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

### 7.3 Class 7: Employee/Retirement Claims.

Class 7 is unimpaired under this Plan and will be paid as their claims come due. Holders of Employee/Retirement Claims are deemed to have accepted this Plan under § 1126(f) and are not entitled to vote on this Plan.

### SECTION 8: TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### 8.1 Class 3: Tort Claims (Other than Unknown Tort Claims)

**8.1.1** Class 3 is impaired under this Plan. The holders of Tort Claims are entitled to vote on this Plan. Only for purposes of voting, each Claim in Class 3 is deemed to be Allowed in the amount of $1.00.

**8.1.2** On the Effective Date, with no further action required: The ASF Settlement Trust assumes all liability for all Class 3 Tort Claims and each of the Class 3 Tort Claimants is deemed to have assigned his or her Claim against the Protected Parties to the ASF Settlement Trust, which shall be solely liable for the payment of all such Class 3 Tort Claims. Under no circumstances shall the ASF Settlement Trust assume any liability for any Class 4 Unknown Tort Claims.

**8.1.3** Nothing in this Plan affects, diminishes or impairs any Class 3 Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's comparative fault or joint and several liability for Abuse, if any. In any such litigation against a Co-Defendant, nothing in this Plan or Plan Documents shall be deemed an adjudication of a Class 3 Tort Claim for any purpose or a limitation on the recovery against such Co-Defendant.

**8.1.4** The Debtor, the Reorganized Debtor, and their counsel shall reasonably cooperate with the Tort Claims Reviewer and/or the ASF Settlement Trustee as requested by the Tort Claims Reviewer and/or the ASF Settlement Trustee in connection with the administration of the Tort Claims Allocation Protocol.

**8.1.5**   Fees payable to the Tort Claims Reviewer for review of the Class 3 Tort Claims shall be paid by the Debtor or the Reorganized Debtor.

**8.1.6**   No Entity, other than the ASF Settlement Trustee, may: (a) object to any Class 3 Tort Claim or (b) challenge the merit, validity, or amount of any Class 3 Tort Claim. Any objection or challenge to a Class 3 Tort Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled, with the exception of the Committee's pending claims objections or challenges, if any, which shall not be deemed withdrawn and to which the ASF Settlement Trustee shall have the option to continue to prosecute. With the exception of the ASF Settlement Trustee's objections or challenges to a Class 3 Tort Claim, Class 3 Tort Claims shall be treated in accordance with the Tort Claims Allocation Protocol and shall not be subject to any other review or judicial consideration.

**8.1.7**   The ASF Settlement Trust shall pay Class 3 Tort Claims in accordance with the terms of the Tort Claims Allocation Protocol, and ASF Settlement Trust Documents. The ASF Settlement Trust shall be the sole source of payment on account of Class 3 Tort Claims. The ASF Settlement Trust shall not make any Distributions on account of Class 3 Tort Claims prior to the Effective Date.  Except for Class 3 Tort Claims held by chapter 7 trustees, the ASF Settlement Trust shall pay any Distribution due to a holder of a Class 3 Tort Claim as directed by the holder of such Claim, including to a trust, a supplemental needs trust and a financial institution managing a structured settlement for or on behalf of the Claimant or a beneficiary designated by the Claimant.

**8.1.8**   The Distributions from the ASF Settlement Trust are in full settlement of the Class 3 Tort Claims against each of the Protected Parties and the acceptance of a Distribution by a Class 3 Tort Claimant shall constitute a General Release granted by such Class 3 Tort Claimant of all Claims by such Class 3 Tort Claimant against all Protected Parties.

**8.1.9**   If a Class 3 Tort Claim is denied payment, in whole or in part, pursuant to the Tort Claims Allocation Protocol, the holder of such Class 3 Tort Claim will have no rights against the Debtor, Reorganized Debtor, the ASF Settlement Trust, the ASF Settlement Trustee, or any of the Protected Parties relating to such Tort Claim.

**8.1.10**   Before making any Distribution(s) to Class 3 Tort Claimants on account of their Class 3 Tort Claims, the ASF Settlement Trustee will subtract all Qualified Counsel Fees, plus applicable gross receipts tax in an amount equal to the total fees payable to Qualified Counsel based on the Distributions calculated under the Tort Claims Allocation Protocol from the consideration paid by the Funding Group to the ASF Settlement Trust. The ASF Settlement Trust shall pay such fees to Qualified Counsel (or such counsel's designee) as and when the responsible Class 3 Tort Claimant receives a Distribution from the ASF Settlement Trust. None of the Protected Parties are liable for any Qualified Counsel Fees or applicable gross receipts tax. The ASF Settlement Trust shall pay Qualified Counsel Fees as directed by the applicable Qualified Counsel in writing within five (5) business days after notice of payment of Qualified Counsel Fees. In the absence of such written instruction, the ASF Settlement Trust shall pay Qualified Counsel Fees by check delivered by First Class Mail or overnight courier to the address for such Qualified Counsel on the applicable Sexual Abuse Proof of Claim Form. None of the Protected Parties are liable for any Qualified Counsel Fees.

**8.1.11** Before making any Distribution(s) to Class 3 Tort Claimants, the ASF Settlement Trustee will subtract all Qualified Counsel Costs in an amount equal to the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by any beneficiaries of the ASF Settlement Trust from the consideration paid by the Funding Group to the ASF Settlement Trust. The ASF Settlement Trust shall pay such costs to Qualified Counsel as and when the responsible Class 3 Tort Claimant receives a Distribution from the ASF Settlement Trust. None of the Protected Parties are liable for any Qualified Counsel Costs.

**8.1.12** Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to this Plan, the fees and expenses of attorneys representing Class 3 Tort Claimants who receive Distributions will be borne by such Class 3 Tort Claimants based on applicable state law and individual arrangements made between such Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants. The ASF Settlement Trust and the ASF Settlement Trustee will not have any liability for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants, except to the extent that the ASF Settlement Trust or the ASF Settlement Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs. None of the Protected Parties are responsible for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants.

**8.1.13** A Class 3 Tort Claimant may withdraw a Class 3 Tort Claim at any time on written notice to the ASF Settlement Trustee. If withdrawn, (a) the Class 3 Tort Claim will be withdrawn with prejudice and may not be reasserted and shall be a Disallowed Claim; (b) as a condition to withdrawal of the Class 3 Tort Claim, any funds paid to the Tort Claimant by the ASF Settlement Trust (inclusive of attorneys' fees and costs) on account of such withdrawn claim shall be returned to the ASF Settlement Trust, and (c) any reserve maintained by the ASF Settlement Trust on account of such withdrawn Claim shall revert to the non-reserved assets of the ASF Settlement Trust for Distribution in accordance with this Plan.

**8.1.14** Certain chapter 7 bankruptcy cases that met the circumstances set forth in the Bankruptcy Claims Orders were reopened to administer Class 3 Tort Claims held by debtors in those chapter 7 bankruptcy cases. In the reopened chapter 7 bankruptcy cases that have not been reclosed or in which the Class 3 Tort Claim was not formally abandoned, the chapter 7 bankruptcy estate is the Class 3 Tort Claimant and shall be treated as the holder of the Class 3 Tort Claim for all purposes in this Plan and in the ASF Settlement Trust.

**8.1.15 The right of any Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor or any of the Protected Parties is waived and released upon occurrence of the Effective Date, and the Tort Claim of a Tort Claimant will be solely determined by the Tort Claims Reviewer and in accordance with the Tort Claims Allocation Protocol.**

**8.1.16** The Tort Claims Allocation Protocol was not developed by, or submitted for approval to, the Debtor or the Settling Insurers, nor are the Settling Insurers or the Debtor deemed to have accepted or acquiesced in such Tort Claims Allocation Protocol.

**8.1.17 Late-filed Tort Claims**. Late-filed Tort Claims are Class 3 Tort Claims that may be: (a) allowed by the Court or disallowed by the Court, after evaluation by the Court of the circumstances particular to each Claim, upon motion properly filed by the Claimant; or (b) treated under the Tort Claims Allocation Protocol which, depending on when the Late-filed Tort Claim was filed, provides for no Distribution or Distribution in varying amounts. A Late-filed Tort Claim could be deemed timely if the Claimant files a motion establishing that its excusable neglect excuses the late filing and the Bankruptcy Court orders that the Late-filed Tort Claim will be treated as timely filed. If a Late-filed Tort Claim is not deemed timely by order of the Court and the Claimant does not accept the treatment under the Tort Claims Allocation Protocol, the Late-filed Tort Claim is disallowed and will not receive any Distribution. For more information about treatment of Late-filed Tort Claims under the Tort Claims Allocation Protocol, see the Tort Claims Allocation Protocol attached as Exhibit H to the Plan.

## 8.2 Class 4: Unknown Tort Claims

**8.2.1** Class 4 is impaired under this Plan. The Unknown Claims Representative is entitled to vote on this Plan on behalf of Class 4 Tort Claimants. Only for purposes of voting, the Unknown Claims Representative is deemed to have an Allowed Claim in the amount of $1.00.

**8.2.2** The Unknown Tort Claims Trust will be funded by the Debtor and Participating Religious Orders up to $2.5 Million  pursuant to the provisions of this Plan. The Debtor or the Reorganized Debtor shall pay the costs of administering the Unknown Tort Claims Trust. The Unknown Tort Claims Trust shall be the sole source of payment on account of Class 4 Unknown Tort Claims. Holders of Unknown Tort Claims shall have no rights against the Debtor, Reorganized Debtor, the Protected Parties, the ASF Settlement Trust, ASF Settlement Trustee, the Unknown Tort Claims Trust, or the Unknown Tort Claims Trustee relating to such Unknown Tort Claim.

**8.2.3** On the Effective Date, with no further action required, the Unknown Tort Claims Trust assumes all liability for all Unknown Tort Claims, and each Unknown Tort Claimant is deemed to have assigned his or her Claim against the Protected Parties to the Unknown Tort Claims Trust, which shall be solely liable for the payment of all such Unknown Tort Claims.

**8.2.4** Unknown Tort Claimants shall have their Class 4 Unknown Tort Claims treated pursuant to the Unknown Tort Claims Allocation Protocol, including review of such Claims by the Unknown Tort Claims Reviewer in accordance with the Unknown Tort Claims Allocation Protocol.

**8.2.5** Fees payable to the Unknown Claims Representative for review of the Unknown Tort Claims shall be paid by the Debtor or the Reorganized Debtor. Nothing in this Plan shall affect, diminish or impair any Unknown Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's comparative fault or joint and several liability for Abuse.

**8.2.6** The Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Unknown Claims Representative and the Unknown Tort Claims Trustee as

requested by the Unknown Claims Representative or the Unknown Tort Claims Trustee in connection with any inquiries in the administration of the Unknown Tort Claims Allocation Protocol.

**8.2.7**  No Entity other than the Unknown Tort Claims Trustee may challenge the merit, validity, or amount of any Unknown Tort Claim. The Unknown Tort Claims Trustee has the sole and exclusive right to object to any Unknown Tort Claim. The Reorganized Debtor shall not have the right to object to an Unknown Tort Claim.

**8.2.8**  The Distributions from the Unknown Tort Claims Trust are in full settlement of the Class 4 Unknown Tort Claims against each of the Protected Parties and the acceptance of a Distribution by a Class 4 Unknown Tort Claimant shall constitute a General Release granted by such Class 4 Unknown Tort Claimant of all Claims by such Class 4 Unknown Tort Claimant against all Protected Parties.

**8.2.9**  If a Class 4 Unknown Tort Claim is denied payment, in whole or in part, pursuant to the Unknown Tort Claims Allocation Protocol, the holder of such Class 4 Unknown Tort Claim will have no rights against the Debtor, Reorganized Debtor, the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee, or any of the Protected Parties relating to such Class 4 Unknown Tort Claim.

**8.2.10**  Before making any Distribution(s) to Class 4 Unknown Tort Claimants on account of their Class 4 Unknown Tort Claims, the Unknown Tort Claims Trustee will subtract all Qualified Counsel Fees, plus applicable gross receipts tax in an amount equal to the total fees payable to Qualified Counsel based on the Distributions calculated under the Unknown Tort Claims Allocation Protocol. The Unknown Tort Claims Trust shall pay such fees to Qualified Counsel as and when the responsible Class 4 Unknown Tort Claimant receives a Distribution from the Unknown Tort Claims Trust. None of the Protected Parties are liable for any Qualified Counsel Fees or applicable gross receipts tax.

**8.2.11**  Before making any Distribution(s) to Class 4 Unknown Tort Claimants, the Unknown Tort Claims Trustee will subtract all Qualified Counsel Costs in an amount equal to the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by any beneficiaries of the Unknown Tort Claims Trust. The Unknown Tort Claims Trust shall pay such costs to Qualified Counsel as and when the responsible Class 4 Unknown Tort Claimant receives a Distribution from the Unknown Tort Claims Trust. None of the Protected Parties are liable for any Qualified Counsel Costs.

**8.2.12**  Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to this Plan, the fees and expenses of attorneys representing Class 4 Unknown Tort Claimants who receive Distributions will be borne by such Class 4 Unknown Tort Claimants based on applicable state law and individual arrangements made between such Class 4 Unknown Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Class 4 Unknown Tort Claimants. The Unknown Tort Claims Trust and the Unknown Tort Claims Trustee will not have any liability for any fees and expenses of attorneys representing any of the Class 4 Unknown Tort Claimants,

29

except to the extent that the Unknown Tort Claims Trust or the Unknown Tort Claims Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs.

**8.2.13** A Class 4 Unknown Tort Claimant may withdraw a Class 4 Unknown Tort Claim at any time on written notice to the ASF Settlement Trustee. If withdrawn, (a) the Class 4 Unknown Tort Claim will be withdrawn with prejudice and may not be reasserted and shall be a Disallowed Claim; (b) as a condition to withdrawal of the Class 4 Unknown Tort Claim, any funds paid to the Unknown Tort Claimant by the Unknown Tort Claims Trust (inclusive of attorneys' fees and costs) on account of such withdrawn claim shall be returned to the Unknown Tort Claims Trust, and (c) any reserve maintained by the Unknown Tort Claims Trust on account of such withdrawn Unknown Tort Claim shall revert to the non-reserved assets of the Unknown Tort Claims Trust for Distribution in accordance with this Plan.

**8.2.14** **The right of any Class 4 Unknown Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor or any of the Protected Parties is waived and released upon occurrence of the Effective Date, and the Unknown Tort Claim of a Class 4 Unknown Tort Claimant will be solely determined by the Unknown Tort Claims Reviewer and in accordance with the Unknown Tort Claims Allocation Protocol.**

**8.2.15** The Unknown Tort Claims Allocation Protocol was not developed by, or submitted for approval to, the Debtor or the Settling Insurers, nor are the Settling Insurers or the Debtor deemed to have accepted or acquiesced in such Unknown Tort Claims Allocation Protocol.

**8.2.16** The Unknown Tort Claims Trust shall pay Unknown Tort Claimants in accordance with the terms of this Plan, Confirmation Order and Unknown Tort Claims Trust Documents.

**8.3** **Class 5: General Unsecured Claims. See Exhibit K, Attached.** Class 5 General Unsecured Claims shall receive no Distribution, unless and except as provided herein. Class 5 Claimants may proceed against Debtor's or Reorganized Debtor's Preserved Coverage, to the extent the Claim is insured. Class 5 Claims will be paid from the Preserved Coverage, if applicable, or if not, as follows.

**8.3.1** If Debtor or Reorganized Debtor timely objects to a Class 5 Claim, the Claim will be determined and liquidated in the claim adjudication proceeding in the Bankruptcy Court. If the Class 5 Claim is allowed over the objection of the Debtor, the Debtor will pay the allowed amount of the Class 5 Claim over a period of ten years, in annual installments in full satisfaction of the Class 5 Claim. The allowed amount of the Class 5 Claim will not accrue interest during this period.

**8.3.2** If Debtor or Reorganized Debtor has not timely objected to a Class 5 Claim, then following expiration of the Claims Objection Bar Date, the discharge injunction pursuant to § 524 shall be modified for that Claim, to permit the Class 5 Claimant to file and prosecute and to permit the Debtor or Reorganized Debtor to defend, to final judgment, the Class 5 Claim in the appropriate non-bankruptcy forum and to permit the Class 5 Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such

coverage for that Claim. Any such judgment will be paid over a period of ten years, in annual installments in full satisfaction of the Class 5 Claim. The allowed amount of the Class 5 Claim will not accrue interest during this period.

**8.3.3.** Any judgment entered on a Class 5 Claim in favor of the respective Class 5 Claimant shall not be a personal liability of and will not be collectable from the Debtor, Reorganized Debtor, or any of the Protected Parties, other than Catholic Mutual, to the extent applicable, and shall be collectable only from the Preserved Coverage and from no other source.

**8.3.4.** Debtor makes no representation or warranty about the availability of insurance coverage for any of the Class 5 Claims.

**8.3.5** In the alternative to the treatment set out above in this Section 8.3, certain Class 5 Claimants, as shown on Exhibit K, may elect to receive $2,500.00 from the Debtor within 30 days of the Effective Date of the Plan in full and final satisfaction of such Claim. If the Class 5 Claimant elects to receive the $2,500.00, the Class 5 Claimant must waive and release any and all other rights and claims it has, or may have, against the Debtor, Reorganized Debtor, or any of the Protected Parties arising out of its Claim as set forth on its Proof of Claim filed herein or as set forth in the Debtor's Schedules filed herein.

**8.3.6** <u>Late-filed Claims</u>. Class 5 General Unsecured Claims that are Late-filed Claims are disallowed and will receive no Distribution. A Late-filed Claim may be deemed timely if the Claimant files a motion establishing that its excusable neglect excuses the late filing and the Bankruptcy Court orders that the Tort Claim will be treated as timely filed. If the Claimant files such a motion and the Court orders that the Late-filed Claim will not be treated as timely filed, the Late-filed Claim will be disallowed and will not receive any Distribution.

**8.4**    **Class 6: Penalty Claims**

**8.4.1** Claims for punitive or exemplary damages in connection with any of the Claims will be treated as Penalty Claims and will receive no Distribution under this Plan.

**8.5**    **Class 8: Abuse Related Contingent Claims**

**8.5.1** In accordance with § 502(e)(1), each Abuse Related Contingent Claim held by any Entity against the Debtor shall be disallowed and will receive no Distribution.

8.6.    **Disallowed Claims.** Disallowed Claims shall not receive any payment or Distribution under this Plan.

## SECTION 9: ACCEPTANCE OR REJECTION OF PLAN

**9.1**    **Classes Entitled to Vote**

Each Claimant in Classes 3, 4 and 5 is impaired and entitled to vote to accept or reject this Plan. Only the Unknown Claims Representative is entitled to vote on behalf of the holders of Class 4 Claims.

**9.2**    **Presumed Acceptance of this Plan**

31

Classes 1, 2 and 7 are unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to § 1126(f).

### 9.3    Presumed Rejection of this Plan

Classes 6 and 8 are impaired and shall receive no Distribution and to the extent that such claims exist, they are conclusively deemed to have rejected this Plan pursuant to § 1126(g) regardless of any votes by a holder of a Class 6 or 8 Claim.

### 9.4    "Cram Down" Request

The Debtor requests confirmation of this Plan under § 1129(b) with respect to any impaired Class that does not accept this Plan pursuant to § 1126(c). The Debtor reserves the right to modify this Plan to the extent that confirmation pursuant to § 1129(b) requires modification.

## SECTION 10: MEANS OF IMPLEMENTATION OF THE PLAN

### 10.1    Establishment of Escrow Account.

No later than September 30, 2022, the Debtor will establish the Escrow Account. Upon the Effective Date, the funds held in the Escrow Account will be administered in accordance with this Plan, the Insurer Settlement Agreements, the Participating Party Agreements and the Confirmation Order. The Escrow Account shall be interest-bearing, with interest to be paid to Debtor or Reorganized Debtor in order to fund this Plan. The Escrow Account shall be terminated and all Contributions returned if the Effective Date of this Plan has not timely occurred pursuant to Section 18.3 of this Plan. No funds will be removed from the Escrow Account except pursuant to (a) Sections 11.2 and 14.2 upon the occurrence of the Effective Date, (b) Section 18.3 due to the non-occurrence of the Effective Date pursuant to Section 18.3, or (c) a prior written agreement among the Debtor, the Committee and the Settling Insurers.

### 10.2    Funding.

The following will be transferred by wire transfer to the Escrow Account:

i. **Debtor's Initial Contribution.**

The Debtor transferred $69,600,000.00 to the Escrow Account on September 30, 2022.

**Insurer Contributions**

ii. **Travelers Contribution.**

Pursuant and subject to the Travelers Settlement Agreement, Travelers will transfer $16,000,000.00 to the Escrow Account on or before the Contribution Date.

iii.        **Arrowood Contribution.**

Pursuant and subject to the Arrowood Settlement Agreement, Arrowood Indemnity Company will transfer $11,250,000.00 to the Escrow Account on or before the Contribution Date.

iv.        **U.S. Fire Contribution.**

32

Pursuant and subject to the U.S. Fire Settlement Agreement, U.S. Fire will transfer $7,250,000.00 to the Escrow Account on or before the Contribution Date.

> v. **Great American Contribution.**

Pursuant and subject to the Great American Settlement Agreement, Great American Insurance Company will transfer $7,250,000.00 to the Escrow Account on or before the Contribution Date.

> vi. **Catholic Mutual Contribution.**

Pursuant and subject to the Catholic Mutual Settlement Agreement, Catholic Mutual will transfer $4,000,000.00 to the Escrow Account on or before the Contribution Date.

> vii. **CNA Contribution.**

Pursuant and subject to the CNA Settlement Agreement, CNA will transfer $750,000.00 to the Escrow Account on or before the Contribution Date.

> viii. **Second Debtor Contribution**.

On September 30, 2022, the Debtor executed the Promissory Note and Mortgage. The Reorganized Debtor shall deliver the original Promissory Note and original Mortgage to the ASF Settlement Trust on the Effective Date. Following delivery, the ASF Settlement Trustee may undertake any action to perfect the Mortgage. A copy of the Promissory Note and Mortgage are attached hereto as Exhibits O and P. Upon payment of the Promissory Note, the ASF Settlement Trustee shall deliver to the Reorganized Debtor the original Promissory Note marked "Paid" and all documents necessary to release the Mortgage in recordable form. Reorganized Debtor will prepare the necessary documents.

**Participating Religious Order Contributions**

> ix. **Servants of the Paraclete (the "Servants").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Servants, on or before the Participating Religious Orders Contribution Date, the Servants and its funding liability carriers (as listed on Exhibit G) will transfer $4,000,000 to the Escrow Agent for transfer to the ASF Settlement Trust and $200,000 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Servants will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

> x. **Sons of the Holy Family, Inc. (the "Sons").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with Sons, on or before the Participating Religious Orders Contribution Date, the Sons will transfer $1,050,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $50,000.00 to the Escrow Agent for transfer to Unknown Tort Claims Trust or, if funded after the Effective Date,

the Sons will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xi.     **Congregation of the Blessed Sacrament, Province of St. Ann (the "Congregation").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with Congregation, on or before the Participating Religious Orders Contribution Date, the Congregation will transfer $525,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $25,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Congregation will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xii.     **Brothers of the Christian Schools, SFNO District (the "Christian Brothers")**.

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Christian Brothers, on or before the Participating Religious Orders Contribution Date, the Christian Brothers and its funding liability carriers (as listed on Exhibit G) will transfer $1,900,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $95,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Christian Brothers will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xiii.     **The Province of St. John the Baptist of the Order of the Friars Minor and the Province of Our Lady of Guadalupe of the Order of Friars Minor (the "Province").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Province, on or before the Participating Religious Orders Contribution Date, the Province [and its funding liability carriers (as listed on Exhibit G)] will transfer $600,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $30,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Province will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

**10.3    Payment and Treatment of Claims Other Than Tort Claims and Unknown Tort Claims.**

Payments due to creditors on account of Allowed Claims other than Tort Claims or Unknown Tort Claims will be paid pursuant to the terms of this Plan from the Reorganized Debtor's assets and ongoing operations or the Preserved Coverage, if applicable.

**10.4    Retained Claims.**

On or before the Effective Date, all Retained Claims will be assigned by the Debtor to the Reorganized Debtor. The Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor and will retain the proceeds of all such Retained Claims, if any.

**10.5     Approval of Financing and 363 Sales.**

On or before the Effective Date, the Bankruptcy Court shall have entered orders approving the sale under § 363, free and clear of all liens, Claims, encumbrances, and Interests, of: any Insurance Policies and Certificates to be purchased by a Settling Insurer pursuant to the requirements of the applicable Insurer Settlement Agreement, and the Court shall have granted the Insurers the protections available under § 363(m). The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the financing evidenced by the Promissory Note and Mortgage, § 363 sales and grant of § 363(m) protections.

**10.6     Approval of Settlement Agreements.**

Pursuant to §§ 105, 363, and 1123 and Rule 9019, and in consideration for the classification, Distributions and other benefits provided under this Plan, including, *inter alia*, (i) the commitment by the ASF Participating Parties, the Participating Religious Orders, and Settling Insurers to fund the Debtor's obligations under this Plan to the Escrow Account; (ii) the Travelers Settlement Agreement; (iii) the Arrowood Settlement Agreement; (iv) the U.S. Fire Settlement Agreement; (v) the Great American Settlement Agreement; (vi) the Catholic Mutual Settlement Agreement; (vii) the CNA Settlement Agreement; (viii) the Participating Party Agreements; and (ix) the Debtor's non-monetary commitment to healing and reconciliation as set forth in Section 10.12 and in the Stipulated Non-Monetary Covenants attached as <u>Exhibit L</u> to this Plan, the provisions of this Plan, the Insurer Settlement Agreements, the Participating Religious Order Settlement Agreements,_and the Participating Party Agreements shall constitute good faith compromises and settlements of all Claims against the Debtor, the Settling Insurers and the other Protected Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the global compromise and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, ASF Participating Parties, Settling Insurers, Tort Claimants, Unknown Tort Claimants and other parties in interest, and are fair, equitable and within the range of reasonableness. The Insurer Settlement Agreements and this Plan shall have no effect on coverage under insurance policies or certificates issued to Religious Orders, except for the Participating Religious Orders.

**10.7     Indemnification of Settling Insurers.**

**10.7.1**     Effective on the Effective Date, the ASF Settlement Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to all Channeled Claims (other than Unknown Tort Claims) *provided, however,* that the Settling Insurers shall not seek to recover from a Tort Claimant or any transferee of a Tort Claimant any property distributed or to be distributed after the Effective Date by the ASF Settlement Trust in accordance with the confirmed Plan. Neither the ASF Settlement Trustee nor the Reorganized Debtor will have any personal liability for breach by the Settling Insurers of this provision.

**10.7.2**        Effective on the Effective Date, the Unknown Tort Claims Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to all Unknown Tort Claims.

**10.7.3**        Effective on the Effective Date, the Reorganized Debtor shall defend, indemnify, and hold harmless the Settling Insurers as set forth in the Insurer Settlement Agreements.

**10.7.4**        Nothing herein shall be construed to require the ASF Settlement Trust to maintain any reserve of funds to defend, indemnify and/or hold harmless the Settling Insurers pursuant to the Plan, the Confirmation Order, and/or any Plan Document.

**10.8    Debtor's Waiver and Release of Claims Against ASF Participating Parties and Participating Religious Orders.**

Debtor's waiver and release of Claims against ASF Participating Parties is as provided in the Participating Party Agreements and against the Participating Religious Orders as provided in the Participating Religious Order Settlement Agreements.

**10.9    Dismissal of Adversary Proceedings and Pending Appeal**.

Within five Business Days of the Effective Date, the Adversary Proceedings and Case No. 21-702 pending before the United States Court of Appeals for the Tenth Circuit ("Appeal") shall be dismissed with prejudice. The parties to the Adversary Proceedings and the Appeal shall cooperate to effect the dismissals in substantially the forms attached hereto as <u>Exhibit M</u>, which, upon Confirmation, are deemed approved by counsel of record.

**10.10    Non-Monetary Commitment to Healing and Reconciliation.**

In order to further promote healing and reconciliation, and in order to continue its efforts to prevent Abuse from occurring in the Archdiocese in the future, the Reorganized Debtor agrees that beginning within 30 days after the Effective Date (unless a different date is provided below), it will undertake the commitments set forth in the Stipulated Non-Monetary Covenants attached hereto as <u>Exhibit L</u> attached hereto and incorporated herein, including the establishment of the Abuse Documents Archive.

**10.11    Procedure for Determination of Claims Other Than Tort Claims or Unknown Tort Claims.**

The following procedures will be used for purposes of allowance and disallowance of creditors' Claims that are **not** Tort Claims, Channeled Claims, or Unknown Tort Claims:

**10.12.1**        **Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed prior to the Effective Date, all objections to Claims must be filed by the Claims Objection Bar Date, <u>provided</u>, <u>however</u>, that nothing contained in this Plan will affect the right of the Debtor to seek estimation of any Claims, except Tort Claims, Channeled Claims, and Unknown Tort Claims, on any grounds permitted by the Bankruptcy Code at any time. Treatment of Tort Claims, Channeled Claims, and Unknown

Tort Claims shall be solely pursuant to the Tort Claims Allocation Protocol and the Unknown Tort Claims Allocation Protocol, as the case may be.

    **10.12.2**   **Disputed Claims.** No payments or other Distributions will be made to the holders of Disputed Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Disputed Claim is not an Allowed Claim by the Effective Date, or when payment is otherwise due under this Plan, payment on the Allowed Claim (plus interest, if any is provided for in this Plan) will commence on the date set forth in the Final Order allowing the Claim, in accordance with the treatment set forth in this Plan.

    **10.12.3**   **Treatment of Contingent Claims.** Until such time as a Contingent Claim or a Contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under this Plan. The holder of a Contingent Claim will only be entitled to a Distribution under this Plan when and if such Contingent Claim becomes an Allowed Claim, subject, however, to the provisions of § 502(e), and, provided that if such Contingent Claim is for reimbursement, indemnification or contribution at the time of allowance or disallowance, it will be disallowed pursuant to § 502(e)(1)(B).

   **10.13**  **Payments Effective Upon Tender.**

    Whenever this Plan requires payment to be made, such payment will be deemed made and effective upon tender thereof by the ASF Settlement Trustee, Debtor, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor expressly refuses a tender, the amount tendered and refused will be held by the ASF Settlement Trustee, Debtor or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with this Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Debtor or the Reorganized Debtor failed to pay the tendered payment.

   **10.14**  **Preservation of Debtor's Claims, Demands, and Causes of Action.**

    Except as otherwise provided in this Plan, all Claims, demands, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor and/or the Estate against any other Entity, including but not limited to, the Retained Claims arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, are hereby preserved in full for the benefit of the Reorganized Debtor, except for such Claims or Causes of Action, cross-claims, and counterclaims which: (a) have been released hereunder or pursuant to any applicable Insurer Settlement Agreement, Participating Party Agreement or a Final Order prior to the Effective Date; and (b) which have been or are being transferred to the ASF Settlement Trustee. Claims or Causes of Action, crossclaims and counterclaims which are being transferred to the ASF Settlement Trustee, if any, are preserved under this Plan for the benefit of the ASF Settlement Trust and/or the Unknown Tort Claims Trust. To the extent necessary, the Reorganized Debtor is hereby designated as the estate representative pursuant to, and in accordance with,

§ 1123(b)(3)(B). Furthermore, in accordance with § 1123(b)(3), after the Effective Date, the Reorganized Debtor will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtor or its Estate, including, but not limited to the Retained Claims. The Debtor and the Reorganized Debtor will also be entitled to assign their rights under this Plan (except to the extent they are prohibited from doing so pursuant to the express terms of any applicable agreement for insurance coverage, Insurer Settlement Agreement, or Participating Party Agreement). On the Effective Date, and except as otherwise specifically provided in this Plan, including but not limited to Retained Claims which are specifically retained by the Debtor and assigned to the Reorganized Debtor, the ASF Settlement Trustee is hereby designated as the estate representative, pursuant to and in accordance with, § 1123(b)(3) with respect to any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtor or its Estate with respect to Tort Claims and Unknown Tort Claims.

### 10.15  Special Provisions Governing Unimpaired Claims.

Except as otherwise provided in this Plan, nothing will affect the Debtor's or the Reorganized Debtor's rights and defenses with respect to any unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, such unimpaired Claims.

### 10.16  Operative Documents.

The Debtor or the Committee will prepare any documents that the Debtor, the Reorganized Debtor and/or the Committee deem are necessary or appropriate to execute this Plan or are provided for under this Plan, including, but not limited to, the Plan Documents. If there is any dispute regarding the reasonableness or propriety of any such documents, any such dispute will be presented to the Bankruptcy Court for determination, at or in conjunction with the Confirmation Hearing.

### 10.17  Return of Deposits.

To the extent that the Debtor was required to and did pay deposits to any creditors after the Petition Date, as a condition of or as security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance pursuant to § 366, then, upon satisfaction of the Claims of such creditor pursuant to this Plan or if such creditor did not have any Claims against the Debtor, any such deposits, together with any interest or other income earned thereon, if any, will be refunded to the Reorganized Debtor within 15 days of demand by the Reorganized Debtor for return of such deposit.

### 10.18  Delivery of Distributions (Except to Tort Claims and Unknown Tort Claims).

Distributions will be made by the Debtor or the Reorganized Debtor as follows:

10.18.1  At the addresses set forth in the Proofs of Claim (and if both a claimant's address and a claimant's counsel are listed on the Proof of Claim then to counsel's address) filed by holders of Claims or the last known addresses of such holders if no Proof of

Claim is filed or if the Debtor, the Reorganized Debtor, the ASF Settlement Trustee has not been notified of a change of address;

> 10.18.2      At the addresses set forth in written notices of address change delivered to the Debtor, the ASF Settlement Trustee or the Reorganized Debtor after the date of any related Proof of Claim; or

> 10.18.3      At the addresses reflected in the Schedules filed in the Bankruptcy Case if no Proof of Claim has been filed, and the Debtor, the ASF Settlement Trustee or the Reorganized Debtor has not received a written notice of change of address.

### 10.19    Transmittal of Distributions to Tort Claimants and Unknown Tort Claimants.

Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to Class 3 Tort Claimants will be made by and in accordance with the ASF Settlement Trust and Distributions to the Unknown Tort Claimants will be made by and in accordance with the Unknown Tort Claims Trust.

### 10.20    Efforts Regarding Absence of Address or Returned Mail.

If a claimant's Distribution is not mailed or is mailed but returned to the Reorganized Debtor or ASF Settlement Trustee because of the absence of a proper mailing address, the Reorganized Debtor or ASF Settlement Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such claimant from information generally available to the public and from such party's own records, but shall not be liable to such claimant for having failed to find a correct mailing address. The ASF Settlement Trustee shall have no liability to a Tort Claimant on account of Distributions made to the client trust account of a Tort Claimant's attorney.

## SECTION 11: ASF SETTLEMENT TRUST

### 11.1     Establishment of ASF Settlement Trust

The ASF Settlement Trust shall be established in accordance with the ASF Settlement Trust Documents; provided that the Debtor may execute the ASF Settlement Trust Documents upon entry of the Confirmation Order to enable the ASF Settlement Trust to obtain a Federal Tax Identification number. The ASF Settlement Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The ASF Settlement Trust Documents, including the ASF Settlement Trust Agreement, are incorporated herein by reference.

### 11.2     Funding of ASF Settlement Trust

Within two Business Days after the Effective Date, the Escrow Agent shall pay all funds in the Escrow Account to the ASF Settlement Trust by wire transfer.

> 11.2.1 **Fees and Expenses**. The Reorganized Debtor shall pay the fees and expenses incurred by the ASF Settlement Trust and the ASF Settlement Trustee within 30 days of delivery of an invoice by the ASF Settlement Trustee, as provided in the ASF Settlement Trust

Agreement. The fees and expenses include but are not limited to the ASF Settlement Trust's professional fees and expenses and the ASF Settlement Trustee's fees and expenses. The Reorganized Debtor is not responsible for and will not pay or reimburse Qualified Counsel Fees, Qualified Counsel Costs, fees and costs of attorneys representing Tort Claimants, or fees and expenses incurred in administration and payment of Claims against Participating Religious Orders.

**11.3    Reserve Accounts**

As set forth in the ASF Settlement Trust Agreement, the ASF Settlement Trustee may establish reserves within the ASF Settlement Trust for various purposes.

**11.4    No Execution**

All property held in the ASF Settlement Trust will remain property of the ASF Settlement Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Tort Claims Allocation Protocol and ASF Settlement Trust Documents. Except as expressly provided in this Plan, Plan Documents, Confirmation Order, Tort Claims Allocation Protocol and the ASF Settlement Trust Documents, the ASF Settlement Trust shall not be responsible for any Claims against the Debtor.

**11.5    Trust Distributions**

**11.5.1  Release**. No Tort Claimant or holder of a Channeled Claim shall receive any Distribution unless and until such Claimant has executed the General Release of any and all Claims against all of the Protected Parties, the Exculpated Parties, the Settling Insurers' reinsurers or retrocessionaires that, directly or indirectly, relate to one or more Tort Claims, Channeled Claims, or  the injuries or damages alleged by the Tort Claimant or holder of a Channeled Claim in the form attached as <u>Exhibit N</u> to this Plan. The General Release shall be incorporated into the ballot for voting on this Plan or may be executed independent of the ballot, but in any event shall be an independently effective instrument that is personally signed by the Tort Claimant or his or her legal representative. A Tort Claimant or holder of a Channeled Claim who does not timely submit a ballot that includes an executed release must personally execute the General Release required by this Section 11.5.1 and deliver it to the ASF Settlement Trustee prior to receiving any Distribution from the ASF Settlement Trust, provided, however that nothing in this Section shall require any Tort Claimant or holder of a Channeled Claim to release any Claims against any Co-Defendants. The ASF Settlement Trust shall be obligated to provide copies of any Channeled Claimants' executed General Releases (including ballots incorporating such releases) to the Protected Parties.

**11.5.2**  The ASF Settlement Trust shall terminate and the ASF Settlement Trustee shall be discharged in accordance with the ASF Settlement Trust Agreement.

**11.6    Special Distribution Conditions.**

Prior to any Distribution to a Class 3 Tort Claimant or to a Class 3 Tort Claimant's counsel, the ASF Settlement Trustee shall obtain a certification of compliance with MMSEA for such Class 3 Tort Claimant or holder of a Channeled Claim from the Claimant's counsel, or, if the Class 3 Tort Claimant is *pro se,* the ASF Settlement Trustee shall obtain the certification of compliance with MMSEA for such Claimant from the Claimant's counsel, if such claimant has an attorney

and, if the Claimant is pro se from the third party administrator engaged by and paid for by the Archdiocese for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Claimants. The certifications of compliance shall provide that the Claimant has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Claimant's Channeled Claim.

11.6.1 The ASF Settlement Trust shall defend, indemnify and hold harmless the Reorganized Debtor and the Protected Parties, other than Participating Religious Orders and any liability carriers to a Participating Religious Order in that capacity, from any Claims related to Medicare Claims reporting and payment obligations, whether relating to past Conditional Payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Channeled Claims (other than Unknown Tort Claims), including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the ASF Settlement Trust's obligations under this Plan, the ASF Settlement Trust Documents, and the Plan Documents. The ASF Settlement Trust also shall have the obligation to cooperate in the assertion of the Channeling Injunction provided in the Participating Religious Order Settlement Agreements. The ASF Settlement Trustee shall not have personal liability for these obligations and the ASF Settlement Trust shall not create a reserve for these potential obligations.

11.6.2 The ASF Settlement Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is a Class 3 Tort Claimant or holder of a Channeled Claim. The amount of such payment shall not exceed that Claimant's award under the ASF Settlement Trust Documents. The ASF Settlement Trustee shall not have personal liability for these obligations and the ASF Settlement Trust shall not create a reserve for these potential obligations. The Reorganized Debtor shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is a Class 3 Tort Claimant or holder of a Channeled Claim.


## SECTION 12: UNKNOWN TORT CLAIMS TRUST

### 12.1 Establishment of Unknown Tort Claims Trust

On the Confirmation Date, the Unknown Tort Claims Trust shall be established in accordance with the Unknown Tort Claims Trust Documents. The Unknown Tort Claims Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Unknown Tort Claims Trust Documents, including the Unknown Tort Claims Trust Agreement, are incorporated herein by reference.

### 12.2 Funding

The Debtor shall fund the Unknown Tort Claims Trust as provided in the Unknown Tort Claims Trust Agreement.

41

### 12.3 Reserve Accounts

As set forth in the Unknown Tort Claims Trust Agreement, the Unknown Tort Claims Trustee may establish reserves within the Unknown Tort Claims Trust for various purposes.

### 12.4 No Execution

All property held in the Unknown Tort Claims Trust will remain property of the Unknown Tort Claims Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Unknown Tort Claims Allocation Protocol and Unknown Tort Claims Trust Documents. Except as expressly provided in this Plan, Plan Documents, Confirmation Order, Unknown Tort Claims Allocation Protocol and the Unknown Tort Claims Trust Documents, the Unknown Tort Claims Trust shall not be responsible for any Claims against the Debtor.

### 12.5 Trust Distributions

**12.5.1      Release.** No Unknown Tort Claimant shall receive any Distribution unless and until the Unknown Tort Claimant has executed and delivered to the Unknown Tort Claims Trustee the General Release of any and all Claims against all of the Protected Parties, the Exculpated Parties, the Settling Insurers' reinsurers or retrocessionaires that, directly or indirectly, relate to the Unknown Tort Claims or the injuries or damages alleged by the Unknown Tort Claimants. The General Release shall be in the form included in Exhibit N. The General Release of any Unknown Tort Claims must be executed personally by the Unknown Tort Claimant. The Unknown Tort Claims Trust shall be obligated to provide copies of the Unknown Tort Claimants' releases to the Protected Parties.

**12.5.2**      The Unknown Tort Claims Trust shall terminate and the Unknown Tort Claims Trustee shall be discharged pursuant to the Unknown Tort Claims Trust Agreement.

### 12.6 Special Distribution Conditions.

Prior to any Distribution to a Class 4 Unknown Tort Claimant or to a Class 4 Unknown Tort Claimant's counsel, the Unknown Tort Claims Trustee shall obtain a certification of compliance with MMSEA for such Class 4 Unknown Tort Claimant from the Claimant's counsel, or, if the Class 4 Unknown Tort Claimant is *pro se*, the Unknown Tort Claims Trustee shall obtain the certification of compliance from the third party administrator engaged by and paid for by the Archdiocese for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Claimants. The certifications shall provide that the Claimant has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Class 4 Unknown Tort Claimant's Channeled Claim. The Unknown Tort Claims Trustee shall withhold the Distribution(s) to the Unknown Tort Claimant and Unknown Tort Claimant's counsel pending receipt of such certification of compliance.

12.6.1  The Unknown Tort Claims Trust shall defend, indemnify and hold harmless the Reorganized Debtor and the Protected Parties, other than Participating Religious Orders and

any liability carriers to a Participating Religious Order in that capacity, from any Claims related to Medicare Claims reporting and payment obligations, whether relating to past Conditional Payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Tort Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Unknown Tort Claims Trust's obligations under this Plan, the Unknown Tort Claims Trust Documents, and the Plan Documents. The Unknown Tort Claims Trustee shall not have personal liability for this obligation and the Unknown Tort Claims Trust shall not create a reserve for this potential obligation.

12.6.2 The Unknown Tort Claims Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Unknown Tort Claimant. The amount of such payment shall not exceed that Claimant's award under the Unknown Tort Claims Trust documents. The Unknown Tort Claims Trustee shall not have personal liability for this obligation and the Unknown Tort Claims Trust shall not create a reserve for this potential obligation. The Reorganized Debtor shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Unknown Tort Claimant or holder of any other Channeled Claim.

## SECTION 13: TREATMENT OF EXECUTORY CONTRACTS

### 13.1    Assumption and Rejection of Executory Contracts.

On the Effective Date, except as otherwise provided herein, all Executory Contracts of the Debtor, that have not been previously rejected or terminated, will be assumed in accordance with the provisions and requirements of §§ 365 and 1123, other than those Executory Contracts that: (a) have already been assumed by Final Order of the Bankruptcy Court; (b) are subject to a motion to reject Executory Contracts that is pending on the Effective Date (subject to the Debtor's right to request rejection retroactive to an earlier date); or (c) are subject to a motion to reject an Executory Contract pursuant to which the requested effective date of such rejection is after the Effective Date. Approval of any motions to assume Executory Contracts pending on the Confirmation Date or thereafter will be approved by the Bankruptcy Court on or after the Confirmation Date by a Final Order. Each Executory Contract assumed pursuant to this Section 13.1 will revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

### 13.2    Claims Based on Rejection of Executory Contracts.

Every Claim asserted by a creditor arising from the rejection of an Executory Contract pursuant to this Plan must be filed with the Bankruptcy Court no later than the first Business Day which is 30 days after the Effective Date or the first Business Day that is 30 days after entry of the Final Order of the Bankruptcy Court approving rejection, if such Final Order is entered after the Effective Date. Every such Claim which is timely filed, as and when it becomes an Allowed Claim, will be treated under Class 5 of this Plan. Every such Claim which is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the creditor

43

holding the Claim will not receive or be entitled to any Distribution under this Plan on account of such Claim.

### 13.3 Indemnification of Members, Managers, Officers, and Employees.

The obligation of the Debtor to indemnify any individual serving at any time on or prior to the Effective Date as one of its officers, employees, or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the Debtor's constituent documents or by a written agreement with the Debtor or under the laws of the State of New Mexico, as applicable, pertaining to the Debtor, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor, pursuant to this Plan and § 365 as of the Effective Date. Obligations of the Debtor to indemnify any such individual that are assumed will survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date unless such individual is a Protected Party. Notwithstanding the foregoing, under no circumstances will the Debtor or the Reorganized Debtor assume or be responsible for any alleged indemnification obligations of any Perpetrators, or any priests or others against whom the Debtor has determined or may, in the future determine, that there are credible allegations of Abuse asserted against such individual(s) or such Entity has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such individual or Entity.

## SECTION 14: OTHER POST-EFFECTIVE DATE OBLIGATIONS

### 14.1 Closing.

Closing will be conducted at such location designated by the Debtor and the ASF Settlement Trustee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor to establish and fund the ASF Settlement Trust and make other Distributions required to be made upon, or promptly following, the Effective Date and in accordance with the terms of the respective Insurer Settlement Agreements and the Participating Party Agreements. Notwithstanding the foregoing, the Escrow Agent shall wire transfer: (a) the ASF Settlement Trust's portion of the funds in the Escrow Account to the ASF Settlement Trust within two business days after the Effective Date and (b) the Unknown Tort Claims Trust's portion of the funds in the Escrow Account to the Unknown Tort Claims Trust within two business days after the Effective Date. As soon as practicable, the ASF Settlement Trustee shall file notice of the Closing and the Reorganized Debtor will file notice of the occurrence of the Effective Date.

### 14.2 Obligations of the Reorganized Debtor.

Subject to Sections 18 and 20 of this Plan, the Reorganized Debtor will:

**14.2.1** In the exercise of its respective business judgment, review all Claims filed against the Estate except for Tort Claims, Channeled Claims, and Unknown Tort Claims and, if advisable, object to such Claims;

44

**14.2.2** Honor the Debtor's obligations arising under each Participating Party Agreement and Insurer Settlement Agreement and any other agreement that has been approved by the Bankruptcy Court as part of this Plan;

**14.2.3** Cause the Escrow Agent to transfer by wire the respective shares of the funds from the Escrow Account to the ASF Settlement Trustee and to the Unknown Tort Claims Trustee within two Business Days after the Effective Date;

**14.2.4** Transfer by wire any balance owed on the Promissory Note to the ASF Settlement Trust pursuant to the terms of the Promissory Note on or before March 31, 2023; and

**14.2.5** Perform all of its obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

**14.3    No Professional Fees or Expenses.**

No professional fees or expenses incurred by a claimant will be paid by the Reorganized Debtor, the Protected Parties, the ASF Settlement Trust and/or the Unknown Tort Claims Trust, or the ASF Settlement Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

**14.4    Closing of the Bankruptcy Case.**

As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; provided, however, that entry of a final decree closing the Bankruptcy Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the ASF Settlement Trustee, or any other party in interest to reopen the Bankruptcy Case for any matter over which the Bankruptcy Court or the U.S. District Court has retained jurisdiction under this Plan or otherwise has jurisdiction under applicable law. Any order closing the Bankruptcy Case will provide that the Bankruptcy Court or the U.S. District Court, as appropriate, will retain: (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in the Bankruptcy Case, and the obligations created by this Plan and the Plan Documents; (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents; and (c) provide that the ASF Settlement Trust or the Unknown Tort Claims Trust may be terminated and the ASF Settlement Trustee and/or or the Unknown Tort Claims Trustee discharged as ordered by the Bankruptcy Court without reopening the Bankruptcy Case.

**SECTION 15: INSURANCE MATTERS**

**15.1** Nothing in this Plan, the Confirmation Order or in any Plan Document: (i) modifies any of the terms or the rights and obligations of Catholic Mutual, the Reorganized Debtor or any other Archdiocese Party under the Catholic Mutual Settlement Agreement or the Certificates, as amended by such settlement agreement on the Effective Date, which shall govern the coverage, limits, declarations, terms and conditions of liability coverage under the Certificates by Catholic Mutual from and after the Effective Date; (ii) impairs, diminishes or affects Catholic Mutual's legal and equitable defenses under the Certificates, as so amended, relating to any and all Claims;

45

(iii) shall have any collateral estoppel or res judicata effect with respect to the liability for any and all Claims of the Reorganized Debtor or of any other Entity covered or allegedly covered under any Certificate, as so amended; (iv) shall have any collateral estoppel or res judicata effect with respect to the obligations, if any, of Catholic Mutual under the Certificates, as so amended, to provide a defense or indemnity with respect to any and all Claims; (v) shall impose any obligation on Catholic Mutual not set forth in the Certificates, as so amended, to provide a defense for, settle or pay any judgement with respect to any and all Claims; or (vi) shall grant any right of the holder of a Claim to sue Catholic Mutual in a direct action. For the avoidance of doubt, nothing in this section shall diminish the protection of Catholic Mutual under the Channeling Injunction and Supplemental Injunction.

15.2    Unless otherwise determined by order of the Bankruptcy Court, the filing of a proof of claim or the estimation or allowance of a Claim shall not: (i) constitute a trial, an adjudication on the merits or evidence of liability or damages in any litigation with Catholic Mutual, the Reorganized Debtor, or any other Entity covered or allegedly covered under a Certificate, as amended by the Catholic Mutual Settlement Agreement on the Effective Date; or (ii) constitute, or be deemed to be a determination of the amount of any Claim, either individually or in the aggregate with other Claims.

15.3    Nothing in this Plan, Confirmation Order or any Plan Document, shall impose any obligation on any Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Tort Claim, Channeled Claim, or Unknown Tort Claim.

15.4    Nothing in this Plan, the Confirmation Order or any Plan Document shall grant to any Entity any right to sue any Settling Insurer directly, in connection with a Tort Claim, Channeled Claim, Unknown Tort Claim or any Certificate or Insurance Policy (including a released Certificate or released Insurance Policy). To the extent that a Certificate or Insurance Policy continues in effect after the Effective Date because it is not a released Certificate or released Insurance Policy, the terms of the Certificate or Insurance Policy and applicable non-bankruptcy law will govern the rights and obligations of such Entity; provided, however, that pursuant to this Plan and the Insurer Settlement Agreements, no Entity shall have any right to sue any Settling Insurer or Participating Party directly or indirectly in connection with a Tort Claim, Unknown Tort Claim, Channeled Claim, or a released Certificate or released Insurance Policy. The ASF Settlement Trustee shall have the right to bring legal action to enforce the Insurer Settlement Agreements.

15.5    Nothing in this Plan, Confirmation Order, or in any Plan Document shall constitute a finding or determination that any Debtor and/or third party is a named insured, additional insured or insured in any other way under any Certificate or Insurance Policy; or that any Settling Insurer has any defense or indemnity obligation with respect to any Tort Claim, Channeled Claim, or Unknown Tort Claim.

15.6    Nothing in this Plan is intended to affect the governing law of any Certificate or Insurance Policy.

15.7    The indemnification provisions in the Insurer Settlement Agreements survive the confirmation and effectiveness of this Plan.

46

# SECTION 16: LITIGATION

### 16.1   Preservation of Retained Claims.

The Reorganized Debtor shall retain and exclusively enforce the Retained Claims, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in the Bankruptcy Case. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Retained Claims, without obtaining Bankruptcy Court approval.

Except for Tort Claimants, holders of Channeled Claims, or Unknown Tort Claimants, any Entity to whom the Debtor has incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a Proof of Claim against the Debtor in this Bankruptcy Case; (ii) such Entity's Proof of Claim has been objected to; (iii) such Entity's Claim was included in the Schedules; or (iv) such Entity's scheduled Claims have been objected to or have been identified as disputed, Contingent, or unliquidated.

# SECTION 17: LIQUIDATION OF TORT CLAIMS AND UNKNOWN TORT CLAIMS

### 17.1   Liquidation and Payment of Tort Claims.

17.1.1   The ASF Settlement Trust shall pay or otherwise treat Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) in accordance with the terms of the ASF Settlement Trust Documents. The amount of the ASF Settlement Trust's Distributions and reserves on account of the Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) shall not be binding upon any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim. Nothing in the ASF Settlement Trust Documents shall: (i) impose any costs, directly or indirectly, upon the Estate, the Reorganized Debtor, any Participating Party or any Settling Insurer relating to the treatment of Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) or (ii) otherwise modify the rights or obligations of the Estate, the Reorganized Debtor, any Participating Party or Settling Insurer as otherwise set forth in the respective Insurer Settlement Agreement, Participating Party Agreement, this Plan, or a Plan Document.

17.1.2   Notwithstanding the foregoing, the Reorganized Debtor is responsible for the ASF Settlement Trust's administrative expenses as set forth in the Plan and in the ASF Settlement Trust. The Reorganized Debtor is not responsible for the ASF Settlement Trust's administrative expenses incurred in the administration and payment of Claims against Participating Religious Orders. Because Class 3 Tort Claims are being paid by the ASF Settlement Trust without

47

regard to whether those Claims are covered by Certificates or Insurance Policies, the ASF Settlement Trust shall be deemed to be subrogated to the Claims of Tort Claimants paid by the ASF Settlement Trust. The ASF Settlement Trust may not bring any action against the Reorganized Debtor, any Protected Party, or their respective assets; provided, however, that the ASF Settlement Trust may bring an action against any of the foregoing Entities to enforce this Plan or Plan Documents.

**17.2 Effect of No Award on Tort Claims or Channeled Claims.** If a Tort Claim, Channeled Claim, or Unknown Tort Claim is denied payment pursuant to the respective Tort Claims Allocation Protocol or Unknown Tort Claims Allocation Protocol, the holder of such Tort Claim, Channeled Claim, or Unknown Tort Claim will have no further rights against the Debtor, Reorganized Debtor, ASF Participating Parties, Settling Insurers, the ASF Settlement Trust, Unknown Tort Claims Trust, ASF Settlement Trustee, or Unknown Tort Claims Trustee relating to such Tort Claim, Channeled Claim, or Unknown Tort Claim and such Tort Claim, Channeled Claim, or Unknown Tort Claim shall be a Disallowed Claim and subject to all provisions of Section 19 below.

**17.3** The Unknown Tort Claims Trust shall pay or otherwise treat (a) Class 4 Unknown Tort Claims and (b) Channeled Claims that arise out of the same set of facts and circumstances as a Class 4 Unknown Tort Claim in accordance with the terms of the Unknown Tort Claims Allocation Protocol. The amount of the Unknown Tort Claims Trust's Distributions and reserves allocated to (i) Class 4 Unknown Tort Claims and (ii) Channeled Claims that arise out of the same set of facts and circumstances as a Class 4 Unknown Tort Claim shall not be binding upon any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim.

## SECTION 18: CONDITIONS PRECEDENT

**18.1 Conditions to Occurrence of the Effective Date.**

The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 18.2 of this Plan:

**18.1.1** The Bankruptcy Court shall have entered a Final Order or Final Orders approving each Insurer Settlement Agreement and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Settling Insurer with respect to that Settling Insurer's Insurer Settlement Agreement and consistent with the requirements of such Settling Insurer's applicable Insurer Settlement Agreement, and no stay of such orders is in effect;

**18.1.2** The Bankruptcy Court shall have entered a Final Order or Final Orders approving all Participating Party Agreements and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Participating Party with respect to that Participating Party's Participating Party Agreement and consistent with the requirements of such Participating Party's applicable Participating Party Agreement, and no stay of such orders is in effect;

**18.1.3**     The Bankruptcy Court shall have entered the Confirmation Order in form and substance that is reasonably acceptable to the Reorganized Debtor, the Committee, the Settling Insurers, and the ASF Participating Parties, and the Confirmation Order is a Final Order;

**18.1.4**     The ASF Settlement Trustee and the Reorganized Debtor have signed the ASF Settlement Trust Agreement;

**18.1.5**     All Insurer Contributions and the Debtor's Initial Contribution have been paid to the ASF Settlement Trust or the Escrow Agent; and

**18.1.6**     The Promissory Note has been executed and delivered to the ASF Settlement Trustee and the Mortgage has been executed and delivered to the ASF Settlement Trustee in recordable form.

### 18.2     Waiver of Conditions.

Any condition to the occurrence of the Effective Date set forth in Section 18.1 of this Plan may be waived by the mutual written consent of the Debtor, the Committee, the Settling Insurers with respect to any conditions affecting such Settling Insurer's rights or obligations and the ASF Participating Parties with respect to any conditions affecting such Participating Party's obligations.

### 18.3     Non-Occurrence of Effective Date.

Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur before the expiration of the 90-day period beginning after the Confirmation Order becoming a Final Order, or the last of the Orders approving the Insurer Settlement Agreements and Participating Party Agreements becoming Final Orders, whichever occurs last (the "Initial Closing Period"), this Plan shall become null and void and all funds in the Escrow Account shall be returned to the Entity that deposited them unless agreed otherwise by the Debtor, the Committee, and the Settling Insurers. Such agreement shall be deemed to have occurred if none of the foregoing parties object to Debtor's notice of intent to extend the time by 90 days to make the confirmed Plan effective. Debtor must serve such notice on the foregoing parties no less than ten business days before the expiration of the Initial Closing Period or within five business days after the occurrence of any other event that would render this Plan null and void.

## SECTION 19: EFFECTS OF CONFIRMATION

### 19.1     Discharge.

Upon the Effective Date, except as otherwise expressly provided in this Plan or in the Confirmation Order, the Debtor is discharged pursuant to §1141(d)(1) from any Claim and debt, whether reduced to judgment or not, liquidated or unliquidated, Contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, that arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims or debts, whether such interest accrued before or after the Petition Date, and including all Claims and debts of the kind specified in §§ 502(g),

49

502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under § 501, such Claim is Allowed under § 502, or the holder of such Claim has accepted this Plan. This Plan does not discharge any Tort Claims based on Abuse, the first incident of which occurred after the Petition Date.

### 19.2    Vesting.

Except as otherwise expressly provided in this Plan or in the Confirmation Order, on the Effective Date, and subject to the terms of the Promissory Note and the Mortgage, the Reorganized Debtor will be vested with all of the assets, including all property of the Estate free and clear of all Claims, liens, encumbrances, charges and other Interests of creditors. The Reorganized Debtor will, thereafter, hold, use, dispose, or otherwise deal with such property, operate its business and conduct its ministry and mission free of any restrictions imposed by the Bankruptcy Code or by the Court. All Retained Claims are hereby preserved for the benefit of the Reorganized Debtor. Unclaimed Property shall vest in the Reorganized Debtor.

### 19.3    Exculpation and Limitation of Liability.

**Except as expressly provided in this Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, any claimant, any other party in interest, or any of their respective Representatives, financial advisors, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of this Plan, or the negotiation or approval of the Insurer Settlement Agreements, or the administration of this Plan or of the property to be distributed under this Plan or the ASF Settlement Trust created hereunder, except for their willful misconduct or gross negligence and in all respects such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or the Bankruptcy Case. Without limiting the generality of the foregoing, the Debtor, its financial advisors, attorneys, and other professionals shall be entitled to and granted the benefits of § 1125(e).**

### 19.4    Limitation of Liability.

The Protected Parties, the ASF Settlement Trust, the ASF Settlement Trustee, and professionals employed by the foregoing shall not have any liability to any Entity, including any governmental entity or insurer, on account of payments made to a Tort Claimant or a holder of a Channeled Claim, including any liability under the MSPA.

### 19.5    Channeling Injunction.

In consideration of (a)(1) completion of the undertakings of the Protected Parties hereunder and (2) other consideration, and (b)(1) to further preserve and promote the agreements between and among the ASF Participating Parties, the Settling Insurers, and the Debtor, which also benefit the Tort Claimants and Unknown Tort Claimants and (2) the protections afforded the Protected Parties under the Bankruptcy Code, including § 105:

**19.5.1** Any and all Channeled Claims that are neither Unknown Tort Claims nor arise from the same facts and circumstances that could give rise to an Unknown Tort Claim are channeled into the ASF Settlement Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under Tort Claims Allocation Protocol, as the sole and exclusive remedy for all holders of Channeled Claims that are not Unknown Tort Claims. Any and all Channeled Claims that are Class 4 Unknown Tort Claims, as well as any Channeled Claims that arise from the same set of facts and circumstances as an Unknown Tort Claim are channeled into the Unknown Tort Claims Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Unknown Tort Claims Allocation Protocol as the sole and exclusive remedy for all holders of Channeled Claims that are channeled to the Unknown Tort Claims Trust.

**19.5.2** **All Entities** who **have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any of the following action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim, including:**

**(a)** **commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties;**

**(b)** **enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties, or from the property of any of the Protected Parties, with respect to any such Channeled Claim, any judgment, Award, decree, or order adverse to any of the Protected Parties;**

**(c)** **except as provided in or with respect to the Promissory Note and/or the Mortgage, creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any of the Protected Parties with respect to any such Channeled Claim;**

**(d)** **asserting, implementing or effectuating any Channeled Claim of any kind against:**

**(i) any obligation due any of the Protected Parties;**

**(ii) any Protected Party; or**

**(iii) the property of any Protected Party.**

**(e)** **taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of this Plan; and**

**(f)** **except as provided in or with respect to the Promissory Note and/or the Mortgage, asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of any of the Protected Parties.**

51

**19.5.3** The provisions of this Section 19.5 will further operate, as between all Protected Parties only, as a mutual release of all Claims relating to the Debtor, the Claims against the Debtor, the Certificates, and the Insurance Policies, which any Protected Party may have against another Protected Party except as may specifically be reserved or set forth in a Participating Party Agreement, an Insurer Settlement Agreement, a Participating Religious Order Settlement Agreement or this Plan. The foregoing channeling provisions are an integral part of this Plan and are essential to its implementation. For purposes of Section 19.5 only, the definition of Protected Parties does not include the Committee and each of its members; the Committee's Professionals; the Unknown Claims Representative, the Claims Reviewer, the Unknown Claims Reviewer, and all of their respective present or former members, managers, officers, directors, employees, Representatives, attorneys, and agents acting in such capacity. Notwithstanding anything to the contrary herein, loans among ASF Participating Parties are not forgiven hereby.

**19.6** **Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers and Insured Entities.**

**Pursuant to §§ 105(a) and 363 and in consideration of the completed performance of the undertakings of the Settling Insurers pursuant to the Insurer Settlement Agreements, including any of the Settling Insurers' purchases of Insurance Policies and Interests in the Pre-Petition Insurance Coverage Agreements free and clear of all Interests pursuant to § 363(f), any and all Entities who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, all Entities holding a Claim, governmental, tax and regulatory authorities, lenders, trade and other creditors, Archdiocese Parties, Tort Claimants, Unknown Tort Claimants, holders of Channeled Claims, perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to this Plan, the Insurer Settlement Agreements, and the Participating Religious Order Agreements) against any of the Protected Parties, Insured Entities, or the Certificates or Insurance Policies, which, directly or indirectly, relate to, any of the Certificates or Insurance Policies, any Channeled Claims, any Tort Claims or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers, Insured Entities, and/or Certificates or the Insurance Policies, including:**

> **(a)** **Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

> **(b)** **Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, Award, decree or order against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

> **(c)** **Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

(d)    Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities; and,

(e)    Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan.

19.7    **Term of Injunctions or Stays and Confirmation of Settlements.**

**The foregoing discharge and injunctive provisions of Article 19 of the Plan are an integral part of this Plan and are essential to its implementation, and not subject to alteration or termination without the consent of the Protected Parties. On the Effective Date, the injunctions provided for in this Plan shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable, provided however, that any Participating Religious Order or liability carrier that has agreed to make a Participating Religious Order Contribution as set forth in Section 10 above that has not paid its share of such contribution shall not be entitled to the protections of the Channeling Injunction except to the extent a liability carrier is entitled to such protections based solely on its status as a Protected Party pursuant to an Insurer Settlement Agreement. All injunctions and/or stays provided for in this Plan, the injunctive provisions of §§ 524 and 1141, and all injunctions or stays protecting any Settling Insurer that has participated in a buy back or has purchased its Insurance Policies in a § 363 sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified. Any and all currently pending court proceedings arising from Channeled Claims, the continuation of which would violate the provisions of this Article, shall be dismissed with prejudice. Nothing herein shall affect the ASF Settlement Trustee's rights to enforce the Promissory Note and the Mortgage.**

19.8    **Insurer Settlement Agreements, Participating Party Agreements, and the Participating Religious Order Settlement Agreement**s **Incorporated into the Confirmed Plan.**

On the Effective Date, the Insurer Settlement Agreements, Participating Party Agreements, and the Participating Religious Order Settlement Agreements, if and to the extent approved by Final Orders, and the Final Orders approving them, shall be deemed incorporated into the confirmed Plan. Conflicts between the Plan and the Participating Party Agreements, the Insurer Settlement Agreements or the Participating Religious Order Settlement Agreements or the Final Orders approving them shall be controlled by the Plan.

19.9    **No Release of Criminal Liability.**

The releases, injunctions, and exculpations afforded by this Plan do not release, enjoin, or exculpate any Person or Entity of or from any criminal liability or prosecution, whatsoever.

## SECTION 20: MODIFICATION OF PLAN

20.1    **Non-Material Modification of Plan.**

The Plan may be modified by the Debtor or the Reorganized Debtor (as applicable) from time to time in accordance with, and pursuant to, § 1127, provided that such modifications also comply with the Insurer Settlement Agreements and the Participating Party Agreements. The Plan may be modified by the Debtor at any time before the Confirmation Date, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123, and the Debtor has complied with § 1125. Each holder of a Claim that has accepted this Plan will be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not adversely change the treatment of the Claim of such holder. Each holder of a Claim that votes in favor of this Plan authorizes the Debtor to modify, at any time prior to the Effective Date and without the requirement of further solicitation, the treatment provided to the Class of Claims such Claims are classified in, provided that the Bankruptcy Court determines that such modification is not material.

### 20.2   Additional Documentation; Non-Material Modifications of Plan Documents.

From and after the Effective Date, the ASF Settlement Trustee, the Reorganized Debtor, ASF Participating Parties and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Plan, and Plan Documents without further order of the Bankruptcy Court. Additionally, the ASF Settlement Trustee, the Reorganized Debtor, ASF Participating Parties and the Settling Insurers may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of any Claim without the prior written agreement of such holder. A Class of Claims that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, modified or supplemented hereunder, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class.

### 20.3   No Re-Solicitation.

An order of the Bankruptcy Court approving any amendment or modification made to this Plan shall constitute an order in aid of consummation of this Plan and shall not require the re-solicitation of votes on this Plan.

## SECTION 21: RETENTION OF JURISDICTION

**21.1**   Notwithstanding confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

**21.1.1**   **In General.** The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor, by the Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Administrative Claims for Professional Charges. The Bankruptcy Court will not retain or obtain jurisdiction to determine any internal disputes between or among the Debtor (or the Archdiocese), a Parish, or any other related Entity that, under applicable Canon Law, would be

determined in a specialized religious court. Notwithstanding the foregoing, the Bankruptcy Court will not have jurisdiction to review the Claims Administrator's determination or evaluation of Class 3 Tort Claims, Class 4 Tort Claims, or Channeled Claims, or the allocations made from the ASF Settlement Trust or the Unknown Tort Claims Trust on account of such Claims.

      **21.1.2    Plan Disputes and Enforcement.** Subject to the limitations set forth in this Plan, the Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provision of this Plan. The Bankruptcy Court will also retain jurisdiction to enforce any provisions of this Plan and any and all Plan Documents, including, but not limited to, any actions to enforce the discharge, releases and injunctions provided for in Section 19 of this Plan. The Bankruptcy Court will also retain jurisdiction over any matter relating to the implementation, effectuation, and/or consummation of this Plan including enforcement of the Promissory Note and Mortgage.  The Debtor and Reorganized Debtor, as the case may be, consent to the jurisdiction of and venue in the Bankruptcy Court to enter a Final Order with respect to any action by the ASF Settlement Trust to enforce the terms of the Promissory Note and the ASF Settlement Trust.

      **21.1.3    Further Orders.** Subject to the limitations set forth in Section 21.1.1 above, the Bankruptcy Court will retain jurisdiction to facilitate the performance of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate order regarding enforcement of this Plan, the Plan Documents and any provisions thereof, and to protect the Debtor, the Reorganized Debtor, and the Protected Parties from actions prohibited under this Plan. In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to this Plan (other than Tort Claims, Channeled Claims, or Unknown Tort Claims, except to the extent that any retained jurisdiction is consistent with this Plan, and the ASF Settlement Trust) to which an objection has not been filed prior to the Effective Date.

      **21.1.4    Retained Debtor Claims.** Subject to the limitations set forth in Section 21.1.1 above, and to the extent the Bankruptcy Court would otherwise have jurisdiction over such Claims, the Bankruptcy Court will retain jurisdiction with respect to any Claims not otherwise compromised or settled by the Debtor prior to the Effective Date.

      **21.1.5    Post-Confirmation Agreements.** The Bankruptcy Court will retain jurisdiction to approve and enter appropriate orders regarding any Participating Party Agreements entered into between the ASF Settlement Trust, the Debtor (or Reorganized Debtor) and a Participating Party or Participating Religious Order, whereupon such settling parties shall have the obligations and rights set forth in this Plan, the Confirmation Order and Participating Party Agreements or Participating Religious Order Settlement Agreements.

      **21.1.6    Final Decree.** The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Bankruptcy Case; provided, however, that the Bankruptcy Court will retain jurisdiction to enter an order terminating the ASF Settlement Trust and discharging the ASF Settlement Trustee in accordance with the terms of the ASF Settlement Trust notwithstanding the issuance of the final decree and closing of the Bankruptcy Case and without the necessity of reopening the Bankruptcy Case.

21.1.7 **Appeals.** In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and <u>provided</u> <u>that</u> no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and this Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding this Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtor.

21.1.8 **Executory Contracts.** The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

21.1.9 **Claims.** Subject to the limitations set forth in Section 21.1.1 above, the Bankruptcy Court will retain jurisdiction:

(a) To hear and determine any Claim or cause of action by or against the Debtor, the Debtor's officers, officials, employees or Representatives, the Chapter 11 Professionals, the Committee members in their capacity as such, and the Reorganized Debtor;

(b) To adjudicate any causes of action or other proceeding currently pending or otherwise referenced here or elsewhere in this Plan, including, but not limited to, the adjudication of the Retained Claims and any and all "core proceedings" under 28 U.S.C. § 157(b) which may be pertinent to the Bankruptcy Case and which the Debtor or the Reorganized Debtor may deem appropriate to initiate and prosecute before the Bankruptcy Court in aid of the implementation of this Plan; and

(c) To approve any settlements between or among the Debtor, the Committee, the ASF Settlement Trustee and the party against whom the Debtor, the Committee and/or the ASF Settlement Trustee asserts a Retained Claim.

21.1.10 **Modification of this Plan.** The Bankruptcy Court will retain jurisdiction to modify this Plan.

21.1.11 **Failure of Court to Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including matters set forth in this Section 20, such lack of jurisdiction will not diminish, control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

### SECTION 22: REORGANIZATION OF DEBTOR

**22.1 Continued Corporate Existence of the Archdiocese and Operation of the Reorganized Debtor.**

The Archdiocese will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all powers of a corporation sole under the laws of the State of New Mexico and without prejudice to any right to alter or terminate such existence under applicable state law but subject to applicable Canon Law. On and after the Effective Date, the Archdiocese

may operate its businesses and carry on the ministry and the mission of the Roman Catholic Church and may use, acquire, or dispose of property, and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

### 22.2    Management of Reorganized Debtor.

From and after the Effective Date, the Reorganized Debtor will continue to be managed in accordance with the principles of Canon Law and applicable state law.

## SECTION 23: GENERAL PROVISIONS

### 23.1    Election Pursuant to § 1129(b).

If necessary, the Debtor hereby requests confirmation of this Plan pursuant to § 1129(b) if the requirements of all provisions of § 1129(a), except Section (a)(8) thereof, are met with regard to this Plan.

### 23.2    Post-Confirmation Coverage.

Notwithstanding any provision of this Plan or the Confirmation Order to the contrary, the terms of the Catholic Mutual Settlement Agreement and the Certificates, as amended by such settlement agreement, shall govern the coverage, limits, declarations, terms and conditions of liability coverage of the Archdiocese and Reorganized Debtor by Catholic Mutual from and after the Effective Date; *provided, however*, that Catholic Mutual's coverage of Channeled Claims is settled, extinguished and excluded by such settlement agreement and this Plan.

### 23.3    Extension of Payment Dates.

If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

### 23.4    Extension of Deadlines. The Court shall retain jurisdiction to approve an extension of any deadline provided in the Plan (i) upon motion of Debtor prior to the Effective Date; (ii) upon motion of Reorganized Debtor as to matters that do not materially affect Tort Claimants after the Effective Date; and (iii) as to matters that may materially affect Tort Claimants, on motion of the ASF Settlement Trustee after the Effective Date. The granting of, or refusal to grant, one extension shall not preclude the Court's consideration of additional extensions. Notwithstanding the foregoing, the maturity date of the Promissory Note and any deadlines associated with enforcement of the Mortgage shall not be extended by the Court without express, written consent of the Committee or the ASF Settlement Trustee.

### 23.5    Notices.

Any notice required or permitted to be provided under this Plan will be in writing and served by regular first class mail, electronic mail, overnight delivery, or hand-delivery.

57

**23.6    Closing of the Bankruptcy Case.**

At such time as this Plan has been fully administered and/or this Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order showing that this Plan has been fully administered or substantially consummated upon notice to only those creditors and parties that, after the Effective Date, have specifically requested, after which an order approving the Reorganized Debtor's final report and closing the Bankruptcy Case may be entered.

**23.7    Interest.**

Whenever interest is to be computed under this Plan, interest will be simple interest and not compounded.

**23.8    Additional Assurances.**

The Debtor, the Reorganized Debtor, the ASF Settlement Trustee and the creditors holding Claims herein, including Tort Claims and Unknown Tort Claims will execute such other further documents as are necessary to implement any of the provisions of this Plan.

**23.9    Withdrawal of Plan.**

The Plan may be withdrawn or revoked prior to entry of the Confirmation Order in which event the provisions of Sections 23.14 will apply.

**23.10    Severability and Reformation.**

It is the Debtor's intention to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing this Plan. Therefore, if any provision of this Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision may be modified with the consent of the Debtor, the ASF Participating Parties, the Committee, and the Settling Insurers, provided, however, that nothing contained in this Section will prevent the Debtor from modifying this Plan in any manner whatsoever in accordance with and as set forth in Section 20.1 of this Plan and the Bankruptcy Code.

**23.11    Prohibition Against Prepayment Penalties.**

If the Debtor or the Reorganized Debtor chooses, in its sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under this Plan, the Debtor or the Reorganized Debtor will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court.

**23.12    Fractional Dollars.**

Notwithstanding any other provision of this Plan, no payments or Distributions under this Plan of or on account of fractions of dollars will be made. When any payment or Distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or Distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

58

### 23.13  Payment of Statutory Fees and Filing of Quarterly Reports.

All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed by the Debtor or Reorganized Debtor in accordance with applicable bankruptcy law.

### 23.14  Reservation of Rights.

Except as expressly provided herein, this Plan will have no force or effect unless the Confirmation Order is entered by the Bankruptcy Court and the Effective Date has occurred. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan will be nor will it be deemed to be an admission or waiver of any rights of the Debtor or the Committee with respect to the holders of Claims prior to the Effective Date or with respect to any matter which is pending before or may come before the Bankruptcy Court or any other court for determination in the Bankruptcy Case or any other case.

### 23.15  No Professional Fees or Expenses.

No professional fees or expenses will be paid by the Debtor or the Reorganized Debtor with respect to any Claim except as specified in this Plan or as Allowed by Final Order of the Court.

### 23.16  Dissolution of Committee.

Upon the occurrence of the Effective Date, the Committee will be dissolved; provided, however, that Committee may continue to exist after the Effective Date with respect to any and all applications for Professional fees and expenses but not for any other purpose.

### 23.17  Headings.

The headings of the articles, paragraphs, and sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

### 23.18  Section 1146 Exemption.

Pursuant to § 1146(c), any transfers of property pursuant hereto will not be subject to any document, recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 23.19  Successors and Assigns.

The rights, benefits and obligations of any Entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heirs, executors, administrator, successors or assigns of such Entity.

[SIGNATURE PAGE FOLLOWS]

SUBMITTED this 3rd day of November, 2022.

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
corporation sole,

By: _Most Reverend John C. Wester_

    Most Reverend John C. Wester


Prepared and Submitted By:


*/s/submitted electronically 11/03/2022*
Ford Elsaesser
Bruce A. Anderson
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

and

*/s/ submitted electronically 11/03/2022*
Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com
*Counsel for Debtor*