# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF          Case No. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,
a New Mexico corporation sole

---

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED NOVEMBER 3, 2022

---

**ELSAESSER ANDERSON, CHTD.**

**Ford Elsaesser**
**Bruce A. Anderson**
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
Email: ford@eaidaho.com
Email: brucea@eaidaho.com

-and-

**WALKER & ASSOCIATES, P.C.**

**Thomas D. Walker**
500 Marquette Ave NW, Suite 650
Albuquerque, NM 87102
(505) 766-9272
(505) 766-92878 (fax)
Email: twalker@walkerlawpc.com
*Attorneys for Debtor*

**SECTION 1: INTRODUCTION** ................................................................... **1**

**SECTION 2: RULES OF INTERPRETATION** ............................................ **1**

**SECTION 3: DEFINITIONS** ............................................................... **2**

**SECTION 4: PLAN OBJECTIVES AND SUMMARY** ............................... **20**

    **4.1 Objectives.** .......................................................................... **20**

**SECTION 5: TREATMENT OF UNCLASSIFIED CLAIMS** ................... **22**

    **5.1 Administrative Claims.** ...................................................... **22**

**5.1.1 Bar Date for Claims Arising or Occurring After Petition Date.** ...... **22**

**5.1.2 Objections to Post-Petition Proofs of Claims.** ............................ **22**

    **5.2 Professional Claims.** .......................................................... **22**

    **5.2.1 Bar Dates for Professional Claims.** ...................................... **22**

    **5.2.2 Objections to Professional Claims.** ...................................... **23**

    **5.3 U.S. Trustee Fees.** .............................................................. **23**

**SECTION 6: CLASSIFICATION OF CLAIMS** ..................................... **23**

**SECTION 7: TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS** ........... **24**

    **7.1 Class 1: Other Priority Claims** ............................................ **25**

    **7.2 Class 2: General Unsecured Convenience Claims.** ................... **25**

    **7.3 Class 7: Employee/Retirement Claims.** ................................. **25**

**SECTION 8: TREATMENT OF IMPAIRED CLASSES OF CLAIMS** ................ **25**

    **8.1 Class 3: Tort Claims (Other than Unknown Tort Claims)** ............ **25**

    **8.2 Class 4: Unknown Tort Claims** ............................................ **28**

    **8.4 Class 6: Penalty Claims** ...................................................... **31**

    **8.5 Class 8: Abuse Related Contingent Claims** ............................ **31**

**SECTION 9: ACCEPTANCE OR REJECTION OF PLAN** ...................... **31**

    **9.1 Classes Entitled to Vote** ...................................................... **31**

    **9.2 Presumed Acceptance of this Plan** ......................................... **31**

    **9.3 Presumed Rejection of this Plan** ........................................... **32**

    **9.4 "Cram Down" Request** ....................................................... **32**

**SECTION 10: MEANS OF IMPLEMENTATION OF THE PLAN** ............ **32**

    **10.1 Establishment of Escrow Account.** ...................................... **32**

    **10.2 Funding.** ........................................................................... **32**

    **The following will be transferred by wire transfer to the Escrow Account:** ......... **32**

i.     **Debtor's Initial Contribution.** ................................................ **32**

ii.     **Travelers Contribution.** .......................................................... **32**

i

iii.       **Arrowood Contribution.**................................................................ 32

iv.       **U.S. Fire Contribution.**................................................................ 32

v.       **Great American Contribution.** ................................................... 33

vi.       **Catholic Mutual Contribution.** ................................................. 33

vii.       **CNA Contribution.** .................................................................... 33

viii.       **Second Debtor Contribution.**.................................................... 33

**10.3   Payment and Treatment of Claims Other Than Tort Claims and Unknown Tort Claims.** 34

**10.4   Retained Claims** ................................................................... 34

**10.5   Approval of Financing and 363 Sales.** ............................... 35

**10.6   Approval of Settlement Agreements.** ................................. 35

**10.7   Indemnification of Settling Insurers** ................................. 35

**10.8   Debtor's Waiver and Release of Claims Against ASF Participating Parties.** 36

**10.9   Dismissal of Adversary Proceedings**................................... 36

**10.10 Non-Monetary Commitment to Healing and Reconciliation.** ....................... 36

**10.11 Procedure for Determination of Claims Other Than Tort Claims or Unknown Tort Claims.** 36

**10.13 Payments Effective Upon Tender.** ....................................... 37

**10.14 Preservation of Debtor's Claims, Demands, and Causes of Action.** ............. 37

**10.15 Special Provisions Governing Unimpaired Claims.** ................. 38

**10.16 Operative Documents.** ...................................................... 38

**10.17 Return of Deposits.** .......................................................... 38

**10.18 Delivery of Distributions (Except to Tort Claims and Unknown Tort Claims).** 38

**10.19 Transmittal of Distributions to Tort Claimants and Unknown Tort Claimants.** 39

**10.20   Efforts Regarding Absence of Address or Returned Mail.** ............... 39

**SECTION 11: ASF SETTLEMENT TRUST** ......................................... 39

**11.1   Establishment of ASF Settlement Trust** ............................. 39

**11.2   Funding** ................................................................................ 39

**11.3   Reserve Accounts** ............................................................... 40

**11.4   No Execution** ....................................................................... 40

**11.6   Special Distribution Conditions.** ...................................... 40

**SECTION 12: UNKNOWN TORT CLAIMS TRUST** ......................... 41

12.1   Establishment of Unknown Tort Claims Trust ............................................. 41

12.2   Funding ...................................................................................................... 41

12.3   Reserve Accounts ...................................................................................... 42

12.4   No Execution .............................................................................................. 42

12.6   Special Distribution Conditions. ............................................................... 42

SECTION 13: TREATMENT OF EXECUTORY CONTRACTS ........................... 43

13.1   Assumption and Rejection of Executory Contracts. .................................. 43

13.2   Claims Based on Rejection of Executory Contracts. ................................. 43

13.3   Indemnification of Members, Managers, Officers, and Employees. ............ 44

SECTION 14: OTHER POST-EFFECTIVE DATE OBLIGATIONS ..................... 44

14.1   Closing. ...................................................................................................... 44

14.2   Obligations of the Reorganized Debtor. .................................................... 44

14.3   No Professional Fees or Expenses. ........................................................... 45

14.4   Closing of the Bankruptcy Case. ............................................................... 45

SECTION 15: INSURANCE MATTERS ................................................................. 45

SECTION 16: LITIGATION ..................................................................................... 47

16.1   Preservation of Retained Claims. .............................................................. 47

SECTION 17: LIQUIDATION OF TORT CLAIMS AND UNKNOWN TORT
CLAIMS     47

17.1   Liquidation and Payment of Tort Claims. .................................................. 47

17.2   Effect of No Award on Tort Claims. .......................................................... 48

SECTION 18: CONDITIONS PRECEDENT ........................................................... 48

18.1   Conditions to Occurrence of the Effective Date. ...................................... 48

18.2   Waiver of Conditions. ................................................................................ 49

18.3   Non-Occurrence of Effective Date. ........................................................... 49

SECTION 19: EFFECTS OF CONFIRMATION ..................................................... 49

19.1   Discharge. ................................................................................................... 49

19.2   Vesting. ....................................................................................................... 50

19.3   Exculpation and Limitation of Liability .................................................... 50

19.4   Limitation of Liability. ............................................................................... 50

19.5   Channeling Injunction. ............................................................................... 50

19.6   Supplemental Injunction Preventing Prosecution of Claims Against Settling
Insurers and Insured Entities. ................................................................................. 52

19.7   Term of Injunctions or Stays and Confirmation of Settlements. ................. 53

19.8   Insurer Settlement Agreements Incorporated into the Confirmed Plan. ..... 53

iii

**SECTION 20: MODIFICATION OF PLAN** ................................................ 53

   **20.1   Non-Material Modification of Plan.** ...................................... 53

   **20.2   Additional Documentation; Non-Material Modifications of Plan Documents.**
      **54**

   **20.3   No Re-Solicitation.** ............................................................ 54

**SECTION 21: RETENTION OF JURISDICTION** ............................... 54

**SECTION 22: REORGANIZATION OF DEBTOR** ............................. 56

   **22.1   Continued Corporate Existence of the Archdiocese and Operation of the
Reorganized Debtor.** ..................................................................................... 56

   **22.2   Management of Reorganized Debtor** ................................... 57

**SECTION 23: GENERAL PROVISIONS** ............................................. 57

   **23.1   Election Pursuant to § 1129(b).** ......................................... 57

   **23.2   Post-Confirmation Coverage.** ............................................ 57

   **23.3   Extension of Payment Dates.** ............................................. 57

   **23.5   Notices.** ................................................................................. 57

   **23.6   Closing of the Bankruptcy Case.** ....................................... 58

   **23.7   Interest.** ................................................................................ 58

   **23.8   Additional Assurances.** ....................................................... 58

   **23.9   Withdrawal of Plan.** ........................................................... 58

   **23.10 Severability and Reformation.** .......................................... 58

   **23.11 Prohibition Against Prepayment Penalties.** ...................... 58

   **23.12 Fractional Dollars.** ............................................................. 58

   **23.13 Payment of Statutory Fees and Filing of Quarterly Reports.** ...... 59

   **23.14 Reservation of Rights.** ....................................................... 59

   **23.15 No Professional Fees or Expenses.** .................................... 59

   **23.16 Dissolution of Committee.** ................................................. 59

   **23.17 Headings.** ........................................................................... 59

   **23.18 Section 1146 Exemption.** .................................................. 59

   **23.19 Successors and Assigns.** .................................................... 59

## SECTION 1: INTRODUCTION

**1.1** The Roman Catholic Church of the Archdiocese of Santa Fe, New Mexico, a New Mexico corporation sole, the debtor and debtor-in-possession, in the above-captioned Chapter 11 reorganization case proposes the following Plan of Reorganization pursuant to §1121 of chapter 11 of title 11 of the United States Code, <u>11 U.S.C. §§ 101</u> *et seq.*[1]

**1.2** ALL CLAIMANTS ARE STRONGLY ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER IMPORTANT INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE BANKRUPTCY CASE AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE PROJECTED POST-CONFIRMATION OPERATIONS OF THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## SECTION 2: RULES OF INTERPRETATION

**2.1** The rules of construction in § 102 apply to this Plan to the extent consistent with any other provision in this Section. In addition, the use of the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to," "relates to," or "relating to" mean with regard to, by reason of, based on, arising out of, or in any way connected with.

**2.2** In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a)[2] shall apply. If any act under this Plan is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. Enlargement of any period of time prescribed or allowed by this Plan shall be governed by the provisions of Rule 9006(b).

**2.3** The definition of any capitalized term or provision in a Plan Document shall be incorporated by reference in this Plan unless this Plan provides a different definition for such term or provision. In the event of any conflict between a definition of a term or provision in a Plan Document and this Plan, the definition or provision in this Plan will control unless otherwise provided in this Plan or the Confirmation Order.

**2.4** If the definition given to any term or provision in this Plan is inconsistent with the definition of such term under the Bankruptcy Code, the Disclosure Statement, the ASF Settlement

---

[1] All references to "Code Section" or "§" are to chapter 11 of title 11 of the United States Code, <u>11 U.S.C. §§ 101</u> *et seq.,* the Bankruptcy Code, unless otherwise indicated.

[2] All references to "Rule" are to the Bankruptcy Rules (as defined in Section 3), unless otherwise indicated.

Trust Agreement, the Unknown Tort Claims Trust Agreement, the Participating Party Agreements, or the Insurer Settlement Agreements, then the definition ascribed to such term in this Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code or such other document.

2.5     Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural. Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected or upon an order of the Bankruptcy Court.

2.6     Unless otherwise specified, any reference to an existing document means the document as it has been, or may be, amended or supplemented until the date of the Confirmation Hearing.

2.7     Unless otherwise indicated, the phrase "under this Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a particular portion of this Plan.

2.8     Unless otherwise specified, all references to the terms "Sections," "Paragraphs," "Clauses," or "Exhibits" are references to this Plan's Sections, Paragraphs, Clauses, or Exhibits. Such references shall be applicable regardless of whether or not such terms are capitalized.

2.9     Section captions and headings are used only as convenient references and do not affect this Plan's meaning.

2.10    Nothing contained in this Plan constitutes an admission or denial by any Entity of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

## SECTION 3: DEFINITIONS

3.1     **Scope of Definitions.** For purposes of this Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Section 3 will have the meanings hereinafter stated. The defined terms stated in Section 3 also are substantive terms of this Plan, and Section 3 will be deemed incorporated throughout the rest of this Plan to convey the substantive provisions included in the defined terms.

3.2     **"Abuse"** means any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual, psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct.

**3.3** **"Abuse Claim"** means any Claim (as defined in § 101(5)) against the Archdiocese resulting or arising in whole or in part, directly or indirectly from any Abuse, and seeking monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Archdiocese or any other Person or Entity for whose acts or failures to act the Archdiocese is or was allegedly responsible.

**3.4** **"Abuse Documents"** are those documents described in the Abuse Documents Memorandum of Agreement**.**

**3.5** **"Abuse Documents Archive"** means a repository created, organized, maintained and administered by the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences' Center for Southwest Research and Special Collections ("CSWR") to allow public access to Abuse Documents that have been reviewed, redacted and produced to CSWR in accordance with the terms of the Abuse Documents Memorandum of Agreement.

**3.6** **"Abuse Documents Memorandum of Agreement"** means that certain "Memorandum of Agreement" between the Archdiocese, the Committee, and the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences Center for Southwest Research and Special Collections Memorandum of Agreement among the Debtor, the Committee, and the CSWR dated April 20, 2020, a copy of which is attached hereto as Exhibit A.

**3.7** **"Abuse Related Contingent Claim"** means any Entity's Claim against the Archdiocese for contribution, indemnity, or reimbursement arising as a result of such Entity's liability to pay or defend any Tort Claim.

**3.8** **"Administrative Claim"** means a Claim for payment of an administrative expense of a kind specified in § 503(b) and referred to in § 507(a)(2) including the actual, necessary costs and expenses of preserving the Debtor's estate and operating the Debtor's businesses, compensation for professional services and reimbursement of expenses awarded under §§ 330(a) or 331, and all fees and charges assessed against the Debtor's estate under chapter 123 of Title 28, United States Code.

**3.9** **"Adversary Proceedings"** means the following adversary proceedings pending in the Bankruptcy Court: Adv. No. 20-01058, Adv. No. 20-01059, Adv. No. 20-01061, and Adv. No. 22-01005.

**3.10** **"Affiliate"** shall have the meaning ascribed to it under 11 U.S.C. § 101(2) and shall also include an Entity that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with the other Entity. "Affiliate" includes Subsidiary and Parent. Religious Orders and the Holy See are not Affiliates of any of the Archdiocese Parties.

**3.11** **"Allowance Date"** means, with respect to a Claim, the date such Claim becomes Allowed.

**3.12** **"Allowed Claim"** means, (i) any Claim against the Debtor which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Sections 5 or 10 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (iii) any Claim tardily filed with leave of the Bankruptcy Court; or (iv) any Claim expressly allowed by a Final Order or hereunder. Tort Claims are not deemed Allowed Claims except as deemed Allowed by this Plan for voting purposes, or as may be specifically provided in the Tort Claims Allocation Protocol or Final Order.

**3.13** **"Archdiocese"** means the Roman Catholic Church of the Archdiocese of Santa Fe, New Mexico, a New Mexico corporation sole, the debtor and debtor-in-possession in the Bankruptcy Case, its Estate, its predecessors, successors, and assigns. "Archdiocese" also means "Debtor."

**3.14** **"Archdiocese Parties"** means collectively: (i) the Reorganized Debtor; (ii) the Archdiocese; (iii) the ASF Participating Parties; (iv) any and all named insureds, additional insureds, insureds, and any Person or Entity to the extent such Person or Entity is covered under the Certificates or the Insurance Policies with respect to which the Archdiocese has authority, or has been granted authority, to release the Claims released pursuant to the Insurer Settlement Agreements and this Plan; (v) any and all past and present shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, and Representatives of the Archdiocese and of the ASF Participating Parties, and (vi) each of the past, present, and future Affiliates, holding companies, merged companies, related companies, divisions, and acquired companies of the Archdiocese and ASF Participating Parties, and each of their respective past, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors, and assigns, each in their capacity as such. An Archdiocese Party does not include, (a) any Perpetrator, (b) any archdiocese or diocese other than the Archdiocese itself, (c) any Religious Order, (d) the Holy See, and (e) any Person or Entity, other than the Reorganized Debtor, the Archdiocese, and the ASF Participating Parties, that alleges to be covered under the Insurance Policies, or the Certificates to the extent such coverage allegations are finally determined to be meritless.

**3.15** **"Arrowood"** means Arrowood Indemnity Company, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America, and, solely in their capacity as such, (i) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (ii) each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting

on behalf of, by, through or in concert with them. For the avoidance of doubt, the inclusion of the phrase "future parents" in this definition is limited to such Entity in its capacity as a "future parent," and nothing contained herein shall limit or alter the obligations of any such Entity to the extent that such obligations exist independent of such Entity's role as a "future parent."

**3.16** **"Arrowood Settlement Agreement"** means the Settlement Agreement, Release, and Policy Buyback by and between the Debtor, Arrowood, and the Archdiocese Parties dated October ___, 2022.

**3.17** **"ASF Participating Parties"** means: (i) those Entities listed on Exhibit B to this Plan, that are providing or will provide consideration or a portion of the funding for this Plan in exchange for: (a) the release of any Claim by the Debtor against such ASF Participating Party, (b) the benefit of the Channeling Injunction, (c) Debtor's execution of the applicable Participating Party Agreement, and (d) any other benefits in favor of ASF Participating Parties under this Plan, and (ii) the Representatives of such Entities.

**3.18** **"ASF Settlement Trust"** means the trust to be established pursuant to this Plan and the ASF Settlement Trust Agreement for the benefit of holders of Class 3 Tort Claims.

**3.19** **"ASF Settlement Trust Agreement"** means the trust agreement attached as Exhibit C to this Plan.

**3.20** **"ASF Settlement Trust Assets"** means all real and personal property funded to the ASF Settlement Trust.

**3.21** **"ASF Settlement Trust Documents"** means the ASF Settlement Trust Agreement, Tort Claims Allocation Protocol, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of this Plan that relate to the creation, administration and funding of the ASF Settlement Trust.

**3.22** **"ASF Settlement Trustee"** means Omni Management Group, LLC, or any successor duly appointed pursuant to the terms of this Plan and the ASF Settlement Trust Agreement.

**3.23** **"Avoidance Rights"** means those rights that may be asserted by the Debtor, as debtor-in-possession, or the Committee on behalf of the Estate to avoid and recover transfers, liens, or obligations, described in §§ 544, 545, 546, 547, 548, 549, 550, 551, 552 and 553, and any other actions provided for under applicable law that allows a debtor-in-possession or trustee to avoid certain transfers, but excluding those rights, if any, against the ASF Participating Parties and the Settling Insurers that are compromised and released pursuant to this Plan or the Insurer Settlement Agreements.

**3.24** **"Award"** means the amount payable to a Claimant as determined in accordance with the terms of the Tort Claims Allocation Protocol or the Unknown Tort Claims Allocation Protocol.

**3.25** **"Ballot"** means the ballot that is used by a Claimant to accept or reject this Plan, and pursuant to which each Claimant may make certain elections regarding the treatment of such

Claimant's Claims as provided in this Plan, including releases of the Protected Parties as set forth in the Insurer Settlement Agreements and this Plan.

      3.26   **"Bankruptcy Code"** means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, and any amendments thereto.

      3.27   **"Bankruptcy Case" or "Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, on December 3, 2018, Case No. 18-13027.

      3.28   "**Bankruptcy Claims Orders**" means the *Orders on Ownership of Certain Claims*, entered in the Bankruptcy Case as Doc. Nos. 745, 768, 781, 783, and 889.

      3.29   **"Bankruptcy Court"** means the United States Bankruptcy Court for the District of New Mexico, or such other court having jurisdiction over this Bankruptcy Case or any proceeding within.

      3.30   **"Bankruptcy Notice"** means notice given pursuant to this Plan, the Insurer Settlement Agreements, or Confirmation Order, or as required under Bankruptcy Rule 2002, 6004(a) and (c) and applicable local rules, sent to: (a) all known holders of Claims against any Archdiocese Party, including Tort Claims, and their attorneys, if any; (b) the Unknown Claims Representative; (c) counsel for the Committee; (d) counsel for the Settling Insurers; (e) the Archdiocese Parties; (f) the United States Trustee; (g) the ASF Settlement Trustee and its counsel; (h) the Unknown Tort Claims Trustee and its counsel; and (i) all other Entities as required by the Bankruptcy Code or as directed by the Court. Notice may also be given by local publication within New Mexico and the surrounding areas.

      3.31   **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to Chapter 11 Cases, together with all amendments and modifications thereto.

      3.32   **"Business Day"** means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

      3.33   **"Canon Law"** means the Code of Canon Law of the Roman Catholic Church, codified in 1983 and as may hereafter be amended, and all binding universal and particular laws of the Roman Catholic Church.

      3.34   **"Cash"** means cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

      3.35   **"Catholic Mutual"** means the Catholic Mutual Relief Society of America, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, reinsurers, retrocessionaires, and divisions; (ii) each of the foregoing Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys,

joint ventures, joint venturers, representatives, and claims handling administrators; (iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

3.36 **"Catholic Mutual Settlement Agreement"** means the settlement agreement between Catholic Mutual and the Debtor.

3.37 **"Causes of Action"** means any and all claims, demands, rights, actions, causes of action and suits of the Debtor's Estate, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any other theory of law, of the Debtor's Estate, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to § 362; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Rights; (6) claims for tax refunds; and (7) any other claims which may be asserted against third parties or insiders.

3.38 **"Certificates"** means contracts, binders, certificates, or policies of insurance issued or allegedly issued by Catholic Mutual to, or for the benefit of, or that otherwise actually, allegedly, or potentially insure one or more of the Archdiocese Parties, and after the Effective Date shall mean such documents with their terms, conditions and limits as amended in accordance with the Catholic Mutual Settlement Agreement. The term "Certificates" does not include any binder or certificate that was issued to any Entity other than the Archdiocese, as the certificate holder and that also provides coverage to the Archdiocese and the Archdiocese Parties or other "Protected Persons" as defined and identified therein as covered parties.

3.39 **"Channeled Claim"** means each and every Tort Claim, including Unknown Tort Claims, and each and every present or future Claim against any of the Protected Parties, or against any Person or Entity covered by the Settling Insurers, to the extent such Claim, directly or indirectly, arises out of, relates to, or is in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim (including an Unknown Tort Claim), including each and every Tort Claim, Unknown Tort Claim, Late-Filed Tort Claim, Related Insurance Claim, Extra-Contractual Claim, Medicare Claim, Claim based on *respondeat superior* or any employment based theory, and all other Claims that relate to the Insurance Policies and Certificates. "Channeled Claim" does not include: (a) any Claim against any Perpetrator, (b) any Claim against a diocese or archdiocese other than the Archdiocese itself, (c) Claims against a Religious Order, including any liability of a Religious Order as a successor to any religious community of the Archdiocese in each case, unless it is a Participating Religious Order; (d) any Claim against the Holy See; (e) a Tort Claim that arises from, relates to, or arises in connection with Abuse the earliest incident of which occurred after the Petition Date, or (f) any Covered Non-Tort Claim.

3.40 **"Channeling Injunction"** means the injunction provided under Section 19.5 of this Plan.

**3.41** "**Chapter 7 Estates**" are those chapter 7 bankruptcy estates of Class 3 Tort Claimants who are debtors in reopened chapter 7 bankruptcy cases, pursuant to the Bankruptcy Claims Orders.

**3.42** "**Chapter 11 Professionals**" means, collectively, the Debtor's Professionals and the Committee's Professionals.

**3.43** "**Claim**" means any claim within the definition of § 101(5), including without limitation any past, present or future claim, demand, action, request, cause of action, suit, proceeding, or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or unasserted, anticipated or unanticipated, accrued or unaccrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person or Entity, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including but not limited to cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights causes of action or orders. "Claim" includes any claim or cause of action or damages relating to a "Wrongful Act" as defined under the Insurance Policies or Certificates, "Contribution Claim," any "Related Insurance Claim," any "Channeled Claim," any "Extra-Contractual Claim," "Interest," any "Tort Claim," "Abuse Related Contingent Claim," any "Unknown Tort Claim," "Administrative Claim," "Medicare Claim," and any "Direct Action Claim."

**3.44** "**Claimant**" means a holder or owner of a Claim.

**3.45** "**Claims Bar Date**" means June 17, 2019, which was the last date for filing Proofs of Claims against the Estate pursuant to the Bankruptcy Court's Order entered on March 19, 2019 [Docket No. 130].

**3.46** "**Claims Objection Bar Date**" means, unless extended by the Court, the first Business Day that follows the 60th day after the Effective Date, by which any objection to a Claim (excluding Tort Claims) must be filed with the Bankruptcy Court or such objection will be forever barred.

**3.47** "**Class 3 Tort Claim**" is a Tort Claim other than a Class 4 Unknown Tort Claim.

**3.48** "**Class 3 Tort Claimant**" is the holder of a Class 3 Tort Claim.

**3.49** "**Closing**" means the payments and transfers to the ASF Settlement Trust of those assets required to be paid and transferred in accordance with Section 14 of this Plan.

**3.50** "**CNA**" means the Continental Insurance Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.51** **"CNA Settlement Agreement"** means the settlement agreement between the Debtor and CNA.

**3.52** **"Co-Defendant"** means an Entity that is named or could be named as a defendant in a lawsuit in which the Debtor is also named or could be named as a defendant and/or who is alleged to be fully, partially or jointly responsible for a Claim asserted or that could be asserted in the future against both such Entity and the Debtor, including a co-debtor as described in § 509. For purposes of this Plan, none of the Protected Parties is or shall be deemed to be a Co-Defendant.

**3.53** **"Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case, as such committee may be reconstituted from time to time.

**3.54** **"Committee's Professionals"** means Pachulski Stang Ziehl & Jones LLP and all other professionals, if any, which the Committee has retained or may retain to provide professional services in accordance with § 1103(a) and as approved by the Bankruptcy Court**.**

**3.55** **"Conditional Payment"** means any payment made to a Tort Claimant or a holder of a Channeled Claim under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

**3.56** **"Confirmation Date"** means the date of the entry of the Confirmation Order.

**3.57** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court regarding confirmation of this Plan, as such may be continued from time to time.

**3.58** **"Confirmation Order"** means a Final Order confirming this Plan after a hearing upon Bankruptcy Notice. The Confirmation Order shall be acceptable in form and substance to the Debtor, the Committee, and the Settling Insurers. The Confirmation Order shall contain no provision that is contrary to or inconsistent with the Insurer Settlement Agreements.

**3.59** **"Contingent"** means, with respect to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

**3.60** **"Contribution Claim"** means any Claim by an Insurer against any other Insurer seeking contribution, equitable contribution, indemnity, equitable indemnity, subrogation, equitable subrogation, rights under "other insurance" clauses, or pursuant to any other theory under law or in equity relating to the defense or payment of such paying insurer of all or any part of any Claim (a) asserted against an Archdiocese Party; (b) relating to the Insurance Policies or Certificates; or (c) channeled to or paid, in whole or in part, by the ASF Settlement Trust and/or the or the Unknown Tort Claims Trust.

**3.61** **"Contribution Date"** is the 30th day following the later of: (a) the date on which the Confirmation Order becomes a Final Order, or (b) the date on which the order approving the Insurer Settlement Agreements becomes a Final Order, whereupon all cash contributions by the Insurers are due to be contributed to the ASF Settlement Trust.

9

**3.62** **"Covered Non-Tort Claim"** means any Claim, other than a Tort Claim, Medicare Claim or Channeled Claim, which is covered by an Insurance Policy or Certificate issued to the Archdiocese.

**3.63** **"Debtor"** means the Archdiocese.

**3.64** **"Debtor Contribution"** means the $75,000,000 to be paid by the Debtor to the Escrow Account pursuant to this Plan, which is comprised of $69,600,000 ("Debtor's Initial Contribution") paid in immediately available funds on September 30, 2022, and $5,400,000.00 to be paid by the Debtor on or before March 31, 2023, as evidenced by the Promissory Note ("Debtor's Second Contribution").

**3.65** **"Debtor's Professionals"** means all professionals which the Debtor has retained or may retain to provide professional services in accordance with §§ 327(a) and 327(e), including but not limited to counsel, special counsel, accountants, brokers, appraisers, surveyors, and redaction specialists.

**3.66** **"Direct Action Claim"** means any Claim by any Entity against any of the Settling Insurers that is identical or similar to, arises from, relates to, or arises in connection with any Channeled Claim, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer for monetary or other relief.

**3.67** **"Disallowed Claim"** means: (i) a Claim, or any portion thereof, that has been disallowed by a Final Order; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law. Disallowed Claims will not receive any payment or Distribution under this Plan.

**3.68** **"Disclosure Statement"** means the Disclosure Statement relating to this Plan, as it may be amended from time to time.

**3.69** **"Disclosure Statement Order"** means the Order entered by the Bankruptcy Court approving the Disclosure Statement.

**3.70** **"Disputed Claim"** means a Claim: (a) that is listed as disputed in the Debtor's Schedules filed with the Bankruptcy Court; or (b) as to which a Proof of Claim is filed or is deemed filed under Bankruptcy Rule 3003(b) (1) and as to which a timely objection has been filed and not been withdrawn or resolved by consensual agreement or by a Final Order of the Bankruptcy Court.

**3.71** **"Distribution"** means any transfer of Cash or other property or instruments to a Claimant by the Reorganized Debtor, the ASF Settlement Trustee, or the Unknown Tort Claims Trustee.

**3.72** **"District Court"** means the United States District Court for the District of New Mexico.

**3.73** **"Effective Date"** is the date upon which all of the following have occurred: (i) this Plan has been confirmed by a Final Order in form and substance acceptable to all of the Parties (the "Confirmation Order"); (ii) each Insurer Settlement Agreement has been approved by a Final Order in form and substance acceptable to the parties thereto; (iii) each Participating Party Agreement has been approved by a Final Order in form and substance acceptable to the parties thereto; (iv) all contributions from the Funding Group have been received by the Escrow Agent, the ASF Settlement Trustee, or the Unknown Tort Claims Trustee; (v) the Promissory Note and the Mortgage have been executed and delivered; and (vi) all other conditions to the Effective Date established in this Plan have been satisfied or waived.

**3.74** **"Entity"** has the meaning set forth in § 101(15), and also includes an individual, any corporation, corporation sole, partnership, association, limited liability company, limited liability partnership. joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other "Person" within the definition of § 101(41), and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity, including those within the definition set forth in § 101(15).

**3.75** **"Escrow Account"** means the account held by the Escrow Agent into which the Debtor Contribution, the Insurer Contributions and the Participating Religious Orders Contributions shall be deposited.

**3.76** **"Escrow Agent"** means the Entity agreed upon by the Settling Insurers, the Archdiocese, and the Committee to hold the Debtor Contribution, the Insurer Contributions and the Participating Religious Orders Contributions in the Escrow Account pursuant to Section 10 herein.

**3.77** **"Estate"** means the bankruptcy estate of the Debtor as created under § 541.

**3.78** **"Exculpated Parties"** means the Archdiocese Parties, the Settling Insurers, the Participating Religious Orders, the Committee and its present and former members, the Chapter 11 Professionals, and all Representatives of the foregoing, acting in such capacity. "Exculpated Parties" shall not include: (a) a Perpetrator, (b) any diocese or archdiocese (other than the Archdiocese itself), (c) any Religious Order (unless it is a Participating Religious Order), or (d) the Holy See.

**3.79** **"Executory Contracts"** means those executory contracts and unexpired leases listed by the Debtor in Schedule G filed in this Bankruptcy Case.

**3.80** **"Extra-Contractual Claim"** means any Claim based in whole or in part on any allegations that that a Settling Insurer: (a) acted in bad faith or in breach of any express or implied duty, obligation, or covenant, contractual, statutory, regulatory or otherwise, including any Claim on account of alleged bad faith; (b) failed to act in good faith; (c) committed fraud,

misrepresentation or any other act giving rise to tort liability; (d) failed to provide insurance coverage under any Certificate or Insurance Policy; (e) failed or refused to compromise and settle any allegedly insured Claim; (f) violated or breached any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (g) violated any statute, regulation, or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, consumer protection, and/or untrue or misleading advertising, including any violation of any unfair claims practices act or similar statute, regulation, or code; (h) failed to investigate or provide a defense or an adequate defense; or (i) committed any other type of alleged misconduct or otherwise acted or failed to act in any way for which the Tort Claimant or holder of a Channeled Claim seeks relief other than coverage or benefits under a Certificate or Insurance Policy. "Extra-Contractual Claim" includes but is not limited to: (i) any Claim that relates to a Settling Insurer's handling of any Claim or any request for insurance coverage, including any request for coverage for or defense of any claim, including but not limited to any Tort Claim; (ii) any Claim that directly or indirectly relates to any of the Insurance Policies, Certificates, and any contractual duties arising therefrom, including any contractual duty to defend any Tort Claims or Claims against any of the Protected Parties (or against any Person or Entity covered by the Settling Insurers); and (iii) the conduct of the Parties with respect to the negotiation of the applicable Insurer Settlement Agreement.

3.81 **"Final Order"** means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, modified, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal, review, or petition for a writ has been taken, (i) it has been resolved without the reversal or modification of such order and no longer remains pending, or (ii) if an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing, and in their sole discretion, that the order from which such appeal or review is taken should be deemed to be a Final Order**.**

3.82 **"Funding Group"** means the Debtor, the ASF Participating Parties, and the Settling Insurers. "Funding Group" does not include the Participating Religious Orders.

3.83 **"General Release"** means that certain release of claims against the Protected Parties and others, the language of which is set forth in the Class 3 Tort Claims Ballot and is set forth on Exhibit N attached hereto.

3.84 **"General Unsecured Claim"** means any Claim against the Debtor that is not a Tort Claim, Administrative Claim, Channeled Claim, Priority Tax Claim, or a Claim that is otherwise classified under this Plan.

3.85 **"General Unsecured Convenience Claim"** means any General Unsecured Claim in an amount of $500 or less, or voluntarily reduced to $500 by the holder of such Claim.

3.86 **"Great American"** means Great American Insurance Company, and, solely in the capacity as such: (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns,

whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.87** **"Great American Settlement Agreement"** means the settlement agreement between the Debtor and Great American.

**3.88** "**Initial Closing Period**" shall have the meaning set forth in Section 18.3 of this Plan.

**3.89** **"Insurance Policies"** means all policies issued or allegedly issued by any of the Settling Insurers insuring and issued to the Archdiocese Parties and, to the extent applicable, the Pre-Petition Insurance Settlement Agreements and, in the case of Arrowood, the Stipulations Regarding Royal Policies Issued to the Archdiocese of Santa Fe, as well as all claims pertaining to known or unknown policies allegedly issued to the Debtor. Insurance Policies does not include policies issued to Entities other than the Archdiocese Parties.

**3.90** **"Insured Claims"** means Claims that are general, unsecured, pre-petition claims classified in Class 5, that are upon Debtor's information and belief, insured under the Debtor's or Reorganized Debtor's liability insurance. Insured Claims are not Channeled Claims, Tort Claims, or Unknown Tort Claims, Administrative Claims, Abuse Related Contingent Claims, Penalty Claims, or Priority Tax Claims.

**3.91** **"Insured Entities"** means the Archdiocese Parties and any and all other Entities which are additional insureds or assert coverage or alleged coverage under any Insurance Policy or Certificate, provided "Insured Entities" shall not include any Person or Entity that alleges to be covered under any Insurance Policy or Certificate to the extent such coverage allegations are finally determined to be meritless.

**3.92** **"Insurer Contributions"** means the contributions paid by Catholic Mutual, CNA, Great American Insurance Company, Arrowood Indemnity Company, Travelers, and U.S. Fire pursuant to Section 10.2 herein.

**3.93** **"Insurer Settlement Agreements"** means the Catholic Mutual Settlement Agreement, the CNA Settlement Agreement, the Arrowood Settlement Agreement, the Great American Settlement Agreement, the Travelers Settlement Agreement, and the U.S. Fire Settlement Agreement.

**3.94** **"Interest"** means all Claims, liens, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

**3.95** "**Late-filed Claim**" means a Claim filed after the Claims Bar Date.

**3.96** "**Late-filed Tort Claim**" means a Tort Claim filed after the Claims Bar Date

**3.97** **"Medicare Claims"** means any and all Claims relating to Tort Claims or Claims against any of the Protected Parties, or against any Person or Entity covered by the Insurance Policies or Certificates, to the extent such Claims, directly or indirectly, arise out of, relate to, or

are in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim, including an Unknown Tort Claim, by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Claims for contribution to, or reimbursement of Conditional Payments or other payments made to Tort Claimants or holders of Channeled Claims who recover or receive any Distribution from the ASF Settlement Trust or the Unknown Tort Claims Trust and Claims relating to reporting obligations.

**3.98** **"MMSEA"** means §111 of the Medicare, Medicaid, SCHIP Extension Act of 2007 (P.L. 110-173).

**3.99** **"MSPA"** means 42 U.S.C. §1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 *et seq*.

**3.100** **"Mortgage"** means the mortgage delivered with and securing the Promissory Note encumbering assets of the Debtor and the Archdiocese of Santa Fe Real Estate Trust, reasonably sufficient to secure the Promissory Note as reasonably acceptable to the Committee.

**3.101** "**Non-Monetary Covenants**" are the Debtor's non-monetary commitment to healing and reconciliation as set forth in Section 10.12 and in the Stipulated Non-Monetary Covenants attached hereto as Exhibit L.

**3.102** **"Parent"** means any Entity that owns the majority of the shares, membership interests, or other equity interests in another Entity.

**3.103** **"Parishes"** means any one of the parishes, churches, and missions within the territory of the Archdiocese as set forth on Exhibit D hereto and their Representatives.

**3.104** **"Participating Party Agreements"** means those certain settlement agreements among the Debtor and the other ASF Participating Parties in the form attached hereto as Exhibit E and incorporated herein as part of this Plan. Conflicts between the Plan and the Participating Party Agreements will be controlled by the Plan.

**3.105** **"Participating Religious Orders"** means each of the Religious Orders listed on Exhibit F to this Plan, that are providing or will provide a portion of the funding for this Plan in exchange for: (a) the release of any Claim by the Debtor against such Participating Religious Order, (b) the benefit of the Channeling Injunction, (c) Debtor's execution of the applicable Participating Religious Order Agreement, and (d) any other benefits in favor of Participating Religious Orders under this Plan. Notwithstanding the foregoing, a Religious Order does not become a Participating Religious Order unless its agreed cash contributions to the ASF Settlement Trust and the Unknown Tort Claims Trust are paid to and received by the Escrow Agent or, if after the Effective Date, received by each of the ASF Settlement Trust and Unknown Tort Claims Trust, on or before the Participating Religious Orders Contribution Date.

**3.106** **"Participating Religious Orders Contributions"** means the cash contributions to be made by the Participating Religious Orders and their liability carriers pursuant to the

Participating Religious Order Settlement Agreements which shall be made to the Escrow Agent or to ASF Settlement Trust and the Unknown Tort Claims Trust as set forth in 10.2.

3.107 "**Participating Religious Orders Contribution Date**" is the 30th day following the later of: (a) the date on which the Confirmation Order becomes a Final Order, or (b) the date on which the order approving the respective Participating Religious Order Agreement becomes a Final Order, whereupon all cash contributions agreed to be paid by a Religious Order to the ASF Settlement Trust and the Unknown Tort Claims Trust are due and payable to the respective trusts.

3.108 "**Participating Religious Order Settlement Agreements**" means the settlement agreements among the Committee, various Tort Claimants, as identified in the several agreements, the Debtor or Reorganized Debtor, the Participating Religious Orders and the liability carriers to such Participating Religious Orders that provide for the funding of Participating Religious Orders Contributions.

3.109 "**Parties**" means the Archdiocese, the ASF Participating Parties, the Committee, and the Settling Insurers.

3.110 "**Penalty Claim**" means a Claim for a fine, penalty, forfeiture, multiple damages, punitive damages, or exemplary damages, including any Claim not meant to compensate the Claimant for actual pecuniary loss.

3.111 "**Perpetrator**" means any individual who committed an act of Abuse that forms the basis of a Tort Claim with respect to such Claim solely in his or her capacity as an individual abuser.

3.112 "**Petition Date**" means December 3, 2018, the date the Debtor filed its voluntary petition commencing this Bankruptcy Case.

3.113 "**Plan**" means this Debtor's Plan of Reorganization (and all exhibits annexed hereto), Plan Documents and any and all modifications and/or amendments thereto.

3.114 "**Plan Documents**" means <u>all</u> agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated from time to time, that are necessary or appropriate to implement this Plan, the Insurer Settlement Agreements, the ASF Settlement Trust, including the ASF Settlement Trust Documents, or the Unknown Tort Claims Trust, provided that the Committee and the Settling Insurers shall have approved each of said agreements, documents and exhibits as to form and content, such approval not to be unreasonably withheld.

3.115 "**Post-Confirmation Notice Parties**" means the Reorganized Debtor, the ASF Settlement Trust, the Unknown Tort Claims Trust, the Office of the U.S. Trustee, and any Entity that files a request to be a Post-Confirmation Notice Party**.**

3.116 "**Post-Petition Proof of Claim**" has the meaning ascribed to it in Section 5.1.1 herein**.**

3.117 "**Post-Petition Claims Bar Date**" means the date that is 45 days after the notice of Effective Date is filed with the Bankruptcy Court.

**3.118** **"Preserved Coverage"** means all the insurance coverage of the Archdiocese and the Archdiocese Parties referred to Catholic Mutual Certificates subject to the limits, declarations, terms and conditions of Catholic Mutual Certificates, as amended in the Catholic Mutual Settlement Agreement, other than coverage for losses from Channeled Claims, which is settled, extinguished and excluded by the Catholic Mutual Settlement Agreement.

**3.119** **"Pre-Petition Insurance Settlement Agreements"** means: (a) the Settlement Agreement Effective May 29, 1996 between St. Paul Fire & Marine Insurance Company, its predecessors, successors and assigns, including St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company (now, Travelers) and the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole; and (b) the Settlement Agreement Effective May 25, 1995, between Great American Insurance Company, St. Paul Fire & Marine Insurance Company, Royal Insurance Company of America (now, Arrowood) and United States Fire Insurance Company and the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole.

**3.120** **"Priority Claim"** means any Claim which, if Allowed, would be entitled to priority under § 507.

**3.121** **"Priority Claimant"** means the holder of a Priority Claim.

**3.122** "**Priority Tax Claim**" means a Claim or a portion of a Claim, that is entitled to priority under § 507(a)(8) of the Bankruptcy Code.

**3.123** **"Professional"** means any Entity employed by the Debtor or the Committee pursuant to §§ 327 or 1103.

**3.124** **"Professional Fee Claim"** means a Claim under §§ 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of Professional prior to the Effective Date.

**3.125** **"Promissory Note"** means that promissory note from the Archdiocese to and in favor of the ASF Settlement Trust in the principal amount of $5,400,000.00 with a contract interest rate of 2.00% per annum from the Effective Date and a default interest rate of 10.00% per annum executed and delivered to the Escrow Agent on September 30, 2022, which may be prepaid in full or in part without penalty.

**3.126** **"Proof of Claim"** means a proof of claim filed in the Bankruptcy Case in the nature of proofs of claims described in the Bankruptcy Code, including §§ 501 and 502 and in the Bankruptcy Rules, including 3001 and 3002.

**3.127** **"Pro Rata"** when applied to a Claim means the ratio of the amount distributed on account of an Allowed Claim in a Class to the amount distributed on account of all Allowed Claims in such class.

**3.128** "**Protected Parties**" means: (a) the Settling Insurers; (b) the Participating Religious Orders and the liability carriers to such Participating Religious Orders listed on <u>Exhibit G</u> to this Plan that are providing or will provide a portion of the funding for this Plan pursuant to settlement

agreements with the Archdiocese or Reorganized Debtor, and (c) the Archdiocese Parties, but excluding, however, (i) a Perpetrator, (ii) any diocese or archdiocese (other than the Archdiocese itself), (iii) any Religious Order (other than a Participating Religious Order), or (iv) the Holy See. Notwithstanding the foregoing, a liability carrier to a Participating Religious Order in that capacity and a Participating Religious Order will not become Protected Parties unless its respective share of the Participating Religious Order Contribution is made on or before the applicable Participating Religious Orders Contribution Date.

3.129 **"Qualified Counsel"** means an attorney representing a Tort Claimant who has entered into a written retainer or fee agreement with such Tort Claimant on or before the Effective Date; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant.

3.130 **"Qualified Counsel Fees"** means the total fees, plus applicable gross receipts taxes payable to Qualified Counsel by the beneficiaries of the ASF Settlement Trust based on the Distributions calculated under the Tort Claims Allocation Protocol in accordance with written retainer or fee agreements with those beneficiaries.

3.131 **"Qualified Counsel Costs"** means the amount of the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by the beneficiaries of the ASF Settlement Trust in accordance with written retainer or fee agreement with those beneficiaries.

3.132 **"Related Insurance Claim"** means any Claim against a Settling Insurer that, directly or indirectly, relates to a Tort Claim or a Claim against any of the Protected Parties, or against any other Person or Entity covered by the Insurance Policies or Certificates, to the extent such Claim, directly or indirectly, arises out of, relates to, or is in connection with the same injury, damages, facts or circumstances giving rise to a Tort Claim, including an Unknown Tort Claim, or the actual or alleged coverage thereof under the Insurance Policies or Certificates, including: (i) any Claim for defense, indemnity, reimbursement, contribution, subrogation, or similar relief; (ii) any Extra-Contractual Claim or other Claim associated with any Extra-Contractual Claim; (iii) any Direct Action Claim; (iv) any Claim for contribution toward or reimbursement of a Medicare Claim; and (v) any other derivative or indirect claim of any kind whatsoever.

3.133 **"Religious Orders"** means all Catholic religious order communities, including any religious order community that is a successor to any religious community of the Debtor, and includes but is not limited to, the Participating Religious Orders, the Servants of the Paraclete ("Servants"); Brothers of the Christian Schools, SFNO District ("Christian Brothers"); any province of the Franciscans; Sons of the Holy Family ("Sons"); Society of Jesus; Congregation of the Blessed Sacrament, Province of St. Ann ("Congregation"); and the Congregation of Saint Basil, aka the Basilian Fathers.

3.134 **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

3.135 **"Representatives"** means the current and former officers, directors, agents, attorneys, employees, financial advisors and legal representatives of an Entity.

3.136 **"Retained Claims"** means the Debtor's Claims, including, but not limited to, all

17

Avoidance Actions, that are not otherwise settled or released pursuant to the Plan or agreements approved by the Bankruptcy Court on or prior to the Effective Date, any rights or Claims of the Debtor for indemnification, contribution, or fault allocation and other Claims of the Debtor against any Entity on account of any Claims which are or may be asserted against the Debtor. The Claims Bar Date and Claims Objection Bar Date are inapplicable to the Retained Claims.

**3.137 "Schedules"** means the Schedules of Assets and Liabilities and Statement of Financial Affairs of the Debtor filed pursuant to § 521, the Official Bankruptcy Forms and the Bankruptcy Rules, including any supplements or amendments thereto through the Confirmation Date.

**3.138 "Section 363 Sale"** means a sale of property pursuant to § 363.

**3.139 "Settled"** means, with respect to a Claim, a Claim that has been resolved by agreement, and if required, approved by Final Order of the Bankruptcy Court or the District Court, as applicable.

**3.140 "Settling Insurers"** means Arrowood, Catholic Mutual, CNA, Great American, Travelers, and U.S. Fire.

**3.141 "Subsidiary"** means, with respect to an Entity, a corporation or limited liability company as to which the Entity possesses shares of common stock, membership interests, or other equity interests and may exercise control through the voting of such stock or interests.

**3.142 "Supplemental Injunction"** means an injunction enjoining Claims or suits against the Settling Insurers on account of Channeled Claims pursuant to §§ 105(a), 363(b), (f), and (m), and 1123.

**3.143 "Temporarily Allowed"** with reference to a Claim means such Claim as temporarily allowed for any purpose other than Distribution on a Claim pursuant to Bankruptcy Rule 3018(a) or otherwise.

**3.144 "Tort Claim"** is synonymous with Abuse Claim and is intended to have the same meaning set forth in Doc. No. 130 entered in the Bankruptcy Case.

**3.145 "Tort Claimant"** means the holder of a Tort Claim, the legal representative of the holder of a Tort Claim, such as a bankruptcy trustee, or the legal representative of the estate of a deceased individual who held a Tort Claim.

**3.146 "Tort Claims Allocation Protocol"** means the Tort Claims Allocation Protocol set forth as Exhibit H.

**3.147 "Tort Claims Reviewer"** means the Entity, including the designee of such Entity, who will assess Tort Claims pursuant to the Tort Claims Allocation Protocol. Subject to this Plan's provisions for replacement of the Tort Claims Reviewer, the Tort Claims Reviewer is the Honorable William L. Bettinelli (retired).

**3.148** "**Travelers**" means the Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, (i) each of their past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.149** "**Travelers Settlement Agreement**" means the settlement agreement between the Debtor and Travelers.

**3.150** "**U.S. District Court**" means the United States District Court for the District of New Mexico.

**3.151** "**U.S. Trustee**" means the Office of the United States Trustee for Region 20.

**3.152** "**Unclaimed Property**" means any Cash or other property which is unclaimed for 180 days after the Distribution.

**3.153** "**Unknown Claims Representative**" means the Honorable Michael R. Hogan, U.S.D.J. (retired), for which application for appointment has been made in the Bankruptcy Case as the legal representative of Entities holding Unknown Tort Claims by Order Motion on June 16, 2022 (Doc. No. 996).

**3.154** "**Unknown Tort Claim**" means a Tort Claim that arises from, relates to, or arises in connection with Abuse, the earliest incident of which occurred before the Petition Date: (i) for which no Proof of Claim is filed or deemed filed on or before the Bankruptcy Plan Effective Date or which is not otherwise allowed by the Bankruptcy Court by the Bankruptcy Plan Effective Date, and (ii) which is held by a Person who at the time of the Claims Bar Date was under a disability or other condition recognized by New Mexico law, or other applicable law, suspending the running of the statute of limitations period, that would toll the statute of limitations for such Claim.

**3.155** "**Unknown Tort Claimant**" means the holder of an Unknown Tort Claim, the legal representative of the holder of an Unknown Tort Claim, such as a bankruptcy trustee, the estate of a deceased individual who held an Unknown Tort Claim, or the personal executor or personal representative of the estate of a deceased individual who held an Unknown Tort Claim, as the case may be.

**3.156** "**Unknown Tort Claims Allocation Protocol**" means the Unknown Tort Claims Allocation Protocol set forth as Exhibit I.

**3.157** "**Unknown Tort Claims Fund**" means a fund in the initial amount of $ _____ to be paid to the Unknown Tort Claims Trust by the Debtor to pay allowed Unknown Tort Claims. Such fund shall be administered by the Unknown Tort Claims Trust pursuant to the terms of this Plan and the Unknown Tort Claims Trust Documents.

**3.158** "**Unknown Tort Claims Trust**" means the trust to be established pursuant to this Plan and the Unknown Tort Claims Trust Documents for the benefit of holders of Class 4 Unknown Tort Claims.

**3.159** "**Unknown Tort Claims Trust Agreement**" means the agreement attached as Exhibit J to this Plan.

**3.160** "**Unknown Tort Claims Trust Contribution Date**" means the 30th Business Day after the Effective Date.

**3.161** "**Unknown Tort Claims Trust Documents**" means the Unknown Tort Claims Trust Agreement, Unknown Tort Claims Allocation Protocol, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of this Plan that relate to the creation, administration and funding of the Unknown Tort Claims Trust.

**3.162** "**Unknown Tort Claims Trustee**" means Omni Management Group, LLC, the trustee of the Unknown Tort Claims Trust, and any successor trustee appointed pursuant to the terms of this Plan and the Unknown Tort Claims Trust Agreement.

**3.163** "**U.S. Fire**" means United States Fire Insurance Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

**3.164** "**U.S. Fire Settlement Agreement**" means the settlement agreement between the Debtor and U.S. Fire.

**3.165** "**Unsecured Claim**" means every Claim, or portion thereof, which is not secured by property of the Estate, regardless of the priority of such Claim.

## SECTION 4: PLAN OBJECTIVES AND SUMMARY

### 4.1    Objectives.

The essential objective of the Plan is to settle all Abuse Claims and other Claims asserted against the Debtor. The Debtor is contributing funds and other property for distribution to Claimants and will receive a discharge and other protections. The Plan includes provisions for the financial participation of other Entities for which they will receive the benefit of the releases and injunctions described in the Plan. The accompanying Disclosure Statement, along with the Plan, describes the objectives and provisions of the Plan in detail.

### 4.2    Summary of Treatment Under the Plan.

Solely for the convenience of the reader, the following is a summary of the treatment of Claims under this Plan. This summary is not the Plan and the specific terms of this Plan control. This summary also explains the classes of claims that are impaired within the meaning of § 1124 because, among other things, impaired classes may vote.

| Class | Description | Treatment | Impaired; Voting |
|---|---|---|---|
| N/A | Administrative Expenses | Paid in full | No |
| N/A | Priority expenses | Paid in full | No |
| 1 | Other Priority Claims | Paid in full | No |
| 2 | General Unsecured Convenience Claims | Paid in full | No |
| 3 | Tort Claims | Evaluated under the Tort Claims Allocation Protocol and paid by ASF Settlement Trust | Yes |
| 4 | Unknown Tort Claims | Evaluated under the Unknown Tort Claims Allocation Protocol and paid by Unknown Tort Claims Trust | Yes |
| 5 | General Unsecured Claims | May pursue insurance, if available; may receive payment of allowed claim in 10 annual payments, without interest; or certain Class 5 Claims may elect alternative $2,500.00 cash payment in full satisfaction and release of Claim. See Section 8.3.5 and Exhibit K. | Yes |
| 6 | Penalty Claims | Subordinated, no Distribution | Impaired, non-voting See Class 3 |
| 7 | Employee/Retirement Claims | Unimpaired | Deemed to Accept |
| 8 | Abuse Related Contingent Claims | Disallowed under § 502(e)(1), no Distribution | Impaired, non-voting |

## SECTION 5: TREATMENT OF UNCLASSIFIED CLAIMS

**5.1     Administrative Claims.**

Each holder of an Allowed Administrative Claim against the Debtor shall receive, in full satisfaction, settlement, release and extinguishment of such Claim, Cash equal to the Allowed amount of such Administrative Claim, either (a) on or as soon as practicable following the Effective Date, or, if later, the Allowance Date; or (b) upon such terms as may be agreed to in writing by the holder of an Administrative Claim.  Provided, however, that subject to Section 5.1.1 below, any Administrative Claim incurred post-petition by the Debtor in the ordinary course of its operations or arising pursuant to one or more post-petition agreements or transactions entered into by the Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), on the one hand, and the holder of such Administrative Claim, on the other.

### 5.1.1 Bar Date for Claims Arising or Occurring After Petition Date.

All Claimants holding an unpaid Claim against the Archdiocese that arose or occurred after the Petition Date and on or before the Effective Date, including Administrative Claims, shall file with the Bankruptcy Court and serve on the Post-Confirmation Notice Parties proof of such post-petition Claim ("**Post-Petition Proof of Claim**") no later than 45 days after a notice of the Effective Date is filed with the Bankruptcy Court (the "**Post-Petition Claims Bar Date"). All unpaid Claims that arose or occurred after the Petition Date and on or before the Effective Date for which a Post-Petition Proof of Claim is not timely filed are hereby released, barred and discharged and holders of such Claims are enjoined from pursuing such Claims against or collecting from any Protected Party; provided that this section does not apply to Tort Claims that arose from Abuse, the first instance of which occurred on or after the Petition Date.**

### 5.1.2 Objections to Post-Petition Proofs of Claims.

Objections to Post-Petition Proofs of Claims must be filed and served on the Post-Confirmation Notice Parties and the applicable Claimant on or before: (A) 45 days after the Post-Petition Claims Bar Date or (B) such later date as: (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Claimant.

**5.2     Professional Claims.**

### 5.2.1 Bar Dates for Professional Claims.

All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 for services rendered on or before the Effective Date (including, among other things, any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and

serve on the Post-Confirmation Notice Parties an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than: (A) 45 days after a notice of the Effective Date is filed with the Bankruptcy Court and served on such Professional or other Entities, or (B) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period (the "**Professional Claims Bar Date**").

### 5.2.2 Objections to Professional Claims.

Objections to Professional Claims or Claims of other Entities for compensation or reimbursement of expenses must be filed and served on the Post-Confirmation Notice Parties and the Professionals or other Entities to whose application the objections are addressed on or before: (A) 45 days after the Professional Claims Bar Date or (B) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, and the affected Professional or other Entity. Notwithstanding anything contained in Section 5.2, the allowance of a Professional Claim shall not affect, impair, diminish or be an adjudication of any Claim that is excepted from the exculpation contained in Section 19.3.

### 5.3 U.S. Trustee Fees.

All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash as soon as practicable after the Effective Date. After the Effective Date, the Reorganized Debtor shall pay quarterly fees to the U.S. Trustee, in Cash, until the Bankruptcy Case is closed, and a final decree is entered. In addition, the Reorganized Debtor shall file post-Confirmation Date reports in conformance with the U.S. Trustee guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which will be deemed Administrative Claims against the Debtor and Debtor's Estate. Notwithstanding anything to the contrary herein, the ASF Settlement Trust shall not be liable for payment of any U.S. Trustee fees.

### 5.4 Priority Tax Claims.
With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, the Reorganized Debtor shall: (i) pay such Claim in Cash as soon as practicable after the Effective Date, or (ii) provide such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the Debtor (if before the Effective Date) or the Reorganized Debtor (on and after the Effective Date), as applicable, in writing, provided such treatment is no less favorable to the Debtor or the Reorganized Debtor than the treatment set forth in clause (i) of this sentence.

## SECTION 6: CLASSIFICATION OF CLAIMS

### 6.1
All Claims except Administrative Claims and Priority Tax Claims are placed in the following classes for all purposes including voting, confirmation of this Plan and Distribution pursuant to this Plan**.** A Claim is classified in a particular class only to the extent the Claim qualifies within the description of that class and is classified in a different class to the extent the Claim qualifies within the description of that different class. If a Claim is acquired or transferred,

the Claim will be placed in the class where it would have been placed if it were owned by the original holder of such Claim. If a Claimant has more than one Claim in the same class, such Claims will not be aggregated and treated as a single Claim. If a Claimant has Claims in different classes, such Claims will not be aggregated and each claim shall be included in the class applicable to that claim. As of the Confirmation Hearing, any Class of Claims which does not contain any Claims will be deemed deleted automatically from this Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally Allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from this Plan with respect to voting on confirmation of this Plan.

6.2     **Class 1** consists of Other Priority Claims. These are Claims entitled to priority under § 507(a)(3) – (a)(7) and 507(a)(9) – (a)(10). These are Claims for unpaid wages, employee benefits plan contributions and the like.

6.3     **Class 2** consists of the holders of General Unsecured Convenience Claims against the Debtor or holders of Unsecured Claims who elect to be treated as a General Unsecured Convenience Claim. These Claimants are holders of unsecured Claims of $500.00 or less or Claimants who voluntarily reduce their Unsecured Claims to $500.00.

6.4     **Class 3** consists of Tort Claimants other than Class 4 Tort Claimants.

6.5     **Class 4** consists of Unknown Tort Claimants.

6.6     **Class 5** consists of holders of General Unsecured Claims. These are Claims not secured by any interest in the Debtor's property and consist of any Claim against the Debtor that is not a Tort Claim, Channeled Claim, Unknown Tort Claim, Administrative Claim, Abuse Related Contingent Claim, Penalty Claim, or a Priority Tax Claim. Based upon a review of the Debtor's Schedules, books, and records, as well as filed Proofs of Claims, the Debtor estimates that Class 5 Unsecured Claims total approximately $1,313,232.89. The holders of Class 5 General Unsecured Claims are listed on <u>Exhibit K att</u>ached hereto. Class 5 Claims shall receive treatment as set forth in Section 8.3 below.

6.7     **Class 6** consists of Claims based upon a fine, penalty, forfeiture, punitive damages, or the like, not meant to compensate the Claimant for actual pecuniary loss. The Debtor is unaware of any such Penalty Claims. Any portion of a Class 3 Tort Claim that asserts a claim that may be classified as a Class 6 Penalty Claim shall be treated as a Class 6 Penalty Claim and shall receive no Distribution under this Plan. Class 3 Tort Claims shall only receive treatment as set forth in Section 8.1 below.

6.8     **Class 7** consists of holders of Employee/Retirement Claims against the Debtor.

6.9     **Class 8** consists of Abuse Related Contingent Claims. These are Claims by an Entity against the Debtor for contribution, indemnity, or reimbursement arising as a result of such Entity's liability for paying or defending against any Tort Claim, including a Co-Defendant.

### SECTION 7: TREATMENT OF UNIMPAIRED CLASSES OF CLAIMS

### 7.1 Class 1: Other Priority Claims.

The holders of Allowed Other Priority Claims, if any are determined to exist, will receive either: (a) payment from the Reorganized Debtor of the full amount of their Allowed Claims in Cash, without interest on or as soon as practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of their Allowed Claims upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

### 7.2 Class 2: General Unsecured Convenience Claims.

Each holder of Allowed General Unsecured Convenience Claims will receive either: (a) payment from the Reorganized Debtor of the full amount of its Allowed General Unsecured Convenience Claim in Cash, on or as soon as reasonably practicable following the Effective Date or, if later, the Allowance Date; or (b) payment of its Allowed General Unsecured Convenience Claim upon such terms as may be agreed in writing by the Claimant and the Reorganized Debtor.

### 7.3 Class 7: Employee/Retirement Claims.

Class 7 is unimpaired under this Plan and will be paid as their claims come due. Holders of Employee/Retirement Claims are deemed to have accepted this Plan under § 1126(f) and are not entitled to vote on this Plan.

### SECTION 8: TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### 8.1 Class 3: Tort Claims (Other than Unknown Tort Claims)

**8.1.1** Class 3 is impaired under this Plan. The holders of Tort Claims are entitled to vote on this Plan. Only for purposes of voting, each Claim in Class 3 is deemed to be Allowed in the amount of $1.00.

**8.1.2** On the Effective Date, with no further action required: The ASF Settlement Trust assumes all liability for all Class 3 Tort Claims and each of the Class 3 Tort Claimants is deemed to have assigned his or her Claim against the Protected Parties to the ASF Settlement Trust, which shall be solely liable for the payment of all such Class 3 Tort Claims. Under no circumstances shall the ASF Settlement Trust assume any liability for any Class 4 Unknown Tort Claims.

**8.1.3** Nothing in this Plan affects, diminishes or impairs any Class 3 Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's comparative fault or joint and several liability for Abuse, if any. In any such litigation against a Co-Defendant, nothing in this Plan or Plan Documents shall be deemed an adjudication of a Class 3 Tort Claim for any purpose or a limitation on the recovery against such Co-Defendant.

**8.1.4** The Debtor, the Reorganized Debtor, and their counsel shall reasonably cooperate with the Tort Claims Reviewer and/or the ASF Settlement Trustee as requested by the Tort Claims Reviewer and/or the ASF Settlement Trustee in connection with the administration of the Tort Claims Allocation Protocol.

**8.1.5**   Fees payable to the Tort Claims Reviewer for review of the Class 3 Tort Claims shall be paid by the Debtor or the Reorganized Debtor.

**8.1.6**   No Entity, other than the ASF Settlement Trustee, may: (a) object to any Class 3 Tort Claim or (b) challenge the merit, validity, or amount of any Class 3 Tort Claim. Any objection or challenge to a Class 3 Tort Claim pending as of the Effective Date is deemed withdrawn and shall not be refiled, with the exception of the Committee's pending claims objections or challenges, if any, which shall not be deemed withdrawn and to which the ASF Settlement Trustee shall have the option to continue to prosecute. With the exception of the ASF Settlement Trustee's objections or challenges to a Class 3 Tort Claim, Class 3 Tort Claims shall be treated in accordance with the Tort Claims Allocation Protocol and shall not be subject to any other review or judicial consideration.

**8.1.7**   The ASF Settlement Trust shall pay Class 3 Tort Claims in accordance with the terms of the Tort Claims Allocation Protocol, and ASF Settlement Trust Documents. The ASF Settlement Trust shall be the sole source of payment on account of Class 3 Tort Claims. The ASF Settlement Trust shall not make any Distributions on account of Class 3 Tort Claims prior to the Effective Date.  Except for Class 3 Tort Claims held by chapter 7 trustees, the ASF Settlement Trust shall pay any Distribution due to a holder of a Class 3 Tort Claim as directed by the holder of such Claim, including to a trust, a supplemental needs trust and a financial institution managing a structured settlement for or on behalf of the Claimant or a beneficiary designated by the Claimant.

**8.1.8**   The Distributions from the ASF Settlement Trust are in full settlement of the Class 3 Tort Claims against each of the Protected Parties and the acceptance of a Distribution by a Class 3 Tort Claimant shall constitute a General Release granted by such Class 3 Tort Claimant of all Claims by such Class 3 Tort Claimant against all Protected Parties.

**8.1.9**   If a Class 3 Tort Claim is denied payment, in whole or in part, pursuant to the Tort Claims Allocation Protocol, the holder of such Class 3 Tort Claim will have no rights against the Debtor, Reorganized Debtor, the ASF Settlement Trust, the ASF Settlement Trustee, or any of the Protected Parties relating to such Tort Claim.

**8.1.10**   Before making any Distribution(s) to Class 3 Tort Claimants on account of their Class 3 Tort Claims, the ASF Settlement Trustee will subtract all Qualified Counsel Fees, plus applicable gross receipts tax in an amount equal to the total fees payable to Qualified Counsel based on the Distributions calculated under the Tort Claims Allocation Protocol from the consideration paid by the Funding Group to the ASF Settlement Trust. The ASF Settlement Trust shall pay such fees to Qualified Counsel (or such counsel's designee) as and when the responsible Class 3 Tort Claimant receives a Distribution from the ASF Settlement Trust. None of the Protected Parties are liable for any Qualified Counsel Fees or applicable gross receipts tax. The ASF Settlement Trust shall pay Qualified Counsel Fees as directed by the applicable Qualified Counsel in writing within five (5) business days after notice of payment of Qualified Counsel Fees. In the absence of such written instruction, the ASF Settlement Trust shall pay Qualified Counsel Fees by check delivered by First Class Mail or overnight courier to the address for such Qualified Counsel on the applicable Sexual Abuse Proof of Claim Form. None of the Protected Parties are liable for any Qualified Counsel Fees.

26

**8.1.11**  Before making any Distribution(s) to Class 3 Tort Claimants, the ASF Settlement Trustee will subtract all Qualified Counsel Costs in an amount equal to the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by any beneficiaries of the ASF Settlement Trust from the consideration paid by the Funding Group to the ASF Settlement Trust. The ASF Settlement Trust shall pay such costs to Qualified Counsel as and when the responsible Class 3 Tort Claimant receives a Distribution from the ASF Settlement Trust. None of the Protected Parties are liable for any Qualified Counsel Costs.

**8.1.12**  Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to this Plan, the fees and expenses of attorneys representing Class 3 Tort Claimants who receive Distributions will be borne by such Class 3 Tort Claimants based on applicable state law and individual arrangements made between such Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants. The ASF Settlement Trust and the ASF Settlement Trustee will not have any liability for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants, except to the extent that the ASF Settlement Trust or the ASF Settlement Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs. None of the Protected Parties are responsible for any fees and expenses of attorneys representing any of the Class 3 Tort Claimants.

**8.1.13**  A Class 3 Tort Claimant may withdraw a Class 3 Tort Claim at any time on written notice to the ASF Settlement Trustee. If withdrawn, (a) the Class 3 Tort Claim will be withdrawn with prejudice and may not be reasserted and shall be a Disallowed Claim; (b) as a condition to withdrawal of the Class 3 Tort Claim, any funds paid to the Tort Claimant by the ASF Settlement Trust (inclusive of attorneys' fees and costs) on account of such withdrawn claim shall be returned to the ASF Settlement Trust, and (c) any reserve maintained by the ASF Settlement Trust on account of such withdrawn Claim shall revert to the non-reserved assets of the ASF Settlement Trust for Distribution in accordance with this Plan.

**8.1.14**  Certain chapter 7 bankruptcy cases that met the circumstances set forth in the Bankruptcy Claims Orders were reopened to administer Class 3 Tort Claims held by debtors in those chapter 7 bankruptcy cases. In the reopened chapter 7 bankruptcy cases that have not been reclosed or in which the Class 3 Tort Claim was not formally abandoned, the chapter 7 bankruptcy estate is the Class 3 Tort Claimant and shall be treated as the holder of the Class 3 Tort Claim for all purposes in this Plan and in the ASF Settlement Trust.

**8.1.15**  **The right of any Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor or any of the Protected Parties is waived and released upon occurrence of the Effective Date, and the Tort Claim of a Tort Claimant will be solely determined by the Tort Claims Reviewer and in accordance with the Tort Claims Allocation Protocol.**

**8.1.16** The Tort Claims Allocation Protocol was not developed by, or submitted for approval to, the Debtor or the Settling Insurers, nor are the Settling Insurers or the Debtor deemed to have accepted or acquiesced in such Tort Claims Allocation Protocol.

**8.1.17 Late-filed Tort Claims**. Late-filed Tort Claims are Class 3 Tort Claims that may be: (a) allowed by the Court or disallowed by the Court, after evaluation by the Court of the circumstances particular to each Claim, upon motion properly filed by the Claimant; or (b) treated under the Tort Claims Allocation Protocol which, depending on when the Late-filed Tort Claim was filed, provides for no Distribution or Distribution in varying amounts. A Late-filed Tort Claim could be deemed timely if the Claimant files a motion establishing that its excusable neglect excuses the late filing and the Bankruptcy Court orders that the Late-filed Tort Claim will be treated as timely filed. If a Late-filed Tort Claim is not deemed timely by order of the Court and the Claimant does not accept the treatment under the Tort Claims Allocation Protocol, the Late-filed Tort Claim is disallowed and will not receive any Distribution. For more information about treatment of Late-filed Tort Claims under the Tort Claims Allocation Protocol, see the Tort Claims Allocation Protocol attached as <u>Exhibit H</u> to the Plan.

### 8.2 Class 4: Unknown Tort Claims

**8.2.1**   Class 4 is impaired under this Plan. The Unknown Claims Representative is entitled to vote on this Plan on behalf of Class 4 Tort Claimants. Only for purposes of voting, the Unknown Claims Representative is deemed to have an Allowed Claim in the amount of $1.00.

**8.2.2**   The Unknown Tort Claims Trust will be funded by the Debtor and Participating Religious Orders up to $2.5 Million  pursuant to the provisions of this Plan. The Debtor or the Reorganized Debtor shall pay the costs of administering the Unknown Tort Claims Trust. The Unknown Tort Claims Trust shall be the sole source of payment on account of Class 4 Unknown Tort Claims. Holders of Unknown Tort Claims shall have no rights against the Debtor, Reorganized Debtor, the Protected Parties, the ASF Settlement Trust, ASF Settlement Trustee, the Unknown Tort Claims Trust, or the Unknown Tort Claims Trustee relating to such Unknown Tort Claim.

**8.2.3**   On the Effective Date, with no further action required, the Unknown Tort Claims Trust assumes all liability for all Unknown Tort Claims, and each Unknown Tort Claimant is deemed to have assigned his or her Claim against the Protected Parties to the Unknown Tort Claims Trust, which shall be solely liable for the payment of all such Unknown Tort Claims.

**8.2.4**   Unknown Tort Claimants shall have their Class 4 Unknown Tort Claims treated pursuant to the Unknown Tort Claims Allocation Protocol, including review of such Claims by the Unknown Tort Claims Reviewer in accordance with the Unknown Tort Claims Allocation Protocol.

**8.2.5**   Fees payable to the Unknown Claims Representative for review of the Unknown Tort Claims shall be paid by the Debtor or the Reorganized Debtor. Nothing in this Plan shall affect, diminish or impair any Unknown Tort Claimant's rights against any Co-Defendant, including that Co-Defendant's comparative fault or joint and several liability for Abuse.

**8.2.6**   The Debtor, the Reorganized Debtor and their counsel shall reasonably cooperate with the Unknown Claims Representative and the Unknown Tort Claims Trustee as

requested by the Unknown Claims Representative or the Unknown Tort Claims Trustee in connection with any inquiries in the administration of the Unknown Tort Claims Allocation Protocol.

8.2.7    No Entity other than the Unknown Tort Claims Trustee may challenge the merit, validity, or amount of any Unknown Tort Claim. The Unknown Tort Claims Trustee has the sole and exclusive right to object to any Unknown Tort Claim. The Reorganized Debtor shall not have the right to object to an Unknown Tort Claim.

8.2.8    The Distributions from the Unknown Tort Claims Trust are in full settlement of the Class 4 Unknown Tort Claims against each of the Protected Parties and the acceptance of a Distribution by a Class 4 Unknown Tort Claimant shall constitute a General Release granted by such Class 4 Unknown Tort Claimant of all Claims by such Class 4 Unknown Tort Claimant against all Protected Parties.

8.2.9    If a Class 4 Unknown Tort Claim is denied payment, in whole or in part, pursuant to the Unknown Tort Claims Allocation Protocol, the holder of such Class 4 Unknown Tort Claim will have no rights against the Debtor, Reorganized Debtor, the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee, or any of the Protected Parties relating to such Class 4 Unknown Tort Claim.

8.2.10    Before making any Distribution(s) to Class 4 Unknown Tort Claimants on account of their Class 4 Unknown Tort Claims, the Unknown Tort Claims Trustee will subtract all Qualified Counsel Fees, plus applicable gross receipts tax in an amount equal to the total fees payable to Qualified Counsel based on the Distributions calculated under the Unknown Tort Claims Allocation Protocol. The Unknown Tort Claims Trust shall pay such fees to Qualified Counsel as and when the responsible Class 4 Unknown Tort Claimant receives a Distribution from the Unknown Tort Claims Trust. None of the Protected Parties are liable for any Qualified Counsel Fees or applicable gross receipts tax.

8.2.11    Before making any Distribution(s) to Class 4 Unknown Tort Claimants, the Unknown Tort Claims Trustee will subtract all Qualified Counsel Costs in an amount equal to the unpaid reimbursable expenses (prepetition and post-petition through the Effective Date) payable to Qualified Counsel by any beneficiaries of the Unknown Tort Claims Trust. The Unknown Tort Claims Trust shall pay such costs to Qualified Counsel as and when the responsible Class 4 Unknown Tort Claimant receives a Distribution from the Unknown Tort Claims Trust. None of the Protected Parties are liable for any Qualified Counsel Costs.

8.2.12    Subject to the treatment of Qualified Counsel Fees and Qualified Counsel Costs pursuant to this Plan, the fees and expenses of attorneys representing Class 4 Unknown Tort Claimants who receive Distributions will be borne by such Class 4 Unknown Tort Claimants based on applicable state law and individual arrangements made between such Class 4 Unknown Tort Claimants and their respective attorneys. The Protected Parties will not have any liability for any fees and expenses of attorneys representing any of the Class 4 Unknown Tort Claimants. The Unknown Tort Claims Trust and the Unknown Tort Claims Trustee will not have any liability for any fees and expenses of attorneys representing any of the Class 4 Unknown Tort Claimants,

except to the extent that the Unknown Tort Claims Trust or the Unknown Tort Claims Trustee is required to make payments pursuant to the provisions herein relating to Qualified Counsel Fees and Qualified Counsel Costs.

**8.2.13** A Class 4 Unknown Tort Claimant may withdraw a Class 4 Unknown Tort Claim at any time on written notice to the ASF Settlement Trustee. If withdrawn, (a) the Class 4 Unknown Tort Claim will be withdrawn with prejudice and may not be reasserted and shall be a Disallowed Claim; (b) as a condition to withdrawal of the Class 4 Unknown Tort Claim, any funds paid to the Unknown Tort Claimant by the Unknown Tort Claims Trust (inclusive of attorneys' fees and costs) on account of such withdrawn claim shall be returned to the Unknown Tort Claims Trust, and (c) any reserve maintained by the Unknown Tort Claims Trust on account of such withdrawn Unknown Tort Claim shall revert to the non-reserved assets of the Unknown Tort Claims Trust for Distribution in accordance with this Plan.

**8.2.14 The right of any Class 4 Unknown Tort Claimant to a trial by jury or otherwise against the Reorganized Debtor or any of the Protected Parties is waived and released upon occurrence of the Effective Date, and the Unknown Tort Claim of a Class 4 Unknown Tort Claimant will be solely determined by the Unknown Tort Claims Reviewer and in accordance with the Unknown Tort Claims Allocation Protocol.**

**8.2.15** The Unknown Tort Claims Allocation Protocol was not developed by, or submitted for approval to, the Debtor or the Settling Insurers, nor are the Settling Insurers or the Debtor deemed to have accepted or acquiesced in such Unknown Tort Claims Allocation Protocol.

**8.2.16** The Unknown Tort Claims Trust shall pay Unknown Tort Claimants in accordance with the terms of this Plan, Confirmation Order and Unknown Tort Claims Trust Documents.

**8.3** **Class 5: General Unsecured Claims. See <u>Exhibit K</u>, Attached.** Class 5 General Unsecured Claims shall receive no Distribution, unless and except as provided herein. Class 5 Claimants may proceed against Debtor's or Reorganized Debtor's Preserved Coverage, to the extent the Claim is insured. Class 5 Claims will be paid from the Preserved Coverage, if applicable, or if not, as follows.

**8.3.1** If Debtor or Reorganized Debtor timely objects to a Class 5 Claim, the Claim will be determined and liquidated in the claim adjudication proceeding in the Bankruptcy Court. If the Class 5 Claim is allowed over the objection of the Debtor, the Debtor will pay the allowed amount of the Class 5 Claim over a period of ten years, in annual installments in full satisfaction of the Class 5 Claim. The allowed amount of the Class 5 Claim will not accrue interest during this period.

**8.3.2** If Debtor or Reorganized Debtor has not timely objected to a Class 5 Claim, then following expiration of the Claims Objection Bar Date, the discharge injunction pursuant to § 524 shall be modified for that Claim, to permit the Class 5 Claimant to file and prosecute and to permit the Debtor or Reorganized Debtor to defend, to final judgment, the Class 5 Claim in the appropriate non-bankruptcy forum and to permit the Class 5 Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such

coverage for that Claim. Any such judgment will be paid over a period of ten years, in annual installments in full satisfaction of the Class 5 Claim. The allowed amount of the Class 5 Claim will not accrue interest during this period.

**8.3.3.** Any judgment entered on a Class 5 Claim in favor of the respective Class 5 Claimant shall not be a personal liability of and will not be collectable from the Debtor, Reorganized Debtor, or any of the Protected Parties, other than Catholic Mutual, to the extent applicable, and shall be collectable only from the Preserved Coverage and from no other source.

**8.3.4.** Debtor makes no representation or warranty about the availability of insurance coverage for any of the Class 5 Claims.

**8.3.5** In the alternative to the treatment set out above in this Section 8.3, certain Class 5 Claimants, as shown on <u>Exhibit K</u>, may elect to receive $2,500.00 from the Debtor within 30 days of the Effective Date of the Plan in full and final satisfaction of such Claim. If the Class 5 Claimant elects to receive the $2,500.00, the Class 5 Claimant must waive and release any and all other rights and claims it has, or may have, against the Debtor, Reorganized Debtor, or any of the Protected Parties arising out of its Claim as set forth on its Proof of Claim filed herein or as set forth in the Debtor's Schedules filed herein.

**8.3.6** <u>Late-filed Claims</u>. Class 5 General Unsecured Claims that are Late-filed Claims are disallowed and will receive no Distribution. A Late-filed Claim may be deemed timely if the Claimant files a motion establishing that its excusable neglect excuses the late filing and the Bankruptcy Court orders that the Tort Claim will be treated as timely filed. If the Claimant files such a motion and the Court orders that the Late-filed Claim will not be treated as timely filed, the Late-filed Claim will be disallowed and will not receive any Distribution.

### 8.4     Class 6: Penalty Claims

**8.4.1** Claims for punitive or exemplary damages in connection with any of the Claims will be treated as Penalty Claims and will receive no Distribution under this Plan.

### 8.5     Class 8: Abuse Related Contingent Claims

**8.5.1** In accordance with § 502(e)(1), each Abuse Related Contingent Claim held by any Entity against the Debtor shall be disallowed and will receive no Distribution.

8.6.     **Disallowed Claims.** Disallowed Claims shall not receive any payment or Distribution under this Plan.

### SECTION 9: ACCEPTANCE OR REJECTION OF PLAN

### 9.1     Classes Entitled to Vote

Each Claimant in Classes 3, 4 and 5 is impaired and entitled to vote to accept or reject this Plan. Only the Unknown Claims Representative is entitled to vote on behalf of the holders of Class 4 Claims.

### 9.2     Presumed Acceptance of this Plan

31

Classes 1, 2 and 7 are unimpaired under this Plan and are, therefore, conclusively presumed to have accepted this Plan pursuant to § 1126(f).

**9.3     Presumed Rejection of this Plan**

Classes 6 and 8 are impaired and shall receive no Distribution and to the extent that such claims exist, they are conclusively deemed to have rejected this Plan pursuant to § 1126(g) regardless of any votes by a holder of a Class 6 or 8 Claim.

**9.4     "Cram Down" Request**

The Debtor requests confirmation of this Plan under § 1129(b) with respect to any impaired Class that does not accept this Plan pursuant to § 1126(c). The Debtor reserves the right to modify this Plan to the extent that confirmation pursuant to § 1129(b) requires modification.

## SECTION 10: MEANS OF IMPLEMENTATION OF THE PLAN

**10.1     Establishment of Escrow Account.**

No later than September 30, 2022, the Debtor will establish the Escrow Account. Upon the Effective Date, the funds held in the Escrow Account will be administered in accordance with this Plan, the Insurer Settlement Agreements, the Participating Party Agreements and the Confirmation Order. The Escrow Account shall be interest-bearing, with interest to be paid to Debtor or Reorganized Debtor in order to fund this Plan. The Escrow Account shall be terminated and all Contributions returned if the Effective Date of this Plan has not timely occurred pursuant to Section 18.3 of this Plan. No funds will be removed from the Escrow Account except pursuant to (a) Sections 11.2 and 14.2 upon the occurrence of the Effective Date, (b) Section 18.3 due to the non-occurrence of the Effective Date pursuant to Section 18.3, or (c) a prior written agreement among the Debtor, the Committee and the Settling Insurers.

**10.2     Funding.**

The following will be transferred by wire transfer to the Escrow Account:

i. **Debtor's Initial Contribution.**

The Debtor transferred $69,600,000.00 to the Escrow Account on September 30, 2022.

**Insurer Contributions**

ii. **Travelers Contribution.**

Pursuant and subject to the Travelers Settlement Agreement, Travelers will transfer $16,000,000.00 to the Escrow Account on or before the Contribution Date.

iii.     **Arrowood Contribution.**

Pursuant and subject to the Arrowood Settlement Agreement, Arrowood Indemnity Company will transfer $11,250,000.00 to the Escrow Account on or before the Contribution Date.

iv.     **U.S. Fire Contribution.**

32

Pursuant and subject to the U.S. Fire Settlement Agreement, U.S. Fire will transfer $7,250,000.00 to the Escrow Account on or before the Contribution Date.

      **v.**      **Great American Contribution.**

Pursuant and subject to the Great American Settlement Agreement, Great American Insurance Company will transfer $7,250,000.00 to the Escrow Account on or before the Contribution Date.

      **vi.**      **Catholic Mutual Contribution.**

Pursuant and subject to the Catholic Mutual Settlement Agreement, Catholic Mutual will transfer $4,000,000.00 to the Escrow Account on or before the Contribution Date.

      **vii.**      **CNA Contribution.**

Pursuant and subject to the CNA Settlement Agreement, CNA will transfer $750,000.00 to the Escrow Account on or before the Contribution Date.

      **viii.**      **Second Debtor Contribution**.

On September 30, 2022, the Debtor executed the Promissory Note and Mortgage. The Reorganized Debtor shall deliver the original Promissory Note and original Mortgage to the ASF Settlement Trust on the Effective Date. Following delivery, the ASF Settlement Trustee may undertake any action to perfect the Mortgage. A copy of the Promissory Note and Mortgage are attached hereto as Exhibits O and P.  Upon payment of the Promissory Note, the ASF Settlement Trustee shall deliver to the Reorganized Debtor the original Promissory Note marked "Paid" and all documents necessary to release the Mortgage in recordable form. Reorganized Debtor will prepare the necessary documents.

**Participating Religious Order Contributions**

      **ix.**      **Servants of the Paraclete (the "Servants").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Servants, on or before the Participating Religious Orders Contribution Date, the Servants and its funding liability carriers (as listed on Exhibit G) will transfer $4,000,000 to the Escrow Agent for transfer to the ASF Settlement Trust and $200,000 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Servants will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two  business days after the Effective Date.

      **x.**      **Sons of the Holy Family, Inc. (the "Sons").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with Sons, on or before the Participating Religious Orders Contribution Date, the Sons will transfer $1,050,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $50,000.00 to the Escrow Agent for transfer to Unknown Tort Claims Trust or, if funded after the Effective Date,

Case 18-13027-t11   Doc 1251-2 Filed 11/03/22 Entered 11/03/22 16:54:48 Page 38 of 66
241

the Sons will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xi.     **Congregation of the Blessed Sacrament, Province of St. Ann (the "Congregation").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with Congregation, on or before the Participating Religious Orders Contribution Date, the Congregation will transfer $525,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $25,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Congregation will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xii.     **Brothers of the Christian Schools, SFNO District (the "Christian Brothers")**.

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Christian Brothers, on or before the Participating Religious Orders Contribution Date, the Christian Brothers and its funding liability carriers (as listed on Exhibit G) will transfer $1,900,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $95,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Christian Brothers will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

xiii.     **The Province of St. John the Baptist of the Order of the Friars Minor and the Province of Our Lady of Guadalupe of the Order of Friars Minor (the "Province").**

Pursuant and subject to the Participating Religious Order Settlement Agreement with the Province, on or before the Participating Religious Orders Contribution Date, the Province [and its funding liability carriers (as listed on Exhibit G)] will transfer $600,000.00 to the Escrow Agent for transfer to the ASF Settlement Trust and $30,000.00 to the Escrow Agent for transfer to the Unknown Tort Claims Trust or, if funded after the Effective Date, the Province will deliver the funds to the ASF Settlement Trust and to the Unknown Tort Claims Trust in the stated amounts. The Escrow Agent shall deliver such funds to the respective Trusts within two business days after the Effective Date.

**10.3     Payment and Treatment of Claims Other Than Tort Claims and Unknown Tort Claims.**

Payments due to creditors on account of Allowed Claims other than Tort Claims or Unknown Tort Claims will be paid pursuant to the terms of this Plan from the Reorganized Debtor's assets and ongoing operations or the Preserved Coverage, if applicable.

**10.4     Retained Claims.**

On or before the Effective Date, all Retained Claims will be assigned by the Debtor to the Reorganized Debtor. The Reorganized Debtor may pursue any Retained Claims at the discretion of the Reorganized Debtor and will retain the proceeds of all such Retained Claims, if any.

**10.5  Approval of Financing and 363 Sales.**

On or before the Effective Date, the Bankruptcy Court shall have entered orders approving the sale under § 363, free and clear of all liens, Claims, encumbrances, and Interests, of: any Insurance Policies and Certificates to be purchased by a Settling Insurer pursuant to the requirements of the applicable Insurer Settlement Agreement, and the Court shall have granted the Insurers the protections available under § 363(m). The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the financing evidenced by the Promissory Note and Mortgage, § 363 sales and grant of § 363(m) protections.

**10.6  Approval of Settlement Agreements.**

Pursuant to §§ 105, 363, and 1123 and Rule 9019, and in consideration for the classification, Distributions and other benefits provided under this Plan, including, *inter alia*, (i) the commitment by the ASF Participating Parties, the Participating Religious Orders, and Settling Insurers to fund the Debtor's obligations under this Plan to the Escrow Account; (ii) the Travelers Settlement Agreement; (iii) the Arrowood Settlement Agreement; (iv) the U.S. Fire Settlement Agreement; (v) the Great American Settlement Agreement; (vi) the Catholic Mutual Settlement Agreement; (vii) the CNA Settlement Agreement; (viii) the Participating Party Agreements; and (ix) the Debtor's non-monetary commitment to healing and reconciliation as set forth in Section 10.12 and in the Stipulated Non-Monetary Covenants attached as Exhibit L to this Plan, the provisions of this Plan, the Insurer Settlement Agreements, the Participating Religious Order Settlement Agreements, and the Participating Party Agreements shall constitute good faith compromises and settlements of all Claims against the Debtor, the Settling Insurers and the other Protected Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the global compromise and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, ASF Participating Parties, Settling Insurers, Tort Claimants, Unknown Tort Claimants and other parties in interest, and are fair, equitable and within the range of reasonableness. The Insurer Settlement Agreements and this Plan shall have no effect on coverage under insurance policies or certificates issued to Religious Orders, except for the Participating Religious Orders.

**10.7  Indemnification of Settling Insurers.**

**10.7.1**  Effective on the Effective Date, the ASF Settlement Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to all Channeled Claims (other than Unknown Tort Claims) *provided, however,* that the Settling Insurers shall not seek to recover from a Tort Claimant or any transferee of a Tort Claimant any property distributed or to be distributed after the Effective Date by the ASF Settlement Trust in accordance with the confirmed Plan. Neither the ASF Settlement Trustee nor the Reorganized Debtor will have any personal liability for breach by the Settling Insurers of this provision.

**10.7.2**     Effective on the Effective Date, the Unknown Tort Claims Trust shall defend, indemnify, and hold harmless the Settling Insurers with respect to all Unknown Tort Claims.

**10.7.3**     Effective on the Effective Date, the Reorganized Debtor shall defend, indemnify, and hold harmless the Settling Insurers as set forth in the Insurer Settlement Agreements.

**10.7.4**     Nothing herein shall be construed to require the ASF Settlement Trust to maintain any reserve of funds to defend, indemnify and/or hold harmless the Settling Insurers pursuant to the Plan, the Confirmation Order, and/or any Plan Document.

**10.8     Debtor's Waiver and Release of Claims Against ASF Participating Parties and Participating Religious Orders.**

Debtor's waiver and release of Claims against ASF Participating Parties is as provided in the Participating Party Agreements and against the Participating Religious Orders as provided in the Participating Religious Order Settlement Agreements.

**10.9     Dismissal of Adversary Proceedings and Pending Appeal**.

Within five Business Days of the Effective Date, the Adversary Proceedings and Case No. 21-702 pending before the United States Court of Appeals for the Tenth Circuit ("Appeal") shall be dismissed with prejudice. The parties to the Adversary Proceedings and the Appeal shall cooperate to effect the dismissals in substantially the forms attached hereto as <u>Exhibit M</u>, which, upon Confirmation, are deemed approved by counsel of record.

**10.10     Non-Monetary Commitment to Healing and Reconciliation.**

In order to further promote healing and reconciliation, and in order to continue its efforts to prevent Abuse from occurring in the Archdiocese in the future, the Reorganized Debtor agrees that beginning within 30 days after the Effective Date (unless a different date is provided below), it will undertake the commitments set forth in the Stipulated Non-Monetary Covenants attached hereto as <u>Exhibit L</u> attached hereto and incorporated herein, including the establishment of the Abuse Documents Archive.

**10.11     Procedure for Determination of Claims Other Than Tort Claims or Unknown Tort Claims.**

The following procedures will be used for purposes of allowance and disallowance of creditors' Claims that are **not** Tort Claims, Channeled Claims, or Unknown Tort Claims:

**10.12.1**     **Objections to Claims.** Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed prior to the Effective Date, all objections to Claims must be filed by the Claims Objection Bar Date, <u>provided</u>, <u>however</u>, that nothing contained in this Plan will affect the right of the Debtor to seek estimation of any Claims, except Tort Claims, Channeled Claims, and Unknown Tort Claims, on any grounds permitted by the Bankruptcy Code at any time. Treatment of Tort Claims, Channeled Claims, and Unknown

Tort Claims shall be solely pursuant to the Tort Claims Allocation Protocol and the Unknown Tort Claims Allocation Protocol, as the case may be.

        **10.12.2**      **Disputed Claims.** No payments or other Distributions will be made to the holders of Disputed Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Disputed Claim is not an Allowed Claim by the Effective Date, or when payment is otherwise due under this Plan, payment on the Allowed Claim (plus interest, if any is provided for in this Plan) will commence on the date set forth in the Final Order allowing the Claim, in accordance with the treatment set forth in this Plan.

        **10.12.3**      **Treatment of Contingent Claims.** Until such time as a Contingent Claim or a Contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under this Plan. The holder of a Contingent Claim will only be entitled to a Distribution under this Plan when and if such Contingent Claim becomes an Allowed Claim, subject, however, to the provisions of § 502(e), and, <u>provided that</u> if such Contingent Claim is for reimbursement, indemnification or contribution at the time of allowance or disallowance, it will be disallowed pursuant to § 502(e)(1)(B).

      **10.13**   **Payments Effective Upon Tender.**

        Whenever this Plan requires payment to be made, such payment will be deemed made and effective upon tender thereof by the ASF Settlement Trustee, Debtor, or the Reorganized Debtor to the creditor to whom payment is due. If any creditor expressly refuses a tender, the amount tendered and refused will be held by the ASF Settlement Trustee, Debtor or the Reorganized Debtor for the benefit of that creditor pending final adjudication of the dispute. However, when and if the dispute is finally adjudicated and the creditor receives the funds previously tendered and refused, the creditor will be obliged to apply the funds in accordance with this Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the creditor will not have the right to claim interest or other charges or to exercise any other rights which would be enforceable by the creditor, if the Debtor or the Reorganized Debtor failed to pay the tendered payment.

      **10.14**   **Preservation of Debtor's Claims, Demands, and Causes of Action.**

        Except as otherwise provided in this Plan, all Claims, demands, and Causes of Action of any kind or nature whatsoever held by, through, or on behalf of the Debtor and/or the Estate against any other Entity, including but not limited to, the Retained Claims arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, are hereby preserved in full for the benefit of the Reorganized Debtor, except for such Claims or Causes of Action, cross-claims, and counterclaims which: (a) have been released hereunder or pursuant to any applicable Insurer Settlement Agreement, Participating Party Agreement or a Final Order prior to the Effective Date; and (b) which have been or are being transferred to the ASF Settlement Trustee. Claims or Causes of Action, crossclaims and counterclaims which are being transferred to the ASF Settlement Trustee, if any, are preserved under this Plan for the benefit of the ASF Settlement Trust and/or the Unknown Tort Claims Trust. To the extent necessary, the Reorganized Debtor is hereby designated as the estate representative pursuant to, and in accordance with,

§ 1123(b)(3)(B). Furthermore, in accordance with § 1123(b)(3), after the Effective Date, the Reorganized Debtor will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtor or its Estate, including, but not limited to the Retained Claims. The Debtor and the Reorganized Debtor will also be entitled to assign their rights under this Plan (except to the extent they are prohibited from doing so pursuant to the express terms of any applicable agreement for insurance coverage, Insurer Settlement Agreement, or Participating Party Agreement). On the Effective Date, and except as otherwise specifically provided in this Plan, including but not limited to Retained Claims which are specifically retained by the Debtor and assigned to the Reorganized Debtor, the ASF Settlement Trustee is hereby designated as the estate representative, pursuant to and in accordance with, § 1123(b)(3) with respect to any and all Claims, defenses, counterclaims, setoffs, and recoupments belonging to the Debtor or its Estate with respect to Tort Claims and Unknown Tort Claims.

### 10.15  Special Provisions Governing Unimpaired Claims.

Except as otherwise provided in this Plan, nothing will affect the Debtor's or the Reorganized Debtor's rights and defenses with respect to any unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, such unimpaired Claims.

### 10.16  Operative Documents.

The Debtor or the Committee will prepare any documents that the Debtor, the Reorganized Debtor and/or the Committee deem are necessary or appropriate to execute this Plan or are provided for under this Plan, including, but not limited to, the Plan Documents. If there is any dispute regarding the reasonableness or propriety of any such documents, any such dispute will be presented to the Bankruptcy Court for determination, at or in conjunction with the Confirmation Hearing.

### 10.17  Return of Deposits.

To the extent that the Debtor was required to and did pay deposits to any creditors after the Petition Date, as a condition of or as security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance pursuant to § 366, then, upon satisfaction of the Claims of such creditor pursuant to this Plan or if such creditor did not have any Claims against the Debtor, any such deposits, together with any interest or other income earned thereon, if any, will be refunded to the Reorganized Debtor within 15 days of demand by the Reorganized Debtor for return of such deposit.

### 10.18  Delivery of Distributions (Except to Tort Claims and Unknown Tort Claims).

Distributions will be made by the Debtor or the Reorganized Debtor as follows:

### 10.18.1  At the addresses set forth in the Proofs of Claim (and if both a claimant's address and a claimant's counsel are listed on the Proof of Claim then to counsel's address) filed by holders of Claims or the last known addresses of such holders if no Proof of

Claim is filed or if the Debtor, the Reorganized Debtor, the ASF Settlement Trustee has not been notified of a change of address;

          **10.18.2**      At the addresses set forth in written notices of address change delivered to the Debtor, the ASF Settlement Trustee or the Reorganized Debtor after the date of any related Proof of Claim; or

          **10.18.3**      At the addresses reflected in the Schedules filed in the Bankruptcy Case if no Proof of Claim has been filed, and the Debtor, the ASF Settlement Trustee or the Reorganized Debtor has not received a written notice of change of address.

### 10.19   Transmittal of Distributions to Tort Claimants and Unknown Tort Claimants.

Except as otherwise provided in this Plan, in the Plan Documents, or in an order of the Bankruptcy Court, Distributions to Class 3 Tort Claimants will be made by and in accordance with the ASF Settlement Trust and Distributions to the Unknown Tort Claimants will be made by and in accordance with the Unknown Tort Claims Trust.

### 10.20   Efforts Regarding Absence of Address or Returned Mail.

If a claimant's Distribution is not mailed or is mailed but returned to the Reorganized Debtor or ASF Settlement Trustee because of the absence of a proper mailing address, the Reorganized Debtor or ASF Settlement Trustee, as the case may be, shall make a reasonable effort to locate or ascertain the correct mailing address for such claimant from information generally available to the public and from such party's own records, but shall not be liable to such claimant for having failed to find a correct mailing address. The ASF Settlement Trustee shall have no liability to a Tort Claimant on account of Distributions made to the client trust account of a Tort Claimant's attorney.

## SECTION 11: ASF SETTLEMENT TRUST

### 11.1    Establishment of ASF Settlement Trust

The ASF Settlement Trust shall be established in accordance with the ASF Settlement Trust Documents; provided that the Debtor may execute the ASF Settlement Trust Documents upon entry of the Confirmation Order to enable the ASF Settlement Trust to obtain a Federal Tax Identification number. The ASF Settlement Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The ASF Settlement Trust Documents, including the ASF Settlement Trust Agreement, are incorporated herein by reference.

### 11.2    Funding of ASF Settlement Trust

Within two Business Days after the Effective Date, the Escrow Agent shall pay all funds in the Escrow Account to the ASF Settlement Trust by wire transfer.

          **11.2.1 Fees and Expenses**. The Reorganized Debtor shall pay the fees and expenses incurred by the ASF Settlement Trust and the ASF Settlement Trustee within 30 days of delivery of an invoice by the ASF Settlement Trustee, as provided in the ASF Settlement Trust

Agreement. The fees and expenses include but are not limited to the ASF Settlement Trust's professional fees and expenses and the ASF Settlement Trustee's fees and expenses. The Reorganized Debtor is not responsible for and will not pay or reimburse Qualified Counsel Fees, Qualified Counsel Costs, fees and costs of attorneys representing Tort Claimants, or fees and expenses incurred in administration and payment of Claims against Participating Religious Orders.

### 11.3    Reserve Accounts

As set forth in the ASF Settlement Trust Agreement, the ASF Settlement Trustee may establish reserves within the ASF Settlement Trust for various purposes.

### 11.4    No Execution

All property held in the ASF Settlement Trust will remain property of the ASF Settlement Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Tort Claims Allocation Protocol and ASF Settlement Trust Documents. Except as expressly provided in this Plan, Plan Documents, Confirmation Order, Tort Claims Allocation Protocol and the ASF Settlement Trust Documents, the ASF Settlement Trust shall not be responsible for any Claims against the Debtor.

### 11.5    Trust Distributions

**11.5.1  Release**. No Tort Claimant or holder of a Channeled Claim shall receive any Distribution unless and until such Claimant has executed the General Release of any and all Claims against all of the Protected Parties, the Exculpated Parties, the Settling Insurers' reinsurers or retrocessionaires that, directly or indirectly, relate to one or more Tort Claims, Channeled Claims, or  the injuries or damages alleged by the Tort Claimant or holder of a Channeled Claim in the form attached as **Exhibit N** to this Plan. The General Release shall be incorporated into the ballot for voting on this Plan or may be executed independent of the ballot, but in any event shall be an independently effective instrument that is personally signed by the Tort Claimant or his or her legal representative. A Tort Claimant or holder of a Channeled Claim who does not timely submit a ballot that includes an executed release must personally execute the General Release required by this Section 11.5.1 and deliver it to the ASF Settlement Trustee prior to receiving any Distribution from the ASF Settlement Trust, provided, however that nothing in this Section shall require any Tort Claimant or holder of a Channeled Claim to release any Claims against any Co-Defendants. The ASF Settlement Trust shall be obligated to provide copies of any Channeled Claimants' executed General Releases (including ballots incorporating such releases) to the Protected Parties.

**11.5.2**  The ASF Settlement Trust shall terminate and the ASF Settlement Trustee shall be discharged in accordance with the ASF Settlement Trust Agreement.

### 11.6    Special Distribution Conditions.

Prior to any Distribution to a Class 3 Tort Claimant or to a Class 3 Tort Claimant's counsel, the ASF Settlement Trustee shall obtain a certification of compliance with MMSEA for such Class 3 Tort Claimant or holder of a Channeled Claim from the Claimant's counsel, or, if the Class 3 Tort Claimant is *pro se,* the ASF Settlement Trustee shall obtain the certification of compliance with MMSEA for such Claimant from the Claimant's counsel, if such claimant has an attorney

40

and, if the Claimant is pro se from the third party administrator engaged by and paid for by the Archdiocese for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Claimants. The certifications of compliance shall provide that the Claimant has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Claimant's Channeled Claim.

11.6.1 The ASF Settlement Trust shall defend, indemnify and hold harmless the Reorganized Debtor and the Protected Parties, other than Participating Religious Orders and any liability carriers to a Participating Religious Order in that capacity, from any Claims related to Medicare Claims reporting and payment obligations, whether relating to past Conditional Payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Channeled Claims (other than Unknown Tort Claims), including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the ASF Settlement Trust's obligations under this Plan, the ASF Settlement Trust Documents, and the Plan Documents. The ASF Settlement Trust also shall have the obligation to cooperate in the assertion of the Channeling Injunction provided in the Participating Religious Order Settlement Agreements. The ASF Settlement Trustee shall not have personal liability for these obligations and the ASF Settlement Trust shall not create a reserve for these potential obligations.

11.6.2 The ASF Settlement Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is a Class 3 Tort Claimant or holder of a Channeled Claim. The amount of such payment shall not exceed that Claimant's award under the ASF Settlement Trust Documents. The ASF Settlement Trustee shall not have personal liability for these obligations and the ASF Settlement Trust shall not create a reserve for these potential obligations. The Reorganized Debtor shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is a Class 3 Tort Claimant or holder of a Channeled Claim.

## SECTION 12: UNKNOWN TORT CLAIMS TRUST

### 12.1      Establishment of Unknown Tort Claims Trust

On the Confirmation Date, the Unknown Tort Claims Trust shall be established in accordance with the Unknown Tort Claims Trust Documents. The Unknown Tort Claims Trust shall qualify as a Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder. The Unknown Tort Claims Trust Documents, including the Unknown Tort Claims Trust Agreement, are incorporated herein by reference.

### 12.2      Funding

The Debtor shall fund the Unknown Tort Claims Trust as provided in the Unknown Tort Claims Trust Agreement.

41

### 12.3    Reserve Accounts

As set forth in the Unknown Tort Claims Trust Agreement, the Unknown Tort Claims Trustee may establish reserves within the Unknown Tort Claims Trust for various purposes.

### 12.4    No Execution

All property held in the Unknown Tort Claims Trust will remain property of the Unknown Tort Claims Trust until such time as the property actually has been paid to and received by an Entity entitled to receive payment pursuant to the terms of the Unknown Tort Claims Allocation Protocol and Unknown Tort Claims Trust Documents. Except as expressly provided in this Plan, Plan Documents, Confirmation Order, Unknown Tort Claims Allocation Protocol and the Unknown Tort Claims Trust Documents, the Unknown Tort Claims Trust shall not be responsible for any Claims against the Debtor.

### 12.5    Trust Distributions

**12.5.1      Release**. No Unknown Tort Claimant shall receive any Distribution unless and until the Unknown Tort Claimant has executed and delivered to the Unknown Tort Claims Trustee the General Release of any and all Claims against all of the Protected Parties, the Exculpated Parties, the Settling Insurers' reinsurers or retrocessionaires that, directly or indirectly, relate to the Unknown Tort Claims or the injuries or damages alleged by the Unknown Tort Claimants. The General Release shall be in the form included in Exhibit N. The General Release of any Unknown Tort Claims must be executed personally by the Unknown Tort Claimant. The Unknown Tort Claims Trust shall be obligated to provide copies of the Unknown Tort Claimants' releases to the Protected Parties.

**12.5.2      The Unknown Tort Claims Trust** shall terminate and the Unknown Tort Claims Trustee shall be discharged pursuant to the Unknown Tort Claims Trust Agreement.

### 12.6    Special Distribution Conditions.

Prior to any Distribution to a Class 4 Unknown Tort Claimant or to a Class 4 Unknown Tort Claimant's counsel, the Unknown Tort Claims Trustee shall obtain a certification of compliance with MMSEA for such Class 4 Unknown Tort Claimant from the Claimant's counsel, or, if the Class 4 Unknown Tort Claimant is *pro se*, the Unknown Tort Claims Trustee shall obtain the certification of compliance from the third party administrator engaged by and paid for by the Archdiocese for the purpose of providing certifications of compliance with MMSEA for all such *pro se* Claimants. The certifications shall provide that the Claimant has or will provide for the payment and/or resolution of any obligations owing or asserted under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Class 4 Unknown Tort Claimant's Channeled Claim. The Unknown Tort Claims Trustee shall withhold the Distribution(s) to the Unknown Tort Claimant and Unknown Tort Claimant's counsel pending receipt of such certification of compliance.

12.6.1  The Unknown Tort Claims Trust shall defend, indemnify and hold harmless the Reorganized Debtor and the Protected Parties, other than Participating Religious Orders and

any liability carriers to a Participating Religious Order in that capacity, from any Claims related to Medicare Claims reporting and payment obligations, whether relating to past Conditional Payments made, future payments to be made, or otherwise arising out of, relating to, or in connection with Tort Claims, including any obligations owing or potentially owing under MMSEA or MSPA, and any Claims related to the Unknown Tort Claims Trust's obligations under this Plan, the Unknown Tort Claims Trust Documents, and the Plan Documents. The Unknown Tort Claims Trustee shall not have personal liability for this obligation and the Unknown Tort Claims Trust shall not create a reserve for this potential obligation.

12.6.2  The Unknown Tort Claims Trust Assets shall also be used for payment of indemnity and expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Unknown Tort Claimant. The amount of such payment shall not exceed that Claimant's award under the Unknown Tort Claims Trust documents. The Unknown Tort Claims Trustee shall not have personal liability for this obligation and the Unknown Tort Claims Trust shall not create a reserve for this potential obligation. The Reorganized Debtor shall not be responsible for and will not pay indemnity or expenses relating to reimbursing the United States government or its contractors for Conditional Payments made pursuant to the MSPA applicable to any Medicare beneficiary who is an Unknown Tort Claimant or holder of any other Channeled Claim.

## SECTION 13: TREATMENT OF EXECUTORY CONTRACTS

### 13.1    Assumption and Rejection of Executory Contracts.

On the Effective Date, except as otherwise provided herein, all Executory Contracts of the Debtor, that have not been previously rejected or terminated, will be assumed in accordance with the provisions and requirements of §§ 365 and 1123, other than those Executory Contracts that: (a) have already been assumed by Final Order of the Bankruptcy Court; (b) are subject to a motion to reject Executory Contracts that is pending on the Effective Date (subject to the Debtor's right to request rejection retroactive to an earlier date); or (c) are subject to a motion to reject an Executory Contract pursuant to which the requested effective date of such rejection is after the Effective Date. Approval of any motions to assume Executory Contracts pending on the Confirmation Date or thereafter will be approved by the Bankruptcy Court on or after the Confirmation Date by a Final Order. Each Executory Contract assumed pursuant to this Section 13.1 will revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

### 13.2    Claims Based on Rejection of Executory Contracts.

Every Claim asserted by a creditor arising from the rejection of an Executory Contract pursuant to this Plan must be filed with the Bankruptcy Court no later than the first Business Day which is 30 days after the Effective Date or the first Business Day that is 30 days after entry of the Final Order of the Bankruptcy Court approving rejection, if such Final Order is entered after the Effective Date. Every such Claim which is timely filed, as and when it becomes an Allowed Claim, will be treated under Class 5 of this Plan. Every such Claim which is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the creditor

holding the Claim will not receive or be entitled to any Distribution under this Plan on account of such Claim.

### 13.3 Indemnification of Members, Managers, Officers, and Employees.

The obligation of the Debtor to indemnify any individual serving at any time on or prior to the Effective Date as one of its officers, employees, or volunteers by reason of such individual's service in such capacity, to the extent provided in any of the Debtor's constituent documents or by a written agreement with the Debtor or under the laws of the State of New Mexico, as applicable, pertaining to the Debtor, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor, pursuant to this Plan and § 365 as of the Effective Date. Obligations of the Debtor to indemnify any such individual that are assumed will survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date unless such individual is a Protected Party. Notwithstanding the foregoing, under no circumstances will the Debtor or the Reorganized Debtor assume or be responsible for any alleged indemnification obligations of any Perpetrators, or any priests or others against whom the Debtor has determined or may, in the future determine, that there are credible allegations of Abuse asserted against such individual(s) or such Entity has or may have engaged in some other conduct that would excuse the Reorganized Debtor from providing any indemnification to such individual or Entity.

## SECTION 14: OTHER POST-EFFECTIVE DATE OBLIGATIONS

### 14.1 Closing.

Closing will be conducted at such location designated by the Debtor and the ASF Settlement Trustee, as soon as reasonably practicable following the Effective Date for the purpose of the Reorganized Debtor executing and delivering the Plan Documents and completing those actions necessary for the Reorganized Debtor to establish and fund the ASF Settlement Trust and make other Distributions required to be made upon, or promptly following, the Effective Date and in accordance with the terms of the respective Insurer Settlement Agreements and the Participating Party Agreements. Notwithstanding the foregoing, the Escrow Agent shall wire transfer: (a) the ASF Settlement Trust's portion of the funds in the Escrow Account to the ASF Settlement Trust within two business days after the Effective Date and (b) the Unknown Tort Claims Trust's portion of the funds in the Escrow Account to the Unknown Tort Claims Trust within two business days after the Effective Date. As soon as practicable, the ASF Settlement Trustee shall file notice of the Closing and the Reorganized Debtor will file notice of the occurrence of the Effective Date.

### 14.2 Obligations of the Reorganized Debtor.

Subject to Sections 18 and 20 of this Plan, the Reorganized Debtor will:

**14.2.1** In the exercise of its respective business judgment, review all Claims filed against the Estate except for Tort Claims, Channeled Claims, and Unknown Tort Claims and, if advisable, object to such Claims;

**14.2.2** Honor the Debtor's obligations arising under each Participating Party Agreement and Insurer Settlement Agreement and any other agreement that has been approved by the Bankruptcy Court as part of this Plan;

**14.2.3** Cause the Escrow Agent to transfer by wire the respective shares of the funds from the Escrow Account to the ASF Settlement Trustee and to the Unknown Tort Claims Trustee within two Business Days after the Effective Date;

**14.2.4** Transfer by wire any balance owed on the Promissory Note to the ASF Settlement Trust pursuant to the terms of the Promissory Note on or before March 31, 2023; and

**14.2.5** Perform all of its obligations under this Plan and Plan Documents, in each case, as and when the same become due or are to be performed.

**14.3    No Professional Fees or Expenses.**

No professional fees or expenses incurred by a claimant will be paid by the Reorganized Debtor, the Protected Parties, the ASF Settlement Trust and/or the Unknown Tort Claims Trust, or the ASF Settlement Trustee with respect to any Claim except as specified in this Plan or the Trust Documents.

**14.4    Closing of the Bankruptcy Case.**

As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules; <u>provided</u>, <u>however</u>, that entry of a final decree closing the Bankruptcy Case shall, whether or not specified therein, be without prejudice to the right of the Reorganized Debtor, the ASF Settlement Trustee, or any other party in interest to reopen the Bankruptcy Case for any matter over which the Bankruptcy Court or the U.S. District Court has retained jurisdiction under this Plan or otherwise has jurisdiction under applicable law. Any order closing the Bankruptcy Case will provide that the Bankruptcy Court or the U.S. District Court, as appropriate, will retain: (a) jurisdiction to enforce, by injunctive relief or otherwise, the Confirmation Order, any other orders entered in the Bankruptcy Case, and the obligations created by this Plan and the Plan Documents; (b) all other jurisdiction and authority granted to it under this Plan and the Plan Documents; and (c) provide that the ASF Settlement Trust or the Unknown Tort Claims Trust may be terminated and the ASF Settlement Trustee and/or or the Unknown Tort Claims Trustee discharged as ordered by the Bankruptcy Court without reopening the Bankruptcy Case.

**SECTION 15: INSURANCE MATTERS**

**15.1** Nothing in this Plan, the Confirmation Order or in any Plan Document: (i) modifies any of the terms or the rights and obligations of Catholic Mutual, the Reorganized Debtor or any other Archdiocese Party under the Catholic Mutual Settlement Agreement or the Certificates, as amended by such settlement agreement on the Effective Date, which shall govern the coverage, limits, declarations, terms and conditions of liability coverage under the Certificates by Catholic Mutual from and after the Effective Date; (ii) impairs, diminishes or affects Catholic Mutual's legal and equitable defenses under the Certificates, as so amended, relating to any and all Claims;

45

(iii) shall have any collateral estoppel or res judicata effect with respect to the liability for any and all Claims of the Reorganized Debtor or of any other Entity covered or allegedly covered under any Certificate, as so amended; (iv) shall have any collateral estoppel or res judicata effect with respect to the obligations, if any, of Catholic Mutual under the Certificates, as so amended, to provide a defense or indemnity with respect to any and all Claims; (v) shall impose any obligation on Catholic Mutual not set forth in the Certificates, as so amended, to provide a defense for, settle or pay any judgement with respect to any and all Claims; or (vi) shall grant any right of the holder of a Claim to sue Catholic Mutual in a direct action. For the avoidance of doubt, nothing in this section shall diminish the protection of Catholic Mutual under the Channeling Injunction and Supplemental Injunction.

      **15.2**    Unless otherwise determined by order of the Bankruptcy Court, the filing of a proof of claim or the estimation or allowance of a Claim shall not: (i) constitute a trial, an adjudication on the merits or evidence of liability or damages in any litigation with Catholic Mutual, the Reorganized Debtor, or any other Entity covered or allegedly covered under a Certificate, as amended by the Catholic Mutual Settlement Agreement on the Effective Date; or (ii) constitute, or be deemed to be a determination of the amount of any Claim, either individually or in the aggregate with other Claims.

      **15.3**    Nothing in this Plan, Confirmation Order or any Plan Document, shall impose any obligation on any Settling Insurer to provide a defense for, settle, or pay any judgment with respect to, any Tort Claim, Channeled Claim, or Unknown Tort Claim.

      **15.4**    Nothing in this Plan, the Confirmation Order or any Plan Document shall grant to any Entity any right to sue any Settling Insurer directly, in connection with a Tort Claim, Channeled Claim, Unknown Tort Claim or any Certificate or Insurance Policy (including a released Certificate or released Insurance Policy). To the extent that a Certificate or Insurance Policy continues in effect after the Effective Date because it is not a released Certificate or released Insurance Policy, the terms of the Certificate or Insurance Policy and applicable non-bankruptcy law will govern the rights and obligations of such Entity; <u>provided</u>, <u>however</u>, that pursuant to this Plan and the Insurer Settlement Agreements, no Entity shall have any right to sue any Settling Insurer or Participating Party directly or indirectly in connection with a Tort Claim, Unknown Tort Claim, Channeled Claim, or a released Certificate or released Insurance Policy. The ASF Settlement Trustee shall have the right to bring legal action to enforce the Insurer Settlement Agreements.

      **15.5**    Nothing in this Plan, Confirmation Order, or in any Plan Document shall constitute a finding or determination that any Debtor and/or third party is a named insured, additional insured or insured in any other way under any Certificate or Insurance Policy; or that any Settling Insurer has any defense or indemnity obligation with respect to any Tort Claim, Channeled Claim, or Unknown Tort Claim.

      **15.6**    Nothing in this Plan is intended to affect the governing law of any Certificate or Insurance Policy.

      **15.7**    The indemnification provisions in the Insurer Settlement Agreements survive the confirmation and effectiveness of this Plan.

## SECTION 16: LITIGATION

### 16.1    Preservation of Retained Claims.

The Reorganized Debtor shall retain and exclusively enforce the Retained Claims, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, a bankruptcy court adversary proceeding filed in the Bankruptcy Case. The Reorganized Debtor shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Retained Claims, without obtaining Bankruptcy Court approval.

Except for Tort Claimants, holders of Channeled Claims, or Unknown Tort Claimants, any Entity to whom the Debtor has incurred an obligation (whether on account of the provision of goods, services or otherwise), or who has received goods or services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtor, subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a Proof of Claim against the Debtor in this Bankruptcy Case; (ii) such Entity's Proof of Claim has been objected to; (iii) such Entity's Claim was included in the Schedules; or (iv) such Entity's scheduled Claims have been objected to or have been identified as disputed, Contingent, or unliquidated.

## SECTION 17: LIQUIDATION OF TORT CLAIMS AND UNKNOWN TORT CLAIMS

### 17.1    Liquidation and Payment of Tort Claims.

**17.1.1**    The ASF Settlement Trust shall pay or otherwise treat Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) in accordance with the terms of the ASF Settlement Trust Documents. The amount of the ASF Settlement Trust's Distributions and reserves on account of the Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) shall not be binding upon any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim. Nothing in the ASF Settlement Trust Documents shall: (i) impose any costs, directly or indirectly, upon the Estate, the Reorganized Debtor, any Participating Party or any Settling Insurer relating to the treatment of Class 3 Tort Claims and Channeled Claims (other than Unknown Tort Claims or Channeled Claims that arise out of the same set of facts and circumstances as an Unknown Tort Claim) or (ii) otherwise modify the rights or obligations of the Estate, the Reorganized Debtor, any Participating Party or Settling Insurer as otherwise set forth in the respective Insurer Settlement Agreement, Participating Party Agreement, this Plan, or a Plan Document.

**17.1.2**    Notwithstanding the foregoing, the Reorganized Debtor is responsible for the ASF Settlement Trust's administrative expenses as set forth in the Plan and in the ASF Settlement Trust. The Reorganized Debtor is not responsible for the ASF Settlement Trust's administrative expenses incurred in the administration and payment of Claims against Participating Religious Orders. Because Class 3 Tort Claims are being paid by the ASF Settlement Trust without

47

regard to whether those Claims are covered by Certificates or Insurance Policies, the ASF Settlement Trust shall be deemed to be subrogated to the Claims of Tort Claimants paid by the ASF Settlement Trust. The ASF Settlement Trust may not bring any action against the Reorganized Debtor, any Protected Party, or their respective assets; provided, however, that the ASF Settlement Trust may bring an action against any of the foregoing Entities to enforce this Plan or Plan Documents.

17.2 **Effect of No Award on Tort Claims or Channeled Claims.** If a Tort Claim, Channeled Claim, or Unknown Tort Claim is denied payment pursuant to the respective Tort Claims Allocation Protocol or Unknown Tort Claims Allocation Protocol, the holder of such Tort Claim, Channeled Claim, or Unknown Tort Claim will have no further rights against the Debtor, Reorganized Debtor, ASF Participating Parties, Settling Insurers, the ASF Settlement Trust, Unknown Tort Claims Trust, ASF Settlement Trustee, or Unknown Tort Claims Trustee relating to such Tort Claim, Channeled Claim, or Unknown Tort Claim and such Tort Claim, Channeled Claim, or Unknown Tort Claim shall be a Disallowed Claim and subject to all provisions of Section 19 below.

17.3 The Unknown Tort Claims Trust shall pay or otherwise treat (a) Class 4 Unknown Tort Claims and (b) Channeled Claims that arise out of the same set of facts and circumstances as a Class 4 Unknown Tort Claim in accordance with the terms of the Unknown Tort Claims Allocation Protocol. The amount of the Unknown Tort Claims Trust's Distributions and reserves allocated to (i) Class 4 Unknown Tort Claims and (ii) Channeled Claims that arise out of the same set of facts and circumstances as a Class 4 Unknown Tort Claim shall not be binding upon any Co-Defendant in connection with a Co-Defendant's liquidation of any contribution or indemnity claim.

## SECTION 18: CONDITIONS PRECEDENT

### 18.1 Conditions to Occurrence of the Effective Date.

The Effective Date will occur when each of the following conditions have been satisfied or waived in accordance with Section 18.2 of this Plan:

18.1.1 The Bankruptcy Court shall have entered a Final Order or Final Orders approving each Insurer Settlement Agreement and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Settling Insurer with respect to that Settling Insurer's Insurer Settlement Agreement and consistent with the requirements of such Settling Insurer's applicable Insurer Settlement Agreement, and no stay of such orders is in effect;

18.1.2 The Bankruptcy Court shall have entered a Final Order or Final Orders approving all Participating Party Agreements and any appropriate judgments consistent therewith, in form and substance reasonably acceptable to the Participating Party with respect to that Participating Party's Participating Party Agreement and consistent with the requirements of such Participating Party's applicable Participating Party Agreement, and no stay of such orders is in effect;

Case 18-13027-t11 Doc 1514-2 Filed 11/03/22 Entered 11/03/22 18:54:48 Page 53 of 241

**18.1.3** The Bankruptcy Court shall have entered the Confirmation Order in form and substance that is reasonably acceptable to the Reorganized Debtor, the Committee, the Settling Insurers, and the ASF Participating Parties, and the Confirmation Order is a Final Order;

**18.1.4** The ASF Settlement Trustee and the Reorganized Debtor have signed the ASF Settlement Trust Agreement;

**18.1.5** All Insurer Contributions and the Debtor's Initial Contribution have been paid to the ASF Settlement Trust or the Escrow Agent; and

**18.1.6** The Promissory Note has been executed and delivered to the ASF Settlement Trustee and the Mortgage has been executed and delivered to the ASF Settlement Trustee in recordable form.

### 18.2    Waiver of Conditions.

Any condition to the occurrence of the Effective Date set forth in Section 18.1 of this Plan may be waived by the mutual written consent of the Debtor, the Committee, the Settling Insurers with respect to any conditions affecting such Settling Insurer's rights or obligations and the ASF Participating Parties with respect to any conditions affecting such Participating Party's obligations.

### 18.3    Non-Occurrence of Effective Date.

Subject to further order of the Bankruptcy Court, in the event that the Effective Date does not occur before the expiration of the 90-day period beginning after the Confirmation Order becoming a Final Order, or the last of the Orders approving the Insurer Settlement Agreements and Participating Party Agreements becoming Final Orders, whichever occurs last (the "Initial Closing Period"), this Plan shall become null and void and all funds in the Escrow Account shall be returned to the Entity that deposited them unless agreed otherwise by the Debtor, the Committee, and the Settling Insurers. Such agreement shall be deemed to have occurred if none of the foregoing parties object to Debtor's notice of intent to extend the time by 90 days to make the confirmed Plan effective. Debtor must serve such notice on the foregoing parties no less than ten business days before the expiration of the Initial Closing Period or within five business days after the occurrence of any other event that would render this Plan null and void.

## SECTION 19: EFFECTS OF CONFIRMATION

### 19.1    Discharge.

Upon the Effective Date, except as otherwise expressly provided in this Plan or in the Confirmation Order, the Debtor is discharged pursuant to §1141(d)(1) from any Claim and debt, whether reduced to judgment or not, liquidated or unliquidated, Contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or future, that arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims or debts, whether such interest accrued before or after the Petition Date, and including all Claims and debts of the kind specified in §§ 502(g),

502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under § 501, such Claim is Allowed under § 502, or the holder of such Claim has accepted this Plan. This Plan does not discharge any Tort Claims based on Abuse, the first incident of which occurred after the Petition Date.

### 19.2 Vesting.

Except as otherwise expressly provided in this Plan or in the Confirmation Order, on the Effective Date, and subject to the terms of the Promissory Note and the Mortgage, the Reorganized Debtor will be vested with all of the assets, including all property of the Estate free and clear of all Claims, liens, encumbrances, charges and other Interests of creditors. The Reorganized Debtor will, thereafter, hold, use, dispose, or otherwise deal with such property, operate its business and conduct its ministry and mission free of any restrictions imposed by the Bankruptcy Code or by the Court. All Retained Claims are hereby preserved for the benefit of the Reorganized Debtor. Unclaimed Property shall vest in the Reorganized Debtor.

### 19.3 Exculpation and Limitation of Liability.

**Except as expressly provided in this Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, any claimant, any other party in interest, or any of their respective Representatives, financial advisors, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of this Plan, or the negotiation or approval of the Insurer Settlement Agreements, or the administration of this Plan or of the property to be distributed under this Plan or the ASF Settlement Trust created hereunder, except for their willful misconduct or gross negligence and in all respects such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan or the Bankruptcy Case. Without limiting the generality of the foregoing, the Debtor, its financial advisors, attorneys, and other professionals shall be entitled to and granted the benefits of § 1125(e).**

### 19.4 Limitation of Liability.

The Protected Parties, the ASF Settlement Trust, the ASF Settlement Trustee, and professionals employed by the foregoing shall not have any liability to any Entity, including any governmental entity or insurer, on account of payments made to a Tort Claimant or a holder of a Channeled Claim, including any liability under the MSPA.

### 19.5 Channeling Injunction.

In consideration of (a)(1) completion of the undertakings of the Protected Parties hereunder and (2) other consideration, and (b)(1) to further preserve and promote the agreements between and among the ASF Participating Parties, the Settling Insurers, and the Debtor, which also benefit the Tort Claimants and Unknown Tort Claimants and (2) the protections afforded the Protected Parties under the Bankruptcy Code, including § 105:

19.5.1        Any and all Channeled Claims that are neither Unknown Tort Claims nor arise from the same facts and circumstances that could give rise to an Unknown Tort Claim are channeled into the ASF Settlement Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under Tort Claims Allocation Protocol, as the sole and exclusive remedy for all holders of Channeled Claims that are not Unknown Tort Claims. Any and all Channeled Claims that are Class 4 Unknown Tort Claims, as well as any Channeled Claims that arise from the same set of facts and circumstances as an Unknown Tort Claim are channeled into the Unknown Tort Claims Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Unknown Tort Claims Allocation Protocol as the sole and exclusive remedy for all holders of Channeled Claims that are channeled to the Unknown Tort Claims Trust.

19.5.2        **All Entities** who **have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred and restrained from taking any of the following action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim, including:**

**(a)        commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties;**

**(b)        enforcing, attaching, collecting or recovering, by any manner or means, from any of the Protected Parties, or from the property of any of the Protected Parties, with respect to any such Channeled Claim, any judgment, Award, decree, or order adverse to any of the Protected Parties;**

**(c)        except as provided in or with respect to the Promissory Note and/or the Mortgage, creating, perfecting or enforcing any lien of any kind against any Protected Parties, or the property of any of the Protected Parties with respect to any such Channeled Claim;**

**(d)        asserting, implementing or effectuating any Channeled Claim of any kind against:**

**(i) any obligation due any of the Protected Parties;**

**(ii) any Protected Party; or**

**(iii) the property of any Protected Party.**

**(e)        taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of this Plan; and**

**(f)        except as provided in or with respect to the Promissory Note and/or the Mortgage, asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of any of the Protected Parties.**

**19.5.3** The provisions of this Section 19.5 will further operate, as between all Protected Parties only, as a mutual release of all Claims relating to the Debtor, the Claims against the Debtor, the Certificates, and the Insurance Policies, which any Protected Party may have against another Protected Party except as may specifically be reserved or set forth in a Participating Party Agreement, an Insurer Settlement Agreement, a Participating Religious Order Settlement Agreement or this Plan. The foregoing channeling provisions are an integral part of this Plan and are essential to its implementation. For purposes of Section 19.5 only, the definition of Protected Parties does not include the Committee and each of its members; the Committee's Professionals; the Unknown Claims Representative, the Claims Reviewer, the Unknown Claims Reviewer, and all of their respective present or former members, managers, officers, directors, employees, Representatives, attorneys, and agents acting in such capacity. Notwithstanding anything to the contrary herein, loans among ASF Participating Parties are not forgiven hereby.

**19.6 Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers and Insured Entities.**

**Pursuant to §§ 105(a) and 363 and in consideration of the completed performance of the undertakings of the Settling Insurers pursuant to the Insurer Settlement Agreements, including any of the Settling Insurers' purchases of Insurance Policies and Interests in the Pre-Petition Insurance Coverage Agreements free and clear of all Interests pursuant to § 363(f), any and all Entities who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, all Entities holding a Claim, governmental, tax and regulatory authorities, lenders, trade and other creditors, Archdiocese Parties, Tort Claimants, Unknown Tort Claimants, holders of Channeled Claims, perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to this Plan, the Insurer Settlement Agreements, and the Participating Religious Order Agreements) against any of the Protected Parties, Insured Entities, or the Certificates or Insurance Policies, which, directly or indirectly, relate to, any of the Certificates or Insurance Policies, any Channeled Claims, any Tort Claims or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers, Insured Entities, and/or Certificates or the Insurance Policies, including:**

      **(a) Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

      **(b) Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, Award, decree or order against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

      **(c) Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities;**

(d)    Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the Insured Entities or the property of the Settling Insurers or the Insured Entities; and,

(e)    Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of this Plan.

**19.7    Term of Injunctions or Stays and Confirmation of Settlements.**

**The foregoing discharge and injunctive provisions of Article 19 of the Plan are an integral part of this Plan and are essential to its implementation, and not subject to alteration or termination without the consent of the Protected Parties. On the Effective Date, the injunctions provided for in this Plan shall be deemed issued, entered, valid and enforceable according to their terms and shall be permanent and irrevocable, provided however, that any Participating Religious Order or liability carrier that has agreed to make a Participating Religious Order Contribution as set forth in Section 10 above that has not paid its share of such contribution shall not be entitled to the protections of the Channeling Injunction except to the extent a liability carrier is entitled to such protections based solely on its status as a Protected Party pursuant to an Insurer Settlement Agreement. All injunctions and/or stays provided for in this Plan, the injunctive provisions of §§ 524 and 1141, and all injunctions or stays protecting any Settling Insurer that has participated in a buy back or has purchased its Insurance Policies in a § 363 sale, are permanent and will remain in full force and effect following the Effective Date and are not subject to being vacated or modified. Any and all currently pending court proceedings arising from Channeled Claims, the continuation of which would violate the provisions of this Article, shall be dismissed with prejudice. Nothing herein shall affect the ASF Settlement Trustee's rights to enforce the Promissory Note and the Mortgage.**

**19.8    Insurer Settlement Agreements, Participating Party Agreements, and the Participating Religious Order Settlement Agreement s Incorporated into the Confirmed Plan.**

On the Effective Date, the Insurer Settlement Agreements, Participating Party Agreements, and the Participating Religious Order Settlement Agreements, if and to the extent approved by Final Orders, and the Final Orders approving them, shall be deemed incorporated into the confirmed Plan. Conflicts between the Plan and the Participating Party Agreements, the Insurer Settlement Agreements or the Participating Religious Order Settlement Agreements or the Final Orders approving them shall be controlled by the Plan.

**19.9    No Release of Criminal Liability.**

The releases, injunctions, and exculpations afforded by this Plan do not release, enjoin, or exculpate any Person or Entity of or from any criminal liability or prosecution, whatsoever.

### SECTION 20: MODIFICATION OF PLAN

**20.1    Non-Material Modification of Plan.**

53

The Plan may be modified by the Debtor or the Reorganized Debtor (as applicable) from time to time in accordance with, and pursuant to, § 1127, provided that such modifications also comply with the Insurer Settlement Agreements and the Participating Party Agreements. The Plan may be modified by the Debtor at any time before the Confirmation Date, provided that this Plan, as modified, meets the requirements of §§ 1122 and 1123, and the Debtor has complied with § 1125. Each holder of a Claim that has accepted this Plan will be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not adversely change the treatment of the Claim of such holder. Each holder of a Claim that votes in favor of this Plan authorizes the Debtor to modify, at any time prior to the Effective Date and without the requirement of further solicitation, the treatment provided to the Class of Claims such Claims are classified in, provided that the Bankruptcy Court determines that such modification is not material.

**20.2   Additional Documentation; Non-Material Modifications of Plan Documents.**

From and after the Effective Date, the ASF Settlement Trustee, the Reorganized Debtor, ASF Participating Parties and the Settling Insurers shall be authorized to enter into, execute, adopt, deliver and/or implement all contracts, leases, instruments, releases, and other agreements or documents necessary to effectuate or memorialize the settlements contained in this Plan, and Plan Documents without further order of the Bankruptcy Court. Additionally, the ASF Settlement Trustee, the Reorganized Debtor, ASF Participating Parties and the Settling Insurers may make technical and/or immaterial alterations, amendments, modifications or supplements to the terms of any settlement, subject to Bankruptcy Court approval, provided that the amendment or modification does not materially and adversely change the treatment of any holder of any Claim without the prior written agreement of such holder. A Class of Claims that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, modified or supplemented hereunder, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claims within such Class.

**20.3   No Re-Solicitation**.

An order of the Bankruptcy Court approving any amendment or modification made to this Plan shall constitute an order in aid of consummation of this Plan and shall not require the re-solicitation of votes on this Plan.

## SECTION 21: RETENTION OF JURISDICTION

**21.1**   Notwithstanding confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

**21.1.1   In General.** The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor, by the Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Administrative Claims for Professional Charges. The Bankruptcy Court will not retain or obtain jurisdiction to determine any internal disputes between or among the Debtor (or the Archdiocese), a Parish, or any other related Entity that, under applicable Canon Law, would be

determined in a specialized religious court. Notwithstanding the foregoing, the Bankruptcy Court will not have jurisdiction to review the Claims Administrator's determination or evaluation of Class 3 Tort Claims, Class 4 Tort Claims, or Channeled Claims, or the allocations made from the ASF Settlement Trust or the Unknown Tort Claims Trust on account of such Claims.

**21.1.2** **Plan Disputes and Enforcement.** Subject to the limitations set forth in this Plan, the Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provision of this Plan. The Bankruptcy Court will also retain jurisdiction to enforce any provisions of this Plan and any and all Plan Documents, including, but not limited to, any actions to enforce the discharge, releases and injunctions provided for in Section 19 of this Plan. The Bankruptcy Court will also retain jurisdiction over any matter relating to the implementation, effectuation, and/or consummation of this Plan including enforcement of the Promissory Note and Mortgage. The Debtor and Reorganized Debtor, as the case may be, consent to the jurisdiction of and venue in the Bankruptcy Court to enter a Final Order with respect to any action by the ASF Settlement Trust to enforce the terms of the Promissory Note and the ASF Settlement Trust.

**21.1.3** **Further Orders.** Subject to the limitations set forth in Section 21.1.1 above, the Bankruptcy Court will retain jurisdiction to facilitate the performance of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate order regarding enforcement of this Plan, the Plan Documents and any provisions thereof, and to protect the Debtor, the Reorganized Debtor, and the Protected Parties from actions prohibited under this Plan. In addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to this Plan (other than Tort Claims, Channeled Claims, or Unknown Tort Claims, except to the extent that any retained jurisdiction is consistent with this Plan, and the ASF Settlement Trust) to which an objection has not been filed prior to the Effective Date.

**21.1.4** **Retained Debtor Claims.** Subject to the limitations set forth in Section 21.1.1 above, and to the extent the Bankruptcy Court would otherwise have jurisdiction over such Claims, the Bankruptcy Court will retain jurisdiction with respect to any Claims not otherwise compromised or settled by the Debtor prior to the Effective Date.

**21.1.5** **Post-Confirmation Agreements.** The Bankruptcy Court will retain jurisdiction to approve and enter appropriate orders regarding any Participating Party Agreements entered into between the ASF Settlement Trust, the Debtor (or Reorganized Debtor) and a Participating Party or Participating Religious Order, whereupon such settling parties shall have the obligations and rights set forth in this Plan, the Confirmation Order and Participating Party Agreements or Participating Religious Order Settlement Agreements.

**21.1.6** **Final Decree.** The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Bankruptcy Case; provided, however, that the Bankruptcy Court will retain jurisdiction to enter an order terminating the ASF Settlement Trust and discharging the ASF Settlement Trustee in accordance with the terms of the ASF Settlement Trust notwithstanding the issuance of the final decree and closing of the Bankruptcy Case and without the necessity of reopening the Bankruptcy Case.

21.1.7 **Appeals.** In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and this Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding this Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtor.

21.1.8 **Executory Contracts.** The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

21.1.9 **Claims.** Subject to the limitations set forth in Section 21.1.1 above, the Bankruptcy Court will retain jurisdiction:

(a) To hear and determine any Claim or cause of action by or against the Debtor, the Debtor's officers, officials, employees or Representatives, the Chapter 11 Professionals, the Committee members in their capacity as such, and the Reorganized Debtor;

(b) To adjudicate any causes of action or other proceeding currently pending or otherwise referenced here or elsewhere in this Plan, including, but not limited to, the adjudication of the Retained Claims and any and all "core proceedings" under 28 U.S.C. § 157(b) which may be pertinent to the Bankruptcy Case and which the Debtor or the Reorganized Debtor may deem appropriate to initiate and prosecute before the Bankruptcy Court in aid of the implementation of this Plan; and

(c) To approve any settlements between or among the Debtor, the Committee, the ASF Settlement Trustee and the party against whom the Debtor, the Committee and/or the ASF Settlement Trustee asserts a Retained Claim.

21.1.10 **Modification of this Plan.** The Bankruptcy Court will retain jurisdiction to modify this Plan.

21.1.11 **Failure of Court to Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including matters set forth in this Section 20, such lack of jurisdiction will not diminish, control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## SECTION 22: REORGANIZATION OF DEBTOR

**22.1 Continued Corporate Existence of the Archdiocese and Operation of the Reorganized Debtor.**

The Archdiocese will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all powers of a corporation sole under the laws of the State of New Mexico and without prejudice to any right to alter or terminate such existence under applicable state law but subject to applicable Canon Law. On and after the Effective Date, the Archdiocese

56

may operate its businesses and carry on the ministry and the mission of the Roman Catholic Church and may use, acquire, or dispose of property, and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

### 22.2 Management of Reorganized Debtor.

From and after the Effective Date, the Reorganized Debtor will continue to be managed in accordance with the principles of Canon Law and applicable state law.

## SECTION 23: GENERAL PROVISIONS

### 23.1 Election Pursuant to § 1129(b).

If necessary, the Debtor hereby requests confirmation of this Plan pursuant to § 1129(b) if the requirements of all provisions of § 1129(a), except Section (a)(8) thereof, are met with regard to this Plan.

### 23.2 Post-Confirmation Coverage.

Notwithstanding any provision of this Plan or the Confirmation Order to the contrary, the terms of the Catholic Mutual Settlement Agreement and the Certificates, as amended by such settlement agreement, shall govern the coverage, limits, declarations, terms and conditions of liability coverage of the Archdiocese and Reorganized Debtor by Catholic Mutual from and after the Effective Date; *provided, however*, that Catholic Mutual's coverage of Channeled Claims is settled, extinguished and excluded by such settlement agreement and this Plan.

### 23.3 Extension of Payment Dates.

If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

### 23.4 Extension of Deadlines. The Court shall retain jurisdiction to approve an extension of any deadline provided in the Plan (i) upon motion of Debtor prior to the Effective Date; (ii) upon motion of Reorganized Debtor as to matters that do not materially affect Tort Claimants after the Effective Date; and (iii) as to matters that may materially affect Tort Claimants, on motion of the ASF Settlement Trustee after the Effective Date. The granting of, or refusal to grant, one extension shall not preclude the Court's consideration of additional extensions. Notwithstanding the foregoing, the maturity date of the Promissory Note and any deadlines associated with enforcement of the Mortgage shall not be extended by the Court without express, written consent of the Committee or the ASF Settlement Trustee.

### 23.5 Notices.

Any notice required or permitted to be provided under this Plan will be in writing and served by regular first class mail, electronic mail, overnight delivery, or hand-delivery.

### 23.6 Closing of the Bankruptcy Case.

At such time as this Plan has been fully administered and/or this Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order showing that this Plan has been fully administered or substantially consummated upon notice to only those creditors and parties that, after the Effective Date, have specifically requested, after which an order approving the Reorganized Debtor's final report and closing the Bankruptcy Case may be entered.

### 23.7 Interest.

Whenever interest is to be computed under this Plan, interest will be simple interest and not compounded.

### 23.8 Additional Assurances.

The Debtor, the Reorganized Debtor, the ASF Settlement Trustee and the creditors holding Claims herein, including Tort Claims and Unknown Tort Claims will execute such other further documents as are necessary to implement any of the provisions of this Plan.

### 23.9 Withdrawal of Plan.

The Plan may be withdrawn or revoked prior to entry of the Confirmation Order in which event the provisions of Sections 23.14 will apply.

### 23.10 Severability and Reformation.

It is the Debtor's intention to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing this Plan. Therefore, if any provision of this Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision may be modified with the consent of the Debtor, the ASF Participating Parties, the Committee, and the Settling Insurers, provided, however, that nothing contained in this Section will prevent the Debtor from modifying this Plan in any manner whatsoever in accordance with and as set forth in Section 20.1 of this Plan and the Bankruptcy Code.

### 23.11 Prohibition Against Prepayment Penalties.

If the Debtor or the Reorganized Debtor chooses, in its sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under this Plan, the Debtor or the Reorganized Debtor will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court.

### 23.12 Fractional Dollars.

Notwithstanding any other provision of this Plan, no payments or Distributions under this Plan of or on account of fractions of dollars will be made. When any payment or Distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or Distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

Case 18-13027-t11   Doc 1251-2 Filed 11/03/22 Entered 11/03/22 16:54:54 Page 63 of 241

**23.13   Payment of Statutory Fees and Filing of Quarterly Reports.**

All fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed by the Debtor or Reorganized Debtor in accordance with applicable bankruptcy law.

**23.14   Reservation of Rights.**

Except as expressly provided herein, this Plan will have no force or effect unless the Confirmation Order is entered by the Bankruptcy Court and the Effective Date has occurred. None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan will be nor will it be deemed to be an admission or waiver of any rights of the Debtor or the Committee with respect to the holders of Claims prior to the Effective Date or with respect to any matter which is pending before or may come before the Bankruptcy Court or any other court for determination in the Bankruptcy Case or any other case.

**23.15   No Professional Fees or Expenses.**

No professional fees or expenses will be paid by the Debtor or the Reorganized Debtor with respect to any Claim except as specified in this Plan or as Allowed by Final Order of the Court.

**23.16   Dissolution of Committee.**

Upon the occurrence of the Effective Date, the Committee will be dissolved; provided, however, that Committee may continue to exist after the Effective Date with respect to any and all applications for Professional fees and expenses but not for any other purpose.

**23.17   Headings.**

The headings of the articles, paragraphs, and sections of this Plan are inserted for convenience only and will not affect the interpretation hereof.

**23.18   Section 1146 Exemption.**

Pursuant to § 1146(c), any transfers of property pursuant hereto will not be subject to any document, recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**23.19   Successors and Assigns.**

The rights, benefits and obligations of any Entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heirs, executors, administrator, successors or assigns of such Entity.

[SIGNATURE PAGE FOLLOWS]

SUBMITTED this 3rd day of November, 2022.

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
corporation sole,

By: _Most Reverend John C. Wester_
    Most Reverend John C. Wester

Prepared and Submitted By:

*/s/submitted electronically 11/03/2022*
Ford Elsaesser
Bruce A. Anderson
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

and

*/s/ submitted electronically 11/03/2022*
Thomas D. Walker
WALKER & ASSOCIATES, P.C.
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com
*Counsel for Debtor*

EXHIBIT A

ABUSE DOCUMENTS MEMORANDUM OF AGREEMENT

# Memorandum of Agreement

This Memorandum of Agreement is entered into this 20 day of ~~March~~ *April*, 2020, by and between the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico Corporation Sole (the "Archdiocese"), as Debtor in Possession in the Chapter 11 proceeding pending in the United States Bankruptcy Court for the District of New Mexico styled: *In re: Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole,* Case No. 11-13027-t11 (the "bankruptcy proceeding"), the Official Unsecured Creditors Committee in the Archdiocese's bankruptcy proceeding (the "Creditors Committee," as further defined below), and the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences (CULLS)'s Center for Southwest Research and Special Collections ("CSWR"), the Archdiocese, Creditors Committee and CSWR hereinafter collectively referred to as the "Parties", for the purposes set forth below.

## RECITALS

**WHEREAS** the Archdiocese and the Creditors Committee desire to create a publicly available archive of "Abuse Documents" as that term is defined herein and in Exhibit "A" hereto, as an element of the Archdiocese's plan of reorganization in the bankruptcy proceeding; and

**WHEREAS** the Archdiocese, through its Archbishop, the Most Reverend John C. Wester, has committed to public release of the Abuse Documents to the extent allowable by law; and

**WHEREAS** the Archdiocese and the Creditor's Committee acknowledge that the Abuse Documents contain information considered privileged and confidential by various statutes and regulations, including without limitation, the Code of Federal Regulations regarding information considered privileged and confidential by the Health Insurance Portability and Accountability Act, the State of New Mexico's Personnel Act, the Mental Health and Developmental Disabilities, and the Children's Mental Health and Developmental Disabilities Acts and the United States Tax Code; and

**WHEREAS** the Archdiocese and the Creditors Committee further acknowledge that the Abuse Documents contain the names and other identifying information of victims of clergy sexual abuse, their family members and other third parties whose privacy interests may be violated by an unfettered public release of the Abuse Documents; and

**WHEREAS** the Archdiocese and the Creditors Committee are mutually committed to protecting the names, identifying information and privacy interests of victims of sexual abuse, their family members and others unless such individuals specifically authorize the release of such information as more fully set forth in a May 1, 2019 Agreement Regarding Confidentiality of Documents Provided Informally in the Bankruptcy Case in the Context of Abuse Documents

Already Provided in State Tort Litigation (the "Confidentiality Agreement" attached hereto as Exhibit "A"); and

**WHEREAS** the Archdiocese, in consultation with the Creditors Committee, has identified and retained vendors approved by the Bankruptcy Court to review and redact the Abuse Documents in accordance with criteria mutually agreed upon by the Archdiocese and the Creditors Committee, (attached hereto as Exhibit "B"), and at the expense of the Archdiocese's bankruptcy estate; and

**WHEREAS** subject to the approval of the Bankruptcy Court, the Archdiocese and the Creditors Committee propose that CSWR host and administer the Abuse Documents Archive from CSWR's offices in the University of New Mexico Zimmerman Library in Albuquerque, New Mexico in accordance with the terms and conditions set forth below.

**NOW THEREFORE**, the Parties propose and agree and understand as follows:

**1.      DEFINITIONS**

1.01      As used herein, "Abuse Documents" shall include documents involving or relating to allegations of childhood sexual abuse, or relating to the supervision of alleged perpetrators or their agency with Debtor, by the Debtor's clergy, employees or agents, including but not limited to clergy personnel files, other perpetrator personnel files, victim files, investigative files, investigative transcripts, depositions of the Debtor's employees and/or agents, depositions of bishops, depositions of witnesses or victims with information relevant to allegations of clergy sexual misconduct,  clergy risk assessments, minutes of Personnel Board meetings, minutes of Permanent Review Board meetings, John Jay College surveys, CARA surveys, assignment records, clergy curriculum vitae, seminary records, correspondence, and various policies and procedures regarding the handling of allegations of clergy sexual misconduct, and also include interrogatory answers, deposition transcripts, statements given to investigators or law enforcement, and under oath "proof of claim forms" in this Bankruptcy case, or statements submitted or provided at any time by any victim, so long as the submission is redacted as to victim's identities and identifying information, and otherwise meets with agreed redaction protocol.

1.02      As used herein "Abuse Documents Archive" shall mean a repository created, organized, maintained and administered by CSWR to allow public access to Abuse Documents that have been reviewed, redacted and produced to CSWR in accordance with the terms of this Memorandum Agreement.

1.02      As used herein, "Creditors Committee" shall refer to Rene Kepler, Charles Paez, Reyes Romero, Charles Lujan, Ruben LaRiva, Carlos Montoya, Michael Lucero, Phillip Romero and Mark Berg, all of whom were selected and appointed by the United States Trustee's Office and the Court in the Archdiocese's Chapter 11 proceeding.

1.03      As used herein, "Opt In Procedure" means a process whereby a victim of clergy sexual abuse has completed and signed an "Opt In" form prepared by the Creditors Committee, (as

modified, if necessary, by law firms representing victims), designating a specified level of redaction or that no redaction be applied to Abuse Documents containing information and details of that victim's identity and/or sexual abuse. Explicit email exchanges between attorneys and clients can suffice to "Opt In" in the discretion of the victim's private state tort counsel in lieu of a signed form, if kept in the digital "Opt In" files, to establish assent to "opt in". In the absence of a signed "Opt In" form (or express confirmatory email), the presumption is that a victim has opted out. His or her victim file, or proof of claim form, or interrogatory answers or depositions, will not be included in the Abuse Documents Archives if a victim has not expressly opted in.

2. **REDACTION OF ABUSE DOCUMENTS**

2.01    The Archdiocese and the Creditors Committee shall be solely responsible for the appropriate redactions of the Abuse Documents before such documents are delivered to CSWR. Such redactions shall be made in accordance with the Confidentiality Agreement attached hereto as Exhibit "A", the Opt-In Procedures described above, and as reflected in the Redaction Protocol attached hereto as Exhibit "B".

2.02    CSWR shall not be responsible for confirming the accuracy or completeness of such redactions upon receipt of Abuse Documents from the other Parties.

2.03    For purposes of reference and review by CSWR, the Archdiocese and the Creditors Committee shall prepare a production log containing the date of the production, number of pages, bates number ranges where applicable, a brief description of the categories of documents being produced, and the format of the documents, i.e. pdf, word, paper, photos, etc.

3. **CREATION OF ABUSE DOCUMENTS ARCHIVE**

3.01    Subject to approval by the Parties and the Bankruptcy Court and counsel for the University of New Mexico, Tomas Jaehn, associate professor at the University of New Mexico and Director of CSWR, will serve as the supervisory archivist for the Abuse Documents Archive. Professor Jaehn proposes to nationally advertise for and hire a professional archivist (the "project archivist") on a full time basis (40 hours per week) for a two-year period to create and organize the Abuse Documents Archive from the redacted documents produced by the other Parties.

3.02    Subject to approval by the Parties, the Bankruptcy Court and counsel for the University of New Mexico, Professor Jaehn agrees to pay the project archivist a salary of $47,000.00 per year, plus benefits, for a project total of approximately $106,000.00. The Archdiocese's bankruptcy estate agrees to pay a total of $106,000.00 to CSWR to cover the expense related to the project archivist.

3.03    CSWR shall create and organize the Abuse Documents Archive in its professional discretion and consistent with the Core Values and best practices of American Archivists as promulgated by the Society of American Archivists. The Parties shall have an opportunity to submit comments and suggestions to CSWR, which CSWR shall consider before finalizing its plan of organization of documents. Annual costs of maintenance of the Abuse Documents

3

Archive will be the responsibility of CSWR, and not the parties in the Chapter 11 bankruptcy proceeding.

3.04    The Archdiocese and the Creditors Committee shall give CSWR the right to reproduce, digitize, adapt, publish or display the Abuse Documents, and fair use rights of CSWR and other users of the Abuse Documents as provided by U.S. Copyright Law, Title 17 §107 ("Fair Use Rights"). The Archdiocese and the Creditors Committee understand that title to donated copies of materials passes to the University of New Mexico Libraries, CSWR.

3.05    CSWR is authorized to dispose of any duplicate materials which it determines have no permanent value or historical interest, provided that CSWR's disposition of the materials is consistent with the requirements of the Confidentiality Agreement dated May 1, 2019 attached hereto as Exhibit "A".

3.06    In any Plan of Reorganization that either or both of them may submit to the Bankruptcy Court, the Archdiocese and the Creditors Committee shall include provisions which immunize and exculpate CSWR and the redaction vendors to the fullest extent allowable under the Bankruptcy Code or otherwise, regarding any omission or failure by any Party to comply with the terms of this Agreement (including but not limited to any claims made by individuals whose information is included in the Abuse Documents). It is the intent of the Parties that Plan Approval in the Chapter 11 case will immunize and exculpate the archivists, the redaction vendors, the University, the individual Creditors Committee members, and the Debtor, from any potential claims arising from the public release of the redacted "Abuse Documents", except for gross negligence or intentional misconduct. The Parties will consider language reflecting riders to any existing Errors and Omissions policies, or purchase of such policies, when crafting a Chapter 11 Plan.

3.07    This Memorandum Agreement will become effective as of the date listed above and will continue for a term of one (1) year after the confirmation by the Court of a Chapter 11 Plan of Reorganization. The Parties may extend the term of this MOA upon written agreement of the Parties. Signatures on different dates and via email are contemplated, all to be attached to the final document.

3.08    This Memorandum Agreement will be construed, interpreted, governed and enforced in accordance with the statutes, judicial decisions, and other laws of the State of New Mexico, or within the Bankruptcy Court for the duration of this Chapter 11 case.

Parties:

_James Paul Holloway_      4/7/2020

James Paul Holloway      Date
Provost & Executive Vice President for Academic Affairs
University of New Mexico

_Richard W. Clement_      4/2/2020

Richard W. Clement      Date
Dean of College of University Libraries and Learning Sciences
University of New Mexico

_Tomas Jaehn_      4. 7 . 2020

Tomas Jaehn      Date
Director of Center for Southwest Research & Special Collections
College of University Libraries and Learning Sciences
University of New Mexico

     4/20/2020

Charles Paez, Chairperson      Date
Committee of Unsecured Creditors
D.N.M. Bankruptcy Case 18-13027-t11

_John C. Wester_      4/16/2020

John C. Wester, Archbishop      Date
Archdiocese of Santa Fe
Debtor, D.N.M. Bankrutpcy Case 18-13027-t11

     4-16-2020

Ford Elsaesser      Date
Bankruptcy Counsel for the Archdiocese of Santa Fe

_James Stang_      4/20/2020

James I. Stang      Date
Bankruptcy Counsel for the Unsecured Creditors Committee

## AGREEMENT REGARDING CONFIDENTIALITY OF DOCUMENTS
## PROVIDED INFORMALLY IN THE BANKRUPTCY CASE
## IN THE CONTEXT OF 'ABUSE DOCUMENTS' ALREADY PROVIDED
## IN STATE TORT LITIGATION

This Confidentiality Agreement (hereafter "Agreement") is entered into this 1st day of May 2019, in the matter styled *In re: ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE,* Case No. 18-13027-t11 (the "Case"), in the United States Bankruptcy Court for the District of New Mexico (the "Bankruptcy Court"), by and between the Debtor-in-Possession, the Roman Catholic Church of the Archdiocese of Santa Fe and its Archbishop John Wester (hereafter "Debtor"), and the Unsecured Creditor's Committee consisting of Rene Kepler, Charles Paez, Reyes Romero, Charles Lujan, Ruben LaRiva, Carlos Montoya, Michael Lucero, Phillip Romero and Mark Berg, (the "Committee") to facilitate the sharing of information by the Debtor with the Committee, (Debtor and the Committee are hereafter collectively referred to as the "Parties.")

I.      Recitals

WHEREAS the Committee is requesting information and documents that the Debtor may designate as confidential information as set forth in Bankruptcy Code sec. 109(b).

WHEREAS Debtor does not wish for such information and documents designated by it as confidential information to be subject to public disclosure unless and until the Bankruptcy Court determines that the information and documents are entitled to protection under Bankruptcy Code sec. 109(b); and

WHEREAS Debtor agrees to provide such information and documents to the Committee, its members and their respective counsel and representatives without the need for formal discovery provided that such information and documents designated by the Debtor as "confidential" shall not be further re-disclosed except as authorized by order of the Bankruptcy Court or otherwise required by law.

WHEREAS there are other documents involving or relating to allegations of childhood sexual abuse, or relating to the supervision of alleged perpetrators or their agency with Debtor, by the Debtor's clergy, employees or agents, including but not limited to clergy personnel files, other perpetrator personnel files, victim files, investigative files, investigative transcripts, depositions of the Debtor's employees and/or agents, depositions of bishops, depositions of witnesses or victims with information relevant to allegations of clergy sexual misconduct, clergy risk assessments, minutes of Personnel Board meetings, minutes of Permanent Review Board meetings, John Jay College surveys, CARA surveys, assignment records, clergy curriculum vitae, seminary records, correspondence, and various policies and procedures regarding the handling of allegations of clergy sexual misconduct, or the so-called "priest abuse crisis" (the "Abuse Documents");

WHEREAS the Parties acknowledge certain Abuse Documents have been produced in state and Federal litigation predating the Debtor's bankruptcy petition, and the Parties intend that the term "Abuse Documents" includes all documents produced by the Debtor in any


EXHIBIT
A

litigation where any alleged victim brought claims of childhood sexual abuse by the Debtor's clergy employees, or agent;

WHEREAS the Committee also has requested Abuse Documents from the Debtor;

WHEREAS the Debtor has already agreed, through Archbishop John C. Wester, testifying under oath in the Case, that the Debtor will "make public all of the documents produced in the state tort lawsuits to the state tort lawyers so long as the victims' names are redacted";

WHEREAS Debtor has already agreed, through Archbishop John C. Wester, testifying under oath in the Case, that all Abuse Documents in Debtor's possession or control shall be made publicly available to the extent allowable by law;

WHEREAS the Debtor has already agreed, through Archbishop John C. Wester, testifying under oath in the Case, to provide and/or pay for paralegals or other professionals to handle the task of redacting victims' names and identifying information;

WHEREAS the Debtor reaffirms Archbishop John C. Wester's testimonial commitment to the public release of the Abuse Documents through this Case to the extent allowable by law, including, but not limited to, through cooperation with the Committee to establish a suitable archive of such records for public accessibility,

Whereas the Debtor and the Committee acknowledge that in certain limited instances portions of the Abuse Documents contain information considered privileged and confidential, e.g. by statute and the Code of Federal Regulations, including information considered privileged and confidential by the Health Insurance Portability and Accountability Act, the State of New Mexico Personnel Act, and the United States Tax Code  and the victims' names and identifying information,

WHEREAS Debtor and the' Committee are mutually committed to protecting the names and identifying of all victims of sexual violence unless said victims specifically authorize the release of their identity in this Case;

NOW THEREFORE, in consideration of the premises, conditions and mutual promises contained herein, the Parties agree as follows:

II.     Confidentiality Agreement Regarding Abuse Documents

1     Any Abuse Documents released pursuant to this agreement shall be redacted for the survivor's personally identifying information (including but not necessarily limited to name, address, social security number, date of birth, telephone numbers and email addresses) and information protected under HIPPA and applicable state law; provided that the Debtor and the Committee shall negotiate to identify specific information categories that should be redacted, including but not limited to those based on HIPPA and applicable state law, and to negotiate that certain documents, e.g. published media accounts, may not require redaction because they already are generally available to the public in unredacted format. The Debtor and the Committee acknowledge that certain Abuse Documents may contain other personally identifying information (e.g. family members' names, addresses and other location information, schools and

CONFIDENTIALITY AGREEMENT
PAGE 2
DOCS_SF:99772.9 05066/002

workplaces, a parent's occupation in small town, etc.) and they agree to negotiate to address the protection of the survivors' privacy. If the Debtor and the Committee cannot reach agreement regarding the specific information categories that should be redacted within forty-five (45) days after the date of this agreement, either may apply to the Bankruptcy Court for resolution of the dispute and file such application with a request for shortened notice. The Committee and the Debtor waive the right to appeal any Bankruptcy Court order resolving the dispute over the scope of the redactions.

        2      Within sixty (60) days of this agreement, the Debtor shall seek to employ a third party (other than counsel to the Debtor)(the "Vendor") to redact the Abuse Documents as an administrative expense of the estate; provided that the Debtor and the Committee shall use their best faith efforts to agree upon the identity of the Vendor and terms and conditions of its employment (including the possibility of using a test run of documents to ascertain the Vendor's competency and feasibility of the scope of the information to be redacted). The Committee and the Debtor will exchange names of possible Vendors within ten (10) days of this Agreement and will continue to work in good faith to agree upon a Vendor. If the Debtor and the Committee cannot reach agreement or the Debtor fails to file such an employment application, the Committee may propose an alternative Vendor. If the Committee and the Debtor do not agree on a Vendor within 60 days of this Agreement, the Committee may apply to the Bankruptcy Court for approval of employment of a Vendor on shortened notice. The Committee and the Debtor waive the right to appeal any Bankruptcy Court order authorizing the employment of the Vendor. The Committee and the Debtor will work in good faith to determine that the Vendor is qualified to perform the redactions, including test redactions that are satisfactory to the Debtor and the Committee or, alternatively, the Bankruptcy Court. The Debtor shall promptly deliver the Abuse Documents to the Vendor upon Bankruptcy Court approval of its employment.

        3      The Debtor shall not seek to compel mediation with the Committee or any abuse survivor before employment of a Vendor is approved by the Court.

        4      The Debtor shall not seek entry of a confirmation order of a plan of reorganization until the Vendor has either completed the redaction of all Abuse Documents, or the Committee and the Debtor agree that satisfactory progress is being made towards a specific target date for completion of the redactions.

        5      The Debtor shall not propose and shall not support the confirmation of a plan of reorganization that does not include the release of the redacted Abuse Documents to the Committee and/or any party empowered under the plan to receive the redacted Abuse Documents on the effective date of such plan or on such other date to which the Committee and the Debtor agree. The plan shall provide that the Committee or such third party, in their sole and absolute discretion can publish the redacted Abuse Documents in any manner that makes them available to the general public.

        6      The Committee acknowledges that a projected completion date of the Vendor's work could be beyond the timetable for distribution of funds to its constituency pursuant to a consensual reorganization plan. The Committee does not intend to delay the distribution of funds to its constituency based on the completion of the redaction process; however, the Committee does not intend to modify the timetable set forth in paragraphs 1-3 above.

CONFIDENTIALITY AGREEMENT
PAGE 3
DOCS_SF:99772.9 05066/002

**III.**     <u>Confidentiality Agreement Regarding Other Documents</u>

        1      All documents, other than Abuse Documents, ("Other Documents") shall be produced in the form of a Dropbox, for which privileges will be granted to the Committee counsel to share with its members and their counsel of record only unless otherwise ordered or authorized by the Bankruptcy Court.

        2      The Committee counsel and the members of the Committee shall keep all Other Documents confidential to the extent the Other Documents are designated by the Debtor as confidential and shall not re-disclose the contents, terms or conditions of any such Other Documents by any means, including but not limited to forwarding, copying, transmittal by electronic or other imaging methods, to anyone not a member of the Committee without the express written permission of counsel for Debtor or order of the Bankruptcy Court. For avoidance of doubt, the Committee members may disclose the Other Documents to their counsel of record in the Bankruptcy Court or in their pre-petition litigation, and such counsel shall be subject to the terms of this Agreement.

        3      For the purposes of the Debtor's designation of Other Documents as "confidential", the following is the definition of confidentiality:

              a.      any commercially sensitive non-public information, in any form or medium and whether communicated in writing, oral, or otherwise, which are provided to a receiving party pursuant to this Agreement relating to the Case designated as "Confidential Information" by the producing party, including but not limited to (i) commercially sensitive  non-public data, reports, financial statements, sealed court records, projections, insurance information concerning Debtor; (ii) any analyses, compilations, studies, or other documents prepared by Debtor, its advisors, or other parties which contain or otherwise reflect or are derivative of such information; (iii) any documents prepared or produced by the Committee that the Committee contends contain sensitive information; and (iv) the proposed terms or conditions of any plan or settlement disclosed to the Committee by or on behalf of Debtor, or disclosed to Debtor or its advisors by or on behalf of the Committee. Notwithstanding anything to the contrary herein, the term "Confidential Information" does not include information:

                  i.      that was already in the possession of the receiving party prior to the time of disclosure to the receiving party, provided that, insofar as is known to the receiving party, such information was not divulged by a third person subject to any legal, contractual, or fiduciary prohibition or obligation against disclosure owed to the producing party or any other party with respect to such information;

                  ii.      obtained by the receiving party from a third person which, insofar as is known to the receiving party, is not subject to any legal, contractual or fiduciary prohibition, or obligation against disclosure owed to the producing party or any other party with

respect to such information. For the avoidance of doubt, Confidential Information does not include any information (e.g. documents or deposition testimony) obtained or to be obtained in any non-bankruptcy forum litigation that is not subject to any protective order or confidentiality agreement in such litigation;

iii. which was or becomes generally available to the public through no fault of any of the receiving party; or

iv. which was or is independently developed by the receiving party without violating its confidentiality obligations hereunder and without reference to the Confidential Information.

4    Subject to the provisions of this agreement regarding Abuse Documents, the Other Documents designated by the Debtor as confidential and Abuse Documents shall not be re-disclosed and, in addition, may not be used by the Committee or the Committee members for any purpose other than in the Debtor's bankruptcy proceeding unless otherwise authorized by the Bankruptcy Court or agreement of the Parties hereto. This provision does not apply to Other Documents that are not Confidential Information.

5    Any receiving party will promptly notify the Debtor if the receiving party becomes required by legal process to disclose any Other Documents designated as confidential or Abuse Documents. If the Debtor does not obtain a protective order or other injunctive relief with respect to the Other Documents designated as confidential in the Dropbox or Abuse Documents, and the receiving party and/or its representatives are required by applicable law or regulatory authority to disclose such Other Documents or Abuse Documents, the receiving party and/or its representatives may disclose such Other Documents in the Dropbox or the Protected Abuse Documents to the extent so required. Similarly, if the Debtor receives demands by any such authority, including but not limited to, by the U.S. Department of Justice or U.S. Attorneys, Federal law enforcement, the State of New Mexico Attorney General's Office, or any law enforcement, the Debtor shall notify the Committee that such a request has been made for documents and information.

6    The Debtor shall incorporate into any plan of reorganization it seeks to confirm the provisions of this Agreement for the publication of the Abuse Documents as contemplated herein and that such publication shall be effectuated as soon as possible after the effective date of a plan.

7    In the event a member of the Committee, their counsel, or the counsel for the Committee, allegedly breaches any terms of this Agreement, the Parties agree that Debtor may petition the Bankruptcy Court for appropriate sanctions, with the foregoing parties reserving any defenses and claims in connection therewith. Similarly, if the Debtor or its Chief Financial Officer or other employees, or any of Debtors attorneys, allegedly breaches this Agreement, the Committee may petition the Bankruptcy Court for appropriate sanctions.

8    This Agreement constitutes the entire understanding between the Parties with respect to maintaining the confidentiality of the Other Documents and Abuse Documents.

CONFIDENTIALITY AGREEMENT
PAGE 5
DOCS_SF:99772.9 05066/002

9      The validity, construction and interpretation, and enforceability of this Agreement shall be determined and governed by the laws of the State of New Mexico.

The Parties have executed this Agreement on the dates indicated below.

Roman Catholic Church of the Archdiocese of Santa Fe
a corporation sole:

By: _John C. Wester_                                    Date: _May 8, 2019_
       Most Reverend John C. Wester
       Archbishop of Santa Fe


ELSAESSER ANDERSON, CHTD.

By: _Bruce Anderson_                                    Date: _5/13/19_
       Ford Elsaesser
       Bruce A. Anderson
       Attorneys for the Roman Catholic Church
       of the Archdiocese of Santa Fe
       a corporation sole


By: _____                             Date: _____
       Charles Paez
       Chairperson on behalf of the Unsecured Creditors'
       Committee of the Roman Catholic
       Church of the Archdiocese of Santa Fe
       a corporation sole


PACHULSKI STANG ZIEHL & JONES LLP

By: _____                             Date: _5/1/19_
       James I. Stang
       Counsel to the Unsecured Creditors'
       Committee of the Roman Catholic
       Church of the Archdiocese of Santa Fe
       a corporation sole


CONFIDENTIALITY AGREEMENT
PAGE 6
DOCS_SF:99772.9 05066/002

9      The validity, construction and interpretation, and enforceability of this Agreement shall be determined and governed by the laws of the State of New Mexico.

The Parties have executed this Agreement on the dates indicated below.

Roman Catholic Church of the Archdiocese of Santa Fe
a corporation sole:

By: _____      Date: _____
    Most Reverend John C. Wester
    Archbishop of Santa Fe


ELSAESSER ANDERSON, CHTD.


By: _____      Date: _____
    Ford Elsaesser
    Bruce A. Anderson
    Attorneys for the Roman Catholic Church
    of the Archdiocese of Santa Fe
    a corporation sole

By: _____      Date: 5/15/2019
    Charles Paez
    Chairperson on behalf of the Unsecured Creditors'
    Committee of the Roman Catholic
    Church of the Archdiocese of Santa Fe
    a corporation sole


PACHULSKI STANG ZIEHL & JONES LLP


By: _____      Date: _____
    James I. Stang
    Counsel to the Unsecured Creditors'
    Committee of the Roman Catholic
    Church of the Archdiocese of Santa Fe
    a corporation sole

INFORMATION CRITERIA FOR REDACTION:

1. Victim names.
2. Identifying information of victims and family members of victims including but not limited to the addresses, phone numbers, and email addresses and dates of birth of victims and victim family members.
3. Names of victim family members (children, parents, stepparents, siblings, aunts, uncles, cousins, nieces and nephews) including relatives through present and past marriages in.
4. Any Social Security Numbers and Financial Account Numbers.
5. Names of places where childhood sexual abuse occurred if it is not a Parish or Church Community or a location where abuse allegedly occurred.
6. Descriptions of victims or documents that could identify victims such as victim arrests, convictions, bankruptcies, medical or therapy records, employment records, civil or criminal case captions and records, academic records, military records, occupations and places of employment of victims and victim family members.
7. Amounts of settlements, settlement offers and counteroffers.
8. Photos including victims faces. Non-victim faces must be blurred, unless shown in a newspaper clipping.
9. Information that is confidential under Federal or State statute (e.g. HIPAA)
10. Other types of sensitive or confidential information identified during the redaction process and mutually agreed to by the Archdiocese and the Creditors Committee.
11. So called "Victim files types of information" (above), things such as victim statements to church investigators, victim depositions, transcripts of victim interviews or testimony that is existing in so called "Priest Personnel Files" is to be set aside for the time being in a separate digital file, or saved to the corresponding victim file for further consideration.



EXHIBIT
B

Exhibit _B___

The ASF Participating Parties include the following entities (and their respective officers, directors, employees, trustees, agents, and subsidiaries):

- All parishes within the territory of the Debtor (each a "Parish" and together, the "Parishes")
- Any school operated by or in conjunction with a Parish
- Any mission operated by a Parish
- Archdiocese of Santa Fe Catholic Foundation
- Catholic Cemetery Association
- Catholic Charities
- Annual Catholic Appeal Foundation
- Archbishop's School Fund, Inc.
- Santo Nino Regional Catholic School
- Villa Therese Clinic
- St. Pius X High School
- St. Pius X Foundation
- Archdiocese of Santa Fe Deposit & Loan Trust
- Archdiocese of Santa Fe Real Estate Trust
- Archdiocese of Santa Fe Real Estate Corporation
- Society of St. Vincent DePaul

[Subject to supplementation]

Notwithstanding any of the foregoing, no perpetrator of abuse will be a protected party or receive the benefit of a release or channeling injunction.

# Santa Fe Parishes

**Name**

The Cathedral Basilica of St. Francis of Assisi
Cristo Rey Parish
San Isidro
Santa Maria de La Paz Catholic Community
Shrine of Our Lady of Guadalupe
St. Anne's
St. John the Baptist

# Albuquerque Parishes

**Name**

Church of the Ascension
Holy Family
Holy Ghost
Immaculate Conception
Nativity of the Blessed Virgin Mary
Our Lady of Fatima
Our Lady of Guadalupe
Our Lady of Lavang
Our Lady of the Annunciation
Our Lady of the Assumption
Our Lady of the Most Holy Rosary
Prince of Peace Catholic Community
Queen of Heaven
Risen Savior Catholic Community
Sacred Heart
Saint John XXIII Catholic Community
San Felipe de Neri
San Ignacio
San Jose
Sangre de Cristo
Santuario de San Martin de Porres
Shrine of St. Bernadette
Shrine of the Little Flower /
　 St. Therese of the Infant Jesus
St. Anne
St. Charles Borromeo
St. Edwin
St. Francis Xavier
St. Joseph on the Rio Grande
St. Jude Thaddeus
St. Thomas Aquinas University Parish
Our Lady of Perpetual Help

# Parishes Outside of Santa Fe and Albuquerque

**Name**

Abiquiu - St. Thomas Apostle
Anton Chico - San Jose
Arroyo Seco - La Santisima Trinidad
Belen - Our Lady of Belen
Bernalillo - Our Lady of Sorrows
Cerrillos - St. Joseph
Chama - St. Patrick
Chimayo - Holy Family
Cimarron - Immaculate Conception Church
Clayton - St. Francis Xavier
Clovis - Our Lady of Guadalupe
Clovis - Sacred Heart
Corrales - San Ysidro
Dixon - St. Anthony
El Rito - San Juan Nepomuceno
Española - Sacred Heart
Fort Sumner - St. Anthony of Padua
Isleta Pueblo - St. Augustine
Jemez Pueblo - San Diego Mission
Jemez Springs - Our Lady of the Assumption
La Joya - Our Lady of Sorrows
Las Vegas - Immaculate Conception
Las Vegas - Our Lady of Sorrows Church
Los Alamos - Immaculate Heart of
Mary
Los Lunas - San Clemente
Los Ojos - San Jose
Mora - St. Gertrude the Great
Moriarty - Estancia Valley Catholic Parish
Mountainair - St. Alice
Pecos - St. Anthony of Padua
Peña Blanca - Nuestra Señora de Guadalupe
Peñasco - San Antonio de Padua
Peralta - Our Lady of Guadalupe
Pojoaque - Nuestra Senora de Guadalupe
Portales - St. Helen
Questa - St. Anthony
Ranchos de Taos - San Francisco de Asis
Raton - St. Patrick-St. Joseph
Ribera, San Miguel del Vado
Rio Rancho, Church of the Incarnation
Rio Rancho, St. John Vianney Church
Rio Rancho, St. Thomas Aquinas
Roy Mosquero, Holy Family-St. Joseph
San Juan, Ohkay Owingeh - San Juan Bautista
Santa Cruz - Holy Cross
Santa Rosa - St. Rose of Lima
Socorro - San Miguel
Springer - St. Joseph
Taos - Nuestra Señora de Guadalupe
Tierra Amarilla - Santo Niño
Tijeras - Holy Child
Tome - Immaculate Conception
Tucumcari - St. Anne
Vaughn - St. Mary
Villanueva - Our Lady of Guadalupe
Wagon Mound - Santa Clara

# Missions

(Please contact Mother Parish for any information)

| Location | Mission | Mother Parish |
|----------|---------|---------------|
| Abeytas | San Antonio | Our Lady of Sorrows, La Joya |
| Abo | San Lorenzo | St. Alice, Mountainair |
| Alamillo | San Antonio | San Miguel, Socorro |
| Albert | San Isidro | Holy Family-St. Joseph, Roy |
| Albuquerque | Our Lady of Mount Carmel | Nativity of the BVM, Albuquerque |
| Albuquerque | San Jose de Los Duranes | San Felipe de Neri, Albuquerque |
| Alcalde | St. Anne | San Juan Bautista, San Juan Pueblo |
| Alcalde | San Antonio | San Juan Bautista, San Juan Pueblo |
| Algodones | San Jose | Our Lady of Sorrows, Bernalillo |
| Alto del Talco | San Santiago | St. Gertrude the Great, Mora |
| Amalia | Santo Niño | St. Anthony, Questa |
| Angel Fire | Holy Angels | Immaculate Conception Church, Cimarron |
| Arroyo Hondo | Nuestra Señora de Dolores | La Santísima Trinidad, Arroyo Seco |
| Aurora | San Antonio | Our Lady of Guadalupe, Villanueva |
| Bernal | Santa Rita | San Miguel del Vado, Ribera |
| Bernalillo | Santuario de San Lorenzo | Our Lady of Sorrows, Bernalillo |
| Black Lake | San Antonio | Immaculate Conception Church, Cimarron |
| Borica | San Isidro | St. Rose of Lima, Santa Rosa |
| Bosque | Cristo Rey | Our Lady of Belen, Belen |
| Buena Vista | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Bueyeros | Sacred Heart | Holy Family-St. Joseph, Roy |
| Canjilon | San Juan Nepomuceno | St. Patrick, Chama |
| Cañon | Nuestra Señora de los Dolores | Nuestra Señora de Guadalupe, Taos |
| Cañon | Our Lady of Guadalupe | San Diego Mission, Jemez Pueblo |
| Cañon Plaza | Our Lady of Mount Carmel | San Juan Nepomuceno, El Rito |
| Cañoncito | Nuestra Señora de La Luz | St. Anthony of Padua, Pecos |
| Cañoncito | San Jose | St. Gertrude the Great, Mora |
| Cañoncito | San Lorenzo | Holy Child, Tijeras |
| Cañones | San Miguel Archangel | St. Thomas Apostle, Abiquiu |
| Capulin | Santo Niño | St. Thomas Apostle, Abiquiu |
| Carnuel | Holy Child | Holy Child, Tijeras |
| Casa Colorada | Immaculate Conception | Immaculate Conception, Tome |
| Cebolla | Santo Niño de Atocha | St. Patrick, Chama |
| Cedar Crest | San Antonio | Holy Child, Tijeras |
| Cerro | Nuestra Señora de Guadalupe | St. Anthony, Questa |
| Chacon | San Antonio de Padua | St. Gertrude the Great, Mora |
| Chamisal | Santa Cruz | San Antonio de Padua, Peñasco |
| Chamita | San Pablo | San Juan Bautista, San Juan Pueblo |
| Chililli | San Juan Nepomuceno | Holy Child, Tijeras |
| Cleveland | San Antonio de Padua | St. Gertrude the Great, Mora |
| Cochiti Pueblo | St. Bonaventure | Nuestra Señora de Guadalupe, Peña Blanca |
| Colonias | San Jose | St. Rose of Lima, Santa Rosa |
| Contreras | San Jose | Our Lady of Sorrows, La Joya |
| Cordova | San Antonio | Holy Family, Chimayo |
| Costilla | Sagrado Corazon | St. Anthony, Questa |
| Coyote | San Juan Bautista | St. Thomas Apostle, Abiquiu |
| Cuarteles | La Sangre de Cristo | Holy Cross, Santa Cruz |
| Cuervo | Santo Niño | St. Rose of Lima, Santa Rosa |
| Cundiyo | Santo Domingo | Holy Family, Chimayo |
| Dahlia | Santo Niño de Atocha | San Jose, Anton Chico |
| Des Moines | Our Lady of Guadalupe | St. Francis Xavier, Clayton |
| Dilia | Sacred Heart-San Isidro | San Jose, Anton Chico |

111

| Location | Mission | Mother Parish |
|---|---|---|
| Duran | St. John the Baptist | St. Mary, Vaughn |
| Eagle Nest | St. Mel | Immaculate Conception Church, Cimarron |
| Edgewood | St. Elizabeth Ann Seaton | Estancia Valley Catholic Parish, Moriarity |
| El Carmen | Nuestra Señora de Carmel | St. Gertrude the Great, Mora |
| El Cerrito | Nuestra Señora de Los Desamparados | OL of Guadalupe, Villanueva |
| El Duende | San Francisco | Sacred Heart, Española |
| El Guache | San Antonio | Sacred Heart, Española |
| El Guique | San Rafael | San Juan Bautista, San Juan Pueblo |
| El Llanito | Christ the King | Our Lady of Sorrows Church, Las Vegas |
| El Macho | Nuestra Señora de Guadalupe | St. Anthony of Padua, Pecos |
| El Porvenir | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| El Prado | Santa Teresita de Jesús | Nuestra Señora de Guadalupe, Taos |
| El Pueblo | San Antonio | San Miguel del Vado, Ribera |
| El Rancho | San Antonio de Padua | Nuestra Señora de Guadalupe, Pojoaque |
| El Valle | San Miguel | Holy Family, Chimayo |
| Encino | Our Lady of Guadalupe | St. Mary, Vaughn |
| Ensenada | San Joaquin | San Jose, Los Ojos |
| Escobosa | San Isidro | Holy Child, Tijeras |
| Estaca | San Francisco | San Juan Bautista, San Juan Pueblo |
| Estancia | Sts. Peter and Paul | Estancia Valley Catholic Parish, Moriarity |
| Folsom | St. Joseph | St. Francis Xavier, Clayton |
| Galisteo | Nuestra Señora de Los Remedios | St. Joseph, Cerrillos |
| Gallegos | Immaculate Conception | Holy Family-St. Joseph, Roy |
| Gallina | Nuestra Señora de Guadalupe | St. Thomas Apostle, Abiquiu |
| Gallinas | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Glorieta | Nuestra Señora de Guadalupe | St. Anthony of Padua, Pecos |
| Golden | San Francisco de Asis | St. Joseph, Cerrillos |
| Golondrinas | San Acacio | St. Gertrude the Great, Mora |
| Gonzales Ranch | San Isidro & Santa Teresita | Our Lady of Guadalupe, Villanueva |
| Guachupangue | Our Lady of Guadalupe | Sacred Heart, Española |
| Guadalupita | Nuestra Señora de Guadalupe | St. Gertrude the Great, Mora |
| Hernandez | San Jose | Sacred Heart, Española |
| Holman | Immaculate Heart of Mary | St. Gertrude the Great, Mora |
| Jarales | St. Francis Xavier | Our Lady of Belen, Belen |
| Kelly | San Juan Bautista | San Miguel, Socorro |
| La Bajada | San Miguel | Nuestra Señora de Guadalupe, Peña Blanca |
| La Cañada de Los Alamos | Our Lady of Guadalupe | Cristo Rey Parish, Santa Fe |
| La Cienega | San Jose | San Isidro, Santa Fe |
| La Cueva | San Rafael | St. Gertrude the Great, Mora |
| La Loma | San Antonio | Nuestra Señora de Guadalupe, Taos |
| La Madera | Our Lady of Guadalupe | San Juan Nepomuceno, El Rito |
| La Manga | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| La Mesilla | San Isidro | Holy Cross, Santa Cruz |
| La Petaca | Nuestra Divina Pastora | San Juan Nepomuceno, El Rito |
| La Puebla | Naciemento de Santo Niño Jesús | Holy Cross, Santa Cruz |
| La Puente | St. Michael | San Jose, Los Ojos |
| Lagunita | Our Lady of the Rosary | San Miguel del Vado, Ribera |
| Las Colonias | Santo Niño | St. Anthony of Padua, Pecos |
| Las Colonias | Santo Niño de Atocha | La Santísima Trinidad, Arroyo Seco |
| Las Nutrias | San Isidro | Our Lady of Sorrows, La Joya |
| Las Tablas | San Luis Gonzaga | San Juan Nepomuceno, El Rito |
| Ledoux | San Jose | St. Gertrude the Great, Mora |
| Lemitar | La Sagrada Familia | San Miguel, Socorro |
| Leyba | San Francisco | Our Lady of Guadalupe, Villanueva |
| Llano de San Juan | San Juan Nepomuceno | San Antonio de Padua, Peñasco |
| Los Chavez | Nuestra Señora de Guadalupe | Our Lady of Belen, Belen |

112

| Location | Mission | Mother Parish |
|---|---|---|
| Llano Quemado | Nuestra Señora del Carmen | San Francisco de Asis, Ranchos de Taos |
| Logan | St. Anthony | St. Anne, Tucumcari |
| Los Cordovas | San Ysidro | San Francisco de Asis, Ranchos de Taos |
| Los Hueros | San Juan Bautista | Santa Clara, Wagon Mound |
| Los LeFebres | Nuestro Señor de Esquipula | Santa Clara, Wagon Mound |
| Los Lentes | San Antonio | San Clemente, Los Lunas |
| Los Luceros | Sagrada Familia | San Juan Bautista, San Juan Pueblo |
| Los Montoyas | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| Los Vigiles | Our Lady of Refuge | Immaculate Conception, Las Vegas |
| Lower Rociada | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Lucero | Santa Rita | St. Gertrude the Great, Mora |
| Luis Lopez | San Jose | San Miguel, Socorro |
| Lyden | San Jose | St. Anthony, Dixon |
| Maes | San Santiago | Our Lady of Sorrows Church, Las Vegas |
| Magdalena | St. Mary Magdalene | San Miguel, Socorro |
| Manzano | Nuestra Señora de Dolores | St. Alice, Mountainair |
| Maxwell | St. Vincent de Paul | St. Patrick-St. Joseph, Raton |
| Meadowlake | Misión de San Juan Diego | San Clemente, Los Lunas |
| Medanales | San Antonio | St. Thomas Apostle, Abiquiu |
| Melrose | St. Catherine | Sacred Heart, Clovis |
| Mesa de Poleo | Santa Teresa | St. Thomas Apostle, Abiquiu |
| Milagro | Our Lady of Sorrows | St. Rose of Lima, Santa Rosa |
| Monte Aplanado | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Montoya | St. Joan of Arc | St. Anne, Tucumcari |
| Nambe | Sagrado Corazon de Jesús | Nuestra Señora de Guadalupe, Pojoaque |
| Nambe Pueblo | San Francisco de Asis | Nuestra Señora de Guadalupe, Pojoaque |
| Nara Visa | Sacred Heart | St. Anne, Tucumcari |
| Ocate | Nuestra Señora de Guadalupe | Santa Clara, Wagon Mound |
| Ojo Caliente | St. Mary | San Juan Nepomuceno, El Rito |
| Ojo Feliz | San Isidro | St. Gertrude the Great, Mora |
| Ojo Sarco | Santo Tomas | Holy Family, Chimayo |
| Palo Blanco | Our Lady of Mount Carmel | St. Joseph, Springer |
| Pastura | St. Helen | St. Mary, Vaughn |
| Picuris Pueblo | San Lorenzo | San Antonio de Padua, Peñasco |
| Pilar | Nuestra Señora de Dolores | St. Anthony, Dixon |
| Pinos Wells | San Jose | St. Mary, Vaughn |
| Pintada | Holy Family | St. Rose of Lima, Santa Rosa |
| Placita | Nuestra Señora de la Asuncion | San Antonio de Padua, Peñasco |
| Placitas | San Antonio | Our Lady of Sorrows, Bernalillo |
| Placitas | St. Anthony | San Juan Nepomuceno, El Rito |
| Plaza Blanca | San Antonio | San Jose, Los Ojos |
| Plaza de Arriba | Sangre de Cristo | San Jose, Anton Chico |
| Polvadera | San Lorenzo | San Miguel, Socorro |
| Ponderosa | Santo Toribio | San Diego Mission, Jemez Pueblo |
| Pueblitos | San Isidro | Our Lady of Belen, Belen |
| Puerto de Luna | Our Lady of Refuge | St. Rose of Lima, Santa Rosa |
| Punta de Agua | St. Vincent de Paul | St. Alice, Mountainair |
| Rainsville | Sacred Heart of Jesus | St. Gertrude the Great, Mora |
| Ranchitos | Imaculada Concepcion | Nuestra Señora de Guadalupe, Taos |
| Ranchitos | St. Michael Archangel | San Juan Bautista, San Juan Pueblo |
| Rayado | Holy Child Chapel | Immaculate Conception, Cimarron |
| Red River | St. Edwin | St. Anthony, Questa |
| Riley | Santa Rita | San Miguel, Socorro |
| Rio Chiquito | San Ysidro & Sagrado Corazon | Holy Family, Chimayo |
| Rio en Medio | Our Lady of Sorrows | Shrine of Our Lady of Guadalupe, Santa Fe |

| Location | Mission | Mother Parish |
|---|---|---|
| Rio Lucio | Sagrada Corazon de Jesús | San Antonio de Padua, Peñasco |
| Rodarte | Santa Barbara | San Antonio de Padua, Peñasco |
| Rowe | Sagrada Familia | St. Anthony of Padua, Pecos |
| Sabinal | San Antonio | Our Lady of Sorrows, La Joya |
| Sabinoso | Nuestra Señora de Guadalupe | Holy Family-St. Joseph, Roy |
| San Antonio | San Antonio | San Miguel, Socorro |
| San Antonito | Nuestro Señor de Mapimi | Holy Child, Tijeras |
| San Augustine | San Augustine | Our Lady of Sorrows Church, Las Vegas |
| San Cristobal | San Cristobal | La Santísima Trinidad, Arroyo Seco |
| San Felipe Pueblo | San Felipe | Nuestra Señora de Guadalupe, Peña Blanca |
| San Geronimo | San Geronimo | Our Lady of Sorrows Church, Las Vegas |
| San Idelfonso Pueblo | San Idelfonso | San Juan Bautista, San Juan Pueblo |
| San Ignacio | San Ignacio | Our Lady of Sorrows Church, Las Vegas |
| San Ignacio | San Ignacio | St. Rose of Lima, Santa Rosa |
| San Isidro del Sur | Nuestra Señora de Guadalupe | San Miguel del Vado, Ribera |
| San Isidro Norte | San Isidro Labrador | San Miguel del Vado, Ribera |
| San Jon | Our Lady of Guadalupe | St. Anne, Tucumcari |
| San Jose | San Jose | San Miguel del Vado, Ribera |
| San Juan | San Juan Nepomuceno | San Miguel del Vado, Ribera |
| San Pedro | San Pedro | Holy Cross, Santa Cruz |
| San Ysidro | San Ysidro | San Diego Mission, Jemez Pueblo |
| Sandia Pueblo | St. Anthony | Our Lady of Sorrows, Bernalillo |
| Santa Ana Pueblo | Santa Ana (St. Anthony) | San Diego Mission, Jemez Pueblo |
| Santa Clara Pueblo | Santa Clara | San Juan Bautista, San Juan Pueblo |
| Santo Domingo Pueblo | Santo Domingo | Nuestra Señora de Guadalupe, Peña Blanca |
| Santo Niño | Santo Niño | Holy Cross, Santa Cruz |
| Sapello | Nuestra Señora de Guadalupe | Our Lady of Sorrows, Las Vegas |
| Sedillo | San Isidro | Holy Child, Tijeras |
| Sena | Nuestro Señor Esquipula | Our Lady of Guadalupe, Villanueva |
| Servilleta | St. Anthony | San Juan Nepomuceno, El Rito |
| Sile | Santa Barbara | Nuestra Señora de Guadalupe, Peña Blanca |
| Tajique | San Antonio | Estancia Valley Catholic Parish, Moriarity |
| Talpa | Nuestra Señora de San Juan de Los Lagos | Ranchos de Taos |
| Taos Pueblo | San Geronimo | Nuestra Señora de Guadalupe, Taos |
| Tecolote | Our Lady of Sorrows | Our Lady of Sorrows Church, Las Vegas |
| Tecolotito | Our Lady of Guadalupe | San Jose, Anton Chico |
| Tesuque | San Ysidro | Shrine of Our Lady of Guadalupe, Santa Fe |
| Tesuque Pueblo | San Diego | San Juan Bautista, San Juan Pueblo |
| Texico | San Jose | Our Lady of Guadalupe, Clovis |
| Tinaja | San Isidro | St. Joseph, Springer |
| Torreon | St. Anthony | St. Alice, Mountainair |
| Trampas | San Jose | Holy Family, Chimayo |
| Trementina | San Rafael | Our Lady of Sorrows Church, Las Vegas |
| Tres Piedras | Immaculate Conception | San Juan Nepomuceno, El Rito |
| Truchas | Santo Rosario | Holy Family, Chimayo |
| Trujillo | San Isidro | Our Lady of Sorrows Church, Las Vegas |
| Turquillo | Santa Teresitadel Niño Jesús | St. Gertrude the Great, Mora |
| Upper Rociada | San Jose | Our Lady of Sorrows Church, Las Vegas |
| Upper Town | San Antonio | Immaculate Conception, Las Vegas |
| Vadito | Nuestra Señora de Dolores | San Antonio de Padua, Peñasco |
| Valdez | San Antonio de Padua | La Santísima Trinidad, Arroyo Seco |
| Valencia | Sangre de Cristo | Our Lady of Guadalupe, Peralta |
| Vallecitos | Our Lady of Sorrows | San Juan Nepomuceno, El Rito |
| Variadero | Holy Family | Our Lady of Sorrows Church, Las Vegas |
| Veguita | San Juan | Our Lady of Sorrows, La Joya |

| | | |
|---|---|---|
| Velarde | Nuestra Señora de Guadalupe | St. Anthony, Dixon |
| Watrous | Sagrado Corazon | Santa Clara, Wagon Mound |
| White Rock | St. Joseph | Immaculate Heart of Mary, Los Alamos |
| Willard | Our Lady of Sorrows | St. Alice, Mountainair |
| Youngsville | San Pedro | St. Thomas Apostle, Abiquiu |
| Zia Pueblo | Our Lady of the Assumption | San Diego Mission, Jemez Pueblo |

## Shrines

(Please contact Mother Parish for any information)

| Shrine | Mother Parish |
|---|---|
| Santuario de Chimayo | Holy Family, Chimayo |
| Shrine of the Little Flower | St.Therese of the Infant Jesus, Albuquerque |
| Shrine of Our Lady of Guadalupe | Shrine of Our Lady of Guadalupe, Santa Fe |
| Shrine of Our Lady of Lourdes | San Juan Baustista, San Juan Pueblo |
| Shrine of St. Bernadette | Shrine of St. Bernadette, Albuquerque |
| Shrine of St. Kateri Tekakwitha | St. Augustine, Isleta Pueblo |

115

Schools

Annunciation Catholic School

Holy Ghost Catholic School

Our Lady of Fatima Catholic School

Our Lady of the Assumption Catholic School

Risen Savior Catholic School

San Felipe de Neri Catholic School

St. Charles Borromeo Catholic School

St. Mary Catholic School

St. Pius X High School

St. Therese Catholic School

St. Mary Catholic School (Belen)

Holy Child Catholic School

St. Thomas Aquinas Catholic School

Holy Cross Catholic School

Santo Niño Regional Catholic School

St. Michael's High School

**EXHIBIT C**

**ASF SETTLEMENT TRUST AGREEMENT**

**DATED AS OF [●], 2022**

**PURSUANT TO CHAPTER 11 PLAN OF**

**REORGANIZATION FOR**

**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE**

EXHIBIT C

## Table of Contents

ARTICLE 1. AGREEMENT OF TRUST ........................................................................................... 2

Section 1.1     Creation and Name. ...................................................................................................... 2

Section 1.2     Purposes. ....................................................................................................................... 2

Section 1.3     Transfer of Assets. ....................................................................................................... 2

Section 1.4     Acceptance of Assets. ................................................................................................... 2

Section 1.5     Intentionally Omitted .................................................................................................. 3

Section 1.6     Beneficiaries. ............................................................................................................... 3

Section 1.7     Jurisdiction. .................................................................................................................. 3

Section 1.8     Privileged and confidential information. .................................................................... 4

Section 1.9     Relation-back election. ................................................................................................ 4

Section 1.10     Employer identification number .................................................................................. 4

Section 1.11     Relationship to Plan. .................................................................................................... 4

ARTICLE 2. POWERS AND TRUST ADMINISTRATION. .................................................... 4

Section 2.1     Powers. .......................................................................................................................... 4

Section 2.2     Limitations on the ASF Settlement Trustee, STAC and Unknown Claims Representative. ......... 8

Section 2.3     General Administration. .............................................................................................. 8

Section 2.4     Accounting. .................................................................................................................. 8

Section 2.5     Financial Reporting. .................................................................................................... 9

Section 2.6     Intentionally Omitted. ................................................................................................. 9

Section 2.7     Names and addresses. .................................................................................................. 9

Section 2.8     Intentionally Omitted.   ............................................................................................... 9

Section 2.9     Transfers of the ASF Settlement Trust Corpus. ........................................................ 9

ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES ................................................. 10

Section 3.1     Accounts. .................................................................................................................... 10

EXHIBIT C

**Section 3.2**     **Investment Guidelines.** ..................................................................................**10**

**Section 3.3**     **Payment of ASF Settlement Trust Operating Expenses.** ..............................**10**

**ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS** ..............................**11**

**Section 4.1**     **Claims Administration and Distributions.** ......................................................**11**

**Section 4.2**     **Intentionally Omitted.** ....................................................................................**11**

**Section 4.3**     **Manner of Payment.** .......................................................................................**11**

**Section 4.4**     **Delivery of Distributions.** ..............................................................................**11**

**Section 4.5**     **Medicare Reimbursement and Reporting Obligations.** .................................**12**

**Section 4.6**     **Reserved.** .........................................................................................................**13**

**ARTICLE 5. TRUSTEE; DELAWARE TRUSTEE** ERROR! BOOKMARK NOT DEFINED.

**Section 5.1**     **Number of ASF Settlement Trustees.** .............................................................**13**

**Section 5.2**     **Term of Service, Successor ASF Settlement Trustee.** ....................................**13**

**Section 5.3**     **Appointment of Successor ASF Settlement Trustee.** .....................................**14**

**Section 5.4**     **Intentionally Omitted.** ....................................................................................**14**

**Section 5.5**     **Compensation and Expenses of ASF Settlement Trustee.** .............................**14**

**Section 5.6**     **ASF Settlement Trustee's Independence.** .......................................................**15**

**Section 5.7**     **Standard of Care; Exculpation.** ......................................................................**15**

**Section 5.8**     **Protective Provisions.** .....................................................................................**16**

**Section 5.9**     **Indemnification.** ..............................................................................................**17**

**Section 5.10**     **Bond.** ...............................................................................................................**19**

**Section 5.11**     **Intentionally Omitted.** ....................................................................................**19**

**Section 5.12**     **Intentionally Omitted.** ....................................................................................**19**

**Section 5.13**     **Matters Requiring Consultation with STAC and Unknown Claims Representative** ........Error! Bookmark not defined.

**Section 5.14**     **Matters Requiring Consent of STAC and Unknown Claims Representative** ..Error! Bookmark not defined.

**Section 5.15**     **Matters Requiring Special Approval:  PP Settlements, Limited Protected Party Injunction Date Extensions and Certain Employment Matters.** ...................................................Error! Bookmark not defined.

**EXHIBIT C**

Section 5.16     **ASF Settlement Trustee's and STAC's Employment of Professionals.** .......Error! Bookmark not defined.

# ARTICLE 6. SETTLEMENT TRUST ADVISORY COMMITTEE .................................. 19

Section 6.1     **Members; Action by Members.** ....................................................... Error! Bookmark not defined.

Section 6.2     **Duties.** ................................................................................................ Error! Bookmark not defined.

Section 6.3     **STAC Information Rights.** ................................................................. Error! Bookmark not defined.

Section 6.4     **[Reserved.]** ......................................................................................... Error! Bookmark not defined.

Section 6.5     **Term of Office.** .................................................................................. Error! Bookmark not defined.

Section 6.6     **Appointment of Successor.** ................................................................ Error! Bookmark not defined.

Section 6.7     **Compensation and Expenses of the STAC.** ..................................... Error! Bookmark not defined.

Section 6.8     **Procedures for Consultation with and Obtaining the Consent of the STAC.** . Error! Bookmark not defined.

# ARTICLE 7. INTENTIONALLY OMITTED .......................................................... 19

# ARTICLE 8. ................................................................................................ 19

# GENERAL PROVISIONS ................................................................................ 19

Section 8.1     **Irrevocability.** ...................................................................................................19

Section 8.2     **Term; Termination.** ...........................................................................................19

Section 8.3     **Outgoing ASF Settlement Trustee Obligations.** ..............................................20

Section 8.4     **Taxes.** ...............................................................................................................21

Section 8.5     **Modification.** ....................................................................................................22

Section 8.6     **Intentionally Omitted.** .....................................................................................22

Section 8.7     **Severability.** .....................................................................................................22

Section 8.8     **Notices.** .............................................................................................................23

Section 8.9     **Successors and Assigns.** ...................................................................................24

Section 8.10     **Limitation on Transferability; Beneficiaries' Interests.** ................................24

Section 8.11     **Exemption from Registration.** .......................................................................24

Section 8.12     **Entire Agreement; No Waiver.** ......................................................................24

**EXHIBIT C**

Section 8.13    Headings..................................................................................................................25

Section 8.14    Governing Law........................................................................................................25

Section 8.15    Settlor's Representative..........................................................................................25

Section 8.16    Intentionally Omitted. ...........................................................................................26

Section 8.17    Independent Legal and Tax Counsel........................................................................26

Section 8.18    Waiver of Jury Trial. ............................................................................................26

Section 8.19    Effectiveness. .......................................................................................................26

Section 8.20    Counterpart Signatures. ........................................................................................26

**EXHIBIT 1  TORT CLAIMS ALLOCATION PROTOCOL**

..................................................................ERROR! BOOKMARK NOT DEFINED.

**EXHIBIT 2  CERTIFICATE OF TRUST** ............................................................. 29

**EXHIBIT 3  AGGREGATE SETTLEMENT CONSIDERATION** ...................................... 29

**EXHIBIT 4  INVESTMENT GUIDELINES** ............ERROR! BOOKMARK NOT DEFINED.

Case 18-13027-t11    Doc 1154-23    Filed 12/06/22    Entered 12/06/22 15:03:45 Page 94 of 241

EXHIBIT C

## ASF SETTLEMENT TRUST AGREEMENT

This ASF Settlement Trust Agreement (this "**ASF Settlement Trust Agreement**"), dated as of [●], 2022, and effective as of the Effective Date, is entered in accordance with the *Debtor's Plan of Reorganization Dated [●], 2022* (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole (the "**Archdiocese,**" also known as the "**Debtor**" or the "**Settlor,**" in its capacity as settlor of the ASF Settlement Trust), on the one hand, and Omni Management Group LLC as trustee (together with any successor serving in such capacity, the "**ASF Settlement Trustee**"), on the other hand;

## RECITALS

(A)     The Archdiocese has, or contemporaneously with the execution of this ASF Settlement Trust Agreement will have, reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Roman Catholic Church of the Archdiocese of Santa Fe*, *a New Mexico corporation sole,* Case No. 18-13027-t11 (Bankr. D.N.M. (the "**Chapter 11 Case**").

(B)     The Plan and the Confirmation Order in the Chapter 11 Case provide, among other things, for the creation of the ASF Settlement Trust.

(C)     The Archdiocese is executing this ASF Settlement Trust Agreement in its capacity as Settlor to implement the Plan and to create the ASF Settlement Trust (the "**ASF Settlement Trust**") for the exclusive benefit of the holders of Class 3 Tort Claims.

(D)     The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(E)     The Plan and Confirmation Order provide that, on the Effective Date, the Aggregate Settlement Consideration (as defined in Section 1.3 below) shall be transferred to the ASF Settlement Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or their affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Channeled Claims and as provided in Section 1.3 below.

**NOW, THEREFORE**, it is hereby agreed as follows:

---

[1]     All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Allocation Protocol (as defined in Section 1.2 below).

1

**EXHIBIT C**

## ARTICLE 1.
## AGREEMENT OF TRUST

Section 1.1 _Creation and Name._ Archdiocese as Settlor hereby creates a trust known as the "**ASF Settlement Trust**" which is the trust provided for and referred to in the Plan. The ASF Settlement Trustee may transact the business and affairs of the ASF Settlement Trust in the name of the ASF Settlement Trust and references herein to the ASF Settlement Trust shall include the ASF Settlement Trustee acting on behalf of the ASF Settlement Trust. The Confirmation Order, the Plan and this ASF Settlement Trust Agreement, including the Exhibits hereto, including the Tort Claims Allocation Protocol as defined in Section 1.2 below, (collectively, the "**ASF Settlement Trust Documents**"), constitute the governing instruments of the ASF Settlement Trust. The ASF Settlement Trustee is hereby authorized to execute and file a Certificate of ASF Settlement Trust with the New Mexico Secretary of State.

Section 1.2 _Purposes._ The purposes of the ASF Settlement Trust are (i) to assume all liability for the Channeled Claims,[2] except for Unknown Tort Claims and other Channeled Claims related to such Unknown Tort Claims; (ii) to administer the Class 3 Tort Claims; and (iii) to make Distributions to holders of Class 3 Tort Claims, in each case in accordance with the Tort Claims Allocation Protocol attached hereto as **Exhibit 1** (the "**Tort Claims Allocation Protocol**"). In connection therewith, the ASF Settlement Trust shall hold, manage, protect and monetize the ASF Settlement Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the ASF Settlement Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below). All Class 3 Tort Claims shall be resolved exclusively in accordance with the Tort Claims Allocation Protocol.

Section 1.3 _Transfer of Assets._ Pursuant to the Plan, within two Business Days of the Effective Date, the Escrow Agent shall pay all funds in the Escrow Account to the ASF Settlement Trust by wire transfer. The ASF Settlement Trust will receive and hold all right, title and interest in and to the funds transferred, including Contributions from Participating Religious Orders (the "**Aggregate Settlement Consideration**" and together with any income or gain earned thereon and proceeds derived therefrom, collectively, the "**ASF Settlement Trust Assets**"). The Aggregate Settlement Consideration shall be transferred to the ASF Settlement Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other person or entity, other than as provided in the Channeling Injunction with respect to Channeled Claims. The Debtor or Reorganized Debtor shall execute and deliver such documents to the ASF Settlement Trust as the ASF Settlement Trustee reasonably requests to transfer and assign any assets comprising all or a portion of the Aggregate Settlement Consideration to the ASF Settlement Trust.

Section 1.4 _Acceptance of Assets._ In furtherance of the purposes of the ASF Settlement Trust, the ASF Settlement Trustee, on behalf of the ASF Settlement Trust, hereby expressly accepts the transfer to the ASF Settlement Trust of the Aggregate Settlement Consideration, subject to the terms of the ASF Settlement Trust Documents and the Plan Documents. The ASF Settlement Trust shall succeed to all of the Funding Group's and the Participating Religious Orders' respective

---

[2] See Plan, Section 8.1.2.

EXHIBIT C

rights, title, and interest, including all legal privileges, in the Aggregate Settlement Consideration and neither the Debtor nor any other person or entity transferring such Aggregate Settlement Consideration will have any further equitable or legal interest in, or with respect to, the ASF Settlement Trust Assets, including the Aggregate Settlement Consideration, or the ASF Settlement Trust.

(b)     Except as otherwise provided in the Plan, Confirmation Order or ASF Settlement Trust Documents, the ASF Settlement Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Channeled Claims that the Debtor or the Reorganized Debtor have or would have had under applicable law.

(c)     No provision herein or in the Tort Claims Allocation Protocol shall be construed or implemented in a manner that would cause the ASF Settlement Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)     Nothing in this ASF Settlement Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction, the Supplemental Injunction or other terms of the Plan or Confirmation Order.

(e)     In this ASF Settlement Trust Agreement and the Tort Claims Allocation Protocol, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5     *Intentionally Omitted*

Section 1.6     *Beneficiaries.*

(a)     The ASF Settlement Trust is established for the benefit of the holders of Class 3 Tort Claims and other Channeled Claims related to such Class 3 Tort Claims that are entitled to a Distribution under the Plan Documents (the "**Beneficiaries**").  In the case of holders such Claims who have open bankruptcy cases, the bankruptcy estate in those cases is the Beneficiary and the chapter 7 debtor is not a Beneficiary.

(b)     The Beneficiaries shall be subject to the terms of this ASF Settlement Trust Agreement and ASF Settlement Trust Documents, including without limitation, the Tort Claims Allocation Protocol.

Section 1.7     *Jurisdiction.* The Bankruptcy Court shall have continuing jurisdiction with respect to the ASF Settlement Trust; provided however, the courts of the State of New Mexico, including any federal court located therein, shall also have jurisdiction over the ASF Settlement Trust if and

EXHIBIT C

to the extent the Bankruptcy Court cannot exercise or properly abstains from exercising jurisdiction over the ASF Settlement Trust.

Section 1.8     *Privileged and confidential information.*

The transfer or assignment of any information subject to an attorney-client or similar privilege to the ASF Settlement Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto.  Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the ASF Settlement Trustee to perform his or her duties to administer the ASF Settlement Trust and (b) they are vested solely in the ASF Settlement Trustee and not in the ASF Settlement Trust, or any other person, committee or subcomponent of the ASF Settlement Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Channeled Claim.

Section 1.9     *Relation-back election.*

Upon request of the ASF Settlement Trustee, the Settlor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the ASF Settlement Trust as coming into existence as a settlement fund as of the earliest possible date.

Section 1.10     *Employer identification number.*

Upon establishment of the ASF Settlement Trust, the ASF Settlement Trustee shall apply for an employer identification number for the ASF Settlement Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

Section 1.11     *Relationship to Plan.*

The principal purpose of this ASF Settlement Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore, this ASF Settlement Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this ASF Settlement Trust Agreement, the Tort Claims Allocation Protocol, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this ASF Settlement Trust Agreement; and (4) the Tort Claims Allocation Protocol.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

Section 2.1     *Powers.*

(a)     The ASF Settlement Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the ASF Settlement Trustee deems necessary to reasonably ensure that the ASF Settlement Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated

EXHIBIT C

pursuant thereto. Further, the ASF Settlement Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this ASF Settlement Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

(b)     The ASF Settlement Trustee is and shall act as the fiduciary to the ASF Settlement Trust Assets in accordance with the provisions of the ASF Settlement Trust Documents. The ASF Settlement Trustee shall administer the ASF Settlement Trust, the ASF Settlement Trust Assets, and any other amounts to be received under the terms of the ASF Settlement Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the ASF Settlement Trust Documents. Subject to the limitations set forth in the ASF Settlement Trust Documents, the ASF Settlement Trustee shall have the power to take any and all actions that in the judgment of the ASF Settlement Trustee are necessary or advisable to fulfill the purposes of the ASF Settlement Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of New Mexico. Nothing in the ASF Settlement Trust Documents or any related document shall require the ASF Settlement Trustee to take any action if the ASF Settlement Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the ASF Settlement Trust Documents, including, but not limited to, the ASF Settlement Trustee's powers and authority in respect of the interpretation, application of definitions and rules of construction set forth in Sections 2 and 3 of the Plan to the fullest extent set forth therein, from and after the Effective Date, the ASF Settlement Trust shall succeed to all of the rights and standing of the Debtor with respect to the Aggregate Settlement Consideration in its capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)     Except as required by applicable law or the ASF Settlement Trust Documents, the ASF Settlement Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(d)     Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the ASF Settlement Trust Documents and by applicable law, the ASF Settlement Trustee shall have the power to:

(i)     supervise and administer the ASF Settlement Trust in accordance with the ASF Settlement Trust Documents, including the Tort Claims Allocation Protocol;

(ii)     receive and hold the ASF Settlement Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(iii)     invest the monies held from time to time by the ASF Settlement Trust in accordance with Section 3.2;

(iv)     enter into leasing, financing or other agreements with third parties, as determined by the ASF Settlement Trustee, in his or her discretion, to be useful in carrying out the purposes of the ASF Settlement Trust;

5

EXHIBIT C

(v)        determine and pay all liabilities, fees and expenses incurred in administering the ASF Settlement Trust, managing the ASF Settlement Trust Assets and making Distributions in accordance with the ASF Settlement Trust Documents (the "**ASF Settlement Trust Operating Expenses**");

(vi)        establish accounts and reasonable reserves within the ASF Settlement Trust, in his discretion, to be necessary, prudent or useful in administering the ASF Settlement Trust;

(vii)        sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, however nothing herein shall be deemed to either (a) affect, limit or expand any party's rights to sue or otherwise commence a case or proceeding against a trustee in a case under chapter 11 of the Bankruptcy Code or (b) allow any party asserting a Class 3 Tort Claim, Unknown Tort Claim and/or Channeled Claim to commence any action against the ASF Settlement Trustee or the ASF Settlement Trust with respect to such claim;

(viii)        appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the ASF Settlement Trust requires, and delegate to such persons such powers and authorities as this ASF Settlement Trust Agreement provides or the fiduciary duties of the ASF Settlement Trustee permits and as the ASF Settlement Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this ASF Settlement Trust Agreement;

(ix)        pay reasonable compensation and reimbursement of expenses to any of the ASF Settlement Trust's trustee(s), employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the ASF Settlement Trust requires;

(x)        compensate professionals retained by the ASF Settlement Trust for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the ASF Settlement Trust Documents;

(xi)        execute and deliver such instruments as the ASF Settlement Trustee considers advisable or necessary in administering the ASF Settlement Trust;

(xii)        timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the ASF Settlement Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xiii)        require, in respect of any Distribution of ASF Settlement Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the ASF Settlement Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

6

**EXHIBIT C**

(xiv) resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the MMSEA (as defined in the Plan) in accordance with the Plan; provided, however, that for claims where there is an open chapter 7 bankruptcy case, such lien resolution is subject to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and provided further, however, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

(xv) register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.6 below and the terms of the Plan;

(xvi) intentionally omitted;

(xvii) enter into such other arrangements with third parties as are deemed by the ASF Settlement Trustee to be useful in carrying out the purposes of the ASF Settlement Trust, provided such arrangements do not conflict with any other provision of the ASF Settlement Trust Documents;

(xviii) in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the ASF Settlement Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the ASF Settlement Trust Assets and to the fullest extent permitted by law; provided that the cost of any such insurance shall be an expense of the ASF Settlement Trust that is payable by the Debtor;

(xix) delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the ASF Settlement Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xx) initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the ASF Settlement Trust;

(xxi) enter into structured settlements and other similar arrangements with any Beneficiary (including a minor or other person in need of special consideration) or any Attorney of any Beneficiary, upon such terms as the ASF Settlement Trustee and such Beneficiary (or such Beneficiary's counsel or other authorized person) agree, in all cases in accordance with the Tort Claims Allocation Protocol;

(xxii) take any and all actions appropriate or necessary in order to carry out the terms of the ASF Settlement Trust Documents and;

(xxiii) except as otherwise expressly provided in the ASF Settlement Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of New Mexico; and

7

EXHIBIT C

(e)     intentionally omitted.

(f)     The ASF Settlement Trustee may take all actions necessary or advisable for the enforcement of the non-monetary commitments of Reorganized Debtor with respect to Child Protection as set forth in the Plan and Confirmation Order.

Section 2.2     _Limitations on the ASF Settlement Trustee._

(a)     Notwithstanding anything in the ASF Settlement Trust Documents to the contrary, the ASF Settlement Trustee shall not do or undertake any of the following:

(i)     guaranty any debt;

(ii)     make or enter into any loan of ASF Settlement Trust Assets;

(iii)     make any transfer or Distribution of ASF Settlement Trust Assets other than those authorized by the ASF Settlement Trust Documents;

(iv)     engage in any trade or business with respect to the ASF Settlement Trust Assets or proceeds therefrom, other than managing such assets;

(v)     engage in any investment of the ASF Settlement Trust Assets, other than as explicitly authorized by this ASF Settlement Trust Agreement; and

(vi)     engage in any activities inconsistent with the treatment of the ASF Settlement Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Tax Code.

2.2     General Administration.

The ASF Settlement Trustee shall act in accordance with the ASF Settlement Trust Documents.  The ASF Settlement Trustee shall establish the location of the principal office of the ASF Settlement Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.3     _Accounting._ The fiscal year of the ASF Settlement Trust shall begin on January 1 and shall end on December 31 of each calendar year.  The ASF Settlement Trustee shall maintain the books and records relating to the ASF Settlement Trust Assets and income and the payment of ASF Settlement Trust Operating Expenses and other liabilities of the ASF Settlement Trust.  The detail of these books and records and the duration of time during which the ASF Settlement Trustee shall keep such books and records shall be such as to allow the ASF Settlement Trustee to make a full and accurate accounting of all ASF Settlement Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the ASF Settlement Trust, including, without limitation, the assets and liabilities of the ASF Settlement Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the ASF Settlement Trustee shall maintain such books and

8

EXHIBIT C

records until the wind-up of the ASF Settlement Trust's affairs and satisfaction of all of ASF Settlement Trust liabilities. The ASF Settlement Trustee shall serve the Annual Report on all counsel of record for Class 3 Tort Claimants and the Office of the United States Trustee.

Section 2.4     _Financial Reporting._

(a)     Within one hundred twenty (120) days following the end of each calendar year, the ASF Settlement Trustee shall file with the Bankruptcy Court the Annual Report.

(b)     All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case.

Section 2.5     _Intentionally Omitted._

Section 2.6     _Names and addresses._

The ASF Settlement Trustee shall keep a register (the "**Register**") in which the ASF Settlement Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the ASF Settlement Trust Documents. The ASF Settlement Trustee may rely upon this Register for the purposes of delivering Distributions or notices. In preparing and maintaining this Register, the ASF Settlement Trustee may rely on the name and address of each Class 3 Tort Claim holder as set forth in a proof of claim filed by such holder, or proper notice of a name or address change, which has been delivered by such Class 3 Tort Claim holder to the ASF Settlement Trustee; provided, that in the case of Class 3 Tort Claimants who have open chapter 7 bankruptcy cases, the ASF Settlement Trustee shall rely on the schedule provided, if any, by counsel for the Chapter 7 trustees and if no such schedule is provided, the ASF Settlement Trustee shall rely on the docket of the chapter 7 case to identify the current chapter 7 trustee. The ASF Settlement Trustee may deliver Distributions and notices to counsel for any Class 3 Tort Claimant identified in such Beneficiary's proof of claim or proper notice of a name or address change; provided that Distributions and notices to Abuse Claimants with open chapter 7 cases shall be delivered to counsel for the chapter 7 trustee. The Register shall be confidential and will not be disclosed to any third party absent a duly obtained court order.

Section 2.7     _Intentionally Omitted._

Section 2.8     _Transfers of the ASF Settlement Trust Assets._

To the fullest extent permitted by law, neither the principal nor income of the ASF Settlement Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

**EXHIBIT C**

**ARTICLE 3.**
**ACCOUNTS, INVESTMENTS, EXPENSES**

Section 3.1 _Accounts._

(a) The ASF Settlement Trustee shall maintain one or more accounts ("**ASF Settlement Trust Accounts**") on behalf of the ASF Settlement Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b) The ASF Settlement Trustee may replace any retained Financial Institution with a successor Financial Institution at any time.

(c) Intentionally omitted.

(d) The ASF Settlement Trustee may maintain segregated accounts to hold any assets received as a result of or in connection with a settlement with a Religious Order that is or becomes a Participating Religious Order, (the "**Religious Order Claims Reserve**") to the extent required to implement the Plan, the Tort Claims Allocation Protocol, and the Participating Religious Order Settlement Agreements. ASF Settlement Trust Operating Expenses directly allocable to the administration of Religious Order Claims and the Religious Order Claims Reserve shall be charged against the Religious Order Claims Reserve, as reasonably determined by the ASF Settlement Trustee.

(e) The ASF Settlement Trustee may, from time to time, create such accounts and reasonable reserves within the ASF Settlement Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for Distributions to the Beneficiaries and the payment of ASF Settlement Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**ASF Settlement Trust Subaccounts**"). Any such ASF Settlement Trust Subaccounts established by the ASF Settlement Trustee shall be held as ASF Settlement Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

Section 3.2 _Investment Guidelines._

(a) The ASF Settlement Trustee may invest the ASF Settlement Trust Assets in insured checking accounts, money market accounts and certificates of deposit.

Section 3.3 _Payment of ASF Settlement Trust Operating Expenses._ All ASF Settlement Trust operating expenses shall be payable out of the ASF Settlement Trust Assets. None of the ASF Settlement Trustee, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any ASF Settlement Trust operating expense or any other liability of the ASF Settlement Trust. The Plan provides that the Reorganized Debtor shall pay to the ASF Settlement Trust all of the ASF Settlement Trust Operating Expenses (as defined above) excluding ASF Settlement Trust Operating Expenses directly allocable to the

EXHIBIT C

administration of Religious Order Claims and the Religious Order Claims Reserve (see Section 5.5, below), within 30 days of invoice from the ASF Settlement Trust.

# ARTICLE 4.
## CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1     *Claims Administration and Distributions.* The ASF Settlement Trust shall fairly and reasonably compensate Class 3 Tort Claims and shall pay up to the full value of such claims, solely in accordance with the ASF Settlement Trust Documents, including the Tort Claims Allocation Protocol.

Section 4.2     *Intentionally Omitted.*

Section 4.3     *Manner of Payment.*     Distributions from the ASF Settlement Trust to the Beneficiaries may be made by the ASF Settlement Trustee on behalf of the ASF Settlement Trust or by a disbursing agent retained by the ASF Settlement Trust to make Distributions on behalf of the ASF Settlement Trust.

Section 4.4     *Delivery of Distributions.*

(a)     Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) on the date approved for Distribution by the ASF Settlement Trustee (the "**Distribution Date**") in accordance with the terms of the ASF Settlement Trust Documents, including the Tort Claims Allocation Protocol. With respect to each Class 3 Tort Claim approved for payment, Distributions shall be made only after the ASF Settlement Trustee has determined that all obligations of the ASF Settlement Trust with respect to each such Class 3 Tort Claim have been satisfied. In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the ASF Settlement Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary without interest; provided however, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date. After such date, (i) all unclaimed Distributions shall revert to the ASF Settlement Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Claim of such Beneficiary shall be released, settled, compromised and forever barred as against the ASF Settlement Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the ASF Settlement Trust Documents, as if the Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution was first made. The ASF Settlement Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b)     In the event the ASF Settlement Trust holds cash after paying all ASF Settlement Trust Operating Expenses and making all Distributions contemplated under the ASF Settlement Trust Documents, such remaining cash shall be distributed to Beneficiaries in accordance with the Tort Claims Allocation Protocol. If the ASF Settlement Trustee determines that such a Distribution is not economically reasonable in light of the costs associated with distributing such cash to Beneficiaries, the ASF Settlement Trustee shall deliver such cash to a

**EXHIBIT C**

national recognized charitable organization of the ASF Settlement Trustee's choice, which charitable organization shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No ASF Settlement Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c)  Notwithstanding any provision in the ASF Settlement Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Claim if the ASF Settlement Trustee determines that the costs of making such Distribution is greater than the amount of the Distribution to be made.

(d)  The Settlement Trustee shall not make any Distribution to a Beneficiary unless and until the Settlement Trustee has received an original general release of all Claims in favor of all Protected Parties and Exculpated Parties executed by such Beneficiary, in the form attached to, or contained in, the Ballot. For the avoidance of doubt, subject to any order of a court of competent jurisdiction, the Settlement Trustee shall not make any Distribution to a chapter 7 trustee for those holders of Class 3 Tort Claims who have open chapter 7 bankruptcy cases, unless and until the Settlement Trustee has received an original general release of all Claims in favor of all Protected Parties and Exculpated Parties executed by such chapter 7 trustee in the form attached to the Ballot. The ASF Settlement Trustee shall provide copies of Beneficiaries' executed releases to the Reorganized Debtor within five business days of any initial Distribution to such Beneficiary. Any requests by Protected Parties or Exculpated Parties for copies of such executed releases shall be made to and fulfilled by the Reorganized Debtor.

Section 4.5   *Medicare Reimbursement and Reporting Obligations.*

(a)  The ASF Settlement Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of MMSEA (as defined in the Plan); provided that this shall apply only to Channeled Claims that occurred after December 5, 1980.

(b)  The ASF Settlement Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the ASF Settlement Trust. The ASF Settlement Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)  Before remitting funds to Claimants' counsel, or to the Claimant if such Claimant is acting *pro se*, in respect of any Channeled Claim, the ASF Settlement Trustee shall obtain (i) a certification that said Claimant (or such Claimant's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Channeled Claim and (ii) that the Claimants' counsel or Claimant (if Claimant is acting pro se) indemnifies the ASF Settlement Trust for any such obligations.

EXHIBIT C

Section 4.6    *Religious Order Claims Reserve.* Upon receipt of transfer of the ASF Settlement Trust Assets and establishment of the ASF Settlement Trust, the ASF Settlement Trustee shall identify and segregate, by separate account, the Religious Order Contributions for each Participating Religious Order. The ASF Settlement Trustee shall further segregate within each Religious Order Contribution the amounts reserved for the Class 3 Tort Claimants that are identified as beneficiaries of each of the Religious Order Settlement Agreements as shown on the attached Exhibit ___.  If a Class 3 Tort Claimant is identified as a beneficiary of a Religious Order Settlement Agreement, that Class 3 Tort Claimant shall receive a Distribution from the respective Religious Order Contribution in addition to that Tort 3 Tort Claimant's Distribution from the ASF Settlement Trust. The ASF Settlement Trustee shall further identify and segregate the portion of the Religious Order Contribution that is to be distributed to all Class 3 Tort Claimants other than those identified as beneficiaries of Religious Order Settlement Agreements. Distributions to Class 3 Tort Claimants identified as beneficiaries of Religious Order Settlement Agreements shall be governed by the ASF Settlement Trust Documents the same as all other Distributions to Class 3 Tort Claimants.

# ARTICLE 5.
## ASF SETTLEMENT TRUSTEE

Section 5.1    *Initial ASF Settlement Trustee.* The initial ASF Settlement Trustee shall be Omni Management Group LLC.

Section 5.2    *Term of Service, Successor ASF Settlement Trustee.*

(a)    The ASF Settlement Trustee shall serve from the Effective Date until the earliest of (i) its resignation pursuant to Section 5.2(b) below, (ii) its removal pursuant to Section 5.2(c) below, (iii) its dissolution and (iv) the termination of the ASF Settlement Trust pursuant to Section 8.2 below.

(b)    The ASF Settlement Trustee may resign at any time upon written notice filed with the Bankruptcy Court.  Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)    The ASF Settlement Trustee may be removed by order of the Bankruptcy Court, in the event that the ASF Settlement Trustee becomes unable to discharge its duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the ASF Settlement Trustee has received reasonable notice and an opportunity to be heard.  Other good cause shall mean gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the ASF Settlement Trust, any substantial failure to comply with the administration of the ASF Settlement Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the ASF Settlement Trustee hereunder.

EXHIBIT C

Section 5.3    _Appointment of Successor ASF Settlement Trustee._

(a)    In the event of any vacancy in the office of the ASF Settlement Trustee, including the resignation or removal of any successor ASF Settlement Trustee, such vacancy shall be filled by order of the Bankruptcy Court.

(b)    Immediately upon the appointment of any successor ASF Settlement Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor ASF Settlement Trustee hereunder shall be vested in and undertaken by the successor ASF Settlement Trustee without any further act.  No successor ASF Settlement Trustee shall be liable personally for any act or omission of its predecessor ASF Settlement Trustee.  No predecessor ASF Settlement Trustee shall be liable personally for any act or omission of its successor ASF Settlement Trustee.  No successor ASF Settlement Trustee shall have any duty to investigate the acts or omissions of its predecessor ASF Settlement Trustee, unless there is reasonable cause to do so.

(c)    Each successor ASF Settlement Trustee shall serve until the earliest of (i) his or her death or dissolution, (ii) its resignation pursuant to Section 5.2(b) above, (iii) its removal pursuant to Section 5.2(c) above, and (iv) the termination of the ASF Settlement Trust pursuant to Section 8.2 below.

Section 5.4    _Intentionally Omitted._

Section 5.5    _Compensation and Expenses of ASF Settlement Trustee._ The ASF Settlement Trustee shall receive compensation from the ASF Settlement Trust for his or her services as ASF Settlement Trustee. The initial amount of the ASF Settlement Trustee's compensation shall be $290.00 per hour and $145.00 per hour for the ASF Settlement Trustee's associates. The ASF Settlement Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the ASF Settlement Trustee in the course of carrying out his or her duties as ASF Settlement Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the ASF Settlement Trustee.  The amounts paid to the ASF Settlement Trustee for compensation and expenses shall be disclosed in the Annual Report.  The Reorganized Debtor is liable for the ASF Settlement Trustee's compensation and expenses and shall pay such fees and expenses to the ASF Settlement Trust within 30 days of invoicing by the ASF Settlement Trustee. Notwithstanding anything in this Agreement to the contrary, the Reorganized Debtor is not liable for the ASF Settlement Trustee's compensation or expenses, including attorneys' fees, relating to or incurred in connection with Religious Order Claims and the Religious Order Claims Reserve, including but not limited to administration, lien resolution, other dispute resolution, distribution, reporting, or compliance with any applicable statute or regulation (such compensation and expenses, the

14

**EXHIBIT C**

"Religious Order Reserve Costs"). The Religious Order Reserve Costs shall be paid from the Religious Order Claims Reserve.

Section 5.6    *ASF Settlement Trustee's Independence.*

(a)    The ASF Settlement Trustee shall not, during its service, hold a financial interest in, act as attorney or agent for or serve as any other professional for Reorganized Debtor or its affiliated persons. No ASF Settlement Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Case.

(b)    The ASF Settlement Trustee shall be indemnified by the ASF Settlement Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)    Persons dealing with the ASF Settlement Trust and the ASF Settlement Trustee, respect to the affairs of the ASF Settlement Trust, shall have recourse only to the ASF Settlement Trust Assets to satisfy any liability incurred by the ASF Settlement Trust or the ASF Settlement Trustee to such Person in carrying out the terms of this ASF Settlement Trust Agreement, and neither the ASF Settlement Trustee, the Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.7    *Standard of Care; Exculpation.*

(a)    As used herein, the term "**ASF Settlement Trust Indemnified Party**" shall mean the ASF Settlement Trustee, the Tort Claims Reviewer, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**ASF Settlement Trust Indemnified Parties**").

(b)    No ASF Settlement Trust Indemnified Party shall be liable to the ASF Settlement Trust, any other ASF Settlement Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the ASF Settlement Trust, except in the case of such ASF Settlement Trust Indemnified Party's gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the ASF Settlement Trust Indemnified Parties shall have no liability for any action in performance of their duties under this ASF Settlement Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the ASF Settlement Trust Indemnified Parties. None of the provisions of this ASF Settlement Trust Agreement shall require the ASF Settlement Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any ASF Settlement Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the ASF Settlement Trust Documents, which the ASF Settlement Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.7 shall relieve the ASF Settlement Trust Indemnified Parties from any liability for any

**EXHIBIT C**

actions or omissions arising out of the gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the ASF Settlement Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)     The ASF Settlement Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the ASF Settlement Trust or for any liabilities or obligations of the ASF Settlement Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the ASF Settlement Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the ASF Settlement Trust, shall look solely to the ASF Settlement Trust Assets for satisfaction of any such claims.

(d)     To the extent that, at law or in equity, the ASF Settlement Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the ASF Settlement Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, [including Section 3806 of the Act,] and replaced by the duties and liabilities expressly set forth in this ASF Settlement Trust Agreement with respect to the ASF Settlement Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this ASF Settlement Trust Agreement, including but not limited to this Section 5.7 and its subparts.

(e)     The ASF Settlement Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the ASF Settlement Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the ASF Settlement Trust, including actions taken or omitted in fulfillment of their duties with respect to the ASF Settlement Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud.

(f)     The ASF Settlement Trust may maintain appropriate insurance coverage for the protection of the ASF Settlement Trust Indemnified Parties, as determined by the ASF Settlement Trustee in his or her discretion.

Section 5.8     _Protective Provisions._

(a)     Every provision of this ASF Settlement Trust Agreement relating to the conduct or affecting the liability of or affording protection to ASF Settlement Trust Indemnified Parties shall be subject to the provisions of this Section 5.8.

(b)     In the event the ASF Settlement Trustee retains counsel (including at the expense of the ASF Settlement Trust), the ASF Settlement Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event

16

**EXHIBIT C**

shall the ASF Settlement Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the ASF Settlement Trustee in the performance of duties hereunder. A successor to any ASF Settlement Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)     To the extent that, at law or in equity, the ASF Settlement Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the ASF Settlement Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this ASF Settlement Trust Agreement with respect to the ASF Settlement Trustee, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this ASF Settlement Trust Agreement, including but not limited to Section 5.7 herein.

(d)     No ASF Settlement Trust Indemnified Party shall be personally liable under any circumstances, except for their own gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)     No provision of this ASF Settlement Trust Agreement shall require the ASF Settlement Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)     In the exercise or administration of the ASF Settlement Trust hereunder, the ASF Settlement Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the ASF Settlement Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the ASF Settlement Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.9     *Indemnification.*

(a)     Without the need for further court approval, the ASF Settlement Trust hereby indemnifies, holds harmless, and defends the ASF Settlement Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of New Mexico, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the ASF Settlement Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud.

17

EXHIBIT C

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the ASF Settlement Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the ASF Settlement Trust shall be paid by the ASF Settlement Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the ASF Settlement Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the ASF Settlement Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the ASF Settlement Trust.

(c)     The ASF Settlement Trustee may purchase and maintain appropriate amounts and types of insurance on behalf of the ASF Settlement Trust Indemnified Parties, as determined by the ASF Settlement Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a ASF Settlement Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)     The indemnification provisions of this ASF Settlement Trust Agreement with respect to any ASF Settlement Trust Indemnified Party shall survive the termination of such ASF Settlement Trust Indemnified Party from the capacity for which such ASF Settlement Trust Indemnified Party is indemnified. Termination or modification of this ASF Settlement Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any ASF Settlement Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such ASF Settlement Trust Indemnified Party is entitled to indemnification under this ASF Settlement Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)     The rights to indemnification hereunder are not exclusive of other rights which any ASF Settlement Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

EXHIBIT C

Section 5.10    _Bond._ The ASF Settlement Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

Section 5.11    _Intentionally Omitted._

Section 5.12    _Intentionally Omitted._

## ARTICLE 6.
## INTENTIONALLY OMITTED.

## ARTICLE 7.
## INTENTIONALLY OMITTED

## ARTICLE 8.

## GENERAL PROVISIONS

Section 8.1    _Irrevocability._ To the fullest extent permitted by applicable law, the ASF Settlement Trust is irrevocable. The Settlor shall not (i) retain any ownership or residual interest whatsoever with respect to any ASF Settlement Trust Assets, including, but not limited to, the funds transferred to fund the ASF Settlement Trust, and (ii) have any rights or role with respect to the management or operation of the ASF Settlement Trust, or the ASF Settlement Trustee's administration of the ASF Settlement Trust.

Section 8.2    _Term; Termination._

(a)    The term for which the ASF Settlement Trust is to exist shall commence on the date of the filing of the Certificate of ASF Settlement Trust and shall terminate pursuant to the following provisions.

(b)    The ASF Settlement Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the ASF Settlement Trust because (i) all reasonably expected assets have been collected by the ASF Settlement Trust, (ii) all Distributions have been made to the extent set forth in the Tort Claims Allocation Protocol, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining ASF Settlement Trust obligations and ASF Settlement Trust Operating Expenses in a manner consistent with the ASF Settlement Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)    Following the dissolution and Distribution of the ASF Settlement Trust Assets, the ASF Settlement Trust shall terminate, and the ASF Settlement Trustee shall execute and cause a Certificate of Cancellation of the Certificate of ASF Settlement Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this ASF Settlement Trust Agreement, the existence of the ASF Settlement Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

19

EXHIBIT C

(d)     After termination of the ASF Settlement Trust and solely for the purpose of liquidating and winding up its affairs, the ASF Settlement Trustee shall continue to act as ASF Settlement Trustee until its duties hereunder have been fully performed.  The ASF Settlement Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the ASF Settlement Trustee until Distribution of all the ASF Settlement Trust Assets. For purposes of this provision, ASF Settlement Trust Assets will be deemed distributed when the total amount remaining in the ASF Settlement Trust is less than $50,000 and no further actions are pending or have yet to be brought.  At the ASF Settlement Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the final Distribution of the ASF Settlement Trust Assets, and (ii) the date until which the ASF Settlement Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the ASF Settlement Trustee shall not destroy or discard any books, records, documents or files relating to the ASF Settlement Trust without giving Reorganized Debtor the opportunity to take control of such books, records, documents and/or files.

(e)     Upon termination of the ASF Settlement Trust and accomplishment of all activities described in this agreement, the ASF Settlement Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the ASF Settlement Trustee or his agents or representatives). The ASF Settlement Trustee may, at the expense of the ASF Settlement Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 8.3     *Outgoing ASF Settlement Trustee Obligations.*

In the event of the resignation or removal of the ASF Settlement Trustee, the resigning or removed ASF Settlement Trustee shall:

(a)     execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the successor ASF Settlement Trustee to effect such resignation or removal and the conveyance of the ASF Settlement Trust Assets then held by the resigning or removed ASF Settlement Trustee to the successor ASF Settlement Trustee;

(b)     deliver to the successor ASF Settlement Trustee all documents, instruments, records and other writings relating to the ASF Settlement Trust Assets as may be in the possession or under the control of the resigning or removed ASF Settlement Trustee;

(c)     otherwise assist and cooperate in effecting the assumption of the resigning or removed ASF Settlement Trustee's obligations and functions by the successor ASF Settlement Trustee; and

(d)     irrevocably appoint the successor ASF Settlement Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed ASF Settlement Trustee is obligated to perform under this ASF Settlement Trust Agreement. Such appointment shall not be affected

20

**EXHIBIT C**

by the subsequent disability or incompetence of the ASF Settlement Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the ASF Settlement Trustee and the appointment of the successor ASF Settlement Trustee.

Section 8.4     *Taxes.*

(a)     The ASF Settlement Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC, as amended (the "**QSF Regulations**"), with respect to which Reorganized Debtor shall timely make an election to treat the ASF Settlement Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)     The ASF Settlement Trustee shall be the "administrator" of the ASF Settlement Trust within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the ASF Settlement Trust out of the ASF Settlement Trust Assets, which assets may be sold by the ASF Settlement Trustee to the extent necessary to satisfy tax liabilities of the ASF Settlement Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of ASF Settlement Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the ASF Settlement Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations.  The ASF Settlement Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the ASF Settlement Trust for all taxable periods through the Dissolution Date.

(c)     As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the ASF Settlement Trust shall make a good faith valuation of the Aggregate Settlement Consideration and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the ASF Settlement Trust shall be entitled to retain such professionals and advisors as the ASF Settlement Trustee shall determine to be appropriate or necessary, and the ASF Settlement Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)     The ASF Settlement Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this ASF Settlement Trust Agreement.  The ASF Settlement Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this ASF Settlement Trust Agreement.  In order

**EXHIBIT C**

to receive Distributions, all Beneficiaries shall be required to provide tax information to the ASF Settlement Trustee to the extent the ASF Settlement Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the ASF Settlement Trustee for these purposes. The ASF Settlement Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the ASF Settlement Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the ASF Settlement Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the ASF Settlement Trust. In no event shall any escheat to any federal, state or local government or any other entity.

Section 8.5     *Modification.*

(a)     Material modifications to this ASF Settlement Trust Agreement, including Exhibits hereto, may be made only with the approval of the Bankruptcy Court; provided however, that the ASF Settlement Trustee may amend this ASF Settlement Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make minor corrective or clarifying amendments necessary to enable the ASF Settlement Trustee to effectuate the provisions of this ASF Settlement Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to the Bankruptcy Court. Except as permitted pursuant to the preceding sentence, the ASF Settlement Trustee shall not modify this ASF Settlement Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The ASF Settlement Trustee shall file notice of any modification of this ASF Settlement Trust Agreement with the Bankruptcy Court.

(b)     Intentionally omitted.

(c)     Notwithstanding anything set forth in this ASF Settlement Trust Agreement to the contrary, none of this ASF Settlement Trust Agreement, nor any document related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and Confirmation Order or (iii) the ASF Settlement Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

Section 8.6     *Intentionally Omitted.*

Section 8.7     *Severability.* If any provision of this ASF Settlement Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this ASF Settlement Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and

EXHIBIT C

such provision of this ASF Settlement Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 8.8      *Notices.* Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email or facsimile pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

> To the ASF Settlement Trustee:
>
> Omni Management Group, Inc.
> Attn: Eric Schwarz
> 5955 De Soto Ave., Suite 100
> Woodland Hills, CA 91367
>
> with a copy (which shall not constitute notice) to:
>
> Pachulski Stang Ziehl & Jones LLP
> Attn: James I. Stang
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, California 90067
> Email: jstang@pszjlaw.com
>
> To Reorganized Debtor:
>
> Archdiocese of Santa Fe
> Attn: Tony Salgado, CPA
> 4000 St. Joseph Pl NW
> Albuquerque, NM 87120
> tsalgado@asfcca.org
>
> with a copy (which shall not constitute notice) to:
>
>  Ford Elsaesser
> Elsaesser Anderson, Chtd.
> P. O. Box 369
> 535 High Street
> Priest River, ID 83856
> ford@eaidaho.com
>
> and
>
> Thomas D. Walker
> Walker & Associates, P.C.
> 500 Marquette Ave. NW, Suite 650
> Albuquerque, NM 87102

23

**EXHIBIT C**

twalker@walkerlawpc.com

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 8.9    *Successors and Assigns.*  The provisions of this ASF Settlement Trust Agreement shall be binding upon and inure to the benefit of the ASF Settlement Trust, the ASF Settlement Trustee, and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this ASF Settlement Trust Agreement except, in the case of the ASF Settlement Trust and the ASF Settlement Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 8.10    *Limitation on Transferability; Beneficiaries' Interests.* The Beneficiaries' interests in the ASF Settlement Trust shall not (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void *ab initio,* except to the extent necessary for the Beneficiary to create a qualified settlement trust; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the ASF Settlement Trust or the ASF Settlement Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any ASF Settlement Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the ASF Settlement Trust Assets. Beneficiaries shall have no interest of any kind in any of the ASF Settlement Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the ASF Settlement Trustee to be distributable as Distributions in accordance with the ASF Settlement Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the ASF Settlement Trust Documents.

Section 8.11    *Exemption from Registration.*

The Parties hereto intend that the rights of the Beneficiaries arising under this ASF Settlement Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the ASF Settlement Trust will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 8.12    *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this ASF Settlement Trust Agreement is contained herein and in the documents referred to herein, and this ASF Settlement Trust Agreement and such documents supersede any prior oral or written agreements

**EXHIBIT C**

concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 8.13    _Headings._ The headings used in this ASF Settlement Trust Agreement are inserted for convenience only and do not constitute a portion of this ASF Settlement Trust Agreement, nor in any manner affect the construction of the provisions of this ASF Settlement Trust Agreement.

Section 8.14    _Governing Law._

This ASF Settlement Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of New Mexico, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. None of the following provisions of New Mexico law shall apply to the extent inconsistent with the terms of the ASF Settlement Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of ASF Settlement Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in ASF Settlement Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the ASF Settlement Trustee set forth or referenced in this ASF Settlement Trust Agreement.

Section 8.15    _Settlor's Representative._

Pursuant to the ASF Settlement Trust Documents, the Reorganized Debtor is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action consistent with Reorganized Debtor's obligations under the ASF Settlement Trust Documents that is reasonably requested of the Settlor by the ASF Settlement Trustee pursuant to the ASF Settlement Trust Documents. Pursuant to the ASF Settlement Trust Documents, the Settlor's Representative shall cooperate with the ASF Settlement Trustee and the ASF Settlement Trust's officers, employees and professionals in connection with the ASF Settlement Trust's administration of the Aggregate Settlement Consideration, including, but not limited to, providing the ASF Settlement Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Aggregate Settlement Consideration, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, Reorganized Debtor to the extent that the ASF Settlement Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request.

**EXHIBIT C**

Section 8.16     _Intentionally Omitted._

Section 8.17     _Independent Legal and Tax Counsel._

All parties to this ASF Settlement Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this ASF Settlement Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this ASF Settlement Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 8.18     _Waiver of Jury Trial._

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this ASF Settlement Trust Agreement.

Section 8.19     _Effectiveness._

This ASF Settlement Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 8.20     _Counterpart Signatures._

This ASF Settlement Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this ASF Settlement Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

EXHIBIT C

IN WITNESS WHEREOF, the parties have executed this ASF Settlement Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

[SETTLOR]

[TRUSTEE]

# EXHIBIT C

**EXHIBIT C**

**EXHIBIT 1**
**TORT CLAIMS ALLOCATION PROTOCOL**

**EXHIBIT C**

DOCS_LA:342285.24 85353/002
DOCS_LA:344055.4 05066/002

# Exhibit D - ASF Parish List

**Name**

The Cathedral Basilica of St. Francis of Assisi
Cristo Rey Parish
San Isidro
Santa Maria de La Paz Catholic Community
Shrine of Our Lady of Guadalupe
St. Anne's
St. John the Baptist

**Name**

Church of the Ascension
Holy Family
Holy Ghost
Immaculate Conception
Nativity of the Blessed Virgin Mary
Our Lady of Fatima
Our Lady of Guadalupe
Our Lady of Lavang
Our Lady of the Annunciation
Our Lady of the Assumption
Our Lady of the Most Holy Rosary
Prince of Peace Catholic Community
Queen of Heaven
Risen Savior Catholic Community
Sacred Heart
Saint John XXIII Catholic Community
San Felipe de Neri
San Ignacio
San Jose
Sangre de Cristo
Santuario de San Martin de Porres
Shrine of St. Bernadette
Shrine of the Little Flower /
    St. Therese of the Infant Jesus
St. Anne
St. Charles Borromeo
St. Edwin
St. Francis Xavier
St. Joseph on the Rio Grande
St. Jude Thaddeus
St. Thomas Aquinas University Parish
Our Lady of Perpetual Help

# Parishes Outside of Santa Fe and Albuquerque

| Name |
| --- |
| Abiquiu - St. Thomas Apostle |
| Anton Chico - San Jose |
| Arroyo Seco - La Santisima Trinidad |
| Belen - Our Lady of Belen |
| Bernalillo - Our Lady of Sorrows |
| Cerrillos - St. Joseph |
| Chama - St. Patrick |
| Chimayo - Holy Family |
| Cimarron - Immaculate Conception Church |
| Clayton - St. Francis Xavier |
| Clovis - Our Lady of Guadalupe |
| Clovis - Sacred Heart |
| Corrales - San Ysidro |
| Dixon - St. Anthony |
| El Rito - San Juan Nepomuceno |
| Española - Sacred Heart |
| Fort Sumner - St. Anthony of Padua |
| Isleta Pueblo - St. Augustine |
| Jemez Pueblo - San Diego Mission |
| Jemez Springs - Our Lady of the Assumption |
| La Joya - Our Lady of Sorrows |
| Las Vegas - Immaculate Conception |
| Las Vegas - Our Lady of Sorrows Church |
| Los Alamos - Immaculate Heart of Mary |
| Los Lunas - San Clemente |
| Los Ojos - San Jose |
| Mora - St. Gertrude the Great |
| Moriarty - Estancia Valley Catholic Parish |
| Mountainair - St. Alice |
| Pecos - St. Anthony of Padua |
| Peña Blanca - Nuestra Señora de Guadalupe |
| Peñasco - San Antonio de Padua |
| Peralta - Our Lady of Guadalupe |
| Pojoaque - Nuestra Senora de Guadalupe |
| Portales - St. Helen |
| Questa - St. Anthony |
| Ranchos de Taos - San Francisco de Asis |
| Raton - St. Patrick-St. Joseph |
| Ribera, San Miguel del Vado |
| Rio Rancho, Church of the Incarnation |
| Rio Rancho, St. John Vianney Church |
| Rio Rancho, St. Thomas Aquinas |
| Roy Mosquero, Holy Family-St. Joseph |
| San Juan, Ohkay Owingeh - San Juan Bautista |
| Santa Cruz - Holy Cross |
| Santa Rosa - St. Rose of Lima |
| Socorro - San Miguel |
| Springer - St. Joseph |
| Taos - Nuestra Señora de Guadalupe |
| Tierra Amarilla - Santo Niño |
| Tijeras - Holy Child |
| Tome - Immaculate Conception |
| Tucumcari - St. Anne |
| Vaughn - St. Mary |
| Villanueva - Our Lady of Guadalupe |
| Wagon Mound - Santa Clara |

EXHIBIT E

PARTICIPATING PARTY AGREEMENT

# ASF PARTICIPATING PARTY AGREEMENT

This Agreement is entered into on the date below indicated, by and among The Roman Catholic Church of the Archdiocese of Santa Fe ("**Debtor**" or "**Archdiocese**") and the undersigned, each identified as an ASF Participating Party, and together with Debtor, the "**Parties**").

## RECITALS

A.      Debtor filed its Chapter 11 case on December 3, 2018 in the United States Bankruptcy Court for the District of New Mexico. The case is administered under Case Number 18-13027-t11 (the "**Reorganization Case**").

B.      The Archdiocese contains "parishes" and other juridic persons. Each Parish is led by a pastor appointed by the Archbishop and is a separately incorporated corporation pursuant to New Mexico law. There are other Catholic religious and public benefit corporations operating high schools, cemeteries, scholarship and other assistance programs within the geographic territory of the Archdiocese and subject to the canonical jurisdiction of the Archbishop.

C.      Certain Tort Claimants, holders of Claims, and The Official Committee of Unsecured Creditors (the "**Committee**") have alleged or may in the future allege that the Parishes and related entities are legally identical to Debtor, so that their property has direct liability for Claims against Debtor, including claimants in connection with Tort Claims who have alleged or that may in the future allege actions or failures to act arising within the territory of the Archdiocese.

D.      Debtor or its Estate (including by or through the Committee) may have rights against Parishes and related Entities.

E.      The Committee filed certain actions against Parishes and related Entities that are pending in the Bankruptcy Court, Case Nos. 20-ap-01058, 20-ap-01059, and 20-ap-01061 (the "**Actions**"). The Parish Steering Committee of the Archdiocese of Santa Fe has sought to appeal to the United States Court of Appeals for the Tenth Circuit the order of the Bankruptcy Court authorizing the Committee's commencement of the Actions, pending in No. 21-702.

F.      Debtor will file the Debtor's Plan of Reorganization dated October [], 2022, as amended (the "**Plan**"), for the purpose of fairly and finally resolving all their legal and other disputes, including with Tort Claimants. The ASF Participating Parties are interested in seeing Debtor accomplish that reorganization and in fact are contributing to the funding required of Debtor for purposes of creating a trust for the benefit of the Tort Claimants.

G.      Debtor will establish the ASF Settlement Trust under the Plan for the benefit of the Tort Claimants and fund it with an initial contribution of at least $65,000,000.

H.      The ASF Participating Parties will collectively make a contribution to support the Plan and the transactions contemplated thereunder, including funding the Trust, and in exchange each ASF Participating Party will be named as an "ASF Participating Party" and "Protected Party" under the Plan.

1

I.      Absent entry of the Channeling Injunction and related protections provided by the Plan, the ASF Participating Parties would not be able to fund contributions to support Debtor's payments under the Plan.

J.      The Plan provides for compromise of Debtor's and the ASF Participating Parties' rights against certain Settling Insurers. Absent entry of the Channeling Injunction and related protections provided by the Plan, the ASF Participating Parties would not be willing to consent to settlement and release of claims against Settling Insurers.

K.      By this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in matters with other unrelated parties, without future trial or adjudication of any issues of fact or law, and without admission of liability or responsibility, a full and final settlement that releases and terminates all obligations and liabilities of the Parties between themselves and provides for a General Release and Channeling Injunction against any present or future Tort Claims asserted against the ASF Participating Parties, as well as dismissal of the Actions and Tenth Circuit appeal.

**AGREEMENTS**

1.      <u>Consideration</u>. Now, therefore, in full settlement of the claims between the ASF Participating Parties and Debtor and in consideration of the Channeling Injunction, General Release, and other provisions in the Plan, the undersigned shall pay or contribute an amount agreed upon by the undersigned and Debtor (the "**Settlement Payment**") subject to the terms and conditions contained in this Agreement, the Plan, and the final order of the bankruptcy court confirming the Plan ("**Confirmation Order**").

2.      <u>Dismissal of Actions</u>. The undersigned directs its counsel to execute and file a stipulation for dismissal of the Actions and the Tenth Circuit appeal with prejudice, each party to bear its own costs and attorneys' fees.

3.      <u>Dismissal of State Court Litigation</u>. To the extent that a Parish or school is a party to an action pending seeking damages or other recovery in connection with a Tort Claim subject to the Channeling Injunction provided in the Plan, the undersigned directs counsel to execute and file a dismissal with prejudice in any state court in which litigation regarding the relevant Tort Claim is pending against a Parish ("**State Court Litigation**"), each party to bear its own costs and attorneys' fees incurred therein.

4.      <u>Plan Provisions</u>. Provided that the Plan which is confirmed by the Bankruptcy Court in the Reorganization Case is substantially consistent with the terms of the Plan circulated on October 11, 2022 (the "**Plan**") and a Confirmation Order is entered which is consistent with the Plan and does not materially and adversely affect the rights, duties, or interests of Debtor or the ASF Participating Parties under this Agreement, the undersigned shall pay the Settlement Payment prior to the Contribution Date required under the Plan.

5.      <u>Agreement Effective Date</u>. This Agreement shall be effective upon the date that all Parties have executed this Agreement and shall be binding upon Debtor on the Effective Date of the Plan. This Agreement shall be effective upon all of the Parishes and other entities identified on Schedule 1 upon the Effective Date of the Plan.

118124418.1

6.      Escrow. If this Agreement does not become effective, all contributions by ASF Participating Parties to the Archdiocese to fund the Plan shall be returned to the applicable funding entity. Prior to the Effective Date, all contributions by ASF Participating Parties shall be held in trust for the benefit of the respective contributing entities.

7.      Neutrality. Nothing herein shall affect ASF Participating Parties' rights relating to their own insurers, indemnitors, subrogees, or others against whom the ASF Participating Parties may have rights to seek indemnity or reimbursement unless any such Entity is a Protected Party or is otherwise expressly protected by or under the Plan, the Confirmation Order, or this Agreement.

8.      Jurisdiction. The ASF Participating Parties shall be subject to the Bankruptcy Court's jurisdiction for the purpose of enforcing this Agreement and the provisions of the Confirmation Order applicable to the ASF Participating Parties.  The Bankruptcy Court's jurisdiction is exclusive, to the fullest extent permitted by applicable law, with respect to enforcement of the Channeling Injunction, the Plan, the Confirmation Order, and this Agreement including certain other issues related to or arising in the Reorganization Case.

9.      Merger and Enforcement. The Parties intend that this Agreement shall be complete and shall not be subject to any claims of accident, unilateral mistake, mutual mistake, mistake of fact, rescission, reformation, or claims of similar effect, and they intend by this Agreement to resolve all present and future disputes between them relating to the Claims including Tort Claims.

10.      Representation by Counsel. The Parties acknowledge and agree that this Agreement was bargained for and entered into in good faith and as the result of arm's length negotiations, and that at all times material they have been represented by counsel of their own choosing concerning the rights affected by this Agreement, the form and content of it, and the advisability of executing it. This Agreement has been reviewed by counsel for each of the Parties and shall not be strictly construed against any Party.

11.      Representations and Warranties. Each Party represents and warrants that this Agreement has been thoroughly negotiated and analyzed by its counsel and has been executed and delivered in good faith, pursuant to arm's length negotiations, and for value and valuable consideration. Subject to confirmation of the Plan and entry of the Confirmation Order, each Party represents and warrants that it has authority to execute this Agreement as its binding and legal obligation. Each Party represents and warrants that the person signing this Agreement on its behalf is authorized to execute this Agreement and that it has read this Agreement in full.

12.      Non-Prejudice and Construction of Agreement. This Agreement is subject to Federal Rule of Evidence 408 and similar state law rules of evidence applicable to compromises, is intended to be and is a compromise between the Parties, and shall not be construed as an admission of liability. This Agreement is without prejudice to positions taken or that may be taken by the Parishes relating to other insureds or claimants, and without prejudice to positions taken or that will be taken by Debtor relating to third parties. Nothing in this Agreement, express or implied, confers on any Entity, other than the Parties, any benefit or any legal or equitable right, remedy, or Claim.

3

13. <u>No Modification</u>. Before the entry of the Confirmation Order, no change or modification of this Agreement shall be valid, even if supported by additional consideration, unless it is made in writing and signed by the Parties. After the entry of the Confirmation Order, this Agreement may be changed or modified only in a written notice signed by the Parties and approved by the Bankruptcy Court to the extent required by law.

14. <u>No Waiver</u>. Any Party may specifically and expressly waive in writing any portion of this Agreement or any breach hereof, but only to the extent such provision is for the benefit of the waiving Party, and no such waiver shall constitute a further or continuing waiver of any preceding or succeeding breach of the same or any other provision. The consent by one Party to any act for which such consent was required shall not be deemed to imply consent or waiver of the necessity of obtaining such consent for the same or similar acts in the future, and no forbearance by a Party to seek a remedy for noncompliance or breach by the other Party shall be construed as a waiver of any right or remedy with respect to such noncompliance or breach.

15. <u>Governing Law</u>. This Agreement shall be governed by and shall be construed in accordance with the laws of New Mexico without regard to its conflict of law principles, and where necessary, in accordance with federal bankruptcy law.

16. <u>Integration</u>. This Agreement, together with the Plan and the Confirmation Order (when entered), constitutes the entire Agreement among the Parties with respect to the subject matter hereof and thereof, and supersedes all discussions, agreements and understandings, both written and oral, between the Parties with respect thereto.

17. <u>Additional Documents</u>. The Parties shall execute any such other documents as may be reasonably required to obtain the Confirmation Order as set forth herein, or as may reasonably be necessary to effectuate any other requirement or agreement herein.

18. <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed an original. This Agreement is binding when one or more counterparts, individually or taken together, is signed by each of the Parties. This Agreement may be effected by facsimile or other electronic transmission of executed copies of the signature page delivered to counsel for the Parties.

19. <u>Captions and Headings</u>. The captions and headings used in this Agreement are for reference purposes only and shall not be taken into account in construing or interpreting this Agreement.

20. <u>Terms</u>. Terms used in this Agreement shall have the meaning provided in the Plan except where otherwise stated specifically herein.

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK
AND SIGNATURES ON FOLLOWING PAGE]

118124418.1
Case 18-13027-t11   Doc 1145   Filed 11/28/22   Entered 11/28/22 12:05:24   Page 516 of 617
of 241

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New Mexico
religious corporation sole,

By: _____
      Archbishop John Wester

Parish Steering Committee of the Archdiocese of
Santa Fe, for the benefit of the Parishes, Missions,
Shrines and Schools of the Archdiocese identified
on Schedule 1

By _____
Lewis Roca Rothgerber Christie LLP
      Robert M. Charles, Jr.
Attorneys for the Parish Steering Committee of the
Archdiocese of Santa Fe

The Archdiocese of Santa Fe Real Estate
Corporation, as Trustee of the Archdiocese of Santa
Fe Real Estate Trust

By _____
Its _____

The Archdiocese of Santa Fe Deposit and Loan
Fund

By _____
Its _____

Catholic Cemetery Association

By _____
Its _____

Catholic Foundation

By _____
Its _____

Catholic Charities

By _____
Its _____

5

St. Pius X High School

By _____
Its _____

St. Pius X High School Foundation

By _____
Its _____

**EXHIBIT F**

PARTICIPATING RELIGIOUS ORDERS

Servants of the Paraclete

Brothers of the Christian Schools, SFNO District

Sons of the Holy Family

Congregation of the Blessed Sacrament

The Province of St. John the Baptist of the Order of the Friars Minor and The Province of Our Lady of Guadalupe of the Order of Friars Minor

<u>**EXHIBIT G**</u>

<u>**Protected Parties**</u>

<u>**Archdiocese** Parties</u>

- **Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession in the Bankruptcy Case, its Estate, its predecessors, successors, and assigns (the "Archdiocese").**
- **Archdiocese of Santa Fe Catholic Foundation**
- **Catholic Cemetery Association**
- **Catholic Charities**
- **Annual Catholic Appeal Foundation**
- **Archbishop's School Fund, Inc.**
- **Santo Nino Regional Catholic School**
- **Villa Therese Clinic**
- **St. Pius X High School**
- **St. Pius X Foundation**
- **St. Pius X High School, Inc.**
- **SPX Real Estate Corp.**
- **Archdiocese of Santa Fe Deposit & Loan Trust**
- **Archdiocese of Santa Fe Real Estate Trust**
- **Archdiocese of Santa Fe Real Estate Corporation**
- **Society of St. Vincent DePaul**
- **Parishes**
  - The Cathedral Basilica of St. Francis of Assisi
  - Cristo Rey Parish
  - San Isidro
  - Santa Maria de La Paz Catholic Community
  - Shrine of Our Lady of Guadalupe
  - St. Anne's
  - St. John the Baptist
  - Church of the Ascension
  - Holy Family
  - Holy Ghost
  - Immaculate Conception
  - Nativity of the Blessed Virgin Mary
  - Our Lady of Fatima
  - Our Lady of Guadalupe
  - Our Lady of Lavang
  - Our Lady of the Annunciation
  - Our Lady of the Assumption
  - Our Lady of the Most Holy Rosary
  - Prince of Peace Catholic Community
  - Queen of Heaven
  - Risen Savior Catholic Community
  - Sacred Heart
  - Saint John XXIII Catholic Community

1

- San Felipe de Neri
- San Ignacio San Jose
- Sangre de Cristo
- Santuario de San Martin de Porres
- Shrine of St. Bernadette
- Shrine of the Little Flower/St. Therese of the Infant Jesus
- St. Anne
- St. Charles Borromeo
- St. Edwin
- St. Francis Xavier
- St. Joseph on the Rio Grande
- St. Jude Thaddeus
- St. Thomas Aquinas University Parish
- Our Lady of Perpetual Help
- Abiquiu - St. Thomas Apostle
- Anton Chico - San Jose
- Arroyo Seco - La Santisima Trinidad
- Belen - Our Lady of Belen
- Bernalillo - Our Lady of Sorrows
- Cerrillos - St. Joseph
- Chama - St. Patrick
- Chimayo - Holy Family
- Cimarron - Immaculate Conception Church
- Clayton - St. Francis Xavier
- Clovis - Our Lady of Guadalupe
- Clovis - Sacred Heart
- Corrales - San Ysidro
- Dixon - St. Anthony
- El Rito - San Juan Nepomuceno
- Española - Sacred Heart
- Fort Sumner - St. Anthony of Padua
- Isleta Pueblo - St. Augustine
- Jemez Pueblo - San Diego Mission
- Jemez Springs - Our Lady of the Assumption
- La Joya - Our Lady of Sorrows
- Las Vegas - Immaculate Conception
- Las Vegas - Our Lady of Sorrows Church
- Los Alamos - Immaculate Heart of Mary
- Los Lunas - San Clemente
- Los Ojos - San Jose
- Mora - St. Gertrude the Great
- Moriarty - Estancia Valley Catholic Parish
- Mountainair - St. Alice
- Pecos - St. Anthony of Padua
- Peña Blanca - Nuestra Señora de Guadalupe
- Peñasco - San Antonio de Padua
- Peralta - Our Lady of Guadalupe
-  Pojoaque - Nuestra Senora de Guadalupe
- Portales - St. Helen
- Questa - St. Anthony
- Ranchos de Taos - San Francisco de Asis
- Raton - St. Patrick-St. Joseph

2

- Ribera - San Miguel del Vado
- Rio Rancho - Church of the Incarnation
- Rio Rancho, St. John Vianney Church
- Rio Rancho, St. Thomas Aquinas
- Roy Mosquero, Holy Family-St. Joseph
- San Juan, Ohkay Owingeh - San Juan Bautista
- Santa Cruz - Holy Cross
- Santa Rosa - St. Rose of Lima
- Socorro - San Miguel
- Springer - St. Joseph
- Taos - Nuestra Señora de Guadalupe
- Tierra Amarilla - Santo Niño
- Tijeras - Holy Child
- Tome - Immaculate Conception
- Tucumcari - St. Anne
- Vaughn - St. Mary
- Villanueva - Our Lady of Guadalupe
- Wagon Mound - Santa Clara

- ## Missions

| Location | Mission | Mother Parish |
|---|---|---|
| Abeytas | San Antonio | Our Lady of Sorrows, La Joya |
| Abo | San Lorenzo | St. Alice, Mountainair |
| Alamillo | San Antonio | San Miguel, Socorro |
| Albert | San Isidro | Holy Family-St. Joseph, Roy |
| Albuquerque | Our Lady of Mount Carmel | Nativity of the BVM, Albuquerque |
| Albuquerque | San Jose de Los Duranes | San Felipe de Neri, Albuquerque |
| Alcalde | St. Anne | San Juan Bautista, San Juan Pueblo |
| Alcalde | San Antonio | San Juan Bautista, San Juan Pueblo |
| Algodones | San Jose | Our Lady of Sorrows, Bernalillo |
| Alto del Talco | San Santiago | St. Gertrude the Great, Mora |
| Amalia | Santo Niño | St. Anthony, Questa |
| Angel Fire | Holy Angels | Immaculate Conception Church, Cimarron |
| Arroyo Hondo | Nuestra Señora de Dolores | La Santísima Trinidad, Arroyo Seco |
| Aurora | San Antonio | Our Lady of Guadalupe, Villanueva |
| Bernal | Santa Rita | San Miguel del Vado, Ribera |
| Bernalillo | Santuario de San Lorenzo | Our Lady of Sorrows, Bernalillo |
| Black Lake | San Antonio | Immaculate Conception Church, Cimarron |
| Borica | San Isidro | St. Rose of Lima, Santa Rosa |
| Bosque | Cristo Rey | Our Lady of Belen, Belen |
| Buena Vista | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Bueyeros | Sacred Heart | Holy Family-St. Joseph, Roy |
| Canjilon | San Juan Nepomuceno | St. Patrick, Chama |
| Cañon | Nuestra Señora de los Dolores | Nuestra Señora de Guadalupe, Taos |
| Cañon | Our Lady of Guadalupe | San Diego Mission, Jemez Pueblo |
| Cañon Plaza | Our Lady of Mount Carmel | San Juan Nepomuceno, El Rito |
| Cañoncito | Nuestra Señora de La Luz | St. Anthony of Padua, Pecos |
| Cañoncito | San Jose | St. Gertrude the Great, Mora |
| Cañoncito | San Lorenzo | Holy Child, Tijeras |
| Cañones | San Miguel Archangel | St. Thomas Apostle, Abiquiu |
| Capulin | Santo Niño | St. Thomas Apostle, Abiquiu |
| Carnuel | Holy Child | Holy Child, Tijeras |
| Casa Colorada | Immaculate Conception | Immaculate Conception, Tome |

| | | |
|---|---|---|
| Cebolla | Santo Niño de Atocha | St. Patrick, Chama |
| Cedar Crest | San Antonio | Holy Child, Tijeras |
| Cerro | Nuestra Señora de Guadalupe | St. Anthony, Questa |
| Chacon | San Antonio de Padua | St. Gertrude the Great, Mora |
| Chamisal | Santa Cruz | San Antonio de Padua, Peñasco |
| Chamita | San Pablo | San Juan Bautista, San Juan Pueblo |
| Chililli | San Juan Nepomuceno | Holy Child, Tijeras |
| Cleveland | San Antonio de Padua | St. Gertrude the Great, Mora |
| Cochiti Pueblo | St. Bonaventure | Nuestra Señora de Guadalupe, Peña Blanca |
| Colonias | San Jose | St. Rose of Lima, Santa Rosa |
| Contreras | San Jose | Our Lady of Sorrows, La Joya |
| Cordova | San Antonio | Holy Family, Chimayo |
| Costilla | Sagrado Corazon | St. Anthony, Questa |
| Coyote | San Juan Bautista | St. Thomas Apostle, Abiquiu |
| Cuarteles | La Sangre de Cristo | Holy Cross, Santa Cruz |
| Cuervo | Santo Niño | St. Rose of Lima, Santa Rosa |
| Cundiyo | Santo Domingo | Holy Family, Chimayo |
| Dahlia | Santo Niño de Atocha | San Jose, Anton Chico |
| Des Moines | Our Lady of Guadalupe | St. Francis Xavier, Clayton |
| Dilia | Sacred Heart-San Isidro | San Jose, Anton Chico |
| Duran | St. John the Baptist | St. Mary, Vaughn |
| Eagle Nest | St. Mel | Immaculate Conception Church, Cimarron |
| Edgewood | St. Elizabeth Ann Seaton | Estancia Valley Catholic Parish, Moriarity |
| El Carmen | Nuestra Señora de Carmel | St. Gertrude the Great, Mora |
| El Cerrito | Nuestra Señora de Los Desamparados | OL of Guadalupe, Villanueva |
| El Duende | San Francisco | Sacred Heart, Española |
| El Guache | San Antonio | Sacred Heart, Española |
| El Guique | San Rafael | San Juan Bautista, San Juan Pueblo |
| El Llanito | Christ the King | Our Lady of Sorrows Church, Las Vegas |
| El Macho Nuestra | Señora de Guadalupe | St. Anthony of Padua, Pecos |
| El Porvenir | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| El Prado | Santa Teresita de Jesús | Nuestra Señora de Guadalupe, Taos |
| El Pueblo | San Antonio | San Miguel del Vado, Ribera |
| El Rancho | San Antonio de Padua | Nuestra Señora de Guadalupe, Pojoaque |
| El Valle | San Miguel | Holy Family, Chimayo |
| Encino | Our Lady of Guadalupe | St. Mary, Vaughn |
| Ensenada | San Joaquin | San Jose, Los Ojos |
| Escobosa | San Isidro | Holy Child, Tijeras |
| Estaca | San Francisco | San Juan Bautista, San Juan Pueblo |
| Estancia | Sts. Peter and Paul | Estancia Valley Catholic Parish, Moriarity |
| Folsom | St. Joseph | St. Francis Xavier, Clayton |
| Galisteo | Nuestra Señora de Los Remedios | St. Joseph, Cerrillos |
| Gallegos | Immaculate Conception | Holy Family-St. Joseph, Roy |
| Gallina | Nuestra Señora de Guadalupe | St. Thomas Apostle, Abiquiu |
| Gallinas | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Glorieta | Nuestra Señora de Guadalupe | St. Anthony of Padua, Pecos |
| Golden | San Francisco de Asis | St. Joseph, Cerrillos |
| Golondrinas | San Acacio | St. Gertrude the Great, Mora |
| Gonzales Ranch | San Isidro & Santa Teresita | Our Lady of Guadalupe, Villanueva |
| Guachupangue | Our Lady of Guadalupe | Sacred Heart, Española |
| Guadalupita | Nuestra Señora de Guadalupe | St. Gertrude the Great, Mora |
| Hernandez | San Jose | Sacred Heart, Española |
| Holman | Immaculate Heart of Mary | St. Gertrude the Great, Mora |
| Jarales | St. Francis Xavier | Our Lady of Belen, Belen |
| Kelly | San Juan Bautista | San Miguel, Socorro |
| La Bajada | San Miguel | Nuestra Señora de Guadalupe, Peña Blanca |

4

| | | |
|---|---|---|
| La Cañada de Los Alamos | Our Lady of Guadalupe | Cristo Rey Parish, Santa Fe |
| La Cienega | San Jose | San Isidro, Santa Fe |
| La Cueva | San Rafael | St. Gertrude the Great, Mora |
| La Loma | San Antonio | Nuestra Señora de Guadalupe, Taos |
| La Madera | Our Lady of Guadalupe | San Juan Nepomuceno, El Rito |
| La Manga | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| La Mesilla | San Isidro | Holy Cross, Santa Cruz |
| La Petaca | Nuestra Divina Pastora | San Juan Nepomuceno, El Rito |
| La Puebla | Naciemento de Santo Niño Jesús | Holy Cross, Santa Cruz |
| La Puente | St. Michael | San Jose, Los Ojos |
| Lagunita | Our Lady of the Rosary | San Miguel del Vado, Ribera |
| Las Colonias | Santo Niño | St. Anthony of Padua, Pecos |
| Las Colonias | Santo Niño de Atocha | La Santísima Trinidad, Arroyo Seco |
| Las Nutrias | San Isidro | Our Lady of Sorrows, La Joya |
| Las Tablas | San Luis Gonzaga | San Juan Nepomuceno, El Rito |
| Ledoux | San Jose | St. Gertrude the Great, Mora |
| Lemitar | La Sagrada Familia | San Miguel, Socorro |
| Leyba | San Francisco | Our Lady of Guadalupe, Villanueva |
| Llano de San Juan | San Juan Nepomuceno | San Antonio de Padua, Peñasco |
| Los Chavez | Nuestra Señora de Guadalupe | Our Lady of Belen, Belen |
| Llano Quemado | Nuestra Señora del Carmen | San Francisco de Asis, Ranchos de Taos |
| Logan | St. Anthony | St. Anne, Tucumcari |
| Los Cordovas | San Ysidro | San Francisco de Asis, Ranchos de Taos |
| Los Huecos | San Juan Bautista | Santa Clara, Wagon Mound |
| Los LeFebres | Nuestro Señor de Esquipula | Santa Clara, Wagon Mound |
| Los Lentes | San Antonio | San Clemente, Los Lunas |
| Los Luceros | Sagrada Familia | San Juan Bautista, San Juan Pueblo |
| Los Montoyas | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| Los Vigiles | Our Lady of Refuge | Immaculate Conception, Las Vegas |
| Lower Rociada | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Lucero | Santa Rita | St. Gertrude the Great, Mora |
| Luis Lopez | San Jose | San Miguel, Socorro |
| Lyden | San Jose | St. Anthony, Dixon |
| Maes | San Santiago | Our Lady of Sorrows Church, Las Vegas |
| Magdalena | St. Mary Magdalene | San Miguel, Socorro |
| Manzano | Nuestra Señora de Dolores | St. Alice, Mountainair |
| Maxwell | St. Vincent de Paul | St. Patrick-St. Joseph, Raton |
| Meadowlake | Misión de San Juan Diego | San Clemente, Los Lunas |
| Medanales | San Antonio | St. Thomas Apostle, Abiquiu |
| Melrose | St. Catherine | Sacred Heart, Clovis |
| Mesa de Poleo | Santa Teresa | St. Thomas Apostle, Abiquiu |
| Milagro | Our Lady of Sorrows | St. Rose of Lima, Santa Rosa |
| Monte Aplanado | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Montoya | St. Joan of Arc | St. Anne, Tucumcari |
| Nambe | Sagrado Corazon de Jesús | Nuestra Señora de Guadalupe, Pojoaque |
| Nambe | Pueblo San Francisco de Asisi | Nuestra Señora de Guadalupe, Pojoaque |
| Nara Visa | Sacred Heart | St. Anne, Tucumcari |
| Ocate | Nuestra Señora de Guadalupe | Santa Clara, Wagon Mound |
| Ojo Caliente | St. Mary San Juan | Nepomuceno, El Rito |
| Ojo Feliz | San Isidro | St. Gertrude the Great, Mora |
| Ojo Sarco | Santo Tomas | Holy Family, Chimayo |
| Palo Blanco | Our Lady of Mount Carmel | St. Joseph, Springer |
| Pastura | St. Helen | St. Mary, Vaughn |
| Picuris Pueblo | San Lorenzo | San Antonio de Padua, Peñasco |
| Pilar | Nuestra Señora de Dolores | St. Anthony, Dixon |
| Pinos Wells | San Jose | St. Mary, Vaughn |

| | | |
|---|---|---|
| Pintada | Holy Family | St. Rose of Lima, Santa Rosa |
| Placita | Nuestra Señora de la Asuncion | San Antonio de Padua, Peñasco |
| Placitas | San Antonio | Our Lady of Sorrows, Bernalillo |
| Placitas | St. Anthony | San Juan Nepomuceno, El Rito |
| Plaza Blanca | San Antonio | San Jose, Los Ojos |
| Plaza de Arriba | Sangre de Cristo | San Jose, Anton Chico |
| Polvadera | San Lorenzo | San Miguel, Socorro |
| Ponderosa | Santo Toribio | San Diego Mission, Jemez Pueblo |
| Pueblitos | San Isidro | Our Lady of Belen, Belen |
| Puerto de Luna | Our Lady of Refuge | St. Rose of Lima, Santa Rosa |
| Punta de Agua | St. Vincent de Paul | St. Alice, Mountainair |
| Rainsville | Sacred Heart of Jesus | St. Gertrude the Great, Mora |
| Ranchitos | Imaculada Concepcion | Nuestra Señora de Guadalupe, Taos |
| Ranchitos | St. Michael Archangel | San Juan Bautista, San Juan Pueblo |
| Rayado | Holy Child Chapel | Immaculate Conception, Cimarron |
| Red River | St. Edwin | St. Anthony, Questa |
| Riley | Santa Rita | San Miguel, Socorro |
| Rio Chiquito | San Ysidro & Sagrado Corazon | Holy Family, Chimayo |
| Rio en Medio | Our Lady of Sorrows | Shrine of Our Lady of Guadalupe, Santa Fe |
| Rio Lucio | Sagrada Corazon de Jesús | San Antonio de Padua, Peñasco |
| Rodarte | Santa Barbara | San Antonio de Padua, Peñasco |
| Rowe | Sagrada Familia | St. Anthony of Padua, Pecos |
| Sabinal | San Antonio | Our Lady of Sorrows, La Joya |
| Sabinoso | Nuestra Señora de Guadalupe | Holy Family-St. Joseph, Roy |
| San Antonio | San Antonio | San Miguel, Socorro |
| San Antonito | Nuestro Señor de Mapimi | Holy Child, Tijeras |
| San Augustine | San Augustine | Our Lady of Sorrows Church, Las Vegas |
| San Cristobal | San Cristobal | La Santísima Trinidad, Arroyo Seco |
| San Felipe Pueblo | San Felipe | Nuestra Señora de Guadalupe, Peña Blanca |
| San Geronimo | San Geronimo | Our Lady of Sorrows Church, Las Vegas |
| San Idelfonso | Pueblo San Idelfonso | San Juan Bautista, San Juan Pueblo |
| San Ignacio | San Ignacio | Our Lady of Sorrows Church, Las Vegas |
| San Ignacio | San Ignacio | St. Rose of Lima, Santa Rosa |
| San Isidro del Sur | Nuestra Señora de Guadalupe | San Miguel del Vado, Ribera |
| San Isidro Norte | San Isidro Labrador | San Miguel del Vado, Ribera |
| San Jon | Our Lady of Guadalupe | St. Anne, Tucumcari |
| San Jose | San Jose | San Miguel del Vado, Ribera |
| San Juan | San Juan Nepomuceno | San Miguel del Vado, Ribera |
| San Pedro | San Pedro | Holy Cross, Santa Cruz |
| San Ysidro | San Ysidro | San Diego Mission, Jemez Pueblo |
| Sandia Pueblo | St. Anthony | Our Lady of Sorrows, Bernalillo |
| Santa Ana Pueblo | Santa Ana (St. Anthony) | San Diego Mission, Jemez Pueblo |
| Santa Clara Pueblo | Santa Clara | San Juan Bautista, San Juan Pueblo |
| Santo Domingo Pueblo | Santo Domingo | Nuestra Señora de Guadalupe, Peña Blanca |
| Santo Niño | Santo Niño | Holy Cross, Santa Cruz |
| Sapello | Nuestra Señora de Guadalupe | Our Lady of Sorrows, Las Vegas |
| Sedillo | San Isidro | Holy Child, Tijeras |
| Sena Nuestro | Señor Esquipula | Our Lady of Guadalupe, Villanueva |
| Servilleta | St. Anthony | San Juan Nepomuceno, El Rito |
| Sile | Santa Barbara | Nuestra Señora de Guadalupe, Peña Blanca |
| Tajique | San Antonio | Estancia Valley Catholic Parish, Moriarity |
| Talpa | Nuestra Señora de San Juan de Los Lagos | Ranchos de Taos |
| Taos Pueblo | San Geronimo | Nuestra Señora de Guadalupe, Taos |
| Tecolote | Our Lady of Sorrows | Our Lady of Sorrows Church, Las Vegas |
| Tecolotito | Our Lady of Guadalupe | San Jose, Anton Chico |
| Tesuque | San Ysidro | Shrine of Our Lady of Guadalupe, Santa Fe |

6

| | | |
|---|---|---|
| Tesuque Pueblo | San Diego | San Juan Bautista, San Juan Pueblo |
| Texico | San Jose | Our Lady of Guadalupe, Clovis |
| Tinaja | San Isidro | St. Joseph, Springer |
| Torreon | St. Anthony | St. Alice, Mountainair |
| Trampas | San Jose | Holy Family, Chimayo |
| Trementina | San Rafael | Our Lady of Sorrows Church, Las Vegas |
| Tres Piedras | Immaculate Conception | San Juan Nepomuceno, El Rito |
| Truchas | Santo Rosario | Holy Family, Chimayo |
| Trujillo | San Isidro | Our Lady of Sorrows Church, Las Vegas |
| Turquillo | Santa Teresita del Niño Jesus | St. Gertrude the Great, Mora |
| Upper Rociada | San Jose | Our Lady of Sorrows Church, Las Vegas |
| Upper Town | San Antonio | Immaculate Conception, Las Vegas |
| Vadito | Nuestra Señora de Dolores | San Antonio de Padua, Peñasco |
| Valdez | San Antonio de Padua | La Santísima Trinidad, Arroyo Seco |
| Valencia | Sangre de Cristo | Our Lady of Guadalupe, Peralta |
| Vallecitos | Our Lady of Sorrows | San Juan Nepomuceno, El Rito |
| Variadero | Holy Family | Our Lady of Sorrows Church, Las Vegas |
| Veguita | San Juan | Our Lady of Sorrows, La Joya |
| Velarde | Nuestra Señora de Guadalupe | St. Anthony, Dixon |
| Watrous | Sagrado Corazon | Santa Clara, Wagon Mound |
| White Rock | St. Joseph | Immaculate Heart of Mary, Los Alamos |
| Willard | Our Lady of Sorrows | St. Alice, Mountainair |
| Youngsville | San Pedro | St. Thomas Apostle, Abiquiu |
| Zia Pueblo | Our Lady of the Assumption | San Diego Mission, Jemez Pueblo |

- **Shrines**

| Shrine | Mother Parish |
|---|---|
| Santuario de Chimayo\ | Holy Family, Chimayo |
| Shrine of the Little Flower | St. Therese of the Infant Jesus, Albuquerque |
| Shrine of Our Lady of Guadalupe | Shrine of Our Lady of Guadalupe, Santa Fe |
| Shrine of Our Lady of Lourdes | San Juan Baustista, San Juan Pueblo |
| Shrine of St. Bernadette | Shrine of St. Bernadette, Albuquerque Shrine of St. Kateri |
| Tekakwitha | St. Augustine, Isleta Pueblo |

- **Schools**
  - Annunciation Catholic School
  - Holy Ghost Catholic School
  - Our Lady of Fatima Catholic School
  - Our Lady of the Assumption Catholic School
  - Risen Savior Catholic School
  - San Felipe de Neri Catholic School
  - St. Charles Borromeo Catholic School
  - St. Mary Catholic School
  - St. Pius X High School
  - St. Therese Catholic School
  - St. Mary Catholic School (Belen)
  - Holy Child Catholic School
  - St. Thomas Aquinas Catholic School
  - Holy Cross Catholic School
  - Santo Niño Regional Catholic School
  - St. Michael's High School

- Any and all past and present shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers,

and Representatives of the Archdiocese and of the ASF Participating Parties.

- Each of the past, present, and future Affiliates, holding companies, merged companies, related companies, divisions, and acquired companies of the Archdiocese and ASF Participating Parties, and each of their respective past, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors, and assigns, each in their capacity as such.

- **Settling Insurers**

  - **Arrowood Indemnity Company**, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America, and, solely in their capacity as such, (i) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (ii) each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through or in concert with them. For the avoidance of doubt, the inclusion of the phrase "future parents" in this definition is limited to such Entity in its capacity as a "future parent," and nothing contained herein shall limit or alter the obligations of any such Entity to the extent that such obligations exist independent of such Entity's role as a "future parent."
  - **Catholic Mutual Relief Society of America**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, reinsurers, retrocessionaires, and divisions; (ii) each of the foregoing Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies,; (iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
  - **Continental Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
  - **Great American Insurance Company**, and, solely in the capacity as such: (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
  - **Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company**, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, i) each of their past and present parents, subsidiaries, affiliates, and divisions; ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

8

- **United States Fire Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- **Participating Religious Orders and Funding Insurers**

  - **Brothers of the Christian Schools, SFNO District**
  - **Sons of the Holy Family**
  - **Congregation of the Blessed Sacrament**
  - **The Province of St. John the Baptist of the Order of the Friars Minor and The Province of Our Lady of Guadalupe of the Order of Friars Minor**
  - **Servants of the Paraclete**
  - **Arrowood Indemnity Company**, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America and each of its past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' or Entity's respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' or Entity's respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' or Entity's respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through, or in concert with them.
  - **The Catholic Mutual Relief Society of America,** and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, reinsurers, retrocessionaires, and divisions; (ii) each of the foregoing Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; and (iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
  - **Liberty Mutual** and each of its past, present, and future parents, subsidiaries, affiliates, reinsurers and retrocessionaires, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.
  - **Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company**, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
  - **United States Fire Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents,

9

subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- **Hartford Accident and Indemnity Company** and each of its past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through, or in concert with them.

Protected Parties <u>DO NOT</u> include any of the following: (i) any Perpetrator, (ii) any diocese or archdiocese (other than the Archdiocese itself), (iii) any Religious Order other than a Participating Religious Order, or (iv) the Holy See. A liability carrier to a Participating Religious Order in that capacity and a Participating Religious Order will not become Protected Parties unless its respective share of the Participating Religious Order Contribution is made on or before the applicable Participating Religious Orders Contribution Date.

**EXHIBIT H**


**TORT CLAIMS ALLOCATION PROTOCOL FOR TORT CLAIMS FILED IN THE
CHAPTER 11 CASE OF THE
ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE**

1.     **PURPOSE**

The purpose of the Tort Claims Allocation Protocol is to provide for the distribution of funds to Tort Claimants.  **This protocol does not apply to the distribution of funds to any other creditors, including Unknown Tort Claimants.**

2.     **DEFINITIONS**

   2.1     **Capitalized Terms.**

   Capitalized terms used herein shall have the meanings given them in the Plan or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated herein by reference.

   "**Adult Tort Claimant**" means any Tort Claimant who was abused by a Perpetrator of the Debtor for the first time on or after the date that such Tort Claimant was eighteen (18) years of age.

   "**Perpetrator of Debtor**" Means a person: (1) who was an employee or other agent of the Debtor or any other Protected Party (as defined in the Plan) at the time such person committed an act of Abuse; or (2) for whom or for whose actions the Debtor or any other Protected Party (as defined in the Plan) was otherwise responsible.

   "**Tort Claimants**" means, collectively, Holders of Class 3 Tort Claims.

3.     **RULES OF INTERPRETATION AND GENERAL GUIDELINES**

   3.1     **Sole and Exclusive Method.**

   The Plan and the Trust Agreement contemplate that the ASF Settlement Trust will be established for payment of Tort Claims.  The Plan and this protocol shall together be the sole and exclusive method by which a Tort Claimant (and not an Unknown may seek distribution on account of a Tort Claim against the Debtor.  The Plan and the Trust Agreement further contemplate that a separate trust will be established for payment of Unknown Tort Claims; provided that **none** of the $121.5 million paid to the ASF Settlement Trust shall be used to fund any distribution to an Unknown Tort Claimant or payment to a trust for payment of Unknown Tort Claims.

   3.2     **Conflict with Plan.**

   The terms of the confirmed Plan (as it may be amended) or the Confirmation Order shall prevail if there is any conflict between the terms of the Plan and the terms of this allocation protocol.

### 3.3 Non-Compensatory Damages and Other Theories of Liability.

In determining the distribution to any Tort Claimant, punitive damages and damages that can be classified as economic damages that do not compensate the Tort Claimant for bodily injury and/or emotional distress or mental anguish attributable to their bodily injury shall not be considered or allowed, even if these damages could have been considered or allowed under applicable non-bankruptcy law. Any distribution to a Tort Claimant shall be solely on account of bodily injury and/or emotional distress or mental anguish attributable to the bodily injury to such Tort Claimant.

### 3.4 Withdrawal of Claims.

A Tort Claimant can irrevocably withdraw a Tort Claim, as the case may be, at any time upon written notice to the Trustee and the Archdiocese. Once withdraw, the Tort Claim may not be reasserted against the Trust (including filing an Unknown Tort Claim by a Tort Claimant who withdrew his or her Tort Claim).

### 3.5 Res Judicata Effect.

The TCR's determination with respect to a Tort Claim shall have no preclusive, res judicata judicial estoppel or similar effect outside of this Case as to any third party. That is, the TCR's determination shall not be used against any Tort Claimant in any other matter, case or proceeding.

### 3.6 Confidentiality and Privilege.

All information that the TCR receives from any source about any Tort Claimant shall be held in strict confidence and shall not be disclosed absent an Order of the Bankruptcy Court or the written consent of the Tort Claimant (or such Claimant's counsel of record). All information that the TCR received from any Tort Claimant (including from counsel to such Claimant) shall be subject to a mediation privilege and receipt of such information by the TCR shall not constitute a waiver of any attorney-client privilege or attorney work-product claim or any similar privilege or doctrine.

## 4. ABUSE CLAIMS REVIEWER

Hon. William Bettinelli (retd) has been appointed as the "Tort Claims Reviewer" (the "TCR") under the terms of this protocol and an order of the Bankruptcy Court. The TCR shall conduct a review of each of the Tort Claims (as and when such Claims may be filed) and, according to the guidelines set forth in section 5 below, make determinations upon which individual monetary distributions will be made subject to the Plan and the Trust Documents. The TCR's review as to each Tort Claimant shall be the final review, subject only to reconsideration as set forth in section 7 below.

The Debtor shall provide electronic copies of all Sexual Abuse Proof of Claim forms (including any attachments thereto and as the same may have been amended from time to time) to the TCR.

2

## 5. PROCEDURE FOR ALLOCATION AMONG ALLOWED TORT CLAIMS

### 5.1    Proof of Abuse.

The TCR shall consider all of the facts and evidence presented by the Tort Claimant in the Tort Claimant's filed proof of claim. Tort Claimants may provide supplemental evidence and information to the TCR pursuant to the below procedures.

The TCR shall consider all of the facts and evidence presented by the Tort Claimant. However, it is recognized that many Abuse Claimants may not have such documents as medical or counseling records. The TCR shall not distinguish between documentary evidence and Supplemental Submission by video in terms of weight or value in making his findings. One is not necessarily more or less valuable than the other. The presence or absence of such documents shall not, alone, advantage or disadvantage the Tort Claimant if the information presented is otherwise reliable and credible.

The TCR shall be authorized to request additional information from a Tort Claimant. Failure to respond to such request shall not be construed against the Tort Claimant.

Each Tort Claimant will have the opportunity to submit a written statement (a "**Supplemental Submission**") to the TCR or his designated assistant(s), provided that, any Tort Claimant may opt out of the written statement at any time. The TCR shall establish a deadline (the "**Submission Deadline**") of no less than 30 days for Tort Claimants to submit Supplemental Statements to the TCR. Notice of the Submission Deadline (the "**Supplement Notice**") shall provide, among other things, the method for submission of Supplemental Statements. All notices by the TCR to Tort Claimants, including the Supplement Notice, shall be sent to each Tort Claimant's counsel of record via email and first class mail at the address(es) provided in the applicable Sexual Abuse Proof of Claim Form.

The Supplemental Submission shall be no longer than 10 pages in length, single sided, double spaced with 12-point font; provided, however, that a Tort Claimant not represented by counsel may submit a handwritten Supplemental Submission not to exceed 10 single sided pages in length. A Supplemental Submission shall be submitted by the Submission Deadline unless the TCR determines, in his sole discretion, there is good cause for delay. The TCR, in his sole discretion, may allow a Tort Claimant to exceed the page limit for the Supplemental Submission. Tort Claimant may submit a Supplemental Submission to the TCR, in lieu of a written statement, via video that is no more than ten minutes in length. A Tort Claimant may submit either a written or video Supplemental Submission, but not both. A video submission may only record the Tort Claimant and may not record any other person, including an agent or representative of a Tort Claimant; provided, however, a video may include a recording of the Tort Claimant's deposition, provided that such recording is not more than ten minutes in length. If a Tort Claimant declines to submit a written or video Supplemental Submission, such declination shall not be held against the Tort Claimant or be used as grounds to discount the claim. **The medium of the Supplemental**

3

Submission (whether in writing or by video) shall not advantage or disadvantage a Tort Claimant.

**5.2**     **Guidelines for Allocation for Allowed Tort Claims.**

 **(a)** **Initial Evaluation.**

 The TCR shall consider whether the Tort Claimant has proven by a preponderance of the evidence that the Tort was perpetrated by a Perpetrator of the Debtor. The TCR shall give notice to the Tort Claimant and the Trustee if he determines that the Tort Claimant has not met the burden of proof and will provide the Tort Claimant a reasonable opportunity to provide facts and/or legal basis to establish that the burden of proof has been met. The Debtor and any Protected Party (other than a Settling Insurer) are required to cooperate with any information or discovery request by a Tort Claimant that is related to the TCR's determination that the Tort Claimant has not met the burden of proof. On request of the Trustee, the TCR shall evaluate the Claim pursuant to Section 5.2(d) to allow the Trustee to reserve sufficient amounts to pay the Tort Claimant if the TCR subsequently determines that the Tort Claimant has met the burden of proof hereunder.

 **(b)** **Adult Tort Claims.**

 Any Adult Tort Claimant must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) regarding whether such Claimant was abused within the applicable statute of limitation. If an Adult Tort Claim is based on acts that are outside of the applicable statute of limitations, then the TCR, in his sole discretion, shall reduce the points award of the claim in an amount between 20% and 80%. The TCR shall reduce the points award for any Adult Tort Claimant that fails to submit such written statement by 80%. Claimants who must submit such statement are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Adult Tort Claimant.

 **(c)** **Released Tort Claims.**

 With respect to any Tort Claim that is filed by a Tort Claimant who previously released the Archdiocese from liability (a "**Releasor**"), the TCR shall assess whether such Releasor has proven by a preponderance of the evidence that:

   (a) such Releasor was not represented by counsel at the time such release was executed (the "**Release Date**"); and

   (b) (i) any payment received by such Claimant in consideration of the release was unjust under the circumstances; or

4

(ii) such Releasor was incapacitated or disabled as of the Release Date; or

(iii) such Releasor was fraudulently induced to execute the release.

A Releasor must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) with respect to Tort Claim asserted after such Tort Claimant executed a release in favor of the Archdiocese. The TCR shall award zero (0) points for any applicable Releasor that fails to submit such statement. Releasors who must submit such statement are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Releasor. The Trustee shall deduct the amount received by any Releasor in exchange for the release from such Claimants award. Any Releasor that fails to provide written evidence of the amount received in exchange for executing such a release within 30 days of a written request for such information by the Trustee shall be awarded zero (0) points.

**(d)     Evaluation Factors**

Each Tort Claim will be evaluated by the TCR. Each Claim will be scored on a scale of up to 110 based on the following factors:

**(i)     Nature of the Sexual Abuse:**

(1)     Duration;

(2)     Frequency/number of instances;

(3)     Degree of intrusiveness into child's body (*e.g.* clothed/unclothed, masturbation by or of perpetrator, oral penetration, anal penetration, vaginal penetration);

(4)     Level or severity of force/violence/coercion/threats;

(5)     Control of environment (*e.g.* boarding school, orphanage, trip under supervision of perpetrator, day school, employment relationship with Perpetrator of the Debtors);

(6)     Number of Perpetrators of the Debtors that abused the Claimant;

(7)     Physical pain suffered;

(8)     Grooming; and/or

(9)     Additional factors that may be provided by the Claimant.

5

(ii) **Impact of Abuse:**

(1) School behavior problems;

(2) School academic problems;

(3) Getting into legal trouble as a minor;

(4) Loss of faith;

(5) Damage to family relationships/ interpersonal difficulties;

(6) Mental health symptoms, including:

    a. Depression;

    b. Suicide Attempt and suicidal ideation;

    c. Anxiety;

    d. Substance abuse;

    e. Sexual acting out;

    f. Runaway;

    g. Flashbacks; and/or

    h. Nightmares; and/or

(7) Adult and current functioning:

    a. Criminal record as an adult;

    b. Underemployment/unemployment;

    c. Relationship problems

    d. Substance abuse; and/or

(8) The risk of the foregoing factors affecting the Abuse Claimant in the future based on the Abuse Claimant's age at the present time; and/or

(9) Additional factors that may be provided by the Claimant.

The TCR shall not consider the mere fact that a Claimant has been or is incarcerated in the review of the claim unless an element of the crime for which the Claimant was convicted includes any type of fraud or misrepresentation.

6

**(iii)**     **Additional Factors:**

Tort Claimants level of participation by the Tort Claimant in public/litigation events related to the Tort Claims, including but not limited to:

        a.     leadership role in organizations dedicated to assisting sexual abuse survivors;

        b.     participation in litigation against the Archdiocese prior to the Petition Date;

        c.     participation in criminal proceedings against a Perpetrator of the Debtor; and/or

**5.3**     In evaluating the claims, the TCR shall disregard any considerations related to the statute of limitations with respect to sexual abuse and/or sexual assault claims other than with respect to Adult Claims pursuant to Section 5.2(b) above.

**5.4**     There will be no consideration of a Tort Claimant's claims against any other entity that may be liable for the abuse to the Tort Claimant.

## 6.    <u>MONETARY DISTRIBUTION.</u>

The TCR will arrive at a point total for each Tort Claimant taking into account the above factors.

The Trustee of the Trust shall calculate the value of an individual "point" after all Tort Claims have been reviewed. The point value will be determined by dividing (a) the total amount of dollars in the amount funded to the Trust for the Tort Claims by (b) the total number of points among all of the individual Tort Claims. By way of example, if there are 50 claimants awarded a total of 10,000 points within a given Claimant Pool, with a total settlement fund of $2 million, each point would be valued at $200.

## 7.    DETERMINATIONS BY THE TCR<br>      <u>AND REQUESTS FOR RECONSIDERATION AND APPEAL.</u>

The Trustee shall notify each Tort Claimant in writing of the monetary distribution with respect to the Tort Claimant's Claim, which distribution may be greater or smaller than the actual distribution to be received based on reserves established by the Trustee and the outcome of any reconsideration of claims. The Trustee shall mail this preliminary determination to the Tort Claimant to the Tort Claimant's counsel of record, or in the case of unrepresented parties, to the last address based on the Tort Claimant's filed proof of claim. The TCR's determination shall be final unless the Tort Claimant makes a timely request for the point award to be reconsidered by the TCR. The Tort Claimant shall not have a right to any other appeal of the TCR's point award. The Tort Claimant may request reconsideration of the TCR's point award by delivering a written request for reconsideration to the TCR within 10 calendar days after the date of mailing of the preliminary monetary distribution. The Tort Claimant, with the request for reconsideration, may submit

7

additional evidence and argument in support of such request upon a showing that such additional information could not have been provided in accordance with this protocol. The TCR shall have sole discretion to determine how to respond to the request for reconsideration. The TCR's determination of such request for reconsideration shall be final and not subject to any further reconsideration, review or appeal by any party, including a court.

## 8. ADJUSTMENTS.

The TCR shall adjust all Reviewed Claims as follows:

### a. No Award for Non-Sexual Abuse.

The TCR shall allocate points only for Tort Claims, subject to paragraph 3.3 above. Zero (0) points shall be allocated for any Claim that is not a Tort Claim.

### b. Late Claims.

The TCR shall assess Tort Claims filed between November 21, 2019 and March 30, 2022 (any such claim, a "**Late Claim**" and the claimant, a "**Late Claimant**"). A Late Claimant must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) with respect to any Late Claim. Late Claims are listed on Schedule __ hereto. The deadline to submit such statement shall be the Submission Deadline provided upon notice by the TCR to the Late Claimant. The TCR shall award zero (0) points for any Late Claimant that fails to submit such statement. A Tort Claim filed after June 17, 2019 and before November 21, 2019 is not a Late Claim and the TCR shall assess such Tort Claim as if it was filed on or before June 17, 2019. The TCR (a) shall reduce any Late Claim by 50% and (b) may, in his sole discretion based on the Late Claimant's statement, reduce the points awarded to any Late Claim by up to 80%. For example, if the TCR assesses a Late Claim at 100 points, he shall reduce the assessment to 50 points and may, in his sole discretion based on the Late Claimant's statement, further reduce the assessment but he may not assess it to less than 20 points.

The TCR shall consider whether the statute of limitations would apply to a Tort Claim first filed on or after April 1, 2022 (such claim, a "**Post April 1 Claim**" and the claimant a "**Post April 1 Claimant**"). A Post April 1 Claimant must submit a written statement (no longer than 10 pages in length, single sided, double spaced with 12-point font) with respect to any Late Claim no later than the later of: (i) fifteen (15) days after the Effective Date of the Plan and (ii) the date of filing of the Post April 1 Claim. The TCR shall award zero (0) points for any Post April 1 Claimant that fails to timely submit such statement. The TCR shall reduce any Post April 1 Claim by 75% and (b) may, in his sole discretion

8

based on the Post April 1 Claimant's statement and any statement by the Trustee, reduce the points awarded to such claimant to zero (0).

9. **SPECIFIC ALLOCATIONS.**

Notwithstanding the foregoing, the Claims Reviewer and/or the Trustee shall allocate (a) $20,000 to each of Tort Claim number 363, Tort Claim number 366, Tort Claim number 367; and (b) $60,000 to each of Tort Claim number 441, Tort Claim number 442, Tort Claim number 443, Tort Claim number 444, Tort Claim number 445.

# EXHIBIT I

## ALLOCATION PROTOCOL FOR CLASS 4 UNKNOWN TORT CLAIMS FILED IN THE CHAPTER 11 BANKRUPTCY CASE OF THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE

### 1. Unknown Tort Claims Reviewer

_____ shall have the title, responsibility and authority of "Abuse Claims Reviewer" (hereinafter "ACR") under the terms of this Allocation Protocol. The ACR shall conduct a review of each Class 4 Unknown Tort Claim and make individual point allocations according to the guidelines set forth in sections 6.5 and 6.6 below. The Unknown Tort Claims Trustee shall make individual monetary distributions to Class 4 Unknown Tort Claimants pursuant to the terms of this Allocation Protocol and the Plan based on the ACR's point award. The ACR's point award as to each Claimant shall be final, subject only to reconsideration as set forth in section 6.7 below.

### 2. Source of Payment

Holders of compensable Class 4 Unknown Tort Claims shall be paid from the Unknown Tort Claims Trust on account of such Claims pursuant to the terms of the Plan, Plan Documents, the Unknown Tort Claims Trust Documents, and this Allocation Protocol.

### 3. Definitions

3.1     Capitalized Terms. Capitalized, undefined terms used in this Allocation Protocol shall have the meanings given to them in the Plan, the Unknown Tort Claims Trust Agreement or the Bankruptcy Code, unless otherwise defined herein, and such definitions are incorporated in this Allocation Protocol by reference.

3.2     "Adult Unknown Tort Claimant" means any Unknown Tort Claimant who was abused by a Perpetrator on or after the date that such Tort Claimant was eighteen (18) years of age.

3.3     "Documentary Information" means any writing or recorded information regarding a Tort Claim.

3.4     "Perpetrator of Debtor" means a person: (1) who was a priest, brother, nun, religious, employee or other agent of the Archdiocese or any other Protected Party at the time such person committed an act of Sexual Abuse; or (2) for whom or for whose actions the Debtor, the Archdiocese, or any other Protected Party was otherwise responsible.

3.5     "Plan" means and refers to the _Debtor's Plan of Reorganization_ as confirmed and as the same may be amended or modified.

3.6     "Tort Claim" has the same meaning as in the Plan; provided, however, that as used herein such term refers only to a Class 4 Unknown Tort Claim and not any other claim, including a Class 3 Tort Claim.

3.7     "Tort Claimant" has the same meaning as in the Plain; provided, however, that as used herein such term refers only to a holder of a Class 4 Unknown Tort Claim and not any other claim,

including a Class 3 Tort Claim.

**4.**    <u>**Purpose**</u>

4.1    <u>Purpose:</u> The purpose of this Allocation Protocol is to provide for the just, fair and reasonable distribution of settlement funds to Unknown Tort Claimants.

4.2    <u>Sole and Exclusive Method:</u> This Allocation Protocol shall be the sole and exclusive method by which Class 4 Unknown Tort Claimants may receive a distribution on account of their Claims.

4.3    <u>Interpretation:</u> The terms of the confirmed Plan shall prevail if there is any discrepancy between the terms of the Plan and the terms of this Allocation Protocol.

4.4    <u>Tort Claims Separately Allocated</u>: Tort Claims filed in the Bankruptcy Case prior to the Effective Date of the Plan shall not be subject to this Allocation Protocol and shall be subject to the Class 3 Tort Claims Allocation Protocol.

**5.**    <u>**Procedure for Allocation Protocol**</u>

5.1    <u>Filing of Unknown Tort Claim:</u> An Unknown Tort Claimant may assert an Unknown Tort Claim by filing a claim form with the Unknown Tort Claims Trustee. Such form shall be substantially similar to the form of Claim attached hereto as <u>Exhibit 1</u>. The Unknown Tort Claims Trustee shall transmit a copy of any claims received to the ACR within a reasonable time after receipt thereof.

5.2    <u>Monetary Distribution on Account of Each Unknown Tort Claim:</u> The ACR shall evaluate each Unknown Tort Claim and shall determine the number of points, if any, which should be allocated to each Tort Claimant under the guidelines set forth in section 6.5 below.

5.3    <u>Additional Information Regarding Tort Claim:</u> The ACR, including through the Unknown Tort Claims Trustee, shall provide each Unknown Tort Claimant thirty days' notice of the opportunity to provide Documentary Information to the ACR (the "Submission Deadline"); <u>provided</u>, <u>however</u>, that the ACR may grant extensions of time for good cause shown upon written application (including via email) before the Submission Deadline. Unless the ACR requests Documentary Information, the failure to submit any Documentary Information shall not be grounds for denial or reduction of the Unknown Tort Claimant's allocation. A failure to respond to the ACR's request for Documentary Information may be grounds for denial or reduction of the Unknown Tort Claimant's allocation

5.4    <u>Guidelines for Use of Protocol:</u>

a.    <u>Initial-Evaluation:</u>

Before determining an Unknown Tort Claimant's point award, the ACR shall consider the degree to which each Unknown Tort Claimant has proven by a preponderance of the evidence that such Unknown Tort Claimant was abused and that such Unknown Tort Claimant's Abuse was perpetrated by a Perpetrator of Debtor. The ACR shall also determine whether the Unknown Tort Claimant may be designated as an Unknown Tort Claimant under the terms of the Plan (including the definition of Unknown Tort Claimant).

The ACR shall have sole discretion to determine that an Unknown Tort Claimant has proven that

such Unknown Tort Claimant was: (a) abused (b) by a Perpetrator of the Debtors. Nothing herein shall prohibit the ACR from requesting information about a particular Unknown Tort Claimant from the Unknown Tort Claims Trustee or the Unknown Tort Claims Trustee's counsel.

The ACR should consider the coherence, credibility and consistency of each Unknown Tort Claimant's accounts of the abuse and should consider any and all evidence that may enhance or diminish the reliability of such claims.

b.    Nature, severity, and impact of the sexual abuse.

Each Unknown Tort Claimant will be evaluated by the ACR and scored according to the following system. If an Unknown Tort Claimant does not have an interview or does not provide additional Documentary Information, then the ACR will allocate points according to the same factors based on the Unknown Tort Claimant's filed claim to extent the ACR deems such claim is reliable and probative.

c.    No Award for Adult Unknown Tort Claimants.

The ACR shall allocate zero (0) points to an Unknown Tort Claimant who is an Adult Unknown Tort Claimant regardless of the applicability of any other factors.

d.    No Award for Non-Sexual Abuse.

The ACR shall allocate points only for Unknown Tort Claims that are based on Abuse. Zero (0) points shall be allocated for any Unknown Tort Claim based on any act or omission that is not Abuse.

e.    No Award for Released Tort Claims.

The ACR shall allocate zero (0) points to any Unknown Tort Claimant who executed a release of the Debtor or the Archdiocese prior to asserting his or her Tort Claim in the Bankruptcy Case.

f.    No Award for Deceased Unknown Tort Claimants.

The ACR shall allocate zero (0) points to any Unknown Tort Claim asserted by an estate of a deceased Unknown Tort Claimant; provided, however, that any Unknown Tort Claim submitted by an Unknown Tort Claimant who dies while the determination of the Claim is pending shall be reviewed and paid to the estate of such Claimant pursuant to the terms of the Plan, the Plan Documents, the Unknown Tort Claims Trust Documents, and this Allocation Protocol.

g.    Evaluation Factors for Allocation.

Each Tort Claim will be evaluated by the TCR. Each Claim will be scored on a scale of up to 110 based on the following factors:

**Pre-existing Risk and Resiliency Factors:**

1)    Risk and resiliency factors are aspects of life known to negatively impact life and to exacerbate the negative impact of experience such as sexual abuse:

a.    Childhood of poverty.
b.    Parental divorce or death of a parent.

     c.       Exposure to substance abuse in home.
     d.      Absence of parent(s).
     e.      Being victim of or witnessing domestic violence or prior abuse.
     f.      Age at the time of abuse.

**Nature of the Abuse:**

2)     Nature of the abuse considers:

     a.      Duration.
     b.      Frequency/number of instances.
     c.      Degree intrusive into child's body (e.g., clothed/unclothed, oral, anal, vaginal).
     d.      Level of force/violence/coercion/threats.
     e.      Child/family was Catholic.
     f.      Control of environment (e.g., trip under supervision of Perpetrator, day school, Sunday school, employment relationship with Perpetrator, in the rectory of the Debtor, boarding school).
     g.      More than one Perpetrator.
     h.      Physical pain suffered.
     i.      Grooming.
     j.      Additional factors that may be provided by the Claimant.

**Impact of Abuse to Age 18:**

3)     Impact of Abuse (to age 18) considers:

     a.      School behavior problems.
     b.      School academic problems.
     c.      Getting into legal trouble.
     d.      Loss of faith.
     e.      Damage to family relationships.
     f.      Mental health symptoms:

         i.      Depression.
         ii.     Suicide attempt or ideation.
         iii.    Anxiety.
         iv.    Substance abuse.
         v.     Sexual acting out/physically acting out.
         vi.    Runaway.
         vii.   Flashbacks.
         viii.  Nightmares.
     g.      Additional factors that may be presented by the Claimant.

**Long Term Impact:**

4)     Adult & Current Functioning

     a.      Mental health symptoms - see above list.

b.      Criminal record.

c.      Underemployment/unemployment.

d.      Relationship problems.

e.      Substance abuse.

f.      The risk of the foregoing factors affecting the Tort Claimant in the future based on the Tort Claimant's age at the present time.

g.      Additional factors that may be presented by the Claimant.

**<u>Assessment of Global Severity of Impact/Suffering</u>:**

5)      The ACR shall rate the comparative severity of impact/suffering of all Tort Claimants (including both Class 3 Tort Claimants and Class 4 Unknown Tort Claimants) in these Cases. That is, compared to other Tort Claimants (except Adult Tort Claimants), the ACR will consider how much this individual suffered as a result of the Abuse:

a.      Compared to other Tort Claimants (except Adult Tort Claimants), the ACR will consider the overall seriousness of the Abuse; and

b.      Compared to other Tort Claimants (except Adult Tort Claimants), the ACR will consider the overall negative impact of the Abuse.

5.5    <u>Monetary Distribution:</u> The ACR will arrive at a point total for each Unknown Tort Claimant taking into account the factors and guidelines in Section 5.4 above, and assigning a point total for each Unknown Tort Claimant. The value of an individual "point" will be determined after all Unknown Claims have been evaluated by dividing the total amount of dollars available in the Unknown Tort Claims Trust by the total number of points for all of Tort Claimants (subject to the Maximum Unknown Tort Claim Amount (defined below) and the other payment procedures described below). By way of example, if there are 100 Unknown Tort Claimants awarded a total of 10,000 points and the entirety of the $5 million of funds in the Unknown Tort Claims Trust is allocated to Unknown Tort Claims, then each point would be valued at $500 (subject to the Maximum Unknown Tort Claim Amount).

The point value shall be determined and adjusted from time to time as Unknown Tort Claims are filed. Such adjustment will occur as claims are filed because each additional claims will increase the points by which the amount to be distributed is divided. As such, as new Unknown Tort Claims are filed, the value of points may be adjusted.

The Unknown Tort Claims Trustee shall not make any distribution to an Unknown Tort Claimant until such Unknown Tort Claimant executed and delivers to the Unknown Tort Claims Trustee a release in the form attached to the Plan as <u>Exhibit N</u>.

5.6    <u>Determinations by the ACR and Requests for Reconsideration and Appeal:</u> The ACR shall notify the Unknown Tort Claims Trustee in writing (including via email) of the points awarded to each Unknown Tort Claimant. The Unknown Tort Claims Trustee shall send (via email or First Class Mail) this determination to the Unknown Tort Claimant or the Unknown Tort Claimant's attorney. The ACR's determination shall be final unless the Unknown Tort Claimant makes a timely request for the point award to be reconsidered by the ACR. The Unknown Tort Claimant shall not have a right to any other appeal of the ACR's point award. The Tort Claimant may request reconsideration of the ACR's point award by delivering a written request for reconsideration to the ACR within 14 calendar days after the date of mailing of the award point notice. The ACR shall have sole discretion to determine how to proceed with the request for reconsideration and ultimately may increase, decrease or leave intact the Tort

Claimant's initial point award determination. The ACR's determination of such request for reconsideration shall be final and not subject to any further appeal. The ACR shall maintain an accounting of the costs/expenses incurred for each separate reconsideration request and the costs/expenses related to a specific request shall be borne by the Unknown Tort Claimant making the request, which may be deducted from his/her distribution; provided, however, that if and to the extent any Unknown Tort Claimant's award is not sufficient to pay for the cost of the ACR's review, then such Unknown Tort Claimant must advance the costs and expenses for such review at the time such Unknown Tort Claimant submits his or her request for reconsideration.

5.7 <u>Confidentiality</u>: All information that the Unknown Tort Claims Trustee or the ACR receives from any source about any Unknown Tort Claimant shall be held strictly confidential and shall not be disclosed to any party, including the Debtor, Settling Insurers, Participating Parties, Religious Orders, Co-Defendants, or any other Person or Entity.

## 6. General Guidelines

6.1 <u>Non-Compensatory Damages and Other Theories of Liability</u>: In determining the value of any Unknown Tort Claim, punitive damages and other damages that do not compensate the Unknown Tort Claimant, shall not be considered or allowed, even if these damages could have been allowed in a case or at trial.

6.2 <u>Award for Personal Injury</u>: Any award to an Unknown Tort Claimant pursuant to this Allocation Protocol shall be on account of a personal injury to the Unknown Tort Claimant.

6.3 <u>Res Judicata Effect</u>: The ACR's determination with respect to an Unknown Tort Claim shall have no preclusive or res judicata effect outside of the Bankruptcy Case as to any third party other than a Protected Party. That is, the ACR's determination may not be used against any Unknown Tort Claimant in any other case or proceeding.

6.4 <u>Costs of Administration</u>: All costs of administration associated with the matters discussed in this Allocation Protocol shall be deducted from the award paid to the Unknown Tort Claimant; provided, however, that if the ACR awards an unknown Tort Claimant zero (0) points, then the cost of the ACR's determination shall be paid by the Unknown Tort Claims Trust.

6.5 <u>Denial of Claim</u>: If an Unknown Tort Claim is denied payment pursuant to this Allocation Protocol, the holder of such Unknown Tort Claim will have no further rights against the Debtor, Reorganized Debtor, the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee, or Protected Parties arising out of, relating to, or in connection with such Unknown Tort Claim.

6.6 <u>Payment of Unknown Tort Claims</u>:

The Unknown Tort Claims Trust shall pay Unknown Tort Claimants in accordance with the terms of the Plan, Confirmation Order, and Unknown Tort Claims Trust Documents, as follows:

a. The Unknown Tort Claims Trustee shall make a Distribution to Unknown Tort Claimants at least once during every 12 months after the Effective Date if and to the extent any such claims have been filed. The date of any such Distribution is referred to herein as a "Distribution Date."

b. The maximum value of a point allocated to the Unknown Tort Claimants pursuant to this Allocation Protocol shall be equal to the average value of a point allocated to all Class 3 Tort

Claimants who receive payment under the Tort Claims Allocation Protocol (such amount, the "Maximum Unknown Tort Claim Amount").

        c.      During any 12 month period, the Unknown Tort Claims Trustee shall distribute no more than: (a) 12.5% of the remaining amount available from the Unknown Tort Claims Trust collectively to all Unknown Tort Claimants who have filed Unknown Tort Claims entitled to a distribution as of a given Distribution Date and (b) 4% of the remaining amount available from the Unknown Tort Claims Trust to any single Unknown Tort Claimant; provided, however, that the Trustee shall not distribute more than the Maximum Unknown Tort Claim Amount to any Unknown Tort Claimant; provided further, however, that upon any Distribution, the Unknown Tort Claims Trustee shall: (x) first distribute funds to Unknown Tort Claimants who filed compensable Unknown Tort Claims after other Unknown Tort Claimants had already received a Distribution until Holders of such later filed Unknown Claims receive an amount equal (on a per point basis) to the amount already distributed to Unknown Tort Claimants who previously received a Distribution, and (y) thereafter distribute additional available funds to all holders of allowed Unknown Tort Claims as of such Distribution Date.

**EXHIBIT J**

**UNKNOWN TORT CLAIMS TRUST AGREEMENT**

**DATED AS OF [●], 2022**

**PURSUANT TO CHAPTER 11 PLAN OF**

**REORGANIZATION FOR**

**THE ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE**

i

# Table of Contents

**ARTICLE 1. AGREEMENT OF TRUST** ................................................................................. **6**

**Section 1.1**     **Creation and Name.** ...............................................................................**6**

**Section 1.2**     **Purposes.** ................................................................................................**6**

**Section 1.3**     **Transfer of Assets.** ...............................................................................**6**

**Section 1.4**     **Acceptance of Assets.** ...........................................................................**6**

**Section 1.5**     **Beneficiaries.** ........................................................................................**7**

**Section 1.6**     **Jurisdiction.** ..........................................................................................**7**

**Section 1.7**     **Privileged and confidential information.** ...........................................**7**

**Section 1.8**     **Relation-back election.** .........................................................................**8**

**Section 1.9**     **Employer identification number.** .........................................................**8**

**Section 1.10**     **Relationship to Plan.** .........................................................................**8**

**ARTICLE 2. POWERS AND TRUST ADMINISTRATION** ...................................................**8**

**Section 2.1**     **Powers.** ...................................................................................................**8**

**Section 2.2**     **Limitations on the Unknown Tort Claims Trustee.** ........................**11**

**Section 2.4**     **Accounting.** ...........................................................................................**12**

**Section 2.5**     **Financial Reporting.** ...........................................................................**12**

**Section 2.6**     **Names and addresses.** ..........................................................................**12**

**Section 2.7**     **Transfers of the Unknown Tort Claims Trust Assets.** .....................**13**

**ARTICLE 3. ACCOUNTS, INVESTMENTS, EXPENSES** ..................................................**13**

**Section 3.1**     **Accounts.** ..............................................................................................**13**

**Section 3.2**     **Investment Guidelines.** ........................................................................**14**

**Section 3.3**     **Payment of Unknown Tort Claims Trust Operating Expenses.** .......**14**

**ARTICLE 4. CLAIMS ADMINISTRATION AND DISTRIBUTIONS** ...............................**14**

**Section 4.1**     **Claims Administration and Distributions.** .........................................**14**

Case 18-13027-t11    Doc 1254-10    Filed 11/28/22    Entered 11/28/22 15:08:45    Page 162 of 241

Section 4.2    Manner of Payment. ...................................................................................14

Section 4.3    Delivery of Distributions. ............................................................................14

Section 4.4    Medicare Reimbursement and Reporting Obligations. .................................15

**ARTICLE 5. UNKNOWN TORT CLAIMS TRUSTEE** ....................................................... 16

Section 5.1    Initial Unknown Tort Claims Trustee. ...........................................................16

Section 5.2    Term of Service, Successor Unknown Tort Claims Trustee. ........................16

Section 5.3    Appointment of Successor Unknown Tort Claims Trustee. ..........................16

Section 5.4    Compensation and Expenses of Unknown Tort Claims Trustee. ...................17

Section 5.5    Unknown Tort Claims Trustee's Independence...............................................17

Section 5.6    Standard of Care; Exculpation. ...................................................................18

Section 5.7    Protective Provisions. ...................................................................................19

Section 5.8    Indemnification. ...........................................................................................20

Section 5.9    Bond. .............................................................................................................21

**ARTICLE 6.** ..................................................................................................................... 21

**GENERAL PROVISIONS** ................................................................................................ 21

Section 6.1    Irrevocability. ...............................................................................................21

Section 6.2    Term; Termination. .......................................................................................21

Section 6.3    Outgoing Unknown Tort Claims Trustee Obligations....................................22

Section 6.4    Taxes. .............................................................................................................23

Section 6.5    Modification. ..................................................................................................24

Section 6.6    Severability. ...................................................................................................25

Section 6.7    Notices. ..........................................................................................................25

Section 6.8    Successors and Assigns. .................................................................................26

Section 6.9    Limitation on Transferability; Beneficiaries' Interests..................................26

Section 6.10    Exemption from Registration. ......................................................................26

Section 6.11    Entire Agreement; No Waiver. .....................................................................27

Section 6.12    Headings...................................................................................................................27

Section 6.13    Governing Law.........................................................................................................27

Section 6.14    Settlor's Representative.........................................................................................27

Section 6.15    Independent Legal and Tax Counsel......................................................................28

Section 6.16    Waiver of Jury Trial...............................................................................................28

Section 6.17    Effectiveness. ..........................................................................................................28

Section 6.18    Counterpart Signatures..........................................................................................28

**EXHIBIT 1  UNKNOWN TORT CLAIMS ALLOCATION PROTOCOL ........................ 30**

iv

# UNKNOWN TORT CLAIMS TRUST AGREEMENT

This Unknown Tort Claims Trust Agreement (the "**Unknown Tort Claims Trust Agreement**"), dated as of November __, 2022, and effective as of the Effective Date, is entered in accordance with the *Debtor's First Amended Plan of Reorganization Dated* November 3*, 2022*, (as it may be amended, modified, or supplemented, the "**Plan**"),[1] by the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession in the Chapter 11 Case (the "**Settlor**"**);** and Omni Management Group, LLC as trustee, the "**Unknown Tort Claims Trustee**");

## <u>RECITALS</u>

(A) The Settlor has, or contemporaneously with the execution of this Unknown Tort Claims Trust Agreement will have, reorganized under the provisions of chapter 11 of the Bankruptcy Code in a case filed in the Bankruptcy Court, administered and known as *In re The Roman Catholic Church of the Archdiocese of Santa Fe*, Case No. 18-13027-t11 (Bankr. D.N.M. (the "**Chapter 11 Case**").

(B) The Settlor is executing this Unknown Tort Claims Trust Agreement in its capacity as Settlor to implement the Plan and to create the Unknown Tort Claims Trust (the "**Unknown Tort Claims Trust**") for the exclusive benefit of the holders of Class 4 Unknown Tort Claims.

(C) The Plan and Confirmation Order provide, among other things, for the creation of the Unknown Tort Claims Trust to satisfy all Class 4 Unknown Tort Claims in accordance with this Unknown Tort Claims Trust Agreement, the Plan and the Confirmation Order.

(D) The Bankruptcy Court held in the Confirmation Order that all the prerequisites for the Channeling Injunction have been satisfied, and such Channeling Injunction is fully effective and enforceable as provided in the Plan and Confirmation Order with respect to the Channeled Claims.

(E) The Plan and Confirmation Order provide that, on or before _____(date), the Settlor's Initial Contribution (as defined in Section 1.3) shall be transferred to and vested in the Unknown Tort Claims Trust free and clear of all liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Settlor or its affiliates, any creditor or any other entity, other than as provided in the Channeling Injunction with respect to the Channeled Claims and as provided in Section 1.3.

**NOW, THEREFORE**, it is hereby agreed as follows:

---

[1] All capitalized terms used but not otherwise defined herein shall have their respective meanings as set forth in the Plan or in the Confirmation Order, as applicable, or, if not defined therein, as set forth in the Unknown Tort Claims Allocation Protocol (as defined in Section 1.2 below).

# ARTICLE 1.
# AGREEMENT OF TRUST

**Section 1.1** *Creation and Name.* The Settlor hereby creates a trust known as the "**Unknown Tort Claims Trust**" which is the trust provided for and referred to in the Plan. The Unknown Tort Claims Trustee may transact the business and affairs of the Unknown Tort Claims Trust in the name of the Unknown Tort Claims Trust and references herein to the Unknown Tort Claims Trust shall include the Unknown Tort Claims Trustee acting on behalf of the Unknown Tort Claims Trust. The Confirmation Order, the Plan and this Unknown Tort Claims Trust Agreement, including the Exhibits hereto (the Confirmation Order, the Plan and this Unknown Tort Claims Trust Agreement, including all Exhibits hereto, which includes the Unknown Tort Claims Allocation Protocol as defined in Section 1.2 below, collectively, the "**Unknown Tort Claims Trust Documents**"), constitute the governing instruments of the Unknown Tort Claims Trust. The Unknown Tort Claims Trustee is hereby authorized to execute and file a Certificate of Unknown Tort Claims Trust with the New Mexico Secretary of State.

**Section 1.2** *Purposes.* The purposes of the Unknown Tort Claims Trust are to: (i) assume all liability for the Class 4 Unknown Tort Claims, (ii) administer the Class 4 Unknown Tort Claims, and (iii) make Distributions to holders of compensable Class 4 Unknown Tort Claims, in each case in accordance with the Unknown Tort Claims Allocation Protocol for Class 4 Unknown Tort Claims attached hereto as Exhibit 1 (the "**Unknown Tort Claims Allocation Protocol**"). In connection therewith, the Unknown Tort Claims Trust shall hold, manage, and protect the Unknown Tort Claims Trust Assets (as defined in Section 1.3 below) in accordance with the terms of the Unknown Tort Claims Trust Documents for the benefit of the Beneficiaries (as defined in Section 1.6(a) below). All Class 4 Unknown Tort Claims asserted against the Debtor in the Chapter 11 Case shall be resolved exclusively in accordance with the Unknown Tort Claims Allocation Protocol.

**Section 1.3** *Transfer of Assets.* The Settlor shall pay its Contribution to the Unknown Tort Claims Trust as agreed with the Unknown Tort Claims Trustee. The Unknown Tort Claims Trust will receive and hold all right, title and interest in and to the Debtor's Contribution (together with any income or gain earned thereon and proceeds derived therefrom, the "**Unknown Tort Claims Trust Assets**"). The Debtor's Contribution shall be transferred to the Unknown Tort Claims Trust free and clear of any liens, encumbrances, charges, claims, interests or other liabilities of any kind of the Debtor or its affiliates, any creditor or any other person or entity, other than as provided in the Channeling Injunction with respect to Channeled Claims.

**Section 1.4** *Acceptance of Assets.* In furtherance of the purposes of the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee, on behalf of the Unknown Tort Claims Trust, hereby expressly accepts the transfer to the Unknown Tort Claims Trust of the Debtor's Contribution, subject to the terms of the Unknown Tort Claims Trust Documents. The Unknown Tort Claims Trust shall succeed to all of the Debtor's respective rights, title, and interest, including all legal privileges, in the Debtor's Contribution and neither the Debtor nor any other person or entity transferring such Debtor's Contribution will have any further equitable or legal interest in, or with

6

respect to, the Unknown Tort Claims Trust Assets, including the Debtor's Contribution, or the Unknown Tort Claims Trust.

(b)     Except as otherwise provided in the Plan, Confirmation Order or Unknown Tort Claims Trust Documents, the Unknown Tort Claims Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding Class 4 Unknown Tort Claims that the Debtor or the Reorganized Debtor have or would have had under applicable law.

(c)     No provision herein or in the Unknown Tort Claims Allocation Protocol shall be construed or implemented in a manner that would cause the Unknown Tort Claims Trust to fail to qualify as a "qualified settlement fund" under the QSF Regulations (as defined in Section 8.4(a) below).

(d)     Nothing in this Unknown Tort Claims Trust Agreement shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction, the Supplemental Injunction or other terms of the Plan or Confirmation Order.

(e)     In this Unknown Tort Claims Trust Agreement and the Unknown Tort Claims Allocation Protocol, the words "must," "will," and "shall" are intended to have the same mandatory force and effect, while the word "may" is intended to be permissive rather than mandatory.

Section 1.5     _Beneficiaries._

(a)     The Unknown Tort Claims Trust is established for the benefit of the holders of Class 4 Unknown Tort Claims that are entitled to a distribution under the Plan Documents (the "**Beneficiaries**"). In the case of holders of Class 4 Unknown Tort Claims who have open bankruptcy cases, the bankruptcy estate in those cases is the Beneficiary and the chapter 7 debtor is not a Beneficiary.

(b)     The Beneficiaries shall be subject to the terms of this Unknown Tort Claims Trust Agreement and Unknown Tort Claims Trust Documents, including without limitation, the Unknown Tort Claims Allocation Protocol.

Section 1.6     _Jurisdiction._ The Bankruptcy Court shall have continuing jurisdiction with respect to the Unknown Tort Claims Trust; provided however, the courts of the State of New Mexico, including any federal court located therein, shall also have jurisdiction over the Unknown Tort Claims Trust if and to the extent the Bankruptcy Court cannot or properly abstains from exercising jurisdiction over the Unknown Tort Claims Trust.

Section 1.7     _Privileged and confidential information._

The transfer or assignment of any information subject to an attorney-client or similar privilege to the Unknown Tort Claims Trustee shall not result in the destruction or waiver of any applicable privileges pertaining thereto. Further, with respect to any such privileges: (a) they are transferred to or contributed for the purpose of enabling the Unknown Tort Claims Trustee to

7

perform his or her duties to administer the Unknown Tort Claims Trust, and (b) they are vested solely in the Unknown Tort Claims Trustee and not in the Unknown Tort Claims Trust, or any other person, committee or subcomponent of the Unknown Tort Claims Trust, or any other person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Tort Claim.

**Section 1.8** *Relation-back election.*

The Unknown Tort Claims Trustee and the Debtor shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), to treat the Unknown Tort Claims Trust as coming into existence as a settlement fund as of the earliest possible date.

**Section 1.9** *Employer identification number.*

Upon establishment of the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee shall apply for an employer identification number for the Unknown Tort Claims Trust in accordance with Treasury Regulation Section 1.468B-2(k)(4).

**Section 1.10** *Relationship to Plan.*

The principal purpose of this Unknown Tort Claims Trust Agreement is to aid in the implementation of the Plan and the Confirmation Order and therefore, this Unknown Tort Claims Trust Agreement incorporates the provisions of the Plan and the Confirmation Order (which may amend or supplement the Plan). To the extent that there is conflict between the provisions of this Unknown Tort Claims Trust Agreement, the Unknown Tort Claims Allocation Protocol, the provisions of the Plan or the Confirmation Order, each document shall have controlling effect in the following order: (1) the Confirmation Order; (2) the Plan; (3) this Unknown Tort Claims Trust Agreement; and (4) the Unknown Tort Claims Allocation Protocol.

## ARTICLE 2.
## POWERS AND TRUST ADMINISTRATION

**Section 2.1** *Powers.*

(a) The Unknown Tort Claims Trustee is empowered to take all actions, including such actions as may be consistent with those expressly set forth above, as the Unknown Tort Claims Trustee deems necessary to reasonably ensure that the Unknown Tort Claims Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the regulations promulgated pursuant thereto. Further, the Unknown Tort Claims Trustee may, unilaterally and without court order, amend, either in whole or in part, any administrative provision of this Unknown Tort Claims Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

(b) The Unknown Tort Claims Trustee is and shall act as the fiduciary to the Unknown Tort Claims Trust in accordance with the provisions of this Unknown Tort Claims Trust Agreement. The Unknown Tort Claims Trustee shall administer the Unknown Tort Claims Trust, the Unknown Tort Claims Trust Assets, and any other amounts to be received under the terms of

8

the Unknown Tort Claims Trust Documents in accordance with the purposes set forth in Section 1.2 above and in the manner prescribed by the Unknown Tort Claims Trust Documents. Subject to the limitations set forth in the Unknown Tort Claims Trust Documents, the Unknown Tort Claims Trustee shall have the power to take any and all actions that in the judgment of the Unknown Tort Claims Trustee are necessary or advisable to fulfill the purposes of the Unknown Tort Claims Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto and any trust power now or hereafter permitted under the laws of the State of New Mexico. Nothing in the Unknown Tort Claims Trust Documents or any related document shall require the Unknown Tort Claims Trustee to take any action if the Unknown Tort Claims Trustee reasonably believes that such action is contrary to law. In addition to all powers enumerated in the Unknown Tort Claims Trust Documents, including, but not limited to, the Unknown Tort Claims Trustee's powers and authority in respect of the interpretation, application of definitions and rules of construction set forth in Sections 2 and 3 of the Plan to the fullest extent set forth therein, from and after the Effective Date, the Unknown Tort Claims Trust shall succeed to all of the rights and standing of the Debtor with respect to the Debtor's Contribution in its capacity as a trust administering assets for the benefit of the Beneficiaries.

(c)     Except as required by applicable law or the Unknown Tort Claims Trust Documents, the Unknown Tort Claims Trustee need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(d)     Without limiting the generality of Sections 2.1(a) and (b) above, and except as limited in the Unknown Tort Claims Trust Documents and by applicable law, the Unknown Tort Claims Trustee shall have the power to:

(i)     supervise and administer the Unknown Tort Claims Trust in accordance with the Unknown Tort Claims Trust Documents, including the Unknown Tort Claims Allocation Protocol;

(ii)     receive and hold the Unknown Tort Claims Trust Assets, and exercise all rights with respect thereto including the right to vote and sell any securities that are included in such funds;

(iii)     invest the monies held from time to time by the Unknown Tort Claims Trust in accordance with Section 3.2;

(iv)     enter into leasing, financing or other agreements with third parties, as determined by the Unknown Tort Claims Trustee, in his or her discretion, to be useful in carrying out the purposes of the Unknown Tort Claims Trust;

(v)     determine and pay liabilities and pay all fees and expenses incurred in administering the Unknown Tort Claims Trust, managing the Unknown Tort Claims Trust Assets and making Distributions in accordance with the Unknown Tort Claims Trust Documents (the "**Unknown Tort Claims Trust Operating Expenses**");

(vi)     establish accounts and reasonable reserves within the Unknown Tort Claims Trust, in his discretion, to be necessary, prudent or useful in administering the Unknown Tort Claims Trust;

(vii)     sue, be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative or other proceeding, however nothing herein shall be deemed to either (a) affect, limit or expand any party's rights to sue or otherwise commence a case or proceeding against a trustee in a case under chapter 11 of the Bankruptcy Code or (b) allow any party asserting a Class 4 Unknown Tort Claim, a Tort Claim and/or Channeled Claim to commence any action against the Unknown Tort Claims Trustee or the Unknown Tort Claims Trust with respect to such claim;

(viii)     appoint such officers and retain such employees, consultants, advisors, independent contractors, experts and agents and engage in such legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Unknown Tort Claims Trust requires, and delegate to such persons such powers and authorities as this Unknown Tort Claims Trust Agreement provides or the fiduciary duties of the Unknown Tort Claims Trustee permits and as the Unknown Tort Claims Trustee, in his or her discretion, deems advisable or necessary in order to carry out the terms of this Unknown Tort Claims Trust Agreement;

(ix)     pay reasonable compensation and reimbursement of expenses to any of the Unknown Tort Claims Trust's employees, consultants, advisors, independent contractors, experts and agents for legal, financial, administrative, accounting, investment, auditing and alternative dispute resolution services and activities as the Unknown Tort Claims Trust requires;

(x)     compensate professionals for services, costs and expenses incurred prior to the Effective Date in accordance with the terms of the Plan and Confirmation Order;

(xi)     execute and deliver such instruments as the Unknown Tort Claims Trustee considers advisable or necessary in administering the Unknown Tort Claims Trust;

(xii)     timely file such income tax and other tax returns and statements required to be filed and timely pay all taxes, if any, required to be paid from the Unknown Tort Claims Trust Assets and comply with all applicable tax reporting and withholding obligations;

(xiii)     require, in respect of any Distribution of Unknown Tort Claims Trust Assets, the timely receipt of properly executed documentation (including, without limitation, IRS Form W-9) as the Unknown Tort Claims Trustee determines in his or her discretion necessary or appropriate to comply with applicable tax laws;

(xiv)     resolve all applicable lien resolution matters with respect to Beneficiaries that may be subject to liens arising pursuant to the MMSEA; provided, however, that for claims where there is an open chapter 7 bankruptcy case, to the approval of the chapter 7 bankruptcy trustee and applicable bankruptcy court; and provided further, however, that in such cases, the chapter 7 bankruptcy trustee shall have sole responsibility to seek court approval for such lien resolution;

10

(xv)    register as a responsible reporting entity ("**RRE**") and timely submit all reports under the reporting provisions of section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110-173) ("**MMSEA**") as required under Section 4.6 below;

(xvi)    intentionally omitted;

(xvii)    enter into such other arrangements with third parties as are deemed by the Unknown Tort Claims Trustee to be useful in carrying out the purposes of the Unknown Tort Claims Trust, provided such arrangements do not conflict with any other provision of the Unknown Tort Claims Trust Documents;

(xviii)    in accordance with Section 5.9 below, defend, indemnify, and hold harmless (and purchase insurance indemnifying) the Unknown Tort Claims Trust Indemnified Parties (as defined in Section 5.7(a) below) solely from the Unknown Tort Claims Trust Assets and to the fullest extent permitted by law; provided that the cost of any such insurance shall be an expense of the Unknown Tort Claims Trust that is payable by the Debtor;

(xix)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Unknown Tort Claims Trust Assets to any one or more reputable investment advisors or investment managers without liability for any action taken or omission made because of any such delegation;

(xx)    initiate, prosecute, defend, settle, maintain, administer, preserve, pursue, and resolve, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, all legal actions and other proceedings related to any asset, liability, or responsibility of the Unknown Tort Claims Trust;

(xxi)    take any and all actions appropriate or necessary in order to carry out the terms of the Unknown Tort Claims Trust Documents; and

(xxii)    except as otherwise expressly provided in the Unknown Tort Claims Trust Documents, exercise any other powers now or hereafter conferred upon or permitted to be exercised by a trustee under the laws of the State of New Mexico.

Section 2.2    *Limitations on the Unknown Tort Claims Trustee.*

(a)    Notwithstanding anything in the Unknown Tort Claims Trust Documents to the contrary, the Unknown Tort Claims Trustee shall not do or undertake any of the following:

(i)    guaranty any debt;

(ii)    make or enter into any loan of Unknown Tort Claims Trust Assets;

(iii)    make any transfer or Distribution of Unknown Tort Claims Trust Assets other than those authorized by the Unknown Tort Claims Trust Documents;

(iv)    engage in any trade or business with respect to the Unknown Tort Claims Trust Assets or proceeds therefrom, other than managing such assets;

(v)    engage in any investment of the Unknown Tort Claims Trust Assets, other than as explicitly authorized by this Unknown Tort Claims Trust Agreement; and

(vi)    engage in any activities inconsistent with the treatment of the Unknown Tort Claims Trust as a "qualified settlement fund" within the meaning of Treasury Regulations issued under Section 468B of the Tax Code.

2.3    _General Administration._ The Unknown Tort Claims Trustee shall act in accordance with the Unknown Tort Claims Trust Documents. The Unknown Tort Claims Trustee shall establish the location of the principal office of the Unknown Tort Claims Trust and may change the location of the principal office or establish other offices at other locations in his or her discretion.

Section 2.4    _Accounting._ The fiscal year of the Unknown Tort Claims Trust shall begin on January 1 and shall end on December 31 of each calendar year. The Unknown Tort Claims Trustee shall maintain the books and records relating to the Unknown Tort Claims Trust Assets and income and the payment of Unknown Tort Claims Trust Operating Expenses and other liabilities of the Unknown Tort Claims Trust. The detail of these books and records and the duration of time during which the Unknown Tort Claims Trustee shall keep such books and records shall be such as to allow the Unknown Tort Claims Trustee to make a full and accurate accounting of all Unknown Tort Claims Trust Assets, as well as to comply with applicable provisions of law and standard accounting practices necessary or appropriate to produce an annual report containing special-purpose financial statements of the Unknown Tort Claims Trust, including, without limitation, the assets and liabilities of the Unknown Tort Claims Trust as of the end of such fiscal year and the additions, deductions and cash flows for such fiscal year (the "**Annual Report**"); provided however, that the Unknown Tort Claims Trustee shall maintain such books and records until the wind-up of the Unknown Tort Claims Trust's affairs and satisfaction of all of Unknown Tort Claims Trust liabilities.  The Unknown Tort Claims Trustee shall serve the Annual Report on all counsel of record of Class 4 Tort Claimants and the Office of the United States Trustee.

Section 2.5    _Financial Reporting._

(a)    Within one hundred twenty (120) days following the end of each calendar year, the Unknown Tort Claims Trustee shall file with the Bankruptcy Court the Annual Report.

(b)    All materials filed with the Bankruptcy Court pursuant to this Section 2.5 need not be served on any parties in the Chapter 11 Case.

Section 2.6    _Names and addresses._

The Unknown Tort Claims Trustee shall keep a register (the "**Register**") in which the Unknown Tort Claims Trustee shall at all times maintain the names and addresses of the Beneficiaries and the awards made to the Beneficiaries pursuant to the Unknown Tort Claims Trust Documents. The Unknown Tort Claims Trustee may rely upon this Register for the purposes of

12

delivering Distributions or notices. In preparing and maintaining this Register, the Unknown Tort Claims Trustee may rely on the name and address of each Class 4 Tort Claimant Claim holder as set forth in a claim submitted to the Unknown Tort Claims Trustee by such holder, or proper notice of a name or address change, which has been delivered by such Class 4 Tort Claimant to the Unknown Tort Claims Trustee; provided, that in the case of Class 4 Tort Claimants who have open chapter 7 bankruptcy cases, the Unknown Tort Claims Trustee shall rely on the docket of the chapter 7 case to identify the current chapter 7 trustee. The Unknown Tort Claims Trustee may deliver Distributions and notices to counsel for any Class 4 Tort Claimant identified in such Beneficiary's submitted claim or proper notice of a name or address change; provided that Distributions and notices to Class 4 Claimants with open chapter 7 cases shall be delivered to the chapter 7 trustee or counsel for the chapter 7 trustee. The Register shall be confidential and will not be disclosed to any third party except for the Protected Parties, absent a court order.

Section 2.7    *Transfers of the Unknown Tort Claims Trust Assets.*

To the fullest extent permitted by law, neither the principal nor income of the Unknown Tort Claims Trust, in whole or part, shall be subject to any legal or equitable claims of creditors of any Beneficiary or others, nor to legal process, nor be voluntarily or involuntarily transferred, assigned, anticipated, pledged or otherwise alienated or encumbered except as may be ordered by the Bankruptcy Court or other competent court of jurisdiction.

## ARTICLE 3.
## ACCOUNTS, INVESTMENTS, EXPENSES

Section 3.1    *Accounts.*

(a)    The Unknown Tort Claims Trustee shall maintain one or more accounts ("**Unknown Tort Claims Trust Accounts**") on behalf of the Unknown Tort Claims Trust with one or more financial depository institutions (each a "**Financial Institution**").

(b)    The Unknown Tort Claims Trustee may replace any retained Financial Institution with a successor Financial Institution at any time, and such successor shall be subject to the considerations set forth in Section 3.1(a).

(c)    The Unknown Tort Claims Trustee may, from time to time, create such accounts and reasonable reserves within the Unknown Tort Claims Trust Accounts as authorized in this Section 3.1 and as he or she may deem necessary, prudent or useful in order to provide for Distributions to the Beneficiaries and the payment of Unknown Tort Claims Trust Operating Expenses and may, with respect to any such account or reserve, restrict the use of money therein for a specified purpose (the "**Unknown Tort Claims Trust Subaccounts**"). Any such Unknown Tort Claims Trust Subaccounts established by the Unknown Tort Claims Trustee shall be held as Unknown Tort Claims Trust Assets and are not intended to be subject to separate entity tax treatment as a "disputed claims reserve" or a "disputed ownership fund" within the meaning of the Internal Revenue Code ("**IRC**") or Treasury Regulations.

13

Section 3.2     *Investment Guidelines.*

      (a)     The Unknown Tort Claims Trustee may invest the Unknown Tort Claims Trust Assets in insured checking accounts, money market accounts and certificates of deposit.

Section 3.3     *Payment of Unknown Tort Claims Trust Operating Expenses.*  All Unknown Tort Claims Trust operating expenses shall be payable out of the Unknown Tort Claims Trust Assets. None of the Unknown Tort Claims Trustee, the Beneficiaries nor any of their officers, agents, advisors, professionals or employees shall be personally liable for the payment of any Unknown Tort Claims Trust operating expense or any other liability of the Unknown Tort Claims Trust. The Plan provides that the Reorganized Debtor shall pay to the Unknown Tort Claims Trust all of the Unknown Tort Claims Trust Operating Expenses (as defined below) within 30 days of invoice from the Unknown Tort Claims Trust.

# ARTICLE 4.
# CLAIMS ADMINISTRATION AND DISTRIBUTIONS

Section 4.1     *Claims Administration and Distributions.* The Unknown Tort Claims Trust shall fairly and reasonably compensate Allowed Class 4 Unknown Tort Claims, solely in accordance with the Unknown Tort Claims Trust Documents, including the Unknown Tort Claims Allocation Protocol.

Section 4.2     *Manner of Payment.*  Distributions from the Unknown Tort Claims Trust to the Beneficiaries may be made by the Unknown Tort Claims Trustee on behalf of the Unknown Tort Claims Trust or by a disbursing agent retained by the Unknown Tort Claims Trust to make Distributions on behalf of the Unknown Tort Claims Trust.

Section 4.3     *Delivery of Distributions.*

      (a)     Distributions shall be payable to the Beneficiary (or to counsel for the Beneficiary) by the Unknown Tort Claims Trustee in accordance with the terms of the Unknown Tort Claims Trust Documents, including the Unknown Tort Claims Allocation Protocol. With respect to each compensable Class 4 Tort Claim approved for payment, Distributions shall be made only after the Unknown Tort Claims Trustee has determined that all obligations of the Unknown Tort Claims Trust with respect to each such Class 4 Tort Claim have been satisfied. In the event that any Distribution to a Beneficiary is returned as undeliverable, no further Distribution to such Beneficiary shall be made unless and until the Unknown Tort Claims Trustee has been notified of the then current address of such Beneficiary, at which time such Distribution shall be made to such Beneficiary without interest; provided however, that all Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable final Distribution date. After such date, (i) all unclaimed Distributions shall revert to the Unknown Tort Claims Trust (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), (ii) the Class 4 Tort Claim of such Beneficiary shall be released, settled, compromised and forever barred as against the Unknown Tort Claims Trust, and (iii) all unclaimed property interests shall be distributed to other Beneficiaries in accordance with the Unknown Tort Claims Trust Documents, as if the Class 4 Tort Claim of such Beneficiary had been disallowed as of the date the undeliverable Distribution

14

was first made. The Unknown Tort Claims Trustee shall take reasonable efforts to obtain a current address for any Beneficiary with respect to which any Distribution is returned as undeliverable.

(b) In the event the Unknown Tort Claims Trust holds cash after paying all Unknown Tort Claims Trust Operating Expenses and making all Distributions contemplated under the Unknown Tort Claims Trust Documents, such remaining cash shall be distributed to Beneficiaries in accordance with the Unknown Tort Claims Allocation Protocol. If the Unknown Tort Claims Trustee determines that such a Distribution is not economically reasonable in light of the costs associated with distributing such cash to Beneficiaries, the Unknown Tort Claims Trustee shall deliver such cash to a nationally recognized charitable organization of the Unknown Tort Claims Trustee's choice, which charitable organization shall have a charitable purpose consistent with the protection of children from sexual abuse or its ramifications. No Unknown Tort Claims Trust Asset or any unclaimed property shall escheat to any federal, state, or local government or any other entity.

(c) Notwithstanding any provision in the Unknown Tort Claims Trust Documents to the contrary, no payment shall be made to any Beneficiary on account of any Class 4 Tort Claim if the Unknown Tort Claims Trustee determines that the costs of making such Distribution is greater than the amount of the Distribution to be made.

(d) The Distributions from the Unknown Tort Claims Trust are in full settlement of the Class 4 Unknown Tort Claims against each of the Protected Parties. The Unknown Tort Claims Trustee shall not make any Distribution to a Beneficiary unless and until the Settlement Trustee has received an original general release of all Claims in favor of all Protected Parties and Exculpated Parties executed by such Beneficiary, in the form attached to the Plan. The Unknown Tort Claims Trustee shall not make any Distribution to a chapter 7 trustee for those Class 4 Tort Claimants who have open bankruptcy cases, unless and until the Unknown Tort Claims Trustee has received an original general release of all Claims in favor of all Protected Parties and Exculpated Parties executed by such chapter 7 trustee in the form attached to the Plan. The Unknown Tort Claims Trustee shall provide copies of the Beneficiaries' executed releases to the Reorganized Debtor within five business days of any initial distribution to such Beneficiary. Any requests by Protected Parties or Exculpated Parties for copies of such executed releases shall be made to and fulfilled by the Reorganized Debtor.

Section 4.4    *Medicare Reimbursement and Reporting Obligations.*

(a) The Unknown Tort Claims Trust shall register as a Responsible Reporting Entity ("**RRE**") under the reporting provisions of section 111 of MMSEA (as defined in the Plan).

(b) The Unknown Tort Claims Trust shall timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated by the Unknown Tort Claims Trust or with respect to contributions to the Unknown Tort Claims Trust. The Unknown Tort Claims Trust, in its capacity as an RRE, shall follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agency or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA

(collectively, "**CMS**") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

(c)     Before remitting funds to claimants' counsel, or to the claimant if such claimant is acting *pro se*, in respect of any Class 4 Tort Claim, the Unknown Tort Claims Trustee shall obtain: (i) a certification that said claimant (or such claimant's authorized representative) has provided or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. § 1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Class 4 Tort Claim and (ii) that the claimants' counsel or claimant (if claimant is acting pro se) indemnifies the Unknown Tort Claims Trust for any such obligations.

## ARTICLE 5.
## UNKNOWN TORT CLAIMS TRUSTEE

Section 5.1     *Initial Unknown Tort Claims Trustee.*     The initial Unknown Tort Claims Trustee shall be Omni Management Group, LLC.

Section 5.2     *Term of Service, Successor Unknown Tort Claims Trustee.*

(a)     The Unknown Tort Claims Trustee shall serve from the Effective Date until the earliest of: (i) its resignation pursuant to Section 5.2(b) below, (ii) its removal pursuant to Section 5.2(c) below, (iii) its dissolution, or (iv) the termination of the Unknown Tort Claims Trust pursuant to Section 8.2 below.

(b)     The Unknown Tort Claims Trustee may resign at any time upon written notice filed with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect, which shall not be less than ninety (90) days after the date such notice is given, where practicable.

(c)     The Unknown Tort Claims Trustee may be removed by order of the Bankruptcy Court, in the event that the Unknown Tort Claims Trustee becomes unable to discharge its duties hereunder due to accident, physical deterioration, mental incompetence or for other good cause, provided the Unknown Tort Claims Trustee has received reasonable notice and an opportunity to be heard. Other good cause shall mean gross negligence, fraud, self-dealing, intentional misrepresentation, willful misconduct, indictment for or conviction of a felony in each case whether or not connected to the Unknown Tort Claims Trust, any substantial failure to comply with the administration of the Unknown Tort Claims Trust or a consistent pattern of neglect and failure to perform or participate in performing the duties of the Unknown Tort Claims Trustee hereunder.

Section 5.3     *Appointment of Successor Unknown Tort Claims Trustee.*

(a)     In the event of any vacancy in the office of the Unknown Tort Claims Trustee, including the resignation or removal of any successor Unknown Tort Claims Trustee, such vacancy shall be filled by order of the Bankruptcy Court.

(b)      Immediately upon the appointment of any successor Unknown Tort Claims Trustee pursuant to Section 5.3(a) above, all rights, titles, duties, powers and authority of the predecessor Unknown Tort Claims Trustee hereunder shall be vested in and undertaken by the successor Unknown Tort Claims Trustee without any further act. No successor Unknown Tort Claims Trustee shall be liable personally for any act or omission of its predecessor Unknown Tort Claims Trustee. No predecessor Unknown Tort Claims Trustee shall be liable personally for any act or omission of its successor Unknown Tort Claims Trustee. No successor Unknown Tort Claims Trustee shall have any duty to investigate the acts or omissions of its predecessor Unknown Tort Claims Trustee unless there is reasonable cause to do so.

(c)      Each successor Unknown Tort Claims Trustee shall serve until the earliest of (i) his or her death or dissolution, (ii) its resignation pursuant to Section 5.2(b) above, (iii) its removal pursuant to Section 5.2(c) above, and (iv) the termination of the Unknown Tort Claims Trust pursuant to Section 8.2 below.

Section 5.4      _Compensation and Expenses of Unknown Tort Claims Trustee._ The Unknown Tort Claims Trustee shall receive compensation from the Unknown Tort Claims Trust for its services as Unknown Tort Claims Trustee. The initial amount of the Unknown Tort Claims Trustee's compensation shall be $290 per hour, $145.00 per hour for the Unknown Tort Claims Trustee's associates. The Unknown Tort Claims Trust shall also, upon receipt of appropriate documentation, reimburse all reasonable out-of-pocket costs and expenses incurred by the Unknown Tort Claims Trustee in the course of carrying out its duties as Unknown Tort Claims Trustee in accordance with reasonable policies and procedures as may be adopted from time to time, including in connection with attending meetings of the Unknown Tort Claims Trustee.  The amounts paid to the Unknown Tort Claims Trustee for compensation and expenses shall be disclosed in the Annual Report. The Reorganized Debtor is liable for the Unknown Tort Claims Trustee's compensation and expenses and shall pay such fees and expenses to the Unknown Tort Claims Trust within 30 days of invoicing by the Unknown Tort Claims Trustee.

Section 5.5      _Unknown Tort Claims Trustee's Independence._

(a)      The Unknown Tort Claims Trustee shall not, during its service, hold a financial interest in, act as attorney or agent for or serve as any other professional for Reorganized Debtor or its affiliated persons.  No Unknown Tort Claims Trustee shall act as an attorney for, or otherwise represent, any Person who holds a claim in the Chapter 11 Case.

(b)      The Unknown Tort Claims Trustee shall be indemnified by the Unknown Tort Claims Trust in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.

(c)      Persons dealing with the Unknown Tort Claims Trust and the Unknown Tort Claims Trustee, respect to the affairs of the Unknown Tort Claims Trust, shall have recourse only to the Unknown Tort Claims Trust Assets to satisfy any liability incurred by the Unknown Tort Claims Trust or the Unknown Tort Claims Trustee to such Person in carrying out the terms of this Unknown Tort Claims Trust Agreement, and neither the Unknown Tort Claims Trustee, the

17

Beneficiaries, nor any of their professionals, advisors, officers, agents, consultants or lawyers shall have any personal obligation to satisfy any such liability.

Section 5.6       *Standard of Care; Exculpation.*

(a)       As used herein, the term "**Unknown Tort Claims Trust Indemnified Party**" shall mean the Unknown Tort Claims Trustee, the Tort Claims Reviewer, and each of their respective members, officers, employees, agents, consultants, lawyers, advisors or professionals (collectively, the "**Unknown Tort Claims Trust Indemnified Parties**").

(b)       No Unknown Tort Claims Trust Indemnified Party shall be liable to the Unknown Tort Claims Trust, any other Unknown Tort Claims Trust Indemnified Party, any Beneficiary or any other Person for any damages arising out of the creation, operation, administration, enforcement or termination of the Unknown Tort Claims Trust, except in the case of such Unknown Tort Claims Trust Indemnified Party's gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction. To the fullest extent permitted by applicable law, the Unknown Tort Claims Trust Indemnified Parties shall have no liability for any action in performance of their duties under this Unknown Tort Claims Trust Agreement taken in good faith with or without the advice of counsel, accountants, appraisers and other professionals retained by the Unknown Tort Claims Trust Indemnified Parties. None of the provisions of this Unknown Tort Claims Trust Agreement shall require the Unknown Tort Claims Trust Indemnified Parties to expend or risk their own funds or otherwise incur personal financial liability in the performance of any of their duties hereunder or in the exercise of any of their respective rights and powers. Any Unknown Tort Claims Trust Indemnified Party may rely, without inquiry, upon writings delivered to it under any of the Unknown Tort Claims Trust Documents, which the Unknown Tort Claims Trust Indemnified Party reasonably believes to be genuine and to have been given by a proper person. Notwithstanding the foregoing, nothing in this Section 5.6 shall relieve the Unknown Tort Claims Trust Indemnified Parties from any liability for any actions or omissions arising out of the gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction; provided that in no event will any such person be liable for punitive, exemplary, consequential or special damages under any circumstances. Any action taken or omitted by the Unknown Tort Claims Trust Indemnified Parties with the approval of the Bankruptcy Court, or any other court of competent jurisdiction, will conclusively be deemed not to constitute willful misconduct, bad faith, or fraud.

(c)       The Unknown Tort Claims Trust Indemnified Parties shall not be subject to any personal liability whatsoever, whether in tort, contract or otherwise, to any Person in connection with the affairs of the Unknown Tort Claims Trust or for any liabilities or obligations of the Unknown Tort Claims Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own willful misconduct, bad faith, or fraud, and all Persons claiming against the Unknown Tort Claims Trust Indemnified Parties, or otherwise asserting claims of any nature in connection with affairs of the Unknown Tort Claims Trust, shall look solely to the Unknown Tort Claims Trust Assets for satisfaction of any such claims.

(d)     To the extent that, at law or in equity, the Unknown Tort Claims Trust Indemnified Parties have duties (including fiduciary duties) or liability related thereto, to the Unknown Tort Claims Trust or the Beneficiaries, it is hereby understood and agreed by the parties hereto and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, [including Section 3806 of the Act,] and replaced by the duties and liabilities expressly set forth in this Unknown Tort Claims Trust Agreement with respect to the Unknown Tort Claims Trust Indemnified Parties, provided however, that the duties of care and loyalty are not eliminated but are limited and subject to the terms of this Unknown Tort Claims Trust Agreement, including but not limited to this Section 5.6 and its subparts.

(e)     The Unknown Tort Claims Trust Indemnified Parties shall be indemnified to the fullest extent permitted by law by the Unknown Tort Claims Trust against all liabilities arising out of the creation, operation, administration, enforcement or termination of the Unknown Tort Claims Trust, including actions taken or omitted in fulfillment of their duties with respect to the Unknown Tort Claims Trust, except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud.

(f)     The Unknown Tort Claims Trust may maintain appropriate insurance coverage for the protection of the Unknown Tort Claims Trust Indemnified Parties, as determined by the Unknown Tort Claims Trustee in its discretion.

Section 5.7     *Protective Provisions.*

(a)     Every provision of this Unknown Tort Claims Trust Agreement relating to the conduct or affecting the liability of or affording protection to Unknown Tort Claims Trust Indemnified Parties shall be subject to the provisions of this Section 5.7.

(b)     In the event the Unknown Tort Claims Trustee retains counsel (including at the expense of the Unknown Tort Claims Trust), the Unknown Tort Claims Trustee shall be afforded the benefit of the attorney-client privilege with respect to all communications with such counsel, and in no event shall the Unknown Tort Claims Trustee be deemed to have waived any right or privilege including, without limitation, the attorney-client privilege even if the communications with counsel had the effect of guiding the Unknown Tort Claims Trustee in the performance of duties hereunder.  A successor to any Unknown Tort Claims Trustee shall succeed to and hold the same respective rights and benefits of the predecessor for purposes of privilege, including the attorney-client privilege. No Beneficiary or other party may raise any exception to the attorney-client privilege discussed herein as any such exceptions are hereby waived by all parties.

(c)     To the extent that, at law or in equity, the Unknown Tort Claims Trustee has duties (including fiduciary duties) and liabilities relating hereto, to the Unknown Tort Claims Trust or to the Beneficiaries, it is hereby understood and agreed by the Parties and the Beneficiaries that such duties and liabilities are eliminated to the fullest extent permitted by applicable law, and replaced by the duties and liabilities expressly set forth in this Unknown Tort Claims Trust Agreement with respect to the Unknown Tort Claims Trustee, provided however, that the duties

19

of care and loyalty are not eliminated but are limited and subject to the terms of this Unknown Tort Claims Trust Agreement, including but not limited to Section 5.6 herein.

(d)     No Unknown Tort Claims Trust Indemnified Party shall be personally liable under any circumstances, except for their own gross negligence, willful misconduct, bad faith, or fraud as finally judicially determined by a court of competent jurisdiction.

(e)     No provision of this Unknown Tort Claims Trust Agreement shall require the Unknown Tort Claims Trust Indemnified Parties to expend or risk their own personal funds or otherwise incur financial liability in the performance of their rights, duties, and powers hereunder.

(f)     In the exercise or administration of the Unknown Tort Claims Trust hereunder, the Unknown Tort Claims Trust Indemnified Parties (i) may act directly or through their respective agents or attorneys pursuant to agreements entered into with any of them, and the Unknown Tort Claims Trust Indemnified Parties shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys have been selected by the Unknown Tort Claims Trust Indemnified Parties in good faith and with due care, and (ii) may consult with counsel, accountants and other professionals to be selected by them in good faith and with due care and employed by them, and shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the advice or opinion of any such counsel, accountants or other professionals.

Section 5.8     _Indemnification._

(a)     Without the need for further court approval, the Unknown Tort Claims Trust hereby indemnifies, holds harmless, and defends the Unknown Tort Claims Trust Indemnified Parties in the performance of their duties hereunder to the fullest extent that a trust, including a statutory trust organized under the laws of the State of New Mexico, is entitled to indemnify, hold harmless and defend such persons against any and all liabilities, expenses, claims, damages or losses (including attorneys' fees and costs) incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to or after the Effective Date in connection with the formation, establishment, funding or operations of the Unknown Tort Claims Trust except for those acts that are finally judicially determined by a court of competent jurisdiction to have arisen out of their own gross negligence, willful misconduct, bad faith, or fraud.

(b)     Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of the Unknown Tort Claims Trust Indemnified Parties in connection with any action, suit or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Unknown Tort Claims Trust shall be paid by the Unknown Tort Claims Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Unknown Tort Claims Trust Indemnified Parties, to repay such amount in the event that it shall be determined ultimately by final order of the Bankruptcy Court that the Unknown Tort Claims Trust Indemnified Parties or any other potential indemnitee are not entitled to be indemnified by the Unknown Tort Claims Trust.

(c)    The Unknown Tort Claims Trustee may purchase and maintain appropriate amounts and types of insurance on behalf of the Unknown Tort Claims Trust Indemnified Parties, as determined by the Unknown Tort Claims Trustee, which may include liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Unknown Tort Claims Trust Indemnified Party, and/or as an employee, agent, lawyer, advisor or consultant of any such person.

(d)    The indemnification provisions of this Unknown Tort Claims Trust Agreement with respect to any Unknown Tort Claims Trust Indemnified Party shall survive the termination of such Unknown Tort Claims Trust Indemnified Party from the capacity for which such Unknown Tort Claims Trust Indemnified Party is indemnified. Termination or modification of this Unknown Tort Claims Trust Agreement shall not affect any indemnification rights or obligations in existence at such time. In making a determination with respect to entitlement to indemnification of any Unknown Tort Claims Trust Indemnified Party hereunder, the person, persons or entity making such determination shall presume that such Unknown Tort Claims Trust Indemnified Party is entitled to indemnification under this Unknown Tort Claims Trust Agreement, and any person seeking to overcome such presumption shall have the burden of proof to overcome the presumption.

(e)    The rights to indemnification hereunder are not exclusive of other rights which any Unknown Tort Claims Trust Indemnified Party may otherwise have at law or in equity, including common law rights to indemnification or contribution.

Section 5.9    _Bond._ The Unknown Tort Claims Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## ARTICLE 6.

## GENERAL PROVISIONS

Section 6.1    _Irrevocability._ To the fullest extent permitted by applicable law, the Unknown Tort Claims Trust is irrevocable. The Settlor shall not: (i) retain any ownership or residual interest whatsoever with respect to any Unknown Tort Claims Trust Assets, including, but not limited to, the funds transferred to fund the Unknown Tort Claims Trust, and (ii) have any rights or role with respect to the management or operation of the Unknown Tort Claims Trust, or the Unknown Tort Claims Trustee's administration of the Unknown Tort Claims Trust.

Section 6.2    _Term; Termination._

(a)    The term for which the Unknown Tort Claims Trust is to exist shall commence on the date of the filing of the Certificate of Unknown Tort Claims Trust and shall terminate pursuant to the following provisions.

(b)    The Unknown Tort Claims Trust shall automatically dissolve as soon as practicable but no later than ninety (90) days after the date on which the Bankruptcy Court approves the dissolution of the Unknown Tort Claims Trust because: (i) all reasonably expected assets have been collected by the Unknown Tort Claims Trust, (ii) all Distributions have been

made to the extent set forth in the Unknown Tort Claims Allocation Protocol, (iii) necessary arrangements and reserves have been made to discharge all anticipated remaining Unknown Tort Claims Trust obligations and Unknown Tort Claims Trust Operating Expenses in a manner consistent with the Unknown Tort Claims Trust Documents, and (iv) a final accounting has been filed and approved by the Bankruptcy Court (the "**Dissolution Date**").

(c)     Following the dissolution and Distribution of the Unknown Tort Claims Trust Assets, the Unknown Tort Claims Trust shall terminate, and the Unknown Tort Claims Trustee shall execute and cause a Certificate of Cancellation of the Certificate of Unknown Tort Claims Trust to be filed in accordance with the Act. Notwithstanding anything to the contrary contained in this Unknown Tort Claims Trust Agreement, the existence of the Unknown Tort Claims Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

(d)     After termination of the Unknown Tort Claims Trust and solely for the purpose of liquidating and winding up its affairs, the Unknown Tort Claims Trustee shall continue to act as Unknown Tort Claims Trustee until its duties hereunder have been fully performed.  The Unknown Tort Claims Trustee shall retain the books, records, documents and files that shall have been delivered to or created by the Unknown Tort Claims Trustee until Distribution of all the Unknown Tort Claims Trust Assets. For purposes of this provision, Unknown Tort Claims Trust Assets will be deemed distributed when the total amount remaining in the Unknown Tort Claims Trust is less than $_____ and no further actions are pending or have yet to be brought. At the Unknown Tort Claims Trustee's discretion, all of such books, records, documents and files may be destroyed at any time following the later of: (i) the first anniversary of the final Distribution of the Unknown Tort Claims Trust Assets, and (ii) the date until which the Unknown Tort Claims Trustee is required by applicable law to retain such books, records, documents and files; provided however, that, notwithstanding the foregoing, the Unknown Tort Claims Trustee shall not destroy or discard any books, records, documents or files relating to the Unknown Tort Claims Trust without giving Reorganized Debtor the opportunity to take control of such books, records, documents and/or files.

(e)     Upon termination of the Unknown Tort Claims Trust and accomplishment of all activities described in this agreement, the Unknown Tort Claims Trustee and its professionals shall be discharged and exculpated from liability (except for acts or omissions resulting from the recklessness, gross negligence, willful misconduct, knowing and material violation of law or fraud of the Unknown Tort Claims Trustee or his agents or representatives). The Unknown Tort Claims Trustee may, at the expense of the Unknown Tort Claims Trust, seek an Order of the Bankruptcy Court confirming the discharges, exculpations and exoneration referenced in the preceding sentence.

Section 6.3     _Outgoing Unknown Tort Claims Trustee Obligations._

In the event of the resignation or removal of the Unknown Tort Claims Trustee, the resigning or removed Unknown Tort Claims Trustee shall:

(a)     execute and deliver by the effective date of resignation or removal such documents, instruments, records and other writings as may be reasonably requested by the

successor Unknown Tort Claims Trustee to effect such resignation or removal and the conveyance of the Unknown Tort Claims Trust Assets then held by the resigning or removed Unknown Tort Claims Trustee to the successor Unknown Tort Claims Trustee;

(b)  deliver to the successor Unknown Tort Claims Trustee all documents, instruments, records and other writings relating to the Unknown Tort Claims Trust Assets as may be in the possession or under the control of the resigning or removed Unknown Tort Claims Trustee;

(c)  otherwise assist and cooperate in effecting the assumption of the resigning or removed Unknown Tort Claims Trustee's obligations and functions by the successor Unknown Tort Claims Trustee; and

(d)  irrevocably appoint the successor Unknown Tort Claims Trustee (and any interim trustee) as its attorney-in-fact and agent with full power of substitution for it and its name, place and stead to do any and all acts that such resigning or removed Unknown Tort Claims Trustee is obligated to perform under this Unknown Tort Claims Trust Agreement. Such appointment shall not be affected by the subsequent disability or incompetence of the Unknown Tort Claims Trustee making such appointment. The Bankruptcy Court also may enter such orders as are necessary to effect the termination of the appointment of the Unknown Tort Claims Trustee and the appointment of the successor Unknown Tort Claims Trustee.

Section 6.4  *Taxes.*

(a)  The Unknown Tort Claims Trust is intended to qualify as a "qualified settlement fund" within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the IRC, as amended (the "**QSF Regulations**"), with respect to which Reorganized Debtor shall timely make an election to treat the Unknown Tort Claims Trust as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes.

(b)  The Unknown Tort Claims Trustee shall be the "administrator" of the Unknown Tort Claims Trust within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations and, in such capacity, such administrator shall (i) prepare and timely file, or cause to be prepared and timely filed, such income tax and other tax returns and statements required to be filed and shall timely pay all taxes required to be paid by the Unknown Tort Claims Trust out of the Unknown Tort Claims Trust Assets, which assets may be sold by the Unknown Tort Claims Trustee to the extent necessary to satisfy tax liabilities of the Unknown Tort Claims Trust, (ii) comply with all applicable tax reporting and withholding obligations, (iii) satisfy all requirements necessary to qualify and maintain qualification of Unknown Tort Claims Trust as a qualified settlement fund and a grantor trust, within the meaning of the QSF Regulations, and (iv) take no action that could cause the Unknown Tort Claims Trust to fail to qualify as a qualified settlement fund and a grantor trust within the meaning of the QSF Regulations. The Unknown Tort Claims Trustee may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Unknown Tort Claims Trust for all taxable periods through the Dissolution Date.

(c)     As soon as reasonably practicable after the Effective Date, but in no event later than one hundred twenty (120) days thereafter, the Unknown Tort Claims Trust shall make a good faith valuation of the Debtor's Contribution and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. In connection with the preparation of the valuation contemplated hereby, the Unknown Tort Claims Trust shall be entitled to retain such professionals and advisors as the Unknown Tort Claims Trustee shall determine to be appropriate or necessary, and the Unknown Tort Claims Trustee shall take such other actions in connection therewith as he or she determines to be appropriate or necessary.

(d)     The Unknown Tort Claims Trustee may withhold and pay to the appropriate tax authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or Distribution. All such amounts withheld and paid to the appropriate tax authority (or placed in escrow pending resolution of the need to withhold) shall be treated as amounts distributed or paid for all purposes of this Unknown Tort Claims Trust Agreement. The Unknown Tort Claims Trustee shall be authorized to collect such tax information (including tax identification numbers) as in his or her sole discretion is deemed necessary to effectuate the Plan, the Confirmation Order and this Unknown Tort Claims Trust Agreement. In order to receive Distributions, all Beneficiaries shall be required to provide tax information to the Unknown Tort Claims Trustee to the extent the Unknown Tort Claims Trustee deems appropriate in the manner and in accordance with the procedures from time to time established by the Unknown Tort Claims Trustee for these purposes. The Unknown Tort Claims Trustee may refuse to make a payment or Distribution unless or until such information is delivered; provided however, that, upon the delivery of such information, the Unknown Tort Claims Trustee shall make such delayed payment or Distribution, without interest. Notwithstanding the foregoing, if a person fails to furnish any tax information reasonably requested by the Unknown Tort Claims Trustee before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Unknown Tort Claims Trust. In no event shall any escheat to any federal, state or local government or any other entity.

Section 6.5     *Modification.*

(a)     Material modifications to this Unknown Tort Claims Trust Agreement, including Exhibits hereto, may be made only with the approval of the Bankruptcy Court; provided however, that the Unknown Tort Claims Trustee may amend this Unknown Tort Claims Trust Agreement from time to time without the consent, approval or other authorization of, but with notice to, the Bankruptcy Court, to make minor corrective or clarifying amendments necessary to enable the Unknown Tort Claims Trustee to effectuate the provisions of this Unknown Tort Claims Trust Agreement, provided such minor corrective or clarifying amendments shall not take effect until ten (10) days after notice to the Bankruptcy Court. Except as permitted pursuant to the preceding sentence, the Unknown Tort Claims Trustee shall not modify this Unknown Tort Claims Trust Agreement in any manner that is inconsistent with the Plan or the Confirmation Order without the approval of the Bankruptcy Court. The Unknown Tort Claims Trustee shall file notice of any modification of this Unknown Tort Claims Trust Agreement with the Bankruptcy Court.

(b)     Notwithstanding anything set forth in this Unknown Tort Claims Trust Agreement to the contrary, none of this Unknown Tort Claims Trust Agreement, nor any document

related thereto shall be modified or amended in any way that could jeopardize or impair (i) the applicability of section 105 of the Bankruptcy Code to the Plan and the Confirmation Order, (ii) the efficacy or enforceability of the Channeling Injunction or any other injunction or release issued or granted in connection with the Plan and Confirmation Order or (iii) the Unknown Tort Claims Trust's qualified settlement fund status and grantor trust status under the QSF Regulations.

Section 6.6        *Severability.* If any provision of this Unknown Tort Claims Trust Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Unknown Tort Claims Trust Agreement, or the application of such provisions to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Unknown Tort Claims Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 6.7        *Notices.* Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by email pursuant to the instructions listed below, or mailed by overnight courier, addressed as follows, or to such other address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Unknown Tort Claims Trustee:


with a copy (which shall not constitute notice) to:



To Reorganized Debtor:

Tony Salgado, CPA
Archdiocese of Santa Fe
4000 St. Joseph Pl NW
Albuquerque, NM 87120
tsalgado@asfcca.org

with a copy (which shall not constitute notice) to:

Ford Elsaesser
Elsaesser Anderson, Chtd.
P. O. Box 369
535 High Street
Priest River, ID 83856
ford@eaidaho.com

and

Thomas D. Walker
Walker & Associates, P.C.
500 Marquette Ave. NW, Suite 650
Albuquerque, NM 87102
twalker@walkerlawpc.com

All such notices and communications, if mailed, shall be effective when physically delivered at the designated addresses, or if electronically transmitted, shall be effective upon transmission.

Section 6.8 _Successors and Assigns_. The provisions of this Unknown Tort Claims Trust Agreement shall be binding upon and inure to the benefit of the Unknown Tort Claims Trust, the Unknown Tort Claims Trustee, and their respective successors and assigns, except that none of such persons may assign or otherwise transfer any of its, or their, rights or obligations under this Unknown Tort Claims Trust Agreement except, in the case of the Unknown Tort Claims Trust and the Unknown Tort Claims Trustee, as contemplated by Section 2.1 and Section 5.2 above.

Section 6.9 _Limitation on Transferability; Beneficiaries' Interests._ The Beneficiaries' interests in the Unknown Tort Claims Trust shall not: (a) be assigned, conveyed, hypothecated, pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly and any purported assignment, conveyance, pledge or transfer shall be null and void _ab initio,_ except to the extent necessary for the Beneficiary to create a qualified settlement trust; (b) be evidenced by a certificate or other instrument; (c) possess any voting rights; (d) give rise to any right or rights to participate in the management or administration of the Unknown Tort Claims Trust or the Unknown Tort Claims Trust Assets; (e) entitle the holders thereof to seek the removal or replacement of any Unknown Tort Claims Trustee, whether by petition to the Bankruptcy Court or any other court or otherwise; (f) entitle the holders thereof to receive any interest on Distributions; and (g) give rise to any rights to seek a partition or division of the Unknown Tort Claims Trust Assets. Beneficiaries shall have no interest of any kind in any of the Unknown Tort Claims Trust Assets; rather, the Beneficiaries shall have an undivided beneficial interest only in cash assets of but only to the extent such cash assets are declared by the Unknown Tort Claims Trustee to be distributable as Distributions in accordance with the Unknown Tort Claims Trust Documents. For the avoidance of doubt, the Beneficiaries shall have only such rights as expressly set forth in the Unknown Tort Claims Trust Documents.

Section 6.10 _Exemption from Registration._

The Parties hereto intend that the rights of the Beneficiaries arising under this Unknown Tort Claims Trust Agreement shall not be "securities" under applicable laws, but none of the Parties hereto represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If it should be determined that any such interests constitute "securities," the Parties hereto intend that the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of the beneficial interests in the Unknown Tort Claims Trust will be exempt from registration under the

Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations.

Section 6.11    *Entire Agreement; No Waiver.*

The entire agreement of the parties relating to the subject matter of this Unknown Tort Claims Trust Agreement is contained herein and in the documents referred to herein, and this Unknown Tort Claims Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

Section 6.12    *Headings.* The headings used in this Unknown Tort Claims Trust Agreement are inserted for convenience only and do not constitute a portion of this Unknown Tort Claims Trust Agreement, nor in any manner affect the construction of the provisions of this Unknown Tort Claims Trust Agreement.

Section 6.13    *Governing Law.*

This Unknown Tort Claims Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of New Mexico, without regard to the conflicts of law provisions thereof which would purport to apply the law of any other jurisdiction. None of the following provisions of New Mexico law shall apply to the extent inconsistent with the terms of the Unknown Tort Claims Trust Documents: (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of Unknown Tort Claims Trust Assets, (g) the existence of rights or interests (beneficial or otherwise) in Unknown Tort Claims Trust Assets, (h) the ability of beneficial owners or other persons to terminate or dissolve a trust, and (i) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees or beneficial owners that are inconsistent with the limitations on liability or authorities and powers of the Unknown Tort Claims Trustee set forth or referenced in this Unknown Tort Claims Trust Agreement.

Section 6.14    *Settlor's Representative.*

Pursuant to the Unknown Tort Claims Trust Documents, the Reorganized Debtor is hereby irrevocably designated as the "**Settlor's Representative**" and is hereby authorized to take any action consistent with Reorganized Debtor's obligations under the Unknown Tort Claims Trust Documents that is reasonably requested of the Settlor by the Unknown Tort Claims Trustee. Pursuant to the Unknown Tort Claims Trust Documents. Pursuant to the Unknown Tort Claims

Trust Documents, the Settlor's Representative shall cooperate with the Unknown Tort Claims Trustee and the Unknown Tort Claims Trust's officers, employees and professionals in connection with the Unknown Tort Claims Trust's administration of the Debtor's Contribution, including, but not limited to, providing the Unknown Tort Claims Trustee or his or her officers, employees and professionals, upon written request (including e-mail), reasonable access to information related to the Debtor's Contribution, including, without limitation, delivery of documents in the possession of, or witnesses under the control of, Reorganized Debtor (and others) to the extent that the Unknown Tort Claims Trustee could obtain the same by subpoena, notice of deposition or other permissible discovery request, without the need for a formal discovery request.

Section 6.15    *Independent Legal and Tax Counsel.*

All parties to this Unknown Tort Claims Trust Agreement have been represented by counsel and advisors of their own selection in this matter. Consequently, the parties agree that the language in all parts of this Unknown Tort Claims Trust Agreement shall in all cases be construed as a whole according to its fair meaning and shall not be construed either strictly for or against any party. It is specifically acknowledged and understood that this Unknown Tort Claims Trust Agreement has not been submitted to, nor reviewed or approved by, the IRS or the taxing authorities of any state or territory of the United States of America.

Section 6.16    *Waiver of Jury Trial.*

Each party hereto and each Beneficiary hereof hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to a trial by jury in any legal proceeding arising out of or relating to this Unknown Tort Claims Trust Agreement.

Section 6.17    *Effectiveness.*

This Unknown Tort Claims Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.

Section 6.18    *Counterpart Signatures.*

This Unknown Tort Claims Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument. A signed copy of this Unknown Tort Claims Trust Agreement or any amendment hereto delivered by facsimile, email or other means of Electronic Transmission, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

*[SIGNATURE PAGES TO FOLLOW]*

IN WITNESS WHEREOF, the parties have executed this Unknown Tort Claims Trust Agreement as of the date first set forth above to be effective as of the Effective Date.

[SETTLOR]


[TRUSTEE]

# EXHIBIT 1
## UNKNOWN TORT CLAIMS ALLOCATION PROTOCOL

# EXHIBIT K

## LIST OF CLASS 5 CLAIMS

| Claim No. | Claimant Name | Claim Amount | Proposed Treatment |
|---|---|---|---|
| 1 | Christine Romero | $250,000.00 | No Distribution except as provided in Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |
| 12 | Benito Garcia | $4,001.00 | No Distribution except as provided in the Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |
| 98 | Rudy Blea | $200,000.00 | No Distribution except as provided in the Section 8.3.5 of the Plan. The Debtor has objected to this Claim. If the Debtor's objection is upheld, this Claim will receive no distribution. If the Claim is allowed, the Debtor will pay the allowed amount of the Claim over a period of 10 years, in annual installments. No interest will accrue on the allowed amount of the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |

| 105 | Marc Hilton | $500,000.00 | No Distribution except as provided in the Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |
|---|---|---|---|
| 222 | Bank of America | $1,079,000.00 | No balance is owed on this Claim and the Debtor has objected to this Claim. If the Debtor's objection is upheld, this Claim will receive no distribution. If the Claim is allowed, the Debtor will pay the allowed amount of the Claim over a period of 10 years, in annual installments. No interest will accrue on the allowed amount of the Claim. |
| 223 | Bank of America | $30,000.00 | No balance is owed on this Claim and the Debtor has objected to this Claim. If the Debtor's objection is upheld, this Claim will receive no distribution. If the Claim is allowed, the Debtor will pay the allowed amount of the Claim over a period of 10 years, in annual installments. No interest will accrue on the allowed amount of the Claim. |
| 259 | Emma Banuelos | $30,000.00 | No Distribution except as provided in Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |

| 268 | Candelaria Lopez | $-- | No Distribution except as provided in the Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |
|---|---|---|---|
| 376 | Cynthia Buckner | $60,000.00 | No Distribution except as provided in the Section 8.3.5 of the Plan. The discharge injunction shall be modified as to this Claim, to permit the Claimant to file and prosecute and to permit the Reorganized Debtor to defend, to final judgment, the Claim in the appropriate non-bankruptcy forum and to permit Claimant to seek to collect on any judgment that may be obtained in that action from the Preserved Coverage, up to the limits of such coverage for the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |
| 422 | Mick Rich Contractors | $126,679.06 | The Debtor has objected to this Claim. If the Debtor's objection is upheld, this Claim will receive no distribution. If the Claim is allowed, the Debtor will pay the allowed amount of the Claim over a period of 10 years, in annual installments. No interest will accrue on the allowed amount of the Claim. In the alternative, Claimant may elect to accept $2,500 in full satisfaction as set forth in Section 8.3.5 of the Plan. |

EXHIBIT L

STIPULATED NON-MONETARY COVENANTS

In re Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole,
Case No. 18-13027-t11, U.S. Bankruptcy Court for the District of New Mexico

## Stipulated Non-Monetary Covenants

### Introduction

The historical experience of the Archdiocese in connection with decades of childhood sexual abuse has led not only to its Chapter 11 Bankruptcy Case, but also to a historical disclosure of documents in a public Archive. The document disclosure to the UNM Southwest Special Collections Archive at Zimmerman Library is unprecedented across the country. This is in keeping with the Archdiocese's desires to provide transparency as to how these decades of widespread abuse and occurred, and to try to prevent any future abuse going forward. In the 1990's, the Archdiocese dealt with disclosures from many survivors, including some through related litigation. As a result, the Archdiocese developed experience with implementing safeguards and developing policies and procedures that, as far as the data shows, has been largely effective in protecting children. Nonetheless, these Non-Monetary Covenants are hereby stipulated to in keeping with those goals, and continuing or even advancing the measures adopted over the past few decades, especially as funneled through the Archive.

### A. __Definitions__

1. "Abuse Documents Archive" means a repository created, organized, maintained and administered by the Regents of the University of New Mexico for its College of University Libraries and Learning Sciences' Center for Southwest Research and Special Collections ("CSWR") to allow public access to Abuse Documents that have been reviewed, redacted and produced to CSWR in accordance with the terms of a Memorandum Agreement among ASF, the Committee, and the CSWR dated May 15, 2019, a copy of which is attached to the Plan. as <u>Exhibit A</u>. Documents from any historical period (including the present) shall not be withheld by Debtor from the Archive because the document comes from or involves a Religious Order, whether or not that Religious Order successfully sought a Channeling Injunction in the Chapter 11 case.

2. "Additional Publications" means the news publications identified in the Publication Plan attached as Exhibit G to the Bar Date Order in the Chapter 11 Case.

3. "Affiliate" means the Canon law juridical person and civil entity of (a) any parish or mission of the Archdiocese of Santa Fe ("ASF") at any time and (b) any parish or mission of ASF that has merged or suppressed, as may be amended from time to time, in the Chapter 11 Case. It does not include Religious Orders.

4. "ASF" includes both the civil entity and Canon law juridical person identified as The Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, on its voluntary petition for chapter 11 relief, and any predecessor or successor thereof, and any person (including the archbishop or apostolic administrator of ASF) acting on behalf of ASF.

5. "ASF Parties" means ASF and the Affiliates.

6. "ASF Publications" means physical and digital publications, magazines, newspapers, bulletins, websites, and  social media accounts published, hosted or controlled by ASF Parties.

7. "ASF School" means any school that is owned and operated as a unit of ASF at any time, and including without limitation, any school that has merged or closed into ASF.

8. "Clergy" means any bishops, priests, and deacons vicars  operating within ASF.

9. "Committee" means the Official Committee of Unsecured Creditors. To the extent the Committee is disbanded by a plan of reorganization or otherwise, any responsibility designated herein for the Committee shall be performed by an entity designated in the plan.

10. "Non-ASF School" means any Roman Catholic school operating within the geographical area of ASF that is not an ASF School.

11. "Religious" means any individual whom a diocesan archbishop, bishop, the Apostolic See, religious superior, or other authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme superior, monk, and member of religious institute, and may include cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

12. "Sexual Abuse" means the following: Any actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm, or contacts, or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, sexual assault, sexual battery, sexual, psychological or emotional abuse, humiliation, or intimidation, or any other sexual misconduct.

13. "Sexual Abuse Claimant" means a holder of a Claim arising out of Sexual Abuse.

B. **Prevention**

1. **Compliance Audit.** ASF has engaged a law firm to serve as a consultant to conduct an independent audit of compliance with the Archdiocese's reporting policies and procedures and to provide recommendations on child protection policies and procedures. The law firm is Conklin Woodcock & Ziegler, P.C. (the "Consultant")   The Consultant  will have full

access to the ASF Parties' records including but not limited to documents provided to the Committee and to the SWSC Archive, and the ASF Parties will make all of their current and past employees and Clergy available for interviews with the Consultant. The Consultant l will publish a report of findings. ASF Parties shall post such findings on their websites with one-click access from the website home pages. The policy review shall include recommendations regarding appropriate credentials for any adult that interacts with children within ASF Parties' programs and activities, and the ongoing requirements for the ASF Parties' disclosure, investigation, adjudication, and reporting of future abuse claims.

2. **Compliance with Laws and Policies and Third-Party Child Protection Audits.** ASF Parties shall continue to comply with all of their policies and procedures, all Catholic Church policies and procedures, including but not limited to the U.S. Conference of Catholic Bishops' Charter for the Protection of Children and Young People, and all governmental laws and policies regarding child abuse and child protection. The ASF Parties shall continue to conduct annual third-party clergy audits of their child safety programs and compliance obligations by Stonebridge Business Partners, or its successor, for a period of not less than twenty-five years. ASF Parties shall post each such audit on: (a) any social media account (*e.g.*, Facebook, Twitter or Instagram) controlled by ASF Parties within sixty (60) days of completion of each audit and (b) ASF Parties' website for a period of not less than five (5) years after such audit is completed. The auditor shall provide a full written report regarding ASF Parties' compliance with its child safety programs, including any rubric and scores for each category. ASF Parties shall maintain copies of such audits for not less than 50 years and shall make them available to any person or entity upon request.

3. **Improved Reporting Mechanism.** ASF Parties shall, through a prominent ("**one-click**") link on their websites, provide a phone number and email to which anonymous abuse complaints can be made.

(a) If a report of abuse is made to an ASF Party or through the phone number, email or direct report to an ASF Party, the ASF Party will encourage the survivor or reporting person to report the abuse to law enforcement. The ASF Party shall report the allegations of abuse to law enforcement within seventy-two (72) hours of receipt of any such allegation of abuse complaint.

(b) Any report of abuse received by an ASF Party shall immediately be sent to ASF. The ASF Parties will require all adults who are in contact with minors—including Clergy, teachers, counselors, and volunteers—to follow the same requirements regarding reporting as those subject to mandatory reporting obligations. ASF shall demand of  Non-ASF Schools and Religious operating within ASF to follow the same requirements regarding reporting as those subject to mandatory reporting obligations as a condition of operating their Catholic school within ASF geographic boundaries. For reporting abuse by a bishop or Archbishop, ASF shall, also through a prominent ("one-click") link on its website, provide the reporting link (https://reportbishopabuse.org/) and phone number for the Catholic Bishop Abuse Reporting Service.

(c) The Archdiocese shall provide confidential quarterly summary reports of Sexual Abuse to the ASF presbyteral council, ASF pastoral committee, and ASF School principals and school boards (regardless of whether the report is deemed credible by the Archdiocese) with appropriate redactions of personally identifying information of the survivor or the abuser.

4. **Whistle-Blower Policy.** The ASF Parties shall immediately adopt a whistle-

blower policy concerning the method by which a report concerning abuse within ASF can be made and expressly providing that the ASF Parties will not take any retaliatory actions against person(s) who report(s) such information.

5.  **Continued Protection Initiatives.** ASF Parties will implement and continue the protection of children initiatives they are currently implementing—including the VIRTUS training program, background checks, and psychological evaluations for seminarians—as well as consideration of any initiatives recommended by the Consultant.

6.  **Prohibition on Being Alone With a Child.** ASF's child protection policies will continue to prohibit ASF Parties' Clergy, employees, and volunteers from being alone (*i.e.*, out of sight of at least one other adult) with any unrelated minor while serving as Clergy, employee or volunteer of ASF or an Affiliate; provided that when a cleric is hearing confession that another adult be immediately nearby at the time. The policies will continue to prohibit: (a) adults from traveling alone with or taking overnight trips alone with any minor other than the adult's child; and (b) adults from sleeping in the same private space (*e.g.*, room, tent, bed, vehicle, etc.) with any minor other than the adult's child. In connection with this subject and throughout the Archdiocese's program, the definition of "Church Personnel" should not be limited to those in ministry to children.

7.  **Evaluation of Priests:** Written attestation of suitability for non-incardinated priests shall include a statement as to whether the priest has been the subject of a claim regarding sexual abuse of a minor. Every five years, all incardinated priests and deacons complete VIRTUS child protection training for adults and a background check. All clergy and volunteers shall continue to undergo VIRTUS child protection training and obtain a background check.

8.  **Mandatory Reporting.** The ASF Parties shall comply with all applicable laws for reporting allegations of Sexual Abuse.

9.  **Anti-Abuse Plaque.** ASF shall prominently and visibly display a plaque (no smaller than 8.5 inches by 11 inches) in each operating ASF School and Non-ASF School within the geographic boundaries of ASF stating that abuse of children will not be tolerated.  Such plaques shall be ordered within sixty days of the Effective Date and will promptly deliver the plaques to ASF Schools and Non- ASF Schools after received by ASF. Plaques will be installed within 10 days of receipt.

10.  **Annual Remembrance**. ASF will designate one month per year to emphasize the importance of youth protection and preventing child sexual abuse. This annual campaign will be dedicated to raising awareness and preventing child abuse within the ASF Parties and more broadly in society. This focused campaign will be implemented at the ASF Parties and ASF Schools. Recognition of the National Child Abuse Prevention Month will satisfy this requirement.

11.  **Disclosure Requirement.** ASF will continue to maintain and update the list of credibly accused clergy as soon as reasonably practicable but, in any event, no later than forty-five (45) days after the relevant determination. ASF will share this information with the public by posting the information on its website.

## C. **Transparency**

12. **Document Publication.** Upon Confirmation of the Plan, the redacted documents for the Archive will be provided to the Archivists at the College of University Libraries and Learning Sciences' Center for Southwest Research and Special Collections that have been collected during this Chapter 11, so that they can begin assessing and organizing. Within 30 days of the Effective Date, the Reorganized Debtor shall perform its financial obligations under the Memorandum Agreement among ASF, the Committee, and the College of University Libraries and Learning Sciences' Center for Southwest Research and Special Collections dated May 15, 2019. The existence of the Archive and the performance of obligations shall be advertised, and survivors of sexual abuse shall be provided a way to 'opt in' on an on-going basis inclusion of their stories or documents to the Archive. If future additions to the Archive are made, the contributing survivor will be responsible for his or her own redaction costs, and the scope of any redactions per the Redaction Protocol attached to the Archive MOU, by working directly with the SWSC Archivists.

13. **Survivor Access to Documents.** ASF will produce to Sexual Abuse Claimants or to anyone who has stated that they are a survivor of sexual or physical abuse within ASF, or their designee, copies of any and all personal records of the survivor, including but not limited to school records and sacramental records within thirty (30) days of written, signed release, and such documents shall not redact the identity of the requesting abuse survivor.

14. **Improved Terminology.** The ASF Parties shall instruct their employees, representatives, agents and spokesperson, including any individuals communicating with the media on the ASF Parties' collective or individual behalf, to refrain from referring either verbally or in print to sexual abuse survivors as "alleged" claimants, "alleged" victims, or "alleged" survivors and will instruct the same to refer to Sexual Abuse Claimants as "claimants," "survivors" or "survivors of sexual abuse."

15. **Publication of Accused List.** Within ten (10) days of the effective date of a chapter 11 plan, ASF will prominently ("**one-click**") post on its website the list of names of all known past and present alleged clergy perpetrators of ASF, who have been determined by the Archbishop in consultation with the Independent Review Board to be credibly accused of sexual abuse. ASF will update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case (unless the identification has been withdrawn in any amendment or supplementation to the Proof of Claim). Survivors will provide ASF with permission to use their confidential proofs of claims to update the list and the deadline to add a name will be extended until such permission is received. ASF shall maintain this list on its website in perpetuity.

16. **Release from Confidentiality.** Following the Effective Date of ASF's Chapter 11 Plan of Reorganization, ASF will publicly announce and post on the website the full and complete release of all sexual abuse survivors from any confidentiality requirement in the sex abuse settlements that they have previously signed. No survivor's identity may be released or revealed without his or her express written permission. Any future settlement related to sexual abuse entered into by the ASF Parties shall not contain any confidentiality provision except at the written request of the settling survivor and such a provision may be subsequently revoked by the survivor without prejudice to the settlement agreement.

## D.  Recognition

17.    **Individual Archbishop Meetings.** The Archbishop of ASF will continue to be available upon reasonable notice to have a private conference with any survivor of sexual abuse within one (1) year of the Effective Date of ASF's Chapter 11 Plan of Reorganization.

18.    **Individual Apology Letters.** Within ninety days (90) days after the effective date of a reorganization plan, ASF will send letters of apology to all Sexual Abuse Claimants. Letters of apology, *inter alia*, shall state that survivors were not at fault for the abuse and that ASF takes responsibility for the abuse. The Committee must approve the final language of the letters. The Archbishop will personally sign the letters of apology. In order to protect the confidentiality of the survivors, the apology letters will be sent directly to survivors who have so requested in writing and otherwise they will be sent to counsel for survivors.

19.    **Public Apology Letter.** Within thirty (30) days after the effective date of a reorganization plan, ASF will publish a letter of apology to all Sexual Abuse Claimants. ASF will buy advertising space to print the letter in the ASF Publications and will issue a press release regarding the apology and include therein the letter's text that is circulated to the Additional Publications. The letter of apology, inter alia,  shall state that survivors were not at fault for the abuse and that ASF takes responsibility for the abuse. The Committee must approve the final language of the letter and the related press release. The Archbishop will personally sign the letter of apology.

20.    **Remove Perpetrator Recognitions.** The ASF Parties will undertake to remove all plaques, pictures, statutes, or other public recognitions of all known past and present alleged perpetrators who have been determined by the Archbishop in consultation with the Independent Review Board to be credibly accused of sexual abuse, including those who are identified in any proof of claim filed in the Chapter 11 Case.

21.    **Publish Survivor Stories.** On its website, ASF will direct all survivors to the UNM SWSC Archive to tell their stories if they desire to do so, following the Archive redaction protocol.

22.    **Place of Remembrance.** ASF, in consultation with individuals designated by the Committee, will design and install a place of remembrance for all child sexual abuse survivors at a prominent location at the entrance of ASF chancery. ASF will organize a dedication ceremony to be attended by the Archbishop, which will not include mass or any religious ceremony and will publish notice of the ceremony in the ASF Publications and issue a press release regarding the ceremony to the  Additional Publications no more than thirty (30) and not less than fifteen (15) days before the ceremony.

## E.  Continuing Support for Survivors

23.    **Counseling.** The Diocese shall continue to provide counselling for all Sexual Abuse Claimants in accordance with its current policies and procedures, up to ten sessions following Distribution such Sexual Abuse Claimant from the ASF Settlement Trust or the Unknown Tort Claims Trust.

24. **Surplus Trust Proceeds**. Any trust proceeds that remain and were not exhausted within (10) ten years of the date of formation of the ASF Settlement Trust shall be contributed to a local nonprofit organization unaffiliated with ASF that provides support to survivors of child sexual abuse to be selected by the ASF Settlement Trustee of the ASF Settlement Trust established under a plan of reorganization. If the ASF Settlement Trustee does not select an organization, ASF shall do so.

### F. <u>Miscellaneous</u>

25. **Reports:** Any reports provided herein or in the Archdiocese's existing child protection program shall be in writing. If any report is made verbally, the report shall be reduced to a written report that shall be delivered to the addressee within five days of the verbal report.

26. **Anti-Lobbying.** The ASF Parties will never seek to direct, pay or hire any attorney, agent or employee or third party to retract, oppose, or challenge the existing New Mexico mandatory child abuse reporting statutory requirements or statutes of limitations relating to childhood sexual abuse.

27. **Jurisdiction and Standing.** The Bankruptcy Court shall retain jurisdiction to adjudicate disputes that arise with respect to these non-monetary provisions. The Committee and any trust created for the benefit of Sexual Abuse Claimants shall have standing and shall be authorized, but not directed, to seek enforcement of any of the terms of these non-monetary undertakings.

28. **Publication of Non-Monetary Provisions.** ASF shall publish on its website, as a stand-alone document related to abuse, these non-monetary plan provisions for a period of no less than ten (10) years.

29. **Reporting.** ASF shall provide to the Court an annual compliance report regarding compliance with these non-monetary provisions for ten years.

<u>**EXHIBIT M**</u>

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New          Chapter 11
Mexico Corporation,
                                        Case No. 18-13027-t11
        Debtor,

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New
Mexico Corporation,
                                        Adversary Proceeding No: 18-
                                        13027-t11

        Plaintiff,

v.                                      No. 21-cv-0975 KG/GJF

GREAT AMERICAN INSURANCE
COMPANY; ARROWOOD INDEMNITY
COMPANY, formerly known as Royal
Indemnity Company, successor by merger to
Royal Insurance Company of America; ST.
PAUL FIRE AND MARINE INSURANCE
COMPANY, as itself and as successor to or
assignee of St. Paul Mercury Insurance
Company and St. Paul Mercury Indemnity
Company; and UNITED STATES FIRE
INSURANCE COMPANY,

        Defendants,

AND

In re:

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New          Chapter 11
Mexico Corporation,
                                        Case No. 18-13027-t11
        Debtor,

ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF SANTA FE, a New
Mexico Corporation,
                                        Adversary Proceeding No: 22- 01005-t

        Plaintiff,

v.                                      No. 22-cv-0156 KG/GJF

GREAT AMERICAN INSURANCE
COMPANY; ARROWOOD INDEMNITY
COMPANY, formerly known as Royal
Indemnity Company, successor by merger to
Royal Insurance Company of America; ST.
PAUL FIRE AND MARINE INSURANCE
COMPANY, as itself and as successor to or
assignee of St. Paul Mercury Insurance
Company and St. Paul Mercury Indemnity
Company; and UNITED STATES FIRE
INSURANCE COMPANY,

      Defendants.

---

## STIPULATION OF DISMISSAL WITH PREJUDICE
## PURSUANT TO F.R. BANKR. P. 7041 AND F.R. CIV. P. 41(a)(1)

Plaintiff Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole

("Plaintiff"), and Defendants Great American Insurance Company, Arrowood Indemnity Company, St.

Paul Fire and Marine Insurance Company, and United States Fire Insurance Company (collectively, the

"Defendants"), pursuant to F.R. Bankr. P. 7041 and F.R. Civ. P. 41(a)(1), hereby stipulate to dismissal

with prejudice of this adversary proceeding in its entirety, including without limitation the Complaint and

all claims or counterclaims which were brought or could have been brought herein.

                  Respectfully submitted,

                  WALKER & ASSOCIATES, P.C.
                  By: _____
                      Thomas D. Walker
                      500 Marquette N.W., Suite 650
                      Albuquerque, New Mexico 87102
                      (505) 766-9272
                      (505) 766-9287 (fax)
                      twalker@walkerlawpc.com
                      *Attorneys for the Plaintiff*

                  Approved:

                  CLYDE & CO US LLP
                  By: _____
                      Bruce D. Celebrezze
                      150 California Street, 15th Floor
                      San Francisco, CA 94111
                      Telephone: 415 365-9800
                      Facsimile: 415 365-9801
                      Email: bruce.celebrezze@clydeco.us

CARRUTHERS & ROTH, P.A

By: _____
    Britton C. Lewis
    235 N. Edgewood St.
    P.O. Box 540 (27402)
    Greensboro, NC 27401
    Telephone: 336 379-8651
    Facsimile: 336 273-7885
    Email: bcl@crlaw.com

CIVEROLO, GRALOW & HILL, P.A.

By: _____
    Lisa E. Pullen
    5981 Jefferson Street NE, Suite C
    Albuquerque, NM 87109
    Telephone: 505 842-8255
    Facsimile: 505 764-6099
    Email: pullenl@civerolo.com
*Attorneys for Arrowood Indemnity Company*

DENTONS US LLP

By: _____
    Patrick C. Maxcy
    233 South Wacker Drive, Suite 5900
    Chicago, IL 60606
    Tel: (312) 876-2810
    Email: Patrick.maxcy@dentons.com

    Geoffrey M. Miller
    1221 Avenue of the Americas
    New York, NY 10020-1089
    Tel: (212) 768-6700
    Email: geoffrey.miller@dentons.com
*Counsel to St. Paul Fire & Marine*
*Insurance Company, a wholly owned*
*subsidiary of The Travelers Companies,*
*Inc*

KENNEDYS CMK LLP

By: _____
      Jillian G. Dennehy, Esq.
      120 Mountain View Boulevard
      Basking Ridge, New Jersey 07920
      (T) 908-605-2974;
      (F) 908-647-8390
      jillian.dennehy@kennedyslaw.com
      *Attorneys for United States Fire*
      *Insurance Company*


RUGGERI PARKS WEINBERG LLP

By: _____
      Joshua Weinberg
      1875 K Street NW, Suite 600
      Washington, DC 20006-1251
      Tel: (202) 469-7754
      Fax: (202) 984-1401
      jweinberg@ruggerilaw.com
      *Attorneys for Great American Insurance Company*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:

ROMAN CATHOLIC CHURCH OF
    THE ARCHDIOCESE OF SANTA
    FE, a New Mexico corporation sole,
    Debtor-in-Possession.

Chapter 11

Case No. 18-13027-t11

---

ROMAN CATHOLIC CHURCH OF
THE ARCHDIOCESE OF SANTA FE,
a New Mexico corporation sole,
      Plaintiff,

v.

GREAT AMERICAN INSURANCE COMPANY;
ARROWOOD INDEMNITY COMPANY, formerly
known as Royal Indemnity Company, successor by
merger to Royal Insurance Company of America; ST.
PAUL FIRE AND MARINE INSURANCE
COMPANY, as itself and as successor to or assignee of
St. Paul Mercury Insurance Company and St. Paul
Mercury Indemnity Company; and UNITED STATES
FIRE INSURANCE COMPANY,
      Defendants.

Adversary Proceeding No. 22-01005 t

## STIPULATION OF DISMISSAL WITH PREJUDICE
## PURSUANT TO F.R. BANKR. P. 7041 AND F.R. CIV. P. 41(a)(1)

Plaintiff Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation

sole and Defendants Great American Insurance Company; Arrowood Indemnity Company,

formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company

of America; St. Paul Fire And Marine Insurance Company, as itself and as successor to or assignee

of St. Paul Mercury Insurance Company and St. Paul Mercury Indemnity Company; and United

States Fire Insurance Company, pursuant to F.R. Bankr. P. 7041 and F.R. Civ. P. 41(a)(1), hereby

stipulate to dismissal with prejudice of this adversary proceeding in its entirety, including without

limitation the Complaint and all claims or counterclaims which were brought or could have been brought

herein.

Respectfully submitted by:

WALKER & ASSOCIATES, P.C.

_____

Thomas D. Walker
500 Marquette N.W., Suite 650
Albuquerque, N.M. 87102
(505) 766-9272
twalker@walkerlawpc.com
*Counsel for The Roman Catholic Church of the*
*Archdiocese of Santa Fe, a New Mexico*
*corporation sole*

Approved:

CLYDE & CO US LLP

_____

Bruce D. Celebrezze
150 California Street, 15th Floor
San Francisco, California 94111
Tel: (415) 365-9800
Bruce.Celebrezze@clydeco.us
*Attorneys for Arrowood Indemnity Company*

2

DENTONS

_____

Patrick C. Maxcy
233 South Wacker Drive, Suite 5900
Chicago, IL 60606
Tel: (312) 876-2810
Patrick.maxcy@dentons.com
*Attorneys for St. Paul Fire and Marine Insurance
Company*


RUGGERI PARKS WEINBERG LLP

_____

Joshua Weinberg
1875 K Street NW, Suite 600
Washington, DC 20006-1251
Tel: (202) 469-7754
Fax: (202) 984-1401
jweinberg@ruggerilaw.com
*Attorneys for Great American Insurance Company*


KENNEDYS

_____

Jillian Dennehy
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
Tel: (908) 605-2974
Jillian.Dennehy@kennedyslaw.com
*Attorneys for United States Fire Insurance Company*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| In re: | Chapter 11 |
| Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, Debtor. | Bankruptcy Case No. 18-13027-t11 |
| Official Committee of Unsecured Creditors, | Adv. Proc. No. 20-ap-01058 |
| Plaintiff, | |
| v. | |
| The Archdiocese of Santa Fe Real Estate Corporation, as Trustee of the Archdiocese of Santa Fe Real Estate Trust; Shrine of Our Lady of Guadalupe – Santa Fe; Santa Maria de La Paz Catholic Community; Immaculate Conception - Albuquerque; Nuestro Senora de Guadalupe – Taos; St. John the Baptist – Santa Fe; Cristo Rey Parish; Church of the Ascension; Our Lady of Belen; St. Jude Thaddeus; Nativity of the Blessed Virgin Mary; and the Roman Catholic Church of the Archdiocese of Santa Fe, | |
| Defendants. | |

## STIPULATION OF DISMISSAL WITH PREJUDICE PURSUANT TO F.R. BANKR. P. 7041 AND F.R. CIV. P. 41(a)(1)

Plaintiff Official Committee of Unsecured Creditors, and Defendants the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole; The Archdiocese of Santa Fe Real Estate Corporation, as Trustee of the Archdiocese of Santa Fe Real Estate Trust; Shrine of Our Lady of Guadalupe – Santa Fe; Santa Maria de La Paz Catholic Community; Immaculate Conception - Albuquerque; Nuestro Senora de Guadalupe – Taos; St. John the Baptist – Santa Fe; Cristo Rey Parish; Church of the Ascension; Our Lady of Belen; St. Jude Thaddeus; and Nativity of the Blessed Virgin Mary, pursuant to F.R. Bankr. P. 7041 and F.R. Civ. P. 41(a)(1), hereby

stipulate to dismissal with prejudice of this adversary proceeding in its entirety, including without limitation the Complaint and all claims or counterclaims which were brought or could have been brought herein.

Submitted by:

PACHULSKI STANG ZIEHL & JONES LLP

_____
James I. Stang
150 California Street
San Francisco, CA 94111
Tel: 415-263-7000
Fax: 415-263-7010
jstang@pszjlaw.com
*Counsel for the Official Committee of*
*Unsecured Creditors*

Approved:

WALKER & ASSOCIATES, P.C.

_____
Thomas D. Walker
500 Marquette N.W., Suite 650
Albuquerque, N.M. 87102
(505) 766-9272
twalker@walkerlawpc.com
*Counsel for The Roman Catholic Church of the*
*Archdiocese of Santa Fe*

2

LEWIS ROCA ROTHGERBER CHRISTIE LLP

_____

Robert M. Charles, Jr.
One South Church Avenue, Suite 2000
Tucson, AZ 85701-1611
Tel: 520.629.4427
Fax: 520.622.3088
E-mail: rcharles@lrrc.com

*Attorneys for Parish Steering Committee of the Roman Catholic Church of the Archdiocese of Santa Fe; The Archdiocese of Santa Fe Real Estate Corporation, as Trustee of the Archdiocese of Santa Fe Real Estate Trust; Shrine of Our Lady of Guadalupe – Santa Fe; Santa Maria de La Paz Catholic Community; Immaculate Conception - Albuquerque; Nuestro Senora de Guadalupe – Taos; St. John the Baptist – Santa Fe; Cristo Rey Parish; Church of the Ascension; Our Lady of Belen; St. Jude Thaddeus; and Nativity of the Blessed Virgin Mary*

In re:

Roman Catholic Church of the Archdiocese
of Santa Fe, a New Mexico corporation sole,

            Debtor-in-Possession.

Chapter 11

Bankruptcy Case No. 18-13027-t11

Official Committee of Unsecured Creditors,

            Plaintiff,

    v.

The Roman Catholic Church of the
Archdiocese of Santa Fe; St. Patrick - St.
Joseph; Holy Cross; Sacred Heart - Espanola;
Sacred Heart – Albuquerque; Holy Family –
Chimayo; Our Lady of Guadalupe – Clovis;
St. Thomas Apostle; St. Patrick - Chama; La
Santisima Trinidad; and St. Anthony -
Questa,

Adv. Proc. No. 20-ap-01059

### STIPULATION OF DISMISSAL WITH PREJUDICE
### PURSUANT TO F.R. BANKR. P. 7041 AND F.R. CIV. P. 41(a)(1)

      Plaintiff Official Committee of Unsecured Creditors and Defendants Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, and St. Patrick - St. Joseph; Holy Cross; Sacred Heart - Espanola; Sacred Heart – Albuquerque; Holy Family – Chimayo; Our Lady of Guadalupe – Clovis; St. Thomas Apostle; St. Patrick - Chama; La Santisima Trinidad; and St. Anthony – Questa, pursuant to F.R. Bankr. P. 7041 and F.R. Civ. P. 41(a)(1), and by their respective undersigned counsel of record, hereby stipulate to dismissal with prejudice of this adversary proceeding in its entirety, including without limitation the Complaint and all claims or counterclaims which were brought or could have been brought herein.

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

_____
James I. Stang
Kenneth H. Brown
Gail S. Greenwood
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Tel: 310-277-6910/ Fax: 310-201-0760
jstang@pszjlaw.com
kbrown@pszjlaw.com
ggreenwood@pszjlaw.com
*Counsel for the Official Committee of Unsecured*
*Creditors*


ELSAESSER ANDERSON, CHTD.

_____
Ford Elsaesser
Bruce A. Anderson
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
(208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

-and-

WALKER & ASSOCIATES, P.C.

_____
Thomas D. Walker
Chris W. Pierce
500 Marquette N.W., Suite 650
Albuquerque, New Mexico 87102
(505) 766-9272
Fax: (505) 722-9287
twalker@walkerlawpc.com
cpierce@walkerlawpc.com
*Counsel for Debtor*

2

LEWIS ROCA ROTHGERBER CHRISTIE LLP

_____
Robert M. Charles, Jr.
One South Church Avenue, Suite 2000
Tucson, AZ 85701-1611
Tel: 520.629.4427
Fax: 520.622.3088
E-mail: rcharles@lrrc.com

*Attorneys for Parish Steering Committee of the Roman Catholic Church of the Archdiocese of Santa Fe, the Archdiocese of Santa Fe Real Estate Corporation, as Trustee of the Archdiocese of Santa Fe Real Estate Trust, Shrine of Our Lady of Guadalupe – Santa Fe, Immaculate Conception – Albuquerque, Nuestro Senora de Guadalupe – Taos, St. John the Baptist – Santa Fe, Cristo Rey Parish, Church of the Ascension, Our Lady of Belen, St. Jude Thaddeus, and Nativity of the Blessed Virgin Mary*

3

In re:

Roman Catholic Church of the Archdiocese of
Santa Fe, a New Mexico corporation sole,

      Debtor-in-Possession.

Official Committee of Unsecured Creditors,
      Plaintiff,

        v.

The Roman Catholic Church of the Archdiocese
of Santa Fe; Rev. Msgr. Lambert J. Luna; Rev.
John Cannon; Rev. Timothy A. Martinez; Rev.
Clarence Maes; Rev. John Trambley; Very Rev.
James Marshall; Rev. Msgr. Bennett J. Voorhies;
Tony Salgado; Jennifer Cantrell; Bernard E.
"Gig" Brummell; and Stan Sluder, solely in their
capacity as trustees of The Archdiocese of Santa
Fe Deposit and Loan Fund; Nativity of the
Blessed Virgin Mary; Our Lady of the
Annunciation; Our Lady of the Assumption –
Albuquerque; Risen Savior Catholic Community;
Our Lady of Belen; Immaculate Heart of Mary;
San Clemente; St. John Vianney Church; St.
Thomas Aquinas; and San Miguel,

      Defendants.

Chapter 11

Bankruptcy Case No. 18-13027-t11

Adv. Proc. No. 20-ap-01061

## STIPULATION OF DISMISSAL WITH PREJUDICE
## PURSUANT TO F.R. BANKR. P. 7041 AND F.R. CIV. P. 41(a)(1)

Plaintiff Official Committee of Unsecured Creditors, and Defendants the Roman Catholic

Church of the Archdiocese of Santa Fe, a New Mexico corporation sole; Rev. Msgr. Lambert J.

Luna; Rev. John Cannon; Rev. Timothy A. Martinez; Rev. Clarence Maes; Rev. John Trambley;

Very Rev. James Marshall; Rev. Msgr. Bennett J. Voorhies; Tony Salgado; Jennifer Cantrell;

Bernard E. "Gig" Brummell; and Stan Sluder, solely in their capacity as trustees of The Archdiocese

of Santa Fe Deposit and Loan Fund; Nativity of the Blessed Virgin Mary; Our Lady

of the Annunciation; Our Lady of the Assumption – Albuquerque; Risen Savior Catholic Community; Our Lady of Belen; Immaculate Heart of Mary; San Clemente; St. John Vianney Church; St. Thomas Aquinas; and San Miguel, pursuant to F.R. Bankr. P. 7041 and F.R. Civ. P. 41(a)(1), hereby stipulate to dismissal with prejudice of this adversary proceeding in its entirety, including without limitation the Complaint and all claims or counterclaims which were brought or could have been brought herein.

Submitted by:

PACHULSKI STANG ZIEHL & JONES LLP

_____
James I. Stang
150 California Street
San Francisco, CA 94111
Tel: 415-263-7000
Fax: 415-263-7010
jstang@pszjlaw.com
*Counsel for the Official Committee of Unsecured Creditors*

Approved:

WALKER & ASSOCIATES, P.C.

_____
Thomas D. Walker
500 Marquette N.W., Suite 650
Albuquerque, N.M. 87102
(505) 766-9272
twalker@walkerlawpc.com
*Counsel for The Roman Catholic Church of the Archdiocese of Santa Fe*

LEWIS ROCA ROTHGERBER CHRISTIE LLP

_____

Robert M. Charles, Jr.
One South Church Avenue, Suite 2000
Tucson, AZ 85701-1611
Tel: 520.629.4427
Fax: 520.622.3088
E-mail: rcharles@lrrc.com
*Attorneys for Parish Steering Committee of the Roman Catholic Church of the Archdiocese of Santa Fe; Trustees of The Archdiocese of Santa Fe Deposit and Loan Fund; Nativity of the Blessed Virgin Mary; Our Lady of the Annunciation; Our Lady of the Assumption – Albuquerque; Risen Savior Catholic Community; Our Lady of Belen; Immaculate Heart of Mary; San Clemente; St. John Vianney Church; St. Thomas Aquinas; and San Miguel*

**EXHIBIT N**

## CERTIFICATION AND GENERAL RELEASE
### (To be used for Distributions after the Effective Date of the Plan.)

**THIS DOCUMENT HAS TWO PARTS:**

(1) AN ACKNOWLEDGEMENT, DISCLOSURE, AND CERTIFICATION ("CERTIFICATION") REGARDING MEDICARE AND MEDICAID BENEFITS,[1] AND

(2) A GENERAL RELEASE OF CLAIMS AGAINST THE PROTECTED PARTIES ("RELEASE") AND RELATED ACKNOWLEDGEMENTS AND CONSENTS.

References to the "Plan" or "Bankruptcy Plan" are to the Plan of Reorganization confirmed in the above captioned bankruptcy case of the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporate sole.

### PART I
### ACKNOWLEDGEMENT, DISCLOSURE, AND CERTIFICATION

- I accept and acknowledge that I will provide any information necessary to comply with reporting obligations arising under the Medicare Secondary Payer Act Or Medicare, Medicaid, and SCHIP Extension Act of 2007, and I have provided or I will provide for the payments/and or resolution of any obligations owing or potentially owing under the MSPA relating to my Tort Claim or Distribution from the ASF Settlement Trust (as defined in the Plan). By signing this Certification, I acknowledge that if I do have any obligations owing or potentially owing under the MSPA relating to any Tort Claim or Distribution from the ASF Settlement Trust, the ASF Settlement Trustee may withhold from any payment directly or indirectly to me funds sufficient to assure that any obligations owing or potentially owing under the MSPA relating to such Tort Claims are paid to the applicable agency.

- I accept that except as expressly provided in the Plan, none of the Protected Parties will have or incur any liability to, or be subject to any right of action by, any Claimant, any other party in interest, or any of their respective representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in or relating to the Bankruptcy Case, including the exercise of their respective business judgment and the performance of their respective fiduciary obligations, the pursuit of confirmation of the Plan, or the administration of the Plan or the ASF Settlement Trust, except liability for their willful misconduct or gross negligence, and in all respects, such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Bankruptcy Case. Without limiting the generality of the foregoing, the Debtor and its financial advisors, and other professionals shall be entitled to and granted the benefits of the Bankruptcy Code § 1125(e).

- I accept that the Reorganized Debtor, the ASF Settlement Trust, the ASF Settlement Trustee, the Protected Parties, and professionals employed by the foregoing shall not

have any liability to any entity, including any governmental entity or insurer, on account of payments made to a Tort Claimant, including any liability under the Medicare Secondary Payer Act.

- I accept and acknowledge that the Plan provides for the Tort Claims to be determined as part of confirmation of the Plan solely by an individual proposed by the Official Committee of Unsecured Creditors and approved by the Bankruptcy Court. That individual is referred to in the Plan as the "Tort Claims Reviewer." I accept, acknowledge and understand that review of my Tort Claim by the Tort Claims Reviewer and any compensation to be received on account of my Tort Claim is determined solely by the Tort Claims Reviewer and based upon the allocation protocol that was attached to the Plan. I further certify that I understand that the decision of the Tort Claims Reviewer is final and that there is no review of the decision by a court or any other party. <u>I agree to waive and release any right to a trial by jury or otherwise against the Reorganized Debtor and the Protected Parties</u>. I certify that by signing this Certification that I consent to this method for determining the distribution on account of my Tort Claim.

TO BE COMPLETED BY TORT CLAIMANT:

_____
Print or Type Name and Claim Number (if known)

_____
Signature of Tort Claimant

_____
Address of Tort Claimant

_____
Telephone Number of Tort Claimant

DATED: _____

## PART II

**A Claimant will not receive a distribution unless they sign and return a General Release, in the following form.**

## <u>GENERAL RELEASE OF CLAIMS AGAINST PROTECTED PARTIES</u>

I, for myself and my heirs, successors, assigns, agents, and representatives (collectively, "Releasor") acknowledge that, after having received and had the opportunity to review copies of the Disclosure Statement, the Plan, and each of the exhibits thereto and to consult with counsel of my choice regarding those documents and this Release:

1.  Fully, finally, and completely release, remise, acquit, and forever discharge the Settling Insurers and the Settling Insurers' reinsurers and retrocessionaires with respect to the Insurance Policies and Certificates;

2.  Fully, finally, and completely release, remise, acquit, and forever discharge the Protected Parties and Exculpated Parties, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Debtor, the Reorganized Debtor, and the Archdiocese Parties, of and from any and all past, present, and future Claims, and each such Persons' portion or share of my damages that, directly or indirectly, arise out of, relate to, or are connected with the: (i) Tort Claims and other Channeled Claims; (ii) Claims that directly or indirectly arise out of, relate to, or are in connection with the handling of Tort Claims or Channeled Claims; (iii) the Insurance Policies and Certificates; (iv) any Medicare Claim; and (v) all Claims that, directly or indirectly, arise from, relate to, or are connected with the Bankruptcy Case or the Adversary Proceedings; and

3.  Agree: (i) not to sue or seek recovery or relief of any kind from the Protected Parties and Exculpated Parties, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Debtor, the Reorganized Debtor, and the Archdiocese Parties, in connection with any and all past, present, and future Claims that directly or indirectly arise out of, relate to or are in connection with Tort Claims and other Channeled Claims, or the handling of Tort Claims, Channeled Claims, the Insurance Policies, the Certificates, any Medicare Claim, the Bankruptcy Case, or Adversary Proceedings; (ii) to forever and irrevocably discharge that fraction, portion, or percentage of damages I claim to have suffered in connection with any Abuse which is by trial or other disposition determined to be the causal fault or responsibility, if any, of any Protected Party or Exculpated Party, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Debtor, Reorganized Debtor, and the Archdiocese Parties; (iii) that the trial court in any future action that, directly or indirectly, arises out of, relates to, or is connected with the Claims released hereby will be bound by this Release, and that Releasor will not oppose any future defense counsel submitting this Release in such an action (either attached to or separated from my Ballot), provided that all other rights in such future action other than my released claims are reserved, (iv) that this Release extinguishes any potential liability of each and every Protected Party and Exculpated Party, including the Settling Insurers, the Settling Insurers' reinsurers and retrocessionaires, the Debtor, Reorganized Debtor, and the Archdiocese Parties, for contribution or indemnity to any Person who has been or may be held liable to me for any Tort Claim or Channeled Claim, and (v) to be bound by the injunctions set forth in the Bankruptcy Plan, including those injunctions contained in Section 19 thereof for the benefit of the Settling Insurers and the other Protected Parties, and the terms of the Insurer Settlement Agreements and Participating Religious Orders Settlement Agreements incorporated into the Bankruptcy Plan.

I represent and warrant that I have not assigned or otherwise transferred any interest in such Tort Claims or Channeled Claims, nor have I assigned or otherwise transferred any Claims against the Settling Insurers, the other Protected Parties, or the other Exculpated Parties, including, without limitation, the Settling Insurers, the Debtor, the Reorganized Debtor, and the Archdiocese Parties.

This General Release of Claims shall be effective as of the Effective Date of the Plan.

Capitalized terms not otherwise defined herein are defined in Section 3 of the Plan.

By signing this Certification and Release, I make the certifications herein and agree to the other terms herein and further certify all of the foregoing under penalty of perjury.

TO BE COMPLETED BY TORT CLAIMANT:

_____
Print or Type Name and Claim Number (if known)

_____
Signature of Tort Claimant

_____
Address of Tort Claimant

_____
Telephone Number of Tort Claimant

DATED: _____.

EXHIBIT A

**LIST OF PROTECTED PARTIES AND EXCULPATED PARTIES**

# Protected Parties

### Archdiocese Parties

- **Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole, the debtor and debtor-in-possession in the Bankruptcy Case, its Estate, its predecessors, successors, and assigns (the "Archdiocese").**
- **Archdiocese of Santa Fe Catholic Foundation**
- **Catholic Cemetery Association**
- **Catholic Charities**
- **Annual Catholic Appeal Foundation**
- **Archbishop's School Fund, Inc.**
- **Santo Nino Regional Catholic School**
- **Villa Therese Clinic**
- **St. Pius X High School**
- **St. Pius X Foundation**
- **St. Pius X High School, Inc.**
- **SPX Real Estate Corp.**
- **Archdiocese of Santa Fe Deposit & Loan Trust**
- **Archdiocese of Santa Fe Real Estate Trust**
- **Archdiocese of Santa Fe Real Estate Corporation**
- **Society of St. Vincent DePaul**
- **Parishes**
  - The Cathedral Basilica of St. Francis of Assisi
  - Cristo Rey Parish
  - San Isidro
  - Santa Maria de La Paz Catholic Community
  - Shrine of Our Lady of Guadalupe
  - St. Anne's
  - St. John the Baptist
  - Church of the Ascension
  - Holy Family
  - Holy Ghost
  - Immaculate Conception
  - Nativity of the Blessed Virgin Mary
  - Our Lady of Fatima
  - Our Lady of Guadalupe
  - Our Lady of Lavang
  - Our Lady of the Annunciation
  - Our Lady of the Assumption
  - Our Lady of the Most Holy Rosary
  - Prince of Peace Catholic Community
  - Queen of Heaven
  - Risen Savior Catholic Community
  - Sacred Heart
  - Saint John XXIII Catholic Community
  - San Felipe de Neri

- San Ignacio San Jose
- Sangre de Cristo
- Santuario de San Martin de Porres
- Shrine of St. Bernadette
- Shrine of the Little Flower/St. Therese of the Infant Jesus
- St. Anne
- St. Charles Borromeo
- St. Edwin
- St. Francis Xavier
- St. Joseph on the Rio Grande
- St. Jude Thaddeus
- St. Thomas Aquinas University Parish
- Our Lady of Perpetual Help
- Abiquiu - St. Thomas Apostle
- Anton Chico - San Jose
- Arroyo Seco - La Santisima Trinidad
- Belen - Our Lady of Belen
- Bernalillo - Our Lady of Sorrows
- Cerrillos - St. Joseph
- Chama - St. Patrick
- Chimayo - Holy Family
- Cimarron - Immaculate Conception Church
- Clayton - St. Francis Xavier
- Clovis - Our Lady of Guadalupe
- Clovis - Sacred Heart
- Corrales - San Ysidro
- Dixon - St. Anthony
- El Rito - San Juan Nepomuceno
- Española - Sacred Heart
- Fort Sumner - St. Anthony of Padua
- Isleta Pueblo - St. Augustine
- Jemez Pueblo - San Diego Mission
- Jemez Springs - Our Lady of the Assumption
- La Joya - Our Lady of Sorrows
- Las Vegas - Immaculate Conception
- Las Vegas - Our Lady of Sorrows Church
- Los Alamos - Immaculate Heart of Mary
- Los Lunas - San Clemente
- Los Ojos - San Jose
- Mora - St. Gertrude the Great
- Moriarty - Estancia Valley Catholic Parish
- Mountainair - St. Alice
- Pecos - St. Anthony of Padua
- Peña Blanca - Nuestra Señora de Guadalupe
- Peñasco - San Antonio de Padua
- Peralta - Our Lady of Guadalupe
-  Pojoaque - Nuestra Senora de Guadalupe
- Portales - St. Helen
- Questa - St. Anthony
- Ranchos de Taos - San Francisco de Asis
- Raton - St. Patrick-St. Joseph
- Ribera - San Miguel del Vado
- Rio Rancho - Church of the Incarnation
- Rio Rancho, St. John Vianney Church
- Rio Rancho, St. Thomas Aquinas
- Roy Mosquero, Holy Family-St. Joseph

- San Juan, Ohkay Owingeh - San Juan Bautista
- Santa Cruz - Holy Cross
- Santa Rosa - St. Rose of Lima
- Socorro - San Miguel
- Springer - St. Joseph
- Taos - Nuestra Señora de Guadalupe
- Tierra Amarilla - Santo Niño
- Tijeras - Holy Child
- Tome - Immaculate Conception
- Tucumcari - St. Anne
- Vaughn - St. Mary
- Villanueva - Our Lady of Guadalupe
- Wagon Mound - Santa Clara

- **Missions**

| Location | Mission | Mother Parish |
|---|---|---|
| Abeytas | San Antonio | Our Lady of Sorrows, La Joya |
| Abo | San Lorenzo | St. Alice, Mountainair |
| Alamillo | San Antonio | San Miguel, Socorro |
| Albert | San Isidro | Holy Family-St. Joseph, Roy |
| Albuquerque | Our Lady of Mount Carmel | Nativity of the BVM, Albuquerque |
| Albuquerque | San Jose de Los Duranes | San Felipe de Neri, Albuquerque |
| Alcalde | St. Anne | San Juan Bautista, San Juan Pueblo |
| Alcalde | San Antonio | San Juan Bautista, San Juan Pueblo |
| Algodones | San Jose | Our Lady of Sorrows, Bernalillo |
| Alto del Talco | San Santiago | St. Gertrude the Great, Mora |
| Amalia | Santo Niño | St. Anthony, Questa |
| Angel Fire | Holy Angels | Immaculate Conception Church, Cimarron |
| Arroyo Hondo | Nuestra Señora de Dolores | La Santísima Trinidad, Arroyo Seco |
| Aurora | San Antonio | Our Lady of Guadalupe, Villanueva |
| Bernal | Santa Rita | San Miguel del Vado, Ribera |
| Bernalillo | Santuario de San Lorenzo | Our Lady of Sorrows, Bernalillo |
| Black Lake | San Antonio | Immaculate Conception Church, Cimarron |
| Borica | San Isidro | St. Rose of Lima, Santa Rosa |
| Bosque | Cristo Rey | Our Lady of Belen, Belen |
| Buena Vista | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Bueyeros | Sacred Heart | Holy Family-St. Joseph, Roy |
| Canjilon | San Juan Nepomuceno | St. Patrick, Chama |
| Cañon | Nuestra Señora de los Dolores | Nuestra Señora de Guadalupe, Taos |
| Cañon | Our Lady of Guadalupe | San Diego Mission, Jemez Pueblo |
| Cañon Plaza | Our Lady of Mount Carmel | San Juan Nepomuceno, El Rito |
| Cañoncito | Nuestra Señora de La Luz | St. Anthony of Padua, Pecos |
| Cañoncito | San Jose | St. Gertrude the Great, Mora |
| Cañoncito | San Lorenzo | Holy Child, Tijeras |
| Cañones | San Miguel Archangel | St. Thomas Apostle, Abiquiu |
| Capulin | Santo Niño | St. Thomas Apostle, Abiquiu |
| Carnuel | Holy Child | Holy Child, Tijeras |
| Casa Colorada | Immaculate Conception | Immaculate Conception, Tome |
| Cebolla | Santo Niño de Atocha | St. Patrick, Chama |
| Cedar Crest | San Antonio | Holy Child, Tijeras |
| Cerro | Nuestra Señora de Guadalupe | St. Anthony, Questa |
| Chacon | San Antonio de Padua | St. Gertrude the Great, Mora |
| Chamisal | Santa Cruz | San Antonio de Padua, Peñasco |
| Chamita | San Pablo | San Juan Bautista, San Juan Pueblo |
| Chililli | San Juan Nepomuceno | Holy Child, Tijeras |
| Cleveland | San Antonio de Padua | St. Gertrude the Great, Mora |
| Cochiti Pueblo | St. Bonaventure | Nuestra Señora de Guadalupe, Peña Blanca |
| Colonias | San Jose | St. Rose of Lima, Santa Rosa |

| | | |
|---|---|---|
| Contreras | San Jose | Our Lady of Sorrows, La Joya |
| Cordova | San Antonio | Holy Family, Chimayo |
| Costilla | Sagrado Corazon | St. Anthony, Questa |
| Coyote | San Juan Bautista | St. Thomas Apostle, Abiquiu |
| Cuarteles | La Sangre de Cristo | Holy Cross, Santa Cruz |
| Cuervo | Santo Niño | St. Rose of Lima, Santa Rosa |
| Cundiyo | Santo Domingo | Holy Family, Chimayo |
| Dahlia | Santo Niño de Atocha | San Jose, Anton Chico |
| Des Moines | Our Lady of Guadalupe | St. Francis Xavier, Clayton |
| Dilia | Sacred Heart-San Isidro | San Jose, Anton Chico |
| Duran | St. John the Baptist | St. Mary, Vaughn |
| Eagle Nest | St. Mel | Immaculate Conception Church, Cimarron |
| Edgewood | St. Elizabeth Ann Seaton | Estancia Valley Catholic Parish, Moriarity |
| El Carmen | Nuestra Señora de Carmel | St. Gertrude the Great, Mora |
| El Cerrito | Nuestra Señora de Los Desamparados | OL of Guadalupe, Villanueva |
| El Duende | San Francisco | Sacred Heart, Española |
| El Guache | San Antonio | Sacred Heart, Española |
| El Guique | San Rafael | San Juan Bautista, San Juan Pueblo |
| El Llanito | Christ the King | Our Lady of Sorrows Church, Las Vegas |
| El Macho Nuestra | Señora de Guadalupe | St. Anthony of Padua, Pecos |
| El Porvenir | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| El Prado | Santa Teresita de Jesús | Nuestra Señora de Guadalupe, Taos |
| El Pueblo | San Antonio | San Miguel del Vado, Ribera |
| El Rancho | San Antonio de Padua | Nuestra Señora de Guadalupe, Pojoaque |
| El Valle | San Miguel | Holy Family, Chimayo |
| Encino | Our Lady of Guadalupe | St. Mary, Vaughn |
| Ensenada | San Joaquin | San Jose, Los Ojos |
| Escobosa | San Isidro | Holy Child, Tijeras |
| Estaca | San Francisco | San Juan Bautista, San Juan Pueblo |
| Estancia | Sts. Peter and Paul | Estancia Valley Catholic Parish, Moriarity |
| Folsom | St. Joseph | St. Francis Xavier, Clayton |
| Galisteo | Nuestra Señora de Los Remedios | St. Joseph, Cerrillos |
| Gallegos | Immaculate Conception | Holy Family-St. Joseph, Roy |
| Gallina | Nuestra Señora de Guadalupe | St. Thomas Apostle, Abiquiu |
| Gallinas | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Glorieta | Nuestra Señora de Guadalupe | St. Anthony of Padua, Pecos |
| Golden | San Francisco de Asis | St. Joseph, Cerrillos |
| Golondrinas | San Acacio | St. Gertrude the Great, Mora |
| Gonzales Ranch | San Isidro & Santa Teresita | Our Lady of Guadalupe, Villanueva |
| Guachupangue | Our Lady of Guadalupe | Sacred Heart, Española |
| Guadalupita | Nuestra Señora de Guadalupe | St. Gertrude the Great, Mora |
| Hernandez | San Jose | Sacred Heart, Española |
| Holman | Immaculate Heart of Mary | St. Gertrude the Great, Mora |
| Jarales | St. Francis Xavier | Our Lady of Belen, Belen |
| Kelly | San Juan Bautista | San Miguel, Socorro |
| La Bajada | San Miguel | Nuestra Señora de Guadalupe, Peña Blanca |
| La Cañada de Los Alamos | Our Lady of Guadalupe | Cristo Rey Parish, Santa Fe |
| La Cienega | San Jose | San Isidro, Santa Fe |
| La Cueva | San Rafael | St. Gertrude the Great, Mora |
| La Loma | San Antonio | Nuestra Señora de Guadalupe, Taos |
| La Madera | Our Lady of Guadalupe | San Juan Nepomuceno, El Rito |
| La Manga | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| La Mesilla | San Isidro | Holy Cross, Santa Cruz |
| La Petaca | Nuestra Divina Pastora | San Juan Nepomuceno, El Rito |
| La Puebla | Naciemento de Santo Niño Jesús | Holy Cross, Santa Cruz |
| La Puente | St. Michael | San Jose, Los Ojos |
| Lagunita | Our Lady of the Rosary | San Miguel del Vado, Ribera |
| Las Colonias | Santo Niño | St. Anthony of Padua, Pecos |
| Las Colonias | Santo Niño de Atocha | La Santísima Trinidad, Arroyo Seco |
| Las Nutrias | San Isidro | Our Lady of Sorrows, La Joya |

| | | |
|---|---|---|
| Las Tablas | San Luis Gonzaga | San Juan Nepomuceno, El Rito |
| Ledoux | San Jose | St. Gertrude the Great, Mora |
| Lemitar | La Sagrada Familia | San Miguel, Socorro |
| Leyba | San Francisco | Our Lady of Guadalupe, Villanueva |
| Llano de San Juan | San Juan Nepomuceno | San Antonio de Padua, Peñasco |
| Los Chavez | Nuestra Señora de Guadalupe | Our Lady of Belen, Belen |
| Llano Quemado | Nuestra Señora del Carmen | San Francisco de Asis, Ranchos de Taos |
| Logan | St. Anthony | St. Anne, Tucumcari |
| Los Cordovas | San Ysidro | San Francisco de Asis, Ranchos de Taos |
| Los Hueros | San Juan Bautista | Santa Clara, Wagon Mound |
| Los LeFebres | Nuestro Señor de Esquipula | Santa Clara, Wagon Mound |
| Los Lentes | San Antonio | San Clemente, Los Lunas |
| Los Luceros | Sagrada Familia | San Juan Bautista, San Juan Pueblo |
| Los Montoyas | San Antonio | Our Lady of Sorrows Church, Las Vegas |
| Los Vigiles | Our Lady of Refuge | Immaculate Conception, Las Vegas |
| Lower Rociada | Santo Niño | Our Lady of Sorrows Church, Las Vegas |
| Lucero | Santa Rita | St. Gertrude the Great, Mora |
| Luis Lopez | San Jose | San Miguel, Socorro |
| Lyden | San Jose | St. Anthony, Dixon |
| Maes | San Santiago | Our Lady of Sorrows Church, Las Vegas |
| Magdalena | St. Mary Magdalene | San Miguel, Socorro |
| Manzano | Nuestra Señora de Dolores | St. Alice, Mountainair |
| Maxwell | St. Vincent de Paul | St. Patrick-St. Joseph, Raton |
| Meadowlake | Misión de San Juan Diego | San Clemente, Los Lunas |
| Medanales | San Antonio | St. Thomas Apostle, Abiquiu |
| Melrose | St. Catherine | Sacred Heart, Clovis |
| Mesa de Poleo | Santa Teresa | St. Thomas Apostle, Abiquiu |
| Milagro | Our Lady of Sorrows | St. Rose of Lima, Santa Rosa |
| Monte Aplanado | El Santo Niño de Atocha | St. Gertrude the Great, Mora |
| Montoya | St. Joan of Arc | St. Anne, Tucumcari |
| Nambe | Sagrado Corazon de Jesús | Nuestra Señora de Guadalupe, Pojoaque |
| Nambe | Pueblo San Francisco de Asisi | Nuestra Señora de Guadalupe, Pojoaque |
| Nara Visa | Sacred Heart | St. Anne, Tucumcari |
| Ocate | Nuestra Señora de Guadalupe | Santa Clara, Wagon Mound |
| Ojo Caliente | St. Mary San Juan | Nepomuceno, El Rito |
| Ojo Feliz | San Isidro | St. Gertrude the Great, Mora |
| Ojo Sarco | Santo Tomas | Holy Family, Chimayo |
| Palo Blanco | Our Lady of Mount Carmel | St. Joseph, Springer |
| Pastura | St. Helen | St. Mary, Vaughn |
| Picuris Pueblo | San Lorenzo | San Antonio de Padua, Peñasco |
| Pilar | Nuestra Señora de Dolores | St. Anthony, Dixon |
| Pinos Wells | San Jose | St. Mary, Vaughn |
| Pintada | Holy Family | St. Rose of Lima, Santa Rosa |
| Placita | Nuestra Señora de la Asuncion | San Antonio de Padua, Peñasco |
| Placitas | San Antonio | Our Lady of Sorrows, Bernalillo |
| Placitas | St. Anthony | San Juan Nepomuceno, El Rito |
| Plaza Blanca | San Antonio | San Jose, Los Ojos |
| Plaza de Arriba | Sangre de Cristo | San Jose, Anton Chico |
| Polvadera | San Lorenzo | San Miguel, Socorro |
| Ponderosa | Santo Toribio | San Diego Mission, Jemez Pueblo |
| Pueblitos | San Isidro | Our Lady of Belen, Belen |
| Puerto de Luna | Our Lady of Refuge | St. Rose of Lima, Santa Rosa |
| Punta de Agua | St. Vincent de Paul | St. Alice, Mountainair |
| Rainsville | Sacred Heart of Jesus | St. Gertrude the Great, Mora |
| Ranchitos | Imaculada Concepcion | Nuestra Señora de Guadalupe, Taos |
| Ranchitos | St. Michael Archangel | San Juan Bautista, San Juan Pueblo |
| Rayado | Holy Child Chapel | Immaculate Conception, Cimarron |
| Red River | St. Edwin | St. Anthony, Questa |
| Riley | Santa Rita | San Miguel, Socorro |
| Rio Chiquito | San Ysidro & Sagrado Corazon | Holy Family, Chimayo |

| | | |
|---|---|---|
| Rio en Medio | Our Lady of Sorrows | Shrine of Our Lady of Guadalupe, Santa Fe |
| Rio Lucio | Sagrada Corazon de Jesús | San Antonio de Padua, Peñasco |
| Rodarte | Santa Barbara | San Antonio de Padua, Peñasco |
| Rowe | Sagrada Familia | St. Anthony of Padua, Pecos |
| Sabinal | San Antonio | Our Lady of Sorrows, La Joya |
| Sabinoso | Nuestra Señora de Guadalupe | Holy Family-St. Joseph, Roy |
| San Antonio | San Antonio | San Miguel, Socorro |
| San Antonito | Nuestro Señor de Mapimi | Holy Child, Tijeras |
| San Augustine | San Augustine | Our Lady of Sorrows Church, Las Vegas |
| San Cristobal | San Cristobal | La Santísima Trinidad, Arroyo Seco |
| San Felipe Pueblo | San Felipe | Nuestra Señora de Guadalupe, Peña Blanca |
| San Geronimo | San Geronimo | Our Lady of Sorrows Church, Las Vegas |
| San Idelfonso | Pueblo San Idelfonso | San Juan Bautista, San Juan Pueblo |
| San Ignacio | San Ignacio | Our Lady of Sorrows Church, Las Vegas |
| San Ignacio | San Ignacio | St. Rose of Lima, Santa Rosa |
| San Isidro del Sur | Nuestra Señora de Guadalupe | San Miguel del Vado, Ribera |
| San Isidro Norte | San Isidro Labrador | San Miguel del Vado, Ribera |
| San Jon | Our Lady of Guadalupe | St. Anne, Tucumcari |
| San Jose | San Jose | San Miguel del Vado, Ribera |
| San Juan | San Juan Nepomuceno | San Miguel del Vado, Ribera |
| San Pedro | San Pedro | Holy Cross, Santa Cruz |
| San Ysidro | San Ysidro | San Diego Mission, Jemez Pueblo |
| Sandia Pueblo | St. Anthony | Our Lady of Sorrows, Bernalillo |
| Santa Ana Pueblo | Santa Ana (St. Anthony) | San Diego Mission, Jemez Pueblo |
| Santa Clara Pueblo | Santa Clara | San Juan Bautista, San Juan Pueblo |
| Santo Domingo Pueblo | Santo Domingo | Nuestra Señora de Guadalupe, Peña Blanca |
| Santo Niño | Santo Niño | Holy Cross, Santa Cruz |
| Sapello | Nuestra Señora de Guadalupe | Our Lady of Sorrows, Las Vegas |
| Sedillo | San Isidro | Holy Child, Tijeras |
| Sena Nuestro | Señor Esquipula | Our Lady of Guadalupe, Villanueva |
| Servilleta | St. Anthony | San Juan Nepomuceno, El Rito |
| Sile | Santa Barbara | Nuestra Señora de Guadalupe, Peña Blanca |
| Tajique | San Antonio | Estancia Valley Catholic Parish, Moriarity |
| Talpa | Nuestra Señora de San Juan de Los Lagos | Ranchos de Taos |
| Taos Pueblo | San Geronimo | Nuestra Señora de Guadalupe, Taos |
| Tecolote | Our Lady of Sorrows | Our Lady of Sorrows Church, Las Vegas |
| Tecolotito | Our Lady of Guadalupe | San Jose, Anton Chico |
| Tesuque | San Ysidro | Shrine of Our Lady of Guadalupe, Santa Fe |
| Tesuque Pueblo | San Diego | San Juan Bautista, San Juan Pueblo |
| Texico | San Jose | Our Lady of Guadalupe, Clovis |
| Tinaja | San Isidro | St. Joseph, Springer |
| Torreon | St. Anthony | St. Alice, Mountainair |
| Trampas | San Jose | Holy Family, Chimayo |
| Trementina | San Rafael | Our Lady of Sorrows Church, Las Vegas |
| Tres Piedras | Immaculate Conception | San Juan Nepomuceno, El Rito |
| Truchas | Santo Rosario | Holy Family, Chimayo |
| Trujillo | San Isidro | Our Lady of Sorrows Church, Las Vegas |
| Turquillo | Santa Teresita del Niño Jesus | St. Gertrude the Great, Mora |
| Upper Rociada | San Jose | Our Lady of Sorrows Church, Las Vegas |
| Upper Town | San Antonio | Immaculate Conception, Las Vegas |
| Vadito | Nuestra Señora de Dolores | San Antonio de Padua, Peñasco |
| Valdez | San Antonio de Padua | La Santísima Trinidad, Arroyo Seco |
| Valencia | Sangre de Cristo | Our Lady of Guadalupe, Peralta |
| Vallecitos | Our Lady of Sorrows | San Juan Nepomuceno, El Rito |
| Variadero | Holy Family | Our Lady of Sorrows Church, Las Vegas |
| Veguita | San Juan | Our Lady of Sorrows, La Joya |
| Velarde | Nuestra Señora de Guadalupe | St. Anthony, Dixon |
| Watrous | Sagrado Corazon | Santa Clara, Wagon Mound |
| White Rock | St. Joseph | Immaculate Heart of Mary, Los Alamos |
| Willard | Our Lady of Sorrows | St. Alice, Mountainair |

| Youngsville | San Pedro | St. Thomas Apostle, Abiquiu |
| Zia Pueblo | Our Lady of the Assumption | San Diego Mission, Jemez Pueblo |

- **Shrines**

| Shrine | Mother Parish |
| Santuario de Chimayo\ | Holy Family, Chimayo |
| Shrine of the Little Flower | St. Therese of the Infant Jesus, Albuquerque |
| Shrine of Our Lady of Guadalupe | Shrine of Our Lady of Guadalupe, Santa Fe |
| Shrine of Our Lady of Lourdes | San Juan Baustista, San Juan Pueblo |
| Shrine of St. Bernadette | Shrine of St. Bernadette, Albuquerque Shrine of St. Kateri |
| Tekakwitha | St. Augustine, Isleta Pueblo |

- **Schools**
  - Annunciation Catholic School
  - Holy Ghost Catholic School
  - Our Lady of Fatima Catholic School
  - Our Lady of the Assumption Catholic School
  - Risen Savior Catholic School
  - San Felipe de Neri Catholic School
  - St. Charles Borromeo Catholic School
  - St. Mary Catholic School
  - St. Pius X High School
  - St. Therese Catholic School
  - St. Mary Catholic School (Belen)
  - Holy Child Catholic School
  - St. Thomas Aquinas Catholic School
  - Holy Cross Catholic School
  - Santo Niño Regional Catholic School
  - St. Michael's High School

- Any and all past and present shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy or religious, volunteers, and Representatives of the Archdiocese and of the ASF Participating Parties.

- Each of the past, present, and future Affiliates, holding companies, merged companies, related companies, divisions, and acquired companies of the Archdiocese and ASF Participating Parties, and each of their respective past, present and future Affiliates, holding companies, merged companies, related companies, divisions and acquired companies, and each of their respective predecessors, successors, and assigns, each in their capacity as such.

- **Settling Insurers**

  - **Arrowood Indemnity Company**, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America, and, solely in their capacity as such, (i) each of its past, present, and future parents, subsidiaries, affiliates, and divisions; (ii) each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, subrogees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through or in concert with them. For the avoidance of doubt, the inclusion of the phrase "future parents" in this definition is limited to such Entity in its capacity as a "future parent," and nothing contained herein shall limit or alter the obligations of any such Entity to the extent that such obligations exist independent of such Entity's role as a "future parent."

- **Catholic Mutual Relief Society of America**, and solely in the capacity as such, (i) each of its past and present, subsidiaries, affiliates, reinsurers, retrocessionaires, and divisions; (ii) each of the foregoing Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies; (iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
- **Continental Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
- **Great American Insurance Company**, and, solely in the capacity as such: (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
- **Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company**, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, i) each of their past and present parents, subsidiaries, affiliates, and divisions; ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.
- **United States Fire Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- ## Participating Religious Orders and Funding Insurers

  - **Brothers of the Christian Schools, SFNO District**
  - **Sons of the Holy Family**
  - **Congregation of the Blessed Sacrament**
  - **The Province of St. John the Baptist of the Order of the Friars Minor and The Province of Our Lady of Guadalupe of the Order of Friars Minor**
  - **Servants of the Paraclete**
  - **Arrowood Indemnity Company**, formerly known as Royal Indemnity Company, successor by merger to Royal Insurance Company of America and each of its past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' or Entity's respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' or Entity's respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' or Entity's respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through, or in concert with them.
  - **The Catholic Mutual Relief Society of America,** and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, reinsurers, retrocessionaires, and divisions; (ii) each of the foregoing

Entities' respective past and present, parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies;(iii) each of the foregoing Entities' respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iv) each of the foregoing Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- **Liberty Mutual** and each of its past, present, and future parents, subsidiaries, affiliates, reinsurers and retrocessionaires, and divisions; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

- **Travelers Indemnity Company and St. Paul Fire and Marine Insurance Company**, as itself and as a successor to or assignee of St. Paul Mercury Indemnity Company, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- **United States Fire Insurance Company**, and solely in the capacity as such, (i) each of its past and present parents, subsidiaries, affiliates, and divisions; (ii) each of their respective past and present parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions and acquired companies, each of their respective past, present and future, directors, officers, shareholders, employees, subrogees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and (iii) each of their respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Entities acting on behalf of, by, through or in concert with them.

- **Hartford Accident and Indemnity Company** and each of its past, present, and future parents, subsidiaries, affiliates, and divisions; each of the foregoing Persons' or Entities' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' or Entities' respective past, present, and future directors, officers, shareholders, employees, partners, principals, managers, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of the foregoing Persons' or Entities' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons or Entities acting on behalf of, by, through, or in concert with them.

Protected Parties DO NOT include any of the following: (i) any Perpetrator, (ii) any diocese or archdiocese (other than the Archdiocese itself), (iii) any Religious Order other than a Participating Religious Order, or (iv) the Holy See. A liability carrier to a Participating Religious Order in that capacity and a Participating Religious Order will not become Protected Parties unless its respective share of the Participating Religious Order Contribution is made on or before the applicable Participating Religious Orders Contribution Date.

## EXCULPATED PARTIES

- Archdiocese Parties

- Settling Insurers

- Participating Religious Orders and Funding Insurers

- Committee and its present, former, and *ex officio* members

- Chapter 11 Professionals (as defined in the Plan)

- Representatives of the foregoing, acting in such capacity.

 Exculpated Parties do not include: (a) any Perpetrator, (b) any diocese or archdiocese (other than the Archdiocese itself), (c) any Religious Order other than the Participating Religious Orders, or (d) the Holy See.

## PROMISSORY NOTE

$5,400,000.00

Date: September 30, 2022
Albuquerque, New Mexico

For value received, the Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole (the "Maker"), whose address is 4000 Saint Joseph Place N.W., Albuquerque, New Mexico 87120-1714, promises to pay to the order of Omni Management Group, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, solely in its capacity as ASF Settlement Trustee (the "Payee"), at such place as the Payee or other holder of this Note shall direct, the sum of FIVE MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($5,400,000.00), in legal and lawful money of the United States of America.

MORTGAGE. This Note is secured by Mortgage of even date granted and hypothecated by Archdiocese of Santa Fe Real Estate Corporation, a NM nonprofit corporation.

BANKRUPTCY CONTINGENCY. The Note and Mortgage are being executed and delivered pursuant to agreement made in the chapter 11 bankruptcy case of the Roman Catholic Church of the Archdiocese of New Mexico, a New Mexico corporation sole ("Debtor"), case no. 18-13027-t11 ("Bankruptcy Case"), pending in the United States Bankruptcy Court for the District of New Mexico. The reorganization plan ("Plan") contemplated in the Bankruptcy Case requires the Debtor to contribute $75 million (the "Debtor Contribution") to a settlement fund. The Debtor Contribution includes the principal balance of the Note. The parties hereto agree that if the full amount of the Debtor Contribution is deposited into the settlement fund escrow account prior to the Effective Date of the Plan, the Note and Mortgage are null and void and of no effect.

REPAYMENT: The principal and accrued interest are due and payable on or before March 31 2023.

INTEREST: Commencing on the Effective Date of the Plan, the principal balance of the Note remaining from time to time unpaid shall accrue interest of at the rate of two percent (2.0%) per annum, calculated on a 360 day year.

PREPAYMENT: Maker has the right to prepay in whole or in part the principal balance prior to the due date, plus outstanding accrued interest due at the time such principal payment is made, without penalty, and interest shall cease to accrue immediately upon any principal amount so prepaid.

COSTS AND ATTORNEYS' FEES: If this Note or any sums hereunder are not paid upon maturity, and the same is placed in the hands of an attorney for collection or suit is brought on same or is collected by legal proceedings of any kind, including, but not limited to, probate, bankruptcy, or other judicial proceedings, then the undersigned agrees and promises to pay all costs and expenses of collection incurred by the holder, including costs of court and reasonable attorney's fees.

DEFAULT: If the Maker fails to pay the principal and accrued and unpaid interest upon maturity, the holder of this Note may, at its option, declare the principal and interest at once due

and payable and exercise any and all of the rights and remedies provided in this Note, at law or in equity, or in any security document securing this Note.

If principal and accrued interest are not paid on by close of business on March 31 2023, the remaining unpaid principal balance and accrued interest shall become immediately due and payable and the interest rate payable on the remaining unpaid principal balance will increase to 10.00% per annum.

Except as otherwise set forth herein, Maker expressly waives all notices, presentment for payment, protest and notice of protest, demands for payment, notice of intent to accelerate the maturity, and notice of acceleration of the maturity, and diligence in the collection hereof, or diligence in filing suit hereon, without prejudice to the holder. No failure or delay on the part of the Payee or any holder hereof in exercising any right, power, or privilege hereunder shall operate as a waiver thereof.

GOVERNING LAW, JURISDICTION AND VENUE: This Note shall be governed by the laws of the State of New Mexico, and jurisdiction and venue shall lie in the United States Bankruptcy Court for the District of New Mexico.

MAKER:

Roman Catholic Church of the Archdiocese of Santa Fe,
a New Mexico corporation sole

By: _+ John C. Wester_
      Most Reverend John C. Wester,
      Archbishop of Santa Fe

## MORTGAGE, CONSENT TO PLEDGE AND HYPOTHECATION AGREEMENT

This Mortgage, Consent to Pledge and Hypothecation Agreement ("Mortgage") is made as of September 30, 2022, between the Archdiocese of Santa Fe Real Estate Corporation, a NM nonprofit corporation (hereinafter called the "Mortgagor"), whose office address is 4000 St. Joseph's Pl., Albuquerque, New Mexico 87120 and Omni Management Group, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, solely in his capacity as ASF Settlement Trustee (the "Payee").

GRANT OF MORTGAGE. Mortgagor, for consideration paid, grants and conveys to Payee the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; replacements and additions; easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in Santa Fe County, State of New Mexico:

SEE ATTACHED LEGAL DESCRIPTION

which has the addresses of 1107 & 1147 Cristo Rey St., Santa Fe, NM 87505, 311 Camino Delora, Santa Fe, NM 87505, 316 Camino Delora, Santa Fe, NM 87505, 317 Camino Delora, Santa Fe, NM 87505, and 1120 Canyon Road, Santa Fe, NM 87505, LESS AND EXCEPT Tract 1 at 1120 Canyon Road, Santa Fe, NM 87505.

With statutory mortgage covenants. All of the foregoing is referred to in this Mortgage as the "Property."

OBLIGATION SECURED. This Mortgage secures the payment of all amounts due under that certain promissory note executed by Roman Catholic Church of the Archdiocese of Santa Fe, a New Mexico corporation sole and delivered to Payee in the original principal amount of $5,400,000.00 (the "Note") dated September 30, 2022, and the payment of all other sums, with interest, advanced under the Note or this Mortgage to protect the Property and enforce the Note and this Mortgage.

MORTGAGOR COVENANTS that Mortgagor is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Mortgagor and Payee covenant and agree as follows:

1. PAYMENT OF PRINCIPAL AND INTEREST; PREPAYMENT AND DEFAULT INTEREST. Subject to the terms of the Note, Mortgagor shall promptly pay when due the principal and interest on the debt evidenced by the Note, subject to Mortgagor's right to prepay, without penalty, and subject to interest increasing to the default rate after the due date if the

principal and interest are not paid when due, as provided in the Note.

2. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, all payments received by Payee under paragraph 1 shall be applied: first, to interest accrued and unpaid, and then to the principal balance, as provided in the Note.

3. CHARGES; LIENS. Mortgagor shall pay all taxes, assessments, charges, fines and imposition attributable to the Property, which may attain priority over this Mortgage, and leasehold payments or ground rents, if any. If Mortgagor makes these payments directly, Mortgagor shall promptly furnish to Payee receipts evidencing the payments upon request by Payee.

Mortgagor shall promptly discharge any lien which has priority over this Mortgage unless Mortgagor: (a) agrees in writing to payment of the obligations secured by the lien in a manner acceptable to Payee; (b) contests in good faith the lien by, or defends against enforcement of the lien in legal proceedings which in the Payee's reasonable opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or, (c) secures from the holder of the lien an agreement satisfactory to Payee subordinating the lien to this Mortgage. If Payee determines that any part of the Property is subject to a lien which may attain priority over this Mortgage, Payee may give Mortgagor a written notice identifying the lien. Mortgagor shall satisfy the lien or take one or more of the actions set forth above within thirty (30) days of the giving of Notice.

4. HAZARD INSURANCE. Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Payee requires insurance. These insurance policies shall be maintained in the amounts and for the periods that Payee requires. The insurance carriers providing the insurance shall be chosen by Mortgagor. If Mortgagor fails to maintain coverage described above, Payee may, at Payee's option, obtain coverage to protect Payee's rights in the Property.

All insurance policies and renewals shall be reasonably acceptable to Payee and shall include a standard mortgage clause. If Payee requires, Mortgagor shall promptly give to Payee all receipts of said premiums and renewal notices. In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Payee. Payee may make proof of loss if not made promptly by Mortgagor.

Unless Payee and Mortgagor(s) otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Payee's security is not lessened. If the restoration or repair is not economically feasible or Payee's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Mortgagor(s). If Mortgagor(s) abandon the Property or does not answer within thirty (30) days a notice from Payee that the insurance carrier has offered to settle a claim, then Payee may collect the insurance proceeds. Payee may use the proceeds to repair or restore the Property or to pay sums secured by *this*

2

Mortgage, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Payee and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Note.

5. PROTECTION OF PAYEE'S RIGHTS IN THE PROPERTY. If Mortgagor fails to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that is reasonably likely to significantly adversely affect Payee's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Payee may do and pay for whatever is necessary to protect the value of the Property and Payee's rights in the Property. Payee's actions may include paying any sums secured by a lien which has priority over this Mortgage, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Payee may take action under this paragraph, Payee does not have to do so.

Any amount actually disbursed by Payee under this paragraph shall become additional debt of Mortgagor secured by this Mortgage. Unless Mortgagor and Payee agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Payee to Mortgagor requesting payment.

6. CONDEMNATION. The proceeds of any award or claim for damages, direct or consequential in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Payee.

In the event of a total taking of the Property, the proceeds shall be applied to sums secured by this Mortgage, whether or not then due, with any excess paid to Mortgagor. In the event of a partial taking of the Property, in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Mortgage immediately before the taking, unless Mortgagor and Payee otherwise agree in writing, the sums secured by this Mortgage shall be reduced by the amount of the proceeds multiplied by the following faction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Mortgagor. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Mortgagor and Payee otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Mortgage, whether or not the sums are then due.

If the Property is abandoned by Mortgagor, or if, after written notice by Payee to Mortgagor that the condemnor offers to make an award to settle a claim for damages, Mortgagor fails to respond to Payee within thirty (30) days after the date the notice is given, Payee is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due.

3

Unless Payee and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

7.     FORBEARANCE BY PAYEE NOT A WAIVER. Extension of the time for payment or modification of the sums secured by or the terms of this Mortgage shall not operate to release the liability of the Mortgagor. Any forbearance by Payee in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

8.     SUCCESSORS AND ASSIGNS BOUND. The covenants and agreements of this Mortgage shall bind and benefit the successors and assigns of Payee and Mortgagor,.

9.     NOTICES. Any notice provided for in this Mortgage shall be given by delivering it by hand or by reputable overnight delivery service (i.e., FedEx, UPS, etc). The notice shall be directed to the addresses stated here or any other address a party designates by notice. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Payee when given as provided in this paragraph.

10.    GOVERNING LAW; SEVERABILITY. This Mortgage shall be governed by the law of the state of New Mexico. Venue and jurisdiction shall be in the United States Bankruptcy Court for the District of New Mexico.

11.    MORTGAGOR'S RIGHT CURE. Mortgagor shall have the right to have enforcement of this Mortgage discontinued at any time prior to sale of the Property pursuant to any judgment enforcing this Mortgage by paying all sums due under this Mortgage and the Note including all accrued and unpaid interest and all expenses incurred in enforcing this Mortgage, including, but not limited to, reasonable attorneys' fees.

12.    ACCELERATION; REMEDIES. Payee shall give written notice to Mortgagor prior to acceleration following Mortgagor's breach of any covenant or agreement in this Mortgage or an Event of Default, as defined in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sum secured by this Mortgage, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Mortgagor to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Payee at its option may require immediate payment in full of all sums secured by this Mortgage without further demand and may foreclose this Mortgage by judicial proceeding. Payee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph, including but not limited to, reasonable attorneys' fees and costs of title evidence.

13.    RELEASE. Upon payment of all sums secured by this Mortgage, Payee shall

4

discharge this Mortgage without charge to Mortgagor. Mortgagor shall pay any recordation costs.

14.    BANKRUPTCY CONTINGENCY. The Note and Mortgage are being executed and delivered pursuant to agreement made in the chapter 11 bankruptcy case of the Roman Catholic Church of the Archdiocese of New Mexico, a New Mexico corporation sole ("Debtor"), case no. 18-13027-t11 ("Bankruptcy Case"), pending in the United States Bankruptcy Court for the District of New Mexico. The reorganization plan ("Plan") contemplated in the Bankruptcy Case requires the Debtor to contribute $75 million (the "Debtor Contribution") to a settlement fund. The Debtor Contribution includes the principal balance of the Note. The parties hereto agree that if the full amount of the Debtor Contribution is deposited into the settlement fund escrow account prior to the Effective Date of the Plan, the Note and Mortgage are null and void and of no effect.

15.    MORTGAGOR'S CONSENT TO PLEDGE AND HYPOTHECATION AGREEMENT. Mortgagor is the owner of the Property identified herein, which secures repayment of the Note from Maker to Payee. Mortgagor and Maker hereby agree to the following: FOR VALUE RECEIVED, and for the purpose of enabling Maker to obtain credit on a portion of its contribution to the settlement fund in the Plan contemplated in Maker's Bankruptcy Case, the Mortgagor hereby hypothecates, pledges and delivers to Payee the Property described herein as collateral for repayment of the Note, pursuant to this Mortgage. No renewal or extension of the time of to pay the Note, no delay in enforcement of payment of the Note, and no delay or omission in exercising any right or power with respect to the Note, the Mortgage, or the hypothecation shall in any manner impair or affect Payee's rights under the Note and the Mortgage. Mortgagor expressly agrees that the Property shall be subject to disposition in accordance with the terms and conditions of the Note and Mortgage.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in this Mortgage.

MORTGAGOR:
Archdiocese of Santa Fe Real Estate Corporation,
a NM nonprofit corporation

By: *Msgr. Lambert Joseph Luna*
Rev. Msgr. Lambert J. Luna,
President

STATE OF NEW MEXICO    )
                               ) SS
COUNTY OF BERNALILLO    )

I, *Monica M. Justice*, Notary Public in and for Bernalillo County, State of New Mexico, do hereby certify that Rev. Msgr. Lambert J. Luna, personally known to me and known to be the same person whose name is subscribed to the foregoing instrument appeared before me this day in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act for the uses and purposes therein.

WITNESS MY HAND AND NOTARIAL SEAL this _30_ day of September, 2022.

*Monica M. Justice*

STATE OF NEW MEXICO
NOTARY PUBLIC
MONICA M. JUSTICE
Commission Number 1117058
My Commission Expires February 27, 2025

Legal Description

6

## Exhibit A
## Mortgage Property Description

**Cristo Rey Church and Rectory:** UPC# 1-055-098-364-400-103-02, TR 3 LOT 11, 1107 & 1147 Cristo Rey St., Santa Fe, NM 87505

Beginning at the Northwest corner of this tract, identical with the southwest corner of Tract 1 of land deeded by David Rodriguez; thence N. 86°-27' E. on north boundary of this tract identical with south boundary of Tract 1 of David Rodriguez, 415.7 feet to the Northeast corner of this tract, identical with the Southeast corner of Tract 1 and Northwest corner of Tract 2 of land of David Rodriguez; thence S.4°-45' E. on east boundary of this tract and west boundary of Tract 2 of David Rodriguez; 83.8 feet to the Southeast corner of this tract; thence S.85°27' W. on south boundary of this tract 397.3 feet to the Southwest corner; thence N.16°45' W. on west boundary of this tract 92.9 feet to the northwest corner, the point of beginning.

**Cristo Rey School and Playground:** UPC# 1-055-098-321-403-102-05, TR 1 LOT 6, 316 Camino Delora, Santa Fe, NM 87505

Beginning at a point on the Southeast corner of said tract, from which point of beginning the flagpole on the Capitol bears N. 74° 11' W; from said point of beginning N. 16° 50' W. along the Camino Delora 176.50 feet; thence N. 17° 55' W. along the Camino Delora 249.00 feet to a point at the intersection of Canyon Road and Camino Delora which point is the Northeast corner of said tract; thence S. 73° 23' West along Canyon Road 28 feet to the Northwest corner of said tract; thence S. 16° 25' E. 229.40 feet to a point; thence S. 16° 13' E. 180.20 feet to the Southwest corner of said tract; thence N. 86° 00' E. 28 feet to the point and place of beginning. Bounded on the East by the Camino Delora, on the North by Canyon Road, on the West by property now or formerly of Pablo Trujillo and on the South by property now or formerly of Vincente Brito.

The above described property is the same as was conveyed by Pablo Trujillo and Franciscita Trujillo to R. A. Gerken, late Roman Catholic Archbishop of Santa Fe on June 9, 1939 by Warranty Deed recorded June 10, 1939 in Vol. 16, page 582 of Deeds in the office of the County Clerk of Santa Fe County, N.M.

**Cristo Rey Gym:** UPC# 1-055-098-340-404-103-01, TR 3 Portion of Lot 10, 317 Camino Delora, Santa Fe, NM 87505

Tract 3, Portion of Tax Exempt Lot 10, S-30, T-17N, R-10E, with the tax parcel #1-055-098-340-404-103-01.

**Cristo Rey Sisters House**: UPC# 1-055-098-334-424-103-12, TR 2 LOT 9, 311 Camino DeLora
Santa Fe, NM 87505

> Tract 2, Sisters House Cristo Rey, NE ¼ S-30, T-17N, R-10E Tax Exempt (Old Lot 9) with the tax parcel
> #1-055-098-334-424-103-12.

**Less and Except:** 1120 Canyon Road, Santa Fe, NM 87505

> Tract 1 as shown on plat entitled "Plat of Land Division for the Archdiocese of
> Santa Fe..., Situate at 1120 Canyon Road...", recorded in the office of the County Clerk,
> Santa Fe County, New Mexico, on September 8, 2022, in Plat Book 895, Page 001, as
> Instrument No. 1997083.