UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF     Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

    Debtor.

# OPINION

Before the Court is the Reorganized Debtor's motion for entry of a final decree. The United States Trustee objected, arguing that the estate is not "fully administered" under 11 U.S.C. § 350 because final professional fee applications have not been filed, possibly objected to, and ruled on. The dispute has some significance because U.S. Trustee fees of about $50,000 could accrue if the case stayed open until fee application objections (if any) were adjudicated. The Court holds that the estate has been fully administered. It therefore will enter a final decree and close the case.

A.    <u>Facts</u>.

    The Court finds:[1]

    Debtor filed this chapter 11 case on December 3, 2018. Its plan of reorganization, filed October 11, 2022, was confirmed on December 28, 2022. The effective date of the Plan was February 16, 2023.

    The confirmation order is final and nonappealable. The "ASF Settlement Trust," established pursuant to the plan, has been funded. Likewise, the "Unknown Tort Claims Trust" has been established and funded to the extent required under the plan.

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

All property to be transferred under the Plan has been transferred. The Reorganized Debtor has assumed and continues the business of the Debtor. No assets remain in the bankruptcy estate; they have all been transferred to the Reorganized Debtor, the ASF Trust, or the Unknown Tort Claims Trust.

The Debtor received a discharge pursuant to § 1141.[2] All filed motions, contested matters, and adversary proceedings have been finally resolved. The Plan has been substantially consummated.

Anticipated final professional fee applications have not been filed. Under the confirmed plan, the deadline to file the applications is April 3, 2023. The objection deadline is May 18, 2023. While no objections have been filed to previous fee applications, the U.S. Trustee reserves the right to object to one or more of the final fee applications. All approved fees will be paid by the Reorganized Debtor.

Section 14.4 of the Plan provides that "As soon as practicable after the Effective Date, when the Reorganized Debtor deems appropriate, the Reorganized Debtor will seek authority from the Bankruptcy Court to close the Bankruptcy Case… ."

In the Plan, Section 21.1.1, the Court retains jurisdiction to determine fee applications:

> 21.1 Notwithstanding confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes: 21.1.1 In General. The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor, by the Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment thereof, including Administrative Claims for Professional Charges.

---

[2] Unless otherwise indicated, all statutory references are to 11 U.S.C.

In the confirmation order, the Court retained "jurisdiction over the matters as set forth in the Plan."

From the petition date through March 31, 2023, Debtor and Reorganized Debtor will have paid about $1,000,000 in U.S. Trustee fees. Currently, Debtor is being charged U.S. Trustee fees at the rate of .8% of disbursements, or about $12,000 a month. In addition, Reorganized Debtor anticipates paying about $1,600,000 to professionals in connection with the final fee applications, which would result in additional U.S. Trustee fees of about $12,800. Thus, total U.S. Trustee fees for the second quarter of 2023 would be about $49,000.

If the U.S. Trustee objects to one or more of the final fee applications and the case remains open until the objection(s) are resolved, case closure could be delayed until June 30, 2023, or later.

This has been a difficult case for all concerned. The Reorganized Debtor and other parties in interest would benefit by case closure.

B.   U.S. Trustee Fees.

Chapter 11 debtors are required to pay quarterly fees to the U.S. Trustee. 28 U.S.C. § 1930(a)(6). Based on the Reorganized Debtor's income and expenses, it currently pays fees of .8% of all disbursements.

U.S. Trustee fees are not charged after a chapter 11 case is closed. *See* 28 U.S.C. § 1930(a)(6)(B); *see also In re CF& I Fabricators of Utah, Inc.*, 150 F.3d 1233, 1237 (10th Cir. 1998) (construing 28 U.S.C. § 1930(a)(6)(A), the Tenth Circuit held that "Congress intended

debtors pay UST fees until a case is converted, dismissed, *or closed* leaving no open docket in which to assess the fees.") (emphasis in original).[3]

Until January 27, 1996, U.S. Trustee fees were chargeable only through plan confirmation. *In re Harness*, 218 B.R. 163, 164 (D. Kan 1998) (citing the Balanced Budget Downpayment Act, PL 104-99, 110 Stat. 26). Thereafter, fees were payable until the case was closed, dismissed, or converted.

U.S. Trustee fees have increased significantly over the years. For example, in 1994 the quarterly fee for disbursements of $3,000,000 was $3,750. Today, it is $24,000. Similarly, the maximum quarterly fee in 1994 was $5,000. Now it is $250,000.

C. <u>Entry of a Final Decree in Chapter 11 Cases</u>.

Section 350 provides:

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

Fed. R. Bankr. Pro. ("Rule") 3022 provides:

> After an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case.

---

[3] It is not clear whether, if the case were closed on April 1, 2023, instead of March 31, 2023, U.S. Trustee fees would be due for the entire second quarter of 2023. The language in 28 U.S.C. § 1930(a)(6)(B) that "a quarterly fee shall be paid . . . in each open . . . case . . . for each quarter (including any fraction thereof) until the case is closed, converted, or dismissed . . ." arguably is ambiguous. The only reasonable interpretation, however, is that partial quarters are pro-rated. U.S. Trustee fees are charged on "disbursements." As there can be no post-closing disbursements within the meaning of the statute, no fees can be charged. *See generally In re CF& I Fabricators*, 150 F.3d at 1237 (quoted above); *In re A.H. Robins Co., Inc.*, 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) ("because a 'case' no longer exists once it is closed, the Court finds that the obligation to pay UST fees terminates upon closure, dismissal, or conversion of a Chapter 11 case and will not be paid *ad infinitum*"); *In re Jay Bee Enterprises, Inc.,* 207 B.R. 536, 539 (Bankr. E.D. Ky. 1997) ("the liability for quarterly fees of a debtor operating under a confirmed plan cases when the case is closed, although the statute imposing the fees does not so mandate.").

"A final decree is essentially an administrative task, a docket entry reflecting the conclusion of a case for record-keeping purposes." *In re McClelland,* 377 B.R. 446, 453 (Bankr. S.D.N.Y. 2007), citing *In re Fibermark, Inc.,* 369 B.R. 761, 767 (Bankr. D. Vt. 2007).

D.   The "Fully Administered" Requirement.

1.   The bankruptcy court's discretion. The key issue under § 350 is whether the estate has been "fully administered," a term not defined by the Code or Rules. In the Tenth Circuit and elsewhere, bankruptcy courts use their sound discretion to rule on the "full administration" issue:

> [D]etermining when a case is 'fully administered' is a decision for the bankruptcy court based on consideration of numerous case-specific, procedural, and practical factors. The bankruptcy court is uniquely positioned to make this determination given that it will have overseen the particular debtor's case from the beginning and will have first hand knowledge of what matters have been, or need to be, completed before closure of the case. Further, the bankruptcy court will be very familiar with the debtor's confirmed plan of reorganization, the requirements for consummation of that plan, as well as the status of any pending motions, contested matters, and adversary proceedings.

*In re Union Home and Indus., Inc.*, 375 B.R. 912, 917 (10th Cir. BAP 2007); *see also In re Shotkoski*, 420 B.R. 479, 483 (8th Cir. BAP 2009) (bankruptcy court decision on entry of a final decree is reviewed for abuse of discretion); *In re Spokane Raceway Park Inc.*, 2013 WL 3972429, at *4 (9th Cir. BAP) (abuse of discretion standard applied to bankruptcy court's decision to enter a final decree and close a Chapter 11 case); *In re Hoti Enters., L.P.*, 2016 WL 8674684, at *1 (S.D.N.Y.) (same); *In re MBF Inspection Services, Inc.*, 609 B.R. 889, 892 (Bankr. D.N.M.) (same).

2. <u>"Fully administered" refers to the estate, not the case</u>. Although some decisions refer to the full administration of *cases*, *see, e.g., Union Home*, 375 B.R. at 917,[4] both § 350 and Rule 3022 require closure after the *estate* has been fully administered.

3. <u>Substantial consummation</u>. Two courts have held that a bankruptcy estate is "fully administered" once a confirmed chapter 11 plan has been "substantially consummated." *See In re BankEast Corp.*, 132 B.R. 665, 668 n.3 (Bankr. D.N.H. 1991) ("[t]his Court deems a chapter 11 estate to be "fully administered" pursuant to Bankruptcy Rule 3022 at the point of substantial consummation as defined by § 1101(2) of the Bankruptcy Code"); and *Walnut Associates v. Saidel*, 164 B.R. 487, 492 (E.D. Pa. 1994) (citing and following *BankEast*); *see also In re Gates Community Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (noting the holding in *BankEast* and *Walnut Associates*). This appears to be a minority view. *See, e.g., In re IDC Services, Inc.*, 1998 WL 547085, at *3 (S.D.N.Y.).

4. <u>The Advisory Committee factor test</u>. The majority view is to apply the factors listed in the 1991 Advisory Committee Note for Rule 3022. The Tenth Circuit Bankruptcy Appellate Panel stated:

> The definition of "fully administered" is not provided anywhere in the Code or Rules. The few courts that have considered the issue have looked to the 1991 Advisory Committee Note for guidance. That Note provides the following list of factors:
>> Entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the

---

[4] *Union Home* elsewhere discusses the full administration of the estate, so the reference to case administration likely was inadvertent.

> property dealt with by the plan, (5) whether payments under the plan
> have commenced, and (6) whether all motions, contested matters,
> and adversary proceedings have been finally resolved.

*Union Home*, 375 B.R. at 916; *see also In re Federated Department Stores, Inc.*, 43 Fed. App'x 820, 822 (6th Cir. 2002) (unpublished) (using the factors); *In re Avaya, Inc.*, 2020 WL 5051580, at *2 (S.D.N.Y.) (same).

"[N]ot all factors set forth in the Advisory Committee Note need to be present to establish that a case is fully administered for final decree purposes." *Federated Department Stores,* 43 Fed. App'x at 822. "The factors . . . are not considered exhaustive, nor must a party demonstrate all of the factors, before the court may find a case to be fully administered." *Union Home*, 375 B.R. at 917; *see also In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990) (same); *In re Valence Tech., Inc.*, 2014 WL 5320632, at *3 (Bankr. W.D. Tex. 2014) (same); *In re Provident Fin., Inc.,* 2010 WL 6259973, at *9 (9th Cir. BAP), aff'd 466 Fed. App'x 672 (9th Cir.) (same).

The Court weighs the Advisory Committee Note factors as follows:

| | |
|---|---|
| 1. Whether the order confirming the plan has become final. | The confirmation order was entered December 28, 2022. It is final and nonappealable. This factor weighs in favor of entering a final decree. |
| 2. Whether deposits required by the plan have been distributed. | The Debtor has funded the ASF Settlement Trust and the Unknown Tort Claims Trust as required by the confirmed plan. This factor weighs in favor of entering a final decree. |
| 3. Whether the property proposed by the plan to be transferred has been transferred. | The plan vested all estate property in the Reorganized Debtor or the trusts. The trusts have been funded to the extent required by the plan. This factor weighs in favor of entering a final decree. |
| 4. Whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan. | Debtor's management is now managing the Reorganized Debtor, which owns and controls all former estate assets. This factor weighs in favor of entering a final decree. |

| 5. Whether payments under the plan have commenced. | Payments under the plan have commenced. The Reorganized Debtor has funded the trusts to the extent required by the plan. The trusts are fully operational and are reviewing and/or paying claims. This factor weighs in favor of entering a final decree. |
|---|---|
| 6. Whether all motions, contested matters, and adversary proceedings have been finally resolved. | All filed claim objections, other contested matters, and adversary proceedings have been finally resolved. Final fee applications from counsel for Debtor and the UCC have yet to be filed. If the U.S. Trustee object to any of them, contested matters would result. This factor may weigh against entering a final decree. |

In *MBF Inspection Services*, the Court also considered the burden of U.S. Trustee fees as a factor:

> In addition, it is significant here that the current U.S. Trustee fees are the much higher "alternative" rate set forth in 28 U.S.C. § 1930(a)(6)(B). Whether or not the higher fees are constitutionally permissible, *see, e.g., In re Life Partners Holdings, Inc.*, 606 B.R. 277, 286-89 (Bankr. N.D. Tex. 2019), they are a significant burden on a post-confirmation debtor. At $3,200 a month, a more leisurely case wrap-up likely would be acceptable. At $42,000 a month plus an additional $22,250 because of the proposed distribution to the class action claimants, there is urgency to close the case.

609 B.R. at 894; *see also Avaya*, 2020 WL 5051580 at *3 ("the Bankruptcy Court noted that Avaya was paying $250,000 per quarter to the United States Trustee until entry of the final decree"). The continued accrual of U.S. Trustee fees weighs in favor of closing the case as soon as the estate can reasonably be held to have been fully administered.

Weighing the factors, the Court concludes that the estate has been fully administered. The only factor weighing against a finding of "full administration" is the U.S. Trustee's potential objection to one or more final fee applications. The Court finds, for several reasons, that this factor is outweighed by the others. First, there have been no disputes about fees in the case so far, and the Court does not anticipate serious disagreement about the final fee applications. If no objections

are filed, no contested matters will arise. The Court does not want to make the Reorganized Debtor pay $12,000 or more a month to see if any objections are filed. Second, if the U.S. Trustee or any other party objects to a fee application, the parties to the resulting contested matter should have all the time they reasonably need to litigate the matter. Without the pressure to close the case so the U.S. Trustee fees are cut off, the Court will be unconstrained to give the parties the time they need. Third, it appears that the only party that might object to the final fee applications is the U.S. Trustee. Without casting aspersions on her or the New Mexico office,[5] the "optics" of delaying case closure by objecting to professional fee applications, thereby collecting more U.S. Trustee fees, are not good. Finally, the estate has, perforce, been fully administered: it is now an empty shell, with its debts discharged. No additional administration is possible.

Case closure is no hindrance to the Court's review of the final fee applications and any objections thereto. *See, e.g., Avaya*, 2020 WL 5051580 at *3 (court closed the case even though a claim objection was pending); *In re Menk*, 241 B.R. 896, 912-13 (9th Cir. BAP 1999) (case did not have to be open for the court to adjudicate a nondischargeability proceeding); *In re JMP–Newcor Int'l*, 225 B.R. 462, 465 (Bankr. N.D. Ill. 1998) (final decree entered despite a pending adversary proceeding brought by the debtor); *In re Clinton Nurseries, Inc.*, 2020 WL 1237212, at *4 (Bankr. D.N.J.) (final decree entered despite pending adversary proceedings); *In re Keller*, 24 B.R. 720, 724 (Bankr. N.D. Ohio 1982) (a case need not be open for a bankruptcy court to hear a debtor's § 522(f) lien avoidance motion); *In re Schneider*, 18 B.R. 274, 276 (Bankr. D.N.D. 1982) (same); *MBF Inspection Serv.*, 609 B.R. at 895 (case need not be open to adjudicate a fee application and objection); *In re Valence Tech.*, 2014 WL 5320632, at *9 (pending appeals of

---

[5] The office operates with the highest integrity, competence, and prosecutorial discretion. The office is, as Julius Caesar thought his wife should be, beyond reproach.

orders on fee applications do not prevent entry of a final decree); *In re Provident Fin.*, 2010 WL 6259973, at *9 (because pending appeal didn't implicate the administration of the debtor's estate, closing debtor's case was proper); *In re McClelland*, 377 B.R. 446, 453 (Bankr. S.D.N.Y. 2007), *aff'd*, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) ("[i]f the estate is otherwise fully administered, the Debtor's adversary proceeding ... should not delay closing of the case").

E.  The Goal of Closing Chapter 11 Cases Promptly After Plan Confirmation.

For business chapter 11 cases with confirmed plans of reorganization, courts should encourage and facilitate the expeditious exit from bankruptcy court. In *Pettibone Corp. v. Easley*, 935 F.2d 120 (7th Cir. 1991), for example, Judge Easterbrook held:

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. *In re Xonics, Inc.,* 813 F.2d 127, 130–32 (7th Cir. 1987); *In re Chicago, Rock Island & Pacific R.R.,* 794 F.2d 1182, 1186–87 (7th Cir. 1986). See also *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984); *Goodman v. Phillip R. Curtis Enterprises, Inc.,* 809 F.2d 228, 232–33 (4th Cir. 1987); *National City Bank v. Coopers & Lybrand,* 802 F.2d 990, 994 (8th Cir. 1986); *In re Gardner,* 913 F.2d 1515, 1518–19 (10th Cir. 1990). Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law, here by pleading the statute of limitations in the pending cases.

935 F.2d at 122; *see also North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2d Cir.1944) ("Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility."); *In re Singer Co.*, 2002 WL 999273, at *6 (S.D.N.Y.) (quoting *Pettibone* and *Peerless*); *In re Play Membership Golf, Inc.*, 576 B.R. 15, 21

(Bankr. D. Colo. 2017) ("[A]s the corporation moves on, the connection [with its bankruptcy case] attenuates.") (quoting *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 (1st Cir. 2005)).

F. Post-Closing Jurisdiction.

Entry of a final decree will not affect the Court's jurisdiction over the fee applications. Fee applications are within the "core" jurisdiction of the bankruptcy courts. *See, e.g., In re Eckert,* 414 B.R. 404, 406-07 (Bankr. N.D. Ill. 2009) (fee applications are core); *In re Frazin,* 732 F.3d 313, 321 (5th Cir. 2013) (malpractice claim was a core proceeding because fee application with which it was inextricably linked was core); *see generally* 28 U.S.C. § 157(b)(2)(A) (matters concerning estate administration are core). Closed cases need not be reopened to establish a bankruptcy court's subject matter jurisdiction over core proceedings. *See, e.g., In re Menk*, 241 B.R. 896, 913 (9th Cir. BAP 1999) ("[r]eopening, in and of itself, has little impact upon the estate and upon jurisdiction . . .");[6] *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009) (jurisdiction over core proceedings survives dismissal or case closing); *Honigman, Miller, Schwartz and Cohn, LLP v. Adell (In re John Richards Homes Bldg. Co.)*, 405 B.R. 192, 210 (E.D. Mich. 2009) ("there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case").

Closing and opening cases is relevant to estate administration but not to the Court's subject matter jurisdiction. Here, the Court does not need an open case to retain its core jurisdiction over the anticipated final fee applications and any objections thereto.

---

[6] Elsewhere the *Menk* court held that the "purpose of an open 'case' is to provide for bankruptcy administration by administrators, not by courts. ... We conclude that the reopening associated with filing a discharge-related, post-closing adversary proceeding is not of jurisdictional significance." 241 B.R. at 910. The court also pointed out that the jurisdiction provision for bankruptcy courts (28 U.S.C. § 1334) refers to civil proceedings arising under title 11, not to open bankruptcy cases. *Id.* at 905.

Conclusion.

In view of the uncontested confirmation of Debtor's plan; the substantial consummation of the plan; the liquidation and discharge of the bankruptcy estate; the likelihood that the final fee applications will not be vigorously contested; and the other factors discussed above, the Court concludes that the bankruptcy estate has been fully administered. The motion for entry of a final decree therefore will be granted by separate order. The Court will retain its core jurisdiction over the final fee applications.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 31, 2023
Copies to: counsel of record