**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW MEXICO**

In re:

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF SANTA FE, a New Mexico corporation sole,

Case No. 18-13027-t11

Debtor.

**MOTION TO ENFORCE STIPULATED NON-MONETARY COVENANTS REGARDING THE PUBLIC LISTING OF ACCUSED CLERGY**

Movant Mela LaJeunesse, by and through her attorneys (James A. Askew, Askew Law Firm LLC, and Levi A. Monagle, Huffman Wallace & Monagle LLC) for her Motion states as follows:

**Introduction**

Through this Motion, Movant Mela LaJeunesse seeks to enforce the Stipulated Non-Monetary Covenants entered into by the Archdiocese of Santa Fe ("ADSF") with over four hundred (400) survivors of clergy sexual abuse in the course of its Chapter 11 bankruptcy proceedings. Specifically, Movant asks this Court to hold the Archdiocese true to its commitment to publish on its website the names of all clergy accused of abuse through Proofs of Claim in the ADSF bankruptcy proceedings. Through her counsel, Movant has given the Archdiocese numerous opportunities to fulfill this commitment voluntarily. The Archdiocese has declined, arguing that it never intended such a commitment and that Movant is simply confused about the meaning of its Plan. Movant submits that the language and meaning of the Plan are in fact plain and seeks the aid of this Court in enforcing a term offered by the Archdiocese to survivors as an effective inducement of their votes and a material consideration in its exit from bankruptcy.

**Movant's Childhood Sexual Abuse Claim**

Movant was sexually abused as a child by Fr. Richard Spellman, a priest of the Archdiocese of Santa Fe, originally granted faculties by Archbishop Edwin Byrne in 1943. The sexual abuse of Movant by Fr. Spellman began in approximately 1957 and continued for years thereafter. Movant eventually disclosed and received treatment for her abuse beginning in 2016, and filed a Sexual Abuse Proof of Claim in the ADSF Chapter 11 Bankruptcy in May 2019.[1] In January 2023, Movant was compensated through the ASF Settlement Trust for the harm she suffered as a child at the hands of Fr. Spellman. At no point in the bankruptcy proceedings did the Archdiocese (or any other party) object to Movant's claim, seek additional information regarding Movant's claim, or assert that Movant's claim lacked credibility.

**ADSF's Commitment to Name Priests Accused in Proofs of Claim**

In its First Amended Plan of Reorganization filed November 3, 2022 (Doc. No. 1151) (hereinafter "the ADSF Plan"), the Archdiocese noted that "the historical experience of the Archdiocese in connection with decades of childhood sexual abuse has led not only to its Chapter 11 Bankruptcy Case, but also to a historical disclosure of documents in a public Archive." Doc. 1151-12, pg. 2. The Archdiocese went on to emphasize its "desires to provide transparency as to how these decades of widespread abuse occurred, and to try to prevent any future abuse going forward." *Id.* In addition to the creation of the Abuse Documents Archive, and in the same spirit of transparency, the Archdiocese committed itself to a number of Stipulated Non-Monetary Covenants, including 1) an independent compliance audit with respect to its abuse reporting policies, 2) an improved abuse-reporting mechanism, and 3) the adoption of policies to prohibit retaliation against clergy abuse whistleblowers. *Id.* at pgs. 3-5.

[1]Movant's claim was Claim No. 32, filed May 19, 2019.

Most importantly for purposes of this Motion, the Archdiocese committed itself to a Stipulated Non-Monetary Covenant regarding the prominent and perpetual maintenance and posting of a list of accused clergy affiliated with the Archdiocese *See* Doc. 1151-12, pg. 6. This commitment (detailed at paragraph C-15 of the Stipulated Non-Monetary Covenants and referred to herein as "Section C-15") is titled "Publication of Accused List," and reads in full as follows:

> ***Publication of Accused List.*** *Within ten (10) days of the effective date of a chapter 11 plan, ASF will prominently ("one-click") post on its website the list of names of all known past and present alleged clergy perpetrators of ASF, who have been determined by the Archbishop in consultation with the Independent Review Board to be credibly accused of sexual abuse. ASF will update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case (unless the identification has been withdrawn in any amendment or supplementation to the Proof of Claim). Survivors will provide ASF with permission to use their confidential proofs of claims to update the list and the deadline to add a name will be extended until such permission is received. ASF shall maintain this list on its website in perpetuity.*

Section C-15 makes three substantive commitments to abuse survivors. The first commitment states that "ASF will prominently post on its website the list of names of all known past and present alleged clergy perpetrators of ASF, who have been determined by the Archbishop in consultation with the Independent Review Board [or 'IRB'] to be credibly accused of sexual abuse." The second commitment states that "ASF will update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case (unless the identification has been withdrawn in any amendment or supplementation to the Proof of Claim)." Beyond this parenthetical regarding withdrawn identifications, there is no other qualification to this second commitment from the Archdiocese. The third commitment states that "ASF shall maintain this list on its website in perpetuity."



Case 18-13027-t11 Doc 1314 Filed 02/20/24 Entered 02/20/24 10:02:02 Page 3 of 10

**Movant's Prior Efforts to Confer with the Archdiocese**

Following the Effective Date of ADSF's Plan of Reorganization, Movant's counsel contacted counsel for the Archdiocese on numerous occasions, requesting that the name of Movant's abuser (Fr. Spellman) be added to ASF's publicly-posted list pursuant to Section C-15's second commitment to survivors – its commitment to "update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 case," as Fr. Spellman was identified. Movant's counsel inquired of the Archdiocese on this issue in December 2022, March 2023, and July 2023. *See attached* Exhibit 1, Levi Monagle Correspondence with ADSF Counsel. On July 19, 2023, general counsel for the Archdiocese stated that "the IRB convened in April [2023] and recommended that Fr. Spellman not be put on the credibly accused list, and the archbishop accepted their recommendation." *Id.*, pg. 5 of 9.

In a response on that same date, Movant's counsel noted the unequivocal language of Section C-15's second commitment (regarding "any clergy who are identified in any proof of claim"), noted that Fr. Spellman was identified in at least one proof of claim, and noted that this identification "was never withdrawn in any amendment of supplementation to that proof of claim." *Id.*, pg. 4 of 9. As such, Movant's counsel argued, Fr. Spellman clearly fell within the plain language of Section C-15's second commitment, and the Archdiocese needed to update its list to include Fr. Spellman's name.

Upon receiving no response from ADSF's general counsel, Movant's counsel passed along this position to ADSF's bankruptcy counsel, Tom Walker. Movant's counsel observed that the Archdiocese appeared to be refraining from placing Fr. Spellman's name on its public list by the exercise of its own unilateral discretion, but noted that "[t]he Non-Monetary Covenants do not allow the IRB such discretion with respect to clergy named on proofs of claim." *Id.*, pg. 4 of 9.

Upon receipt of this argument from Movant's counsel, Mr. Walker argued that "[t]he accusation in a proof of claim gives rise to the requirement that the accused by considered for the credibly accused list but it does not mandate inclusion on that list." *Id*, pg. 2 of 9 (emphasis added). Movant's counsel responded that while "Section C.15 clearly preserves ASF's credibility discretion as to priests not named in a [Proof of Claim]," it "just as clearly forfeits ASF's credibility discretion as to priests who ARE named in a [Proof of Claim]." *Id*. "There are two categories of priests under C.15," Movant's counsel noted, "and they explicitly receive separate treatment." *Id.* Mr. Walker's claimed that "[t]he Archdiocese only has one list" – the so-called "credibly accused list" – and that "names do not go on the list unless they have been determined to be credibly accused by the Archbishop in consultation with the IRB." *Id.*, pg. 1 of 9.

On November 10, 2023, Movant's counsel made a final request to the Archdiocese (through Mr. Walker) to add Fr. Spellman to its public list due to the fact that he had been accused of abuse in Movant's proof of claim. Movant received no response from the Archdiocese to this last communication.

**Analysis: Section C-15 Requires the Archdiocese to List Fr. Spellman**

Movant respectfully submits that the Archdiocese made multiple commitments to survivors in Section C-15: a commitment to publish a list of all "credibly accused priests" as determined by the IRB and the Archbishop, a commitment to update that list to include all priests accused in Proofs of Claim, and a commitment to maintain its list of priests on its website in perpetuity. The Archdiocese has taken the position that it made only one commitment to survivors in Section C-15 – the commitment to publish a list "credibly accused priests" as determined by the IRB and the Archbishop – and that the remaining language of Section C-15 serves simply to elaborate upon this lone commitment.

The plain language and structure of Section C-15 militates against the position of Archdiocese. The first two sentences of Section C-15 deal with two separate categories of priests. The first category of priests (treated in the first sentence of Section C-15) are those deemed "credibly accused" by "the Archbishop in consultation with the [ADSF] Independent Review Board." The second category of priests (treated in the second sentence of Section C-15) are "any clergy who are identified in any proof of claim filed in the Chapter 11 case." Put differently, the first two sentences of Section C-15 deal with two separate preconditions for placing a priest's name onto ADSF's public list(s) of accused perpetrators: 1) being deemed "credibly accused" by the Archbishop in consultation with the IRB, or 2) being identified in any proof of claim filed in the Chapter 11 case.

The two categories of priests discussed in Section C-15 are not co-extensive. There are priests deemed "credibly accused" by the Archbishop and IRB who were not named in proofs of claim in the Chapter 11 bankruptcy (e.g. Fr. Johnny Lee Chavez, Rudy Blea, Fr. Marr Burbach), and there are priests named in proofs of claim filed in the Chapter 11 bankruptcy who are not deemed "credibly accused" by the Archbishop in consultation with the IRB (e.g. Fr. Richard Spellman).[2] The fact that these two categories of priests are analytically separate buttresses the notion that they would receive separate treatment under the Plan.

Section C-15 is titled "Publication of Accused List" (rather than "Publication of <u>Credibly</u> Accused List") and gives no indication that an adjudication of an accuser's credibility – much less a unilateral determination of credibility by the Archdiocese – is a prerequisite for the name of an accused to be listed publicly. While the Archdiocese has claimed through counsel that "[t]he Archdiocese only has one list" and that the One List has only ever been for priests that the

[2] In addition to Fr. Spellman, there are more than fifty additional clergy who appear to fall into this second category.

Archbishop and IRB deem "credibly accused," a cursory review of ADSF's own website shows that ADSF actually maintains *two* lists. The first list (attached as Exhibit 2) is the list of priests deemed "credibly accused" by the Archbishop in consultation with the IRB. The second list (attached as Exhibit 3) explicitly disclaims any independent adjudication of "credibly accused" status by either the Archbishop or the IRB, noting only that those listed were previously listed as credibly accused by "other U.S. dioceses."[3]

What is clear is that there is more than one way to list an accused priest, and the plain language of Section C-15 suggests that ADSF has committed itself to listing "any clergy who are identified in any proof of claim filed in the Chapter 11 case." What ADSF's position asks of the Court, then, is to inject to the second sentence of Section C-15 with a qualification of critical importance that has no basis whatsoever in the text itself. ADSF's position requires the Court to read Section C-15 to state that "*ASF will update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case (unless the identification has been withdrawn in any amendment or supplementation to the Proof of Claim)* ***so long as the Archbishop in consultation with the Independent Review Board finds that the cleric is credibly accused of sexual abuse***." ADSF's position requires the Court to assume this qualification despite its plain absence from the text, and to ignore its plain absence despite the fact that other unrelated qualifications were <u>explicitly stated</u> in the text itself. Lastly, ADSF's position asks the Court to read Section C-15 in such a way as to render its second sentence entirely redundant. What possible purpose could there be in including reference to "any clergy identified in any proof of claim" if all

[3] Though not at issue for purposes of the present Motion, this second list published by ADSF contains at least one glaring inaccuracy. It indicates that Fr. William Anthony Goltz "[has] NOT had any accusations of abuse filed against [him] within the archdiocese." At least one claimant in the Chapter 11 bankruptcy alleged that Fr. Goltz sexually abused him as a child while stationed at St. John the Baptist Parish in Santa Fe in the spring of 1968. This claimant had sexually suggestive handwritten letters from Fr. Goltz to buttress his claim, and provided them to the Archdiocese.

that really mattered was the Archbishop's own determination that a cleric was "credibly accused" and the Archdiocese was already unequivocally committed to listing such priests? In the realm of contracts, the courts of New Mexico have historically declined to interpret a provision in a manner that would render it surplusage or would divest another provision of all "practical meaning." *See Mayfield Smithson Enterprises v. Com-Quip, Inc.*, 1995-NMSC-034, ¶17, 896 P.2d 1156, 1161; *Castle v. McKnight*, 1993-NMSC-076, ¶12, 866 P.2d 323, 327. That is what ADSF's interpretation of Section C-15 would demand here: to read the first sentence of Section C-15 as entirely subsuming the second sentence, thereby stripping the second sentence of all practical meaning.

The Archdiocese argues that the discretion over which priests are listed or not listed as accused perpetrators on its website rests entirely with the Archbishop and the IRB. It argues that this discretion has always resided with the Archbishop and the IRB in the past, that it should therefore always and obviously continue to reside with the Archbishop and the IRB into the future, and that the plain language of ADSF's own Plan of Reorganization should be painfully contorted or ignored if it dictates a contrary result. To illustrate the absurdity of this argument, it is worth briefly considering the third commitment made by the Archdiocese to survivors in Section C-15: the commitment that "ASF shall maintain this list on its website in perpetuity."

The Archbishop and the IRB were not historically obligated to maintain such a public list. They first produced one of their own volition (albeit under heavy pressure from survivors) in September 2017. Will the Archdiocese argue, then, that the true meaning of Section C-15 is that "ASF shall maintain this list in its website in perpetuity **so long as the Archdiocese in consultation with the IRB deems it advisable**"? After all, such discretion did historically belong to the Archdiocese. If the Archdiocese wishes to assert that its historical discretion supersedes the plain language of Section C-15 with respect to "any clergy who are identified in any proof of claim

filed in the Chapter 11 Case," it should be willing to assert that its historical discretion supersedes the same plain language with respect to maintaining a list of accused perpetrators "in perpetuity." This would entail the Archdiocese maintaining its list "in perpetuity, so long as the Archdiocese and IRB deem it advisable," and this would be a nonsensical reading of the Plan.

**Conclusion and Request for Relief**

The Archdiocese has advanced an entirely self-serving interpretation of Section C-15 of the Stipulated Non-Monetary Covenants to its Plan of Reorganization, one that flies in the face of the provision's plain language. The plain language of Section C-15 provides that with one exception and one exception only, "any clergy who are identified in any proof of claim filed in the Chapter 11 Case" are to be listed on ADSF's public list(s) of accused clergy." The only exception allowed for in the text relates to "identifications withdrawn." That exception is not applicable here.

Movant respectfully requests that the Section C-15 be interpreted to require the Archdiocese to publicly list all clergy accused of sexual misconduct in the proofs of claim in its Chapter 11 bankruptcy, and that the Archdiocese be specifically ordered to add Fr. Spellman to that public list.

Pursuant to local rule, counsel for the Archdiocese has been consulted and this Motion is opposed.

Respectfully Submitted,

**Askew Law Firm, LLC**

*James A. Askew 2/20/24*
James A. Askew
1122 Central Ave. SW, Suite 1
Albuquerque, NM 87102
Office: 505-433-3097
Fax: 505-717-1494
jaskew@askewlawfirm.com

And

**Huffman Wallace & Monagle, LLC**

*Levi A. Monagle 2/20/24*
Levi A. Monagle
Shayne C. Huffman
Jason T. Wallace
122 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 255-6300
levi@hmhw.law

This certifies that a copy of the foregoing was served via the CM-ECF notification system to all parties who have entered an appearance, this 20th day of February, 2024.

*s/ filed electronically*
Levi A. Monagle