UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:

ROMAN CATHOLIC CHURCH OF　　　　　　　　　　　　　　Case no. 18-13027-t11
THE ARCHDIOCESE OF SANTA FE,

    Debtor.

# **OPINION**

    Before the Court is a motion filed by an abuse victim to enforce "non-monetary covenants" agreed to by Debtor as part of its confirmed plan of reorganization. The covenants obligate Debtor, inter alia, to keep and update a list of "all known past and present alleged clergy perpetrators of [Debtor], who have been determined by the Archbishop in consultation with the Independent Review Board to be credibly accused of sexual abuse." Movant asks that the Court require Debtor to add to the list the name of a priest she identified in her proof of claim as having abused her. Debtor opposes the request, saying that movant lacks standing to enforce the covenants. Debtor further argues that the priest should not be added to the list because he was determined not to have been "credibly accused" of sexual abuse.

    The Court has reviewed the covenants, the confirmed plan, and related documents and has heard oral argument on the dispute. It now rules that movant lacks standing to enforce the particular covenant in question. Alternatively, on the merits, the Court rules that the covenants do not obligate Debtor to add a priest to the list unless Debtor has made a "credibly accused" finding for that priest.

A. Facts.

For the limited purpose of ruling on the motion, the Court finds:[1]

Debtor Roman Catholic Church of the Archdiocese of Santa Fe ("ASF") filed this chapter 11 case on December 3, 2018. Movant filed a sexual abuse proof of claim on May 19, 2019. In her proof of claim, she identified Fr. Richard Spellman as her alleged abuser. Fr. Spellman is deceased.

ASF's first amended plan of reorganization, filed November 3, 2022 (the "Plan"), was confirmed on December 28, 2022. The effective date of the Plan was February 16, 2023.

Under the Plan, the process for review and allowance of sexual abuse claims was turned over to a "Tort Claims Reviewer." ASF agreed not to object to any sexual abuse claims.

The Plan created an "ASF Settlement Trust," from which all reviewed and allowed sexual abuse claims would be paid. ASF and various insurance companies and affiliates transferred about $130,000,000 into the trust and a trust for unknown abuse victims. A trustee was appointed to disburse payments to sexual abuse claimants from the ASF Settlement Trust once the Tort Claims Reviewer had reviewed and allowed their claims.

Paragraph 10.10 of the Plan provides:

Non-Monetary Commitment to Healing and Reconciliation. In order to further promote healing and reconciliation, and in order to continue its efforts to prevent Abuse from occurring in the Archdiocese in the future, the Reorganized Debtor agrees that beginning within 30 days after the Effective Date (unless a different date is provided below), it will undertake the commitments set forth in the Stipulated Non-Monetary Covenants attached hereto as Exhibit L attached hereto [sic] and incorporated herein, including the establishment of the Abuse Documents Archive.

The following provisions of the Stipulated Non-Monetary Covenants (the "Covenants") are relevant:

---

[1] The Court takes judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

11. Disclosure Requirement. ASF will continue to maintain and update the list of credibly accused clergy[2] as soon as reasonably practicable but, in any event, no later than forty-five (45) days after the relevant determination. ASF will share this information with the public by posting the information on its website.

15. Publication of Accused List. Within ten (10) days of the effective date of a chapter 11 plan, ASF will prominently ("one-click") post on its website the list of names of all known past and present alleged clergy perpetrators of ASF, who have been determined by the Archbishop in consultation with the Independent Review Board[3] to be credibly accused of sexual abuse. ASF will update the list to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case (unless the identification has been withdrawn in any amendment or supplementation to the Proof of Claim). Survivors will provide ASF with permission to use their confidential proofs of claims to update the list and the deadline to add a name will be extended until such permission is received. ASF shall maintain this list on its website in perpetuity.

20. Remove Perpetrator Recognitions. The ASF Parties will undertake to remove all plaques, pictures, statutes, or other public recognitions of all known past and present alleged perpetrators who have been determined by the Archbishop in consultation with the Independent Review Board to be credibly accused of sexual abuse, including those who are identified in any proof of claim filed in the Chapter 11 Case.

27. Jurisdiction and Standing. The Bankruptcy Court shall retain jurisdiction to adjudicate disputes that arise with respect to these non-monetary provisions. The Committee and any trust created for the benefit of Sexual Abuse Claimants shall have standing and shall be authorized, but not directed, to seek enforcement of any of the terms of these non-monetary undertakings.

The Debtor received a discharge pursuant to § 1141.[4] All filed motions, contested matters, and adversary proceedings have been finally resolved. The Plan has been substantially consummated.

Movant's counsel contacted counsel for ASF before Plan confirmation, requesting that Fr. Spellman be added to the List because he was identified in Movant's proof of claim. ASF's counsel responded that "Fr. Spellman will be considered for inclusion on the Credibly Accused

---

[2] The "List."
[3] The "IRB."
[4] Unless otherwise indicated, all statutory references are to 11 U.S.C.

list along with the other new perpetrators (there are many) in accordance with the non-monetary covenants the parties agreed to as part of the Ch. 11 settlement."

On July 19, 2023, counsel for ASF informed movant's counsel that "the IRB convened in April [2023] and recommended that Fr. Spellman not be put on the credibly accused list, and the Archbishop accepted their recommendation." The motion followed.

The parties disagree about the proper interpretation of the Covenants. Movant interprets them to require ASF to add Fr. Spellman to the List, whether or not ASF has made a "credibly accused" determination. ASF, on the other hand, interprets the Covenants to require the addition of clergy identified in proofs of claim only if ASF has determined that the clergy has been credibly accused of sexual abuse.

B.    <u>Standing</u>.

ASF argues that Movant lacks standing to enforce the Covenants.[5] To rule on standing, the court will apply New Mexico law, which is the law applicable to interpretation of the Plan and the Covenants.[6]

ASF points to the following language of paragraph 27 in support of its standing argument:

---

[5] If Movant has received payment from the ASF Settlement Trust and signed the required release, that might affect her ability to pursue this dispute; the release is very broad and may encompass this issue. No evidence of such payment is in the record.
[6] See Section C(1) below. *See also United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000) (citing *Carr v. Runyan,* 89 F.3d 327, 331 (7th Cir.1996) ("A settlement agreement is merely a contract between the parties to the litigation, … [a]s such, the formation, construction, and enforceability of a settlement agreement is governed by local contract law")). Movant acknowledged that New Mexico law applied to the standing issue by citing New Mexico cases in support of her standing argument.

> The Committee[7] and any trust[8] created for the benefit of Sexual Abuse Claimants shall have standing and shall be authorized, but not directed, to seek enforcement of any of the terms of these non-monetary undertakings.

Movant responds that she is an intended third-party beneficiary of the Covenants and therefore has standing. In support of her position, Movant cites to *Fleet Mortgage Corp. v. Schuster*, 112 N.M. 48, 49-50 (S. Ct. 1991) ("Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party"); and *McKinney v. Davis*, 84 N.M. 352, 353 (S. Ct. 1972) (the prime requisite for third party beneficiary status is that "the parties to the contract intended to benefit the third party, who must be something more than an incidental beneficiary").

Another New Mexico case, *Casias v. Cont'l Cas. Co.*, discusses third-party beneficiary standing:

> A third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others (1) if he is a creditor of the promisee ... or (2) if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract. A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him.

125 N.M. 297, 300 (Ct. App. 1998) (quoting *Permian Basin Inv. Corp. v. Lloyd,* 63 N.M. 1, 7 (S. Ct. 1957)). Movant is not a creditor of any promisee, nor would she benefit financially from enforcing the covenant in question.

---

[7] The Official Committee of Unsecured Creditors. The Committee consists of nine people, each of whom is an abuse survivor or relative of an abuse survivor. The Committee was appointed by the Office of the United States Trustee and acted on behalf of the sexual abuse claimants.

[8] Two trusts were created for the benefit of Sexual Abuse Claimants: the ASF Settlement Trust and an Unknown Tort Claims Trust.

Here, the number of potential third-party beneficiaries is large and may include, for example, the abuse victims, the general public, and/or any children who might come in contact with ASF's churches, priests, schools, etc. If a contract has many third-party beneficiaries, the contracting parties may intend to benefit the third parties without giving them standing to sue for breach. Cases addressing standing issues with city contracts provide a useful analogy. In the leading case of *H.R. Moch Co. v. Rensselaer Water Co.*, Judge Cardozo opined:

> In a broad sense it is true that every city contract, not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary. *Cf. Fosmire v. National Surety Co.*, 229 N. Y. 44, 127 N. E. 472. It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost. The field of obligation would be expanded beyond reasonable limits if less than this were to be demanded as a condition of liability. A promisor undertakes to supply fuel for heating a public building. He is not liable for breach of contract to a visitor who finds the building without fuel, and thus contracts a cold. The list of illustrations can be indefinitely extended. The carrier of the mails under contract with the government is not answerable to the merchant who has lost the benefit of a bargain through negligent delay. The householder is without a remedy against manufacturers of hose and engines, though prompt performance of their contracts would have stayed the ravages of fire. 'The law does not spread its protection so far.' *Robins Dry Dock & Repair Co. v. Flint*, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290.

247 N.Y. 160, 164-65, 159 N.E. 896, 897 (1928). *Moch* was followed in New Mexico by *Blake v. Public Service Co. of New Mexico*, 134 N.M. 789, 793 (Ct. App. 2003) (public utility under contract with a city owes no duty to a person injured as a result of failure to provide or maintain streetlights); *see also Bishop v. Hamya, Inc.*, 2017 WL 6944795, at *5 (M.D. Tenn.) (citing *Blake*); *Laprocina v. Lourie*, 250 A.3d 1281, 1287 (R.I. 2021) (same).

Some paragraphs of the Covenants benefit only the Sexual Abuse Claimants (e.g., survivor access to documents). The claimants may have standing to enforce those covenants.[9] Other paragraphs, like paragraph 15 (publishing and updating the List), are directed toward prevention of future sexual abuse. The Court finds and concludes that Movant does not have standing to enforce paragraph 15 of the Covenants. Rather, standing to enforce that paragraph was given solely to the Committee and the trusts.

C. <u>ASF is Not Required to Add Fr. Spellman to the List</u>.

Alternatively, turning to the merits of Movant's request, the Court will construe the Covenants and decide whether they require ASF to add Fr. Spellman to the List.

1. <u>The Plan is a contract, interpreted under New Mexico law</u>.

> A confirmed plan generally is interpreted according to the rules governing the interpretation of contracts. *See Miller v. United States,* 363 F.3d 999, 1004 (9th Cir. 2004) (confirmed plan is akin to a contract and "must be interpreted according to the rules governing the interpretation of contracts."); *Connolly v. City of Houston (In re Western Integrated Networks, LLC)*, 322 B.R. 156, 160–61 (Bankr. D. Colo. 2005) (chapter 11 plan is a contract that must be interpreted according to the general rules of contract interpretation); *In re K.D. Co., Inc.*, 254 B.R. 480, 490 (10th Cir. BAP 2000) (confirmed plan has some indicia of a contract).

*In re Flying Star Cafes, Inc.*, 568 B.R. 129, 136 (Bankr. D.N.M. 2017); *see also In re Lacy*, 304 B.R. 439, 444 (D. Colo. 2004) ("The plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors.").

Courts apply the substantive law of the forum state when interpreting confirmed plans. *See, e.g., In re Miller*, 253 B.R. 455, 458 (Bankr. N.D. Cal. 2000), aff'd, 284 B.R. 121 (N.D. Cal. 2002),

---

[9] "When a contract in its entirety does not provide that a party is a third-party beneficiary, however, courts consider generally the third-party beneficiary issue when a party claims to be a third-party beneficiary of a contract provision and that same contract provision's breach is at issue . . . [citing cases] . . . The Restatement (Second) of Contracts also discusses intended beneficiaries referring primarily to individual promises instead of contracts." *Howes v. New Mexico Dep't of Health*, 2023 WL 1419832, at *64 n. 39 (D.N.M.).

aff'd, 363 F.3d 999 (9th Cir. 2004) ("It is well established that a chapter 11 plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed."); *In re Kimball Hill, Inc.*, 595 B.R. 84, 103 (Bankr. N.D. Ill. 2019), vacated in part on other grounds, 2019 WL 5208853 (N.D. Ill.), (following *Miller*); *In re Irwin*, 558 B.R. 743, 746 (Bankr. E.D. Pa. 2016) (same;); and *In re Sunnyland Farms, Inc.*, 2016 WL 1212723, at *3 (Bankr. D.N.M.) (citing *In re K.D. Co., Inc.*, 254 B.R. 480, 491 (10th Cir. BAP 2000), this Court held that "in the Tenth Circuit, a court may resort to state law to interpret a plan.").

    2.    <u>Ambiguity</u>. A contract is ambiguous if it is "capable of more than one reasonable interpretation." *Sunnyland Farms*, 2016 WL 1212723 at *3.

> It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions. *See* 3 *Corbin* § 537 (rules governing admissibility of proof of surrounding circumstances depend upon person whose meaning is at issue).

*C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509 (S. Ct. 1991).

In Movant's favor, the second sentence of paragraph 15 states that "ASF will update [the List] to include any clergy who are identified in any proof of claim filed in the Chapter 11 Case. . . ." There is no requirement in this sentence that the clergy be found to have been credibly accused.

On the other hand, in ASF's favor are the following:

- paragraph 11 requires AST to "maintain and update the list of credibly accused clergy as soon as reasonably practicable but, in any event, no later than forty-five (45) days after the relevant determination."

- The first sentence of paragraph 15 refers to the same List mentioned in paragraph 11. It requires ASF to post the List on its website within 10 days of the Plan's effective date.

- The third sentence of paragraph 15 requires Sexual Abuse Claimants to give permission for ASF to use their proofs of claim to update the List "and the deadline to add a name will be extended until such permission is received." The deadline referred to must be the one in paragraph 11, i.e., within 45 days after a credible determination" is made. At any rate, there is no other deadline (the ten-day deadline in the first sentence of paragraph 15 is for posting the List on ASF's website); and

- Paragraph 20 requires ASF to remove public recognitions for all past and present alleged perpetrators who have been credibly accused of sexual abuse, "including those who are identified in any proof of claim filed in the Chapter 11 Case." The language implies that only credibly accused clergy are on the List.

The second sentence of paragraph 15 conflicts with the paragraphs and sentences cited above, creating an ambiguity.[10]

"Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact." *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781 (S. Ct. 1993). When "the parties do not offer evidence of the facts ... surrounding execution of the agreement ... the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation." *Bank of Albuquerque, N.A. v. Ambassador Dev., LLC*, 2013 WL 4511931, at *2 (N.M. App.) (quoting *Mark* V, 114 N.M. at 782). There is no evidence of the facts surrounding execution of the subject paragraphs in the record.

3. <u>Resolving the Ambiguity</u>. The Court concludes that the following rules of contract construction are helpful in resolving the ambiguity in the Covenants.[11]

---

[10] The Covenants needed, but did not receive, a careful and thorough editing.

[11] There is a general rule of construction that ambiguities are to be construed against the drafter. *Castillo v. Arrieta*, 368 P.3d 1249, 1253 (N.M. App. 2016). It is difficult to use this particular rule because the Court does not know if the Covenants were drafted by ASF, the Committee, or both.

a. <u>Interpret the whole agreement</u>. The contract should be viewed "as a harmonious whole, [to] give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Citizens Bank N.A. v. Burnworth*, 2021 WL 5630398, at *3 (N.M. App.) (citing *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 131 N.M. 100, 108 (Ct. App. 2001)). "Courts should interpret contract as a whole and interpret words in light of all the circumstances and the principal purpose of the parties." *Sunnyland Farms,* 2016 WL 1212723 at *4. "The contract must be considered and construed as a whole, with meaning and significance given to each part in its proper context with all other parts, so as to ascertain the intention of the parties." *Schultz & Lindsay Const. Co. v. State*, 83 N.M. 534, 535 (S. Ct. 1972). "[C]onsideration of this contract must take in the entire contract as a whole and not a mere sentence or isolated paragraph . . . ." *Hoge v Farmers Market & Supply Co. of Las Cruces*, 61 N.M. 138, 141 (S. Ct. 1956).

b. <u>Reasonable interpretation</u>. The law favors a reasonable interpretation of contract language over an unreasonable interpretation. *Brown v. Am. Bank of Com.*, 79 N.M. 222, 226 (S. Ct. 1968); *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 130 (S. Ct. 1991); *McLaughlin v. Santa Fe Cmty. Coll.*, 2023 WL 7018418, at *3 (N.M. App.); *see also Sunnyland Farms,* 2016 WL 1212723 *at* *3 (an interpretation that gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation that leaves a part unreasonable, unlawful, or of no effect).

c. <u>Avoid surplusage</u>. "[E]very word, phrase or part of a contract should be given meaning and significance according to its importance in context of the contract." *Brown*, 79 N.M. at 226 (citing *Phillips Petroleum Co. v. McCormick*, 211 F.2d 361 (10th Cir.1954), and

*Hondo Oil & Gas Co. v. Pan American Petroleum Corp.*, 73 N.M. 241 (S. Ct. 1963)); *see also Bank of New Mexico v. Sholer*, 102 N.M. 78, 79 (S. Ct. 1984) (citing and following *Brown*).

    4.    <u>Applying the rules of construction</u>.

        a.    <u>Whole agreement</u>. Reviewing the Covenants in its entirety favors ASF's interpretation. Paragraphs 11 and 15 refer to "the list of credibly accused clergy." Not "a" list; "the" list. The second sentence of paragraph 15 requires ASF to add clergy identified in proofs of claim to the List. However, it makes no sense to add clergy to the List that have not been found to be credibly accused. It would no longer be "the List" but some other list.

ASF's counsel told Movant's counsel in an email dated December 14, 2022, that "there are many" new perpetrators. The existence of the new perpetrators apparently comes from the proofs of claim filed in the bankruptcy case. If many new perpetrators were added to the List without the "credibly accused" determination process, the List would lose much of its significance. Further, adding names of priests who were identified in a proof of claim could add names of clergy who have been wrongfully accused, or clergy who were never accused at all but were identified in a proof of claim for some other reason. Restricting the List to those who have been credibly accused, as determined by the IRB and the Archbishop, both protects innocent clergy and gives significant weight to the List.[12] In its current form, the List is an admission of appalling wrongdoing. Under Movant's interpretation of the Covenants, that important fact would be undermined.

Further, the requirement in paragraph 15 that the survivors give ASF permission to use their proofs of claim and extending "the deadline to add a name" until the permission is given, can only refer to the deadline in paragraph 11, which is 45 days after the "credibly accused" determination has been made.

---

[12] The List currently contains 86 names.

Finally, ASF's construction harmonizes paragraph 15 with paragraph 20, which limits inclusion on the List to those clergy identified in proofs of claim who have been determined to have been credibly accused.

In sum, reading the second sentence of paragraph 15 with the rest of the Covenants as a whole shows that Fr. Spellman should not be added to the List unless a credible accusation determination has been made.

      b.      <u>Reasonable interpretation</u>. The construction advocated by ASF is more reasonable than Movant's. It is not reasonable to add names to the List without a robust vetting process of some kind. The List has never been about mere accusation, but about credible accusation. That is what gives the List its force as an admission and a warning. With claim review transferred to the Tort Claims Reviewer and ASF's agreement not to object to claims, there is no bankruptcy-related process for weeding out false claims. The parties relied instead on ASF's internal "credibly accused" review process.

      c.      <u>No surplusage</u>. The construction advocated by ASF does not result in surplus language. The second sentence of paragraph 15 requires ASF to take all names from the sexual abuse proofs of claim and run them through the "credibly accused" review process. Within 45 days after completion of the review, ASF is obligated to add any "credibly accused" clergy to the List. It provides a method for ensuring that the List is complete. There is no surplusage.

Conclusion

Only the Committee or the trusts have standing to enforce paragraph 15 of Covenants. In any event, the paragraph does not require ASF to add Fr. Spellman to the List unless and until ASF determines, after consultation with the IRB, that Fr. Spellman has been credibly accused of sexual abuse. The Court will enter a separate order denying the motion.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 21, 2024
Copies to: electronic notice recipients